Exhibit 4

F-1

CASH PLAN FOR RETIREMENT

of

CHEMICAL BANK

and

CERTAIN AFFILIATES

Amended and Restated as of January 1, 1989

Eff til 1/1/93

CBPJPMC00001647

-i-

# CASH PLAN FOR

# RETIREMENT OF

# CHEMICAL BANK AND CERTAIN AFFILIATES

## Contents

| | | Page |
|---|---|---|
| Preamble | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Article I | Definitions . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Article II | Eligible Employee . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 2.1 | Eligible Employee . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 2.2 | Participation . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| Article III | Service . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| 3.1 | Periods of Service . . . . . . . . . . . . . . . . . . . . . . | 20 |
| Article IV | Account Balance . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| 4.1 | Account . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| 4.2(a) | Prior Service Credit . . . . . . . . . . . . . . . . . . . . . | 25 |
| 4.2(b) | Transition Credit . . . . . . . . . . . . . . . . . . . . . . | 27 |
| 4.3 | Salary-Based Credit Balance . . . . . . . . . . . . . . . . . | 30 |
| 4.4 | Disability and Military Service . . . . . . . . . . . . . . . | 32 |
| 4.5 | Accrued Benefit . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| 4.6 | Special Rules--Termination of Employment after | |

CBPJPMC00001648

-ii-

|  | January 1, 1989 and Before June 1, 1991 . . . . . . . . . . . . . | 34 |
| 4.7 | – Eligible Retirees and Certain Others . . . . . . . . . . . . . . . | 37 |
| Article V | Vesting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
| 5.1 | Vested Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
| 5.2 | Forfeitures . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 41 |
| 5.3 | Canceled checks . . . . . . . . . . . . . . . . . . . . . . . . . | 42 |
| Article VI | Transfers and Reemployment . . . . . . . . . . . . . . . . . . | 43 |
| 6.1 | Transfers from One Employer to Another Employer . . . . . . | 43 |
| 6.2 | Transfer from Employer to a Non-Participating Company . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43 |
| 6.3 | Transfer from Non-Participating Company to Employer . . . . . . . . . . . . . . . . . . . . . . . . . | 43 |
| 6.4 | Reemployment of Vested Participants . . . . . . . . . . . . . . | 44 |
| 6.5 | Reemployment of Nonvested Participants . . . . . . . . . . . . | 47 |
| Article VII | Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 48 |
| 7.1 | Plan Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . | 49 |
| 7.2 | Normal Retirement Benefit . . . . . . . . . . . . . . . . . . . | 49 |
| 7.3 | Form of Benefit . . . . . . . . . . . . . . . . . . . . . . . . . | 49 |
| 7.4 | Lump Sum Cash Out . . . . . . . . . . . . . . . . . . . . . . | 52 |
| 7.5 | Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . | 53 |
| 7.6 | Small Benefits: Lump Sum Cash Out . . . . . . . . . . . . . . | 54 |

CBPJPMC00001649

-iii-

| 7.7 | Qualified Domestic Relations Order . . . . . . . . . . . . . . . . . | 55 |
|---|---|---|
| Article VIII | Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 55 |
| 8.1 | Earliest and Latest Commencement of Benefits . . . . . . . . . . | 55 |
| 8.2 | Normal Commencement of Benefits . . . . . . . . . . . . . . . . . | 57 |
| 8.3 | Distributions after Participant's Death . . . . . . . . . . . . . . . | 58 |
| 8.4 | Election of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . | 59 |
| 8.5 | Information for Elections . . . . . . . . . . . . . . . . . . . . . . . | 65 |
| 8.6 | Termination of Benefits . . . . . . . . . . . . . . . . . . . . . . . . | 66 |
| 8.7 | Suspension of Benefits . . . . . . . . . . . . . . . . . . . . . . . . | 66 |
| Article IX | Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 67 |
| 9.1 | Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 67 |
| 9.2 | Plan Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 68 |
| 9.3 | Plan Investment Administrator . . . . . . . . . . . . . . . . . . . | 68 |
| 9.4 | Employment of Agents . . . . . . . . . . . . . . . . . . . . . . . . | 69 |
| 9.5 | Fiduciary Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 70 |
| 9.6 | Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 71 |
| Article X | Claims Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . | 71 |
| Article XI | Amendment or Termination of the Plan . . . . . . . . . . . . . . | 73 |
| 11.1 | Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 73 |
| 11.2 | Voluntary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 74 |
| 11.3 | Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 74 |

CBPJPMC00001650

-iv-

| 11.4 | Section 401(a)(4).  Restriction on Benefits | |
| | and Distributions  . . . . . . . . . . . . . . . . . . . . . . | 75 |
| Article XII | Contributions and Funding  . . . . . . . . . . . . . . . . . . . . . | 76 |
| 12.1 | Agreement of Trust and Trustee  . . . . . . . . . . . . . . . . . . . | 77 |
| 12.2 | No Contributions by Participants  . . . . . . . . . . . . . . . . . . | 78 |
| 12.3 | Contributions Irrevocable  . . . . . . . . . . . . . . . . . . . . . | 79 |
| 12.4 | Exceptions to Section 12.3 . . . . . . . . . . . . . . . . . . . . . | 79 |
| 12.5 | Funding Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . | 79 |
| Article XIII | General Provisions  . . . . . . . . . . . . . . . . . . . . . . . . | 80 |
| 13.1 | Not a Contract  . . . . . . . . . . . . . . . . . . . . . . . . . . | 80 |
| 13.2 | Severance Date  . . . . . . . . . . . . . . . . . . . . . . . . . . | 81 |
| 13.3 | No Assignment  . . . . . . . . . . . . . . . . . . . . . . . . . . | 81 |
| 13.4 | Plan Merger  . . . . . . . . . . . . . . . . . . . . . . . . . . . | 81 |
| 13.5 | Governing Law  . . . . . . . . . . . . . . . . . . . . . . . . . . | 82 |
| 13.6 | Appendices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 82 |

CBPJPMC00001651

CASH PLAN FOR

RETIREMENT OF

CHEMICAL BANK AND CERTAIN AFFILIATES

The Cash Plan for Retirement of Chemical Bank and Certain Affiliates (the "Plan") provides retirement benefits for employees of Chemical Bank and its Affiliates who are designated as Employers.

The Plan was amended and restated as of January 1, 1989. The Plan is a successor plan to, and a continuation of, the Retirement Plan of Chemical Bank and Certain Affiliates (the "Prior Plan") and, except as otherwise provided herein, all active employees, as of December 31, 1988, who were participants in the Prior Plan continue to be participants in the restated Plan.

With certain exceptions, benefits for employees who retired or terminated employment prior to January 1, 1989, and their beneficiaries will be provided for under the terms and conditions of the Prior Plan as in effect as of December 31, 1988.

Benefits for employees who retired or terminated employment on and after January 1, 1989, and on or before January 1, 1991 will be recalculated under the terms of the restated Plan. If such employees are not highly compensated employees whose benefits

CBPJPMC00001652

-2-

were limited as of December 31, 1988 pursuant to Alternative II. D. of IRS Notice 88-131,

they shall receive the greater of the benefit under the restated Plan or their accrued benefit

under the Prior Plan based on the terms of the Prior Plan as in effect on December 31,

1988. If such employees are highly compensated employees whose accrued benefit under the

Prior Plan was limited pursuant to Alternative II. D. of IRS Notice 88-131, they shall

receive their accrued benefit under the restated Plan (or if greater, the amount accrued

under the Prior Plan as of December 31, 1988).

The Plan, as amended and restated, is intended to qualify under Section 401 of

the Internal Revenue Code and the related trust is intended to be tax-exempt under

Section 501 of such Code.

## ARTICLE I

### Definitions

1.1    "Account" means a bookkeeping account established and maintained with respect

to each Participant pursuant to Section 4.1.

CBPJPMC00001653

-3-

1.2    "Accrued Benefit" means, as of any determination date, an increasing monthly

annuity determined in accordance with Section 4.5, which benefit is the Actuarial

Equivalent of such individual's Credit Balance.

1.3    "Accruing Factor" means the factor described in Section 4.3(b).

1.4    "Actuarial Equivalent" means, with respect to any specified annuity or benefit,

another annuity or benefit commencing at a different date and/or payable in a

different form than the specified annuity or benefit, but which has the same

present value as the specified annuity or benefit (except where expressly provided

otherwise in the Plan, determined on the basis of the interest rate, mortality table

and other factors, if any, applicable to such other annuity or benefit, as specified

in Appendix I as in effect at the date of commencement of such other annuity or

benefit).

1.5    "Administrator" means the individual who is selected by the Board to be the plan

administrator; absent a designation to the contrary by the Board, the individual

who holds the title Director of Human Resources of the Corporation or the

Company or successor title.

-4-

1.6    "Affiliated Company" means the Company and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Company; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Company; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Company; and any other entity required to be aggregated with the Company pursuant to regulations under Section 414(o) of the Code.

1.7    "Annuity Starting Date" means the first day of the first period for which an amount is paid as an annuity, or any other periodic form.

1.8    "Beneficiary" means the person or persons designated by a Participant by Notice to the Administrator to receive benefits from the Plan on account of the death of the Participant, which designation has not been revoked by a Notice to the Administrator. If the Notice to the Administrator has not been filed, or if the beneficiaries set forth in such Notice have predeceased the Participant, and if in either case the Participant is not survived by his Spouse, Beneficiary shall mean his estate.

-5-

1.9    "Benefits Appeal Committee" means the committee designated by the Administrator (or his designee) to review claims pursuant to Article X.

1.10   "Board" means the Board of Directors of the Company and any committee of directors of such Board authorized to act with respect to any matters pertaining to the Plan.

1.11   "Break in Service" occurs at the end of any 12-consecutive-month period beginning on a Severance Date during which an Employee does not complete an Hour of Service; provided that Appendix II shall apply to an Affiliated Company which is not an Employer and which keeps payroll records on the basis of hours worked.

1.12   "Change in Control" is defined in Appendix III hereto.

1.13   "Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.14   "Company" means Chemical Bank and any successor corporation.

1.15   "Compensation" means the regular hourly, weekly, biweekly, semimonthly, monthly or annual pay from an Employer, for services rendered while a

CBPJPMC00001656

-6-

Participant (including (i) shift differentials and (ii) amounts deferred under Section 401(k) of the Code or a cafeteria plan described in Section 125 of the Code, in either case pursuant to salary reduction agreements). Compensation does not include overtime pay, bonuses, incentive compensation, severance, deferred compensation (other than as specified above), payments under this Plan or any other employee benefit plan (including a long term disability plan or program or flex credits under a cafeteria plan) or any other kind of extra or additional remuneration. In the case of a Participant who becomes disabled and is eligible for long term disability benefits under a disability plan or program of an Employer, Compensation means, his actual pay for the last pay period immediately preceding the onset of his disability expressed as a quarterly amount. Effective January 1, 1988, Compensation taken into account under this Plan for any Participant shall not exceed the dollar amount prescribed by the Secretary of Treasury or his delegates in accordance with Section 401(a)(17) of the Code ("Applicable Amount").

1.16     "Corporation" means Chemical Banking Corporation and any successor corporation.

1.17     "Credit Balance" means the amount determined under Article IV.

CBPJPMC00001657

-7-

1.18    "Date of Distribution" means the date set forth in Section 4.3(f).

1.19    "Date of Employment" means the date an Employee first performs an Hour of
        Service.

1.20    "Date of Reemployment" means the date on which an Employee first performs
        an Hour of Service following a Severance Date.

1.21    "Effective Date" means January 1, 1989 for this amended and restated Plan.

1.22    "Eligible Employee" means any Employee eligible to participate in this Plan in
        accordance with Section 2.1.

1.23    "Eligibility Period" means the Period of Service determined in accordance with
        Section 2.2(a).

1.24    "Eligible Retiree" means an active Employee (a) who was actively employed on
        April 15, 1992 or who was on leave but returned to work by June 1, 1992, (b) who
        was not employed at the level of an Executive Vice President or above
        immediately prior to the merger of the Corporation and Manufacturers Hanover
        Corporation (in the case of Texas Commerce Bancshares, Inc. and its reporting

CBPJPMC00001658

-8-

subsidiaries and reporting affiliates, not employed as a Senior Vice President or above), (c) whose application to terminate employment voluntarily was received on or before June 1, 1992; was not timely rescinded by the Employee, and was accepted by his Employer, (d) who terminate employment as of the date specified by his Employer but in no event later than December 31, 1992 and (e) who would have had as of December 31, 1992:

    (i)    a Period of Service of at least 15 years and attained at least age 50 in the case of all Employers; or

    (ii)    a Period of Service of at least 11 years and attained at least age 54 in the case of all Employers, other than Texas Commerce Bancshares, Inc. and its reporting subsidiaries and reporting affiliates, and other than Chemical New Jersey Holdings and its reporting subsidiaries and its reporting affiliates; or

    (iii)    a Period of Service of at least 5 years and attained at least age 62 in the case of an individual employed by Texas Commerce Bancshares, Inc. and its reporting subsidiaries and its reporting affiliates.

CBPJPMC00001659

-9-

1.25    "Eligible Termination" means an Employee's involuntary termination of employment with a Participating Company or Affiliated Company due to one or more of the following:  the permanent and complete closing of a location, a reduction in force, corporate downsizing or a job elimination, but does not include the transfer of any Employee to any Affiliated Company.  An Employee's termination of employment with a Participating Company or an Affiliated Company for any other reason not specifically stated above, including, but not limited to, resignation, voluntary retirement, discharge for cause, death, disability, or failure to return from an approved leave of absence (including leaves of absence for medical reasons) shall not constitute an Eligible Termination.  Eligible Termination also shall not include an Employee's termination of employment with a Participating Company or an Affiliated Company as a result of a court decree, sale (whether, in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up involving any Participating Company or Affiliated Company; provided that an involuntary termination of employment (due to one of the events specified in the first sentence) as a result of the merger of Manufacturers Hanover Corporation with the Corporation shall be an Eligible Termination.

CBPJPMC00001660

-10-

1.26    "Employee" means an individual employed by an Employer or an Affiliated Company and, only as required by Code Section 414(n), a leased employee, but does not mean an individual employed on a retainer basis.

1.27    "Employer" means the Company and any Participating Company.

1.28    "ERISA" means the Employee Retirement Income Security Act of 1974 as amended from time to time.

1.29    "Fiduciary" means any person to the extent that he (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority to control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan, or has any authority or responsibility to do so or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan. Such term includes persons designated by fiduciaries named in the Plan to carry out fiduciary responsibilities under the Plan.

1.30    "Hour of Service" means an hour for which an individual is paid or entitled to payment for the performance of duties by the Employer or Affiliated Company;

CBPJPMC00001661

-11-

provided that Appendix II shall apply to an Affiliated Company which is not an Employer and which keeps payroll records on the basis of hours worked.

1.31    "Interest Credit" means the amount credited to an account pursuant to Section 4.3.

1.32    "Interest Factor" means for any Valuation Date a constant yield compounded on a quarterly basis for each calendar quarter which yield would equal on an annualized basis the Interest Rate then applicable to the Account; provided that for any period less than a calendar quarter, the Interest Factor shall be the quarterly yield for the quarter in which the period falls multiplied by a fraction, the numerator of which is the number of days in such period over the total number days in such calendar quarter.

1.33    "Interest Rate" means, for a Plan Year, the average annual interest rates for one-year United States Treasury Constant Maturities for the months of September, October and November immediately preceding the Plan Year, as published in the Federal Reserve statistical Release L13 (415) (or if unavailable, a similar publication) (the "minimum rate") plus (ii) such additional interest rate, if any, as if established by the Administrator, in its sole discretion, for such Plan Year through written resolution adopted thereby (which written resolution shall

CBPJPMC00001662

-12-

constitute an amendment to the Plan). Notwithstanding the preceding sentence, the Interest Rate for a Plan Year shall not be greater than the lesser of (i) the sum of three percent (3%) plus the average annual interest rates for one-year United States Treasury Constant Maturities for the months of September, October and November immediately preceding the Plan Year (for which the Interest Rate is being established), as published in the Federal Reserve Statistical Release, L13 (415) (or, if unavailable, a similar publication) and (ii) fifteen percent (15%).

1.34    "Joint and 50% Survivor (Spouse) Annuity" means an annuity for the life of the Participant with a survivor annuity for the life of his Surviving Spouse which is 50% of the amount of the annuity which is payable during the joint lives of the Participant and such Spouse and which is the Actuarial Equivalent of the Lump Sum Accrued Benefit Amount of the Participant.

1.35    "Lump Sum Accrued Benefit Amount" means the Actuarial Equivalent of a Participant's Accrued Benefit when expressed as a single sum.

1.36    "Normal Retirement Age" means the later of age 65, or the 5th anniversary of the date the Employee was first employed by an Affiliated Company.

CBPJPMC00001663

-13-

1.37    "Normal Retirement Date" means the first of the month following the Employee's Normal Retirement Age.

1.38    "Notice to the Administrator" means written notice on a form provided by the Administrator which is properly completed and is delivered to the principal office of the Plan by hand or by mail, which notice shall be deemed to have been given when it is acknowledged by that office.

1.39    "Participant" means any Eligible Employee included in the Plan as provided in Article II, or as the context requires, an individual who was a Participant and (i) who has a Severance Date but not a Break in Service exceeding five years, (ii) is vested but has not received all benefits from this Plan, or (iii) who is no longer an Eligible Employee, but continues to be employed by an Affiliated Company.

1.40    "Participating Company" means any Affiliated Company which, with the consent of the Board, adopts the Plan by action of its board of directors.    (See Appendix IV.)

1.41    "PBGC" means the Pension Benefit Guaranty Corporation.

CBPJPMC00001664

-14-

1.42    "Period of Service" means the period determined in accordance with Article III or Appendix II, as applicable.

1.43    "Period of Severance" means the period between an Employee's Severance Date and his Date of Reemployment. A one-year Period of Severance means the 12-consecutive-month period beginning on an Employee's Severance Date and ending on the first anniversary of such date.

1.44    "Plan" means the Cash Balance Plan for Retirement of Chemical Bank and Certain Affiliates, as amended from time to time.

1.45    "Plan Investment Administrator" means the individual who is selected by the Board to be the investment administrator, absent a designation to the contrary, the individual who holds the title Chief Financial Officer of the Corporation or successor title.

1.46    "Plan Year" means each calendar year commencing January 1.

1.47    "Prior Plan" means the Retirement Plan of Chemical Bank and Certain Affiliates as in effect on December 31, 1988, prior to any amendment under this Plan with respect to the calculation benefits or Period of Service.

CBPJPMC00001665

-15-

1.48    "Prior Service Balance" means the amount described in Section 4.2.

1.49    "Prior Service Credit" means the amount described in Section 4.2.

1.50    "Program" means a voluntary retirement program (expiring on June 10, 1992), allowing an Eligible Retiree of the Corporation and certain Participating Companies to voluntarily terminate employment and receive an additional benefit hereunder.

1.51    "Salary-Based Credit" means the amount described in Section 4.3.

1.52    "Salary-Based Credit Balance" means the balance described in Section 4.3.

1.53    "Severance Date" means the earlier of:

(a)    the date on which an Employee quits, terminates, retires, is discharged or dies; or

(b)    the first anniversary of the last day worked immediately prior to a period in which an Employee remains absent from service (with or without pay) with an Employer or an Affiliated Company for any reason other than

CBPJPMC00001666

-16-

quit, termination, retirement, discharge or death; provided, however, the absence from service of an Employee receiving benefits under one or more long-term disability plans or programs of an Employer or an Affiliated Company is not a severance until the earlier of (i) Normal Retirement Date or (ii) the cessation of such disability payments; provided, further, that if such an Employee is entitled to disability payments after Normal Retirement Date, his Severance Date is the date such long-term disability benefits plan or program cease.

In the case of an Employee who is absent from work by virtue of (A) the Employee's pregnancy, (B) birth of the Employee's child, (C) placement of a child with the Employee by adoption, or (D) caring for any such child for a period of up to a year immediately following such birth or placement, the Severance Date is the second anniversary of the first day of absence from service.   Nevertheless, the period between the first and second anniversary of such first day of absence shall count neither as a Period of Service nor as a Period of Severance.

1.54    "Social Security Retirement Age" means the age used as the retirement age for the Participant under Section 216(1) of the Social Security Act, except that in applying the adjustments described in Appendix V to the Participant's maximum

CBPJPMC00001667

-17-

annual benefit, such section shall be applied without regard to the age increase factor and as if the early retirement age under Section 216(1)(2) of such act were age 62.

1.55    "Spouse or Surviving Spouse" means the person legally married to the Participant at the time of the Participant's death, or if earlier, as of the date the Participant commences to receive benefit under the Plan, and who survives such Participant; provided that a former spouse will be treated as a Surviving Spouse to the extent provided under a qualified domestic relations order as described in Section 414(p) of the Code.

1.56    "Transition Credit" means the amount determined under Section 4.2(b).

1.57    "Transition Factor" means for any Valuation Date the quarterly and partial quarter yield calculated in the same manner as the Interest Factor, except that the Transition Rate shall be used.

1.58    "Transition Rate" means the Interest Rate for any Plan Year multiplied by 1.25.

1.59    "Trust Fund" means the property which is from time to time held by the Trustee under the Agreement of Trust.

CBPJPMC00001668

-18-

1.60    "Trustee" means the trustee or trustees under the Agreement of Trust at the particular time.

1.61    "Valuation Date" means the last business day of each calendar quarter, <u>provided</u> that with respect to any required determination of a Credit Balance as set forth herein, it shall mean the day immediately preceding the date of the required determination.

# ARTICLE II

## Eligibility and Participation

2.1     <u>Eligible Employee</u>

An Employee of an Employer becomes an Eligible Employee if such Employee:

(a)     is an active Employee or is on an approved leave of absence, with or without pay, for a period not in excess of six months;

(b)     is on a U.S. payroll and pays tax in respect of his compensation imposed by the FICA;

CBPJPMC00001669

-19-

(c)    is not a "Leased Employee" as defined in Section 414(n) of the Code;

(d)    is not classified as an occasional, casual, temporary or seasonal Employee, and

(e)    is not an active participant in any other defined benefit plan of the Company, an Employer or an Affiliated Company.

2.2    <u>Participation</u>

(a)    An Eligible Employee becomes a Participant at the earlier of (i) or (ii).

(i)    Each Eligible Employee who was an active participant in the Prior Plan on December 31, 1988, becomes a Participant in the Plan as of January 1, 1989.

(ii)    Each other Eligible Employee becomes a Participant in the Plan on the first day of the calendar quarter coincident with or next following the completion of a one-year Period of Service (the "Eligibility Period"); or, if an Employee has satisfied the Eligibility Period, the date he becomes an Eligible Employee.

CBPJPMC00001670

-20-

(b)    An Employee who was a Participant prior to his Severance Date becomes a Participant again on his Date of Reemployment.

(c)    An Employee who was an Eligible Employee but not a Participant prior to a Severance Date becomes a Participant on the first day of the calendar quarter following the date that he has satisfied the Eligibility Period, or if later, his Date of Reemployment; provided that he has not incurred a Break in Service of one year during his Period of Severance.

(d)    A Participant who ceases to be an Eligible Employee but who continues to be an Employee shall not receive Transition Credits described in Section 4.2(b) and Salary-Based Credits in Section 4.3 but shall receive Interest Credit as described in Section 4.3(e).

## ARTICLE III

### Service

3.1    Periods of Service. Period of Service means the periods of service commencing on an Employee's Date of Employment or Date of Reemployment, whichever is applicable, and ending on any Severance Date, subject to the following rules:

CBPJPMC00001671

-21-

(a)    Unless otherwise specified herein, service before and after January 1, 1989,
will be aggregated for eligibility, vesting and crediting of benefits as
follows:

(i)    Periods of Service prior to the Effective Date will be determined as
if this Plan had been in effect since the Employee's Date of
Employment; provided, however, that if an Employee was a
participant in the Prior Plan on December 31, 1988, his Period of
Service as of the Effective Date will not be less than his Period of
Service as calculated under the Prior Plan; provided, further, for
purposes of calculating an accrued benefit under the Prior Plan,
only service as recognized under the Prior Plan shall be used.

(ii)    Except as provided in (iii) below, all Periods of Service after
January 1, 1989, will be determined under the terms of this Plan,
without reference to the Prior Plan.

(iii)    Notwithstanding anything to the contrary above, if an Employee
was a participant in the Prior Plan on December 31, 1988, and
incurred a Severance Date on or before December 31, 1990, Periods
of Service prior to January 1, 1991 for vesting, participation and

CBPJPMC00001672

-22-

benefit accrual purposes will be calculated under the Prior Plan;
provided that the service for purposes of determining the Accruing
Factor under this Plan includes all service as an Employee.

(b) A Period of Service will not include any period of employment with an
Affiliated Company prior to the date such company became an Affiliated
Company, unless specifically included by action of the Administrator.

(c) A Period of Service will include any period of time due to:

(i) service in the Armed Forces of the United States if the Employee
returns to employment with an Employer or an Affiliated Company
within 90 days after having become entitled to release from active
duty in the Armed Forces or after hospitalization continuing after
discharge for a period of not more than one year, and

(ii) a paid or unpaid leave of absence of up to 6 months authorized by
the Employer or Affiliated Company, and

(iii) service as a "Leased Employee" (within the meaning of Code
Section 414(n) of an Employer or an Affiliated Company in the

CBPJPMC00001673

-23-

case of a "Leased Employee" who is reclassified as an Eligible Employee; provided that service occurring after the date that an Eligible Employee becomes a Leased Employee shall also be included, and

(iv)   service while on a paid leave and job search plan or similar program of an Employer or Affiliated Company, and

(v)   a period of disability if receiving benefits under a long term disability plan or program of an Employer or Affiliated Company.

(d)   Service will include any period of time beginning on an Employee's Severance Date and ending on the date on which he next performs an Hour of Service; provided that such Hour of Service is performed within 12 months of the date his employment terminated or he was otherwise first absent from work, whichever is applicable. A Period of Severance unless described in the preceding sentence shall not constitute service.

(e)   Solely for purposes of Sections 4.5 and 6.6, Participant's Period of Service will not include any period of time prior to a Break in Service unless:

CBPJPMC00001674

-24-

(i)     the Employee was vested prior to the Break in Service; or

(ii)    the Employee's number of consecutive one-year Breaks in Service does not equal or exceed five:

(f)     Separate Periods of Service will be aggregated.

(g)     In the case of an Affiliated Company which is not an Employer and keeps its payroll records on the basis of hours worked, an Employee's Period of Service with such Affiliated Company will be based upon the definitions set forth in Appendix II.

## ARTICLE IV

### Account Balance

4.1     Accounts

(a)     As of the date an Eligible Employee becomes a Participant, an Account will be established with respect to such Participant. Credits will be made to the Account of a Participant pursuant to the provisions of this Article

CBPJPMC00001675

-25-

IV.  Accounts will be bookkeeping accounts, and neither the maintenance of, nor the crediting of amounts to, such Accounts will be treated as (i) the allocation of assets of the Plan to, or a segregation of such assets in, any such Account or (ii) as otherwise creating a right in any person to receive specific assets of the Plan.  Benefits provided under the Plan will be paid from the Trust Fund in the amounts, in the forms and at the times provided under the terms of the Plan.

(b)  The Account consists of two sub-accounts ———— the Prior Service Balance, if any, and the Salary-Based Credit Balance.  The Prior Service Balance consists of the Prior Service Credit plus Transition Credits.  The Salary-Based Credit Balance consists of Salary-Based Credits plus Interest Credits.  The aggregate of the two balances equals the "Credit Balance" of an Account.

4.2    (a)    <u>Prior Service Credit</u>

(i)  Notwithstanding anything herein to the contrary, the Prior Service Credit is not intended to be a Participant's accrued benefit under the Prior Plan as of January 1, 1989.

CBPJPMC00001676

-26-

(ii)    If an Eligible Employee becomes a Participant on January 1, 1989, and was an active participant in the Prior Plan on December 31, 1988, his Account will be credited as of January 1, 1989, with an amount equal to his Prior Service Credit as defined below. The Prior Service Credit is the present lump sum value of the benefit of the Participant under Section 4.1(a) or Section 4.1(c) (as applicable) of the Prior Plan as of the day immediately preceding January 1, 1989 based on his period of service under the Prior Plan that would have been considered participation for benefit accrual under such Plan, if the Participant had been in service with the Company during such period, and compensation, both as specifically recognized under the written terms and conditions of the Prior Plan up to such date, based on and subject to the following terms and conditions:

(A)    if a Participant was eligible to retire under the terms of the Prior Plan,

(i)    a 7.75% interest rate (compounded annually) for discounting is used, and

CBPJPMC00001677

-27-

> > (ii)   the benefit is assumed to be immediately payable and is reduced for the early retirement factors set forth in the Prior Plan,

> (B)   if a Participant was not eligible to retire under the terms of the Prior Plan, the following interest rates for discounting (compounded annually) are used:

> > (i)   7.75% for each year after age 62 or current age, if later;

> > (ii)   7.00% for each of the first 7 years preceding age 62 or current age, if later;

> > (iii)   5.75% for each of the next 8 years, and

> > (iv)   4.00% for each other year;

> (C)   UP-1984 Mortality Table is used;

CBPJPMC00001678

-28-

(D)    estimated Social Security earnings, as provided in Section
7.11 of the Prior Plan, unless the actual Social Security
earnings of a Participant through 1988 had been received on
or before December 31, 1990 are used;

(E)    any offsets or adds-on provided under the Prior Plan,
including those set forth in Section 4.1(b) of the Prior Plan,
are used;

(F)    compensation as defined in the Prior Plan (not adjusted for
the Applicable Amount if earned prior to January 1, 1989)
is used; and

(G)    periods of service excluded under the terms of a plan merged
with, or which was a predecessor plan of, the Prior Plan
(including that service set forth in Section 4.1(d), (e) and
(g) of the Prior Plan), is not taken into account under this
Section 4.2.

After the date of the distribution of his initial statement setting
forth the Prior Service Balance, a Participant will have 60 days to

CBPJPMC00001679

-29-

notify the Administrator, in writing, of any errors, in the data used to calculate his Prior Service Balance. Absent such notification, all calculations of the Prior Service Credit based on such data shall be final and conclusive as to the Participant.

(b)    **Transition Credit**

(i)    As of any Valuation Date, credits are made to the Prior Service Balance of each Participant equal to the Transition Credit. Such Transition Credit terminates on the earliest of the date that a Participant:

(A)    ceases to qualify as an Eligible Employee;

(B)    fails to return to service from an authorized leave of absence (including a leave for short-term disability), or

(C)    has a Severance Date.

(ii)    The Prior Service Balance of a Participant who is receiving or entitled to receive benefits under a long term disability plan or

GC: BP. SMITH: CASHBALA: AE4

-30-

program of an Employer will receive Transition Credits until the Participant's Severance Date.

(iii)    Following the date that the Transition Credit ceases, credits are made to the Prior Service Balance (as if such Balance were a Salary-Based Credit Balance) equal to the Interest Credit as set forth in Section 4.3.

(iv)    The Transition Credit for any Valuation Date equals the Prior Service Balance as of the immediately preceding Valuation Date multiplied by the Transition Factor.

4.3    <u>Salary-Based Credit Balance</u>

(a)    As of any Valuation Date, credits are made to the Account of each active Participant equal to the Salary-Based Credit. Such credits continue to be made for each Participant who continues to be an Eligible Employee after attaining Normal Retirement Date.

CBPJPMC00001680

-31-

(b)    The Salary-Based Credit equals the Compensation of the Participant earned for the period ending on the quarterly Valuation Date times the "Accruing Factor". The Accruing Factor is a percentage based upon the Participant's Period of Service as of the first day of the calendar quarter, ending on the Valuation Date, as follows:

| Period of Service | Percentage of Compensation |
|---|---|
| 1 to 10 years | 5% |
| 11 to 20 years | 6% |
| 21 or more years | 7% |

(c)    As of any Valuation Date, credits are made to the Salary-Based Credit Balance equal to the Interest Credit. Such Credits continue to be made for Participants who are Eligible Employees until such Credits cease in accordance with subsection (f) below.

(d)    The Interest Credit as of the Valuation Date equals the Salary-Based Credit Balance as of the immediately preceding the Valuation Date multiplied by the Interest Factor.

CBPJPMC00001681

-32-

(e)     The Salary-Based Credit and Interest Credits based upon an Interest Factor in excess of the minimum rate cease as of a Participant's Severance Date or the date he is no longer an Eligible Employee; provided that the Administrator in his discretion may provide that an Interest Factor in excess of the minimum rate shall apply.    Notwithstanding the immediately foregoing sentence, the Participant's Salary-Based Credit Balance will be increased by multiplying the appropriate Accruing Factor by Compensation paid after the Severance Date or the date he is no longer an Eligible Employee, but earned prior to such date.

(f)     Subject to (e) above, the Interest Credit ceases as of the day immediately preceding the Date of Distribution.  (For these purposes, the Date of Distribution is the date of a check (or if a transfer by electronic means, the date funds are available) representing a lump sum distribution or, for a periodic payment, the Annuity Starting Date.)

4.4     Disability and Military Service

(a)     In the event of short-term disability of a Participant, the Salary-Based Credit credited to the Participant's Salary-Based Credit Balance will be

CBPJPMC00001682

-33-

based on the Participant's Compensation paid during the period of disability; provided that it shall not include any state disability payments made after the date an Employer ceases the payment of Compensation. In the event of a long-term disability of a Participant who is entitled to benefits under a long-term disability plan or program of an Employer, the Salary-Based Credit credited to the Participant's Salary-Based Credit Balance on any Valuation Date will be based on the Participant's Compensation. Such increases in the Salary-Based Credit Balance will continue to be credited until the earliest of:

(i)     the date of a Participant's return to active employment with an Employer or an Affiliated Company, or

(ii)    his Severance Date.

(b)    In the event a Participant is credited with Service while on military leave pursuant to Section 3.1(c)(i), he will receive Interest Credits and Salary-Based Credits for such Period of Service upon his return to employment with the Employer or an Affiliated Company. The Salary-Based Credit credited to the Participant's Salary-Based Credit Balance will be based on the Participant's Compensation for the quarter immediately preceding the

CBPJPMC00001683

-34-

date of the leave.  His Prior Service Balance will be credited with the excess of (i) the Transition Credit from the date of the leave to the Date of Reemployment over (ii) the Interest Credits, if any, actually credited to his Prior Service Balance.

4.5    Accrued Benefit

The Accrued Benefit of a Participant, as of any determination date, is an increasing monthly annuity for the life of the Participant (without survivor benefits), commencing immediately, which is the Actuarial Equivalent of the Participant's Credit Balance as of the determination date.  Each January 1 following the determination date, the amount of the monthly annuity for that calendar year increases by the lesser of: (i) five percent (5%), or (ii) the rate or rates which would be used, as of such January 1 by the PBGC for purposes of determining the present value of the Participant's benefits under the Plan, as if the Plan had terminated on such January 1; provided, however, that the increase to be made as of the first January 1 following the determination date shall be reduced by one-twelfth (1/12th) for each month in the Plan Year preceding such January 1 for which Interest Credits were allocated to the Participant's Account under Section 4.3(c).

4.6    Special Rules – Termination of Employment After January 1, 1989 and Before January 1, 1991

-35-

(a)   An individual whose employment terminated employment with an Employer before the Effective Date (or before December 31, 1989 in the case of an individual employed by Chemical Bank New Jersey or any other Employer participating in the retirement plan maintained by Chemical Bank New Jersey) will not receive a Prior Service Credit. Such individual (or his Beneficiary) will receive any benefits due under the terms of the Prior Plan (or the retirement plan maintained by Chemical Bank New Jersey).

(b)   Subject to Sections 4.6(c) and (d), in the case of an individual who was an active participant in the Prior Plan on December 31, 1988, but whose Severance Date is on or before January 1, 1991, and who was not a highly compensated employee whose benefit was limited as of December 31, 1988, pursuant to the adoption of Alternative II. D. of IRS Notice 88-131, if the Lump Sum Accrued Benefit Amount exceeds the accrued benefit (converted on an Actuarial Equivalent basis to a lump sum) under the Prior Plan as of his Severance Date, such individual shall receive his Accrued Benefit under this Plan, in lieu of any benefit under the Prior Plan, in the form previously elected, if any. In the case of an individual who was an active participant in the Prior Plan on December 31, 1988, but whose Severance Date is on or before January 1, 1991, and who was

CBPJPMC00001685

-36-

a highly compensated employee whose benefit was limited as of December 31, 1988, pursuant to the adoption of the Alternative II. D. of IRS Notice 88-131, he shall receive the greater of the Actuarial Equivalent of his Accrued Benefit under this Plan as of his Severance Date or his accrued benefit under the Prior Plan determined as of December 31, 1988, in the form previously elected, if any.

(c)    If an individual described in paragraph (b) had elected and received a lump sum under the Prior Plan, the Credit Balance of such individual, after the reduction for the lump sum previously distributed, shall receive Interest Credits from the Severance Date to the day immediately preceding the Date of Distribution, which Date of Distribution shall be as soon as administratively feasible after January 1, 1991.

(d)    If an individual described in paragraph (b) has elected to receive an annuity under the Prior Plan, the amount of such annuity shall be recalculated, as of his Annuity Starting Date, based on the additional benefit payable under this Plan. The sum of the differences between the recalculated annuity amount and amounts actually received shall be paid in a lump sum with Interest Credits thereon from each such annuity payment date to the date immediately preceding the Date of Distribution,

CBPJPMC00001686

-37-

which Date of Distribution shall be as soon as administratively feasible after January 1, 1991. After such distribution, the individual shall receive the higher recalculated annuity amount.

(e)    In the event of the death of an individual described in paragraphs (c) or (d) prior to the Date of Distribution, his Beneficiary shall be entitled to have his benefit recomputed in conformity with the principles set forth in paragraphs (c) or (d).

4.7    Eligible Retiree and Certain Others.

(a)    Notwithstanding anything herein to the contrary, a Participant who is an Eligible Retiree shall receive an additional benefit equal to 10 percent of the greater of (i) such Participant's Account Balance as of the later of June 30, 1992 or the Date of Separation from Service or (ii) such Participant's frozen accrued benefit as of the later June 30, 1992 or the day following the Date of Separation from Service. Such additional benefit shall be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder. Such additional benefit shall be subject to Interest Credits (or in the case of a frozen accrued benefits,

CBPJPMC00001687