-38-

actuarial adjustments) only from the later of July 1, 1992 or day following the Date of Separation from Service.

(b)     A Participant (i) whose active employment terminated involuntarily between July 15, 1991 and June 30, 1992, as a result of a merger related downsizing due to the merger of the Corporation and Manufacturers Hanover Corporation and of certain of their Subsidiaries and who received a lump sum severance payment from his Employer, or (ii) whose inactive employment was specifically scheduled to terminate after July 1, 1992 as the result of the expiration of a paid leave of absence (unrelated to a short- or long-term disability) and who elected to terminate such leave status prior to its expiration, and who in either the case of (i) or (ii) would have been eligible to be treated as an Eligible Retiree but for such prior termination of employment or terminal paid leave of absence, shall receive:

(A)     with respect to annuity payments in pay status on July 1, 1992, an additional benefit equal to a 10 percent increase in each such annuity payment commencing with the first payment due on or after June 30, 1992;

CBPJPMC00001688

-39-

(B)      with respect to a lump sum distribution made prior to June 30, 1992, an additional benefit equal to 10 percent of such lump sum distribution payable as of June 30, 1992 to be paid as a lump sum; and

(C)      with respect to an Account Balance not in pay status as of June 30, 1992, a credit to such Account equal to 10 percent of the Account Balance (or frozen accrued benefit if greater) as of (x) the end of the third month following or coincident with the Date of Separation from Service of a Participant if the employment of the Participant terminated prior to June 30, 1992; or (y) the Date of Separation of Service if later than June 30, 1992; provided that any such additional benefit described herein shall be subject to Interest Credits or actuarial adjustments only from the later of July 1, 1992 or the Date of Separation from Service; and provided further that such additional benefit shall be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder.

(c)      No additional benefit shall be payable under this Section, unless the Eligible Retiree or Participant described in Section 4.7 (b), (i) executes a

CBPJPMC00001689

-40-

release in a form acceptable to the Administrator and which release is accepted in writing by the Administrator, (ii) is not deceased as of June 30, 1992 and (iii) terminates employment under terms and conditions specified by his Employer on a date agreed to by his Employer or terminates leave status.

## ARTICLE V

### Vesting

5.1    Vested Benefit

(a)    A Participant who has completed a Period of Service of at least 5 years has a nonforfeitable right to 100% of his Accrued Benefit; provided that (effective for termination after July 15, 1991) if the employment of a Participant terminates as a result of an Eligible Termination after a Period of Service of at least 4 years, such Participant shall have a nonforfeitable right to 100% of his Accrued Benefit.

(b)    Upon attainment of Normal Retirement Age, a Participant has a nonforfeitable right to 100% of his Accrued Benefit.

CBPJPMC00001690

-41-

(c)    When a Participant has a nonforfeitable right to 100% of his Accrued Benefit, he is entitled to Plan benefits pursuant to Sections 7.1 and 8.1.

(d)    Upon a Change in Control, a Participant has a nonforfeitable right to 100% of his Accrued Benefit, <u>provided</u> that neither the stockholder approval of the merger of the Corporation and Manufacturers Hanover Corporation nor the consummation of the merger shall constitute a Change in Control for purposes of this Section 5.1(d).

5.2     <u>Forfeitures</u>

(a)    A Participant who is not vested in his Accrued Benefit as of his Severance Date will be deemed to have received a cash-out of the vested portion of his Accrued Benefits, and the unvested portion shall be forfeited. The Accrued Benefit that has been forfeited is subject to being recredited pursuant to the provisions of Section 6.5.

(b)    Any forfeiture will be used to reduce the contributions to the Plan otherwise payable by the Employers and will not be applied to increase the benefits of any Participant, or retired Participant would otherwise receive under the Plan.

CBPJPMC00001691

-42-

5.3    Outstanding Checks

Notwithstanding any other provision of the Plan, in the event the Administrator, after reasonable effort, is unable to locate a Participant or Beneficiary to whom an outstanding check is payable with respect to benefits due from the Plan, such outstanding checks shall be canceled and used to reduce future Employer contributions; provided, however, that such benefit shall be restored (in an amount equal to the amount canceled) upon proper claim made by such Participant or Beneficiary prior to the termination of the Plan. Benefits canceled under this Section 5.3 shall be restored to the Participant or Beneficiary in the following order of priority:

(a)  from canceled benefits arising under this Section 5.3, and

(b)  from additional Employer contributions made to restore such canceled benefits.

CBPJPMC00001692

-43-

# ARTICLE VI

## Transfers and Reemployment

6.1    Transfer from One Employer to Another Employer

A Participant whose employment changes from one Employer to another without a Severance Date will continue to have his Account increased as provided under Article IV.

6.2    Transfer from Employer to a Non-Participating Company

As of the date that a Participant commences employment with an Affiliated Company that is not an Employer, the Credit Balance of an Account will be frozen other than for Interest Credit under Section 4.3. Service with such Affiliated Company will continue to be counted for purposes of vesting and the appropriate Accruing Factor, in the event that the Participant should return to service with an Employer.

6.3    Transfer from Non-Participating Company to Employer

As of the date that an Eligible Employee transfers from service with an Affiliated Company that is not an Employer to employment with an Employer, he will

CBPJPMC00001693

-44-

become a Participant if he has met the Eligibility Period; and his Period of Service with the Affiliated Company that is not an Employer shall count for purposes of vesting and determining the appropriate Accruing Factor.

6.4    Reemployment of Vested Participants

(a)    When an Employee who was a vested Participant prior to his Severance Date is reemployed by a Employer:

(i) if he has received a lump sum distribution, the Credit Balance of his Account is zero; and such Account is increased after the Date of his Reemployment only for Salary-Based and Interest Credits as provided under Article IV; or

(ii) if he has not received a lump-sum or annuity distribution under the Plan, the Credit Balance of his Account is equal to the amount credited to such Account as of the date of his Date of Reemployment and subsequent to his Date of Reemployment, his Account will be increased after the Date of Reemployment for Salary-Based and Interest Credits as

CBPJPMC00001694

-45-

provided under the Article IV; provided that his Prior Service Balance, if any, will receive Interest Credit only.

(iii)  If such a vested benefit was accrued under the Prior Plan and has not been distributed to him, he shall be deemed to have a Prior Service Balance based on his accrued benefit under the Prior Plan.  Such Prior Service Balance shall equal the lump sum Actuarial Equivalent as of his Date of Reemployment of his vested accrued benefit under the Prior Plan. Such Prior Service Balance shall receive Interest Credits only.  In no event will such Participant receive an Accrued Benefit hereunder less than his accrued benefit under the Prior Plan.

(iv)  subject to the provisions of Section 8.1(b), if an individual who is receiving a periodic benefit from the Plan becomes an Eligible Employee, payment of his benefit will thereupon cease; provided that such reemployed Participant is paid for at least 40 hours in each month of his reemployment by his Employer; provided, further, that the amount of benefit to cease does not exceed the "suspendible amount" determined in accordance with Department of Labor Regulation Section 2530.203-3. Upon his Date of Reemployment, such Participant will have a Credit Balance restored to him equal to the Lump Sum Accrued Benefit Amount

CBPJPMC00001695

-46-

as of his Annuity Starting Date plus Interest Credits to his Date of Reemployment Date and shall continue after such Date of Reemployment to receive credits under Article IV; _provided_ that his Prior Service Balance, if any, shall receive Interest Credits only. Upon a subsequent Severance Date, his benefit will be based on the total amount credited to his Account, inclusive of credits made both before and after his Date of Reemployment but offset by the Actuarial Equivalent at his final Severance Date of the benefits actually received prior to such Severance Date. The recommencement of benefit payments is treated as a new Annuity Starting Date and such Annuity Starting Date shall apply to benefit accruals both before and after the initial Annuity Starting Date; _provided_, _however_, subject to Section 8.4 and any outstanding qualified domestic relations order under Section 414(p) of the Code, he must make a new election as to the form of benefit with respect to his entire Credit Balance.

(b)  If an Eligible Employee who was a vested Participant prior to his Severance Date is reemployed by a non-Participating Company, he will continue to be entitled to receive his Accrued Benefit.

CBPJPMC00001696

-47-

(c)    In the event a Participant, whose periodic benefit has ceased pursuant to Section 6.4(a)(iii) is not paid for at least 40 hours in any month of his reemployment, such Participant's benefit shall again become payable above as of the following month, even though his employment has not actually terminated. If the Plan Administrator determines that a benefit has been paid to a reemployed Participant under this paragraph (c) for any month in which the Employee was paid for at least 40 hours, such amounts shall be deducted from future income payments in accordance with department of Labor Regulations Section 2530.203-3.

6.5    <u>Reemployment of Nonvested Participants</u>

If an individual who was a Participant and not vested in his Accrued Benefit as of his Severance Date is reemployed by an Employer or by an Affiliated Company within five years after his Severance Date such individual upon again becoming an Employee will have a restored Credit Balance equal to his Lump Sum Accrued Benefit Amount as of his Severance Date plus Interest Credits thereon to the Date of Reemployment, and such Credit Balance will again be determined as provided under Article IV; <u>provided</u> that his Prior Service Balance will be entitled to Interest Credits only.  If such individual is reemployed more than five years after his Severance Date so that he has incurred a Break in Service of five years or more, he will be treated as a new Employee, and his prior service

CBPJPMC00001697

-48-

(except for vesting purposes and for calculating his Accruing Factor) as well as his Credit Balance will be disregarded.

## ARTICLE VII

### Benefits

7.1     Plan Benefit

(a)   Subject to the terms and condition of this Article VII, a vested Participant will receive a retirement benefit as set forth in this Article VII.

(b)   In no event will the benefit provided under the Plan be less than the Participant's accrued benefit determined as of December 31, 1990, under the terms of the Prior Plan immediately prior to the Effective Date.  In the case of a highly compensated employee whose accrued benefit was limited as of December 31, 1988, pursuant to the adoption of Alternative II. D. of IRS Notice 88-131, the benefit provided under the Plan shall not be less than his benefit determined under the Prior Plan as of the Effective Date.   For these purposes, accrued benefit includes optional forms of

CBPJPMC00001698

-49-

distribution and retirement subsidies as defined in Section 411(d)(6) of the
Code.

7.2    <u>Normal Retirement Benefit</u>

On and after his Normal Retirement Age, a Participant who retires from active
employment with the Employer or an Affiliated Company will be entitled to his Accrued
Benefit.

7.3    <u>Form of Benefit</u>

(a)    The normal form of benefit (i) for a Participant who has a Spouse at his
Annuity Starting Date is a Joint and 50% Survivor (Spouse) Annuity and
(ii) for a Participant who does not have a Spouse at his Annuity Starting
Date, is his Accrued Benefit.   Benefits shall be paid in the applicable
normal form unless another form is elected pursuant to this Section 7.3.

(b)    Any vested Participant (subject to Section 8.4) who has not attained age
50 may elect by Notice to the Administrator within 90 days of the date of
his termination of employment with an Employer or Affiliated Company
either the normal form of benefits as described in Section 7.3(a) or as an

CBPJPMC00001699

-50-

optional form, either a single life annuity or a lump sum as provided in Section 7.4. Failure to elect within such period precludes a distribution of benefits to the Participant prior to the date that he attains age 50.

(c)  Any Participant whose employment has terminated with an employer or Affiliated Company and has attained age 50 may elect at any time to receive his benefit, subject to spousal consent as provided in Section 8.4, in any of the following optional forms of the benefit, in addition to the normal form provided under this Article VII. Each optional form will be the Actuarial Equivalent of his vested Lump Sum Accrued Benefit:

(i)  Single life annuity payable monthly during the lifetime of the Participant and ceasing at death;

(ii)  Joint and 50%, 66 2/3%, 75% or 100% survivor (Spouse or non-Spouse) annuity, or

(iii)  Five, ten or fifteen year certain and life pension.

(d)  A joint and survivor annuity is a monthly retirement benefit payable during the lifetime of the Participant with 50%, 66-2/3%, 75% or 100% of

CBPJPMC00001700

-51-

such benefit (as elected by Participant under this Plan) to be paid after the death of the Participant to his Surviving Spouse or other Beneficiary (as designated by the Participant under this Plan) for the lifetime of the Surviving Spouse or other Beneficiary if the Spouse or other Beneficiary survives the Participant. Such benefit to the Spouse or other Beneficiary is payable as of on the first day of the month following the date of the Participant's death and ends as of the first day of the month in which such Spouse or other Beneficiary dies.

(e)    A five, ten and fifteen year certain and life Pension is a monthly retirement benefit payable during the lifetime of the Participant with payments guaranteed for a period of five, ten or fifteen  depending upon the period elected by the Participant. If the Participant dies during the period of guaranteed payments, the remaining guaranteed payments are made to a primary Beneficiary (or to a secondary Beneficiary designated by him if the primary Beneficiary predeceases the Participant or fails to live for the balance of the guaranteed period). The commuted value of the payments are paid to the estate of the Participant, if no primary or secondary Beneficiary shall survive him, or to the estate of the last surviving Beneficiary, if such Beneficiary shall die after the Participant and before all payments have been distributed.

CBPJPMC00001701

-52-

(f)   If a Participant has elected a form of benefit and if payment of such benefit has not commenced, the Participant may elect to change his form of benefit to another form permitted by the Plan; <u>provided</u> that he gives Notice to the Administrator at least 30 days before the payment date. This election is treated as new election for purposes of Section 8.4.

(g)   If the Participant's Accrued Benefit is being distributed in the form a joint and survivor annuity for the joint lives of the Participant and a non-Spouse Beneficiary, annuity payments to be made on or after the date set forth in Section 8.1(b) to the Beneficiary after the Participant's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Participant using the table set forth in Q & A-6 of Proposed Treasury Regulation §1.401(a)(9) - 2.

(h)   Conversion factors for periodic payments are set forth in Appendix I.

7.4    <u>Lump Sum Cash-Out</u>

-53-

(a) In lieu of any benefit under this Article VII, and subject to proper election under Section 8.4, a Participant may elect to receive an immediate cash payment equal to his Lump Sum Accrued Benefit Amount.

(b) The lump sum cash payment under Section 7.4 (a) shall be paid in full and complete discharge of any obligation under the Plan and upon receipt by a Participant, such Participant and his Beneficiaries and Surviving Spouse shall have no further right to any benefit from the Plan.

(c) Election of a lump-sum cash payment requires proper consent of Participant's Spouse under Section 8.4. Payment of such lump-sum cash payment will be made as soon as administratively feasible after receipt of the proper Notice to the Administrator.

7.5     Death Benefit

If any vested Participant dies before payment of a retirement benefit has commenced, the Participant's Beneficiary will receive an immediate cash payment equal to his Lump Sum Accrued Benefit Amount as of the date of his death plus Interest Credit on the Credit Balance of the Account until the date immediately preceding the Date of Distribution, subject to the following:

CBPJPMC00001703

-54-

(a)  Unless otherwise properly waived and elected under Section 8.4, the Beneficiary of a married Participant is such Surviving Spouse.

(b)  Unless a Beneficiary who is a Surviving Spouse properly elects under Section 8.4, the Surviving Spouse will receive a single life annuity, which is the Actuarial Equivalent of the Participant's Lump Sum Accrued Benefit Amount beginning as of the first day of the month following the Participant's date of death; provided that such amount shall not be distributable absent consent prior to the date that the Participant would have obtained his Normal Retirement Age.

7.6      Small Benefits:  Lump Sum Cash-Out

If any Participant, Surviving Spouse or other Beneficiary is entitled to a benefit under the Plan the present value of which is not  in excess of $3,500 (or such higher amount as may be permitted by law), such benefit will be paid as soon as reasonably practicable in a single sum payment in full discharge of all obligations of the Plan with respect to such Participant, Surviving Spouse or other Beneficiary. In determining present value, the Actuarial Equivalent will be calculated on the basis of the assumptions set forth in Appendix I.

CBPJPMC00001704

-55-

7.7        Qualified Domestic Relations Orders.

If the Administrator receives and determines a court order dividing benefits hereunder to be a Qualified Domestic Relations Order within the meaning of Section 414 (q) of the Code, the amount so specified shall be payable as soon as administratively practical, treating the Participant as having obtained his "earliest retirement date" on the date of the order.

ARTICLE VIII

Distribution

8.1        Earliest and Latest Commencement of Benefits

(a)    Except as set forth below, a Participant's benefit shall not commence prior to the termination of his employment with the Company, all Participating Companies and all Affiliated Companies.

(b)    Notwithstanding anything herein to the contrary, distribution of the entire interest of each Participant who has not attained age 70 1/2 on December 31, 1986, and is not a five percent owner of an Affiliated

CBPJPMC00001705

-56-

Company (as defined in Section 416(i) of the Code) will be made or commence no later than the April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2 regardless of his employment status; provided, however, that the required commencement date for a Participant who is an Employee (other than a five percent owner) shall not be before April 1, 1990; provided, further, that with respect to a Participant who was age 70 1/2 on December 31, 1986, distribution of the interest of such Participant shall commence not later than the April 1 following termination of employment. A Participant may elect any form of benefit set forth in Article VII, but in no event will the period distribution exceed (i) the life of such Participant, or (ii) the lives of such Participant and his Beneficiary, or (iii) a period certain not exceeding the life expectancy of the Participant or the joint life expectancy of such Participant and his Beneficiary. In the event a Participant is required to receive benefits under this Section 8.1 (b) and subsequently incurs a Severance Date, he may reelect the form of payment of his payment; provided benefits shall be actuarially adjusted in a manner equivalent to that set forth in Section 6.4.

CBPJPMC00001706

-57-

(c)    All distributions shall be determined and made in accordance with the regulations under Section 401(a)(9) of the Code, including the minimum distributions of incidental benefits under such regulations.

8.2    <u>Normal Commencement of Benefits</u>

(a)    Subject to Section 8.1(b), a Participant whose employment with an Employer or an Affiliated Company has terminated may elect by proper Notice to the Administrator a distribution of his Accrued Benefit; <u>provided</u> that such Notice is received not later than 90 days after the date his Severance Date.  In the event of such election, his vested Accrued Benefit will be paid or payment will commence as soon as administratively practical following receipt of the Notice.  If a Participant fails to elect distribution of his vested Accrued Benefit within the period specified above, such benefit shall not be distributable until the first day of any month following his 50th birthday, as elected by the Participant subject to Sections 8.1(b) and 8.2(b).

(b)    In the absence of a proper election by Notice to the Administrator and subject to Section 8.1, a Participant shall begin to receive benefits not later than the later of

CBPJPMC00001707

-58-

    (i)   the 60th day after the close of the Plan Year in which the Participant attains Normal Retirement Age, or

    (ii)   the 60th day after the close of the Plan Year in which the Participant's employment terminates with the Company and all Participating Companies and Affiliated Companies, or

    (iii)   the tenth anniversary of the year in which the Participant commenced participation in the Plan.

(c)   Payment of benefits, other than any lump sum payment, will be distributed as of the first day of the month for which payment is due, subject to proper election under Section 8.4.

8.3    **Distributions After Participant's Death**

(a)   If the Participant dies after his Annuity Starting Date, the remaining portion of such benefit, if any, will continue to be distributed at least as rapidly as under the method of distribution being used prior to the Participant's death.

CBPJPMC00001708

-59-

(b)  If the Participant dies before his Annuity Starting Date and before distribution of his Lump-Sum Accrued Benefit Amount, the Participant's entire benefit will be distributed as soon as administratively practical following the date of his death but in no event later than five years after the Participants' death.

(c)  Notwithstanding paragraph (b) above, a Surviving Spouse entitled to a death benefit under Section 7.5 shall receive a single life annuity for the Spouse's life unless such Spouse elects a lump-sum distribution within 90 days of a Participant's death, or if later, the earliest date such amount becomes distributable, by Notice to the Administrator.

8.4    Election of Benefits

(a)  Subject to Section 8.1(b), notices of elections and applications for Plan benefits shall become effective only when made on a Notice to the Administrator; and the Administrator may delay payment of a benefit until said notices of elections and applications for Plan benefits are received by the Administrator.

CBPJPMC00001709

-60-

(b) In the absence of a proper election, a married Participant will be deemed to have elected a Joint and 50% Survivor (Spouse) Annuity and a single Participant will be deemed to have elected his Accrued Benefit in accordance with Section 8.2.

(c) With a proper election by Notice to the Administrator, a Participant may elect any form of benefit set forth in Section 7.3 or 7.4 and an eligible Surviving Spouse may elect an immediate cash payment as described in Section 7.5(a).

(d) For a married Participant, a proper election means a Notice to the Administrator by the Participant (during the 90 day period ending on the Annuity Starting Date, with respect to waiver of the joint and survivor) electing, with the consent of the Participant's Spouse to such election, any form of benefit other than a joint and survivor annuity with his Spouse as the Beneficiary and/or of any Beneficiary other than the Spouse. If the Participant divorces his Spouse prior to the Annuity Starting Date, any proper election made while the Participant was married to such Spouse remains valid unless the Participant makes another proper election, remarries or as otherwise provided in a qualified domestic relations order as described in Section 414(p) of the Code.

CBPJPMC00001710

-61-

(e)  In the absence of a proper election on a Notice to the Administrator, the Beneficiary of a Participant will be that Participant's Surviving Spouse, or if the Participant is not married, the Participant's estate.

(f)  The Spouse's consent to a non-Spousal Beneficiary or waiver of the joint and survivor annuity shall be valid only if it designates the specific alternate Beneficiary or form of benefits which may not be changed without consent of the Spouse (unless the consent expressly permits designation by the Participant without any requirement of further consent by the Spouse), it acknowledges the effect of such election or waiver, it is witnessed by a notary public and it is made 90 days or less before the Annuity Starting Date. Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of the Administrator that such written consent cannot be obtained because there is no spouse, the Spouse cannot be located or that other circumstances exist that make such consent not required in accordance with regulations issued by the Secretary of the Treasury, a waiver or election shall be deemed to be valid. Any consent necessary under this provisions shall be valid only with respect to the Spouse who signs the consent, or the event of a deemed election, the designated Spouse. Once a consent under this provision has been properly made, the Spouse may not revoke it unless the Participant

CBPJPMC00001711

-62-

agrees in writing. Any subsequent waiver of election by the Participant shall require a subsequent consent of the Spouse (unless the prior consent expressly permits designation of a Beneficiary or election of an optional form of benefit by the Participant without any further consent of the Spouse).

(g) Subject to paragraphs (e) and (f) above, the following terms and conditions shall apply to all Beneficiary designations made under the Plan:

(i) If multiple Beneficiaries are properly designated and such Beneficiaries are not classified as "primary" or "secondary" or "contingent" Beneficiaries, each Beneficiary shall be deemed to be entitled to receive any amounts payable from the Account of the Participant following the death of such Participant; provided that such Beneficiary or Beneficiaries survive such Person;

(ii) If a Beneficiary designation classifies the Beneficiaries designated as "primary" Beneficiaries and "secondary" or "contingent" Beneficiaries, the primary Beneficiary or Beneficiaries shall be deemed to be entitled to receive any amounts payable from the Account of the Participant following the death of such Participant;

CBPJPMC00001712

-63-

provided that such Beneficiary or Beneficiaries survive such Participant. The secondary or contingent Beneficiary or Beneficiaries shall be deemed to be entitled to receive any amounts payable from the Account of the Participant following the death of such Participant which death is preceded by the death of all primary Beneficiaries designated by such person.

(iii)   If multiple Beneficiaries are designated and are not classified, each shall be deemed to be entitled to an equal share of all amounts that become payable to such Beneficiaries, upon the same terms and conditions applicable to all other such Beneficiaries unless the Participant has specified the appropriate shares; provided, such designation of share shall not be effective for a Beneficiary, who is entitled to the distribution, and who shall predecease the Participant, then his share of the Account shall be divided equally among the remaining Beneficiaries of the same class. Unless otherwise specified, if multiple Beneficiaries are designated within the same class of Beneficiaries, each Beneficiary within the same class shall be deemed to be entitled to an equal share of all amounts that become payable to the Beneficiaries within such class, upon the same terms and conditions applicable to all other such Beneficiaries.

CBPJPMC00001713

-64-

(iv)  To the extent any person shall be required to survive another in order to become entitled to received payments from an Account under the Plan, if both such persons shall die in circumstances in which there is substantial doubt as to which shall have been the first to die, the person required to survive in order to be entitled to benefits shall be deemed to have predeceased the other.

(h)  If any Participant or Beneficiary who is entitled to receive payments hereunder incapable of receiving or disbursing the same by reasons of age, illness, infirmity, or any other incapacity of any kind, the Administrator upon receipt of satisfactory evidence of incapacity may direct the Trustee to apply such payment directly for the comfort, support, and maintenance of such Participant, or Beneficiary or to pay the same to any responsible person caring for the Participant or Beneficiary who is determined by the Administrator to be qualified to receive and disburse such payments for the benefit of such individual; and the receipt by such person shall be a complete acquittance for the payment of the benefit. Payments pursuant to this Section shall be a complete discharge to the extent thereof of any and all liability of the Company, Participating Companies, the Administrator, the Trustee and the Trust Fund.

CBPJPMC00001714

-65-

8.5    Information for Elections

(a)    The Administrator will provide written notification to each Participant within the 90 days immediately prior to his Annuity Starting Date. Such notification will include, but not be limited to, an explanation in nontechnical language of the normal and optional forms of payment under the Plan, a description of the circumstances under which the normal form of payment will be provided unless the Participant specifically elects otherwise, the fact that the Participant may reject the normal form of payment and elect an optional form of payment as described in Section 7.3(c), the fact that the Participant's Spouse has the right not to waive the normal form of payment, and the financial effect, in terms of dollars per annuity payment, of making any such rejection or election.

(b)    A Participant may reject his normal form of benefit and elect an optional form of benefit at any time during the 90 day period prior to his Annuity Starting Date.

(c)    The Administrator will provide to a Surviving Spouse, within a reasonable period of time after a written request has been made by the Spouse, a written explanation in nontechnical language of the survivor annuity and

CBPJPMC00001715

-66-

any other form of payment which may be selected. Such explanation shall state the financial effect (in terms of dollars) of each form of payment and is only required to be provided once with respect to any Participant.

8.6    Termination of Benefits

The last benefit payment under the Plan for a benefit of more than one payment shall be made for the month in which occurs:

(a)    in the case of a single life annuity, the death of the Participant;

(b)    in the case of a Surviving Spouse's benefit or a joint and survivor benefit, the later of the death of the Participant or the death of the Surviving Spouse (or if applicable, the death of the Beneficiary of such Participant), or

(c)    in the case of a life annuity with payments guaranteed, the later of the death of the Participant or the date on which the last guaranteed monthly payment is due.

8.7    Suspension of Benefits

CBPJPMC00001716

-67-

An active Participant who attains Normal Retirement Age but who does not have a Severance Date shall automatically have his benefit suspended in accordance with Section 6.4(a)(iii) as if he were a rehired vested Participant until he has a Severance Date. Such a Participant shall be given notification of this suspension in accordance with Department of Labor regulations.

ARTICLE IX

Administration

9.1      Administration

The Plan shall be administered by the Administrator who shall be a "named fiduciary" and shall be the "administrator" within the meaning of Section 3(16)(A) of ERISA. The Administrator shall have all powers necessary to administer the Plan except to the extent any such powers are vested in any other Fiduciary by the Plan or by the Administrator.   The Administrator may from time to time establish rules for the administration of the Plan, and he shall have the exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan including, but not limited to, the right to determine eligibility to participate or the rights to benefits. All his rules, interpretations and decisions shall be applied in a uniform

CBPJPMC00001717

-68-

manner to all Employees similarly situated and shall be conclusive and binding on the Employers and on Participants and their Beneficiaries. The Administrator shall compute and certify to the Trustee the amount of benefits payable or distributable under the provisions of the Plan to any Participant or Beneficiary.

9.2     Plan Expenses

All expenses that arise in connection with the administration of the Plan and the Agreement of Trust (whether external service providers or otherwise) including, but not limited to, the compensation of the Trustee and of any actuary, accountant, counsel, investment managers or advisers or other person appointed by the Administrator, Plan Investment Administrator, the Company or the Trustee shall be paid from the Trust Fund unless paid directly by the Company at its election. The Administrator will allocate among the Employers the appropriate share of expenses to be paid by each Employer.

9.3     Plan Investment Administrator

The Plan Investment Administrator shall handle the financial administration of the Plan, including forwarding all contributions to the Trustee. The Plan Investment Administrator shall be the "named fiduciary" with respect to control or management of the assets of the Trust Fund. As named fiduciary, the Plan Investment Administrator may

CBPJPMC00001718

-69-

appoint an investment manager (as defined in Section 3(38) of ERISA), which investment manager may be an Affiliate, to manage (including the power to acquire and dispose of) any assets of the Trust Fund. The Plan Investment Administrator shall monitor the investment results of any investment manager that has been appointed to manage assets under the Plan.

9.4     Employment of Agents

The Administrator and the Plan Investment Administrator may employ such counsel, agents and clerical, accounting and actuarial services as each may require in carrying out the provisions of the Plan, and, to the extent permitted by law, each shall be entitled to rely upon all tables, valuations, certificates, opinions, or other reports furnished by such persons.

Except to the extent required by ERISA or as otherwise directed by the Board, no bond or other security shall be required of the Administrator or Plan Investment Administrator as such.

CBPJPMC00001719

-70-

9.5    Fiduciary Duties

(a)    Every Fiduciary of the Plan, including the members of the Board, the Administrator, the Plan Investment Administrator and any person to whom such Fiduciary may, in accordance with the provisions of the Plan, delegate any power or duty in connection with the administration of the Plan, shall discharge his duties with respect to the Plan solely in the interest of the Participants and their Beneficiaries, for the exclusive purpose of providing benefits to such person and defraying reasonable expenses of administering the Plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

(b)    The members of the Board, the Administrator, the Plan Investment Administrator and any person to whom such individuals may delegate any of its powers under the Plan may employ persons to render advice with regard to any responsibility he has under the Plan.

(c)    No Fiduciary shall be liable for any act or omission of another person in carrying out any fiduciary responsibility where such fiduciary responsibility is allocated to

CBPJPMC00001720

-71-

such other person by or pursuant to the Plan except to the extent required in Section 405 of the Act.

(d)   Any person or group of persons may serve in more than one fiduciary capacity under the Plan.

9.6      Indemnification

Each Employer shall indemnify the Administrator and the Plan Investment Administrator (and their designees) against all liabilities and expenses, including attorneys' fees, reasonably incurred by him in connection with any legal action to which he may be a party, or any threatened legal action to which he may become or might have become a party, by reason of such position, except with regard to any matters to which he shall be adjudged to be liable for gross negligence or wilful misconduct in the performance of his duties hereunder.

ARTICLE X

Claims Procedure

CBPJPMC00001721

-72-

All claims for benefits under the Plan by a Participant or Beneficiary with respect to benefits not received by such person shall be made in writing to a person designated by the Benefits Appeal Committee for such purpose. If the designated person receiving a claim for benefits believes that the claim should be denied, he shall notify the claimant in writing of the denial of the claim within 90 days after his receipt thereof. Such notice shall (a) set forth the specific reason or reasons for the denial, making reference to the pertinent provisions of the Plan or the Plan documents on which the denial is based, (b) describe any additional material or information that should be received before the claim request may be acted upon favorably, and explain why such material or information, if any, is needed and (c) inform the person making the claim of his right pursuant to this Article X to request review of the decision by the Benefits Appeal Committee. Any such person who believes that he has submitted all available and relevant information may appeal the denial of a claim to the Benefits Appeal Committee by submitting a written request for review to the Benefits Appeal Committee within 60 days after the date on which such denial is received. Such period may be extended by the Benefits Appeal Committee for good cause shown. The person making the request for review may examine pertinent Plan documents. The request for review may discuss any issues relevant to the claim. The Benefits Appeal Committee shall decide whether or not to grant the claim within 60 days after receipt of the request for review, but this period may be extended by the Benefits Appeal Committee for up to an additional 60 days in special circumstances. If such an extension of time for review is required because of special circumstances, written notice of

CBPJPMC00001722

-73-

the extension shall be furnished to the claimant prior to the commencement of the extension. -The Benefit Appeal Committee's decisions shall be in writing, shall include specific reasons for the decisions and shall refer to pertinent provisions of the Plan on which the decisions are based.


## ARTICLE XI

### Amendment or Termination of the Plan


11.1    Amendments


The Plan may be amended retroactively or otherwise by action of the (a) Administrator if such amendments are of a technical or administrative nature; (b) Administrator, subject to the approval of the Compensation and Benefits Committee of the Board, if such amendments result in a change in the benefit structure hereunder or involve increased expense to the Employers; provided, however, that major revisions to the Plan (as determined by the Board) shall also be subject to the approval of the Board. No such amendment shall be effective unless the Plan as so amended continues to be for the exclusive benefit of Participants and their Beneficiaries, and no amendment shall deprive any such person of any Accrued Benefit.

-74-

11.2    <u>Voluntary</u>

The continuance of the Plan and the payment of contributions under the Plan are entirely voluntary and are not assumed as contractual obligations of any Employer. The Company (for itself and the other Employers) reserves the right, by action of the Board, to terminate the Plan in whole or in part at any time and for any reason.

11.3    <u>Termination</u>

(a)    In the event of termination or partial termination of the Plan, assets of the Plan allocable to affected Participants shall be allocated to affected Participants in accordance with Section 4044 of ERISA, except as the PBGC or the Internal Revenue Service may otherwise direct. Any such allocated amounts shall be applied in the manner determined by the Administrator to the payment of benefits to the persons entitled thereto.

(b)    In the event of termination or partial termination of the Plan, the Accrued Benefit credited to affected Participants on the date of such termination or partial termination, to the extent not already vested, shall be fully vested and nonforfeitable to the extent funded as of such date; <u>provided</u>, <u>however</u>, that in the event of the termination of the Plan a Participant shall not have recourse toward satisfaction of any nonforfeitable benefits other than from the Trust Fund and the PBGC.

CBPJPMC00001724

-75-

(c)   Any assets remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employers.

11.4      Section 401(a)(4) - Restriction on Benefits and Distribution

(a)   In the event of a termination of the Plan, benefits and distribution shall be restricted for any Restricted Employee or Restricted Former Employee as set forth below.

(b)   In the event of a termination of the Plan, benefits of a Restricted Employee or Restricted Former Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(c)   Annual payments to any Restricted Employee or Restricted Former Employee shall be limited to an amount equal to the payments that would be made on behalf of such Employee's under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and other Benefits, if any, under the Plan. Notwithstanding the foregoing, this paragraph (c) shall not apply if:

(i)   after the payment to the Restricted Employee or Restricted Former Employee of all Benefits and his Accrued Benefit, the value of the assets

CBPJPMC00001725

-76-

of the Plan equal or exceeds 110 percent of the value of all current liabilities as defined in Section 412(l)(7) of the Code, or

(ii)   the value of the Benefits for a Restricted Employee or Restricted Former Employee is less than one percent of the value of current liabilities, as defined in Section 412(l)(7) of the Code.

(d)      For the purpose of this Section 11.4.

(i)   "Restricted Employee or Restricted Former Employee" means a group of Employees or former Employees consisting of the 25 highest paid Employees or former Employees. For these purposes, compensation shall include all remuneration from an Employer.

(ii)   "Benefit" means loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee and any death benefits not provided for by insurance on an Employee's life.

ARTICLE XII

-77-

## Contributions and Funding

12.1    Agreement of Trust and Trustees

(a)    The Administrator, on behalf of the Employer, shall create and maintain a pension trust for the Plan and appoint from time to time a Trustee or Trustees for the pension trust. The Administrator and Trustee shall enter into an Agreement of Trust which sets forth such powers in the Trustee as to investment, reinvestment, control, and disbursement of the funds as the Administrator shall designate and as shall be in accordance with the Plan and applicable law. The Agreement of Trust shall be deemed to be part of the Plan. To the extent restrictions on investments may be lawfully waived, the Trustee may be authorized by the Administrator to make investments not otherwise permitted by law to trustees, and (without limiting the generality of the immediately preceding clause) the Trustee may be authorized to invest in common and preferred stocks. The Administrator may remove any Trustee at any time, upon reasonable notice, and upon such removal or upon the resignation of any trustee the Administrator shall designate a successor Trustee or Trustees.

CBPJPMC00001727

-78-

(b)     All assets of the Plan shall be held as a trust for use in providing the benefits and paying the expenses of the Plan. No part of the assets, corpus or income, shall be used for, or diverted to, any other purposes prior to the satisfaction of all liabilities for benefits under the Plan.

No person shall have any interest in, or right to, any part of the earnings of the pension trust, or any rights in, or to, or under the pension trust or any part thereof, except expressly provided herein.

## 12.2    No Contributions by Participants

All contributions to provide benefits under the Plan shall be made by the Employers and no contribution shall be required of or allowed by Participants.

## 12.3    Contributions Irrevocable

Subject to the provisions of Section 12.4, all contributions made under the Plan by the Employers shall be irrevocable, and shall be transferred by the Employers to the Trustee or Trustees under the Plan, to be used in accordance with the provisions of the Plan, for the exclusive benefit of the Participants and Beneficiaries and defraying reasonable expenses of administering the Plan.

CBPJPMC00001728

-79-

12.4      Exceptions to Section 12.3

(a)   All contributions to the Plan are made subject to the conditions that they are currently deductible under Section 404 of the Code. In the event that all or part of the deductions under Section 404 of the Code for contributions to the Plan are disallowed or otherwise determined to be nondeductible by the Internal Revenue Service, the portion of the contributions to which such disallowance or determination applies shall be returned to the Employer within one year after disallowance of the deduction.

(b)   Notwithstanding any other provision of the Plan, the Employer may recover the amount of its contribution to the Plan made on account of a mistake of fact provided that such recovery is made within one year after the payment date of such contribution.

(c)   Any contribution returned pursuant to paragraphs (a) or (b) above shall be adjusted to reflect its proportionate share of the Trust Fund's loss, if any, but not of the Trust Fund's gain.

12.5      Funding Policy

CBPJPMC00001729

-80-

The Administrator and Plan Investment Administrator shall review all pertinent Employee information and Plan data to establish the Plan's funding policy and to determine appropriate methods to carry out the Plan's objectives. The Plan Investment Administrator shall from time to time inform any investment manager of the Plan's short-term financial needs so the investment policy can be coordinated with the Plan's financial requirements.

## ARTICLE XIII

### General Provisions

13.1    Not a Contract

The Plan shall not be deemed to constitute a contract between any Employee and any Affiliated Company, or to be a consideration or an inducement to any employee for his employment by an Affiliated Company. Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the employ of the Company or an Affiliate or to interfere with the right of the Company or an Affiliate to discharge or to terminate the employment of an employee at any time without regard to the effect of such action on his rights under the Plan.

CBPJPMC00001730

-81-

13.2    <u>Severance Date</u>

Unless otherwise expressly provided in the Plan, all benefits in respect of any Participant shall be determined in accordance with the provisions of the Plan as in effect on the date of such Participant's Severance Date. In order to receive any benefits under the Plan, a Participant must furnish to the Administrator such information as it may reasonably require for purposes of the proper administration of the Plan.

13.3    <u>No Assignment</u>

Any benefit payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, lien or charge, and any attempt to cause any such benefit to be so subjected shall not be recognized except to such extent as may be required by law. The preceding sentence shall also apply to the creation, assignment or recognition of any right to any benefit payable with respect to a domestic relations order, unless such order is determined to be a "Qualified Domestic Relations Order" as defined in Section 414(p) of the Code, or any domestic relations order entered before January 1, 1985.

13.4    <u>Plan Merger</u>

-82-

In the event of any merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to, any other pension plan qualified under Section 401(a) of the Code, each Participant shall (if such other plan then terminates) be entitled to receive a benefit immediately after any such merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

13.5     Governing Law

The Plan shall be administered and construed in accordance with the laws of the State of New York, except as such laws may be superseded by ERISA. Anything in the plan or any amendment thereof to the contrary notwithstanding, no provision of the plan shall be construed so as to violate the requirements of ERISA or the requirements of the Code necessary for qualification of the Plan under Section 401(a) thereof.

13.6     Appendices

Appendices I, II, III, V and VI which appear on the following pages, are a part of this Plan.

CBPJPMC00001732