UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
FRANK BILELLO, individually and on behalf of all             :
others similarly situated,                                   :  Via ECF
                                    Plaintiff,               :
                                                             :  Case No.: 07-CV-7379(RJS)
                      vs.                                     :
                                                             :
JPMORGAN CHASE RETIREMENT PLAN,                              :
JPMORGAN CHASE DIRECTOR OF HUMAN                             :
RESOURCES, as administrator of the JPMorgan                  :
Chase Retirement Plan,                                       :
                                    Defendants.              :
-------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

SIMPSON THACHER & BARTLETT LLP
Thomas C. Rice, Esq. (TR-1996)
Jonathan K. Youngwood, Esq. (JY-2234)
425 Lexington Avenue
New York, New York 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

JPMORGAN CHASE LEGAL DEPARTMENT
Meryl R. Kaynard, Esq.
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
Telephone:  (212) 552-6825

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ..................................................................................3

    A.    Cash Balance Plans ..........................................................................3

    B.    The Cash Plan for Retirement of Chemical Bank and Certain Affiliates ...............6

    C.    Subsequent Retirement Plan Mergers ...................................................7

ARGUMENT ..................................................................................8

I.    PLAINTIFF'S NOTICE CLAIMS (COUNTS I, II, III) FAIL TO SATISFY THE
BASIC PLEADING REQUIREMENTS OF RULE 8 OF THE FEDERAL
RULES AND OTHERWISE FAIL TO STATE A CLAIM ................................................8

    A.    Plaintiff's Notice Claims Are Impermissibly Vague ...............................................9

    B.    Where The Complaint Contains Any Detail, That Detail Demonstrates The
Absence Of A Cognizable Claim..........................................................11

II.    COUNT IV OF THE COMPLAINT FAILS TO STATE A CLAIM FOR
RELIEF:  ERISA'S ANTI-BACKLOADING PROVISION DID NOT
PROHIBIT THE 1991 CONVERSION OF CHEMICAL'S RETIREMENT
PLAN TO A CASH BALANCE PLAN OR RENDER ANY OF THE TERMS
OF THAT CONVERSION ILLEGAL ..........................................................15

III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED..........................................................21

CONCLUSION..................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06-Civ-5383, 2007 WL 2077153 (S.D.N.Y. July 20, 2007) ..................................................... 9

*Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139 (D. Ariz. 2005) ............................................................................................................................. 18

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................ 8, 9

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ..................................... 12

*Bryerton v. Verizon Commc'ns, Inc.*, Docket No. 07-1680 (2d Cir.) ............................... 2

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44 (2d Cir. 1999) ......................................................................................................... 21, 22

*Cedotal v. Whitney Nat'l Bank*, No. 94-1397, 2007 WL 2264438 (E.D. La. Aug. 3, 2007) .......................................................................................................... 14

*Charles v. Pepco Holdings, Inc.*, Nos. 05-702-SLR, 06-010-SLR, 2007 WL 2719857 (D. Del. Sept. 19, 2007) ............................................................................. 16

*County Concrete Corp. v. Twp. of Robury*, 442 F.3d 159 (3d Cir. 2006) ..................... 18

*Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007) ......................................... 2

*Eaton v. Onan Corp.*, 117 F. Supp. 2d 812 (S.D. Ind. 2000) ........................................... 5

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) ................................................ 4, 5

*Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485 (D.N.J. 2007) ...................... 18, 20

*Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006) ........................................................................... 4, 5

*Hirt v. The Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331 (S.D.N.Y. 2006) ........................................................................................................ 21, 23

*Hirt v. The Equitable Ret. Plan for Employees, Managers and Agents*, Docket Nos. 06-4757, 06-5190 (2d Cir.) ............................................................................ 2

*In re JPMorgan Chase Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007) ..................................... 2

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ............................................................... 9, 10

*Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL
2456625 (S.D.N.Y. Aug. 29, 2007) ................................................................. 9

*King v. Pension Trust Fund of the Pension, Hospitalization and Benefit
Plan of the Elec. Indus.*, No. 01-CV-2604 (ILG), 2003 WL
22071612 (E.D.N.Y. Sept. 5, 2003)................................................................. 16

*Langman v. Laub*, 328 F.3d 68 (2d Cir. 2003) ............................................................. 17

*Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537 (S.D.N.Y.
2006) ................................................................................................................. 4

*Miles v. N.Y. State Teamsters of Conf. Pensions & Ret. Fund Employee
Pension Benefit Plan*, 698 F.2d 593 (2d Cir. 1983)........................................ 21

*Register v. PNC Fin. Serv. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) ................................. passim

*Reyes v. City University of New York*, No. 06-Civ-3639, 2007 WL
2186961 (S.D.N.Y. July 26, 2007) .................................................................. 9

*Richards v. Fleetboston Fin. Corp.*, No. 3:04-cv-1638 (JCH), 2006 WL
2092086 (D. Conn. July 24, 2006) ("*Richards I*").......................................... 19, 20

*Richards v. FleetBoston Financial Corp.* ("*Richards II*"), 427 F. Supp. 2d
150 (D. Conn. 2006) ......................................................................................... 20

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)........................................................... 12

*Seabrook v. City of New York*, 509 F. Supp. 2d 393 (S.D.N.Y. 2007) ............................. 9

*Uhlein v. Seymour,* No. 7:03-CV-1147 (TJM/GHL), 2006 U.S. Dist.
LEXIS 16742 (N.D.N.Y. Apr. 6, 2006)............................................................ 11

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, No. 06-
cv-500-DRH, 2007 WL 2608875 (S.D. Ill. Sept. 6, 2007)............................. 20

**Statutes**

29 U.S.C. § 1002(34) ....................................................................................................... 4

29 U.S.C. § 1002(35) ....................................................................................................... 3

29 U.S.C. § 1022(a) ......................................................................................................... 10

29 U.S.C. § 1024(b) ......................................................................................................... 10

29 U.S.C. § 1053(a) ......................................................................................................... 17

29 U.S.C. § 1053(a)(2)..................................................................................................... 16

29 U.S.C. § 1054(b)(1)(A) ........................................................................... 15

29 U.S.C. § 1054(b)(1)(B) ...................................................................... passim

29 U.S.C. § 1054(b)(1)(C) ........................................................................... 15

Pub. L. No. 107-16 § 659(b) (2001) ........................................................... 12

Pub. L. No. 99-272, 100 Stat. 82 § 11006 (1986) ................................. 11, 12

## Regulations

29 C.F.R. § 2520.104b-3 ............................................................................ 10

H.R. Rep. No. 93-807 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4670,
    4688 ................................................................................................... 16

## Other Authorities

Pension Benefit Guaranty Corp., Pension Insurance Data Book 2005, 61
    (2006), http://www.pbgc.gov/docs/2005databook.pdf ...................................... 6

Defendants JPMorgan Chase Retirement Plan and JPMorgan Chase Director

Human Resources (collectively, "Defendants") respectfully submit this memorandum of law in

support of their motion to dismiss the Class Action Complaint (the "Complaint")[1] pursuant to

Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, a participant in the JPMorgan Chase Retirement Plan (the "JPMC

Plan"), brings this purported class action on behalf of participants in certain predecessor

retirement plans to the JPMC Plan, of which Plaintiff was a participant.  Specifically, Plaintiff

asserts claims relating to the Cash Plan for Retirement of Chemical Bank and Certain Affiliates

(the "1991 Chemical Cash Plan"), the Retirement Plan of Chemical Bank and Certain Affiliated

Companies (the "1993 Chemical Plan"), and the Retirement Plan of The Chase Manhattan Bank

& Certain Affiliated Companies  (the "1997 Chase Plan").  Each of these retirement plans was a

defined benefit plan under Employee Retirement Income Security Act ("ERISA").  They were

"cash balance plans," a common form of defined benefit plan, in which an employee's retirement

benefit is recorded as a balance in a notional account.  The balance in the notional account is

comprised of "pay credits" (a percentage of the employee's pay) and "interest credits" (which are

applied to the notional account) that accrue over time.  When an eligible participant elects to

receive his or her vested retirement benefits, the benefit is paid either as a lump sum or an

annuity, based on the balance reflected in the notional account.

Each of Plaintiff's claims stems from the conversion of one of the predecessor

retirement plans to a cash balance retirement plan, or the merger of two plans resulting in a new

cash balance plan.  The claims relate to Defendants' compliance with the various ERISA notice

---

[1]     A copy of the Complaint is annexed as Exhibit A to the Notice of Motion filed herewith.

and communication requirements in connection with the plans, and an alleged legal defect in the 1991 Chemical Cash Plan.  More specifically, the Complaint asserts that (1) Defendants failed to comply with the notice and disclosure requirements of ERISA in connection with either the original conversion to a cash balance plan or a merger resulting in a cash balance plan (Counts I, II and III; collectively, the "notice claims"), and (2) the 1991 Chemical Cash Plan is impermissibly "backloaded" in violation of 29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B) (Count IV).  The Complaint is essentially limited to events that took place in the early to mid-1990s.[2]

Plaintiff's claims should be dismissed.

The vast majority of Plaintiff's notice claims, contained in Counts I, II and III of the Complaint, are so vague and general that they fail to satisfy Federal Rule of Civil Procedure 8(a).  Plaintiff's failure to provide any details whatsoever regarding the alleged flaws in the notices and other communications Plaintiff received with respect to at least three plan

---

[2]  In an action pending before Hon. Harold Baer, Jr., participants in the JPMorgan Chase Retirement Plan and its predecessor plans, represented by Plaintiff's counsel in this action, claim that the cash balance plans of JPMorgan Chase and its predecessor companies are age discriminatory in violation of 29 U.S.C. § 1054(b)(1)(H)(i), ERISA § 204(b)(1)(H)(i). Defendants' motion to dismiss this age discrimination claim was denied, and discovery is proceeding.  Plaintiffs' theory – that interest on cash balance plan accounts is age discriminatory because older employees may earn less interest through retirement than younger workers – is contrary to the overwhelming weight of authority, including decisions from each of the three Circuit Courts to have considered such a claim.  *See Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007) (holding that cash balance plans are not age discriminatory); *Register v. PNC Fin. Serv. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) (same); *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636 (7th Cir. 2006) (same).  The age discrimination issue is also before the Second Circuit in fully briefed appeals.  *Hirt v.The Equitable Ret. Plan for Employees, Managers and Agents*, Docket Nos. 06-4757, 06-5190 (2d Cir.); *Bryerton v. Verizon Commc'ns, Inc.*, Docket No. 07-1680 (2d Cir.).

Judge Baer certified a class in the case before him which includes age discrimination claims on behalf plan participants (including Mr. Bilello and the other participants he purports to represent in this action), *In re JPMorgan Chase Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007), but denied the plaintiffs in *In re JPMorgan Chase Litigation* the right to pursue in that action the notice claims that Mr. Bilello here asserts.  Plaintiffs withdrew a similar backloading claim in the prior action).  Judge Baer declined to accept this case as related to the *In re JPMorgan Chase Litigation* matter.

conversions and/or mergers over more than a 6-year period plainly fails to satisfy the Rule 8

standard recently articulated by the Supreme Court and the United States Court of Appeals for

the Second Circuit. *See infra* pp. 8-11.  Moreover, to the extent the Complaint provides any

detail to its otherwise impermissibly vague allegations, it demonstrates that the Plaintiff has no

claim.  Indeed, Count I's allegations concerning the timing and content of the notices provided in

advance of the 1991 Chemical Cash Plan fails to state a claim because, on the face of the

Complaint and the relevant notices attached to the Complaint as exhibits, Defendants satisfied

their obligations under ERISA. *See infra* pp. 11-15.

 Count IV also should be dismissed for failure to state a claim.  Plaintiff's claim is

virtually identical to "backloading" claims that have been universally rejected by the federal

courts that have considered them.  As those other cases have recognized, the theory underlying

Plaintiff's backloading claim contravenes the clear purpose and plain text of 29 U.S.C. §

1054(b)(1)(B). *See infra* pp. 15-21.

 Finally, the Complaint should be dismissed as time-barred.  Each of Plaintiff's

claims relate to notices, plan communications and events that took place more than 8 (and as

many as 17) years ago.  They therefore are stale under the applicable 6-year statute of

limitations. *See infra* pp. 21-23.

## FACTUAL BACKGROUND

### A. Cash Balance Plans

 Under ERISA, pension plans fall into two categories:  defined contribution plans

and defined benefit plans. *See* 29 U.S.C. § 1002(35) (defining "defined benefit plan") and

§ 1002(34) (defining "defined contribution plan).[3]  A defined contribution plan is one in which

---

[3] The law does not require employers to provide their employees with pension plans.  Where employers elect to do so, ERISA prescribes the rules.

the employer commits to contribute certain amounts to employee accounts. No particular retirement benefit is promised. The employer's obligation is met by depositing a promised contribution (for example, 5% of salary) into an employee's account. The employee bears the risks (and rewards) of how the contributed amounts are invested and perform.

A defined benefit plan, on the other hand, is a plan in which the particular retirement benefit is promised. No specific assets are set aside for the payment of any individual's benefit; rather the employer commits to pay retirement benefits to its employees based upon a benefit formula set forth in the pension plan and funds its aggregate expected obligations (to all participants) by making periodic contributions to a trust fund. That trust fund is invested and used to pay the promised benefits. Participants in defined benefit plans do not directly bear the risk of potentially low or negative investment returns on amounts contributed to the trust fund.

A cash balance plan is a kind of defined benefit plan. *See Esden v. Bank of Boston*, 229 F.3d 154, 158 (2d Cir. 2000). Under a cash balance plan, an employee's benefit is reflected in a notional account. Generally, this notional account is made up of two credits: "pay credits" and "interest credits." Specifically, "[b]enefits are credited to that 'account' over time, driven by two variables: (1) the employer's hypothetical 'contributions,' and (2) hypothetical earnings expressed as interest credits. Employer 'contributions' are usually expressed as a percentage of salary, the rate of which may vary with employee tenure." *Id.*; *Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*, 441 F. Supp. 2d 516, 520 (S.D.N.Y. 2006); *Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 541 (S.D.N.Y. 2006). Pay credits (the "contribution" element) can be based upon years of service, and are credited to an employee's notional account as a percentage of the employee's pay (*e.g.*, an employee making

4

$50,000 annually who is entitled to a 5% pay credit based on years of service will have $2,500 credited to his or her notional account). Interest credits (the "earnings" element) are generally the same for all employees, and are credited to the notional account by applying a common interest rate to the account balances.

Cash balance plans have advantages over many other types of plans for both employers and employees. For employers, cash balance plans are more predictable than certain other types of plans. In a defined benefit plan such as a final average pay plan,[4] the employer's cost and the employee's benefit depend upon future pay increases, which cannot be known as the benefit is accrued. For employees, cash balance plans are easy to understand and allow for an even accrual of benefits. Cash balance plans often offer departing employees the option of a lump sum benefit upon termination of employment and are typically more portable than other defined benefit plans, meaning that even employees that have several jobs in their career may accrue and vest in substantial retirement benefits that they can take with them. *See Hirt*, 441 F. Supp. 2d at 520 (noting that "[a]s the nation's work force became more mobile, the interest of participants in earlier vesting and more flexible portability of their retirement benefits also grew. Cash balance plans were introduced to satisfy these interests."); *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 832 (S.D. Ind. 2000); *Esden*, 229 F. 3d at 158 n.5.[5]

---

[4]  A "final average pay plan" is a type of defined benefit plan in which the annual retirement benefit for each employee is a percentage of an employee's final average salary over a designated period of years, multiplied by the employee's years of service. "For instance, an employee might accrue a pension of 1.5% of 'salary' for every year of service. After 30 years of service he would have a pension equivalent to 45% of 'salary.'" *Esden*, 229 F.3d at 158 n.4.

[5]  Cash balance plans are an integral part of this country's pension plan system. Over one quarter of the total working population covered by defined benefit plans are cash balance plan or other "hybrid plan" participants. *See* Pension Benefit Guaranty Corp., Pension Insurance Data Book 2005, 62 (2006), http://www.pbgc.gov/docs/2005databook.pdf.

**B.**    **The Cash Plan for Retirement of Chemical Bank and Certain Affiliates**

Chemical Bank, the plan sponsor, amended its retirement plan as of January 1,

1991 (the "Cash Plan Amendment"), resulting in the 1991 Chemical Cash Plan. (Compl. ¶ 21).

The 1991 Chemical Cash Plan was a cash balance plan, whereas the pre-amendment Chemical

Plan provided retirement benefits pursuant to a final average pay formula. (*Id.* ¶¶ 22-23).

As of January 1, 1991 a "bookkeeping account" was set up for each participant,

into which the pay credits and interest credits were to be added. (*Id.* Ex. 4 § 4.1(a)). The initial

account balance, or "Credit Balance," of this account was calculated as follows:

> The Account consists of two sub-accounts – the Prior Service Balance, if
> any, and the Salary-Based Credit Balance. The Prior Service Balance
> consists of the Prior Service Credit plus Transition Credits. The Salary-
> Based Credit Balance consists of Salary-Based Credits plus Interest
> Credits. The aggregate of the two balances equals the "Credit Balance" of
> an Account.

(*Id.* Ex. 4 § 4.1(b)). For the purposes of calculating this initial account balance, the January 1,

1991 cash balance formula was applied retroactively to January 1, 1989. (*Id.* ¶¶ 25, 32). As

such, the "Prior Service Credit" was the present value of the lump sum amount based on a

participant's final average pay benefit "immediately preceding January 1, 1989," plus transition

credits from 1989 forward, and the "Salary-Based Credit Balance" was the sum of pay credits

and interest credits that would have been accrued under the 1991 Chemical Cash Plan had it been

in effect since January 1, 1989. (*Id.* Ex. 4 §§ 4.2-4.3).

The Cash Plan Amendment ensured that no benefits that accrued under the old

plan through the end of 1990 would be lost. More specifically, the 1991 Chemical Cash Plan

provided a guaranteed minimum benefit set at the level of benefits an employee had accrued

under the old plan as of December 31, 1990:

> In no event will the benefit provided under the Plan be less than the
> Participant's accrued benefit determined as of December 31, 1990, under

6

the terms of the Prior Plan immediately prior to the Effective Date.

(*Id.* Ex. 4 § 7.1(b)).[6]

Active participants began accruing benefits under the 1991 Chemical Cash Plan cash balance formula on January 1, 1991 and stopped accruing benefits under the pre-amendment Chemical Plan final pay formula on December 31, 1990. Thus, as of January 1, 1991, there was a single applicable benefit accrual formula (the cash balance formula), just as prior to January 1, 1991 there had been a single applicable benefit accrual formula (the final pay formula).

As Plaintiff's Complaint acknowledges, Defendants distributed various communications which "announced to [the] employees that [the] traditional final average pay pension plan, would be converted to a 'Cash Plan' effective January 1, 1991." (*Id.* ¶ 23). As the Complaint also acknowledges, these communications included the notices attached as Exhibits 2 and 3 to the Complaint, distributed in July and September 1990, well-prior to January 1, 1991, the date of the conversion and the date on which a cash balance formula was first used to calculate an employee's retirement benefit. (*Id.* ¶¶ 23-24).

C.    **Subsequent Retirement Plan Mergers**

As the Complaint alleges, retirement plan mergers took place following the 1991 merger of Chemical Banking Corporation ("Chemical") and Manufacturer's Hanover Corporation ("MHT"), and then again following the 1996 merger of Chemical and The Chase

---

[6]    For example, consider a pre-amendment Chemical Plan participant who left Chemical on March 1, 1991 and elected to immediately receive his or her retirement benefit. As per the terms of the Plan, that participant was entitled to the greater of his or her hypothetical account balance on March 1, 1991, or the benefit he or she had accrued under the pre-amendment Chemical Plan through December 31, 1990.

Manhattan Corporation ("Chase").[7]  In connection with each of these plan mergers, Defendants

distributed additional notices as required by ERISA.  The Complaint asserts that these notices

were improper in only the most general and vague terms.  (*See id.* Count I, ¶¶ 60-61).

Defendants also from time to time distributed Summary Plan Descriptions

("SPDs"), in accordance with their ERISA statutory requirements, following the 1991, 1993 and

1997 plan conversions/mergers.  The Complaint vaguely asserts that these Plan SPDs were

somehow inadequate.  (*See id.* Count II).  Finally, the Complaint alleges, again in the vaguest of

terms, that there were unspecified inadequacies with unspecified "Plan SMMs" (or Summaries of

Material Modifications) that purportedly were distributed at unspecified times.  (*See id.* Count

III).

## ARGUMENT

**I.    PLAINTIFF'S NOTICE CLAIMS (COUNTS I, II, III) FAIL TO SATISFY THE
       BASIC PLEADING REQUIREMENTS OF RULE 8 OF THE FEDERAL RULES
       AND OTHERWISE FAIL TO STATE A CLAIM**

In *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitlement to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action
> will not do.  Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the allegations in

---

[7]  Following the 1991 merger of Chemical and MHT, their respective retirement plans
maintained by their banking subsidiaries merged, forming the 1993 Chemical Plan.  The
newly merged company retained the Chemical name.  Prior to the plan merger, the MHT
retirement plan was a final average pay plan and, as discussed above, the 1991 Chemical
Plan was a cash balance plan.  The 1993 Chemical Plan was a dual plan in which participants
received final average pay and cash balance retirement benefits.  Following the 1996 merger
of Chemical and Chase, their respective retirement plans maintained by their banking
subsidiaries merged, forming the 1997 Chase Plan, which was a cash balance plan.  Prior to
the plan merger, the Chase retirement plan was also a cash balance plan.  In 2000, a
subsequent merger between Chase and J.P. Morgan & Co., Inc. resulted in the formation of
J.P. Morgan Chase & Co., and was followed by a 2004 merger with Bank One Corporation.
Following the 2004 merger, the company retained the JPMorgan Chase name.

the complaint are true (even if doubtful in fact).

*Id.* at 1965 (internal citations omitted).  Following *Twombly*, the United States Court of Appeals

for the Second Circuit has articulated a "flexible 'plausibility standard,' which obliges a pleader

to amplify a claim with some factual allegations in those contexts in where such amplification is

needed to render a claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007);[8] *see,*

*e.g., Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL 2456625, at *4

(S.D.N.Y. Aug. 29, 2007) ("under [the *Twombly*] standard, a complaint may be dismissed where

it fails to plead 'enough facts to state a claim to relief that is plausible on its face.'"); *Seabrook v.*

*City of New York*, 509 F. Supp. 2d 393 (S.D.N.Y. 2007) (same).  Courts in this District have not

hesitated to dismiss claims that fail to satisfy this Rule 8 standard.  *See, e.g., Reyes v. City*

*University of New York*, No. 06-Civ-3639, 2007 WL 2186961, at *5 (S.D.N.Y. July 26, 2007)

(dismissing claims pursuant to, *inter alia*, Title VII of the Civil Rights Act); *Alexandra Global*

*Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06-Civ-5383, 2007 WL 2077153, at *9

(S.D.N.Y. July 20, 2007) (dismissing securities fraud claims).

### A.    Plaintiff's Notice Claims Are Impermissibly Vague

Here, the Complaint is hopelessly vague and non-specific and thus fails to satisfy

Rule 8.  Count II supposedly concerns inadequate SPDs.  During the time period at issue in the

Complaint, Defendants distributed four SPDs.  The Complaint, however, does not identify *any*

portions of *any* SPD that were misleading or state when *any* allegedly deficient SPD was

distributed.  Rather, the Complaint does no more than broadly allege that Defendants' SPDs were

inadequate and/or misleading, and untimely.  (*See, e.g.,* Compl. ¶ 74) ("Upon information and

---

[8]    In *Iqbal*, the Second Circuit made it clear that *Bell Atlantic* is not limited to antitrust cases:
"[T]he [Supreme] Court's explanation for its holding indicated that it intended to make some
alteration in the regime of pure notice pleading that had prevailed in the federal courts ever
since *Conley v. Gibson* was decided half a century ago." *Id.* at 155.

belief, to the extent Defendants issued any SPDs to Plan participants, none of the SPDs issued by

Defendants ... summarize their cash balance formulas in compliance with ERISA."). Such

allegations are merely a "recitation of the elements of" an inadequate SPD claim.[9] Plaintiff's

failure to plead sufficient factual allegations leaves Defendants in the dark about the alleged

inadequacies and renders it impossible for Defendants to move on the merits and mount a

defense.

Count III of the Complaint, concerning SMMs, is similarly deficient. None of

Plaintiff's allegations qualifies as anything other than a "recitation of the elements of" a cause of

action, in dire need of "amplification." Indeed, Count III is not amplified with even *one* specific

factual allegation, rendering it impossible to determine the plausibility of the claim. Further,

since SMM's are not periodically required communications, but rather are communications

required only in limited circumstances (*i.e.*, when there is a material change to a plan), factual

allegations as to *why* Defendants allegedly were required to distribute an SMM and, to the extent

Defendants allegedly did distribute an SMM, *what* was insufficient about them, are the bare

minimum needed to assess the plausibility of the claim and, hence, to satisfy Rule 8. *See* 29

U.S.C. §§ 1022(a), 1024(b); 29 C.F.R. § 2520.104b-3. Yet Plaintiff fails to provide any such

factual allegations.

Count I of the Complaint is only marginally better. The claim appears to be

directed to notices distributed preceding the 1991, 1993 and 1997 plan amendments and mergers.

However, with respect to two of the three sets of these notices – issued with respect to the 1993

and 1997 plan mergers – allegations are once again wholly conclusory and mere "recitations of

---

[9]    To the extent any of the relevant allegations for Count II could be characterized as factual,
they are undoubtedly in need of "amplification . . . to render [the claim] plausible." *Iqbal*,
490 F.3d at 157-158.

the elements of" an ERISA § 204(h) claim and they otherwise fail to provide the requisite

"amplification" to "raise a right to relief above the speculative level." (*See* Compl. ¶¶ 60, 61).

Indeed, the Complaint does no more than set forth the requirements of ERISA § 204(h) and then

summarily conclude that Defendants did not comply with those requirements. *Id.*[10]

It is thus clear that Plaintiff has failed to satisfy his Rule 8 obligations. Plaintiff's

failure to set forth sufficiently detailed allegations has rendered it impossible for Defendants to

respond to the claims and mount a defense. *See Uhlein v. Seymour*, No. 7:03-CV-1147

(TJM/GHL), 2006 U.S. Dist. LEXIS 16742, at *13 (N.D.N.Y. Apr. 6, 2006) (insufficient

allegations render it difficult to "shape a comprehensive defense and provides no meaningful

basis for the Court to assess the sufficiency of [plaintiff's] claims."). These notice claims should

therefore be dismissed.[11]

### B. Where The Complaint Contains Any Detail, That Detail Demonstrates The Absence Of A Cognizable Claim

To the extent the Complaint provides any detail about its notice claims – with

respect to its claim that notice of the Cash Plan Amendment violated ERISA § 204(h) – that

detail shows that Plaintiff has no claim. At the time of that amendment, ERISA § 204(h)

required that in the event of an amendment that would result in a significant reduction in future

---

[10] Complaint ¶ 60 contains two sentences that could, generously, be described as factual allegations, albeit far from sufficient to support the claim. First, the relevance of the fact that "a corporate 'Benefit Directions' brochure dated October 1992 devoted only one page to the retirement plan," is questionable at best. Second, that the November 1992 notice "touted the new formula's purported advantages, but provided no warning of its drawbacks," is likewise irrelevant to the ERISA § 204(h) claim because all ERISA required at the time was "written notice, setting forth the plan amendment and its effective date." Pub. L. No. 99-272, 100 Stat. 82 § 11006 (1986).

[11] Defendants granted counsel for Plaintiff permission to share with Mr. Bilello, for purposes of this action, certain documents previously produced in *In re JPMorgan Chase Cash Balance Litigation*, including copies of a vast majority of the communications distributed in the relevant time period. Thus, Plaintiff has no excuse for failing to satisfy the basic pleading requirements of Rule 8.

benefit accrual, a written notice must (1) be distributed to plan participants; (2) within the

required time; and (3) include the information prescribed by the statute. *See* Pub. L. No. 99-272,

100 Stat. 82 § 11006 (1986) ("[a] single employer plan may not be amended so as to provide for

a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan

amendment and not less than 15 days before the effective date of the plan amendment, the plan

administrator provides a written notice, setting forth the plan amendment and its effective date

to…each participant.").[12]  The notices of the Cash Plan Amendment satisfy each of these

requirements, and the Complaint fails to state a claim for relief.

      First, with respect to the distribution requirement, the Complaint expressly

acknowledges distribution of these notices.  (*See* Compl. ¶ 23) ("By letters dated July 25 and

July 30, 1990, Chemical Bank announced to its employees . . . ") and (*id.* Exs. 1 & 2) (attaching

the July communications, presumably from Plaintiff's files); (*id.* ¶ 24) ("Subsequently, in an

undated corporate brochure that appears to have been circulated in late summer 1990, Chemical

Bank, on information and belief, announced . . . ") and (*id.* Ex. 3; *id.* ¶ 33) ("In the fall of 1990,

Chemical Bank distributed brochures and booklets to Plan participants . . . " and "Chemical Bank

distributed a brochure to Plan participants dated September 17, 1990 . . . "); (*id.* ¶ 35)

("Corporate brochures distributed to Plan participants in the fall of 1990 . . . ").[13]

---

[12]   The requirements of ERISA § 204(h) were significantly changed by the Economic Growth
and Tax Relief Reconciliation Act of 2001 ("EGTRRA"), and the related regulations.  Pub.
L. No. 107-16 § 659(b) (2001).

[13]   On this motion to dismiss, the Court may consider the 1990 notices and the plan attached as
exhibits to the Complaint.  *See, e.g., Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000)
("For purposes of a motion to dismiss, we have deemed a complaint to include any written
instrument attached to it as an exhibit or any statements or documents incorporated in it by
reference . . . and documents that the plaintiffs either possessed or knew about and upon
which they relied in bringing the suit."); *see also Broder v. Cablevision Sys. Corp.,* 418 F.3d
187, 196 (2d Cir. 2005) ("Where a plaintiff has relied on the terms and effect of a document
in drafting the complaint, and that document is thus integral to the complaint, we may

Second, these notices were plainly sent more than 15 days prior to January 1, 1991, and Plaintiff does not even allege otherwise. (*See, e.g., id.* ¶ 32) (acknowledging notice was sent in July 1990).

Instead, Plaintiff alleges that because the 1991 Chemical Cash Plan utilized the cash balance formula retroactively to January 1, 1989 to arrive at a cash balance for participants as of January 1, 1991, the notice should have been given sometime in 1988. More specifically, Plaintiff alleges that "[a]lthough the Cash Plan's Effective Date was made retroactive to January 1, 1989 . . . participants did not receive any information regarding its implementation until eighteen months later, or July 1990. Thus, for eighteen months, participants were subject to a new Plan formula without being given a warning that their benefit structure had changed." (*Id.* ¶ 32).

This allegation, however, grossly misinterprets the Cash Plan Amendment, as reflected in the Plan documents attached to Plaintiff's Complaint. On January 1, 1991, all active pre-amendment plan participants had *actually* already accrued what would be their guaranteed minimum benefit as of December 31, 1990. To the extent the calculation of an opening balance for the new cash balance plan using the cash balance formula from January 1, 1989 to December 31, 1990 resulted in a smaller benefit, the 1991 Chemical Cash Plan specifically guaranteed that each participant would receive the greater benefit under the pre-amendment plan. No participant was subjected to reduced future benefit accruals between January 1, 1989 and December 31, 1990 as a result of the introduction of the cash balance formula, and therefore no ERISA § 204(h) notice was required prior to this time period. It was only beginning January 1, 1991 (the first day after the date used to calculate the guaranteed minimum benefit), that a participant could

---

consider its contents even if it is not formally incorporated by reference.") (internal citations omitted).

be subject to a reduced future benefit accrual under the 1991 Chemical Cash Plan. Thus, the timeliness of the notice under ERISA § 204(h) can only properly be judged with respect to January 1, 1991, and not, as Plaintiffs suggest, January 1, 1989, and against that date there is not even an allegation that the notices were untimely.

Finally, the notices were substantively compliant with ERISA. At the time of the Cash Plan Amendment, ERISA § 204(h) required that participants receive a notice "setting forth the plan amendment and its effective date." The September 1990 notice satisfied this requirement. The September 1990 notice clearly stated that "Cash Plan will begin January 1, 1991," thus satisfying the requirement of setting forth the effective date. Further, this notice also provided an extensive overview of the Cash Plan Amendment. The September 1990 notice contained, *inter alia*, the following sections: "How Cash Plan Works – An Overview," "Prior Service Balance," "Salary Based Credits," "Interest Credits," "Vesting," "Payment Options," as well as five examples of "how Cash Plan works for different employees." (Compl. Ex. 3). The detail in the September 1990 notice thus satisfied the requirement of setting forth the plan amendment.

Plaintiff's contention as to substantive adequacy is that the Defendants should have advised Plan participants *of the effect* of the Cash Plan Amendment by stating that "the Cash Plan amendment reduced future rates of benefit accrual, or that the Cash Plan amendment reduced rates of future benefit accrual with a participant's advancing age." (*Id.* ¶ 57). However, assuming *arguendo* that the Cash Plan Amendment had these effects, no such disclosure requirement existed at that time. *See Register* 477 F.3d at 73 ("The brochure set forth the plan amendment and the effective date. That explanation was all that was required."); *see also Cedotal v. Whitney Nat'l Bank,* No. 94-1397, 2007 WL 2264438, at *6 (E.D. La. Aug. 3, 2007)

14

(holding that at time notice was issued, an exact quotation of the text of the plan amendment was not required, nor did the notice need to explain how the individual benefit of each participant would be affected by the amendment).

In short, Plaintiff has failed to allege that the September 1990 notice violated ERISA § 204(h), and the portion of Count I which relates to notice of the 1991 Chemical Cash Plan should be dismissed.

## II.    COUNT IV OF THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF: ERISA'S ANTI-BACKLOADING PROVISION DID NOT PROHIBIT THE 1991 CONVERSION OF CHEMICAL'S RETIREMENT PLAN TO A CASH BALANCE PLAN OR RENDER ANY OF THE TERMS OF THAT CONVERSION ILLEGAL

Count IV of the Complaint alleges that the 1991 Chemical Cash Plan violated ERISA's backloading rules. Under ERISA § 204(b)(1)(B), a plan may be impermissibly "backloaded" if the accrual for an employee in one year is more than 133 1/3 percent higher than it is for any prior plan year. 29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B) ("the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year").[14] Plaintiff's backloading claim, however, fails both because Plaintiff has failed to adequately plead the claim and, as recognized by every court to have addressed the issue, because Plaintiff's backloading theory fails as a matter of law.

ERISA's backloading rules were enacted to protect younger employees by

---

[14] ERISA contains three alternative anti-backloading tests, each of which specifies how much of the pension benefit must accrue each year: the 3% rule, the 133 1/3% rule, and the fractional accrual rule. 29 U.S.C. § 1054(b)(1)(A), (B) and (C). Generally, cash balance plans comply with the 133 1/3 % rule.

ensuring that benefit accruals are not disproportionately accumulated in the later years of an

employee's career. "The purpose of the anti-backloading provision is to 'prevent an employer

from avoiding the vesting requirements[15] through minimal accrual of benefits in early years of

employment, followed by larger benefit accruals as an employee nears retirement." *Register*,

477 F.3d at 71; *see also Charles v. Pepco Holdings, Inc.*, Nos. 05-702-SLR, 06-010-SLR, 2007

WL 2719857, *5 (D. Del. Sept. 19, 2007) ("conclud[ing] that the objective of the anti-

backloading provisions is not implicated by the Cash Balance Plan at bar"); *King v. Pension*

*Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus.*, No. 01-CV-2604

(ILG), 2003 WL 22071612, at *13-14 (E.D.N.Y. Sept. 5, 2003) (finding that the policy behind

ERISA § 204(b)(1)(B) "renders [plaintiff's backloading] argument meritless"). The House

Report on the relevant ERISA provision – § 204(b)(1)(B) – notes: "[t]he primary purpose of

[minimum accrual rates] is to prevent attempts to defeat the objectives of the minimum vesting

provisions by providing undue 'backloading,' i.e., by providing inordinately low rates of accrual

in the employee's early years of service when he is most likely to leave the firm and by

concentrating the accrual of benefits in the employee's later years of service when he is most

likely to remain with the firm until retirement." H.R. Rep. No. 93-807 (1974), *as reprinted in*

1974 U.S.C.C.A.N. 4670, 4688.

      The backloading provision was plainly not designed to prevent employers from

amending existing plans from one benefit formula to another. To the contrary, the provision

expressly provides that a backloading analysis should *not* include a comparison of benefits under

---

[15] ERISA requires that benefits under a defined benefit plan must vest after an employee attains five years of service. 29 U.S.C. § 1053(a)(2). The anti-backloading provisions prevent an employer from effectively avoiding that rule by, for example, providing that participants accrue $1 per year for the first 29 years of service and accrue their full benefit in year 30, thus effectively providing for a 30-year vesting period.

a pre-amendment retirement plan formula to post-amendment benefits.  ERISA § 204(b)(1)(B) thus states that when performing a backloading analysis "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years."  29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B).  "In other words, the test applies to how a given plan operates at a given time and prevents it from being unfairly weighted against shorter-term employees."  *Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003).

Despite the purpose and express language of the statute, Plaintiff's backloading claim is firmly rooted in a comparison ERISA precludes.  The Complaint plainly asks this Court to compare accruals under the pre-amendment Chemical Plan final average pay formula with accruals under the post-amendment 1991 Chemical Cash Plan formula.  More specifically, Plaintiff contends that the preservation of already-accrued benefits, in the form of a minimum guaranteed value of a participants' benefit as of the date of conversion to the 1991 Chemical Cash Plan (which was required by ERISA's non-forfeiture rules),[16] meant that accruals under the 1991 Chemical Cash Plan formula did not really commence until the minimum guaranteed benefit was exceeded.  (Compl. ¶ 91).  Thus, the Complaint alleges, the 1991 Chemical Cash Plan created "a period of time for some participants during which their accrued benefit remained unchanged and their rate of benefit accrual went to zero.  Because any accrual rate is infinitely greater than zero, a zero accrual rate followed by any future accrual violates the 133 1/3 percent rule."  (*Id.* ¶¶ 91-92).  In short, Plaintiff complains of the existence of a "wear-away effect," which generally "occur[s] when a participant has years [of service] in which he accrues no

---

[16]    ERISA § 203(a) prohibits the forfeiture of already-accrued benefits in a defined benefit plan.  29 U.S.C. § 1053(a).  Thus, when a benefit formula changes, the benefit to which a participant was entitled under the prior formula as of the date of the change must be preserved, and the participant is entitled to the greater of what was previously accrued or the benefit that the new formula provides.

17

benefits, followed by years in which he begins again to accrue benefits." *Finley v. Dun &
Bradstreet Corp.*, 471 F. Supp. 2d 485, 493 (D.N.J. 2007).

As an initial matter, Count IV contains merely conclusory allegations with no
supporting factual allegations and, therefore, is insufficient to state a valid claim for relief.
Plaintiff Bilello never alleges that he faced years of accruing zero benefits or that he had a
subsequent year of receiving a non-zero benefit. Without such factual allegations, there can be
no violation of the 133 1/3 % rule. *See Finley*, 471 F. Supp. 2d at 494 (citing *County Concrete
Corp. v. Twp. of Robury,* 442 F.3d 159, 171 (3d Cir. 2006) ("To state a claim, the complaint must
allege *facts* supporting a finding of [injury].")).

But the fundamental defect in Plaintiff's backloading claim cannot be solved by
repleading. Indeed, backloading claims like Plaintiff's have been properly rejected by every
court that has considered them. *See, e.g., Register*, 477 F.3d at 72 ("[O]nce there is an
amendment to the prior plan, only the new plan formula is relevant when ascertaining if the plan
satisfies the 133 1/3 % test."); *Finley,* 471 F. Supp. 2d at 494 ("Plaintiff must calculate the entire
accrual history as if the [current cash balance plan terms] had been in effect for every year, and
thus that the [prior plan terms] had never been in effect."); *Allen v. Honeywell Ret. Earnings
Plan*, 382 F. Supp. 2d 1139, 1160 (D. Ariz. 2005) ("[O]ne does not compare the new formula
with the old formula; rather, the backloading question must be answered by considering the new
formula on a stand-alone basis.").

Plaintiff tries to overcome this overwhelming authority by contending that he is
not trying to compare benefits from one plan to benefits from the plan as amended. Instead, the
Complaint suggests that the pre-amendment Chemical Plan final average pay formula and the
cash balance formula under the 1991 Chemical Cash Plan are *both* a part of the 1991 Chemical

Cash Plan for purposes of benefit accruals. (*See* Compl. ¶ 94). However, the mere act of

referencing the terms of the pre-amendment Chemical Plan with respect to a benefit previously

accrued, and that acts as a minimum benefit (as legally required), in the post-amendment 1991

Chemical Cash Plan does not make the pre-amendment plan benefit accrual provisions part of

the post-amendment plan for benefit accrual purposes. *See Richards v. Fleetboston Fin. Corp.*,

No. 3:04-cv-1638 (JCH), 2006 WL 2092086, at *3 (D. Conn. July 24, 2006) ("*Richards I*")

(noting that "it would be impossible to treat all terms in both the Traditional and Amended Plans

as having been in effect for all plan years, because some of the terms conflict."). Moreover, if,

as the statute instructs, the cash balance plan is "treated as in effect for all . . . plan years," 29

U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B), then the minimum guaranteed minimum benefit

is irrelevant for the purposes of a backloading analysis and the so-called "wear-away effect"

would never occur.   In short, Plaintiff's claim fails as a matter of law.

Once again, this is the uniform holding of all of the courts that have addressed the

issue.  For example, in *Register v. PNC*, the United States Court of Appeals for the Third Circuit

faced a similar set of allegations regarding a plan amendment,[17] and rejected the appellants'

attempt to create a backloading claim based on the conversion of a traditional defined benefit

plan to a cash balance plan:

> [O]nce there is an amendment to the prior plan, only the new plan formula
> is relevant when ascertaining if the plan satisfies the 133 1/3 % test. *A
> participant's* election to retain his early *retirement benefits from the old*

---

[17] "Under the prior defined benefit plan, participants age 50 and older were entitled to an early
retirement benefit which included an early retirement subsidy.  When PNC converted its
prior plan to a cash balance plan, the participants were given the option of either receiving
the accrued early retirement benefits or the benefit they would have accrued under the cash
balance plan, whichever benefit is greater.  For those participants that chose to receive the
accrued early retirement benefits, their hypothetical benefits were frozen from the date of
conversion until their hypothetical account balances exceeded that amount.  Then, once the
cash balance exceed the accrued early retirement benefit under the prior plan, the credits into
the cash balance account would commence." *Register*, 477 F.3d at 71.

19

> ***plan is not relevant to this calculation. If we treat the amended plan as
> in effect for all other plan years, as Congress directs us to do, appellants
> never would have accrued a benefit under the old plan*** and would have
> started to accrue benefits under the cash balance formula from the
> beginning of their employment.  Accordingly, there is no violation of the
> anti-backloading provisions under appellants' aggregate formula theory.

477 F.3d at 72 (emphasis added).

In *Richards v. FleetBoston Financial Corp.* ("*Richards II*"), 427 F. Supp. 2d 150,

170-71 (D. Conn. 2006), the plaintiff made the very same argument as is asserted here – that the

alleged "wear-away effect" in a cash balance plan, which guaranteed that participants would

never receive less than their accrued benefit under the predecessor plan (there, the "Traditional

Plan"),  violated ERISA.[18]  Citing the plain language of § 204(b)(1)(B)(i) and the Second

Circuit's decision in *Langman,* the *Richards* court rejected this argument.  It explained that "[i]f

the Amended Plan is treated as having been in effect for all plan years, employees such as

Richards would never have accrued a benefit under the Traditional Plan, and would have started

accruing benefits under the cash balance formula from the start of their employment.  Assuming

such a scenario, such employees would suffer no backloading of benefits." *Id.* at 171. *See also,*

*Finley*, 471 F. Supp. 2d at 494-95 (rejecting plaintiff's attempt to overcome the statutory

prohibition against comparing benefits before and after a plan amendment by alleging that the

new plan utilizes a "'greater of' formula, which 'uses the benefits previously accrued under the

Traditional Plan Terms to calculate the new benefit accruals under the Cash Balance Terms.'");

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, No. 06-cv-500-DRH, 2007 WL

---

[18]   In *Richards v. Fleetboston*, Plaintiff similarly alleged that "[e]ven if the amendment that
introduced the cash balance terms into the Plan language is deemed to have been in effect for
every plan year…, the current plan language also includes the use of the Traditional Plan
Terms and thus the Traditional Plan Terms must be treated as being in effect for every plan
year too. [Plaintiff] argues that the Traditional Plan terms are 'integral' to the Amended
Plan." *Richards I*, 2006 WL 2092086, at *3.

2608875, at *12 (S.D. Ill. Sept. 6, 2007) (same).[19]

Plaintiff's backloading claim should be dismissed.

## III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Each of Plaintiff's claims should be dismissed for the additional reason that they are untimely.  "Because ERISA does not provide a statute of limitations, the most closely analogous state statute of limitations is to be applied."  *Hirt v. The Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006) (citing *Miles v. N.Y. State Teamsters of Conf. Pensions & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  "Under the New York Civil Practice Law and Rules, an action under a contract – for employee benefit plans, in effect, are contracts – must be commenced within six years."  *Id.* (citing N.Y. CPLR § 213).  Commencement of the running of the statute is governed by the federal common law discovery rule, which in the case of claimed ERISA violations is triggered when there is a "clear repudiation" of the rights alleged.  *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 47 (2d Cir. 1999).[20]

---

[19]    Plaintiffs allegation that "[t]he Internal Revenue Service has recently endorsed its long-standing position that a zero accrual rate that is followed by any future accrual is a *per se* violation of ERISA's anti-backloading standards," is quite misleading. (Compl. ¶ 93).  First, Plaintiff fails to cite to any specific IRS pronouncement.  Second, when the confronted with a similar (perhaps the same) argument, one court recently held: "The evidence before the Court does not show that the Service has adopted Plaintiffs' interpretation of the regulation, much less that such a position constitutes a longstanding agency interpretation" of the relevant statutes and regulations.  *Wheeler*, 2007 WL 2068875, at *15.

[20]    While the complaint does not indicate whether Plaintiff is asserting a claim for breach of fiduciary duty, such a claim would also be time-barred.  ERISA expressly provides that the statute of limitations for breach of fiduciary duty claims is the earlier of "(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113.  This limitations period began to run between 1990 and 1999, when Plaintiff received the communications in Claims I, II, and III and then knew or should have known of any claims for breaches of fiduciary duty.  Irrespective of whether the three or six year limitations period applies, any fiduciary breach claims would have run well before the filing of this lawsuit.

Here, the communications that are the subject of Counts I, II and III were
distributed between 1990 and 1999, and Plaintiff knew or should have known of his claims upon
receipt of these communications.   Thus, for example, when Plaintiff received notice in 1990
which stated that the 1991 Chemical Cash Plan "will be retroactive to January 1, 1989," (Compl.
Ex. 3 at JPMC00001734), Plaintiff had all the facts needed to allege, as he now has in Count I,
that notice was untimely.   The statute of limitations therefore ran on this notice claim no later
than 1996.  Similarly, the statute of limitations expired on Plaintiff's other claims no later than
2005 – nearly two years before this action was commenced.

The backloading alleged in Count IV supposedly commenced in 1991.  The
September 1990 notice clearly disclosed the minimum benefit feature that Plaintiff now alleges
gave rise to impermissible backloading.  (*Id.* Ex. 3 at JPMC00001737).  Thus, the statute of
limitations on Plaintiff's backloading claim ran in 1996 – more than 10 years before the claim
was filed.

The argument set forth in Plaintiff's counsel's November 2, 2007 letter to the
Court that the statute of limitations did not even commence running until Defendants indicated
that they would defend this action is, simply stated, nonsensical.  The law, common sense and
principles of basic fairness that underlie the statute of limitations make clear that the Court
should not countenance Plaintiff's long delay in commencing this action or Plaintiff's resulting
assertion that nearly 17 years after Chemical Bank implemented its cash balance plan, the 1991
Chemical Cash Plan and each of its successor plans never went into effect. *See, e.g., Carey,* 201
F.3d at 47 (because statutes of limitations "serve several important policies" including "rapid
resolution of disputes" and "repose for those against whom a claim could be brought," they "'are
not to be disregarded by courts out of a vague sympathy for particular litigants.'") (internal

citations omitted); *Hirt*, 450 F. Supp. 2d at 333-34 (dismissing notice claims filed more than six years after receipt of the notice).

The Complaint should be dismissed on this additional ground.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Complaint be dismissed with prejudice.

Dated:  New York, New York
        November 16, 2007

SIMPSON THACHER & BARTLETT LLP

By _____
    Thomas C. Rice, Esq. (TR-1996)
    Jonathan K. Youngwood, Esq. (JY-2234)
    425 Lexington Avenue
    New York, NY 10017-3954
    Telephone:  (212) 455-2000
    Facsimile:  (212) 455-2502

    JPMORGAN CHASE LEGAL
    DEPARTMENT
    Meryl R. Kaynard, Esq.
    One Chase Manhattan Plaza, 26th Floor
    New York, New York 10081
    Telephone:  (212) 552-6825

    *Attorneys for Defendants*