**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANK BILELLO, individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE RETIREMENT PLAN, JPMORGAN CHASE DIRECTOR OF HUMAN RESOURCES, as administrator of the JPMorgan Chase Retirement Plan,<br><br>                                Defendants. | Via ECF<br><br>Civ. No.  07-CV-7379 (RJS)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT<br><br>JURY TRIAL DEMANDED |

## I.  PRELIMINARY STATEMENT

1.      Plaintiff, Frank J. Bilello, a participant in the pension plan formerly maintained by Chemical Banking Corporation ("Chemical Bank"), which was merged into the Defendant JPMorgan Chase Retirement Plan ("the Plan"), brings this action on his own behalf and on behalf of all similarly situated plaintiffs, Plan participants, their beneficiaries and estates, pursuant to the Employee Retirement Income Security Act of 1974, as Amended ("ERISA").[1]

2.      Plaintiff Bilello is currently an employee of JPMorgan Chase & Co.  Plaintiff began his career with Chemical Bank, now known as JPMorgan Chase & Co., in 1960.

3.      Plaintiff was a participant in the pre-1989 pension plan of Chemical Bank, which calculated benefits based on a final average pay formula.  Although Plaintiff Bilello has requested copies of this pre-1989 plan pursuant to which a part of his benefit is currently calculated, Defendants have repeatedly refused to provide it, in violation of ERISA §§ 104 and 105, as detailed further *infra*.

---

[1] Plaintiff files this First Amended Class Action Complaint for Violations of the Employee Retirement Income Security Act as of right pursuant to Fed. R. Civ. P. 15(a).

4.      Plaintiff's claims asserted herein relate in part to certified class claims pending in a class action involving the JPMC Retirement Plan before the Hon. Harold Baer, Jr. in the United States District Court for the Southern District of New York, *In re JP Morgan Chase Cash Balance Litig.*, No. 06-cv-0732 (HB).[2]

5.      Plaintiff, on his own behalf and on behalf of a class of participants and beneficiaries similarly situated, alleges the following violations (Counts 1-9) by the Defendant JPMC Plan, formerly known as the Cash Plan for Retirement of Chemical Bank (the "1989 Cash Plan"), and the Defendant Plan Administrator: (a) the 1989 Cash Plan and all successor-in-interest Plans from January 1, 1989 to the present are impermissibly backloaded in violation of ERISA's 133 1/3 percent rule; (b) Defendants violated the definitely determinable requirement of ERISA and the Internal Revenue Service Code because the Plan's rate of interest is left to the plan sponsor's discretion, and the Plan fails to specify a method for determining the interest projection rate; (c) the 1989 Cash Plan and all successor-in-interest Plans from January 1, 1989 to the present cause illegal forfeiture of accrued benefits; (d) the 1989 Cash Plan causes wear-away and violates ERISA's 133 1/3 percent  rule; (e) Defendants violated ERISA § 204(h) by their failure to provide advance notice of a significant reduction in the rate of benefit accrual effected by the Plan amendments adopting a cash balance formula; and (f) Defendants violated ERISA's notice provisions with respect to the Plans' reductions in participants' rates of future benefit accrual and wear-away.  Accordingly, Plaintiff asks the Court to: (a) order Defendants to reform the Plan to cure all ERISA violations; (b) declare that the plan amendment(s) purportedly

_____

[2] *In re JP Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007) (Class Certification Order certifying plaintiffs' "age discrimination claim" from 1989 to the present, and certifying plaintiffs' "notice claims" from 2002 to the present).  An earlier decision by Judge Baer in that case addresses the age-discriminatory nature of cash balance plans.  *See In re JP*

implementing the cash balance formula(s) never became effective; (c) order Defendants to retroactively recalculate the accrued benefits of Plaintiff and all participants as though the plan amendment(s) implementing or subsequently amending the cash balance formulas did not become effective; (d) pay participants, their beneficiaries and estates the greater of the benefits paid to them heretofore, and the benefits recalculated as though the challenged plan amendment(s) did not become effective; and (e) order that the Defendant Plan Administrator is personally liable for statutory penalties of up to $110 a day from the date of violation until the date of compliance for procedural violations related to ERISA's disclosure requirements.

6.    In addition, Plaintiff Bilello alleges the following violations of ERISA (Counts 10 & 11) by the Defendant Plan Administrator: (a) failure to provide Plaintiff Bilello with requested governing Plan documents and compliant calculation worksheets; and (b) violations of fiduciary obligations by the repeated and ongoing refusal to provide Plaintiff these requested Plan documents and calculation worksheets.  Accordingly, Plaintiff asks the Court to: (a) order that the Defendant Plan Administrator is personally liable to Plaintiff for statutory penalties of up to $110 a day from July 28, 2007 until the date of compliance for procedural violations related to ERISA's disclosure requirements; and (b) award such further equitable, remedial, and procedural relief as is authorized and just.

## II.  JURISDICTION AND VENUE

7.    Jurisdiction over this action is based on:

(a)    ERISA  §  502(e)(1), 29 U.S.C. § 1132(e)(1); and

(b)    28 U.S.C. § 1331(a), because this action arises under the laws of the United States, namely ERISA.

---

*Morgan Chase Cash Balance Litig.*, 460 F. Supp.2d 479 (S.D.N.Y. 2006) (granting in part and denying in part defendants' motion to dismiss).

8.     Declaratory, injunctive, and procedural relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, by Rules 57 and 65 of the Federal Rules of Civil Procedure and by ERISA §§ 502(a)(1)(B), 502(a)(3), and 502(c), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3) and (c).

9.     Venue in this district is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered and Defendants can be found in this District.

## III.  PARTIES

**Plaintiff**

10.     Plaintiff Frank J. Bilello is a "participant," within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), of the plan formerly administered by Chemical Bank and now administered by the Defendant Plan Administrator.  Mr. Bilello resides in Riverdale, New Jersey.  Plaintiff Bilello began working for Chemical Bank in 1960 and is currently an employee of JP Morgan Chase & Co., the successor in interest to Chemical Bank.

**Defendants**

11.     Defendant JPMorgan Chase Retirement Plan (the "Plan") is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and more precisely, a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is administered in this District.  The Plan covers employees and former employees of JPMorgan Chase & Co. ("JPMC"), which is the successor-in-interest to numerous other companies, including, without limitation, Chemical Bank, The Chase Manhattan Bank ("Chase"), Manufacturers Hanover Trust ("MHT"), Bank One, and J.P. Morgan & Co., Inc. ("J.P. Morgan") (collectively, the "JPMC Predecessor Companies"), whose former employees participate in the Plan and/or whose prior retirement plans have been merged into the Plan.

12.     JPMC's Director of Human Resources (or the person, persons or entity appointed

by the Board of Directors of JPMC or JPMorgan Chase Bank, N.A. to serve in this role) is the Plan Administrator within the meaning of ERISA § 3(16)(A)(i), 29 U.S.C. §1002(16)(A)(i), a Plan fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(a), and is a named defendant herein. The Plan Administrator administers the Plan and the plans of the JPMC Predecessor Companies, including Chemical Bank's 1989 Cash Plan. The Plan Administrator's offices are also located in this District.

## IV. FACTUAL BACKGROUND

**Cash Balance Plans**

13.     A cash balance plan is a defined benefit plan that relies on a hypothetical account to keep track of each participant's accrued benefit.

14.     Under a cash balance plan, the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age. Thus, benefits attributable to interest credits must be taken into account in determining whether the accrual of the retirement benefits under a cash balance plan satisfies one of the rules in ERISA Section 204(b)(1)(A), (B) and (C), and its Code analogue, Section 411(b)(1)(A), (B) or (C).

15.     A hypothetical cash balance account tracks credited amounts, or "inputs," to a participant's hypothetical account by utilizing a formula that is dependent on, among other things, a participant's age, salary, and years of service.

16.     An employee's hypothetical cash balance account is "credited" on a periodic basis with a percentage of compensation, typically referred to as a "salary" or "pay" credit. Hypothetical cash balance accounts are also credited with an additional amount, sometimes

referred to as an "interest" credit, which can be derived in numerous different ways, but are most commonly derived by reference to either fixed or variable outside index.

17.    While an employer's hypothetical allocation of pay credits pursuant to a cash balance plan terminates when the participant discontinues employment, the "interest credits" continue to be allocated to the participant's cash balance account until benefits are distributed.

18.    Although a cash balance formula provides for an individual (albeit only hypothetical) account for each participant, the Plan is not a "defined contribution plan," as that term is defined at ERISA § 3(34), 29 U.S.C. § 1002(34).  Instead, it is a "defined benefit plan," which is defined at ERISA § 3(35), 29 U.S.C. § 1002(35), as "a pension plan other than an individual account plan."

19.    By definition, under a defined benefit plan, a participant never receives the credit balance in his or her hypothetical account.  Instead, the inputs (contributions and any additional amounts) made to the account must be converted into an age-65 annuity.  *See In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479, 486 (S.D.N.Y. 2006) (citation omitted).

20.    Because a cash balance plan is a career-average pay plan, the only one of ERISA's three minimum accrual standards it can comply with is Section 204(b)(1)(B) IRS Code Section 411(b)(1)(B), known as "the 133 1/3% rule."  Pursuant to that rule, no later rate of accrual can be more than one third greater than any earlier rate.

21.    Cash balance plans can be categorized based on when the benefits attributable to interest credits accrue.  The first category of cash balance plans, referred to as a "backloaded interest credit cash balance plan," conditions future interest credits upon further service.  As a consequence, benefits attributable to interest credits do not accrue until the interest credits are actually credited to the employee's hypothetical account.

22.     In this type of cash balance plan, the benefit amount attributable to interest credits will increase with age, because interest credits are applied to an ever-increasing hypothetical account balance.  For example, if the interest rate is 5% and the hypothetical account balance is $ 10,000 at age 40 and $ 30,000 at age 50, the amount of interest credits will increase from $ 500 to $ 1,500, with a commensurate impact on the overall rate of benefit accrual.  As a consequence, this type of cash balance plan cannot comply with the 133 1/3% rule.

23.     The second type of cash balance plan, referred to as a "frontloaded interest credit plan," provides that future interest credits to an employee's hypothetical account balance are not conditioned upon future service.  Thus, benefits attributable to future interest credits from the employee's attained age to normal retirement age accrue at the same time that the benefits attributable to the hypothetical allocation of pay credits accrue.  As a result, if an employee terminates employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account.

24.     In the case of a frontloaded interest credit plan, an employee's accrued benefit as of any date before attainment of normal retirement age should be an annuity commencing at normal retirement age (age 65), based on the employee's hypothetical account balance as of normal retirement age, *including future interest credits to that age*.

25.     ERISA Section 402(a)(1), 29 U.S.C. § 1102(a)(1), requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," while ERISA Section 402(b)(4), 29 U.S.C. § 1102(b)(4), requires that said written instrument "specify the basis on which payments are made to and from the plan."  Similarly, IRS Code Section 401(a)(25), the Code analogue to the ERISA Sections, requires that the accrued benefit must be "definitely determinable."  What these provisions mean is that the plan formula must

preclude employer discretion.

26.    In order for a frontloaded interest credit cash balance plan to be "definitely determinable," the factors used in calculating the benefit must preclude employer discretion in setting the rate.  This is done by pegging the interest rate to an outside index (the "variable interest rate"), and by describing in the plan the *method* to be used in selecting the interest rate to be used in projecting the cash balance account to normal retirement age, *i.e*., the "interest projection rate."

**The Chemical Bank Plan Converted to a Cash Balance Plan Effective January 1, 1989**

27.    The Chemical Bank Plan converted to the 1989 Cash Plan by amendment as of January 1, 1989.  Exh. 4 at 1652.   The 1989 Cash Plan retroactively applied and calculated all participants' benefits pursuant to a cash balance formula beginning January 1, 1989.

28.    Prior to the implementation of the 1989 Cash Plan, the Plan operated as a traditional defined benefit pension plan and provided for the calculation of retirement benefits pursuant to a final average pay formula, under which participants accrued benefits based upon a specified percentage of their final average compensation (the "Prior Plan").

29.    Although the 1989 Cash Plan's Effective Date was January 1, 1989, participants did not receive any information regarding its implementation until July 1990, at the earliest.  Exhs. 1-2.  Thus, for a period of 18 months, participants were subject to the cash balance formula under the 1989 Cash Plan without being given any warning or notice in compliance with ERISA § 204(h) that their benefit structure had changed.

30.    Pursuant to the 1989 Cash Plan, the accrued benefits of employees who were participants in the Prior Plan were converted into a "prior service balance."   The prior service balance was calculated with reference to the present lump sum value of a participant's accrued

benefit under the Prior Plan formula; *i.e.*, prior to January 1, 1989. However, there was no disclosure to Plan participants regarding the interest rate used to calculate the value of their prior accrued benefits, preventing participants' ability to verify the Plan's calculations.

**The 1989 Cash Plan's Formula Provided for Pay and Interest Credits**

31.    The 1989 Cash Plan caused benefits to accrue for eligible Plan participants pursuant to a cash balance formula as of January 1, 1989.

32.    For the period beginning January 1, 1989, the 1989 Cash Plan applied a pay credit percentage that was allocated quarterly and which ranged from 5% of a participant's pay for 1 to 10 years of service, to 7% for 21 or more years of service

33.    The formula under the 1989 Cash Plan also applied an additional hypothetical amount to participants' notional accounts, characterized as an "interest credit," which was tied to an outside index. These interest credits were calculated with reference to a participant's number of years remaining until normal retirement age of 65, and thus, necessarily took age into account as part of its formula when calculating the value of this credited amount.

34.    The pay credits under the 1989 Cash Plan increased from 5% to 7% based on years of service. For certain individuals, these pay credit increases might have provided temporary bumps in a participant's rate of future benefit accrual, but did not resolve the underlying plan formula or structure, which reduces rates of benefit accrual as participants age.

35.    The 1989 Cash Plan provided and still provides that participants do not receive the lump sum amount of their notional accounts as their retirement benefit. Rather, the 1989 Cash Plan dictates that the credit balance in the notional account is converted into an accrued benefit before distribution. 1989 Cash Plan, Ex. 4 at ¶ 4.5 ("The Accrued Benefit of a Participant, as of any determination date, is an increasing monthly annuity for the life of the

Participant . . . , commencing immediately, which is the Actuarial Equivalent of the Participant's credit Balance as of the determination date."). An accrued benefit is defined by the Plan as: "as of any determination date, an increasing monthly annuity determined in accordance with § 4.5, which benefit is the Actuarial Equivalent of such individual's Credit Balance." *Id*., Definitions at 1.2. *Compare In re J.P. Morgan Chase*, 460 F. Supp. 2d at 486 (same).

36.    The 1989 Cash Plan defines "Actuarial Equivalent" as "another annuity or benefit commencing at a different date and/or payable in a different form than the specified annuity or benefit, but which has the same present value as the specified annuity or benefit (. . . determined on the basis of the interest rate, mortality table and other factors. . . .)." 1989 Cash Plan, Ex. 4, Definitions at ¶ 1.4.

37.    As a result of the required conversion to an age-65 annuity, under both ERISA and the 1989 Cash Plan, and because the 1989 Cash Plan allocates interest credits to the account through normal retirement age, the 1989 Cash Plan reduces rates of benefit accrual as participants age. In addition, the 1989 Cash Plan also reduces rates of benefit accrual for participants compared to the final average pay formula of the Prior Plan.

**The JP Morgan Chase Plan is the Successor in Interest to the Chemical Bank Plan**

38.    On or about December 31, 1991, Chemical Bank merged with MHT, but retained the Chemical corporate name. Effective January 1, 1993, the 1989 Cash Plan was merged into the Retirement Plan of Manufacturers Hanover Trust and Certain Affiliated Companies. The resulting plan was known as the "The Retirement Plan of Chemical Bank and Certain Affiliated Companies, Effective January 1, 1993" (the "1993 Chemical Plan").

39.    The 1993 Chemical Plan was subsequently amended. *See* "Retirement Plan of Chemical Bank and Certain Affiliated Companies, Effective January 1, 1993 (Amended and

restated through August 1, 1994)" (the "1994 Amended Chemical Plan"), attached hereto as Exhibit 5.

40.    A subsequent amended version of the 1993 Chemical Plan, the "Retirement Plan of Chemical Bank and Certain Affiliated Companies, Effective January 1, 1993 (As Amended through December 31, 1996)" (the "1996 Amended Chemical Plan"), is attached hereto as Exhibit 6.

41.    In 1996, Chemical Bank merged with the Chase Manhattan Bank ("Chase"), with the surviving entity assuming the Chase name.  As of January 1, 1997, the Chemical Plan was amended and restated and merged into the Retirement Plan of the Chase Manhattan Bank and Certain Affiliated Companies (the "1997 Chase Plan," Exh. 7), and the pension plan maintained by Chase for its employees was merged into it.  The 1997 Chase Plan continued to operate under a cash balance formula and was further amended for benefits accrued after December 31, 1996. The 1997 Chase Plan assumed the Chase Plan's accrued liabilities and assets as of December 31, 1996.

42.    A subsequent amended version of the 1997 Chase Plan, the "Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies, Effective January 1, 1997, as amended" (the "Amended 1997 Chase Plan"), is attached hereto as Exhibit 8.

43.    On December 31, 2000, J.P. Morgan & Co., Inc. was merged into Chase by way of a stock for stock transaction.  Following the merger, Chase changed its name to JPMorgan Chase & Co.  Effective January 1, 2002, the prior cash balance pension plan formerly maintained by J.P. Morgan (the "Morgan Plan") was merged into the cash balance plan maintained by Chase (the "Chase Plan").  To effectuate the merger of the plans, at the close of business on December 31, 2001, the net assets of the Morgan Plan were transferred to the Chase Plan, which was

amended and renamed "The JPMorgan Chase Retirement Plan."

44.     On July 1, 2004, JPMorgan Chase & Co. merged with Bank One, but retained its corporate name.  Subsequent to its merger with Bank One, JPMorgan Chase & Co merged the cash balance plan previously maintained by Bank One into the Plan, effective December 31, 2004, and made certain other Plan revisions.  The Plan was amended effective January 1, 2005.

45.     Thus, through the aforementioned mergers, the pension plan originally maintained by Chemical Bank is now called the JPMorgan Chase & Co. Plan (hereinafter the "JPMC Plan"). The Plan is administered by the Defendant Plan Administrator.

46.     The Plan, as presently in effect, is a cash balance formula plan that applies interest credits, and which covers all eligible employees and former employees of JPMC, inclusive of its predecessor companies.

## V.  CLASS ACTION ALLEGATIONS

47.     Plaintiff brings Counts 1 - 9 on his own behalf and, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all others similarly situated, defined as all Plan participants who accrued benefits pursuant to the Cash Plan for Retirement of Chemical Bank and Certain Affiliates, Amended and Restated as of January 1, 1989, and all subsequent amendments are restatements thereto, whether active, inactive or retired, their beneficiaries and estates, whose accrued benefits or pension benefits are or were based in whole or in part on these Plans' cash balance formulas from January 1, 1989 to the present for Counts 1 – 6, and January 1, 1989 to December 31, 2001 for Counts 7-9.   The requirements for maintaining this action as a class action under Rule 23(b)(1) and (b)(2), Federal Rules of Civil Procedure, are satisfied in that:

a)     The class is large in number; the exact number and identities of all class

members are currently unknown to Plaintiff, but are known to Defendants. The number of class members is believed to be in the thousands;

b)      The members of the class are so numerous that joinder of all members is impracticable;

c)      There are questions of law common to all members of the class, such as: i) whether the 1989 Cash Plan is impermissibly backloaded in violation of the 133 1/3 percent rule, 29 U.S.C. § 1054(b)(1)(B), 26 U.S.C. § 411(b)(1)); ii) whether Defendants violated the definitely determinable requirement of ERISA and the IRS Code, 29 U.S.C. § 1102(a)(1) and (b)(4); 26 U.S.C. § 401(a)(25); iii) whether the Plan causes illegal forfeiture of accrued benefits, 29 U.S.C. § 1053(a); iv) whether the Plan causes illegal wear-away in violation of the 133 1/3 percent rule, 29 U.S.C. § 1054(b)(1)(B), 26 U.S.C. § 411(b)(1) & 26 C.F.R. 1.411(b)-1(b)-1(b)(2)(ii)(B); v) whether the challenged plan amendments caused a significant reduction in the rate of future benefit accrual, and, if so, whether participants were provided with adequate notice that complied with the requirements of ERISA § 204(h); vi) whether the Plan's communications with participants regarding the cash balance plan conversions and amendments complied with ERISA §§ 102, 104, and their implementing regulations.

d)      Plaintiff is a member of the class as defined above; his claims are typical of the claims of the members of the class and he will fairly and adequately protect the interests of the class.  Plaintiff's interests are coincidental with,

and not antagonistic to those of the remainder of the class, and Plaintiff is represented by experienced ERISA class action counsel;

e)    The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants and a risk of adjudications which as a practical matter would be dispositive of the interests of other members of the class who were not parties; and

f)    Defendants have acted and/or refused to act and are likely to act and/or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive and other relief with respect to the class as a whole.

## VI.  CLAIMS FOR RELIEF

### COUNT ONE

### Backloading

48.    Plaintiff re-alleges all paragraphs above as if fully set forth herein..

49.    The 133 1/3% rule, ERISA Section 204(b)(1)(B), provides that no later annual rate of accrual can be more than one third greater than any earlier rate for "any individual who is or could be a participant" in the plan.

50.    Where a frontloaded interest credit cash balance plan relies on a variable interest rate and on pay credits that increase with years of service or age, it is possible for the rate of accrual to become backloaded based on a reduction in the variable interest rate.  The only way to insure against this possibility is for the plan to provide for a minimum interest rate.

51.    For example, the 1997 Plan provided for backloaded pay credits that vary with

years of service from a minimum of 4% to a maximum of 14%.  Because the annual rate of accrual of pay credits increases by more than one third, the formula can comply with the 133 1/3% rule only if the variable interest is not less than 5.25%.  In fact, the applicable interest rate was less than 5.25% every year since 2002.

52.     In an attempt to partially mitigate this backloading violation, the 2005 JPMC Plan adopted a minimum interest credit rate of 4.5%.  However, this minimum interest rate was not sufficient to cure backloading for those participants grandfathered under a 4-14% pay credit schedule, and did not cure the Plan's illegal backloading.

53.     By failing to specify any minimum interest rate prior to 2005, and failing to provide an adequate minimum interest rate thereafter, all versions of the cash balance plan from 1989 to the present violate the 133 1/3% rule.

## COUNT TWO

### Benefit Not Definitely Determinable Because Additional Interest Rate Allows for Plan Administrator Discretion

54.     Plaintiff re-alleges all paragraphs above as if fully set forth herein.

55.     The cash balance plans in effect from 1989 to 1997 relied on a variable interest rate that was pegged either to one-year Treasury Bills or 30-year Treasury Bills, "plus such additional interest rate, if any, as if established by the Administrator, *in its sole discretion*, for such Plan Year through written resolution adopted thereby (which written resolution shall constitute an amendment to the Plan)" (emphasis added).

56.     By providing employer discretion in setting the variable interest rate, the cash balance formulas in effect from 1989 to 1997 violated ERISA § 402(a)(1) and 402(b)(4), 29 U.S.C. § 1102(a)(1) and 29 U.S.C. § 1102(a)(1)(B), respectively, and IRS Code  § 401(a)(25).

## COUNT THREE

### Benefit Not Definitely Determinable Because Yearly Interest Rate Does Not Specify Method

57.     Plaintiff re-alleges all paragraphs above as if fully set forth herein.

58.     When a plan specifies a variable interest rate, it is impossible to determine the accrued benefit before normal retirement age, as required by the "definitely determinable" requirement.

59.     As a consequence, a frontloaded interest credit cash balance plan that relies on a variable interest rate must prescribe the *method* for reflecting future interest credits in the calculation of an employee's accrued benefit before normal retirement age.   The method, including actuarial assumptions, if applicable, must preclude employer discretion.

60.     Safe harbor regulations for cash balance plans specify two acceptable methods to be used: the first is the "the current value of the variable interest rate for the current period;" the second is "the average of the current values of the variable interest rate for the current period and one or more periods immediately preceding the current period (not to exceed 5 years in the aggregate.) 26 C.F.R. § 1.401(a)(4)-8(c)(3)(v)(B).

61.     Neither the 1989 Cash Plan nor any of its successors-in-interest from 1989 to the present specify a method for selecting the interest projection rate.

62.     The failure to specify a projection rate violates ERISA §§ 402(a)(1) and 402(b)(4), 29 U.S.C. § 1102(a)(1) and 29 U.S.C. § 1102(a)(1)(B), respectively, and IRS Code Section 401(a)(25).

## COUNT FOUR

### Forfeiture of Accrued Benefits – No Projection of Future Interest Credits

63. Plaintiff re-alleges all paragraphs above as if fully set forth herein.

64. Article 4.3(f) of the 1989 Cash Plan and its successors-in-interest, to the present, provides that the allocation of interest credits to the hypothetical cash balance account ceases as of the day immediately preceding distribution.

65. The Plans also provide that the accrued benefit is an annuity for the life of the participant commencing immediately, "which is the Actuarial Equivalent of the Participant's Credit Balance as of the determination date."

66. Because the annuity is based on the Credit Balance, there is no projection of future interest credits to normal retirement age. As a consequence, the amount of an employee's benefit is less than his accrued benefit.

67. By providing for a benefit - whether in the form of an annuity or a lump sum - that is less than his accrued benefit or its actuarial equivalent, the Plans cause a forfeiture of accrued benefits in violation of ERISA § 203(a), 29 U.S.C. § 1053(a), and its IRS Code analogue, § 411(a).

## COUNT FIVE

### Forfeiture of Accrued Benefits

68. Plaintiff re-alleges all paragraphs above as if fully set forth herein.

69. Article 4.2(a)(ii) of the 1989 Cash Plan provides that, if an employee was an active participant prior to December 31, 1988, his Account will be credited with a "Prior Service Credit," which is "the present lump sum value" of the participant's accrued benefit under the prior plan. Article 4.2(a) acknowledges that "the Prior Service Credit is not intended to be a Participant's accrued benefit under the Prior Plan as of January 1, 1989."

70. Because under the terms of the Plan interest credits accrue only until payment

begins, if payment to a participant begins before normal retirement age, the participant will receive less than his accrued benefit, *i.e.*, less than the present value of the benefit payable to him at the normal retirement age. The difference can be quite dramatic.

71.    The interest rate applicable to the Prior Service Credit was 14% in 1989, and 13.8% in 1990. Exh. 3 at 1736. If, for example, a 45-year old participant with a Prior Service Credit of $ 20,000 had received payment in 1989, he would have received only $20,000. Had interest credits been added to his Prior Service Credit at 14% for the next twenty years until his normal retirement age of 65, it would have yielded $274,870 payable at normal retirement age. Discounting back this amount to present value with an assumed interest rate of 7% - the statutory present-value discount rate imposed in 1989 by ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), and IRS Code § 417(e)(3) - would have resulted in a lump sum value of  $71,032, *i.e.*, 3.5 times the amount the Plan would have paid the participant at that time.

72.    Because $ 71,032 constitutes the present value of the participant's benefit at normal retirement age, *i.e.*, his accrued benefit, paying him less than that amount effected an unlawful forfeiture of an accrued benefit, in violation of ERISA § 203(a), 29 U.S.C. § 1053(a).

### COUNT SIX

**Plan Transition Offset Creates Impermissible Backloading ("Wear-Away")**

73.    Plaintiff re-alleges all paragraphs above as if fully set forth herein.

74.    The 1989 Cash Plan provides a minimum benefit equal to the greater of a participant's accrued benefit determined as of December 31, 1990 under the terms of the pre-1989 Plan, which was a traditional final average plan (the "protected benefit"), and the benefit accrued under the terms of the cash balance formula starting in 1989.

75.    The cash balance benefit consists of an "opening balance" equal to the present

value of the benefit accrued before 1989 under the traditional benefit formula (the "prior benefit"), plus accruals under the cash balance formula.

76.    Defendants have refused to provide a copy of the pre-1989 Plan, so that Plaintiff is unable to perform a precise calculation of either the prior benefit or the protected benefit. Upon information and belief, however, the protected benefit was larger than the opening balance, because it was accrued under the same pre-1989 formula, but was based on two additional years of service).

77.    Moreover, on December 31, 1990, Plaintiff's final average compensation was higher than on December 31, 1988, and he was two years closer to the normal retirement age of 65, both factors which lead to a larger value for the protected benefit.

78.    Finally, the interest rates used to compute the opening account balance on January 1, 1989 were relatively high and generally decreased after 1989.  The use of a lower interest rate to calculate the value of a given normal retirement benefit at age 65 (the protected benefit) results in a larger lump sum value for that benefit.

79.    The combination of all these factors caused the value of the protected benefit to be greater than the participant's cash balance account for one or more years.

80.    Pursuant to 26 C.F.R. § 1.411(b)-1(b)-1(b)(2)(ii)(B), the 133 1/3% rule is violated by the possibility that a Plan's benefit formula could yield zero accrual in one or more years, followed by an accrual rate greater than zero.  The Internal Revenue Service has recently endorsed its long-standing position that a zero accrual rate that is followed by any future accrual rate is a *per se* violation of ERISA's anti-backloading standards.

81.    A period of very small or no benefit accruals followed by a period of regular benefit accruals results in a violation of the 133 1/3% rule in the year benefit accruals resume,

since the rate of benefit accrual in that year exceeds 133 1/3% of the rate in effect in the previous years.  ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); 26 U.S.C. § 411(b)(1).

82.    As a consequence of the foregoing, the 1989 Cash Plan violates these provisions of ERISA.

## COUNT SEVEN

### Violation of ERISA Section 204(h) Regarding Notice of Significant Reduction in Future Rate of Benefit Accrual

83.    Plaintiff re-alleges all paragraphs above as if fully set forth herein.

84.    Plaintiff alleges this claim on his own behalf and on behalf of a class of plaintiffs similarly situated.

85.    At all times relevant to this action, ERISA § 204(h), 29 U.S.C. § 1054(h), required advance notice to participants in a defined benefit pension plan of any amendment whose effect is to "provide for a significant reduction in the rate of future benefit accrual."  29 U.S.C. § 1054(h)(1).

86.    ERISA § 204(h) provides that a pension plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual" unless the plan administrator provides the notice described in the statute.

87.    At all times relevant to this action, ERISA § 204(h) generally required that Plan participants receive notice from the Plan administrator of a significant reduction in their future rate of benefit accrual *after* a plan amendment had been adopted, but *before* the amendment's purported effective date.

88.    As indicated by the language in § 204(h), "may not be amended," a purported Plan amendment does not become effective unless a plan administrator complies with § 204(h)

- 20 -

of ERISA.

89.     The 1989 Cash Plan amendments effective January 1, 1989 provided for "a significant reduction in the rate of future benefit accrual" by converting the Plan from a final average pay plan to a cash balance plan, and by reducing participants' future rates of benefit accrual by this conversion and plan amendment.

90.     On information and belief, the conversion to the 1989 Cash Plan caused a significant reduction in the rate of benefit accrual for all participants when compared to the rate of benefit accrual under the Prior Plan.

91.     In addition to the foregoing, at a minimum, the Plan also affected a significant reduction in participants' rates of future benefit accrual as of January 1, 1997, upon the Plan's merger with the Retirement Plan of Chase Manhattan Bank.

92.     The 1989 and 1997 Plan amendments described in the foregoing paragraphs reduced participants' rates of benefit accrual both as they aged, and as a matter of comparison with the formulas under participants' prior Plans.

93.     At the time of the 1989 Cash Plan's effective date of January 1, 1989, the Plan administrator could satisfy ERISA § 204(h) by providing participants either a copy of the plan amendment or by providing a notice of a significant reduction in rate of future benefit accrual that contained a summary of the amendment, *provided* that the summary was written in a manner calculated to be understood by the average plan participant and complied with the statute's mandatory timing requirements.

94.     ERISA  § 204(h) requires that to provide adequate warning to plan participants, any summary of a plan amendment should not include materially false or misleading information, or omit information so as to cause a misleading effect.  Rather, a notice that

complies with § 204(h) must provide participants with a fair warning of the plan amendment's reductions in the rate of future benefit accrual, including any reduction in benefit accrual caused by wear-away.

95.    However, the Plan Administrator violated ERISA § 204(h) because, among other violations:  a) the Plan Administrator did not provide participants any warning of a reduced rate of benefit accrual in advance of the 1989 Cash Plan's effective date of January 1, 1989; b) the Plan Administrator did not provide participants a copy of the Plan amendment prior to the 1989 Cash Plan's effective date; c) the Plan Administrator did not provide participants any notice of a significant reduction in the rate of future benefit accrual that contained a summary of the amendment, was written in a manner calculated to be understood by the average plan participant, or that complied with the statute's mandatory timing requirements.

96.    For example, Plaintiff and the members of the proposed class received no advance warning of the 1989 Cash Plan's impact on their future rate of benefit accrual before its January 1, 1989 effective date.  The earliest communications that were made to participants to inform them of the new 1989 Cash Plan were not issued until July 1990, at the earliest, and thus failed to comply with the advance timing requirements of ERISA § 204(h).  *See* Exhs. 1 - 3.  In addition, these communications were misleadingly optimistic and congratulatory, and did not satisfy the warning requirement of ERISA § 204(h).  *See id.*, Exh. 1 ("I am pleased to announce some very positive changes to our pension plan . . . ."); Exh. 2 (describing the 1989 Cash Plan as having "special advantages"); Exh. 3 at 1741 ("This brochure is designed to highlight Cash Plan . . . and the advantages it offers.").

97.    The conversion from the Prior Plan to the 1989 Cash Plan caused a significant reduction in the rate of future benefit accrual for all participants.  Nonetheless, Plan participants

did not receive the warning required by ERISA § 204(h). Simply put, the reduction in the rate of future benefit accrual and the reduction in the rate of future benefit accrual based on age were not disclosed in advance – or at any other time – to Plan participants. Plan participants also received no disclosure that complied with § 204(h) and which disclosed the wear-away feature of the 1989 Cash Plan.

98.    Similarly, Defendants did not satisfy ERISA § 204(h) with respect to the Plan amendment effective January 1, 1997 for the 1997 Chase Plan, which amendment provided for a significant reduction in participants' rates of future benefit accrual. The Plan Administrator violated ERISA § 204(h) with respect to this amendment because, among other violations: a) the Plan Administrator did not provide participants any warning of a reduced rate of benefit accrual in advance of the 1997 Chase Plan's effective date of January 1, 1997; b) the Plan Administrator did not provide participants a copy of the Plan amendment prior to its effective date; and c) the Plan Administrator did not provide participants any notice of a significant reduction in the rate of future benefit accrual that contained a summary of the amendment, was written in a manner calculated to be understood by the average plan participant, or that complied with the statute's mandatory timing requirements.

99.    As a result of these failures and omissions to provide adequate and timely notice in compliance with ERISA § 204(h) as described above, each of these Plan amendments failed to become effective with respect to Plaintiff and the Class.

100.    At no time during the class period or during the period required by ERISA § 204(h), did Plan participants receive advance notice of the reductions in the rate of future benefit accruals due to the Plan's conversions to a cash balance formula, as is required under 29 U.S.C. § 1054(h).

101.    At no time during the class period or during the period required by ERISA § 204(h), did Plan participants receive advance notice that the reductions in their rate of future benefit accruals were correlated with the attainment or advancement of age, as is required under 29 U.S.C. § 1054(h).

102.    In addition to the foregoing, at no time during the Class Period or during the period required by ERISA § 204(h), did Plan participants receive timely, accurate, or sufficiently comprehensive and understandable notice of reductions in the Plan's rate of future benefit accruals, as is required under 29 U.S.C. § 1054(h).

103.    Defendants' failures to comply with the timing, content and method of distribution requirements of the notice and disclosure laws violates ERISA § 204(h), 29 U.S.C. § 1054(h), and all applicable regulations.

104.    Defendants' acts and/or omissions prejudiced or likely prejudiced Plaintiff and the Class because the inadequate notice deprived Plan participants of a full understanding of the impact of these plan amendments and therefore prevented or likely prevented them from taking any necessary measures to supplement their retirement savings accordingly.

105.    As a consequence of these violations of ERISA § 204(h), and all applicable regulations, the Plan amendments that purported to adopt cash balance formulas or otherwise effect a significant reduction in the rate of participants' future benefit accrual never became effective and, thus, are unenforceable.

## COUNT EIGHT

### Failure to Provide Adequate Summary Plan Descriptions

106.    Plaintiff re-alleges all paragraphs above as if fully set forth herein.

107.    ERISA § 102(a), 29 U.S.C. § 1022(a), requires the Plan administrator to provide

all participants and beneficiaries with a summary plan description ("SPD").

108.    ERISA requires the summary plan description to include the specific information

described in ERISA § 102(b), that it be "written in a manner calculated to be understood by the

average plan participant," and that it be "sufficiently accurate and comprehensive to reasonably

apprise such participants and beneficiaries of their rights and obligations under the plan."

109.    In turn, ERISA § 102(b), 29 U.S.C. § 1022(b), provides in pertinent part:

> The summary plan description shall contain the following information: . . . the plan's requirements respecting eligibility for . . . benefits; . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . .

110.    Similarly, 29 C.F.R. § 2520.102-2 provides in pertinent part:

> (a) Method of presentation.  The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan . . . .  Consideration of these factors will usually require . . . the use of clarifying examples and illustrations, the use of clear cross-references and a table of contents. (b) General format. The format of the summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries.  Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.  Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.  The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.  The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

111.    ERISA § 104(b)(1) imposes timing requirements for issuance of the SPD.  In

general, a plan administrator must furnish an SPD to each participant within 90 days of

becoming a participant.  A plan administrator must furnish subsequent SPDs integrating all intervening plan amendments to each participant every fifth year.  29 U.S.C. § 1024(b)(1).

112.    A summary plan description issued by Defendants entitled "Directions" dated February 1994 purports to describe the 1993 Chemical Plan.  Exh. 9.  However, this SPD is not written in a manner calculated to be understood by the average plan participant, is not sufficiently accurate and comprehensive to reasonably apprise plan participants and beneficiaries of their rights and obligations under the plan, and has the effect of misleading and misinforming because it does not provide examples of differently-aged participants who are otherwise similarly-situated, thereby masking and precluding an age-based, apples-to-apples comparison of the Plan's formula.

113.    A 1999 summary plan description entitled, "ChaseChoice:  Your Guide to Benefits at Chase," purports to describe the 1997 Chase Plan.  Exh. 10.  However, this SPD is not written in a manner calculated to be understood by the average plan participant, is not sufficiently accurate and comprehensive to reasonably apprise plan participants and beneficiaries of their rights and obligations under the plan, and has the effect of misleading and misinforming because it does not disclose that the Plan's cash balance formula reduces participants' rates of future benefit accrual as they age and as compared to their prior Plan.  In particular, the 1999 Chase SPD provides only a single example of a participant's purported benefit accrual over time, *id*. at 802, which is misleading and deceptive because only a single example is provided, and no example is given for older participants nearing retirement age, for whom the reduction in rate of benefit accrual arising from the 1997 Chase Plan is the most severe.  As a result, the SPD misleads by masking the reduction in rate of future benefit accrual and precluding an age-based, apples-to-apples comparison.  The SPD does not communicate to participants the impact of the

cash balance formula on their rate of benefit accrual, and does not provide examples which bound the ranges of the impact.

114. By describing the cash balance formula in a misleading manner, without full disclosure of the formula's reduction on participants' rates of benefit accrual, or reduction of accrual based on age, the SPDs had the effect of "misleading, misinforming [and] failing to inform participants" as to the rate of accrual, and "minimized, rendered obscure, or otherwise made to appear unimportant" the "description of exceptions, limitations, reductions, and other restrictions of plan benefits."

115. The failure of the Plan's SPDs to timely and fully disclose Plan provisions that negatively impacted the benefits participants reasonably expected to receive violates ERISA §§ 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1) and 29 C.F.R. § 2520.102-2. These acts and/or omissions prejudiced or likely prejudiced Plaintiff and the Class by precluding their understanding of the impact of the cash balance formula and/or preventing them from further supplementing their retirement savings.

116. Defendants' acts and/or omissions in failing to issue SPDs in compliance with ERISA entitle Plaintiff and the class to procedural and injunctive relief.

## COUNT NINE

### Failure to Provide Adequate Summaries of Material Modification

117. Plaintiff re-alleges all paragraphs above as if fully set forth herein.

118. ERISA § 102(a), 29 U.S.C. § 1022(a), also provides:

> A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with § [104(b)(1), 29 U.S.C. §] 1024(b)(1) of this title.

119.    ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), generally provides that a plan administrator must provide to each participant, and to each beneficiary who is receiving benefits under the plan, a summary of material modifications ("SMM") not later than 210 days after the end of the plan year in which the change is adopted.

120.    29 C.F.R. § 2520.104b-3 governs in greater detail the timing and content of the required SMMs.

121.    The 1989 Cash Plan provides that interest credits are pegged to one-year T-Bills, "plus such additional interest rate, if any, as if [sic] established by the Administrator, ***in its sole discretion***, for such Plan Year through written resolution adopted thereby (which written resolution shall constitute an amendment to the Plan)." (emphasis added).

122.    Subsequent amendments to the 1989 Cash Plan, and each of its successors-in-interest through December 31, 2001 similarly included provisions authorizing the Plan Administrator, "***in its sole discretion***," (emphasis added) to establish an additional interest rate. *See* Retirement Plan of Chemical Bank and Certain Affiliated Companies, Effective January 1, 1993 (Amended and restated through August 1, 1994), Article 1.43; Retirement Plan of Chemical Bank and Certain Affiliated Companies, Effective January 1, 1993 (As Amended through December 31, 1996), Article 1.43; Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies, Effective January 1, 1997, Article 1.52.

123.    Any such exercise of the Plan Administrator's discretion in setting the Plan's yearly interest rate, in addition to the violations of ERISA's definitely determinable requirement, as set forth in greater detail *infra*, constitutes a "material modification" to the terms of the Plan requiring notification to plan participants.

124.    Defendants did not provide summaries of material modifications to participants

within the period provided by law that disclosed material modifications in the terms of the plan, including but not limited to the yearly interest rate, and that were written in a manner calculated to be understood by the average plan participant.

125.    These acts, failures, and omissions of Defendants violate ERISA §§ 102, 104(b)(1), 29 U.S.C. §§ 1022(a), 1024(b)(1), and 29 C.F.R. § 2520.104b-3.

126.    Defendants' failure to timely and fully disclose revised Plan provisions regarding yearly interest rates, or other provision that impacted the benefits participants reasonably expected to receive violates ERISA  §§ 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1) and 29 C.F.R. § 2520.104b-3.  These acts and/or omissions prejudiced or likely prejudiced Plaintiff and the Plan participants by precluding their understanding of the impact of the cash balance formula and/or preventing them from further supplementing their retirement savings.

127.    Defendants' acts and/or omissions entitle Plaintiff and the class to procedural and injunctive relief.

## COUNT TEN

**Refusal to Provide Requested Governing Plan Documents and Complete Calculation Worksheets – Brought by Plaintiff Bilello as an Individual Claim**

128.    Plaintiff re-alleges all paragraphs above as if fully set forth herein.

129.    Plaintiff, who began working for Chemical Bank in 1960, is currently an employee of JPMorgan Chase & Co., the successor-in-interest to Chemical Bank, and is a participant in the JPMorgan Chase Retirement Plan.

130.    The benefit accrued by Plaintiff to date under the Plan includes his Prior Service Balance, *i.e.*, the present value of all the benefits he accrued during his employment with Chemical Bank prior to January 1, 1989.  1989 Cash Plan, Ex. 4, ¶ 4.2.

131.    By letter dated June 27, 2007, Plaintiff by his counsel requested the Plan Administrator to provide him with the following documents pursuant to ERISA § 105(a):  (1) "a statement indicating, on the basis of the latest available information ... the total benefit accrued"; (2) "copies of all plan documents and SPDs relied on in the calculation of his benefits"; and (3) "your calculation worksheets."  The letter explained that the requested documents were needed "so that we may verify your computation."  The letter also referenced ERISA § 502(c), and requested that pursuant to that provision, the requested documents be mailed to Mr. Bilello's counsel within 30 days.

132.    In a second letter dated June 27, 2007, Plaintiff by his counsel requested the Plan Administrator to provide him with the following documents pursuant to ERISA § 104(b): "Any and all written instruments in effect from March 21, 1960 through the present pursuant to which the JPMC Plan (the JPMC Plan is defined herein to include its predecessors in interest, including but not limited to the Chemical Bank Plan, Manufacturer's Hanover Trust Plan, or Chase Plan) was established or is operated, including but not limited to trust agreements, Plan documents, Summary Plan Descriptions ("SPDs"), and amendments thereto."

133.    On July 25, 2007, the Plan Administrator by its counsel provided current plan documents, as well as a "computer printout" indicating the "total non-forfeitable pension benefit accrued for Mr. Bilello," but refused to provide any of the governing plan documents in effect prior to 2002.

134.    The "computer printout" indicating the "total non-forfeitable pension benefit accrued for Mr. Bilello" was not "written in a manner calculated to be understood by the average plan participant," ERISA § 105(a)(2)(A)(iii); 29 U.S.C. § 1025(a)(2)(A)(iii), because it set forth the amount of the "Prior Service Balance" without any explanation of how that amount was

calculated.

135.    On August 8, 2007, Plaintiff Bilello by his counsel renewed his request under ERISA § 105(a) for all calculations and supporting Plan documents, including the pre-1989 Chemical Plan and the relevant pre-1989 Chemical Summary Plan Description, to allow Plaintiff Bilello to verify the Plan's calculation of Mr. Bilello's "Prior Service Balance" and "Opening Balance," as well as the application of "Interest Credits," "Pay Credits," and any "Adjustments" to those balances.

136.    On September 7, 2007, the Plan Administrator by its counsel provided a 45-page "calculation sheet for Mr. Bilello."  The "calculation sheet" also failed to set forth the formula used to calculate the "Prior Service Balance" pursuant to the applicable Plan provisions.  This "calculation sheet" is still not "written in a manner calculated to be understood by the average plan participant," ERISA § 105(a)(2)(A)(iii); 29 U.S.C. § 1025(a)(2)(A)(iii).  The calculation is lengthy, complex, and provides neither the formula(s) on which it relies or an understandable explanation of the calculations in plain, straight-forward language.

137.    In addition to the foregoing, the current plan documents provided by Defendants and referenced in their September 7, 2007 letter do not contain or summarize the Plan provisions in effect in prior plan documents that would permit Plaintiff to understand how his "Prior Service Balance" was calculated.

138.    By letter dated September 28, 2007, Plaintiff Bilello by his counsel requested from the Plan Administrator pursuant to ERISA §§ 104(b) and 105(a) complete copies of the following documents from the Defendant Plan and Defendant Plan Administrator, pursuant to which the retirement benefit of Mr. Bilello was calculated in whole or in part: 1) the Cash Plan for Retirement of Chemical Bank and Certain Affiliates, Amended and Restated as of January 1,

1989, including Appendices I – VI, which are referenced in CBPJPMC00001647 at 1732, §

13.6; and 2) The Retirement Plan of Chemical Bank and Certain Affiliates as in effect on

December 31, 1988.

139.    By letter dated October 29, 2007, the Defendant Plan and Defendant Plan

Administrator again refused to produce the requested Plan documents on which Mr. Bilello's

benefits were calculated.

140.    Without the prior Plan documents on which Mr. Bilello's benefit calculation is

based, which documents Plaintiff has requested by written demand on June 27, 2007, August 8,

2007, and September 28, 2007, or a calculation worksheet "written in a manner calculated to be

understood by the average plan participant," but which the Plan Administrator has refused to

provide, it is impossible for Plaintiff to determine whether his "Prior Service Balance" was

calculated in accordance with the terms of the prior Plans.

141.    The Defendant Plan Administrator's failure to provide these requested documents

pursuant to ERISA §§ 104 and 105 constitutes a breach of the Plan Administrator's disclosure

obligations.

142.    The Defendant Plan Administrator is liable for statutory damages for these

failures to comply with ERISA's disclosure requirements under ERISA § 502(c), 29 U.S.C. §

1132(c), because the requested documents and information are within the Defendant Plan

Administrator's control, but the Plan Administrator had failed or refused to make the requested

disclosures.

## COUNT ELEVEN

**Breach of Fiduciary Duty – Brought by Plaintiff Bilello as an Individual Claim**

143.    Plaintiff re-alleges all paragraphs above as if fully set forth herein.

144.    The Defendant Plan Administrator is a fiduciary within the definition of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that he exercises discretionary authority or discretionary control over the management of the Plan and the disposition of the Plan's assets, and that he has discretionary responsibility in the administration of the Plan.

145.    The Defendant Plan Administrator is also a named fiduciary of the Plan pursuant to ERISA §  1102(a), 29 U.S.C. § 402(a).

146.    The Defendant Plan Administrator's repeated and ongoing refusal to provide Bilello with complete plan documents governing the calculation of Plaintiff's accrued benefit or governing how Plaintiff's "Prior Service Balance" was calculated violates his fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

147.    In addition to the foregoing, the Defendant Plan Administrator's refusal to provide Bilello with calculation worksheets "written in a manner calculated to be understood by the average plan participant," renders it impossible for Plaintiff to determine whether his "Prior Service Balance" was calculated in accordance with the terms of the prior Plans, and is a breach of the Defendant Plan Administrator's fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

A.    Certifying Counts 1 through 9 as a class action;

B.    Declaring:

1.    That the 1989 Cash Plan is impermissibly backloaded, in violation of the 133 1/3 percent rule, ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), 26 U.S.C. § 411(b)(1) and 26 C.F.R. § 1.411(b)-1(b)-1(b)(2)(ii)(B) (Count One);

2.    That the Plan violates ERISA's requirement that the benefit be definitely determinable, 26 U.S.C. § 401(a)(25); 29 U.S.C. § 1102(a)(1), (b)(4) (Counts Two and Three);

3.    That the Plan unlawfully causes forfeiture of accrued benefits, 29 U.S.C. § 1053(a), IRS Code § 411(a) (Counts Four and Five);

4.    That the Plan's wear-away violates ERISA, 29 U.S.C. § 1054(b)(1)(B), 26 U.S.C. § 411(b)(1) & 26 C.F.R. 1.411(b)-1(b)-1(b)(2)(ii)(B) (Count Six);

5.    That the Plan Administrator did not provide Plaintiff and Class with an advance notice of amendments causing a significant reduction in the rate of future benefit accruals that complied with ERISA § 204(h), 29 U.S.C. § 1054(h), as to content, timing and/or method of distribution, so that the Plan amendments implementing, at a minimum, the 1989 Cash Plan and the 1997 Chase Plan, did not become effective (Count Seven);

6.    That the summary plan descriptions summarizing the cash balance formulas violated ERISA § 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1), and 29 C.F.R. § 2520.102-2 (Count Eight);

7.    That the Plan Administrator did not provide the summaries of material modifications of the cash balance formulas required by ERISA §§ 102(a), 104(b)(1), 29 U.S.C. §§ 1022(a), 1024(b)(1), and 29 C.F.R. § 2520.104b-3 (Count Nine);

8.    That the Defendant Plan Administrator has violated ERISA's disclosure

requirements by refusing to provide Plaintiff with requested worksheets setting forth Plaintiff's calculation of benefits and that are "written in a manner calculated to be understood by the average plan participant," ERISA § 105(a), 29 U.S.C. 1025(a) (Count Ten);

9.     That the Defendant Plan Administrator has violated ERISA's disclosure requirements by refusing to provide Plaintiff with requested Plan documents, including full and complete copies of governing Plan documents pursuant to which Plaintiff's benefits are based in whole or in part, ERISA  § 104(b), 29 U.S.C. § 1024(b) (Count Ten);

10.    That, pursuant to ERISA   §§ 409 and 502(a)(3), 29 U.S.C. §§ 1109 and 1132(a)(3), equitable and remedial relief against the Defendant Plan Administrator, is appropriate for his breaches of fiduciary duty stemming from his violation of mandatory disclosure requirements under ERISA  §§ 104(b)(4) and 105(a), 29 U.S.C. §§ 1024(b)(4) and 1025(a) (Count Eleven);

11.    That, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Defendant Plan Administrator is enjoined in his acts or practices in violation of ERISA's disclosure requirements (Counts Seven through Ten);

12.    That, pursuant to ERISA   §   502(c), 29 U.S.C. § 1132(c), and 29 C.F.R. 2575.502c-1, the Defendant Plan Administrator is personally liable to Plaintiff and the Class for statutory penalties of up to $110 a day from the date of violation until the date of compliance for procedural violations related to Counts Eight and Nine;

13.    That, pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), and 29 C.F.R. 2575.502c-1, the Defendant Plan Administrator is personally liable to Plaintiff Bilello for statutory penalties of up to $110 a day from July 28, 2007, until the date of compliance for procedural violations related to Count Ten;

C.    Enjoining Defendants from enforcing the Plan's unlawful amendments or amendments that never became effective;

D.    Ordering Defendants to reform the Plan to cure all ERISA violations;

E.    Ordering Defendants to recalculate the accrued benefits of Plaintiff and all Class members based on the greater of the benefit formula sought to be amended in violation of ERISA §§ 204(g) or 204(h), or the pre-amendment formula, after these provisions are reformed to cure all ERISA violations, including pre- and post-judgment interest at the highest allowable rate;

F.    Ordering Defendants to pay all pensioners, their beneficiaries and/or estates the difference between the amount of pension paid to them heretofore, and the benefit that should have been paid based on the Plan as reformed to cure all heretofore-listed ERISA violations, with interest compounded monthly;

G.    Awarding Plaintiff:

1.    His costs, disbursements and expenses herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), or as otherwise authorized by law;

2.    Reasonable attorneys' fees pursuant to ERISA 502(g), 29 U.S.C. § 1132(g) and the common fund doctrine, or as otherwise authorized by law;

3.    Statutory penalties payable by the Defendant Plan Administrator in his personal capacity of up to $110 per day from July 28, 2007 to the date of compliance pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), and 29 C.F.R. 2575.502c-1;

     4.     Such further equitable, remedial, and procedural relief as is authorized and just; and

H.     Awarding the Class such other and further relief as the Court may deem just, proper and equitable.

     Respectfully submitted this 21st day of December, 2007.

**KELLER ROHRBACK L.L.P.**

  s/Amy Williams-Derry          
Lynn L. Sarko (LS 3700)
Derek W. Loeser (DL 6712)
Amy Williams-Derry (AWD 5891)
Karin B. Swope (KBS 3369)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

**KIRBY McINERNEY LLP**

Peter S. Linden
Alice McInerney
Andrew T. Watt
830 Third Avenue
New York, New York 10022
(212) 371-6600
Fax: (212) 751-2540

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**EDGAR PAUK**
144 East 44th Street, Suite 600
New York, New York 10017
(212) 983-4000

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Peter S. Linden | plinden@kmslaw.com |
| Alice McInerney | amcinerney@kmslaw.com |
| Edgar Pauk | pauk@tiac.net |
| Thomas C. Rice | trice@stblaw.com |
| Andrew Watt | awatt@kmslaw.com |
| Jonathan K. Youngwood | jyoungwood@stblaw.com |

  s/ Amy Williams-Derry
Amy Williams-Derry
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

- 1 -