*CHEMICAL*

# ARTICLE VII

## Transfers and Reemployment

### 7.1     Transfer from One Employer to Another Employer

A Participant whose employment changes from one Employer to another without a Severance Date will continue to accrue benefits hereunder as provided under Articles IV and V.

### 7.2     Transfer from Employer to a Non-Participating Company

As of the date that a Participant commences employment with an Affiliated Company that is not an Employer, the Credit Balance of an Account will be frozen other than for Interest Credits under Section 4.3 and additional service for purpose of the Final Salary Benefit shall cease. Service with such Affiliated Company will continue to be counted for purposes of vesting and the appropriate Accruing Factor (but not for purposes of Article V) in the event that the Participant should return to service with an Employer. Notwithstanding the foregoing, a Participant (effective April 1, 1991 for Participants covered by the MHT Plan) will continue to accrue benefits under Articles IV and V if such individual ceases to be an Eligible Employee because he/she is transferred to a foreign payroll but continues to perform services on a salaried basis for an Employer or Affiliated Company outside the United States and its possessions; provided that such individual does not participate in a foreign defined benefit pension plan or, in the case where pension benefits are provided through a defined contribution plan, does not participate in such plan.

-42-

CBPJPMC00001513

CHEMICAL

7.3    Transfer from Non-Participating Company to Employer

As of the date that an Eligible Employee transfers from an Affiliated Company that is not an Employer to an Employer, such individual will become a Participant upon meeting the Eligibility Period; and his Period of Service with the Affiliated Company shall count for purposes of vesting, the Eligibility Period, and the appropriate Accruing Factor (but not for purposes of Article V).

7.4    Reemployment of Vested Participant

(a)    Credit Balance.  For purposes of the portion of the Accrued Benefit derived from the Credit Balance described in Article IV (including any benefit from the Prior Plan), when a Participant who has a vested Accrued Benefit prior to the Severance Date of such individual is reemployed as an Eligible Employee:

(i)    if such individual has received a lump sum distribution of the Credit Balance of his Account, such Credit Balance of his Account is zero as of his Date of Reemployment; and such Account is increased after the Date of his Reemployment only for Salary-Based and Interest Credits as provided under Article IV; or

(ii)    if such individual has not received a lump-sum or annuity distribution of the Credit Balance of his Account, such Credit Balance is equal to the amount credited to such Account as of the date of his Date of Reemployment; and subsequent to such Date of Reemployment, such Account will be increased for Salary-Based and Interest Credits as

-43-

CBPJPMC00001514

*CHEMICAL*

provided under the Article IV; _provided_ that such individual's Prior Service Balance, if any, will receive Interest Credit only; or

(iii)     if such vested benefit was accrued under the Prior Plan (including for this purpose, the Retirement Plan of Chemical Bank and Certain Affiliates as in effect immediately prior to the effective date of the Prior Plan but not the MHT Plan) and has not been distributed to the Participant, such individual shall be deemed to have a Prior Service Balance based on the accrued benefit of such individual under Section 4.1 of the Prior Plan. Such Prior Service Balance shall equal the lump sum Actuarial Equivalent as of the   Date of Reemployment of the vested accrued benefit under the Prior Plan.   Such Prior Service Balance shall receive Interest Credits only.   In no event will such Participant receive an Accrued Benefit derived from the Credit Balance less than the accrued benefit under the Prior Plan.

(iv)     See Section 7.4(b) for rules when benefits are in pay status.

(b)     _Credit Balance and Final Salary Benefit._   For purposes of the benefits described in Article IV and in Article V, when a Participant who is vested in an Accrued Benefit prior to the Severance Date is reemployed by an Employer:

(i)     Subject to the provisions of Section 9.1(b), if an individual who is receiving periodic benefits with respect to either the Credit Balance under Article IV and/or Final Salary Benefit under Article V becomes an Eligible Employee, payment of such benefit or benefit(s) will thereupon cease; _provided_ that such reemployed Participant is paid for

-44-

CBPJPMC00001515

Ⓩ CHEMICAL

at least 40 hours in each month of his reemployment by his Employer; provided, further, that the amount of benefit to cease does not exceed the "suspendible amount" determined in accordance with Department of Labor Regulation Section 2530.203-3.

(ii)    Upon his Date of Reemployment as an Eligible Employee, a Participant, if receiving periodic benefits derived from the Credit Balance and if such periodic benefits are suspended pursuant to (i) above, will have a Credit Balance restored to the Account of such individual equal to the Lump Sum Accrued Benefit Amount as of the individual Annuity Starting Date plus Interest Credits to the Date of Reemployment and shall continue after such Date of Reemployment to receive credits under Article IV; provided that the Prior Service Balance, if any, of such individual will receive Interest Credits only. Upon a subsequent Severance Date, such Participant's benefit will be based on the total amount credited to his Account, inclusive of credits made both before and after his Date of Reemployment but offset by the Actuarial Equivalent at the final Severance Date of the benefits actually received prior to such Severance Date. Solely for purposes of the Credit Balance, the recommencement of benefit payments is treated as a new Annuity Starting Date and such Annuity Starting Date shall apply to benefit accruals under Article IV both before and after the initial Annuity Starting Date; provided, however, subject to Article IX and any outstanding qualified domestic relations order under Section 414(p) of the Code, such Participant must make a new election as to the form of benefit with respect to his entire Credit Balance, as adjusted.

-45-

CBPJPMC00001516

CHEMICAL

(iii)    Upon his/her Date of Reemployment as an Eligible Employee, a Participant, if receiving periodic benefits from his/her Final Salary Benefit and if such periodic benefits are suspended pursuant to (i) above, will receive additional Periods of Service while a Participant for all purposes (including Section 5.1(a)(ii)) and his Final Average Salary shall be appropriately adjusted for Salary earned during such additional Periods of Service.

Upon a subsequent Severance Date the Final Salary Benefit shall be reduced by the Actuarial Equivalent of any benefit paid prior to his/her Date of Reemployment with an Employer; provided, however, that (i) the Final Salary Benefit shall in no event be less than the benefit payable prior to such Date of Reemployment, and (ii) benefits payable following subsequent retirement shall be increased by the Actuarial Equivalent of any benefit not paid during months in which the Employee performs less than 8 days of service. The recommencement of periodic payments is not treated as a new Annuity Starting Date and no new benefit election is permitted.

(iv)    Similar rules as those specified in subsections (i), (ii) and (iii) will apply to accrued benefits in pay status under the Prior Plan or the MHT Plan or any predecessor plans; provided that in the case of a Participant in the MHT Plan, the total benefit will be recalculated on the final Severance Date in accordance with Section 5.1, which Accrued Benefit derived from the Final Salary Benefit shall not be less than the accrued benefit under the MHT Plan prior to the Date of Reemployment.

-46-

CHEMICAL

(c)    <u>Elections</u>.  If a Participant who was vested in his Accrued Benefit prior to his Severance Date is reemployed by an Affiliated Company not which is not an Employer, such individual will continue to be entitled to receive his Accrued Benefit, if in pay status.  Such individual is not permitted to elect a distribution after the Date of Reemployment with such Affiliated Company.

(d)    <u>Less than 40 hours</u>.  In the event a Participant, whose periodic benefit has ceased pursuant to Section 7.4(a) is not paid for at least 40 hours in any month of reemployment, such Participant's benefit shall again become payable as of the following month, even though employment has not actually terminated.  If the Plan Administrator determines that a benefit has been paid to a reemployed Participant under this paragraph (d) for any month in which the Employee was paid for at least 40 hours, such amounts shall be deducted from future income payments in accordance with Department of Labor Regulations Section 2530.203-3.

7.5    <u>Reemployment of Nonvested Participants</u>

If an individual who was a Participant and not vested in an Accrued Benefit as of such individual's Severance Date is reemployed by an Employer within five years of such Severance Date such individual upon again becoming an Eligible Employee will have:

(i)    a restored Credit Balance equal to the Lump Sum Accrued Benefit Amount as of the Severance Date plus Interest Credits thereon to the Date of Reemployment, and such Credit Balance will again be determined as provided under Article IV; <u>provided</u> that the Prior Service Balance, if any, will be entitled to Interest Credits only; and

-47-

CHEMICAL

(ii)    a restored Final Salary Benefit based upon the Period of Service while a Participant and Final Average Salary as of the Severance Date.

If such individual is reemployed more than five years after the Severance Date so that such individual has incurred a Break in Service of five years or more, such individual will be treated as a new Employee, and the prior Periods of Service (except for participation and vesting purposes with respect to accruals after the Date of Reemployment and eligibility for Early Retirement, and the Accruing Factor), Final Salary Benefit and Credit Balance will be disregarded and not restored.

# ARTICLE VIII
## Benefits

**8.1    Form of Distributions Generally**

(a)    Subject to the terms and conditions of this Article VIII, a Participant with a vested Accrued Benefit under Articles IV or V who is entitled to commence receiving such benefits under Article IX, shall receive his/her Credit Balance and Adjusted Final Salary Benefit in one of the forms of benefit set forth in this Article VIII.

(b)    In no event will a Participant's Accrued Benefit upon a Severance Date occurring on or after January 1, 1993, including the value of any optional forms of benefit, early retirement benefits and retirement-type subsidies (as defined in Code Section 411(d)(6)) provided under the Plan, be less than:

-48-

CBPJPMC00001519

*CHEMICAL*

(i) the accrued benefit as of December 31, 1990, under the terms of the Retirement Plan of Chemical Bank and Certain Affiliates with respect to such Participant, or

(ii) the accrued benefit as of December 31, 1992 under the terms of the Prior Plan or the MHT Plan immediately prior to the Effective Date with respect to such Participant.

By way of clarification, it is intended that in determining such benefits all aspects of the formulas used to calculate such benefits such as, but not limited to salary, are frozen as of the relevant date and that if an individual terminated on or before January 1, 1993 with a vested benefit under the MHT Plan, Prior Plan or any predecessor plan, the terms and conditions of the applicable plan will govern the distribution of such benefit.

8.2     Normal Form of Benefit

(a) Unless an alternative form of benefit described in this Article VIII is elected, the normal form of benefit for a Participant who is married on his/her Annuity Starting Date shall be the Joint and 50% Survivor (Spouse) Annuity with respect to a Participant's (i) Credit Balance which must be the Actuarial Equivalent of such Lump Sum Accrued Benefit and (ii) Final Salary Benefit which must be the Actuarial Equivalent of the single life annuity provided by the Adjusted Final Salary Benefit (using those factors set forth in Appendix V).

(b) Unless an alternative form of benefit is elected, the normal form of benefit for a Participant who is not married on his/her Annuity Starting Date shall be

CBPJPMC00001520

CHEMICAL

with respect to such indiviudal's (i) Credit Balance, the increasing single life annuity described in Section 4.5, and (ii) Final Salary Benefit, the single life annuity provided by the Participant's Adjusted Final Salary Benefit.

(c)    If, after a married Participant has commenced receiving his/her benefits in the form of a Joint and 50% Survivor (Spouse) Annuity, the Participant's spouse predeceases him/her, no adjustment shall be made in the benefits paid to such Participant.

(d)    A Participant may, by Notice to the Administrator, and without consent of his/her spouse, elect to commence receiving a Joint and 50% Survivor (Spouse) Annuity on any date specified as permissible in Article IX.

(e)    Notwithstanding any other provision of this Plan, if the present value of a Participant's vested Accrued Benefit exceeds $3500 (or such other amount specified in Sections 411(a)(11) and 417(e) of the Code), no distribution shall be made without the Participant's written consent prior to Normal Retirement Age, and if such distribution is in a form other than a Joint and 50% Survivor (Spouse) Annuity and the Participant is married, the spouse's written consent.

8.3    Optional Forms of Benefit

(a)    Subject to Section 8.8, Section 8.9, and Section 8.10, a Participant may elect to receive his/her vested Accrued Benefit in one of the optional forms of benefit described below rather than receiving such benefit in the form specified in Section 8.2. Each such optional form of benefit shall be the Actuarial Equivalent of the Participant's Adjusted Final Salary Benefit or Lump Sum

-50-

CBPJPMC00001521

CHEMICAL

Accrued Benefit. as the case may be.   Conversion factors for Actuarial Equivalents are set forth in Appendix V.  As specified below. a Participant may elect to receive the Credit Balance in one optional form and the Final Salary Benefit in another.

(b)     Single Life Annuity.  Both the Credit Balance and the Final Salary Benefit may be received in the form of a Single Life Annuity which provides for payments in twelve equal monthly installments per year during a Participant's lifetime. ending with the payment due for the month in which he/she dies.

(c)     Joint and Survivor Benefit.   Both the Credit Balance and the Final Salary Benefit may be received in the form of a Joint and 40% or 50% to 100% Survivor (Spouse or non Spouse) Annuity (the "Joint and Survivor Benefit") which provides reduced monthly payments during the Participant's lifetime, and after death. a survivor annuity for the Participant's Surviving Spouse or other surviving Beneficiary with monthly payments equal to 40% or 50% to 100% (as elected by the Participant under this Plan) of the monthly payments the Participant was receiving at death.  Upon Notice to the Administrator. the survivor annuity shall commence on the first day of the month following the date of the Participant's death and end with the payment due for the month in which such Surviving Spouse or Beneficiary dies.

(d)     Level Income Option.  Both the Credit Balance and the Final Salary Benefit may be received in the form of a Level Income Option which provides that if benefit payments commence prior to the date on which Social Security benefits could first become payable. a benefit which is still the Actuarial Equivalent of the Participant's Adjusted Final Salary Benefit or Lump Sum Accrued Benefit.

-51-

CBPJPMC00001522

*CHEMICAL*

as the case may be. will be payable in a larger amount until the date Social Security benefits could first become payable and thereafter in a smaller amount. so that the amount payable to the Participant prior to the availability of Social Security benefits will be approximately equal to the sum of the annual payment under the Plan and Social Security benefits thereafter. The Level Income Option may be elected and applied to any annuity benefit under the Plan. other than the increasing annuity payable under Section 4.5 or a annuity benefit described in paragraph (f) below. The Level Income Option only applies to the benefit payable to the Participant and shall not affect the amount to which a Surviving Spouse or other Beneficiary would otherwise be entitled.

(e)  <u>Voluntary Cash Outs</u>. The Credit Balance may be received in the form of an single cash payment in an amount equal to the Participant's Lump Sum Accrued Benefit Amount. The Final Salary Benefit may also be received in the form of a single cash payment. which must be the Actuarial Equivalent of the Participant's Adjusted Accrued Benefit, but only if the monthly payment under the Participant's Final Salary Benefit would not exceed $100.00 at Normal Retirement.

(f)  <u>Grandfathered Period Certain Annuities Under Prior Plan</u>. Benefits accrued under the Prior Plan on or before December 31, 1992 may be received in the form of a five, ten and fifteen years certain and life annuity. Such an annuity provides monthly payments during the Participant's lifetime with payments guaranteed for a period of five. ten or fifteen years depending on the period elected by the Participant. If the Participant dies during the period of guaranteed payments. the remaining guaranteed payments will be made to a primary Beneficiary chosen by the Participant (or to a secondary Beneficiary,

-52-

CBPJPMC00001523

CHEMICAL

if the primary Beneficiary predeceases the Participant or fails to live for the remainder of the guaranteed period). The commuted value of the payments will be paid to the estate of the Participant if no Beneficiary survives him/her, or to the estate of the last surviving Beneficiary, if such Beneficiary shall die after the Participant  but fails to live for the remainder of the guaranteed period.

(g)  Code Section 401(a)(9). If the Participant dies after the Annuity Starting Date, the remaining portion of a benefit, if any, must continue to be distributed at least as rapidly as under the method of distribution being used prior to the Participant's death.

8.4  Special Rules for Voluntary Cash Outs

(a)  Payment of a Participant's voluntary cash out described in Section 8.3(e) shall be made as soon as administratively feasible after receipt of proper Notice to the Administrator, provided, such Accrued Benefit is otherwise properly payable under the Plan.

(b)  A Participant may elect by Notice to the Administrator to have such distribution transferred in whole, or in part to an Eligible Retirement Plan.

-53-

CBPJPMC00001524

WM CHEMICAL

8.5     Special Rules for the Joint and Survivor Benefit

(a)     If a Beneficiary dies before the Participant's Annuity Starting Date, the Participant shall be entitled to receive the benefit he/she would have received if he/she had not elected to receive a Joint and Survivor Benefit.

(b)     If a Participant dies before his/her Annuity Starting Date, the Beneficiary shall not be entitled to receive any benefit payments under the Joint and Survivor Benefit. But see Section 8.6 and 8.7.

(c)     The amount of the benefit payable to a non-Spouse Beneficiary under the Joint and Survivor Benefit must satisfy the incidental death benefit requirement imposed by Code Section 401(a)(9).

8.6     Credit Balance Death Benefit

(a)     No Surviving Spouse.  If a Participant dies before his/her Annuity Starting Date and there is no Surviving Spouse or if the election described in Section 8.6(c) has been properly made, such Participant's Beneficiary or Beneficiaries shall receive a single cash payment equal to the vested Lump Sum Accrued Benefit Amount as of the date of such death plus Interest Credit on the Credit Balance of the Account until the date immediately preceding the Date of Distribution.  Payment shall be made as soon as administratively feasible after receipt of the proper Notice to the Administrator, but in no event later than five years after the Participant's death.

-54-

*CHEMICAL*

(b)    <u>QPSA for Surviving Spouse</u>.  Subject to waiver rules in paragraphs (d) and (f) below, and the involuntary cash out rule in Section 8.10, if a Participant dies before his/her Annuity Starting Date, and there is a Surviving Spouse, such Surviving Spouse shall receive a single life annuity for his/her lifetime which is the Actuarial Equivalent of the Participant's vested Lump Sum Accrued Benefit Amount (a "Qualified Pre-Retirement Survivor Annuity" or "QPSA"). The Credit Balance QPSA may commence as early as the first day of the month following the date of the Participant's death, but no later than the date that would have been the Participant's Normal Retirement Date, and shall end with the payment due for the month in which such Surviving Spouse dies; <u>provided</u>, <u>however</u>, that such QPSA shall not commence prior to the date the Participant would have reached his/her Normal Retirement Age without the spouse's consent given in a Notice to the Administrator.  See waiver rules in paragraphs (d) and (f) below.

(c)    <u>Alternative to QPSA</u>.  Subject to the waiver rules in paragraph (d) below, the spousal consent rules in Section 8.9, and the involuntary cash out rule in Section 8.10, a Participant may elect at any time that in lieu of a Credit Balance QPSA, payment of his/her vested Credit Balance in a lump sum may be made to a Beneficiary or Beneficiaries other than a Surviving Spouse. Such designation shall be made by Notice to the Administrator.

(d)    <u>QPSA Notice</u>.  Within the applicable period (as defined below), the Plan Administrator shall notify each Participant of his/her rights with respect to the Credit Balance QPSA in comparable terms and manner as provided for in the notice regarding the QJSA as described in Section 8.8. The applicable period for a Participant is the period which ends last:

-55-

CBPJPMC00001526

CHEMICAL

(i)     the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year in which the Participant attains age 35;

(ii)    a reasonable period after the person becomes a Participant; or

(iii)   a reasonable period ending after paragraph 8.6(d) first applies to the Participant;

provided that if a Participant incurs a Severance Date before attaining 35, the applicable period shall be a reasonable period ending after such Severance Date, provided that a designation of a Beneficiary prior to the date that a Participant has a Spouse shall be void as of the date of the Participant's marriage; and provided, further, that a designation of a Beneficiary (other than a Spouse) with spousal consent prior to age 35 shall be a void as of the beginning of the Plan Year in which the Participant attains age 35. As used in this paragraph, the term reasonable period means the period beginning one year before and ending one year after the occurrence of the event specified above.

(e)    Special Rules for Multiple Beneficiary Designations  If multiple Beneficiaries are properly designated, but are not classified as "primary" or "secondary," "each surviving Beneficiary shall share equally in all amounts payable to such Beneficiaries, unless the Participant has specified the appropriate shares to be paid to such Beneficiaries.  If a Beneficiary predeceases the Participant, then such Beneficiary's share shall be divided equally among the remaining Beneficiaries of the same class.   If properly designated Beneficiaries are

-56-

CBPJPMC00001527

*CHEMICAL*

classified as "primary" or "secondary" but multiple Beneficiaries are designated within a class, then each Beneficiary in the same class shall share equally in all amounts that become payable to such class, unless the Participant has specified the appropriate shares to be paid to the Beneficiaries in such class.

(f)     Post-Death Waiver of QPSA.  In the event that a married Participant (i) dies prior to his/her Annuity Starting Date, (ii) is survived by a Surviving Spouse, and (iii) has not executed a valid QPSA waiver, such Surviving Spouse may nonetheless elect, by giving Notice to the Administrator within 90 days after such death, to waive the Credit Balance QPSA in favor of the single cash payment described in paragraph (a) above.  Payment cannot be made without the Surviving Spouse's consent prior to the date the Participant would have reached his/her Normal Retirement Age, (2) if not already paid, payment shall be made no later than the date the Participant would have reached Normal Retirement Age, and (3) such Surviving Spouse may elect to have such payment transferred, in whole or in part, to an Individual Retirement Account as defined in Code Section 408.

8.7     Final Salary Benefit QPSA

(a)     QPSA for Surviving Spouse.  Subject to the involuntary cash out rule in Section 8.10, if a Participant dies prior to his/her Annuity Starting Date, has a vested Final Salary Benefit and there is a Surviving Spouse, such Surviving Spouse shall be entitled to receive a QPSA with respect to his/her Final Salary Benefit ("Final Salary Benefit QPSA").  The Final Salary Benefit QPSA shall be a single life annuity that provides monthly payments during the Surviving

-57-

CBPJPMC00001528

CHEMICAL

Spouse's lifetime. and ends with the payment for the month in which such Surviving Spouse dies. The Final Salary Benefit QPSA shall be payable in the following amounts.

(i)     If such Participant dies after he/she is eligible for an early retirement benefit under Section 9.5. the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had retired on day before the death. and payments had commenced on the first day of the month coincident with or following such death, and then died.

(ii)    If such Participant dies after he/she is eligible for a vested reduced benefit under Section 9.6(b), the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had terminated employment on day before death (or if earlier. his/her Severance Date) survived to age 55. elected to receive a vested reduced benefit on the first day of the following month. and then died.

(iii)   If such Participant dies after he/she is eligible for a vested Final Salary Benefit. but does not have a Period of Service of at least 10 years, the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had terminated employment on the day before death (or if earlier. his/her Severance Date) survived to age

-58-

CBPJPMC00001529

CHEMICAL

65, commenced receiving benefits on his/her Normal Retirement Date, and then died.

(b)    QPSA Commencement Dates.  The earliest date that the Final Salary Benefit QPSA may commence is the later of:

(1)    the first day of the month following the date of the Participant's death, or as soon as practicable thereafter, and

(2)    the first day of the month on which such Participant would have been eligible for early retirement under Section 9.5 or to commence receiving reduced vested benefits under Section 9.6; or if such Participant was not eligible for benefits under Sections 9.5 or 9.6 at the time of death, the date that would have been such Participant's Normal Retirement Date:

and the latest date that the Final Salary Benefit QPSA shall commence is the date that would have been the Participant's Normal Retirement Date, provided, however, that such QPSA shall not commence without the Surviving Spouse's consent prior to the date the Participant would have reached his/her Normal Retirement Date.

(c)    No QPSA Waiver.  The Final Salary Benefit QPSA may not be waived by a Participant.

(d)    No Surviving Spouse.  If a Participant dies prior to his/her Annuity Starting Date and has a vested Final Salary Benefit but there is no Surviving Spouse,

-59-

CBPJPMC00001530

*CHEMICAL*

no benefit shall be payable from the Plan with respect to such Final Salary Benefit.

8.8    QJSA Waiver Rules

(a)    A Participant has the right at any time during the 90 day period ending on the Annuity Starting Date (the "election period") to waive the QJSA in favor of an alternative form of benefit described in Section 8.3 (a "QJSA waiver"), to revoke an existing QJSA waiver, or to subsequently execute a new QJSA waiver, by giving Notice to the Administrator during such election period. No QJSA waiver shall be valid unless:

   (i)    the Participant has been properly notified pursuant to paragraph (b) below, and

   (ii)   the QJSA waiver complies with the spousal consent rules in Section 8.9.

(b)    The Plan Administrator shall notify each Participant of his rights with respect to the QJSA in the following manner. At least thirty days, but not more than ninety days prior to his Annuity Starting Date, each Participant must be furnished with a written explanation given in nontechnical language regarding:

   (i)    the terms and conditions of the QJSA described in Section 8.2;

   (ii)   the Participant's right to waive the QJSA in favor of an alternative form of benefit and the effect of such a QJSA waiver;

-60-

CHEMICAL

(iii)   the right of the Participant's spouse to consent, and the necessity of such written spousal consent, to any QJSA waiver; and

(iv)   the Participant's ability to revoke such a QJSA waiver (and the effect thereof).

Such notice shall also contain a general explanation of the financial effect of the QJSA waiver including information regarding the benefits a Participant would receive under the QJSA stated as an arithmetic or percentage reduction from a single life annuity or other alternative form of benefit. The notice shall also inform the Participant of the availability of the information described in paragraph (c) below and the manner in which the Participant may obtain such information.

(c)   Upon a Participant's written request, the Plan Administrator will furnish a written explanation in nontechnical language of the terms and conditions of the QJSA, and the financial effect for the particular Participant, in terms of dollars per annuity payment, of any election to waive a QJSA. Such explanation shall be sent by personal delivery or first class mail within 30 days of such written request. The Plan Administrator need only respond to one such request by each Participant.

8.9   <u>Spousal Consent Rules</u>

(a)   A QJSA waiver under Section 8.8 and a QPSA waiver under Section 8.6 may be made only with the consent of the Participant's spouse that: (i) is in a written Notice to the Administrator, (ii) designates a specific Beneficiary or

-61-

CBPJPMC00001532

Beneficiaries, including any class of beneficiaries or any contingent beneficiaries that may not be changed without spousal consent, (iii) acknowledges the effect of such waiver, and (iv) is witnessed by a Plan representative or notary public.

(b)    Spousal consent to a QJSA waiver must also designate a form of benefit payment that may not be changed without spousal consent.

(c)    No spousal consent shall be required if: (i) the Participant has no spouse, (ii) the spouse cannot be located and an affidavit of inability to locate the spouse is given in a written Notice to the Administrator, or (iii) under any other circumstances permitted by Code Section 417 and regulations thereunder.

(d)    Once a spouse has properly consented to a Participant's election under the Plan, the spouse may not revoke such consent unless the Participant agrees in writing.  Nonetheless, a spousal consent shall be valid only with respect to the spouse who gave such written consent.  Any elections made by a Participant (and properly consented to by the spouse) shall remain valid after a divorce unless the Participant remarries, makes another proper election, or a qualified domestic relations order described in Code Section 414(p) applies and provides otherwise.

8.10    Involuntary Cash Outs

Notwithstanding any other provision of this Plan, if any Participant, Surviving Spouse or other Beneficiary is entitled to a vested Accrued Benefit under the Plan, the present value of which is not in excess of $3500 (or such higher amount as may be permitted under the Code),

-62-

CBPJPMC00001533

CHEMICAL

such benefit will be paid as soon as reasonably practicable in a single sum payment in full discharge of all obligations of the Plan with respect to such Participant, Surviving Spouse or other Beneficiary. In determining present value, the Actuarial Equivalent will be calculated on the basis of assumptions set forth in Appendix V.

### 8.11    Qualified Domestic Relations Orders

If the Plan Administrator receives a court order dividing benefits under the Plan and determines that such court order is a Qualified Domestic Relations Order ("QDRO") within the meaning of Code Section 414(q): (i) the date the Plan Administrator determines that such order is a QDRO shall be treated as the Participant's "earliest retirement date" for purposes of Credit Balance benefits and such benefits shall be payable on the date specified in such QDRO, or as soon as practical thereafter and, and (ii) Final Salary Benefit amounts shall also be payable on the date specified in such QDRO; provided that such benefits shall not commence prior to the date the Participant could have commenced receiving Final Salary Benefits if he/she had separated from service.

-63-

CBPJPMC00001534

CHEMICAL

# ARTICLE IX

## Final Salary Benefit Commencement Dates
## Credit Balance Dates of Distribution

**9.1** Earliest Permissible Distribution Dates

(a)   Subject to Sections 9.1(d) and 9.9, a Participant's vested Accrued Benefit shall not commence prior to the termination of his/her employment with the Company, all Participating Companies and all Affiliated Companies and in addition, a Participant's vested Final Salary Benefit shall not commence earlier than the dates set forth in this Article IX.

(b)   If a Participant dies before his/her Annuity Starting Date under this Article IX, the vested Accrued Benefit of such Participant, if any, shall commence at the times and in the forms set forth in Sections 8.6 and 8.7.

(c)   Notices of elections and applications for Plan benefits shall become effective only when made on a Notice to the Plan Administrator; and the Plan Administrator may delay payment of a benefit until said notices of elections and applications for Plan benefits are received by the Plan Administrator. Upon receipt of a proper Notice to the Plan Administrator requesting a distribution of benefits, benefits shall commence within a reasonable period following such receipt or, if later, the date specified in the Notice.

(d)   For purposes of this Article IX, if a purchaser or a transferror (which must not be an Affiliated Company) purchases or acquires from an Employer or an Affiliated Company the assets used by such Employer or an Affiliated

-64-

Company in a trade business or the stock of any Affiliated Company and assumes this Plan or accepts a transfer of assets and liabilities from this Plan to a qualified plan maintained by the purchaser or transferor with respect to the Accrued Benefit of a Participant, then such Participant shall not be treated as having terminated employment under this Plan in the case of an assumption or having an Accrued Benefit under this Plan in the case of a transfer of assets and liabilities.  If instead such purchaser or transferor does not assume the Plan or accept a transfer of assets and liabilities to a qualified plan maintained by the purchaser or transferor with respect to the Accrued Benefit of a Participant, such Participant who is subsequently employed by such purchaser or transferor shall not be treated as having retired or incurring a Severance Date.  The Participant must terminate employment with such purchaser or transferor, or any other employer considered part of the controlled group before becoming eligible for a distribution with respect to his/her Accrued Benefit:  provided that, in such circumstances, a portion of the Accrued Benefit may be distributable but only if and to the extent that Section 8.1(b)(i) requires, as a result of a Qualified Transaction, a distribution of the benefit accrued under the Prior Plan as of December 31, 1992 plus Interest and Transition Credits thereon.  A Qualified Transaction shall mean a sale or transfer of stock or assets used in a trade or business, after which neither an Employer nor any Affiliated Company retains an interest in the purchased  or transferred business of 50% or more, measured by value or voting power.

9.2    Credit Balance Dates of Distribution

(a)    Effective for termination of employment after July 1, 1993, a Participant who has terminated employment as an Employee may elect at any time to receive

-65-

a distribution of the portion of his/her vested Accrued Benefit attributable to the Credit Balance by giving Notice to the Administrator. For Severance Dates prior to January 1, 1993, the terms of the Prior Plan shall govern distributions.

(b)     Once a Participant makes a proper election, such portion of the vested Accrued Benefit attributable to the Credit Balance will be paid or payment will commence as soon as administratively practical following receipt of the Notice to the Administrator, or if later, on the date set forth in such election, but not later than such Participant's Normal Retirement Date.

(c)     If a Participant elects to defer the distribution of his/her Credit Balance until a date certain by giving a Notice to the Administrator, the distribution of such benefit may not be deferred beyond such date certain, but distribution may be accelerated to an earlier date than originally elected.

9.3     <u>Final Salary Benefit Normal Retirement Date</u>

A Participant may elect to retire on his/her Normal Retirement Date by giving a Notice to the Administrator. Subject to Section 9.1(c), a Participant who gives proper notice and retires on his/her Normal Retirement Date shall commence receiving his/her vested Final Salary Benefit as of such Normal Retirement Date.

9.4     <u>Final Salary Benefit Deferred Retirement Date</u>

Subject to Section 9.9 and Section 9.1(c), a Participant who remains employed beyond his/her Normal Retirement Date may elect to retire on the first day of any month thereafter by

-66-

giving a Notice to the Administrator. A Participant who retires on a deferred retirement date shall commence receiving his/her vested Final Salary Benefit as of such deferred retirement date.

9.5    Final Salary Benefit Early Retirement Dates

Subject to Section 9.1(c), a Participant may receive a benefit prior to his/her Normal Retirement Date and after incurring a Severance Date under the following circumstances:

(a)    A Participant, who has as of his/her Severance Date (1) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years, and (2) attained at least age 55, may elect to retire and commence receiving the vested Adjusted Final Salary Benefit set forth in Section 5.2(a) on the first day of any month thereafter (an "Early Retirement Date") by giving a Notice to the Administrator.

(b)    A Participant who has as of his/her Severance Date (i) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years, (ii) attained at least age 54 and (iii) incurs an Eligible Termination, may elect to retire and commence receiving the vested Adjusted Final Salary Benefit set forth in Section 5.2(b), on the first day of any month after attaining age 54 by giving Notice to the Administrator.

(c)    A Participant who has as of his/her Severance Date (i) incurred a Disability QCC Termination and (ii) attained at least age 54 at the time of such Disability QCC Termination, may elect to receive the vested Adjusted Final Salary Benefit set forth in Section 5.2(b) on the first day of any month after attaining age 54 by giving Notice to Administrator.

-67-

⁂ CHEMICAL

(d)     A Participant who terminates employment on or after an Early Retirement Date under this Section 9.5 may instead elect, by giving a Notice to the Administrator, to defer commencement of the payment of his/her Accrued Benefit until the first day of any month following such Early Retirement Date, but not later than his/her Normal Retirement Date.  Such an election to defer may be revoked by Notice to the Administrator and a new election to receive benefits at an earlier date may be made.  In no event shall a Participant be entitled to extend the date for receipt of his or her benefit once an election has been made.

9.6     <u>Final Salary Benefit Vested Deferred Benefits</u>

(a)     Subject to Section 9.1(c), a Participant whose Severance Date occurs (i) prior to the time he/she is eligible to receive benefits under Section 9.3 or 9.5, and (ii) after he/she is vested under the Plan, shall commence receiving his/her Final Salary Benefit as of his/her Normal Retirement Date, unless he/she makes an election under paragraphs (b)  of this Section 9.6.

(b)     A Participant who completes a total Period of Service (including service prior to the Effective Date) of at least 10 years, but has not attain age 55 prior to his/her Severance Date, may elect to receive the vested Adjusted Final Salary Benefit set forth in Section 5.2(c), starting on the first day of any month after attaining age 55, following proper Notice to the Administrator.

CBPJPMC00001539

*CHEMICAL*

### 9.7     Special Commencement Date for MHT Eligible Retirees

Subject to Section 9.1(c), an MHT Eligible Retiree whose Severance Date occurs prior to the time he/she is eligible to receive benefits under Section 9.5 or 9.6, may nonetheless elect to commence receiving the vested Adjusted Final Salary Benefit described in Section 5.3(b) as of the first day of any month after attaining age 50 but not later than his/her Normal Retirement Date, following giving proper Notice to the Administrator.

### 9.8     Failure to Make an Election.

(a)     Subject to Section 9.9 below, if a Participant fails to elect by Notice to the Administrator to commence receiving benefits under the Plan, his/her vested Accrued Benefit under the Plan must commence not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs:

(i)     the Participant attains Normal Retirement Age, or

(ii)     the Participant terminates employment with the Company, all Participating Companies and all Affiliated Companies, or

(iii)     the tenth anniversary of the year in which the Participant commenced participation in the Plan.

CBPJPMC00001540

%, CHEMICAL

9.9    <u>Latest Permissible Distribution Dates</u>

(a)    Notwithstanding Sections 9.1 through 9.8 above, unless otherwise provided by law, distribution of each Participant's vested Accrued Benefit must commence, in accordance with Code Section 401(a)(9) and regulations thereunder, no later than the April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2, even if such Participant has not yet terminated employment as an Employee, <u>provided, however</u>, that with respect to a Participant who was (i) age 70-1/2 on December 31, 1987, and (ii) a participant in the Prior Plan or the MHT Plan, distribution of such Participant's vested Accrued Benefit shall commence no later than the April 1 following termination of employment as an Employee.

(b)    A Participant who must commence receiving distributions from the Plan while an Employee under this Section 9.9, may elect any form of benefit set forth in Article VIII, <u>provided, however</u>, that, in accordance with Code Section 401(a)(9) and the regulations thereunder, such distributions shall not be paid over a period that exceeds (i) the life of such Participant, (ii) the lives of such Participant and his/her Beneficiary, (iii) the life expectancy of the Participant, or (iv) the joint life expectancy of the Participant and his/her Beneficiary. For this purpose, the life expectancy of a Participant and his/her spouse may not be recalculated. Such distributions must also comply with the incidental death benefit requirements of Code Section 401(a)(9)(G) and regulations thereunder.

(c)    A Participant who commences receiving distributions under this Section 9.9, and subsequently incurs a Severance Date may elect a new form of benefit with respect to his/her vested Accrued Benefit attributable to Article IV, but not

-70-

CBPJPMC00001541

CHEMICAL

with respect to his/her vested Accrued Benefit attributable to Article V (the Final Salary Benefit); provided that in each case, the Participant's Accrued Benefit shall be adjusted in accordance with Section 7.4.

(d)    Notwithstanding any other Plan provision to the contrary, no distribution shall be made under the Plan which (i) commences on a date later than the date permitted under Code Section 401(a)(9), or (ii) is distributed over a period of time greater than the period permitted under Code Section 401(a)(9). Code Section 401(a)(9) and regulations thereunder are incorporated herein by reference.

9.10    <u>Payments to Individuals on Long-Term Disability</u>

Effective July 1, 1993, a Participant who becomes eligible for benefits in excess of 18 months under the Disability Plan as a result of a total and permanent disability certified by the Social Security Administration (if not eligible for said certification, so certified by the third party claims administrator) may elect to receive the portion of his/her Accrued Benefit described in Article IV at any time after such certification and the portion of his or her Accrued Benefit described in Article V after satisfying the age and service requirements set forth in Section 5.2(a) or 5.2(c).

9.11    <u>Payments Due Infants and Incompetents</u>

If any Participant or Beneficiary who is entitled to receive payments hereunder is incapable of receiving or disbursing the same by reasons of age, illness, infirmity, or any other incapacity of any kind, the Plan Administrator upon receipt of satisfactory evidence of incapacity may direct the Trustee to apply such payment directly for the comfort, support, and maintenance of such Participant, or Beneficiary or to pay the same to any responsible person caring for the

CBPJPMC00001542

CHEMICAL

Participant or Beneficiary who is determined by the Plan Administrator to be qualified to receive and disburse such payments for the benefit of such individual; and the receipt by such person shall be a complete acquittance for the payment of the benefit.  Payments pursuant to this Section shall be a complete discharge to the extent thereof of any and all liability of the Employers, the Plan Administrator, the Trustee and the Trust Fund.

### 9.12    Suspension of Benefits

An active Participant who attains Normal Retirement Age but who does not have a Severance Date shall automatically have his benefit suspended in accordance with Section 7.4(a)(iii) as if he were a rehired vested Participant until he has a Severance Date.  Such a Participant shall be given notification of this suspension in accordance with Department of Labor regulations.

### 9.13    Eligible Rollover Distribution

A Participant or Beneficiary who is the Participant's Surviving Spouse or a former spouse who is an alternate payee within the meaning of Section 414(p) of the Code may elect to have any portion of his or her Accrued Benefit which constitutes an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan as specified in a written Notice to the Administrator.

CBPJPMC00001543

CHEMICAL

ARTICLE X

Fiduciaries

10.1    Named Fiduciaries

The Named Fiduciaries who severally and not jointly shall have authority to control and manage the operation and administration of the Plan, and to manage and control its assets, shall be the Board, the Trustee. the Committee and the Plan Administrator.  The Named Fiduciaries may from time to time allocate fiduciary responsibilities (other than trustee responsibilities) among themselves and may designate persons other than Named Fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the Plan.  The procedure for allocating fiduciary responsibilities shall be a mutual agreement evidenced in writing.  Pending any reallocation of fiduciary responsibilities, the initial allocation shall be that set forth in Sections 10.2, through 10.5, which shall be deemed an allocation as between the Named Fiduciaries.

10.2    Board

The fiduciary responsibilities of the Board shall be limited to the selection of the Trustee and the appointment of the Employee Benefit Plans Committee.  The settlor powers of the Board shall include amendment to. or termination of. the Plan

CBPJPMC00001544

CHEMICAL

10.3    Trustee

The Trustee shall have exclusive authority and discretion to manage and control the assets allocated to each investment fund under the Plan or to delegate such authority and discretion to an investment manager (as defined in ERISA Section 3(38)) provided that the Committee or its delegates may appoint investment managers.

10.4    Committee

Except for fiduciary responsibilities allocated to the Board, the Trustee and the Plan Administrator, the Committee shall be responsible for controlling and managing the operation and administration of the Plan, including the establishment and carrying out of a funding policy and method consistent with the objectives of the Plan and the requirements of Title I of ERISA. Such funding policy and any changes therein shall be communicated annually or at more frequent intervals to the Trustee.

10.5    Plan Administrator

The Plan Administrator shall be responsible for the duties set forth in Plan and for filing all annual reports, summary plan descriptions, benefit statements and other documents relating to the Plan required under the Code, ERISA or any other applicable law and making the same available to Participants and Beneficiaries to the extent required by law.

CBPJPMC00001545

CHEMICAL

10.6    Other Fiduciaries

Named Fiduciaries may designate persons other than Named Fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the Plan, and such persons shall be deemed to be "Fiduciaries" with respect to the Plan.  Fiduciaries, including Named Fiduciaries, may employ one or more persons to render advice with regard to any responsibility such Fiduciary has under the Plan.  Any Fiduciary, including a Named Fiduciary, may serve in more than one fiduciary capacity with respect to the Plan.

10.7    Fiduciary Liability

A Fiduciary shall not be liable or responsible for any act or omission of any other Fiduciary unless (a) the Fiduciary knowingly participates in or knowingly attempts to conceal the act or omission constituting a breach of fiduciary responsibility by the other Fiduciary, (b) the Fiduciary has knowledge of a breach of fiduciary responsibility by the other Fiduciary and has not made reasonable efforts to remedy the breach, or (c) the Fiduciary's breach of his or her own fiduciary responsibility has permitted the other Fiduciary to commit the breach.

10.8    Indemnification

The Employer shall indemnify any Fiduciary, including a Named Fiduciary, who is a director, officer or Employee of an Employer, and his or her heirs and legal representatives, against all liability and reasonable expense. including counsel fees, amounts paid in settlement and amounts of judgments, fines or penalties. incurred or imposed in connection with any claim, action, suit or proceeding, whether civil, criminal administrative or investigative, by reason of acts or omissions in his or her capacity as a Fiduciary hereunder, provided that such act or omission is not the result of gross negligence or willful misconduct.

-75-

CBPJPMC00001546

*CHEMICAL*

# ARTICLE XI

## Employee Benefit Plans Committee

### 11.1    Appointment of Committee

Except to the extent certain administrative duties have been allocated to the Plan Administrator, the Plan shall be administered by an Employee Benefit Plans Committee (the "Committee") appointed by the Board.  The Board may at any time remove any member of the Committee and may fill any vacancy.

### 11.2    Quorum

A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business.  All resolutions or other actions taken by the Committee at any meeting shall be by the vote of a majority of those present.  Action of the Committee may be taken otherwise than at a meeting under procedures adopted by the Committee, subject to ratification by the Committee at the next meeting.

### 11.3    Agents

The Committee shall designate one of its members as Chairman and shall elect a Secretary who may, but need not, be a member of the Committee.  The Committee may appoint from among its members such subcommittees with such powers as it shall determine and may authorize one or more of its members, or any agent, to execute and deliver any instrument in its behalf, and may employ at the expense of the Employers such counsel, auditors, and other agents and such clerical and other services as they may require in carrying out the provisions of the Plan.

CBPJPMC00001547

CHEMICAL

11.4    Certain Procedures

The Committee shall establish and maintain records for the Participants and Beneficiaries of the Plan and shall direct the Trustee as to the time and manner of distribution of the Participants' and Beneficiaries interest in the Trust Fund.  No member of the Committee shall participate in the determination by the Committee of any of his or her rights or benefits under the Plan.

11.5    Rules

The Committee shall establish rules for the exercise of the duties imposed upon it under the Plan and may at any time alter and change such rules and adopt new rules.

11.6    Interpretation of Plan

The Committee shall have the exclusive right to interpret any and all of the provisions of the Plan and to determine any questions arising thereunder or in connection with the administration of the Plan; provided, however, that in the determination of any question requiring the exercise of discretion by the Committee, such determination shall apply in a uniform and nondiscriminatory manner to Employees similarly situated.  Any decision or action of the Committee shall be conclusive and binding upon all Participants and Beneficiaries.

CBPJPMC00001548

CHEMICAL

11.7    Claims Procedure

Any denial by the Committee of a claim for benefits under the Plan shall be stated in writing by the Committee and delivered or mailed to the Participant or other person asserting the claim. Such notice shall set forth the specific reasons for the denial. In addition, the Committee shall afford a reasonable opportunity for a review of any decision denying a claim to any Participant or other person whose claim for benefits has been denied.

ARTICLE XII

Trust Fund

12.1    Declaration of Trust

The Company has executed a Declaration of Trust under which the Company will act as Trustee of the Trust Fund. The Declaration of Trust contains such provisions as the Company deems appropriate, including, but not by way of limitation, provisions with respect to the powers and authority of the Trustee as to the administration of the Trust Fund and the authority of the Company to amend the Declaration of Trust, to terminate the Trust created thereunder, and to settle the accounts of the Trustee on behalf of all persons having an interest in the Trust Fund. The Declaration of Trust provides that the Trustee shall follow the directions of the Plan Administrator in making payments of benefits under the Plan.

12.2    Incorporation as Part of the Plan

The Declaration of Trust shall be deemed to form a part of the Plan, and any and all rights or benefits which may accrue to any person under the Plan shall be subject to all the terms and provisions of the Declaration of Trust.

-78-

CHEMICAL

## 12.3     Participating Companies

Each Participating Company other than the Company shall, upon becoming a Participating Company, shall be bound by all the provisions of the Declaration of Trust and the Plan and shall confirm the authority of the Company and the Committee to exercise on behalf of such Participating Company all the rights and powers reserved to the Company and the Committee in said Declaration of Trust and the Plan including, without limiting the generality thereof, the right to amend the Declaration of Trust and Plan, to approve the accounts of the Trustee and to direct distributions from the Trust Fund.    The Trustee shall evidence its acceptance of such instrument.

## 12.4     Plan Expenses

All expenses that arise in connection with the administration of the Plan and the Declaration of Trust (whether external service providers or otherwise) including, but not limited to, the compensation of the Trustee and of any actuary, accountant, counsel, investment managers or advisers or other person appointed by the Administrator, the Company or the Trustee shall be paid from the Trust Fund unless paid directly by the Company at its election. The Administrator will allocate among the Employers the appropriate share of expenses to be paid by each Employer.

CBPJPMC00001550

*CHEMICAL*

# ARTICLE XIII

## Amendment of the Plan

### 13.1     Plan for Exclusive Benefit of Participants

The Board may amend the Plan at any time and any amendment may be made retroactive; provided, however, that except as specified in Section 13.3, it shall be impossible under any provision of the Plan or any amendment thereto for any interest, ownership or control over the assets of the Trust Fund to vest in the Company, or in any other Participating Company, or for any part of the Trust Fund (other than such part as may be required to pay taxes, administration expenses or fees) to be used for or diverted to purposes other than for the exclusive benefit of Participants or their Beneficiaries, nor shall any amendment reduce the amount of any then Accrued Benefit of a Participant, and further, provided, that no amendment shall eliminate, reduce, or result in prohibited employer discretion with respect to, any protected benefit under Section 411(d)(6) of the Code.

### 13.2     Amendments

Subject to the foregoing limitations, the Board shall have the power to amend the Plan in any manner which it deems desirable, including increasing or diminishing contributions to be made by it hereunder, changing any provision relating to the administration of the Plan, and changing any provision relating to the distribution or payment, or both, of any of the assets of the Trust Fund.   Subject to Section 13.1, the Plan may be amended also retroactively or otherwise by action of the (a) Plan Administrator if such amendments are of a technical or administrative nature, or are necessary to comply the Plan with law or qualify the Plan with the Internal Revenue Service; (b) Plan Administrator, subject to the approval of the Compensation and Benefits Committee of the Board, if such amendments result in a change in the benefit

-80-

///CHEMICAL

structure hereunder or involve an increased expense to the Participating Companies.   Any amendment shall be binding and conclusive on each other Participating Company without any action on its part.   All amendments shall be in writing.

### 13.3     Return of Contributions

(a)If a contribution by a Participating Company is conditioned on initial qualification of the Plan as to such Participating Company under Section 401 of the Code, and if the Plan does not so qualify, then Section 13.1 shall not prohibit the return of the contribution to such Participating Company at the direction of the Committee within one year after the date of denial of initial qualification of the Plan.

(b)If a contribution by a Participating Company is made by a mistake of fact, then such contribution may be returned, at the direction of the Committee, within one year after payment, notwithstanding Section 13.1.

(c)All contributions by a Participating Company to the Plan are conditioned on their deductibility under Section 404 of the Code.  If a deduction under Section 404 of the Code for a contribution by a Participating Company is disallowed by the Internal Revenue Service, then such contribution may be returned (to the extent of the disallowance), at the direction of the Committee, within one year of the disallowance, notwithstanding Section 13.1.

CBPJPMC00001552

CHEMICAL

# ARTICLE XIV

## Merger or Consolidation of Plan

14.1    Benefit Requirements

In the event of any merger or consolidation of the Plan with, or transfer in whole or in part of the assets and liabilities of the Plan to, any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants of this Plan, the assets of this Plan applicable to such Participants shall be transferred to such other plan only if each Participant would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit such Participant would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then terminated).

# ARTICLE XV

## Termination of the Plan

15.1    Voluntary

The continuance of the Plan and the payment of contributions under the Plan are entirely voluntary and are not assumed as contractual obligations of any Employer. The Company (for itself and the other Employers) reserves the right, by action of the Board, to terminate the Plan in whole or in part at any time and for any reason.

CBPJPMC00001553

**15.2**    Termination

(a)    In the event of termination or partial termination of the Plan, assets of the Plan allocable to affected Participants shall be allocated to affected Participants in accordance with Section 4044 of ERISA, except as the PBGC or the Internal Revenue Service may otherwise direct. Any such allocated amounts shall be applied in the manner determined by the Plan Administrator to the payment of benefits to the persons entitled thereto.

(b)    In the event of termination or partial termination of the Plan, the Accrued Benefit credited to affected Participants on the date of such termination or partial termination, to the extent not already vested, shall be fully vested and nonforfeitable to the extent funded as of such date; provided, however, that in the event of the termination of the Plan a Participant shall not have recourse toward satisfaction of any nonforfeitable benefits other than from the Trust Fund and the PBGC.

(c)    Any assets remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employers.

**15.3**    Section 401(a)(4) - Restriction on Benefits and Distribution

(a)    In the event of a termination of the Plan, benefits and distribution shall be restricted for any Restricted Employee or Restricted Former Employee as set forth below.

-83-

CBPJPMC00001554

WffCHEMICAL

(b)    In the event of a termination of the Plan, benefits of a Restricted Employee or Restricted Former Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(c)    Annual payments to any Restricted Employee or Restricted Former Employee shall be limited to an amount equal to the payments that would be made on behalf of such Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and other benefits (other than a Social Security supplement described in Regulation 1.411(a)-7(c)(4)(ii), if any), under the Plan and the amount the Participant is entitled to receive under a Social Security supplement. Notwithstanding the foregoing, this paragraph (c) shall not apply if:

(i)    after the payment to the Restricted Employee or Restricted Former Employee of all benefits (if any) and his Accrued Benefit, the value of the assets of the Plan equal or exceeds 110 percent of the value of all current liabilities as defined in Section 412(l)(7) of the Code, or

(ii)    the value of the benefits (including, Accrued Benefits) for a Restricted Employee or Restricted Former Employee is less than one percent of the value of current liabilities before distribution, as defined in Section 412(l)(7) of the Code.

-84-

CBPJPMC00001555

///. CHEMICAL

(d)    For the purpose of this Section 15.3.

   (i)    "Restricted Employee or Restricted Former Employee" means a group
          of Employees or former Employees consisting of the 25 highest paid
          Employees or former Employees.  For these purposes, compensation
          shall include all remuneration from an Employer.

   (ii)   "Benefit" means, solely for purposes of this Section 15.3, loans in
          excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any
          periodic income, any withdrawal values payable to a living Employee
          and any death benefits not provided for by insurance on an Employee's
          life.

## ARTICLE XVI
### Miscellaneous Provisions

**16.1    Construction**

All questions pertaining to the construction, regulation, validity and effect of the
provisions of the Plan shall be determined in accordance with the laws of the State of New York
except as superseded by ERISA.  The headings and subheadings contained herein are inserted
for convenience of reference only.

**16.2    Employment Status and Rights**

The adoption and maintenance of the Plan shall not be deemed to constitute a contract
between any Participating Company and any Employee or Participant, or to be consideration for

-85-

CBPJPMC00001556

*CHEMICAL*

or an inducement or condition of, the employment of any person. Nothing herein contained shall be deemed to give to any Employee or Participant the right to be retained in the employ of a Participating Company or to interfere with the right of a Participating Company to discharge any Employee or Participant at any time.

### 16.3    Source of Benefit Payments

All benefits payable under the Plan shall be paid or provided for solely from the Trust Fund held by the Trustee.

### 16.4    Non-Assignability

Except to the extent required by law, no benefit payable out of the Fund to any person (including any Participant or Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge encumber or charge the same shall be void; no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized under the Plan. In the event that the Committee receives a domestic relations order, it shall determine, in accordance with procedures determined by it, whether the order is a "Qualified Domestic Relations Order," as defined in Code Section 414(p). If the order is a Qualified Domestic Relations Order, the terms of such order shall be followed by the Plan, notwithstanding the foregoing provisions of this Section 16.4. In the event that the Plan Administrator determines that an overpayment of all or any portion of an Accrued Benefit has occurred, such Plan Administrator may take such steps as he may deem appropriate to recover such overpayment, including but not limited to, reducing benefits in pay status.

-86-

CHEMICAL

structure hereunder or involve an increased expense to the Participating Companies. Any amendment shall be binding and conclusive on each other Participating Company without any action on its part. All amendments shall be in writing.

### 13.3    Return of Contributions

(a)If a contribution by a Participating Company is conditioned on initial qualification of the Plan as to such Participating Company under Section 401 of the Code, and if the Plan does not so qualify, then Section 13.1 shall not prohibit the return of the contribution to such Participating Company at the direction of the Committee within one year after the date of denial of initial qualification of the Plan.

(b)If a contribution by a Participating Company is made by a mistake of fact, then such contribution may be returned, at the direction of the Committee, within one year after payment, notwithstanding Section 13.1.

(c)All contributions by a Participating Company to the Plan are conditioned on their deductibility under Section 404 of the Code. If a deduction under Section 404 of the Code for a contribution by a Participating Company is disallowed by the Internal Revenue Service, then such contribution may be returned (to the extent of the disallowance), at the direction of the Committee, within one year of the disallowance, notwithstanding Section 13.1.

CBPJPMC00001558

*CHEMICAL*

# ARTICLE XIV
## Merger or Consolidation of Plan

14.1    Benefit Requirements

In the event of any merger or consolidation of the Plan with, or transfer in whole or in part of the assets and liabilities of the Plan to, any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants of this Plan, the assets of this Plan applicable to such Participants shall be transferred to such other plan only if each Participant would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit such Participant would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then terminated).

# ARTICLE XV
## Termination of the Plan

15.1    Voluntary

The continuance of the Plan and the payment of contributions under the Plan are entirely voluntary and are not assumed as contractual obligations of any Employer. The Company (for itself and the other Employers) reserves the right, by action of the Board, to terminate the Plan in whole or in part at any time and for any reason.

-82-

CBPJPMC00001559

CHEMICAL

15.2    Termination

(a)    In the event of termination or partial termination of the Plan, assets of the Plan allocable to affected Participants shall be allocated to affected Participants in accordance with Section 4044 of ERISA, except as the PBGC or the Internal Revenue Service may otherwise direct.  Any such allocated amounts shall be applied in the manner determined by the Plan Administrator to the payment of benefits to the persons entitled thereto.

(b)    In the event of termination or partial termination of the Plan, the Accrued Benefit credited to affected Participants on the date of such termination or partial termination, to the extent not already vested, shall be fully vested and nonforfeitable to the extent funded as of such date; provided, however, that in the event of the termination of the Plan a Participant shall not have recourse toward satisfaction of any nonforfeitable benefits other than from the Trust Fund and the PBGC.

(c)    Any assets remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Employers.

15.3    Section 401(a)(4) - Restriction on Benefits and Distribution

(a)    In the event of a termination of the Plan, benefits and distribution shall be restricted for any Restricted Employee or Restricted Former Employee as set forth below.

-83-

CBPJPMC00001560

JPCHEMICAL

(b)      In the event of a termination of the Plan, benefits of a Restricted Employee or Restricted Former Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(c)      Annual payments to any Restricted Employee or Restricted Former Employee shall be limited to an amount equal to the payments that would be made on behalf of such Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and other benefits (other than a Social Security supplement described in Regulation 1.411(a)-7(c)(4)(ii), if any), under the Plan and the amount the Participant is entitled to receive under a Social Security supplement.  Notwithstanding the foregoing, this paragraph (c) shall not apply if:

(i)       after the payment to the Restricted Employee or Restricted Former Employee of all benefits (if any) and his Accrued Benefit, the value of the assets of the Plan equal or exceeds 110 percent of the value of all current liabilities as defined in Section 412(l)(7) of the Code, or

(ii)      the value of the benefits (including, Accrued Benefits)for a Restricted Employee or Restricted Former Employee is less than one percent of the value of current liabilities before distribution, as defined in Section 412(l)(7) of the Code.

-84-

CBPJPMC00001561

%/ CHEMICAL

(d)   For the purpose of this Section 15.3.

  (i)   "Restricted Employee or Restricted Former Employee" means a group of Employees or former Employees consisting of the 25 highest paid Employees or former Employees.  For these purposes, compensation shall include all remuneration from an Employer.

  (ii)   "Benefit" means, solely for purposes of this Section 15.3, loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee and any death benefits not provided for by insurance on an Employee's life.

## ARTICLE XVI
### Miscellaneous Provisions

**16.1   Construction.**

All questions pertaining to the construction, regulation, validity and effect of the provisions of the Plan shall be determined in accordance with the laws of the State of New York except as superseded by ERISA.  The headings and subheadings contained herein are inserted for convenience of reference only.

**16.2   Employment Status and Rights**

The adoption and maintenance of the Plan shall not be deemed to constitute a contract between any Participating Company and any Employee or Participant, or to be consideration for

-85-

CBPJPMC00001562