%CHEMICAL

or an inducement or condition of, the employment of any person. Nothing herein contained shall be deemed to give to any Employee or Participant the right to be retained in the employ of a Participating Company or to interfere with the right of a Participating Company to discharge any Employee or Participant at any time.

### 16.3   Source of Benefit Payments

All benefits payable under the Plan shall be paid or provided for solely from the Trust Fund held by the Trustee.

### 16.4   Non-Assignability

Except to the extent required by law, no benefit payable out of the Fund to any person (including any Participant or Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge encumber or charge the same shall be void; no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized under the Plan. In the event that the Committee receives a domestic relations order, it shall determine, in accordance with procedures determined by it, whether the order is a "Qualified Domestic Relations Order," as defined in Code Section 414(p). If the order is a Qualified Domestic Relations Order, the terms of such order shall be followed by the Plan, notwithstanding the foregoing provisions of this Section 16.4. In the event that the Plan Administrator determines that an overpayment of all or any portion of an Accrued Benefit has occurred, such Plan Administrator may take such steps as he may deem appropriate to recover such overpayment, including but not limited to, reducing benefits in pay status.

-86-

CBPJPMC00001563

*CHEMICAL*

16.5    Section 401(a)(4)  Testing

For purposes of the nondiscrimination testing under Section 401(a)(4) of the Code, and the regulations issued thereunder, the Plan adopts the simplified definition of "Highly Compensated Employee" as set forth in Revenue Procedure 93-43, including the use of a snap shot day.

16.6    Appendices

The following appendices are part of this Plan -- Appendix I, Appendix II, Appendix III, Appendix IV, Appendix V, Appendix VI, and Appendix VII.

CBPJPMC00001564

*ZZ* CHEMICAL

# Appendix I

## Maximum Benefits

## Section 415

This Appendix is intended to impose a maximum limit on the benefit payable under this Plan equal to but no lower than that necessary to comply with the requirements of Code Section 415. Accordingly, Code Section 415 and the regulations thereunder, as amended from time to time, are incorporated herein by reference and shall override inconsistent provisions of this Appendix. if any.

1.1    Code Section 415 Limits Generally.    (a) Notwithstanding anything herein to the contrary, the amount of the annual benefit payable to a Participant under the Plan, and any other defined benefit plan (whether or not terminated) of an Employer or an Affiliated Company (the "Annual Benefit") shall not exceed the lesser of:

(i)    the primary limit imposed by Code Section 415(b), and

(ii)    the combined limit imposed by Code Section 415(e).

(b)    "Annual Benefit" means the annual benefit payable in the form of a single life annuity, a Joint and 50% Survivor (Spouse) Annuity described in Section 8.2(a), or the Joint and Survivor Benefit described in Section 8.3(c) (if the joint annuitant is the Participant's Surviving Spouse and the benefit payable to the Surviving Spouse is at least 50%, but not greater than 100% of the benefit payable to the Participant). All other forms of benefits must be adjusted to an Actuarially Equivalent of a single life annuity. using the greater of the interest rate specified in Appendix V and 5%, provided, however that no actuarial adjustment is required for the value of ancillary or incidental benefits. Annual Benefit does not include employee contributions,

-88-

CBPJPMC00001565

CHEMICAL

rollover contributions or assets transferred from a qualified plan that was not maintained by an Employer or an Affiliated Company.

(c)    If a Participant would otherwise accrue a benefit during a Plan Year that would produce an Annual Benefit that exceeds the primary limit imposed by Code Section 415(b), such Participant's rate of accrual will be reduced so that his or her Annual Benefit does not exceed such primary limit.

(d)    For purposes of this Appendix I, in determining what is an Affiliated Company, the phrase "more than 50%" shall be substituted for the phrase "at least 80%" in each place it appears in Code Section 1563(a)(1).

1.2    Primary Limit under Code Section 415.    (a)  Under the primary limit imposed by Code Section 415(b), the maximum Annual Benefit payable to a Participant may not exceed the lesser of:

(i)    $90,000 increased annually during the Participant's employment to reflect the cost-of-living adjustment set forth in Code Section 415(d)(1)(A) but only for the year in which such adjustment is effective, or

(ii)    100 percent of the Participant's average annual Total Compensation (as defined below) for the Participant's three highest paid consecutive Plan Years while an active Participant ("highest three year average compensation");

provided, however, that the primary limit on the Annual Benefit payable to a former Participant shall be increased after the Employee's separation from service to reflect post-separation increases in the cost-of-living, as provided by Code Section 415(d)(1)(A) and (B) and the

-89-

CBPJPMC00001566

CHEMICAL

regulations thereunder: provided, further, that if such former Participant receives his or her benefit from the Supplemental Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies in a single lump sum, the cost-of-living adjustment set forth in the first proviso shall not be made.

(b)    For purposes of this Appendix I, "Total Compensation" means a Participant's wages as defined in Code Section 3401(a), and all other payments of compensation, as reported or reportable on Form W-2 for the Plan Year, but excluding amounts paid or reimbursed for moving expenses incurred by such Participant, all as set forth in Treas. Reg. § 1.415-2(d)(11)(i).

1.3    Reduction of Primary Limit for Former Participants with Less than Ten Years.

(a)    If a former Participant has less than 10 years of participation (as defined in Code Section 415(b)(5) and as modified by Code Section 415(b)(5)(D), the maximum Annual Benefit payable under Section 1.2(a) shall be reduced by multiplying such dollar amount by a fraction in which the numerator is the actual number of years, or parts thereof, of participation in the Plan (and predecessor plans), and the denominator is ten (but not less than 1/10).

(b)    If a former Participant has less than 10 years of service (as defined in Code Section 415(b)(5)), the maximum Annual Benefit payable under Section 1.2(b), shall be reduced by multiplying the amount by a fraction in which the numerator is the actual number of years, or parts thereof, of such service, and the denominator is ten (but not less than 1/10). Likewise, the denominator of the defined benefit fraction in Section 1.8 shall be reduced by the same fraction but years of service shall include future years of service occurring before the Participant's Normal Retirement Age.

1.4    Impact of Early and Late Commencement of Benefits.    (a) If a Participant's Annual Benefit commences before the Participant's social security retirement age, but on or after

CBPJPMC00001567

CHEMICAL

age 62. the dollar limit in Section 1.2(a) shall be reduced (after adjustment under Section 1.3, if any) as follows:

(i)     If the social security retirement age is 65. the reduction shall be 5/9 of one percent per month for each month by which benefits commence prior to the month the Participant attains 65: and

(ii)    If the social security retirement age exceeds 65. the reduction shall be 5/9 of one percent for each of the first 36 months and 5/12 of one percent for each of the additional months (up to 24 months) by which benefits commences prior to the month the Participant attains social security retirement age.

(b)     If a Participant's Annual Benefit commences before he or she reaches 62, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at age 62 as determined above, using the greater of the interest rate specified in Appendix V or 5 percent.

(c)     If a Participant's Annual Benefit commences after social security retirement age, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at social security retirement age (after adjustment under Section 1.3, if any), using the lesser of the interest rate specified in Appendix or 5 percent.

(d)     Social security retirement age means the age used as the retirement age under section 216(1) of the Social Security Act, which is presently 65 for a person born before 1938, age 66 for a person born between 1938 and 1954. and age 67 for a person born after 1954.

CBPJPMC00001568

CHEMICAL

1.5    Special $10,000 Rule.    If a Participant has never participated in a defined contribution plan, a welfare benefit plan described in Code Section 419(e), or an individual medical account described in Code Section 415(1)(2) maintained by an Employer or an Affiliated Company, the primary limit set forth in Section 1.2 shall not prevent such Participant from receiving an Annual Benefit of up to $10,000 multiplied by a fraction in which the numerator is the actual number of years, or parts thereof, of service (as defined in Code Section 415(b)(5), and the denominator is ten (but not less than 1/10).

1.6    TEFRA Code Section 415 Grandfather.    In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan before January 1, 1983, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1982 under the terms and conditions of the Prior Plan or the MHT Plan and the Code Section 415 limits as effective on July 1, 1982, disregarding any cost-of-living adjustments occurring after July 1, 1982.

1.7    TRA 86 Code Section 415 Grandfather.    In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan on January 1, 1987, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1986 under the terms and conditions of the Prior Plan or the MHT Plan and the Code Section 415 limits effective on May 5, 1986 (including any adjustment made under Section 1.5), disregarding any cost-of-living adjustments occurring after May 5, 1986.

CBPJPMC00001569

*CHEMICAL*

1.8    Combined Fraction Limit.    (a)    The sum of a Participant's defined benefit fraction (as defined below) and defined contribution fraction (as defined below) shall not exceed 1.0 in any Plan Year. For this purpose:

(1)    "Defined benefit fraction" means a fraction. the numerator of which is the sum of the Participant's projected annual benefits under all defined benefit plans (whether or not terminated) of the Employer and Affiliated Companies, and the denominator of which is the lesser of 125 percent of the dollar limit in effect for the Plan Year under Code Section 415(b)(1)(A) (including any adjustments to such limitation under Sections 1.3, 1.6 and 1.7) or 140 percent of highest three year average compensation (as defined in Section 1.2).

(2)    "Defined contribution fraction" means a fraction, the numerator of which is the sum of the annual additions(as determined under Code Section 415(c) for the year in which such annual additions were credited) credited to the account of a Participant in all years up to the close of the current year under one or more defined contribution plans (whether or not terminated) maintained by any Affiliated Company (whether before or after it became an Affiliated Company), including any amounts credited to a welfare benefit fund or an individual medical account described in Code Sections 419(e) and 415(1)(2) respectively, and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior years of service with any Affiliated Company (regardless of whether a defined contribution plan was maintained by such employer). The maximum aggregated amount in any year is the lesser of 125 percent of the dollar limit in effect

-93-

CBPJPMC00001570

*CHEMICAL*

under Code Section 415(c)(1)(A) or 25 percent of the Participant's Total Compensation for such Year.

(3)    "Projected annual benefit" means the Annual Benefit as defined in Section 1.1 that the Participant would be entitled to under the Plan, or any other defined benefit plan, if the Participant were to continue to participate in the Plan until his or her Normal Retirement Age (or current age, if later), and the Participant's Total Compensation for the current Plan Year and all other relevant factors used to determine benefits under the Plan, or any other defined benefit plan, were to remain constant for all future years.

(b)    If the Participant's defined benefit fraction and defined contribution fraction would otherwise exceed 1.0, the Participant's benefit accruals under this Plan shall be reduced to the extent necessary to prevent such combined fraction from exceeding 1.0 in the following order:

(A)    first, the Participant's Final Salary Benefit accruals for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

(B)    second, the Participant's Credit Balance accruals for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

(C)    third, the Participant's accruals under the Savings Incentive Plan of Chemical Bank and Certain Affiliated Companies shall be reduced.

-94-

/// CHEMICAL

   1.9    TEFRA Combined Fraction Grandfather. If a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1983 would otherwise exceed 1.0, then the numerator of the defined contribution fraction shall be permanently reduced, in accordance with applicable regulations, by an amount so that the sum of the defined benefit fraction and defined contribution fraction does not exceed 1.0 for such year.

   1.10    TRA 86 Combined Fraction Grandfather.  With respect to the sum of a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1987, in accordance with applicable regulations, an amount shall be permanently subtracted from the numerator of the defined contribution fraction (not exceeding such numerator) so that the sum of the defined benefit fraction and defined contribution fraction computed under Code Section 415(e)(1) (determined as if the Code Section 415(e)(1) which are effective for the first year beginning after December 31, 1986, were in effect for such year) does not exceed 1.0 for such year.

CBPJPMC00001572

⁄⁄ CHEMICAL

# Appendix II

## MHT Plan Transaction Rules

This Appendix describes transactions set forth in the MHT Plan which impacts the calculation of service, vesting and benefits under this Plan including the frozen benefits described in Section 5.5; provided that, in the event of any inconsistency between this Appendix and the MHT Plan with respect to the matters described herein, the MHT Plan shall control; provided, further, that the benefit accruals set forth in the MHT Plan ceased as of December 31, 1992.

2.1    Acquisition of CIT.    (a)  Every Eligible Employee (as defined in the MHT Plan) who was a participant of the Retirement Plan for Employees of C.I.T. Financial Corporation and Certain of its Subsidiaries as such plan existed immediately preceding July 1, 1986 (the "C.I.T. Plan"), became a participant of the MHT Plan on July 1, 1986.

(b)    Every Eligible Employee (as defined in the MHT Plan) who was employed by The C.I.T. Group ("C.I.T.") on July 1, 1986 and who was not a participant of the C.I.T. Plan on July 1, 1986 became a participant of the MHT Plan on the earlier of (i) the date he or she would have become a participant of the C.I.T. Plan if the provisions thereof had remained in effect, or (ii) upon satisfaction of the eligibility requirements under the MHT Plan as then in effect.

(c)    As provided in Article III, a Member's (as defined in the MHT Plan) service with C.I.T. prior to July 1, 1986 are be counted in accordance with the rules of the MHT Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan.

(d)    As provided in Article III, a Member's benefit service on account of service with C.I.T. prior to July 1, 1986 are counted in accordance with the rules of the MHT Plan

-96-

CBPJPMC00001573

CHEMICAL

towards the Member's Years of Benefit Service under the MHT Plan: provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e.. there shall be no double-counting as a result of this section).

     (e)    See benefit formula for C.I.T. in Section 7.1(e) of MHT Plan.

     (f)    With respect to any Member who was (i) actively employed by C.I.T. and a member of the C.I.T. Plan on June 30, 1986, and (ii) age 54 with 9 years of benefit service under the C.I.T. Plan on June 30, 1986, such Member's normal retirement benefit may be paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on June 30, 1986, provided such Member files an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan. as the case may be. With respect to any Member of the C.I.T. Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986, paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan. or this Plan. as the case may be.

     2.2    Plan Merger with MHCS.  (a) Every Eligible Employee who was a participant of the Retirement Plan of Manufacturers Hanover Financial Services. Inc. as such plan existed immediately preceding January 1. 1987. became a participant of the MHT Plan on January 1. 1987.

     (b)    A Member's service with Manufacturers Hanover Financial Services, Inc. ("MHCS") prior to January 1, 1987 shall be counted in accordance with the rules of the MHT

-97-

CBPJPMC00001574

*CHEMICAL*

Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or this Plan, as provided in Article III.

(c)    A Member's benefit service on account of service with MHCS prior to January 1, 1987 shall be counted in accordance with the rules of the MHT Plan towards the Member's Years of Benefit Service under Section 5.1(b) of the Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

(d)    A Member who was employed by MHCS prior to January 1, 1987, terminates service with MHCS on or after January 1, 1987 and retires on or after his or her Normal Retirement Date (as defined in the MHT Plan) shall have a normal retirement benefit (as defined in the MHT Plan) that is the greater of (i) the benefit computed under the MHT] Plan, or (ii) the benefit that would been payable if such benefit was computed pursuant to the applicable provisions of the MHCS Plan as in effect immediately preceding January 1, 1987, reduced by the Actuarial Equivalent (using the UP 84 mortality table and the interest prescribed by the Pension Benefit Guaranty Corporation with respect to terminations occurring on the date as of which equivalence is being determined) of the normal form of the Member's benefit provided by the vested portion of his or her Flexible Retirement Account as of his or her Normal Retirement Date. The benefit described in Section 2.2(d)(i) or (ii) was frozen as provided in Section 5.5 of this Plan as of December 31, 1992.

(e)    With respect to any Member both actively employed by MHCS and who was a member of the MHCS Plan on June 30, 1986, and on such date was within one year of eligibility for early retirement under the terms of the MHCS Plan as in effect on June 30, 1986 (i.e., was age 54 and had 9 Years of Benefit Service), such Member's normal retirement benefit may be paid in one of the optional forms pursuant to sections 6.1 and 6.2 of the MHCS Plan

CBPJPMC00001575

CHEMICAL

as in effect on June 30, 1986, provided such Member has filed an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan, as the case may be. With respect to any Member of the MHCS Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986 paid in one of the optional forms pursuant to the provisions of sections 6.1 and 6.2 of the MHCS Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan or this Plan, as the case may be.

    2.3    Acquisition of Bankers Trust Company. (a) A Member's service with Bankers Trust Company prior to its acquisition is counted in accordance with the Agreement (as defined below) entered into at the time of the acquisition towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or under this Plan as provided in Article III..

    (b)    Any Employee (as defined in the MHT Plan) formerly employed by Bankers Trust Company who has been employed by Manufacturers Hanover Trust Company ("MHT") pursuant to Section 9.9 of the Agreement between MHT and Bankers Trust Company dated as of October 31, 1979 (the "agreement"), shall, as of the date of his or her employment by MHT become vested in his or her accrued benefit under the Plan for Pensions of Bankers Trust Company, computed as of the closing date of the purchase and sale of the banking offices described in the agreement (the "closing date").

    (c)    Such an Employee's accrued normal retirement benefit under the MHT Plan shall be the greater of:

-99-

CBPJPMC00001576

𝖅 CHEMICAL

(i)    the accrued normal retirement benefit computed in accordance with the Plan for Pensions of Bankers Trust Company as in effect on the closing date, taking into account the Employee's total years of service and his or her compensation both with MHT and Bankers Trust Company; or

(ii)    the sum of (1) the Employee's accrued normal retirement benefit as of the closing date under the Plan for Pensions of Bankers Trust Company and (2) the Employee's accrued normal retirement benefit under the MHT Plan taking into account only years of service as an Employee following the closing date.

The benefit described in Section 2.3(c)(i) or (ii) was frozen as provided in Section 5.5 of this Plan as of December 31, 1992.

2.4    Certain Former Employees of Wells Fargo Bank.  Any Employee formerly employed by the Corporate Trust and Corporate Agency departments of Wells Fargo Bank ("Wells") who became an Employee on or after August 18, 1983 as a result of the purchase of certain assets from Wells and for whom assets were transferred to the Plan shall, as of the date of his employment with the Bank or a Related Company (each as defined in the MHT Plan), have each year of service for which credit was given under the Wells Fargo & Company Retirement Plan, as in effect on August 18, 1983 ("Wells Plan"), credited as a Year of Service for purposes of eligibility and vesting under the MHT Plan. Each such year of service under the Wells Plan shall also be credited as a Year of Benefit Service under the MHT Plan for the purpose of determining the Employee's accrued benefit under the MHT Plan as of January 1, 1993.

-100-

2.5 Certain Former Employees of Dollar Dry Dock. Pursuant to the Agreement to Purchase Assets and Assume Liabilities dated as of January 10, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York and the Amendment to Purchase Assets and Assume Liabilities dated as of June 23, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York, any Employee who was employed by Dollar Dry Dock on July 13, 1986 and became an Employee on July 14, 1986 pursuant to such amended agreement, has his years of service with Dollar Dry Dock prior to July 14, 1986 taken into account as Years of Service under the MHT Plan for purposes of: (i) determining eligibility to participate in the MHT Plan or this Plan, as provided in Article III, and (ii) determining nonforfeitable rights under MHT Plan or this Plan, as provided in Article III. Such years of service with Dollar Dry Dock prior to July 14, 1986 shall also be taken into account as Years of Benefit Service for purposes of determining eligibility for early retirement benefits and reduced vested benefits under the MHT Plan and this Plan, as provided in Article III, but not for purposes of benefit accrual, provided that such Employee has at least 11 Years of Service with a Participating Company (as defined in the MHT Plan) and Dollar Dry Dock combined. As provided in Article III, years of Service for the period of employment with Dollar Dry Dock are determined in accordance with the rules of the MHT Plan.

2.6 Certain Former Employees of Goldome. (a) Pursuant to the Agreement between Goldome and Manufacturers Hanover Trust Company Relating to the Sale of Certain New York City Metropolitan Area Branches dated as of March 29, 1989, any Employee who was employed by Goldome on November 12, 1989 and became an Employee on November 13, 1989 pursuant to such agreement, had his years of service with Goldome prior to November 13, 1989 (including years of service with any other employer prior to November 13, 1989 which is taken into account under the Goldome Retirement Plan) taken into account as Years of Service under the MHT Plan solely for purposes of: (i) determining eligibility to participate in the MHT Plan and this Plan as provided in Article III, and (ii) determining nonforfeitable rights under of

*ZZ* CHEMICAL

III. Years of Service for the period of employment with Dan River shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan as set forth in Article III.

2.8    Manufacturers Hanover Mortgage Corporation. The normal retirement benefit (as defined in the MHT Plan) payable to a Member who terminates service with Manufacturers Hanover Mortgage Corporation after December 31, 1984 and retires on or after his Normal Retirement Date (as defined in the MHT Plan) shall be payable in accordance with Section 5.4(a) of the Stock Purchase Agreement dated as of March 24, 1986 between Manufacturers Hanover Corporation and Fireman's Fund Insurance Company.

2.9    Other Acquisitions    (a)   A Member's service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan and accordance with Article III of this Plan.

(b)     A Member's benefit service on account of service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Benefit Service (as defined in the MHT Plan) under the MHT Plan and Section 5.1 of this Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

2.10    Acquisitions Prior to 1976. A Member on January 4, 1976 who had service with either National Bronx Bank, Peoples Industrial Bank, Banco Commerciale, Mortgage

-103-

CBPJPMC00001579

Corporation of New York or Standard National Bank of New York prior to the acquisition of any such corporation by Manufacturers Hanover Trust Company, shall be credited with Years of Benefit Service under the MHT Plan for the period of his or her continuous service with such corporation after completing one year of service with such corporation and attaining age 25.

2.11    Sale of Manufacturers Hanover Investment Corporation. (a) Pursuant to the Stock Purchase Agreement dated as of January 7, 1988 between Manufacturers Hanover Corporation and Paine Webber Group Inc. each employee of Manufacturers Hanover Investment Corporation ("MHIC") or MH Investment Counsel, Inc. ("Investment Counsel") who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988, and who is not fully vested as of January 29, 1988 under the Plan shall be given Years of Service solely for vesting purposes under the MHT Plan or this Plan, as the case may be, for periods of continuous employment with the Paine Webber Group, Inc., MHIC, or Investment Counsel, as the case may be, after January 29, 1988.

(b)    Benefits payable to an employee of MHIC or Investment Counsel who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988 and who does not make an election to retire under this Plan on or prior to February 29, 1988, shall be payable to such an employee pursuant to the otherwise applicable terms of, and at the time and in the amounts provided under the MHT Plan based upon such employee's Years of Service (including Years of Service under subparagraph (a) of this Section), Years of Benefit Service and salary received from MHIC or Investment Counsel, as the case may be, through January 29, 1988. This Plan has succeeded to this obligation of the MHT Plan.

(c)    Benefits payable to such an employee under the terms of the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable until such employee retires or otherwise terminates employment with the Paine Webber Group,

CBPJPMC00001580

*CHEMICAL*

Inc., MHIC or Investment Counsel. An employee not eligible to retire under the MHT Plan on or before January 29, 1988 shall be treated as a terminated vested employee upon his termination of employment with MHIC, Investment Counsel or the Paine Webber Group, Inc.   This provision also applies to the Plan.

2.12    Sale of Manufacturers Hanover Consumer Services.

(a)    Pursuant to the Stock Purchase Agreement dated as of April 21, 1988 among Manufacturers Hanover Corporation, Manufacturers Hanover Financial Corporation, and Credithrift Financial Corporation, each Employee of Manufacturers Hanover Consumer Services ("MHCS"), or of any company in which MHCS owns or holds any interest and which MHCS controls ("MHCS Company"), on May 31, 1988, who participated in the Plan as of May 31, 1988 (such employees hereinafter are referred to as "MHCS Employees") shall be credited with Years of Service, solely for purposes of vesting under the MHT Plan and, as provided in Article III, under this Plan, for periods of employment after May 31, 1988 with Credithrift Financial Corporation ("Credithrift"), MHCS or any affiliate of Credithrift or MHCS, as if such periods of employment had been with the Bank or another Participating Company (as defined in the MHT Plan).

(b)    Benefits accrued through May 31, 1988 by MHCS Employees under the MHT Plan shall be payable to such MHCS Employees pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan, subject to this Section, based upon such MHCS Employees' Years of Benefit Service with, and salary received from, MHCS and any MHCS Company through May 31, 1988 (and periods of employment prior to May 31, 1988 with any other employer taken into account under the MHT Plan).

-105-

CHEMICAL

(c)    Benefits accrued under the terms of the MHT Plan by former employees of MHCS or any MHCS Company and any predecessors thereof whose termination of employment occurred prior to May 31, 1988 ("Former MHCS Employees"), to the extent not previously distributed, shall be payable to such Former MHCS Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan. This Plan has succeeded to this obligation of the MHT Plan.

(d)    Any MHCS Employee eligible for an early retirement benefit provided under Section 7.2 of the MHT Plan as of May 31, 1988 shall remain eligible for such benefit upon their termination of employment; every other MHCS Employee shall be eligible for the benefit provided under Section 7.3 of the MHT Plan for benefits commencing prior to such employee's Normal Retirement Date. This Plan has succeeded to this obligation of the MHT Plan.

(e)    No further benefits shall accrue under the MHT Plan (and accordingly, this Plan) to any MHCS Employee or Former MHCS Employee subsequent to May 31, 1988 (unless any such employee is hired after May 31, 1988 by an Employer under this Plan and again becomes eligible to accrue benefits thereunder).

(f)    Benefits payable to an MHCS Employee under the MHT Plan (and accordingly, this Plan) upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the MHCS Employee retires or otherwise terminates employment with Creditthrift, MHCS and any affiliate of Creditthrift or MHCS.

(g)    MHCS and each MHCS Company shall cease to be a Participating Company and a Related Company as those terms are defined in the MHT Plan on May 31, 1988.

-106-

CBPJPMC00001582

CHEMICAL

2.13    Sale of C.I.T.    (a)  Pursuant to the CIT Stock Purchase Agreement dated as of September 18, 1989 between The Dai-Ichi Kangyo Bank, Limited and Manufacturers Hanover Corporation (the "Stock Purchase Agreement") and applicable law, (i) employees (including employees on disability, layoff, leave of absence or vacation) of The CIT Group Holdings, Inc. ("CIT"), or of any company of which CIT owns, directly or indirectly, 25% or more of the outstanding capital stock, other than a company which is an Investment Holding within the meaning of the Stock Purchase Agreement ("CIT Company") (such employees hereinafter referred to as "CIT Employees") and (ii) former employees of CIT, a CIT Company, or any corporation or other entity that was directly or indirectly owned by CIT at any time on or after May 1, 1984, whose termination of employment occurred before the Closing Date (as defined by the Stock Purchase Agreement) (such former employees hereinafter referred to as "Former CIT Employees"), accrued no further benefits under the MHT Plan as of the Closing Date. Accordingly, they accrued no additional benefits under this Plan.

(b)    No period of service by any CIT Employees and Former CIT Employees with The Dai-Ichi Kangyo Bank, Limited, CIT, any CIT Company, or any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT subsequent to the Closing Date shall be taken into account for any purpose under the MHT Plan or this Plan.

(c)    Those benefits payable to CIT Employees and Former Employees under annuity contracts purchased by the MHT Plan (which shall be the only benefits payable to CIT Employees and Former CIT Employees subsequent to the transfer of assets from MHT Plan to the qualified defined benefit pension plan established by CIT pursuant to the CIT Stock Purchase Agreement) shall to the extent not previously distributed or transferred to a qualified defined benefit pension plan established by CIT pursuant to the Stock Purchase Agreement, be payable to CIT Employees and Former CIT Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the

-107-

CBPJPMC00001583

CHEMICAL

MHT Plan. On and after the date of the transfer of assets from the MHT Plan to the qualified defined benefit plan established by CIT pursuant to the Stock Purchase Agreement. the MHT Plan and accordingly, this Plan shall have no liabilities or obligations with respect to CIT Employees or Former CIT Employees except as expressly provided in this paragraph (c).

(d)    Benefits provided by such annuity contracts as described in paragraph (c) of this Section to a CIT Employee under the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the CIT Employee retires or otherwise terminates employment with The Dai-Ichi Kangyo Bank. Limited, CIT and any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT.

(e)    CIT and each CIT Company ceased to be a Participating Company and a Related Company on the Closing Date as those terms are defined under the MHT Plan.

CBPJPMC00001584

*CHEMICAL*

# Appendix III
## Top-Heavy Provisions

3.1    Top-Heavy Determination.    For any Plan Year commencing in 1984 or thereafter, the Plan is a Top-Heavy Plan (a) if the Plan is not a member of a Required Aggregation Group and the Plan has a Top-Heavy Ratio greater than 60% or (b) if the Plan is a member of a Required Aggregation Group which has a Top-Heavy Ratio of greater than 60%. Notwithstanding the above, if the Plan is a member of a Permissive Aggregation Group with a Top-Heavy Ratio less than or equal to 60 percent it shall not be considered a Top-Heavy Plan.

The following provisions of this Appendix III apply notwithstanding any other provision of the Plan.

3.2    Minimum Vesting.    If the Plan is determined to be a Top-Heavy Plan for a Plan Year. a Participant with a Period of Service of 3 years shall be fully vested in his/her Accrued Benefit.

If the Plan subsequently is determined to no longer be a Top-Heavy Plan, then the above vesting shall not apply to any portion of a Participant's Accrued Benefit which is accrued on or after the first day of the first Plan Year in which the Plan is no longer a Top-Heavy Plan.

3.3    Minimum Benefit Accrual.

(a)    If the Plan is determined to be a Top-Heavy Plan for a Plan Year, each Participant who has not separated from service as of the end of the Plan Year and who is not a Key Employee, shall accrue a minimum Annual Benefit in the form of a single life annuity commencing as of the Normal Retirement Date equal to two percent (three percent in any year

-109-

CBPJPMC00001585

*CHEMICAL*

when the Top-Heavy Ratio is 90 percent or greater) of Top-Heavy Average Total Compensation multiplied by the number of Plan Years during which the Plan was Top-Heavy during a Participant's Years of Service up to a maximum of 10 years.

(b)    A Top-Heavy Plan shall not be treated as meeting the requirements of this Section 3.3 unless the Plan meets such requirements without taking into account any Social Security contributions or benefits.

(c)    Notwithstanding the above provisions, this Section 3.3 will not apply to any Participant to the extent that such Participant is covered under any other qualified plan of an Affiliated Company and such other plan provides the minimum allocation or benefit requirement applicable to Top-Heavy plans.

3.4    <u>Adjustment to Combined Plan Limitation</u>.  If the Plan is determined to be a Top-Heavy Plan for any Plan Year, then the limitation provided under Section 2.8 of Appendix I the Plan shall be determined by substituting "100 percent" for "125 percent" wherever it appears in such section.

3.5    <u>Definitions</u>.

(a)    "Determination Date" means the last day of the preceding plan year for any plan year subsequent to the first plan year of a plan. For the first plan year of any plan, Determination Date means the last day of the plan year.

(b)    "Key Employee" means any Employee or former Employee (and the beneficiaries of such Employee or former Employee) who at any time during the Determination Period was an officer of an Affiliated Company with Total Compensation greater than 50% of

-110-

CBPJPMC00001586

the amount in effect under Section 415(b)(1)(A) of the Code, an owner (or considered an owner under Section 318 of the Code) of one of the ten largest interests in an Affiliated Company if such individual's Total Compensation exceeds the dollar limitation under Section 415(c)(1)(A) of the Code, a five percent owner of an Affiliated Company, or a one percent owner of an Affiliated Company who has an annual compensation of more than $150,000. Determination Period" means the plan year containing the Determination Date and the four preceding plan years. The determination of who is a key Employee will be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(c)    "Permissive Aggregation Group" means each plan in the Required Aggregation Group and any other qualified plan(s) chosen by the Company which are maintained by an Affiliated Company, if such group of plans would meet the requirements of Sections 401(a)(4) and 410 of the Code.

(d)    "Required Aggregation Group" means (i) each qualified plan of an Affiliated Company in which at least one Key Employee participates and (ii) any other qualified plan of an Affiliated Company which enables any plan described in (i) to meet the requirements of Section 401(a)(4) or Section 410 of the Code.

(e)    "Top-Heavy Ratio" means, with respect to the plans taken into consideration, a fraction. the numerator of which is the sum of the Key Employees' account balances under the applicable defined contribution plans and the present value of Key Employees' accrued benefits under the applicable defined benefit plans. and the denominator of which is the sum of all participants' account balances under the applicable defined contribution plans and the present value of all participants' benefits under the applicable defined benefit plans. Both the numerator and the denominator of this fraction are adjusted so as to include plan distributions made to participants in the five-year period ending on the Determination Date (including distributions

-111-

CBPJPMC00001587

///CHEMICAL

under a terminated plan which if it had not been terminated would have been part of a Required Aggregation Group) and in the case of defined contribution plans any contributions due but unpaid as of the Determination Date. The value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the Determination Date. The account balances and accrued benefits of an individual who is not a Key Employee but who was a Key Employee in a prior year shall be disregarded and the account balance of an individual who has not performed any services for any employer maintaining a plan to which this Appendix IV applies at any time during the five years preceding the Determination Date shall also be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Section 416 of the Code and the Regulations thereunder. When more than one plan is being considered, the value of account balances and accrued benefits shall be calculated with reference to the Determination Dates that fall within the same calendar year. Present values shall be based on reasonable actuarial assumptions as to interest and mortality. Effective for Years ending subsequent to December 31, 1986, solely for the purpose of determining the Top Heavy Ratio, the accrued benefits under the applicable defined benefit plans of any Participant who is not a Key Employee shall be determined under the method which is used for accrual purposes for all plans maintained by any Affiliated Company, or, if there is no such method, as if such benefits accrued not more rapidly than the slowest accrual rate permitted under Section 411(b)(1)(C) of the Code.

(f)    "Total Compensation" has the meaning ascribed thereto by Appendix I, Section 1.1(b).

(g)    "Top Heavy Average Total Compensation" means total compensation over any five consecutive Plan Years that procedures the highest average, provided that Plan Years beginning after the last Plan Year in which the Plan was Top-Heavy shall be disregarded.

-112-

CHEMICAL

# Appendix IV

## Special Effective Dates for Tax Reform Act of 1986 Provisions

4.1    Tax Reform Act of 1986 Provisions.

(a)    Section 1.33: "Employee".  Effective January 1, 1987, Employee shall include any person who is a leased employee within the meaning of Section 414(n)(2) of the Code (other than a leased employee described in Section 414(n)(5) of the Code).

(b)    Section 1.66: "Salary".  Effective January 1, 1989, Salary shall not include any amount in excess of $200,000 as adjusted for cost of living in accordance with Section 415(d) of the Code. Effective January 1, 1989, the family aggregation rules of Section 414(q)(6), as modified by Section 401(a)(17) of the Code, shall apply when determining the Salary of an employee.

(c)    Section 2.1: "Eligible Employee."  Effective January 1, 1987, Eligible Employee shall not include any person who is a leased employee within the meaning of Section 414(n) of the Code.

(d)    Section 3.1(i): Years of Service.  Section 3.1(i) regarding leased employees is effective January 1, 1987.

(e)    Sections 4 and 5: Protected Benefits.  Effective January 1, 1989, (1) accrued benefits, (2) optional forms of benefit, and (3) early retirement benefits or a retirement-type subsidy may not be subject to employer discretion, reduced, or eliminated.

-113-

CBPJPMC00001589

CHEMICAL

(f)    Section 5.5: Frozen Integrated Plan Formula.  The integrated normal retirement benefit under the MHT Plan equal to: 2% of final average salary for each of the first 20 years of benefit service, plus 1% of final average salary for each additional year of benefit service up to a maximum of 40 years of benefit service, reduced by 4% of covered compensation for each year of benefit service up to a maximum of 35 years of benefit service, and further reduced by the actuarial equivalent of the normal form of the participant's benefit provided by the vested portion of his flexible retirement allocations, is effective January 1, 1989 through December 31, 1993 based on definitions of covered compensation, final average salary, social security retirement age, and cumulative disparity that comply with Code Section 401(a)(5) and 414(l) effective January 1, 1989.

(g)    Section 6: Vesting.  Section 6.1(a) regarding the five year cliff vesting schedule is effective January 1, 1989.

(h)    Section 9.9: Latest Permissible Distribution Dates.  Section 9.9 regarding the distribution rules under Section 401(a)(9) of the Code is effective January 1, 1989 or such other date expressly set forth in Section 9.9.

(i)    Sections 1.3 and 1.4 of Appendix I: Reductions on Account of Years of Service or Early or Late Retirement.  Effective January 1, 1987, the defined benefit limits imposed by Code Section 415 are adjusted on account of (i) having fewer than ten years of participation or service as set forth in Section 1.3 of Appendix I and (ii) early or late commencement of benefits as set forth in Section 1.4 of Appendix I.

(j)    Section 1.8(b) of Appendix I: Defined Contribution Fraction.  The inclusion of employee contributions and certain amounts allocated for medical benefits in determining the

-114-

CBPJPMC00001590

CHEMICAL

defined contribution fraction in Section 1.8(a)(2) of Appendix I for purposes of Section 415 of the Code is effective January 1, 1987.

(k)     Section 4 of Appendix III.  The deletion of the requirement that benefits be based on compensation that does not exceed $200,000 during years that the plan is top-heavy is effective January 1, 1989.  The provision that a participant who has three years of service be permitted to continue to vest under the top-heavy vesting schedule is effective January 1, 1989.

-115-

CBPJPMC00001591

%%% CHEMICAL

## Appendix VI

### Section 401(a)(17) Limitation

6.1    Purpose.    This Appendix is intended to satisfy the requirements of Section 401(a)(17) of the Code and regulations promulgated thereunder with respect to the computation of the Accrued Benefits of Participants under the Plan whose benefits are impacted by the annual compensation limit set forth in Section 401(a)(17) of the Code.

6.2    Benefits Accrued After January 1, 1994.    Effective for all benefits accrued on or after January 1, 1994, "Salary" shall not exceed the limitation set forth in Section 401(a)(17) (as amended by Omnibus Budget Reconciliation Act of 1993), as adjusted by the Commissioner of Internal Revenue, for increases in the cost of living in accordance with Section 401(a)(17) of the Code ("Applicable Limit"). Such adjustment in effect for a calendar year applies to a period not exceeding 12 months, over which Salary is determined beginning in such calendar year. If such period consists of fewer than 12 months, the Section 401(a)(17) limit will be multiplied by a fraction, the numerator of which is the number of pay periods in the period, and denominator of which is the total number of pay periods.

6.3    Article IV Benefits Accrued Prior to January 1, 1994.

(a)    Division of Account.    The Credit Balance of a Participant as of December 31, 1993 shall consists of two amounts. The first amount shall be determined by calculating the benefit (including the benefit under the Prior Plan) under Article IV by taking into consideration Salary, not in excess of the Applicable Limit, for all Periods of Service (which are applicable to the Participant under Article IV) and adding thereto Interest and Transition Credits, as applicable ("401 (a)(17) Balance"). The remaining amount shall be the

-116-

CBPJPMC00001592

*WWW* CHEMICAL

excess of the Account Balance as of December 31, 1993 over the amount determined pursuant to the proceeding sentence ("Excess 401(a)(17) Balance").

    (b)    <u>Interest and Transitions</u>.  Interest and Transition Credits shall continue to apply to the 401(a)(17) Balance for calendar years after December 31, 1993.  Interest Credits, without considering any amendments made after December 31, 1993, shall apply to the Excess 401 (a)(17) Balance for calendar years after December 31, 1993.

    6.4    <u>Extended Wear Away</u>.  The Accrued Benefit of a 401(a)(17) Participant shall be the greater of:

        (a)    the sum of the (i) portion of the Accrued Benefit determined under the benefit formula set forth in Article V as applied to the Participant's total Period of Service (and Years of Benefits Service under the MHT Plan) and Salary not in excess of the Applicable Limit and (ii) portion of Accrued Benefit determined under the benefit formula set forth in Article IV as applied to the Participant's total Period of Service and Salary not in excess of the Applicable Limit including the 401(a)17 Balance plus future accruals under Article IV.

        (b)    the sum of:

        (x)    the sum of the (i) portion of the Accrued Benefit under Article V as of December 31, 1993 and (ii) the portion of the Accrued Benefit under Article IV as of December 31. 1993 (including the Excess 401(a)(17) Balance and the 401(a)(17) Balance).  (Both (i) and are

-117-

CBPJPMC00001593

CHEMICAL

> (ii) frozen in accordance with Regulations §1.401(a)(4)-13 which includes the adjustment as described in Section 6.3(b) above.); and

> (y) the Accrued Benefit determined under Articles IV and V commencing as of January 1, 1994, as applied to the Participant's Period of Service after January 1, 1994 and Salary not in excess of the Applicable Limit.

A 401(a)(17) Participant means a Participant whose Accrued Benefit as of a date on or after January 1, 1994 is based upon Salary prior to such date that exceeded $150,000.

-118-

# Appendix VII

This Appendix describes certain transaction since the Effective Date which impacts the calculation of service and vesting under this Plan.

**7.1**    <u>Acquisition of Ameritrust</u>. With respect to an individual who was employed by Ameritrust Texas Corporation, Ameritrust Texas Financial Corporation, or Ameritrust Texas National Association, on September 15, 1993 and who became an Eligible Employee on September 16, 1993, such individual's Period of Service will include service with Ameritrust (which service would have been recognized under Section 3.1 had such service been with an Employer) solely for purposes of:

        (i)        participation in the Plan as provided in Article II, and

        (ii)      vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement under Articles IV, V and IX shall not include any Periods of Service with Ameritrust, nor shall Salary include any compensation earned from Ameritrust.

**7.2**    <u>Cullen/Frost</u>. With respect to an individual who was employed by Cullen/Frost, Bank of Dallas, N.A., on April 14, 1994 and who became an Eligible Employee on April 15, 1994 , such individual's Period of Service will include service with Cullen Frost (which service would have been recognized under Section 3.1 had such service been an Employer) solely for purposes of:

        (i)        participation in the Plan as provided in Article II, and

        (ii)      vesting in the Plan as provided in Article VI.

CBPJPMC00001595

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement and Articles IV and V and IX shall not include any Periods of Service with Cullen Frost, nor shall Salary include any compensation earned from Cullen Frost.

7.3    Liberty Securities Corporation.    With respect to an individual who was employed by Liberty Securities Corporation on July 31, 1994 and who become an Eligible Employees as of August 1, 1994 by reason of his/her employment with Chemical Investment Service Corp., such individual's Period of Service will include service with Liberty Securities Corporation (which service would have been recognized under Section 3.1 had service been an Employer) solely for purposes of:

    (i)        participation in the Plan as provide in Article II, and

    (ii)       vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement under Articles IV, V and IX shall not include any Periods of Service with Liberty Securities Corporation, nor shall Salary include any compensation earned from Liberty Securities Corporation.

2

CBPJPMC00001596