**EXHIBIT 7**



# RETIREMENT PLAN

## OF

# THE CHASE MANHATTAN BANK

## AND

# CERTAIN AFFILIATED COMPANIES

## Effective January 1, 1997

CBPJPMC00000605

RETIREMENT PLAN OF

THE CHASE MANHATTAN BANK AND CERTAIN AFFILIATED COMPANIES

## Contents

|  | Page |
|---|---|
| *Preamble* | 1 |
| ARTICLE I. DEFINITIONS | 2 |
| 1.1 Account | 2 |
| 1.2 Accrued Benefit | 2 |
| 1.3 Accruing Factor | 2 |
| 1.4 Actuarial Equivalent | 2 |
| 1.5 Affiliated Company | 2 |
| 1.6 Annuity Starting Date | 3 |
| 1.7 Appropriate Form | 3 |
| 1.8 Authorized Absence | 3 |
| 1.9 Beneficiary | 3 |
| 1.10 Benefits Fiduciary Committee | 3 |
| 1.11 Board | 3 |
| 1.12 Break in Service | 4 |
| 1.13 Chase | 4 |
| 1.14 Chase Average Compensation | 4 |
| 1.15 Chase Compensation | 4 |
| 1.16 Chase Lump Sum Final Pay Benefit | 4 |
| 1.17 Chase Merger | 4 |
| 1.18 Chase Plan | 4 |

i

1.19 Chase Service ........................................................................... 4

1.20 Chase Years of Benefit Service ................................................... 4

1.21 Code ........................................................................................... 4

1.22 Company ..................................................................................... 4

1.23 Corporation ................................................................................. 5

1.24 Credit Balance ............................................................................ 5

1.25 Credit Balance QPSA .................................................................. 5

1.26 Date of Distribution .................................................................... 5

1.27 Date of Employment ................................................................... 5

1.28 Date of Reemployment ............................................................... 5

1.29 Disability Plan ............................................................................ 5

1.30 Early Retirement Date ................................................................ 5

1.31 Effective Date ............................................................................. 5

1.32 Eligible Compensation ............................................................... 5

1.33 Eligible Employee ....................................................................... 6

1.34 Eligibility Period ........................................................................ 6

1.35 Eligible Retirement Plan ............................................................ 6

1.36 Eligible Rollover Distribution ..................................................... 7

1.37 Eligible Termination ................................................................... 7

1.38 Employee .................................................................................... 7

1.39 Employer .................................................................................... 7

1.40 ERISA ......................................................................................... 7

1.41 Fiduciary ..................................................................................... 7

1.42 Final Salary Benefit .................................................................... 7

1.43 Final Salary Benefit QPSA .......................................................... 8

ii

1.44 Final Average Salary ................................................................. 8

1.45 Frozen Minimum Benefit ............................................................ 8

1.46 Government Payments ................................................................ 8

1.47 Grandfathered Benefits .............................................................. 8

1.48 Grandfathered Participant .......................................................... 8

1.49 Hour of Service ....................................................................... 8

1.50 Interest Credit ......................................................................... 8

1.51 Interest Factor ........................................................................ 8

1.52 Interest Rate .......................................................................... 8

1.53 Joint and 50% Survivor (Spouse) Annuity or QJSA ............................ 9

1.54 Lump Sum Final Pay Benefit ....................................................... 9

1.55 Lump Sum Accrued Benefit Amount .............................................. 9

1.56 MHT .................................................................................... 9

1.57 MHC Merger ........................................................................... 9

1.58 MHT Plan QPSA ...................................................................... 9

1.59 MHT Plan QJSA ....................................................................... 9

1.60 MHT Plan .............................................................................. 9

1.61 Normal Retirement Age ............................................................. 10

1.62 Normal Retirement Date ............................................................ 10

1.63 Notice to the Administrator ........................................................ 10

1.64 Participant ............................................................................ 10

1.65 Participating Company .............................................................. 10

1.66 Pay-Based Credit ..................................................................... 10

1.67 Pay -Based Credit Balance .......................................................... 10

1.68 Pay Credit Service .................................................................... 10

CBPJPMC00000608

1.69 PBGC ...................................................................................................10

1.70 Period of Service ...................................................................................11

1.71 Period of Severance...............................................................................11

1.72 Plan ......................................................................................................11

1.73 Plan Administrator or Administrator ......................................................11

1.74 Plan Investment Management Committee ...............................................11

1.75 Plan Year ..............................................................................................11

1.76 Prior Plan .............................................................................................11

1.77 Prior Service Balance.............................................................................11

1.78 Retirement Date ....................................................................................11

1.79 Severance Date.......................................................................................11

1.80 Surviving Spouse ...................................................................................13

1.81 Transition Credit ...................................................................................13

1.82 Transition Factor ...................................................................................13

1.83 Transition Rate ......................................................................................13

1.84 Trust Fund .............................................................................................13

1.85 Trustee ..................................................................................................13

1.86 Valuation Date.......................................................................................13

1.87 Years of Benefit Service ........................................................................13

1.88 Years of Service ....................................................................................14

ARTICLE II.  ELIGIBILITY AND PARTICIPATION .......................................15

2.1 Eligible Employee....................................................................................15

2.2 Participation ...........................................................................................15

2.3 Other Participation...................................................................................16

iv

ARTICLE III.  SERVICE ........................................................................ 17

3.1 Periods of Service ........................................................................ 17

ARTICLE IV.  ACCOUNT BALANCE ........................................................ 20

4.1 (a) Accounts ................................................................................ 20

4.2 Transition Credits. ...................................................................... 24

4.3 Pay -Based Credit Balance .......................................................... 25

4.4 Disability, Military Service .......................................................... 28

4.5 Accrued Benefit .......................................................................... 30

4.6 (a) Continued Accrual ................................................................ 31

4.7 Special 1997 Benefits .................................................................. 35

ARTICLE V.  VESTING ........................................................................ 36

5.1 Vested Benefit ............................................................................ 36

5.2 Forfeitures .................................................................................. 37

5.3 Outstanding Checks .................................................................... 37

ARTICLE VI.  TRANSFERS AND REEMPLOYMENT .................................. 39

6.1 Transfer from One Employer to Another Employer ...................... 39

6.2 Transfer from Employer to a Non-Participating Company ............ 39

6.3 Transfer from Non-Participating Company to Employer ............... 40

6.4 Reemployment of Vested Participant ........................................... 40

6.5 Reemployment of Nonvested Participants .................................... 41

ARTICLE VII.  BENEFITS ...................................................................... 43

7.1 Form of Distributions Generally ................................................. 43

7.2 Normal Form of Benefit .............................................................. 44

7.3 Optional Forms of Benefit .......................................................... 45

v

CBPJPMC00000610

7.4 Special Rules for Voluntary Cash Outs ....................................................................47

7.5 Special Rules................................................................................................................48

7.6 Death Benefit ..............................................................................................................48

7.7 QJSA Waiver Rules ....................................................................................................52

7.8 Spousal Consent Rules................................................................................................54

7.9 Involuntary Cash Outs ...............................................................................................55

7.10 Qualified Domestic Relations Orders .......................................................................55

ARTICLE VIII.   DATES OF DISTRIBUTION ...............................................................57

8.1 Earliest Permissible Distribution Dates .....................................................................57

8.2 Credit Balance Dates of Distribution .........................................................................59

8.3 Grandfathered Participant. .........................................................................................59

8.4 Failure to Make an Election........................................................................................60

8.5 Latest Permissible Distribution Dates ........................................................................60

8.6 Payments to Individuals on Long-Term Disability ....................................................62

8.7 Payments Due Infants and Incompetents ...................................................................62

8.8 Eligible Rollover Distribution ....................................................................................63

ARTICLE IX.   FIDUCIARIES ........................................................................................64

9.1 The Benefits Fiduciary Committee.............................................................................64

9.2 Plan Investment Management Committee. ..................................................................65

9.3 Named Fiduciaries......................................................................................................66

9.4 Administrator ..............................................................................................................66

9.5 Board of Directors.......................................................................................................66

9.6 Power of Delegation ...................................................................................................67

9.7 Reports of the Named Fiduciaries...............................................................................67

CBPJPMC00000611

9.8  Service in Various Fiduciary Capacities ..................................................68

9.9  Ministerial Plan Services ..................................................................68

9.10  Power to Make Rules and Retain Services ...............................................68

9.12  Manner of Exercise of Authority ........................................................69

ARTICLE X.  CLAIMS PROCEDURE ................................................................70

10.1  Submission of Claims ......................................................................70

10.2  Process for Denying a Claim ..............................................................70

10.3  Appeal of Denial ...........................................................................71

10.4 Final Review ...............................................................................71

ARTICLE XI.  TRUST FUND ........................................................................72

11.1 Declaration of Trust .......................................................................72

11.2 Incorporation as Part of the Plan ........................................................72

11.3 Participating Companies ..................................................................73

11.4 Plan Expenses .............................................................................73

ARTICLE XII.  AMENDMENT OF THE PLAN ....................................................73

12.1 Plan for Exclusive Benefit of Participants ..............................................73

12.2 Amendments ...............................................................................74

12.3 Return of Contributions ..................................................................75

ARTICLE XIII.  MERGER OR CONSOLIDATION OF  PLAN ...............................76

13.1 Benefit Requirements .....................................................................76

ARTICLE XIV.  TERMINATION OF THE PLAN .................................................77

14.1 Voluntary .................................................................................77

14.2 Termination ...............................................................................77

vii

CBPJPMC00000612

14.3 Section 401(a)(4) – Restriction on Benefits and Distribution ...................................78

ARTICLE XV.  MISCELLANEOUS PROVISIONS ...............................................80

15.1 Construction ...............................................................................................80

15.2 Employment Status and Rights ....................................................................80

15.3 Source of Benefit Payments.........................................................................80

15.4 Non-Assignability .......................................................................................81

15.5 Appendices .................................................................................................81

APPENDIX I.  MAXIMUM BENEFITS ...............................................................1

1.1 Code Section 415 Limits Generally ...............................................................1

1.2  Primary Limit under Code Section 415 .........................................................2

1.3 Reduction of Primary Limit for Former Participants with Less than Ten Years .......2

1.4 Impact of Early and Late Commencement of Benefits ....................................3

1.5 Special $10,000 Rule ...................................................................................3

1.6 TEFRA Code Section 415 Grandfather .........................................................4

1.7 TRA 86 Code Section 415 Grandfather .........................................................4

1.8 Combined Fraction Limit ..............................................................................4

1.9 TEFRA Combined Fraction Grandfather ........................................................6

1.10 TRA 86 Combined Fraction Grandfather .......................................................6

APPENDIX II  MHT PLAN TRANSACTION RULES .............................................7

2.1 Acquisition of CIT.........................................................................................7

2.2 Plan Merger with MHCS ...............................................................................8

2.3 Acquisition of Bankers Trust Company ..........................................................9

2.4 Certain Former Employees of Wells Fargo Bank ............................................10

2.5 Certain Former Employees of Dollar Dry Dock................................................10

viii

CBPJPMC00000613

2.6  Certain Former Employees of Goldome .................................................... 11

2.7  Certain Former Employees of Dan River ................................................. 12

2.8  Manufacturers Hanover Mortgage Corporation .................................... 12

2.9  Other Acquisitions ....................................................................................... 12

2.10  Acquisitions Prior to 1976 ....................................................................... 13

2.11  Sale of Manufacturers Hanover Investment Corporation .................. 13

2.12  Sale of Manufacturers Hanover Consumer Services ......................... 14

APPENDIX III.  TOP-HEAVY PROVISIONS .................................................. 17

3.1  Top-Heavy Determination ......................................................................... 17

3.2  Minimum Vesting ........................................................................................ 17

3.3  Minimum Benefit Accrual ......................................................................... 17

3.4  Adjustment to Combined Plan Limitation ............................................. 18

3.5  Definitions .................................................................................................... 18

APPENDIX IV.  SPECIAL EFFECTIVE DATES FOR TAX REFORM ACT OF 1986 .. 21

4.1  Tax Reform Act of 1986 Provisions ........................................................ 21

APPENDIX V.  ACTUARIAL FACTORS .......................................................... 21

APPENDIX VI.  SECTION 401(A)(17) ............................................................. 23

6.1  PURPOSE ...................................................................................................... 23

6.1  Purpose .......................................................................................................... 23

6.2  Benefits Accrued After January 1, 1994 ................................................ 23

6.3  Article IV Benefits Accrued Prior to January 1, 1994 Under this Plan or the MHT Plan ................................................................................. 23

6.4  Extended Wear Away .................................................................................. 24

6.5  Chase Plan .................................................................................................... 24

ix

CBPJPMC00000614

6.4 Extended Wear Away ................................................................24

6.5 Chase Plan ........................................................................24

APPENDIX VII.  TRANSACTION  AFTER JANUARY 1, 1993 ..............................25

7.1 Acquisition of Ameritrust ........................................................25

7.2 Cullen/Frost ......................................................................25

7.3 Liberty Securities Corporation ...................................................26

7.4 Sale of BankLink, Inc ............................................................26

7.5 Formation of Chemical Mellon Shareholder Services................................26

7.6 Sale of Chemical New Jersey Holding, Inc ........................................27

7.7 Sale of Assets to Heritage Bank .................................................27

7.8. Sale Assets to Cash Flex ........................................................28

APPENDIX VIII.  CHASE MANHATTAN MORTGAGE CORPORATION ...............29

APPENDIX IX.  SECTION 411(D)(C)(A) RULES ....................................33

APPENDIX X.  FINAL SALARY BENEFIT PROVISIONS ................................35

    ARTICLE III ....................................................................36

    ARTICLE III.  PERIOD OF SERVICE ..........................................36

    FORMER ARTICLE V.  FINAL SALARY BENEFIT ...............................38

    5.1 Final Salary Benefit .....................................................38

    5.2 Payments Prior to Age 65 ................................................40

    5.3 MHT Eligible Retirees ...................................................41

    5.4 Chemical Residential Mortgage Company................................44

    5.5 Minimum Benefit ........................................................45

    5.6 Disability and Military Leave ............................................46

x

CBPJPMC00000615

5.7 Cost-of-Living Adjustments ................................................................49

5.8 Supplements ................................................................49

5.9 TCB Eligible Retiree and Others ................................................................49

FORMER ARTICLE VIII ................................................................50

FORMER ARTICLE VIII ................................................................50

8.7 Final Salary Benefit QPSA ................................................................51

FORMER ARTICLE IX ................................................................53

9.3 Final Salary Benefit Normal Retirement Date ................................................................53

9.4 Final Salary Benefit Deferred Retirement Date ................................................................54

9.5 Final Salary Benefit Early Retirement Dates ................................................................54

9.6 Final Salary Benefit Vested Deferred Benefits ................................................................56

9.7 Special Commencement Date for MHT Eligible Retirees ................................................................56

APPENDIX XI  Voluntary Retirement Programs under Chemical Bank ................................................................57

1.20 Chemical Eligible Retiree ................................................................57

1.35 Eligible Retiree ................................................................57

1.58 MHT Eligible Retiree ................................................................58

1.74 Program ................................................................58

1.82 TCB Program ................................................................58

1.85 TCB Eligible Retiree ................................................................58

4.6 Eligible Retiree and Certain Others ................................................................59

4.7 TCB Eligible Retiree and Certain Others ................................................................61

7.12 TCB Eligible Retiree ................................................................63

APPENDIX XII.  Hours of Service ................................................................64
12.1 Affiliated Companies with Hourly Records ................................................................64
12.2 Years of Service ................................................................64
12.3 Hours of Service ................................................................65

CBPJPMC00000616

12.4  One-Year Break in Service ...............................................................66
||

CBPJPMC00000617

# RETIREMENT PLAN OF
## THE CHASE MANHATTAN BANK AND CERTAIN AFFILIATED COMPANIES

*Preamble*

The Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies ("Plan") provides retirement benefits for employees of The Chase Manhattan Bank and certain affiliated companies which become Participating Companies.

The Plan (originally named the Retirement Plan of Chemical Bank and Certain Affiliated Companies) was amended, renamed and restated as of January 1, 1997. As of December 31, 1996, the Retirement and Family Benefits Plan of The Chase Manhattan Bank, N.A. ("Chase Plan") was merged into the Plan. Accruals under the Chase Plan ceased as of December 31, 1996, and the Plan assumed the Chase Plan's accrued liabilities and assets as of December 31, 1996. With certain exceptions enumerated herein, benefits for employees who retired or terminated employment prior to December 31, 1996 and their beneficiaries will be provided for under the terms and conditions of this Plan and the Chase Plan as in effect immediately prior to their merger as of December 31, 1996.

The Plan also is a successor plan to, and a continuation of, the Cash Plan for Retirement of Chemical Bank and Certain Affiliates ("Prior Plan"). Simultaneously with the amendment and restatement of the prior Plan as of January 1, 1993, the Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies ("MHT Plan") was merged with the Plan, effective January 1, 1993. The Plan is a successor plan to, and continuation of, the MHT Plan. With certain exceptions, benefits for employees who retired or terminated employment prior to January 1, 1993, and their beneficiaries will be provided for under the terms and conditions of the Prior Plan or MHT Plan, respectively, as in effect as of December 31, 1992.

The Plan is intended to qualify under Section 401 of the Internal Revenue Code of 1986 and the related trust is intended to be tax-exempt under Section 501 of such Code.

1

CBPJPMC00000618

# ARTICLE I
## Definitions

1.1    "Account" means a bookkeeping account established and maintained with respect to each Participant pursuant to Section 4.1.

1.2    "Accrued Benefit" means, as of any determination date prior to January 1, 1997, with respect to the Plan (i) an amount equal to an increasing monthly annuity for the life of the Participant determined in accordance with Section 4.5 as in effect on December 31, 1996, and (ii) an amount equal to an annuity for the life of the Participant determined in accordance with former Section 5.1 and means, as of any determination date prior to January 1, 1997 with respect to the Chase Plan, the "Retirement Benefit" as defined and determined under the Chase Plan.  Effective January 1, 1997, Accrued Benefit means, as of any determination date, an amount equal to the monthly annuity for the life of a Participant determined in accordance with Section 4.5 (or, if applicable, the amount in Section 4.6).  See also Appendix VI.

1.3    "Accruing Factor" means the factor described in Section 4.3(b).

1.4    "Actuarial Equivalent" means, with respect to any specified annuity or benefit, another annuity or benefit commencing at a different date and/or payable in a different form than the specified annuity or benefit, but which has the same present value as the specified annuity or benefit (except where expressly provided otherwise in the Plan, determined on the basis of the interest rate, mortality table and other factors, if any, applicable to such other annuity or benefit, as specified in Appendix V as in effect at the date such other annuity or benefit is being determined).

1.5    "Affiliated Company" means with respect to any Participating Company that Participating Company and any corporation, trade or business which together with such Participating Company is a member of the same controlled group of corporations, trade or business under common control or any affiliated service group within the meaning of Sections 414(b), (c), (m), or (o) of the Code, except that for purposes of Appendix III "within the meaning of Section 414(b), (c), (m) or (o) of the Code as modified by Section 415(h) of the Code" shall be substituted for the preceding reference "within the meaning of Sections 414(b), (c), (m) or (o) of the

2

CBPJPMC00000619

Code." Any such entity shall be treated as an Affiliated Company only for the period while it is a member of the controlled group of corporations or considered to be in a common control group.

1.6 **"Annuity Starting Date"** means (i) the first day of the first period for which an amount is paid as an annuity, or any other periodic form or (ii) in the case of a benefit not payable in the form of an annuity, the first day of the month following the date in which all events have occurred which entitle the Participant to the benefit.

1.7 **"Appropriate Form"** means the form (or other means of communication, including an interactive telephonic system maintained by the Company) provided for a particular purpose, as prescribed by the Plan Administrator.

1.8 **"Authorized Absence"** means any period of absence from employment permitted by any Affiliated Company pursuant to a uniform policy (including a reinstatement policy), whether or not the Participant receives compensation for such period of absence.

1.9 **"Beneficiary"** means the Surviving Spouse, <u>provided</u> that if there is no Surviving Spouse, or if the Participant's spouse consents to the designation of a nonspouse Beneficiary under Section 7.8, the Beneficiary shall be the person or persons designated by a Participant by Notice to the Administrator to receive benefits from the Plan on account of the death of the Participant, unless such designation has been revoked by a Notice to the Administrator or shall have become null and void as specified hereunder. If no Notice to the Administrator is on file, or if the designated Beneficiaries have predeceased the Participant, and if in either case, there is no Surviving Spouse, the Participant's estate shall be the Beneficiary with respect to Credit Balance benefit payable under Section 7.6.

1.10 **"Benefits Fiduciary Committee"** means the Committee described in Article IX.

1.11 **"Board"** means either the Board of Directors of the Corporation or the Company or the Compensation and Benefits Committee of Board of Directors of the Corporation or the Company.

3

CBPJPMC00000620

1.12    "Break in Service" means any 12-consecutive month period beginning on a Severance Date during which an Employee does not complete an Hour of Service and any anniversary date thereof; provided that the Employee is not paid for or entitled to pay (including back pay) for the performance of duties by the Company or an Affiliated Company at any time during such 12-month period.

1.13    "Chase" means The Chase Manhattan Bank National Association and its Affiliated Companies, as in existence immediately prior to the Chase Merger.

1.14    "Chase Average Compensation" means Average Compensation as set forth in Section 7.2A of the Chase Plan.  See Section 4.6 of this Plan.

1.15    "Chase Compensation" means Compensation as defined in Article II of the Chase Plan.

1.16    "Chase Lump Sum Final Pay Benefit" means the lump sum benefit calculated under Section 4.1(c).

1.17    "Chase Merger"means the merger of The Chase Manhattan Corporation into the Corporation as of March 31, 1996.

1.18    "Chase Plan" means the Retirement and Family Benefits Plan of The Chase Manhattan Bank, N.A. as in effect on December 31, 1996 immediately prior to its merger into the Plan.

1.19    "Chase Service" means Service as defined in the Chase Plan.

1.20    "Chase Years of Benefit Service" means each 12 months of Benefit Service (or fraction thereof) as forth in the Section 4.7 of the Chase Plan taking into account all rules set forth in Article IV and definitions of the Chase Plan.  See Section 4.6 of this Plan.

1.21    "Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.22    "Company" means The Chase Manhattan Bank (formerly Chemical Bank) and any successor corporation.

4

1.23    "**Corporation**" means The Chase Manhattan Corporation (formerly Chemical Banking Corporation) and any successor corporation.

1.24    "**Credit Balance**" means the amount determined under Article IV, except for the benefits described in Section 4.6.

1.25    "**Credit Balance QPSA**" means the annuity described in Section 7.6(b).

1.26    "**Date of Distribution**" means the date set forth in Section 4.3(f).

1.27    "**Date of Employment**" means the date an Employee first performs an Hour of Service.

1.28    "**Date of Reemployment**" means the date on which an Employee first performs an Hour of Service following a Severance Date.

1.29    "**Disability Plan**" means the Long Term Disability Plan of The Chase Manhattan Bank and Certain Affiliated Companies (formerly known as the Long-Term Disability Plan of Chemical Bank and Certain Affiliated Companies).

1.30    "**Early Retirement Date**" means the Participant's date of retirement prior to his/her Normal Retirement Date with respect to a Final Salary Benefit as set forth in former Section 9.5 of this Plan.    For convenience, former Section 9.5 is reproduced in Appendix X.

1.31    "**Effective Date**"  means January 1, 1993, for the Plan prior to January 1, 1997 and means January 1, 1997 for this amended and restated Plan.

1.32    "**Eligible Compensation**" means, except as otherwise defined herein, for purposes of calculating the Pay-Based Credit, the regular base salary actually earned by (and meant for purposes of calculating the Final Salary Benefit under former Article V, the base rate of) pay of an Eligible Employee from an Employer for services rendered (including (i) shift differentials and (ii) amounts deferred under Section 401(k) of the Code or a cafeteria plan described in Section 125 of the Code, in either case pursuant to salary reduction agreements).    Notwithstanding the foregoing, with

5

CBPJPMC00000622

respect to Chase Investment Services Corporation, and upon the approval of the Plan Administrator of a compensation program with respect to any other group of Employees identified by a Participating Company, Eligible Compensation shall mean the fixed draw or rate of draw, as applicable, for services rendered but does not include commissions or production overrides. In addition, Eligible Compensation does not include (i) salary advances, (ii) overtime, (iii) premium pay, (iv) bonuses, (v) incentive compensation, (vi) directors' fees, (vii) severance whether paid in a lump sum or installments, (viii) deferred compensation, (ix) payments under this Plan or any other employee benefit plan, other than a wage continuation plan as a result of a short-term disability, (x) accrued vacation paid in a lump sum on termination of employment, or (xi) any other kind of extra or additional remuneration. If such Eligible Compensation is based in part, or in whole, upon Eligible Compensation paid in a foreign currency, such Eligible Compensation shall be converted into United States dollars based upon an average exchange rate for the period in which the Eligible Compensation was paid. Eligible Compensation taken into account under this Plan for any Participant shall not exceed the dollar amount prescribed by the Secretary of Treasury or his delegate in accordance with Section 401(a)(17) of the Code ("Applicable Amount"). See Appendix VIII for special rules related to the calculation of draw, deferred compensation commissions and production overrides as Eligible Compensation for Employees of Chase Manhattan Mortgage Corporation.

1.33    "Eligible Employee" means any Employee eligible to participate in this Plan in accordance with Section 2.1.

1.34    "Eligibility Period" means the Period of Service determined in accordance with Section 2.2(a).

1.35    "Eligible Retirement Plan" means an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 403(b) of the Code, an annuity plan described in Section 403(a) of the Code or a qualified trust described in Section 401(a) of the Code that is a defined contribution plan which accepts rollover distributions. However, with respect to the Participant's surviving Spouse, or a former Spouse who is an alternate payee within the meaning of Section 414(p) of the Code, an Eligible Retirement Plan may only be an individual retirement account or individual retirement annuity.

6

CBPJPMC00000623

1.36    "Eligible Rollover Distribution" means any distribution under the Plan of all or any portion of a Participant's vested Accrued Benefit that qualifies as an eligible rollover distribution within the meaning of Section 402(c)(4) of the Code.

1.37    "Eligible Termination" means an Employee's involuntary termination of employment with an Employer or Affiliated Company due to one or more of the following: the permanent and complete closing of a location, a reduction in force, corporate downsizing or a job elimination, but does not include the transfer of any Employee to any Affiliated Company. An Employee's termination of employment with an Employer or an Affiliated Company for any other reason not specifically stated above, including, but not limited to, resignation, voluntary retirement, discharge for cause, death, disability, or failure to return from an approved leave of absence (including leaves of absence for medical reasons) shall not constitute an Eligible Termination. Eligible Termination also shall not include an Employee's termination of employment with any Employer or an Affiliated Company as a result of a court decree, sale (whether, in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up involving any Affiliated Company. The immediately preceding sentence shall not apply with respect to the MHT Merger or Chase Merger.

1.38    "Employee" means any person employed by the Company or an Affiliated Company whether or not an Eligible Employee. The term Employee shall also include any person who is a leased employee within the meaning of Section 414(n)(2) of the Code (other than a leased employee described in Section 414(n)(5) of the Code).

1.39    "Employer" means the Company and any Participating Company.

1.40    "ERISA" means the Employee Retirement Income Security Act of 1974 as amended from time to time.

1.41    "Fiduciary" means a person described as such in Article IX.

1.42    "Final Salary Benefit" means the benefit described in former Article V of this Plan prior to January 1, 1997. For convenience, former Article V is reproduced in Appendix X.

7

CBPJPMC00000624

1.43    "Final Salary Benefit QPSA" means the annuity described in former Section 8.7(a) of this Plan prior to January 1, 1997. For convenience, former Section 8.7(a) is reproduced in Appendix X.

1.44    "Final Average Salary" has the meaning set forth in this Plan immediately prior to January 1, 1997. For convenience, the definition of Final Average Salary is reproduced in Appendix X.

1.45    "Frozen Minimum Benefit" has the meaning set forth in Appendix IX.

1.46    "Government Payments" has the meaning ascribed thereto by the Chase Plan.

1.47    "Grandfathered Benefits" means the benefits described in Section 4.6(a) (b) or (c).

1.48    "Grandfathered Participant" means an individual described in Section 4.6(d).

1.49    "Hour of Service" means an hour for which an individual is, directly or indirectly, paid or entitled to payment for the performance of duties by the Employer or Affiliated Company.

1.50    "Interest Credit" means the amount credited to an account pursuant to Section 4.3.

1.51    "Interest Factor" means for any Valuation Date a constant yield compounded on a monthly basis for each calendar month which yield would equal on an annualized basis the Interest Rate then applicable to the Account; provided that for any period less than a month the Interest Factor shall be the monthly yield for the month in which the period falls multiplied by a fraction, the numerator of which is the number of days in such period over the total number of days in such calendar month.

1.52    "Interest Rate" means, for a Plan Year, the average annual interest rates for one-year United States Treasury Constant Maturities for the months of September, October and November immediately preceding the Plan Year, as published in the Federal Reserve Statistical Release L13 (415) (or if unavailable, a similar publication) (the "minimum rate") plus (ii) effective for Plan Years through 1996, such additional interest rate, if any, as established by the Plan Administrator, in its

8

CBPJPMC00000625

sole discretion, for such Plan Year through written resolution adopted thereby (which written resolution shall constitute an amendment to the Plan), and effective January 1, 1997 and each Plan Year thereafter, the additional interest rate shall be one percent.

1.53    "Joint and 50% Survivor (Spouse) Annuity" or "QJSA" means an annuity which provides reduced monthly installments during the Participant's lifetime, ending with the payment due for the month in which he/she dies, and if the Participant dies leaving a Surviving Spouse, a survivor annuity providing monthly installments for the life of the Surviving Spouse equal to 50% of the monthly installments that the deceased Participant was receiving at the time of death. Such survivor annuity shall commence on the first day of the month following the date of the Participant's death and end with the payment due for the month in which the Surviving Spouse dies.

1.54    "Lump Sum Final Pay Benefit" means the lump sum benefit calculated under Section 4.1(b).

1.55    "Lump Sum Accrued Benefit Amount" means  the Actuarial Equivalent of a Participant's Accrued Benefit derived from his/her Credit Balance when expressed as a single sum.

1.56    "MHT" means Manufacturers Hanover Trust Company.

1.57    "MHC Merger" means the merger of Manufacturers Hanover Corporation into the Corporation on December 31, 1991.

1.58    "MHT Plan QPSA" means the Qualified Pre-retirement Survival Annuity as defined in the MHT Plan.

1.59    "MHT Plan QJSA" means the Qualified Joint and Survivor Annuity as defined in the MHT Plan.

1.60    "MHT Plan" means the Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies as in effect on December 31, 1992.

9

CBPJPMC00000626

1.61    "Normal Retirement Age" means the later of age 65 or the completion of a 5 year Period of Service; provided that for any individual who was a member of the MHT Plan on December 31, 1988, Normal Retirement Age means age 65.

1.62    "Normal Retirement Date" means the first day of the month following the month in which a Participant attains Normal Retirement Age.

1.63    "Notice to the Administrator" means notice on an Appropriate Form which is properly completed and is delivered to the principal office of the Plan, which Appropriate Form shall be deemed to have been given when it is stamped received or otherwise recorded as received by that office, including the use of telephonic receipts.

1.64    "Participant" means any Eligible Employee included in the Plan as provided in Article II, or as the context requires, an individual with an Accrued Benefit under the Plan (i) who has a Severance Date and either (A) has not incurred a Break in Service exceeding five years, or (B) is vested in his Accrued Benefit but has not received all benefits from this Plan, or (ii) is no longer an Eligible Employee, but continues to be employed by an Affiliated Company; provided that an individual described in (i) or (ii) is not a Participant for purposes of calculating additional accruals after such Severance Date or after the date he or she no longer qualifies as an Eligible Employee under Article II.

1.65    "Participating Company" means any Affiliated Company which, with the consent of the Plan Administrator, adopts the Plan by action of its board of directors; provided that any entity participating as an employer in the Plan as of December 31, 1996 or the Chase Plan as of December 31, 1996 will be a Participating Company as of January 1, 1997, without further action.

1.66    "Pay-Based Credit" means the amount described in Section 4.3.

1.67    "Pay -Based Credit Balance" means the balance described in Section 4.3.

1.68    "Pay Credit Service" shall have the meaning set forth in Section 4.3(g).

1.69    "PBGC" means the Pension Benefit Guaranty Corporation.

CBPJPMC00000627

1.70    **"Period of Service"** means the period during which an employment relationship exists between an Employee and the Company or an Affiliated Company determined in accordance with Article III.

1.71    **"Period of Severance"** means the period between an Employee's Severance Date and his Date of Reemployment determined in accordance with Article III. A one-year Period of Severance means the 12-consecutive-month period beginning on an Employee's Severance Date and ending on the first anniversary of such date.

1.72    **"Plan"** means the Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies (formerly the Retirement Plan of Chemical Bank and Certain Affiliated Companies) as amended from time to time.

1.73    **"Plan Administrator"** or **"Administrator"** means the individual who is selected by the Board to be the plan administrator under Article IX; absent a designation to the contrary by the Board, the individual who holds the title Director Human Resources of the Company or successor title shall be the Plan Administrator.

1.74    **"Plan Investment Management Committee"** means the committee described in Article X.

1.75    **"Plan Year"** means each calendar year commencing January 1.

1.76    **"Prior Plan"** means the Cash Plan for Retirement of Chemical Bank and Certain Affiliated Companies as in effect on December 31, 1992.

1.77    **"Prior Service Balance"** means the amount described in Section 4.1, which was calculated under Section 4.2 of the Prior Plan and includes Transition Credits under the Prior Plan and this Plan. It shall be a subaccount for purposes of Transition Credits under Section 4.2 of this Plan.

1.78    **"Retirement Date"** means a Normal Retirement Date or Early Retirement Date.

1.79    **"Severance Date"** means the earlier of:

11

CBPJPMC00000628

(a)    the date on which an Employee quits, terminates, retires, is discharged or dies; or

(b)    the first anniversary of the last day worked immediately prior to a period in which an Employee remains absent from service (with or without pay) with an Employer or an Affiliated Company for any reason other than quit, termination, retirement, discharge or death; provided, however:

(i)    such Severance Date shall be disregarded if he/she next performs an Hour of Service within 12 months after (A) his/her Severance Date, or if earlier, (B) the date he/she was otherwise first absent from service;

(ii)    such Severance Date shall be disregarded to the extent required under laws enacted by the Congress of the United States, if an individual (who is absent from work on account of military service on active duty in the Armed Forces of the United States) next performs an Hour of Service prior to the expiration of the period during which employment rights are guaranteed by law;

(iii)    if a Severance Date is disregarded under either of the two preceding paragraphs, such Employee's Period of Service shall include the period beginning on such Severance Date and ending on the date on which he/she next performs an Hour of Service;

(iv)    if an Employee is absent from service on account of disability and is receiving benefits under one or more long-term disability plans or programs of an Employer or an Affiliated Company, he/she shall not incur a Severance Date until the earlier of the date (A) such long-term disability benefits terminate, unless he/she is reemployed as an Eligible Employee on such date, (B) the date of death; or (C) he/she elects to receive benefits under this Plan; and

(v)    if an Employee is absent from service on account of (A) her pregnancy, (B) birth of his/her child, (C) his/her adoption of a child, or (D) caring for any such child, the Severance Date is the second

12

CBPJPMC00000629

anniversary of the first day of absence from service.  Nevertheless, the period between the first and second anniversary of such first day of absence shall count neither as a Period of Service nor as a Period of Severance.

1.80    "Surviving Spouse" means for purposes of the Credit Balance, the person legally married to the Participant at the time of the Participant's death, or if earlier, as of the Participant's Annuity Starting Date, and (ii) who survives such Participant.  The definition of Surviving Spouse is applicable to the Final Salary Benefit under the Plan immediately prior to January 1, 1997 is reproduced for convenience in Appendix X.

1.81    "Transition Credit" means the amount determined under Section 4.2(d).  The reference to Transition Credit under this Plan has no relationship to the Transition Credits provided under the Chase Plan.

1.82    "Transition Factor" means for any Valuation Date the monthly and partial month yield calculated in the same manner as the Interest Factor, except that the Transition Rate shall be used.

1.83    "Transition Rate" means the Interest Rate for any Plan Year multiplied by 1.25.

1.84    "Trust Fund" means the assets which is from time to time held by the Trustee under the Agreement of Trust.

1.85    "Trustee" means the trustee or trustees under the Agreement of Trust at the particular time.

1.86    "Valuation Date" means the last business day of each calendar month; provided that with respect to any required determination of a Credit Balance as set forth herein, it shall mean the day immediately preceding the date of the required determination.

1.87    "Years of Benefit Service" means the years of benefit service as determined under Sections 3.4 and 3.5 of the MHT Plan through December 31, 1992.  See Appendix X.

13

CBPJPMC00000630

1.88    "Years of Service" means the years of service as determined under Section 3.1 through 3.3 of the MHT Plan through December 31, 1992.  See Appendix X.

CBPJPMC00000631

**ARTICLE II**
**Eligibility and Participation**

2.1    **Eligible Employee**

An Employee of an Employer shall be an Eligible Employee if such Employee:

(a)    is on a United States payroll of an Employer, but only if the Employer actually pays the tax imposed by the Federal Insurance Contribution Act at the date of any accrual hereunder in respect of such individual's Eligible Compensation;

(b)    is employed as a salaried employee;

(c)    is not a "Leased Employee" as defined in Section 414(n) of the Code;

(d)    is not paid on an hourly basis; and

(e)    is not an active participant in any other defined benefit plan of an Employer or an Affiliated Company.

By way of clarification, a person who (i) serves only as a director of an Employer, (ii) agrees to render services as or to an independent contractor, (iii) is considered by the Employer to be rendering services as or to an independent contractor or (iv) whose compensation is paid solely in the form of a commission or fee under contract, is not considered employed by an Employer.

2.2    **Participation**

(a)    An Eligible Employee shall become a Participant at the earlier of (i) or (ii).

(i)    Each Eligible Employee who was an active participant in the Plan or the Chase Plan on December 31, 1996 and is an Eligible Employee on January 1, 1997, shall be a Participant in the Plan as of January 1, 1997.

15

CBPJPMC00000632

(ii)    Each other Eligible Employee shall become a Participant in the Plan on the first day of the month coincident with or next following (I) the completion of a Period of Service of one year (the "Eligibility Period"); or, (II) if an Employee has satisfied the Eligibility Period, the date such individual becomes an Eligible Employee.

(b)    An Eligible Employee who satisfied the Eligibility Period prior to his/her Severance Date (or prior to the date he/she ceased to be an Eligible Employee) shall become a Participant again on the date such individual again becomes an Eligible Employee.

(c)    An Employee who failed to satisfy the Eligibility Period prior to his/her Severance Date (or prior to the date he/she ceased to be an Eligible Employee) shall become a Participant in accordance with Section 2.2(a)(ii); provided that if his/her Period of Severance is less than one year, such Period of Severance shall be included in the Eligibility Period.

## 2.3    Other Participation

Notwithstanding Section 2.1 a Participant shall be treated as an Eligible Employee and may continue to participate hereunder, if such individual remains an Employee without experiencing a Severance Date and either (i) becomes paid on a hourly basis rather than salaried or (ii) subject to Section 6.2, is transferred from a United States payroll of an Employer to a foreign payroll of an Employer or an Affiliated Company. Further, if an Employee who was paid on an hourly basis later becomes an Eligible Employee, then the rules of Appendix XII shall govern the computation of Period of Service for purposes of this Article II, but not for purposes of Article V, which shall continue to be governed by Article III.

16

CBPJPMC00000633

## ARTICLE III
### Service

**3.1    Periods of Service.**

(a)    Subject to the rules set forth in this Section 3.1, Periods of Service means the periods of service commencing on an Employee's Date of Employment or Date of Reemployment, whichever is applicable, and ending on any Severance Date.

(b)    Except as otherwise provided in the last sentence of Section 2.3 and Appendix XI and unless otherwise specified herein, service before and after January 1, 1993, will be aggregated for <u>eligibility</u> hereunder and <u>vesting</u> of benefits hereunder (if a Participant participated in the Prior Plan or MHT Plan on December 31, 1992) as follows:

(i)    Periods of Service prior to January 1, 1993 will be determined as if this Plan had been in effect since the Employee's Date of Employment; <u>provided</u> that if an Employee was a participant in the Prior Plan or the MHT Plan, his/her Period of Service as of the Effective Date will not be less than his Period of Service or Years of Service as calculated under the Prior Plan or MHT Plan respectively; and

(ii)    All Periods of Service after December 31, 1992, will be determined under the terms of this Plan, without reference to the Prior Plan or the MHT Plan.

By way of clarification, Section 3.1(b)(i) is not intended to provide for vesting or benefit accruals under the MHT Plan or Prior Plan (or any predecessor plan) with respect to benefits which were forfeited prior to the Effective Date of this Plan.

(c)    For purposes of calculating the Pay Credit Service under Section 4.3, as of any particular date, Periods of Service will include only the service with the controlled group of corporations (within the meaning of Section 414(b) of the

17

CBPJPMC00000634

Code) that employed an Employee (i) on December 31, 1991 in the case of the MHT Merger and any service thereafter with any corporation that, prior to the Chase Merger, was an Affiliated Company or (ii) (effective January 1, 1997) on March 31, 1996 in the case of the Chase Merger and any service thereafter with any Affiliated Company. (See Section 4.2(g) for further amplification of these rules.)

(d)     For each 365 days of service during any Period of Service, whether or not consecutive, the Employee will be credited with a Period of Service of one year; and except as provided in former Section 3.1(g) as in effect immediately prior to January 1, 1997, for Periods of Service of less than 365 days, a partial Period of Service will be credited on the basis of 1/365th of a year for each calendar day.

(e)     With respect to an individual who was a participant in the Chase Plan on December 31, 1996 and who becomes a Participant in this Plan on January 1, 1997, service before and after January 1, 1997 will be determined solely for vesting of future benefits hereunder and eligibility hereunder as if this Plan had been in effect since the Employee's Date of Employment with Chase subject to Section 2.3. Notwithstanding the foregoing sentence, this Article III is not intended to provide for vesting or benefit accruals under the Chase Plan, MHT Plan or this Plan (or any predecessor plan) with respect to benefits which were forfeited on or prior to December 31, 1996 or to increase the amount of any service that would have been otherwise accredited under the Chase Plan, including, but not limited to, acquisitions for which no prior Periods of Service were granted or recognized.

(f)     Except as may be otherwise provided herein, for purposes of calculating an accrued benefit under the Prior Plan, the MHT Plan or Chase Plan, only service as recognized up to the date of each respective plan merger under the Prior Plan, Chase Plan or MHT Plan will be used.

(g)     A Period of Service will not include any period of employment with an Affiliated Company prior to the date such company became an Affiliated Company, unless specifically included by an amendment to the Plan.

18

CBPJPMC00000635

(h)    Solely for purposes of calculating the Accrued Benefit under Section 4.5, and to the extent applicable former Article V as in effect prior to January 1, 1997, a Participant's Period of Service will not include any Period of Service prior to a Break in Service unless:

        (i)    the Employee was vested in his/her accrued benefit under the Plan, Prior Plan, Chase Plan or MHT Plan prior to the Break in Service; or

        (ii)    the Employee's number of consecutive one-year Breaks in Service does not equal or exceed five.

By way of clarification, if a Participant has incurred five or more consecutive one-year Breaks in Service, the Accrued Benefit of such Participant shall be forfeited unless such Accrued Benefit had been previously vested under Article V or its predecessor Articles.

(I)    Except as provided in Sections 3.1(b) and (h) and Section 4.3(g) separate Periods of Service will be aggregated.

19

## ARTICLE IV
### Account Balance

To the extent that an Eligible Employee is a Participant as of January 1, 1997 and was a participant in the Chase Plan as of December 31, 1996, the benefit as described in this Article IV is in lieu of any benefit or benefits earned under the Chase Plan prior to January 1, 1997. Benefits for those individuals whose employment with Chase terminated or who had incurred a Severance Date, prior to January 1, 1997 shall be determined and be distributable under the terms and conditions of the Chase Plan, as in effect on December 31, 1996, except to the extent Section 4.1(d) applies.

To the extent that an Eligible Employee is a Participant as of January 1, 1997 and was a Participant in the Plan as of December 31, 1996, the benefit described in this Article IV is in lieu of any benefit or benefits earned under the Plan prior to January 1, 1997. Benefits for those individuals whose employment with an Employer terminated or who had incurred a Severance Date prior to January 1, 1997 shall be determined and be distributable under the terms and conditions of the Plan, as in effect on December 31, 1996, except to the extent Section 4.1(d) applies.

**4.1**    (a)    <u>Accounts</u>. As of the later of January 1, 1997 or the date an Eligible Employee becomes a Participant, a notional Account will be established with respect to such Participant. Credits will be made to the Account of a Participant pursuant to the provisions of this Article IV. Accounts will be notional bookkeeping accounts, and neither the maintenance of, nor the crediting of amounts to, such Accounts will be treated as (i) the allocation of assets of the Plan to, or a segregation of such assets in, any such Account or (ii) otherwise creating a right in any person to receive specific assets of the Plan.

(b)    <u>Participant in the Plan</u>. Effective January 1, 1997, if an Eligible Employee is a Participant on January 1, 1997 and was a Participant accruing Salary-Based Credits in the Plan as of December 31, 1996, the Credit Balance of such individual on January 1, 1997 shall equal the sum of:

(i)    the Prior Service Balance as of December 31, 1996 if any;

(ii)    the Salary-Based Credit Balance, as defined in this Plan as of December 31, 1996 if any; and

20

CBPJPMC00000637

(iii)    any Lump Sum Final Pay Benefit which shall be based on the benefit (if any) described in former Section 5.1 of the Plan computed as of December 31, 1996 (or if greater, the minimum alternative benefit described in former Section 5.5 of the Plan as in effect on December 31, 1996 which was frozen as of December 31, 1992) and converted into a lump sum on the following basis:

    (A)    a 6.25% interest rate is used for discounting purposes;

    (B)    benefit under former Article V is payable as of the first day of the month following age 60 (or if over age 60, payable as of January 1, 1997);

    (C)    GA-83 Mortality Table (50% Male /50% Female) is used;

    (D)    for purposes of the minimum alternative benefit under former Section 5.5 of the Plan, the offset for the Flexible Retirement Account shall be at the lower of its value on July 31, 1996 or December 31, 1996 [July 31, 1996 value was used];

    (E)    Period of Service and Final Average Salary is fixed and frozen as of December 31, 1996; and

    (F)    reductions for amounts under a qualified domestic relations order or any required minimum distribution under Section 401(a)(9) shall be applied.

Notwithstanding the above, if an Employee is not an Eligible Employee on January 1, 1997 but had an Accrued Benefit derived from the benefit described in former Article V, such benefit shall be a Lump Sum Final Salary Benefit converted as specified above.

By way of clarification, if the accrued benefit described in former Article V has previously been converted into a Credit Balance, or forfeited or is in pay status, it shall not be recalculated or restored under this Section 4.1(b).

21

CBPJPMC00000638

(c)    <u>Participant in Chase Plan.</u> Effective January 1, 1997, if an Eligible Employee is a Participant on January 1, 1997 and was a participant accruing benefits based on compensation under Section 7-A of the Chase Plan as of December 31, 1996, the Credit Balance of such individual on January 1, 1997 shall be equal to the sum of:

(i)    greater of (A) the balance of the Account (as defined in the Chase Plan) of the individual as of December 31, 1996 as calculated under Sections 7-A 1.C and D of the Chase Plan or (B) the annuity benefit described in Section 7-A.2A of the Chase Plan as of December 31, 1996 using Chase Compensation after December 31, 1988 up to December 31, 1996 and utilizing the factors set forth in Section 4.1(c)(ii) (A), (B), (C) and (E) to convert such annuity to a lump sum; and

(ii)    the Chase Lump Sum Final Pay Benefit which shall be based on the benefit (if any) vested prior to March 31, 1996 under Section 7.2 of the Chase Plan which was frozen pursuant to Section 7.1 and Section 7.11 of the Chase Plan as of December 31, 1988 using Chase Years of Benefit Service and Chase Average Compensation fixed and frozen as of December 31, 1988 and converted into a lump sum on the following basis:

(A)    a 6.25% interest rate is used for discounting purposes;

(B)    the benefit under Section 7.1 of the Chase Plan is payable as of the first day of the month following age 60 (or if over age 60, payable as of January 1, 1997);

(C)    GA-83 Mortality Table (50% Male/50% Female) is used;

(D)    for purposes of Section 7.2 of the Chase Plan, an estimate of the Participant's Social Security earnings for periods of service prior to employment

22

CBPJPMC00000639

by Chase, unless the Plan Administrator has received a written request from the Participant to use actual Social Security earnings by December 31, 1997; and

(E)    any offsets provided under the Chase Plan, including without limitation Government Payments, or any reduction for amounts under a qualified domestic relations order or required minimum distribution under Section 401(a)(9), shall be applied.

Notwithstanding the above, if an Employee is not an Eligible Employee on January 1, 1997 but had an accrued benefit under Section 7.2 of the Chase Plan as of December 31, 1988 which was frozen pursuant to Sections 7.1 and 7.11 of the Chase Plan, then such benefits shall be a Chase Lump Sum Final Pay Benefit converted as specified above.

If the accrued benefit has been forfeited or is in pay status, it shall not be recalculated or restored under this Section 4.1(c).

By way of clarification Section 4.1(c)(ii) is not intended (I) to utilize a different formula in calculating the frozen annuity benefit than that provided by the Chase Plan for any particular participant in the Chase Plan as of December 31, 1988 or (II) to convert a benefit earned by a "Panama Employee" as defined in Appendix IX of the Chase Plan or earned by any former employee of Troy & Nichols, Inc., under the Troy & Nichols, Inc. Defined Benefit Plan.

(d)    <u>Dual Service</u>.  (i) Effective January 1, 1997, an Eligible Employee (I) who is a Participant on January 1, 1997 accruing a Pay-Based Credit, (II) who had accrued an annuity benefit, which had not been forfeited prior to January 1, 1997 under the predecessor plans (as described below) by virtue of his/her prior employment with Chase, the Company or MHT prior to the MHT Merger or Chase Merger and (III) whose benefit is not otherwise converted in subsection (b) or (c) above, shall have such benefit converted into an additional Credit Balance using the methodology set forth in Section 4.1(b) or Section 4.1(c), as is applicable.

23

CBPJPMC00000640

(ii) The foregoing Section 4.1(d)(i) shall not apply if such vested annuity benefit (I) is in pay status as of December 31, 1996, (II) has already been taken into consideration in calculating any portion of the Credit Balance or (III) would be duplicative of any other benefit under this Plan or any predecessor plan.

(iii)  For purposes of this subsection (d), a vested annuity benefit under a predecessor plan would be the vested benefit under (I) Section 4.1 of the Retirement Plan of Chemical Bank and Certain Affiliates accrued on or before December 31, 1990 without reference to Section 7.1(c) or any predecessor section, (II) Section 7.1 of the MHT Plan accrued on or before December 31, 1992, (III) Section 7.2 of the Chase Plan accrued on or before December 31, 1988, which was frozen pursuant to Sections 7.1 and 7.11 of the Chase Plan, and (IV) former Section 5.1 of the Plan as in effect immediately prior to January 1, 1997 without reference to Section 7.1(c) or any predecessor section; provided that nothing in this subsection shall be construed to require the conversion of the benefits accrued under the Troy & Nichols, Inc. Defined Benefit Plan or the benefits accrued with respect to the Panama Employees as defined in Appendix IX of the Chase Plan.

(iv)  If an Eligible Employee described above had separate account balances in any of the plans described above, they shall be added together.

(v)  The additional Credit Balance as a result of the application of this Section 4.1(d) shall be in lieu of the benefit it represents under the predecessor plans.

**4.2**    **Transition Credits.**

(a)    As of any Valuation Date, credits are made to the Prior Service Balance of each Participant equal to the Transition Credit.  Such Transition Credit terminates on the earliest of the date that a Participant:

(i)    ceases to qualify as an Eligible Employee;

24

CBPJPMC00000641

(ii)    fails to return to service from an Authorized Absence (including a leave for short-term disability), or

(iii)    has a Severance Date.

(b)    The Prior Service Balance of a Participant who is receiving or entitled to receive benefits under a long term disability plan or program of an Employer will receive Transition Credits until the earlier of a Participant's Severance Date or the effective date of an election to receive any portion of the Accrued Benefit of such individual under the Plan.

(c)    Following the date that the Transition Credit ceases, credits are made to the Prior Service Balance (as if such Balance were a Pay-Based Credit Balance) equal to the Interest Credit as set forth in Section 4.3.

(d)    The Transition Credit for any Valuation Date equals the Prior Service Balance as of the immediately preceding Valuation Date multiplied by the Transition Factor.

**4.3**    **Pay -Based Credit Balance**

(a)    Effective as of January 1, 1997, as of any Valuation Date, credits are made to the Account of each Participant who is an Eligible Employee equal to the Pay -Based Credit. Such credits continue to be made for each Participant who continues to be an Eligible Employee after attaining Normal Retirement Date. Pay-Based Credits shall cease as provided in Section 4.3(e).

(b)    Effective as of January 1, 1997, the Pay -Based Credit equals the Eligible Compensation of the Participant for the period commencing with the date of participation and ending on the monthly Valuation Date immediately following such date (and thereafter the Eligible Compensation for the period following such monthly Valuation Date and ending on the next following monthly Valuation Date and succeeding monthly periods) times the "Accruing Factor." (Eligible Compensation shall be prorated for a calendar month when the date of participation is not the beginning of a calendar month.) Effective as of January 1, 1997, the Accruing Factor is a percentage

25

CBPJPMC00000642

based upon the Participant's completed years of Pay Credit Service as of the first day of the calendar month for which the Pay -Based Credit is provided as follows:

| Completed Full Years of Pay Credit Service | Percentage of Eligible Compensation |
|---|---|
| 1 - 3 | 4% |
| 4 - 6 | 5% |
| 7 - 10 | 6% |
| 11 -15 | 8% |
| 16 - 20 | 10% |
| 21 - 25 | 12% |
| 26 or more | 14% |

(c)    As of any Valuation Date, credits are made to the Pay -Based Credit Balance equal to the Interest Credit. Such Interest Credits continue to be made for Participants until such Interest Credits cease in accordance with subsection (f) below.

(d)    The Interest Credit as of the Valuation Date equals the Pay -Based Credit Balance as of the immediately preceding Valuation Date multiplied by the Interest Factor.

(e)    The Pay -Based Credits cease as of a Participant's Severance Date or the date such individual is no longer an Eligible Employee. Notwithstanding anything herein to the contrary, the Participant's Pay -Based Credit Balance will be increased by multiplying the appropriate Accruing Factor by Eligible

26

CBPJPMC00000643

Compensation paid after the Severance Date or the date such individual is no longer an Eligible Employee, but earned prior to such date while a Participant.

(f)  The Interest Credits cease as of the day immediately preceding the Date of Distribution.  Date of Distribution shall mean the day immediately preceding the Annuity Starting Date.

(g)  Pay Credit Service shall mean a Period of Service with an Employer (or as is provided in Sections 6.2 and 6.3) as an Employee; provided that if an individual had been employed by MHT or its Affiliated Companies and had also been employed for the Corporation or its Affiliated Companies prior to the MHT Merger, then only his/her Period of Service with the entity employing him or her immediately prior to the MHT Merger shall be included in Pay Credit Service; provided further that if an individual was employed by the Corporation or its Affiliated Companies, immediately prior to the Chase Merger, then only the Period of Service with the Corporation or its Affiliated Companies recognized under the Plan as of that date shall be  included in Pay Credit Service (e.g. prior Periods of Service with Chase and its Affiliated Companies are not recognized for this purpose), provided further that if an individual was employed by Chase or its Affiliated Companies immediately prior to the Chase Merger, then only the Period of Service with Chase and its Affiliated Companies as of that date (e.g. prior Periods of Service with the Corporation is not recognized for this purpose) shall be included in Pay Credit Service. Similar rules shall be used with respect to a re-employed Employee so that only the Period of Service with the Employer at or immediately prior to the relevant Merger shall recognized.  Any additional service credited under the Chase Plan or the Plan with respect to a voluntary retirement program or otherwise shall not

27

be included in the Pay Credit Service. Unless listed in an Appendix, no service prior to the date an Employee was actually employed by Chase or an Affiliated Company shall be a Period of Service for these purposes. Further, notwithstanding any provision in Section 3.1 to the contrary, no Period of Service shall be included in Pay Credit Service if such service was not recognized for vesting purposes under the Chase Plan immediately prior to January 1, 1997.

4.4    **Disability, Military Service**

    (a)    In the event of an Authorized Absence by reason of a short-term disability of a Participant, the Pay-Based Credit credited to the Participant's Pay-Based Credit Balance will be based on the Participant's Eligible Compensation paid during the period of disability; provided that Eligible Compensation shall not include any state disability payments made after the date an Employer ceases the payment of Eligible Compensation. An individual who was a Disabled Member under Section 7.8 of the Chase Plan as of December 31, 1988 shall have his/her benefit determined under such Section.

    (b)(i)    In the event of an Authorized Absence prior to January 1, 1995 (but only with respect to those individuals who were employed by Chemical Bank and its Affiliates on such date) by reason of a long-term disability of a Participant who receives benefits under the Disability Plan, the Pay-Based Credit credited to the Participant's Pay-Based Credit Balance on any Valuation Date will be based on the Participant's Eligible Compensation as defined below.

28

CBPJPMC00000645

(ii)    In the event of an Authorized Absence commencing on or after January 1, 1995 by reason of a long-term disability which results in the receipt of long-term disability benefits (I) under the Disability Plan on or after January 1, 1995 but before January 1, 1997 with respect to an individual employed by Chemical Bank and its Affiliates or (II) under the Disability Plan on or after January 1, 1997, the Pay Credit for each such Participant shall be based upon a percentage which is 50 percent of the percentage set forth in Section 4.3; provided, further, that such reduced percentage shall commence as of the first day of the month following the receipt of disability benefits under the Disability Plan for a period of up to 24 months unless earlier terminated as set forth below. Effective for accruals on or after January 1, 1997, the foregoing sentence, including the percentage and 24 month period, shall apply to an individual who was receiving long-term disability benefits under the Chase disability program on December 31, 1996.  Such Pay-Based Credit will terminate on until the earliest of:

(A)    the date of a Participant's return to active employment with an Employer or an Affiliated Company, or

(B)    a Participant's Severance Date, or

(C)    the date that the Participant elects to receive any benefit provided under this Plan, or

(D)    the date disability benefits cease under the Disability Plan.

29

CBPJPMC00000646

Solely for purposes of this Section 4.4(b), Eligible Compensation shall mean the actual rate of pay immediately preceding the onset of disability, expressed as a monthly amount.

(c)    In the event a Participant is credited with Service while on Authorized Absence by reason of military service on active duty in the Armed Forces of the United States pursuant to Section 1.79(ii), such individual will receive Interest Credits and Pay-Based Credits for such Period of Service upon return to employment with the Employer or an Affiliated Company within the periods required by Section 1.79(ii). The Pay-Based Credit credited to the Participant's Pay-Based Credit Balance will be based on the Participant's Eligible Compensation for the month immediately preceding the date of the absence. Any Prior Service Balance will be credited with the excess of (i) the Transition Credit from the date of the absence to the Date of Reemployment over (ii) the Interest Credits, if any, actually credited to his Prior Service Balance; provided, however, that nothing in this Section 4.4(e) shall result in the double crediting of any Transition Credits.

## 4.5    Accrued Benefit

Effective as of January 1, 1997, the Accrued Benefit derived from the Credit Balance of a Participant described in Article IV as of any determination date, is an annuity for the life of the Participant (without survivor benefits), commencing immediately, which is the Actuarial Equivalent of the Participant's Credit Balance as of the determination date. Effective for distributions on or after March 31, 1995 and before September 30, 1996, the 30-year Treasury securities rate published for the month preceding the Date of Distribution shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit

30

CBPJPMC00000647

under the Prior Plan into a lump sum (See Appendix IX). Effective for distributions after September 30, 1996, the 30-year Treasury securities rate for the month of October of the immediately preceding Plan Year shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit under the Prior Plan (see Appendix IX) into a lump sum for distributions commencing on or after January 1 of the next Plan Year, provided that the October 1996 rate shall be used for distributions for the period of October 1, 1996 through December 31, 1997; provided further, that for the period of September 30, 1996 through September 30, 1997, the 30-year Treasury securities rate for the month preceding the Date of Distribution shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit under the Prior Plan (see Appendix IX) but only with respect to those individuals participating in this Plan on September 30, 1996 and only if it provides the higher benefit.

**4.6**    (a)    <u>Continued Accrual</u>. Except in the case of who (x) was a Participant in the Chase Lincoln First Bank, N.A. Retirement Plan on July 31, 1984, or (y) was a Participant in the Retirement Plan of the Rochester Community Savings on August 31, 1984 and immediately transferred to the employment of Chase Lincoln First Bank N.A. on such date, a Grandfathered Participant shall be entitled to elect to receive (after incurring a Severance Date) to an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installments) under this Plan equal to the excess of the sum of (i), (ii) and (iii) over (x):

       (i)    2% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service up to December 31, 1996 and (B) Periods of Service thereafter, such sum of (A) and (B) not to exceed in the aggregate 20 years, plus

       (ii)    1.75% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service to December 31, 1996 and (B)

31

Periods of Service thereafter to the extent such sum of (A) and (B) exceeds 20 years but not more than 30 years; plus

(iii)    1.00% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service up to December 31, 1996 and (B) Periods of Service thereafter to the extent such sum of (A) and (B) exceeds 30 years but not more than 40 years; less

(x)    Government Payments as adjusted in Sections 7.2 C and D of the Chase Plan plus any other offsets or reductions permitted under the Chase Plan.

A Grandfathered Participant who was transferred by an Affiliated Company of Chase to the employment of Chase Lincoln First Bank, N.A., after July 31, 1984 and before December 31, 1988 shall have his/her benefit calculated under the above formula and Section 4.6(b) and (c) shall have no application.

(b)    <u>Chase Lincoln First Bank</u>.    A Grandfathered Participant who was a participant in the Chase Lincoln First Bank, N.A. Retirement Plan on July 31, 1984 shall be entitled to elect to receive (after incurring a Severance Date) an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installments) which is the greater of (i) or (ii).

(i)    the benefit described in Appendix A of the Chase Lincoln First Bank, N.A. Retirement Plan (restated August 1, 1984), assuming that the benefit was not frozen and fixed as of July 31, 1984, utilizing years of Credited Service and Average Final Compensation as defined in such Plan to the Severance Date, or

32

CBPJPMC00000649

    (ii)    (A)    the Frozen Lincoln Accrued Benefit as described in the Chase Lincoln First Bank, N.A. Retirement Plan frozen and fixed as of July 31, 1984, plus

        (B)    the benefit calculated under the formula set forth in Section 4.6 (a) above except that Chase Average Compensation and Chase Years of Benefit Service shall commence as of August 1, 1984.

(c)    <u>Rochester Community Bank</u>.  A Grandfathered Participant who was a participant in the Retirement Plan of the Rochester Community Savings Bank on August 31, 1984 and was immediately thereafter transferred to the employ of Chase Lincoln First Bank, N.A. shall be entitled to elect to receive (after incurring a Severance Date) an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installment) which is the greater of (i) or (ii).

    (i)    the amount determined under Section 4.6(b)(ii), but for purposes of clause (A) treating all years of Credited Service with the Rochester Community Savings Bank as if they were with Chase Lincoln First Bank, N.A; or

    (ii)    the sum of the (x) accrued benefit under the Retirement Plan of Rochester Community Savings Bank fixed and frozen as of August 31, 1984 and (y) the benefit calculated under the formula set forth in Section 4.6(a) above, except that Chase Average Compensation and Chase Years of Benefit Service shall commence as of September 1, 1984.

(d)    <u>Grandfathered Participant</u>.  Effective for Severance Dates on or after January 1, 1997, a Grandfathered Participant is an Eligible Employee who becomes a

33

CBPJPMC00000650

Participant as of January 1, 1997 in this Plan and was a participant (member) in the Chase Plan as of December 31, 1996 (accruing benefits by virtue of Section 7-A.6 of the Chase Plan) and who, as of December 31, 1988, was a participant (member) in the Chase Plan and as of December 31, 1988 (i) had attained at least age 47 and whose age and number of completed years of Chase Service in the aggregate totaled at least 64, (ii) had attained at least age 52, or (iii) completed 25 or more years of Chase Service.

(e)    The benefit provided in this Section 4.6 is a separate accrued benefit and shall be in lieu of the Credit Balance benefit of the Participant.  The Participant shall have the option to elect prior to his/her annuity Starting Date either the benefit under this Section 4.6 or his/her Credit Balance; provided that the benefit under Section 4.6 shall not be payable in the form of a lump sum and shall only be payable in the form of a life annuity.  If a Participant elects the benefit under this Section 4.6, the benefit under Section 4.1 and Section 4.3 shall no longer be available.

(f)    A Grandfathered Participant who is reemployed after January 1, 1997 shall not accrue an additional benefit under Section 4.6 for an additional Period of Service following the Date of Reemployment; provided that if the employment of a Grandfathered Participant was initially terminated as a result of an Eligible Termination, then the individual shall also accrue a benefit under this Section 4.6.  If the benefit described in this Section 4.6 or comparable provision of the Chase Plan is in pay-status at the Date of Reemployment, then the Grandfathered Participant will be entitled to make a new election as between those benefits accrued after the Date of Reemployment under Section 4.6 or Section 4.3, if applicable.

(g)    Except as otherwise provided by the last sentence of Section 4.4(a), there shall not be accruals under this Section 4.6 for individuals who are on Authorized Absences due to a long-term disability.

(h)    As noted in the introduction to Article IV, the benefits described in this Section 4.6 are in lieu of benefits accrued under the Chase Plan for those Eligible Employees

34

CBPJPMC00000651

employed on January 1, 1997.  However, there is no intention to increase the amount of any accrual previously earned under the Chase Plan.

4.7    <u>Special 1997 Benefits</u>.  For calendar year 1997, if, pursuant to Appendix IX, if one of the Frozen Minimum Benefit plus the benefit described in this Section 4.7 is greater than the benefit derived under Article IV (other than Section 4.6) of this Plan at the date of determination, then a benefit shall be payable under this Section in lieu any other benefit under this Plan or its predecessor plans.  There shall be added to such Frozen Minimum Benefit the (i) the Pay-Based Credits under Section 4.3 from January 1, 1997 to the earlier of the Severance Date or December 31, 1997, plus (ii) Interest Credits (based upon the Interest Rate then applicable, less one percent) on such Pay-Based Credits for such period only.  After December 31, 1997, this additional benefit shall become a new Frozen Minimum Benefit

CBPJPMC00000652

**ARTICLE V**

**Vesting**

5.1    **Vested Benefit**

(a)    A Participant who has completed a Period of Service of at least 5 years has a nonforfeitable right to 100% of such individual's Accrued Benefit; provided that if the employment of a Participant terminates as a result of an Eligible Termination after a Period of Service of at least 4 years, such Participant shall have a nonforfeitable right to 100% of such individual's Accrued Benefit.

(b)    Upon attainment of Normal Retirement Age, a Participant has a nonforfeitable right to 100% of his Accrued Benefit.

(c)    When a Participant has a nonforfeitable right to 100% of his Accrued Benefit, such individual is entitled to Plan benefits pursuant to Article IV.

(d)    A Participant who had a Period of Service with Chemical Bank and its Affiliated Companies as of December 11, 1995 of three years or more and was employed by Chemical Bank and its Affiliated Companies on December 11, 1995, has a nonforfeitable right to 100% of such individual's Accrued Benefit.

(e)    A Participant in the Chase Plan who had three Years of Eligibility Service or more (as defined in the Chase Plan) as of December 11, 1995 and was employed by Chase and its Affiliated Companies on December 11, 1995 has a nonforfeitable right to 100% of such individual's Accrued Benefit.

36