5.2    <u>Forfeitures</u>

    (a)    A Participant who is not vested in his Accrued Benefit as of his or her Severance Date will be deemed to have received a cash-out of the vested portion of his or her Accrued Benefit, and the unvested portion shall be forfeited. The Accrued Benefit that has been forfeited is subject to being re-established pursuant to the provisions of Section 6.5.

    (b)    Any forfeiture will be used to reduce the contributions to the Plan otherwise payable by the Employers and will not be applied to increase the benefits that any Participant or retired Participant would otherwise receive under the Plan.

5.3    <u>Outstanding Checks</u>

    In the event the Plan Administrator, after reasonable effort, is unable to locate a Participant or Beneficiary to whom an outstanding check is payable with respect to benefits due from the Plan, such outstanding checks shall be canceled and used to reduce future Employer contributions; <u>provided, however</u>, that such benefit shall be restored (in an amount equal to the amount canceled) upon proper claim made by such Participant or Beneficiary. Benefits canceled under this Section 5.3 shall be restored to the Participant or Beneficiary in the following order of priority:

    (a)    from canceled benefits arising under this Section 5.3, and

    (b)    from additional Employer contributions made to restore such canceled benefits.

37

CBPJPMC00000654

38

CBPJPMC00000655

## ARTICLE VI

### Transfers and Reemployment

**6.1    Transfer from One Employer to Another Employer**

A Participant whose employment changes from one Employer to another without a Severance Date will continue to accrue benefits hereunder.

**6.2    Transfer from Employer to a Non-Participating Company**

As of the date that a Participant commences employment with an Affiliated Company that is not an Employer, the Credit Balance of an Account will be frozen other than for Interest Credits under Section 4.3 and additional Periods of Service for purpose of the Section 4.6 shall cease.  Service with such Affiliated Company will continue to be counted for purposes of vesting and the appropriate Accruing Factor (but not for purposes of Section 4.6)) in the event that the Participant should return to service with an Employer.  Notwithstanding the foregoing sentence, a Participant (effective April 1, 1991 for Participants covered by the MHT Plan) will continue to accrue benefits under Article IV (including Section 4.6 if applicable) if such individual ceases to be an Eligible Employee because he/she is transferred to a foreign payroll but continues to perform services on a salaried basis for an Employer or Affiliated Company outside the United States and its possessions; provided that such individual does not participate in a foreign defined benefit pension plan or, in the case where pension benefits are provided through a defined contribution plan, does not participate in such plan.

39

CBPJPMC00000656

**6.3**    Transfer from Non-Participating Company to Employer

As of the date that an Eligible Employee transfers from an Affiliated Company that is not an Employer to an Employer, such individual will become a Participant upon meeting the Eligibility Period; and his Period of Service with the Affiliated Company shall count for purposes of vesting, the Eligibility Period, and the appropriate Accruing Factor. Such individual shall not accrue an additional benefit under Section 4.6 for the Period of Service with such Affiliated Company.

**6.4**    Reemployment of Vested Participant

(a)    With respect to the vested Credit Balance described in Article IV (including any benefit from the Prior Plan), or the Account balance described in Section 7.1A of the Chase Plan, when a Participant who has incurred Severance Date is reemployed as an Eligible Employee after January 1, 1997:

(i)    if such individual has received a lump sum distribution of the Credit Balance or Account balance (or in the case of the Chase Plan elected receipt of the benefit described in Section 7.1 or Section 4.6), such Credit Balance of his/her Account is zero as of his Date of Reemployment; and such Account is increased after the Date of his Reemployment only for Pay-Based and Interest Credits as provided under Article IV; or

(ii)    if such individual has not received a lump-sum or annuity distribution of the Credit Balance or Account balance (or in the case of the Chase Plan has not elected receipt of benefit described in Section 7.1 or

40

CBPJPMC00000657

Section 4.6), such Credit Balance is equal to the amount credited to such Account as of the date of his Date of Reemployment; and subsequent to such Date of Reemployment, such Account will be increased for Pay-Based and Interest Credits as provided under the Article IV; provided that such individual's Prior Service Balance, if any, will receive Interest Credits only.

(ii)     See Section 6.4(b) for rules when benefits are in pay status.

(b)     With respect to the Accrued Benefit in periodic pay status (after January 1, 1997) of a Participant who has incurred a Severance Date and is reemployed as an Eligible Employee, such benefit shall not be suspended.

### 6.5    Reemployment of Nonvested Participants

If an individual who was a Participant and not vested in an Accrued Benefit as of such individual's Severance Date is reemployed by an Employer within five years after such Severance Date, such individual upon again becoming an Employee will have:

(i)     a restored Credit Balance equal to the Lump Sum Accrued Benefit Amount as of the Severance Date plus Interest Credits thereon to the Date of Reemployment, and such Credit Balance will again be determined as provided under Article IV; provided that the Prior Service Balance, if any, will be entitled to Interest Credits only; and

(ii)     to the extent that the individual had accrued a benefit under former Article V of the Plan, as in effect immediately prior to January 1, 1997 (see Appendix X)

41

CBPJPMC00000658

which becomes vested after the Date of Re-Employment on or after January 1, 1997, it shall not become an additional Credit Balance.

If such individual is reemployed more than five years after the Severance Date so that such individual has incurred a Break in Service of five years or more, such individual will be treated as a new Employee, and the prior Periods of Service will be disregarded so that any benefit under this Plan or Chase Plan (including, but not limited to, Credit Balance or Final Salary Benefit) shall be forfeited; provided that, such prior Periods of Periods will be recognized for purposes of participation, the Accruing Factor and vesting of future accruals under this Plan following the Date of Reemployment.

42

CBPJPMC00000659

## ARTICLE VII

### Benefits

**7.1    Form of Distributions Generally**

(a)    Subject to the terms and conditions of this Article VII, a Participant with a vested Accrued Benefit who is entitled to commence receiving such benefits under Article VIII, shall receive his/her Credit Balance in one of the forms of benefit set forth in this Article VII.   In the case of benefit specified in Section 4.6, it shall be distributable only in the forms available under the Chase Plan for the benefit described in Section 7.2 of the Chase Plan.  (These forms are an annuity based upon the Grandfathered Participant's life expectancy or a 50%, 75% or 100% joint and survivor annuity.)   See Appendix V for the relevant actuarial factors.

(b)    With respect to benefits accrued under this Plan prior to January 1, 1993, under the Retirement Plan of Chemical Bank and Certain Affiliates prior to January 1, 1991, under the MHT Plan prior to January 1, 1993, and under the Chase Plan prior to January 1, 1997, the payment forms applicable to the benefits accrued to the applicable date shall be preserved to the extent required by Section 411(d)(6) of the Code.

(c)    For those individuals who incur a Severance Date on or after January 1, 1993 and were Participants in this Plan prior to its merger with the Chase and accrued an annuity benefit under the terms of the Retirement Plan of Chemical Bank and Certain Affiliates as of December 31, 1990 or the annuity benefit described in former Section 5.5 of this Plan (as in effect immediately prior to January 1, 1997), then the annuity benefit payable to a Participant under such Retirement Plan or former Section 5.5 (but only if such December 31, 1990

43

CBPJPMC00000660

benefit or Section 5.5 benefit applicable to the Participant provided a larger benefit due to the Participant) shall be increased by .25 percent for each full month between (i) January 1, 1991, in the case of the benefit accrued under the Retirement Plan of Chemical Bank and Certain Affiliates) and the earlier of December 31, 1995 or the Participant's Severance Date or (ii) January 1, 1993, in the case of the benefit described in former Section 5.5 of the Plan and the earlier of December 31, 1995 or the Participant's Severance Date.   Subject to Section 411(d)(6) of the Code, the payment of increased benefits shall be made in the same form as elected by the Participant for his or her Accrued Benefit. Benefits shall be paid for those who terminated employment before April 1, 1995 without interest, actuarial adjustment, or makeup payments.  This section is only applicable if the annuity in pay status is solely attributable to the annuity benefit under former Section 5.5 of this Plan or the Retirement Plan of Chemical Bank and Certain Affiliates.

### 7.2    Normal Form of Benefit

(a)    The normal form of benefit for a Participant who is married on his/her Annuity Starting Date shall be the Joint and 50% Survivor (Spouse) Annuity with respect to (I) a Participant's Credit Balance which must be the Actuarial Equivalent of such Lump Sum Accrued Benefit or (II) if elected and applicable, the Actuarial Equivalent of the single life annuity described in Section 4.6, adjusted using the factors described in Appendix V.

(b)    The normal form of benefit for a Participant who is not married on his/her Annuity Starting Date  shall be with respect to (I) such individual's Credit

44

CBPJPMC00000661

Balance the single life annuity described in Section 4.5 or (II) if elected and applicable, the single annuity described in Section 4.6 (if any).

(c)    If, after a Participant has commenced receiving his/her benefits in the form of a Joint and 50% Survivor (Spouse) Annuity, the Participant's spouse designated as the survivor predeceases him/her, no adjustment shall be made in the benefits paid to such Participant, the Participant may not name a new survivor beneficiary and all benefit payments should cease on the Participant's death. This same rule applies to all Joint and Survivor Annuities described in Section 7.3 or otherwise offered under the Plan.

(d)    A Participant may, by Notice to the Administrator, and without consent of his/her spouse, elect to commence receiving a Joint and 50% Survivor (Spouse) Annuity on any date specified as permissible in Article VIII.

(e)    Notwithstanding any other provision of this Plan, if the present value of a Participant's vested Accrued Benefit exceeds $3500 (or such other amount specified in Sections 411(a)(11) and 417(e) of the Code), no distribution shall be made without the Participant's written consent prior to Normal Retirement Age, and if such distribution is in a form other than a Joint and 50% Survivor (Spouse) Annuity and the Participant is married, the spouse's written consent, which must be notarized or witnessed by Plan representative. See Section 7.8.

7.3    <u>Optional Forms of Benefit</u>

(a)    Subject to the remainder of this Article 7, a Participant may elect to receive his/her vested Credit Balance in one of the optional forms of benefit described

45

below rather than receiving such benefit in the form specified in Section 7.2. Each such optional form of benefit shall be the Actuarial Equivalent of the Participant's Accrued Benefit. Conversion factors for Actuarial Equivalents are set forth in Appendix V.

(b)   Single Life Annuity.  The Credit Balance may be received in the form of a Single Life Annuity which provides for payments in twelve equal monthly installments per year during a Participant's lifetime, ending with the payment due for the month in which the Participant dies.

(c)   Joint and Survivor Benefit.  The Credit Balance may be received in the form of a 50% or 100% Joint Survivor (Spouse or non Spouse) Annuity (the "Joint and Survivor Benefit") which provides reduced monthly payments during the Participant's lifetime, and after death, a survivor annuity for the Participant's Surviving Spouse or other surviving Beneficiary with monthly payments equal to 50% or 100% (as elected by the Participant under this Plan) of the monthly payments the Participant was receiving at death.  Upon Notice to the Administrator, the survivor annuity shall commence on the first day of the month following the date of the Participant's death and end with the payment due for the month in which such Surviving Spouse or Beneficiary dies.  The rules of Section 7.2(c) apply to the annuity described in this Section.

(d)   Level Income Option.  The Credit Balance may be received in the form of a Level Income Option which provides that if benefit payments commence prior to the date on which Social Security benefits could first become payable (for this purpose age 62 or age 65) a benefit which is still the Actuarial Equivalent of the Participant's Lump Sum Accrued Benefit, will be payable in a larger

46

CBPJPMC00000663

amount until the date Social Security benefits could first become payable and thereafter in a smaller amount, so that the amount payable to the Participant prior to the availability of Social Security benefits will be approximately equal to the sum of the annual payment under the Plan and Social Security benefits thereafter. The Level Income Option may be elected and applied to any annuity benefit described in this Section 7.3. The Level Income Option only applies to the benefit payable to the Participant and shall not affect the amount to which a Surviving Spouse or other Beneficiary would otherwise be entitled.

(e)     <u>Voluntary Cash Outs</u>. The Credit Balance may be received in the form of a single cash payment in an amount equal to the Participant's Lump Sum Accrued Benefit Amount. Any Final Salary Benefit or annuity benefit under the Chase Plan (not converted to a Credit Balance) may also be received in the form of a single cash payment, which must be the Actuarial Equivalent of the Participant's Accrued Benefit, but only if the monthly payment under the Participant's Final Salary Benefit would not exceed $100.00 at Normal Retirement or in the case of an individual who was, on December 31, 1996, a member of the Chase Plan, $50 at Normal Retirement.

(f)     <u>Code Section 401(a)(9)</u>. If the Participant dies after the Annuity Starting Date, the remaining portion of a benefit, if any, must continue to be distributed at least as rapidly as under the method of distribution being used prior to the Participant's death.

**7.4     <u>Special Rules for Voluntary Cash Outs</u>**

47

CBPJPMC00000664

(a)    Payment of a Participant's voluntary cash out described in Section 7.3(e) shall be made as soon as administratively feasible after receipt of proper Notice to the Administrator, provided, such Accrued Benefit is otherwise properly payable.

(b)    A Participant may elect by Notice to the Administrator to have such distribution transferred in whole or in part to an Eligible Retirement Plan.

## 7.5    Special Rules

(a)    If a Beneficiary dies before the Participant's Annuity Starting Date, the Participant shall be entitled to receive the benefit he/she would have received if he/she had not elected to receive a Joint and Survivor Benefit.

(b)    If a Participant dies before his/her Annuity Starting Date, the Beneficiary shall not be entitled to receive any benefit payments under the Joint and Survivor Benefit. But see Sections 7.6 and 7.7.

(c)    The amount of the benefit payable to a non-Spouse Beneficiary under the Joint and Survivor Benefit must satisfy the incidental death benefit requirement imposed by Code Section 401(a)(9).

(d)    Once a benefit is in pay status, the Participant or his or her Beneficiary or Surviving Spouse may not elect a different form of distribution.

## 7.6    Death Benefit

48

CBPJPMC00000665

(a)   <u>No Surviving Spouse</u>.  If a Participant dies before his/her Annuity Starting Date and there is no Surviving Spouse or if the election described in Section 7.6(c) has been properly made, such Participant's Beneficiary or Beneficiaries shall receive a single cash payment equal to the vested Lump Sum Accrued Benefit Amount as of the date of such death plus Interest Credit on the Credit Balance of the Account until the date immediately preceding the Date of Distribution. No amount shall be due with respect to the annuity benefit described in Section 4.6.  Payment shall be made as soon as administratively feasible after receipt of the proper Notice to the Administrator, but in no event later than five years after the Participant's death.

(b)   <u>QPSA for Surviving Spouse</u>.  Subject to waiver rules in paragraphs (d) and (f) below, and the involuntary cash out rule in Section 7.9, if a Participant dies before his/her Annuity Starting Date, and there is a Surviving Spouse, such Surviving Spouse shall receive a single life annuity for his/her lifetime which is the Actuarial Equivalent of the Participant's vested Lump Sum Accrued Benefit Amount (a "Qualified Pre-Retirement Survivor Annuity" or "QPSA"); provided that the Surviving Spouse in lieu of such benefit may elect to receive for his/her life 50% of the annuity benefit described in Section 4.6.  (If such election is made, the benefit payable to the Surviving Spouse shall be payable to such Spouse commencing on the earliest date provided for in the Chase Plan for the benefit described in Section 7.2 in the Chase Plan and shall be subject to such reduction for early commencement of payment as may be provided for in the Chase Plan.).  The Credit Balance QPSA may commence as early as the first day of the month following the date of the Participant's death, but no later than the date that would have been the Participant's Normal Retirement Date, and shall end with the payment due for the month in which such Surviving Spouse

49

dies; provided, however, that such QPSA shall not commence prior to the date the Participant would have reached his/her Normal Retirement Age without the spouse's consent given in a Notice to the Administrator. See waiver rules in paragraphs (d) and (f) below.

(c)   Alternative to QPSA.   Subject to the waiver rules in paragraph (d) below, the spousal consent rules in Section 7.8, and the involuntary cash out rule in Section 7.9, a Participant may elect at any time that in lieu of a Credit Balance QPSA, payment of his/her vested Credit Balance in a lump sum may be made to a Beneficiary or Beneficiaries other than a Surviving Spouse. Such designation shall be made by Notice to the Administrator. (This right does not apply to the benefit described in Section 4.6.)

(d)   QPSA Notice.   Within the applicable period (as defined below), the Plan Administrator shall notify each Participant of his/her rights with respect to the Credit Balance QPSA (or the Section 4.6 benefits) in comparable terms and manner as provided for in the notice regarding the QJSA as described in Section 7.7. The applicable period for a Participant is the period which ends last:

(i)    the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year in which the Participant attains age 35;

(ii)   a reasonable period after the person becomes a Participant; or

(iii)  a reasonable period ending after paragraph 7.6(d) first applies to the Participant;

CBPJPMC00000667

provided that if a Participant incurred a Severance Date before attaining 35, the applicable period shall be a reasonable period ending after such Severance Date, provided that a designation of a Beneficiary prior to the date that a Participant has a Spouse shall be void as of the date of the Participant's marriage; and provided, further, that a designation of a Beneficiary (other than a Spouse) with spousal consent prior to age 35 shall be a void as of the beginning of the Plan Year in which the Participant attains age 35. As used in this paragraph, the term reasonable period means the period beginning one year before and ending one year after the occurrence of the event specified above.

(e)    Special Rules for Multiple Beneficiary Designations    If multiple Beneficiaries are properly designated, but are not classified as "primary" or "secondary, "each surviving Beneficiary shall share equally in all amounts payable to such Beneficiaries, unless the Participant has specified the appropriate shares to be paid to such Beneficiaries. If a Beneficiary predeceases the Participant, then such Beneficiary's share shall be divided equally among the remaining Beneficiaries of the same class. If properly designated Beneficiaries are classified as "primary" or "secondary" but multiple Beneficiaries are designated within a class, then each Beneficiary in the same class shall share equally in all amounts that become payable to such class, unless the Participant has specified the appropriate shares to be paid to the Beneficiaries in such class.

(f)    Post-Death Waiver of QPSA. In the event that a married Participant (i) dies prior to his/her Annuity Starting Date, (ii) is survived by a Surviving Spouse, and (iii) has not executed a valid QPSA waiver, such Surviving Spouse may nonetheless elect, by giving Notice to the Administrator within 90 days after

51

such death, to waive the Credit Balance QPSA in favor of the single cash payment described in paragraph (a) above. (If such election is made, no QPSA under Section 4.6 (as described in Section 7.6(b) shall be available to such Surviving Spouse). Payment cannot be made without the Surviving Spouse's consent prior to the date the Participant would have reached his/her Normal Retirement Age. If not already paid, payment shall be made no later than the date the Participant would have reached Normal Retirement Age. Such Surviving Spouse may elect to have such payment transferred, in whole or in part, to an Individual Retirement Account as defined in Code Section 408.

7.7    QJSA Waiver Rules

(a)    A Participant has the right at any time during the 90 day period ending on the Annuity Starting Date (the "election period") to waive the QJSA in favor of an alternative form of benefit described in Section 7.3 (a "QJSA waiver"), to revoke an existing QJSA waiver, or to subsequently execute a new QJSA waiver, by giving Notice to the Administrator during such election period. No QJSA waiver shall be valid unless:

(i)    the Participant has been properly notified pursuant to paragraph (b) below, and

(ii)    the QJSA waiver complies with the spousal consent rules in Section 7.8.

(b)    The Plan Administrator shall notify each Participant of his or her rights with respect to the QJSA in the following manner. At least thirty days, but not more

52

CBPJPMC00000669

than ninety days prior to his Annuity Starting Date, each Participant must be furnished with a written explanation given in nontechnical language regarding:

(i)     the terms and conditions of the QJSA;

(ii)    the Participant's right to waive the QJSA in favor of an alternative form of benefit and the effect of such a QJSA waiver;

(iii)   the right of the Participant's spouse to consent, and the necessity of such written spousal consent, to any QJSA waiver; and

(iv)    the Participant's ability to revoke such a QJSA waiver (and the effect thereof).

Such notice shall also contain a general explanation of the financial effect of the QJSA waiver including information regarding the benefits a Participant would receive under the QJSA stated as an arithmetic or percentage reduction from a single life annuity or other alternative form of benefit. The notice shall also inform the Participant of the availability of the information described in paragraph (c) below and the manner in which the Participant may obtain such information.

(c)    Upon a Participant's written request, the Plan Administrator will furnish a written explanation in nontechnical language of the terms and conditions of the QJSA, and the financial effect for the particular Participant, in terms of dollars per annuity payment, of any election to waive a QJSA. Such explanation shall be sent by personal delivery or first class mail within 30 days of such written

53

CBPJPMC00000670

request.  The Plan Administrator need only respond to one such request by each Participant.

### 7.8    Spousal Consent Rules

(a)    A QJSA waiver under Section 7.7 and a QPSA waiver under Section 7.6 may be made only with the consent of the Participant's spouse that:  (i) is in a written Notice to the Administrator, (ii) designates a specific Beneficiary or Beneficiaries, including any class of beneficiaries or any contingent beneficiaries that may not be changed without spousal consent, (iii) acknowledges the effect of such waiver, and (iv) is witnessed by a Plan representative or notary public.

(b)    Spousal consent to a QJSA waiver must also designate a form of benefit payment that may not be changed without spousal consent.

(c)    No spousal consent shall be required if: (i) the Participant has no spouse, (ii) the spouse cannot be located and an affidavit of inability to locate the spouse is given in a written Notice to the Administrator, or (iii) under any other circumstances permitted by Code Section 417 and regulations thereunder.

CBPJPMC00000671

(d)    Once a spouse has properly consented to a Participant's election under the Plan, the spouse may not revoke such consent unless the Participant agrees in writing. Nonetheless, a spousal consent shall be valid only with respect to the spouse who gave such written consent. Any elections made by a Participant (and properly consented to by the spouse) shall remain valid after a divorce unless the Participant remarries, makes another proper election, or a qualified domestic relations order described in Code Section 414(p) applies and provides otherwise.

### 7.9    Involuntary Cash Outs

Notwithstanding any other provision of this Plan, if any Participant, Surviving Spouse or other Beneficiary is entitled to a vested Accrued Benefit under the Plan, the present value of which is not in excess of $3500 (or such higher amount as may be permitted under the Code), such benefit will be paid as soon as reasonably practicable in a single sum payment in full discharge of all obligations of the Plan with respect to such Participant, Surviving Spouse or other Beneficiary. In determining present value, the Actuarial Equivalent will be calculated on the basis of assumptions set forth in Appendix V, including the use of the 30-year Treasury securities rate for distribution as provided in Section 4.5.

### 7.10    Qualified Domestic Relations Orders

If the Plan Administrator receives a court order dividing benefits under the Plan and determines that such court order is a Qualified Domestic Relations Order ("QDRO") within the meaning of Code Section 414(q):  (i) the date the Plan Administrator determines that such order is a QDRO shall be treated as the Participant's "earliest retirement date" for purposes of Credit Balance benefits and such benefits shall be payable on the date specified in such QDRO,

55

CBPJPMC00000672

or as soon as practical thereafter and, and (ii) any benefit accrued payable solely as an annuity shall also commence on the date specified in such QDRO; provided that such benefits shall not commence prior to the date the Participant could have commenced receiving such annuity under the applicable Plan provision to such benefit if he/she had separated from service.

56

CBPJPMC00000673

## ARTICLE VIII

### Dates of Distribution

**8.1    Earliest Permissible Distribution Dates**

(a)    Subject to the remainder of this Sections, a Participant's vested Accrued Benefit shall not commence prior to the termination of his/her employment with the Company, all Participating Companies and all Affiliated Companies.    A Participant's vested Final Salary Benefit shall not commence earlier than the dates (and subject to any adjustments for early payment) set forth in former Sections 9.3, 9.4, 9.5, 9.6 and 9.7 (see Appendix X).    A Grandfathered Participant's vested benefit described in Section 4.6 shall not commence earlier than the dates set forth in Section 6 of the Chase Plan with respect to the benefit described in Section 7.2 of the Chase Plan and shall be subject to any adjustment for early payment as set forth in the Chase Plan with respect to the benefit described in Section 7.2 of the Chase Plan.    Solely for purposes of a distribution, the definition of an Affiliated Company is modified to substitute fifty-one percent for eighty percent.

(b)    If a Participant dies before his/her Annuity Starting Date under this Article VIII, the vested Accrued Benefit of such Participant, if any, shall commence at the times and in the forms set forth in Section 7.6.

(c)    Notices of elections and applications for Plan benefits shall become effective only when made on a Notice to the Plan Administrator; and the Plan Administrator may delay payment of a benefit until said notices of elections and applications for Plan benefits are received by the Plan Administrator.    Upon receipt of a proper Notice to the Plan Administrator requesting a distribution of

57

CBPJPMC00000674

benefits, benefits shall commence within a reasonable period following such receipt or, if later, the date specified in the Notice.

(d)  For purposes of this Article VIII, if a purchaser or a transferor (which must not be an Affiliated Company) purchases or acquires from an Employer or an Affiliated Company the assets used by such Employer or an Affiliated Company in a trade business or the stock of any Affiliated Company and assumes this Plan or accepts a transfer of assets and liabilities from this Plan to a qualified plan maintained by the purchaser or transferor with respect to the Accrued Benefit of a Participant, then such Participant shall not be treated as having (i) terminated employment under this Plan or (ii) in the case of a transfer of assets and liabilities, an Accrued Benefit under this Plan.   If such purchaser or transferor does not assume the Plan or accept a transfer of assets and liabilities to a qualified plan maintained by the purchaser or transferor with respect to the Accrued Benefit of a Participant, such Participant who is subsequently employed by such purchaser or transferor shall not be treated as having retired or incurring a Severance Date.   The Participant must terminate employment with such purchaser or transferor, or any other employer considered part of the controlled group of such purchaser or transferor before becoming eligible for a distribution with respect to his/her Accrued Benefit;   provided that, in such circumstances, a portion of the Accrued Benefit may be distributable but only if and to the extent that, as a result of a "Qualified Transaction," defined below, a distribution of the benefit accrued under the Prior Plan as of December 31, 1992 plus Interest and Transition Credits thereon would have been made under the terms of the Prior Plan.   A Qualified Transaction shall mean a sale or transfer of stock or assets used in a trade or business, after which neither an Employer nor any Affiliated Company retains an interest in the

58

purchased or transferred business of 50% or more, measured by value or voting power.

### 8.2    Credit Balance Dates of Distribution

(a)    A Participant who has terminated employment as an Employee may elect at any time to receive a distribution of the portion of his/her vested Accrued Benefit attributable to the Credit Balance by giving Notice to the Administrator.  For Severance Dates prior to January 1, 1993, the terms of the Prior Plan shall govern distributions.  For a participant in the Chase Plan who incurs a Severance Date prior to January 1,1997, the terms of the Chase Plan shall govern the timing and form of distribution.

(b)    Once a Participant makes a proper election, such portion of the vested Accrued Benefit attributable to the Credit Balance will be paid or payment will commence as soon as administratively practical following receipt of the Notice to the Administrator, or if later, on the date set forth in such election, but not later than such Participant's Normal Retirement Date.

(c)    If a Participant elects to defer the distribution of his/her Credit Balance until a date certain by giving a Notice to the Administrator, the distribution of such benefit may not be deferred beyond such date certain, but distribution may be accelerated to an earlier date than originally elected.

### 8.3    Grandfathered Participant.

59

CBPJPMC00000676

In lieu of any other benefit, a Grandfathered Participant may elect to receive the benefit described in Section 4.6 at such dates as specified by Section 6 of the Chase Plan with respect to the benefit described in Section 7.2 of the Chase Plan; provided that reduction factors under the Chase Plan for payments prior to age 65 shall apply to such Section 4.6 benefit.

8.4    **Failure to Make an Election.**

    (a)    Subject to Section 8.4 below, if a Participant fails to elect by Notice to the Administrator to commence receiving benefits under the Plan, his/her vested Accrued Benefit under the Plan must commence not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs:

        (i)    the Participant attains Normal Retirement Age, or

        (ii)    the Participant terminates employment with the Company, all Participating Companies and all Affiliated Companies, or

        (iii)    the tenth anniversary of the year in which the Participant commenced participation in the Plan.

8.5    **Latest Permissible Distribution Dates**

    (a)    Notwithstanding Sections 8.1 through 8.4 above, unless otherwise provided by law, distribution of each Participant's vested Accrued Benefit must commence, in accordance with Code Section 401(a)(9) and regulations thereunder, no later than the April 1 of the calendar year following the later of the calendar year in which the Participant attains age 70-1/2, or incurs a Severance Date; provided, that with respect to a Participant who was (i) age

60

CBPJPMC00000677

70 1/2 on December 31, 1987, and (ii) a participant in the Prior Plan or the MHT Plan, distribution of such Participant's vested Accrued Benefit shall commence no later than the April 1 following a Severance Date; provided, further, that with respect to a Participant who (i) was age 70 1/2 on December 31, 1995 and receiving a minimum distribution under the predecessor Section of this Plan or the Chase Plan, such distribution shall continue or (ii) became 70 1/2 on or after December 31, 1996, may elect to receive his/her Accrued Benefit. With respect to the benefits described in Section 4.6 and Section 4.1, there shall be appropriate adjustment to each to reflect the commencement of benefits.

(b)     A Participant, who commences receiving distributions from the Plan while an Employee under this Section 8.5, may elect any form of benefit set forth in Article VII, provided, however, that, in accordance with Code Section 401(a)(9) and the regulations thereunder, such distributions shall not be paid over a period that exceeds (i) the life of such Participant, (ii) the lives of such Participant and his/her Beneficiary, (iii) the life expectancy of the Participant, or (iv) the joint life expectancy of the Participant and his/her Beneficiary.  For this purpose, the life expectancy of a Participant and his/her spouse may not be recalculated. Such distributions must also comply with the incidental death benefit requirements of Code Section 401(a)(9)(G) and regulations thereunder.

(c)     A Participant who commences receiving minimum distributions under this Section 8.5, and subsequently incurs a Severance Date may elect a new form of benefit with respect to his/her vested Accrued Benefit attributable to Article IV (but not with respect to his/her vested Accrued Benefit attributable to former Article V (the Final Salary Benefit).

(d)     Notwithstanding any other Plan provision to the contrary, no distribution shall be made under the Plan which (i) commences on a date later than the date permitted under Code Section 401(a)(9), or (ii) is distributed over a period of time greater than the period

61

CBPJPMC00000678

permitted under Code Section 401(a)(9). Code Section 401(a)(9) and regulations thereunder are incorporated herein by reference.

**8.6     Payments to Individuals on Long-Term Disability**

A Participant who becomes eligible for benefits in excess of 24 months under the Disability Plan after January 1, 1997 as a result of a total and permanent disability certified by the Social Security Administration, or the third party claims administrator (or insurer) may elect to receive the portion of his/her Accrued Benefit described in Article IV at any time after such certification; provided that accruals under Article IV shall cease.  The portion of his or her Accrued Benefit described in former Article V or in Section 4.6 shall be distributable after satisfying the age and service requirements set forth in former Section 5.2(a) or 5.2(c) or the Chase Plan , as applicable.  See Appendix X.

**8.7     Payments Due Infants and Incompetents**

If any Participant or Beneficiary who is entitled to receive payments hereunder is incapable of receiving or disbursing the same by reasons of age, illness, infirmity, or any other incapacity of any kind, the Plan Administrator upon receipt of satisfactory evidence of incapacity may direct the Trustee to apply such payment directly for the comfort, support, and maintenance of such Participant, or Beneficiary or to pay the same to any responsible person caring for the Participant or Beneficiary who is determined by the Plan Administrator to be qualified to receive and disburse such payments for the benefit of such individual; and the receipt by such person shall be a complete acquittance for the payment of the benefit.  Payments pursuant to this Section shall be a complete discharge to the extent thereof of any and all liability of the Employer,  the Plan Administrator, the Trustee and the Trust Fund.

62

CBPJPMC00000679

**8.8**    <u>Eligible Rollover Distribution</u>

A Participant or Beneficiary who is the Participant's Surviving Spouse or a former spouse who is an alternate payee within the meaning of Section 414(p) of the Code may elect to have any portion of his or her Accrued Benefit which constitutes an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan as specified in a Notice to the Administrator.

63

CBPJPMC00000680

ARTICLE IX

Fiduciaries

**9.1     The Benefits Fiduciary Committee.**

(a)     The members of the Benefits Fiduciary Committee shall have the authority jointly to control and manage, as a named fiduciary, the operation and administration of the Plan, subject to the provisions of Sections 9.2, 9.3, 9.4 and 9.5 hereof.  The members of the Benefits Fiduciary Committee shall be designated by the Board to serve until the next annual organization meeting of the Board and until their successors are designated and qualified. The term of members of the Benefits Fiduciary Committee may be renewed from time to time without limitation as to the number of renewals.  Any member of the Benefits Fiduciary Committee may resign upon not less than 60 days notice, or be removed by the Board at any time.  Any instrument or document signed on behalf of the Benefit Committee by any member of the Benefits Fiduciary Committee may be accepted and relied upon as the act of the Benefits Fiduciary Committee.

(b)     The Benefits Fiduciary Committee shall have authority to direct the Trustee or any other funding agency with respect to any payments or disbursements from the Plan.  The Benefits Fiduciary Committee shall also have full discretionary power to construe and interpret the provisions of the Plan and to determine any questions of fact and eligibility for benefits, including participation, which may arise under the Plan.  Any such construction or interpretation shall be conclusive and binding on any Participating Company, any employee of an Participating Company, any Participant and any Beneficiary thereof.  Any reference to

64

CBPJPMC00000681

the "Plan" herein shall be deemed to include, unless the context clearly requires otherwise, the Declaration of Trust and any other documents or instruments comprising a part of the Plan.

(c)     The Benefits Fiduciary Committee shall have no responsibility for the management or control of the assets of the Plan.

**9.2     Plan Investment Management Committee.**

(a)     The Plan Investment Management Committee or any other person or persons or entity or entities designated by the Board shall be the named fiduciary with respect to appointment of a trustee or trustees to act under the Plan and an investment manager or managers to invest Plan assets.  An appointment authorized under this Section 9.2 shall be upon such terms and conditions as the Plan Investment Management Committee may determine, provided that, without the express approval of the Board, the Plan Investment Management Committee shall not enter into any agreement under this section which does not provide for the termination thereof by the Plan Investment Management Committee upon reasonable notice to the other party or parties to the agreement.  Any instrument or document signed on behalf of the Plan Investment Management Committee by any member of the Plan Investment Management Committee may be accepted and relied upon as the act of the Plan Investment Management Committee.

(b)     The Plan Investment Management Committee shall cause to be established an investment policy and a funding policy for the Plan giving regard to the objectives of the Plan, the short and long run financial needs thereof, and such other factors as they deem appropriate.

CBPJPMC00000682

**9.3**  <u>Named Fiduciaries</u>.  Collectively, the Benefits Fiduciary Committee and the Plan Investment Management Committee shall be referred to herein as the "Named Fiduciaries" and the provisions hereof shall constitute a formal allocation of responsibilities among Named Fiduciaries.

**9.4**  <u>Administrator</u>.  The head of the Human Resources Department of the Bank or any other person or persons designated by the Board shall be the Plan Administrator.  The Plan Administrator shall have the powers and duties set forth in the Plan and those of an administrator under ERISA and shall have the powers under the Plan required in order to carry out such duties.  Without limitation of the foregoing, the Plan Administrator shall have the duty to furnish, publish and file as and to the extent required by ERISA, summary plan descriptions, plan descriptions, annual reports (including any financial statements), summary annual reports, and reports of Participants' benefits rights, and to maintain records with respect to the foregoing, and to deal with any qualified domestic relations orders under Section 414(p) of the Code, and shall have the right to retain qualified public accountants and enrolled actuaries in order to carry out his or her duties in accordance with ERISA.

**9.5**  <u>Board of Directors</u>.  The fiduciary responsibilities of the Board shall be limited to:

(a)  designation and removal of the Benefit Fiduciary Committee, in accordance with the provisions of Article IX hereof,

(b)  designation and removal of the Plan Investment Management Committee, of in accordance with the provisions of Article IX hereof, and

66

CBPJPMC00000683

       (c)    designation and removal of the Administrator of the Plan, in accordance with the provisions of Article IX hereof.

**9.6**   <u>Power of Delegation</u> . The Named Fiduciaries and the Board shall have the power to designate one or more persons, other than a Named Fiduciary, to whom the Named Fiduciaries may delegate, and among whom the Named Fiduciaries may allocate, specified fiduciary responsibilities (other than trustee responsibilities as defined in Section 405(c)(3) of ERISA) under the Plan. Any such designation shall be in writing and shall specify the person or persons so designated, and the terms of the delegation. Without the express approval of the Board of Directors, the Named Fiduciaries shall not enter into any delegation under this section which does not provide for the termination thereof by the Named Fiduciaries upon reasonable notice to such person or persons. Without limiting the generality of the foregoing, the Named Fiduciaries shall have the power to delegate, in accordance with the foregoing provisions of this subsection, to one or more persons the authority: (a) to determine the amount of benefits due to any person under the Plan, (b) to execute, in the name and on behalf of a Named Fiduciary, any direction for payment of any benefit under the Plan, (c) to maintain records and accounts and to have custody of the documents, the preservation of which is deemed necessary or convenient in the efficient operation of the Plan, and (d) to determine the form of any benefit payment the form of which is required under the Plan to be established by a Named Fiduciary.

**9.7**   <u>Reports of the Named Fiduciaries</u>. The Named Fiduciaries hereunder shall report, not less often than annually, to the Compensation and Benefits Committee of the Board (or

67

other such persons as the Board may designate) on the performance of their responsibilities and those of the Trustee and of any other persons appointed pursuant to this Section. Such reports shall contain such information, in such detail, as said Committee shall require.

9.8    **Service in Various Fiduciary Capacities**. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan, and any fiduciary may serve as such in addition to being an officer, employee, agent or other representative of a party in interest.

9.9    **Ministerial Plan Services.** A Named Fiduciary or any other fiduciary may designate any employee of the Bank or other Employer or any other person to perform any ministerial services in the administration of the Plan. A fiduciary shall furnish any such person with such framework of policies, interpretations, rules, practices and procedures as the Fiduciary shall deem necessary or appropriate. A fiduciary may rely on any information, data, statistics, reports or analyses furnished by any such person. Without limitation of the foregoing, the fiduciary may designate any person or persons or office to receive on behalf of the fiduciary any claim or notice or provide on behalf of the fiduciary any notice or communication.

9.10    **Power to Make Rules and Retain Services.** Any Named Fiduciary or Administrator shall have the authority to make such rules and regulations and to retain such clerical, legal, accounting, actuarial and other services as it may deem necessary or appropriate in the exercise of its authority hereunder. Each Committee may appoint from among its member such subcommittee with such powers as the applicable Committee shall determine and may

68

CBPJPMC00000685

authorize one or more of its member, or any agent, to act on its behalf.  Such Named Fiduciary may be also delegate to other powers to act on behalf of the Committee.

**9.11** <u>Expenses</u>.  Any Named Fiduciary may defray the reasonable expenses which it may incur in the administration of the Plan from the assets of the Plan unless such expenses shall be paid by the Company or other Employer.

**9.12** <u>Manner of Exercise of Authority</u>.  The Named Fiduciaries shall exercise their authority consistently with the requirements of ERISA.

**9.13** <u>Indemnity</u>.  The Bank hereby covenants and agrees to indemnify each member of the Benefit Fiduciary Committee and the Plan Investment Management Committee, as well as any Plan fiduciary who is or was, during the period that he or she was performing fiduciary functions, an employee of the Company or any Affiliated Company (collectively, a "Covered Fiduciary") and to keep and hold such person harmless from and against any and all damages, costs, liabilities, expenses, actions, claims, demands and accounts whatsoever which such person may incur, whether jointly or severally, individually or as a fiduciary, by reason of or in any manner arising, directly or indirectly, from any action taken as a Covered Fiduciary or by reason of any omission to act while serving as a Covered Fiduciary, except with respect to any act or omission which constitutes gross negligence or willful misconduct.  No action taken or omitted to be taken by any Covered Fiduciary on the advice of counsel (who may be counsel to the Bank) shall be regarded as an act or an omission constituting gross negligence or willful misconduct for the purposes of this indemnification, and any Covered Fiduciary may rely upon such advice, including, without limitation, advice with respect to the effectiveness of

69

CBPJPMC00000686

such person's appointment and of any delegation or allocation to such person of fiduciary responsibilities or powers, and with respect to the scope of such responsibilities or powers. This indemnification shall extend to each Covered Fiduciary upon such person's acceptance of appointment as a Covered Fiduciary and shall be effective in respect of any and all acts or omissions of such Covered Fiduciary during such person's period of service as a Covered Fiduciary.

## ARTICLE X

### Claims Procedure

**10.1    Submission of Claims.**  Any Participant or any other person entitled to benefits under the Plan ("claimant"), or his or her duly authorized representative, may make a claim for a Plan benefit by filing such claim in writing with the Administrator.  For this purpose, any claim relating to the right to participate shall be deemed a "claim" for these purposes.  Such claims shall be considered by the persons or the department or office designated by the Benefit Fiduciary Committee for such purpose.

**10.2    Process for Denying a Claim.**  In the event that a claim is denied, in whole or in part, a claimant shall be furnished with notice of the decision by the Administrator within a reasonable period of time after the filing of the claim.  Such notice of the decision shall be in writing and shall state the specific reason(s) for the denial, the specific provision(s) of the Plan on which the denial was based, additional material or information necessary (if any)for the claimant to perfect the claim as well as an explanation of why such material or information is necessary, and an explanation of the claim review procedure set forth in Section 10.3.  In the event that notice of the denial of a claim is not furnished within a reasonable period of time,

70

CBPJPMC00000687

the claim shall be deemed to have been denied for purposes of permitting the claimant to appeal the decision. For purposes of this Section, a period of time will be deemed unreasonable if it exceeds 90 days after receipt of the claim, provided that where special circumstances make a longer period for decision necessary or appropriate, decisions may be postponed, upon written notice to the claimant, for an additional 90 days.

**10.3    Appeal of Denial.** A claimant shall have a reasonable opportunity to appeal a denial of a claim to the Benefit Fiduciary Committee. Such appeal shall be made, in writing, by the claimant or his or her duly authorized representative. The claimant or his or her representative may review pertinent documents and submit issues and comments in writing. A claimant must make a request for such review within a reasonable time, but in no case will he or she be required to make such a request within less than 60 days after receipt by him or her of written notice of the denial of his or her claim.

**10.4    Final Review.** A decision shall be rendered by the Benefit Fiduciary Committee within 60 days after the receipt of the request for review, provided that where special circumstances make a longer period for decision necessary or appropriate, decision may be postponed on written notice to the claimant, for an additional 60 days, but in no event shall decision be rendered more than 120 days after the receipt of such request for review. Any decision by the Benefit Fiduciary Committee shall be in writing and shall set forth the specific reason(s) for the decision and the specific Plan provision(s) on which the decision is based.

71

CBPJPMC00000688

## ARTICLE XI

### Trust Fund

**11.1    Declaration of Trust**

The Company has executed a Declaration of Trust under which the Company will act as Trustee of the Trust Fund.  The Declaration of Trust contains such provisions as the Company deems appropriate, including, but not by way of limitation, provisions with respect to the powers and authority of the Trustee as to the administration of the Trust Fund and the authority of the Company to amend the Declaration of Trust, to terminate the Trust created thereunder, and to settle the accounts of the Trustee on behalf of all persons having an interest in the Trust Fund.  The Declaration of Trust provides that the Trustee shall follow the directions of the Benefits Fiduciary Committee in making payments of benefits under the Plan.

**11.2    Incorporation as Part of the Plan**

The Declaration of Trust shall be deemed to form a part of the Plan, and any and all rights or benefits which may accrue to any person under the Plan shall be subject to all the terms and provisions of the Declaration of Trust.

72

CBPJPMC00000689

**11.3    Participating Companies**

Each Participating Company other than the Company shall, upon becoming a Participating Company, be bound by all the provisions of the Declaration of Trust and the Plan and shall confirm the authority of the Company and each Fiduciary described in Article IX to exercise on behalf of such Participating Company all the rights and powers reserved to the Company and the applicable Fiduciary in said Declaration of Trust and the Plan including, without limiting the generality thereof, the right to amend the Declaration of Trust and Plan, to approve the accounts of the Trustee and to direct distributions from the Trust Fund.  The Trustee shall evidence its acceptance of such instrument.

**11.4    Plan Expenses**

All expenses that arise in connection with the administration of the Plan and the Declaration of Trust (whether external service providers or otherwise) including, but not limited to, the compensation of the Trustee and of any actuary, accountant, counsel, investment managers or advisers or other person appointed by the Administrator, the Company or the Trustee shall be paid from the Trust Fund unless paid directly by the Company at its election.  The Administrator will allocate among the Participating Companies the appropriate share of expenses to be paid by each Participating Company.

**ARTICLE XII**

**Amendment of the Plan**

**12.1    Plan for Exclusive Benefit of Participants**

73

CBPJPMC00000690

The Board may amend the Plan at any time and any amendment may be made retroactive; provided, however, that except as specified in Section 12.3 and Article XIV, it shall be impossible under any provision of the Plan or any amendment thereto for any interest, ownership or control over the assets of the Trust Fund to vest in the Company, or in any other Participating Company, or for any part of the Trust Fund (other than such part as may be required to pay taxes, administration expenses or fees) to be used for or diverted to purposes other than for the exclusive benefit of Participants or their Beneficiaries, nor shall any amendment reduce the amount of any then Accrued Benefit of a Participant, and further, provided, that no amendment shall eliminate, reduce, or result in prohibited employer discretion with respect to, any protected benefit under Section 411(d)(6) of the Code.

## 12.2    Amendments

Subject to the foregoing limitations, the Board shall have the power to amend the Plan in any manner which it deems desirable, including increasing or diminishing future accruals to be made hereunder, changing any provision relating to the administration of the Plan, and changing any provision relating to the distribution or payment, or both, of any of the assets of the Trust Fund.  Subject to Section 12.1, the Plan may be amended also retroactively or otherwise.  The Board may designate a committee of the Board, an officer of the Bank or both to exercise its authority hereunder to modify or amend the Plan (or its related Trust) and acts by such committee or such officer shall be treated as acts by the Board.  Any amendment shall be binding and conclusive on each other Participating Company without any action on its part.

74

CBPJPMC00000691

### 12.3    Return of Contributions

(a)    If a contribution by a Participating Company is conditioned on initial qualification of the Plan as to such Participating Company under Section 401 of the Code, and if the Plan does not so qualify, then Section 12.1 shall not prohibit the return of the contribution to such Participating Company at the direction of the Committee within one year after the date of denial of initial qualification of the Plan.

(b)    If a contribution by a Participating Company is made by a mistake of fact, then such contribution may be returned, at the direction of the Committee, within one year after payment, notwithstanding Section 12.1.

(c)    All contributions by a Participating Company to the Plan are conditioned on their deductibility under Section 404 of the Code.  If a deduction under Section 404 of the Code for a contribution by a Participating Company is disallowed by the Internal Revenue Service, then such contribution may be returned (to the extent of the disallowance), at the direction of the Committee, within one year of the disallowance, notwithstanding Section 12.1.

CBPJPMC00000692

## ARTICLE XIII

### Merger or Consolidation of Plan

**13.1**   **Benefit Requirements**

In the event of any merger or consolidation of the Plan with, or transfer in whole or in part of the assets and liabilities of the Plan to, any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants of this Plan, the assets of this Plan applicable to such Participants shall be transferred to such other plan only if each Participant would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit such Participant would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then terminated).

76

CBPJPMC00000693

## ARTICLE XIV

## Termination of the Plan

**14.1    Voluntary**

The continuance of the Plan and the payment of contributions under the Plan are entirely voluntary and are not assumed as contractual obligations of any Employer.  The Company (for itself and the other Employers) reserves the right, by action of the Board, to terminate the Plan in whole or in part at any time and for any reason.

**14.2    Termination**

(a)    In the event of termination of the Plan, assets of the Plan allocable to affected Participants shall be allocated to affected Participants in accordance with law and the terms of this Plan.  Any such allocated amounts shall be applied in the manner determined by the Plan Administrator to the payment of benefits to the persons entitled thereto.

(b)    In the event of termination or partial termination of the Plan, the Accrued Benefit credited to affected Participants on the date of such termination or partial termination, to the extent not already vested, shall be fully vested and nonforfeitable to the extent funded as of such date; provided, however, that in the event of the termination of the Plan a Participant shall not have recourse toward satisfaction of any nonforfeitable benefits other than from the Trust Fund and the PBGC.

77

CBPJPMC00000694

(c)     Any assets remaining in the Trust Fund after the full satisfaction of all liabilities under the Plan shall be returned to the Company.

**14.3    Section 401(a)(4) - Restriction on Benefits and Distribution**

(a)     In the event of a termination of the Plan, benefits and distribution shall be restricted for any Restricted Employee or Restricted Former Employee as set forth below.

(b)     In the event of a termination of the Plan, benefits of a Restricted Employee or Restricted Former Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(c)     Annual payments to any Restricted Employee or Restricted Former Employee shall be limited to an amount equal to the payments that would be made on behalf of such Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and other benefits (other than a Social Security supplement described in Regulation 1.411(a)-7(c)(4)(ii), if any), under the Plan and the amount the Participant is entitled to receive under a Social Security supplement. Notwithstanding the foregoing, this paragraph (c) shall not apply if:

(i)     after the payment to the Restricted Employee or Restricted Former Employee of all benefits (if any) and his Accrued Benefit, the value of

78

CBPJPMC00000695

the assets of the Plan equal or exceeds 110 percent of the value of all current liabilities as defined in Section 412(l)(7) of the Code, or

(ii)    the value of the benefits (including, Accrued Benefits) for a Restricted Employee or Restricted Former Employee is less than one percent of the value of current liabilities before distribution, as defined in Section 412(l)(7) of the Code.

(d)    For the purpose of this Section 14.3.

(i)    "Restricted Employee or Restricted Former Employee" means a group of Employees or former Employees consisting of the 25 highest paid Employees or former Employees. For these purposes, compensation shall include all remuneration from an Employer.

(ii)    "Benefit" means, solely for purposes of this Section 14.3, loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee and any death benefits not provided for by insurance on an Employee's life.

79

CBPJPMC00000696

### Miscellaneous Provisions

**15.1**   <u>Construction</u>

All questions pertaining to the construction, regulation, validity and effect of the provisions of the Plan shall be determined in accordance with the laws of the State of New York except as superseded by ERISA.   The headings and subheadings contained herein are inserted for convenience of reference only.

**15.2**   <u>Employment Status and Rights</u>

The adoption and maintenance of the Plan shall not be deemed to constitute a contract between any Participating Company and any Employee or Participant, or to be consideration for or an inducement or condition of, the employment of any person.  Nothing herein contained shall be deemed to give to any Employee or Participant the right to be retained in the employ of a Participating Company or to interfere with the right of a Participating Company to discharge any Employee or Participant at any time.

**15.3**   <u>Source of Benefit Payments</u>

All benefits payable under the Plan shall be paid or provided for solely from the Trust Fund held by the Trustee.  However, if an annuity contract or group annuity contract is or has been purchased to fund all or part of benefits of some or all Participants, then the source of payment of the affected benefits to the Participant shall be such an annuity contract or group annuity contract.

80

CBPJPMC00000697

**15.4    Non-Assignability**

Except to the extent required by law, no benefit payable out of the Fund to any person (including any Participant or Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge encumber or charge the same shall be void; no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized under the Plan.    In the event that the Committee receives a domestic relations order, it shall determine, in accordance with procedures determined by it, whether the order is a "Qualified Domestic Relations Order," as defined in Code Section 414(p).    If the order is a Qualified Domestic Relations Order, the terms of such order shall be followed by the Plan, notwithstanding the foregoing provisions of this Section 15.4.    In the event that the Plan Administrator determines that an overpayment of all or any portion of an Accrued Benefit has occurred, such Plan Administrator may take such steps as he may deem appropriate to recover such overpayment, including but not limited to, reducing benefits in pay status.

**15.5    Appendices**

The following appendices are part of this Plan -- Appendix I - XII.

81

CBPJPMC00000698

# APPENDIX I
### Maximum Benefits
### Section 415

This Appendix is intended to impose a maximum limit on the benefit payable under this Plan equal to but no lower than that necessary to comply with the requirements of Code Section 415. Accordingly, Code Section 415 and the regulations thereunder, as amended from time to time, are incorporated herein by reference and shall override inconsistent provisions of this Appendix, if any.

1.1    Code Section 415 Limits Generally.    (a) Notwithstanding anything herein to the contrary, the amount of the annual benefit payable to a Participant under the Plan, and any other defined benefit plan (whether or not terminated) of an Employer or an Affiliated Company (the "Annual Benefit") shall not exceed the lesser of:

        (i)        the primary limit imposed by Code Section 415(b), and

        (ii)        in combination with the 401(k) Savings Plan of The Chase Manhattan Bank, the combined limit imposed by Code Section 415(e).

    (b)    "Annual Benefit" means the annual benefit payable in the form of a single life annuity, a Joint and 50% Survivor (Spouse) Annuity or the Joint and Survivor Benefit (if the joint annuitant is the Participant's Surviving Spouse and the benefit payable to the Surviving Spouse is at least 50%, but not greater than 100% of the benefit payable to the Participant). All other forms of benefits must be adjusted to an Actuarially Equivalent of a single life annuity, using the greater of the interest rate specified in Appendix V and 5%, provided, however that no actuarial adjustment is required for the value of ancillary or incidental benefits. Annual Benefit does not include employee contributions, rollover contributions or assets transferred from a qualified plan that was not maintained by an Employer or an Affiliated Company.

    (c)    For purposes of this Appendix I, in determining what is an Affiliated Company, the phrase "more than 50%" shall be substituted for the phrase "at least 80%" in each place it appears in Code Section 1563(a)(1).

CBPJPMC00000699

1.2    <u>Primary Limit under Code Section 415</u>.    (a)  Under the primary limit imposed by Code Section 415(b), the maximum Annual Benefit payable to a Participant may not exceed the lesser of:

(i)    $90,000 increased annually during the Participant's employment to reflect the cost-of-living adjustment set forth in Code Section 415(d)(1)(A) but only for the year in which such adjustment is effective, or

(ii)    100 percent of the Participant's average annual Total Compensation (as defined below) for the Participant's three highest paid consecutive Plan Years while an active Participant ("highest three year average compensation");

<u>provided</u>, <u>however</u>, that the primary limit on the Annual Benefit payable to a former Participant shall be increased after the Employee's separation from service to reflect post-separation increases in the cost-of-living, as provided by Code Section 415(d)(1)(A) and (B) and the regulations thereunder; <u>provided</u>, <u>further</u>, that if such former Participant receives his or her benefit from the Supplemental Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies in a single lump sum, the cost-of-living adjustment set forth in the first proviso shall not be made.

(b)    For purposes of this Appendix I, "Total Compensation" means compensation determined in accordance with Code Section 414(s).

1.3    <u>Reduction of Primary Limit for Former Participants with Less than Ten Years</u>.  (a) If a former Participant has less than 10 years of participation (as defined in Code Section 415(b)(5) and as modified by Code Section 415(b)(5)(D), the maximum Annual Benefit payable under Section 1.2(a) shall be reduced by multiplying such dollar amount by a fraction in which the numerator is the actual number of years, or parts thereof, of participation in the Plan (and predecessor plans), and the denominator is ten (but not less than 1/10).

(b)    If a former Participant has less than 10 years of service (as defined in Code Section 415(b)(5)), the maximum Annual Benefit payable under Section 1.2(b), shall be reduced by multiplying the amount by a fraction in which the numerator is the actual number of years, or parts thereof, of such service, and the denominator is ten (but not be less than 1/10). Likewise, the denominator of the defined benefit fraction in Section 1.8 shall be

App-2

CBPJPMC00000700

reduced by the same fraction but years of service shall include future years of service occurring before the Participant's Normal Retirement Age.

1.4    Impact of Early and Late Commencement of Benefits.    (a)  If a Participant's Annual Benefit commences before the Participant's social security retirement age, but on or after age 62, the dollar limit in Section 1.2(a) shall be reduced (after adjustment under Section 1.3, if any) as follows:

> (i)    If the social security retirement age is 65, the reduction shall be 5/9 of one percent per month for each month by which benefits commence prior to the month the Participant attains 65; and

> (ii)    If the social security retirement age exceeds 65, the reduction shall be 5/9 of one percent for each of the first 36 months and 5/12 of one percent for each of the additional months (up to 24 months) by which benefits commences prior to the month the Participant attains social security retirement age.

(b)    If a Participant's Annual Benefit commences before he or she reaches 62, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at age 62 as determined above, using the greater of the interest rate specified in Appendix V or 5 percent.

(c)    If a Participant's Annual Benefit commences after social security retirement age, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at social security retirement age (after adjustment under Section 1.3, if any), using the lesser of the interest rate specified in Appendix or 5 percent.

(d)    Social security retirement age means the age used as the retirement age under section 216(1) of the Social Security Act, which is presently 65 for a person born before 1938, age 66 for a person born between 1938 and 1954, and age 67 for a person born after 1954.

1.5    Special $10,000 Rule.  If a Participant has never participated in a defined contribution plan, a welfare benefit plan described in Code Section 419(e), or an individual medical account described in Code Section 415(1)(2) maintained by an Employer or an Affiliated Company, the primary limit set forth in Section 1.2 shall not prevent such Participant from

App-3

CBPJPMC00000701

receiving an Annual Benefit of up to $10,000 multiplied by a fraction in which the numerator is the actual number of years, or parts thereof, of service (as defined in Code Section 415(b)(5), and the denominator is ten (but not less than 1/10).

1.6    TEFRA Code Section 415 Grandfather.    In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan before January 1, 1983, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1982 under the terms and conditions of the Prior Plan or the MHT Plan and the Code Section 415 limits as effective on July 1, 1982, disregarding any cost-of-living adjustments occurring after July 1, 1982.

1.7    TRA 86 Code Section 415 Grandfather.    In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan on January 1, 1987, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1986 under the terms and conditions of the Prior Plan or the MHT Plan and the Code Section 415 limits effective on May 5, 1986 (including any adjustment made under Section 1.5), disregarding any cost-of-living adjustments occurring after May 5, 1986.

1.8    Combined Fraction Limit.    (a)  The sum of a Participant's defined benefit fraction (as defined below) and defined contribution fraction (as defined below) shall not exceed 1.0 in any Plan Year. For this purpose:

> (1)    "Defined benefit fraction" means a fraction, the numerator of which is the sum of the Participant's projected annual benefits under all defined benefit plans (whether or not terminated) of the Employer and Affiliated Companies, and the denominator of which is the lesser of 125 percent of the dollar limit in effect for the Plan Year under Code Section 415(b)(1)(A) (including any adjustments to such limitation under Sections 1.3, 1.6 and 1.7) or 140 percent of highest three year average compensation (as defined in Section 1.2).

App-4

CBPJPMC00000702

(2)     "Defined contribution fraction" means a fraction, the numerator of which is the sum of the annual additions(as determined under Code Section 415(c) for the year in which such annual additions were credited) credited to the account of a Participant in all years up to the close of the current year under one or more defined contribution plans (whether or not terminated) maintained by any Affiliated Company (whether before or after it became an Affiliated Company), including any amounts credited to a welfare benefit fund or an individual medical account described in Code Sections 419(e) and 415(1)(2) respectively, and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior years of service with any Affiliated Company (regardless of whether a defined contribution plan was maintained by such employer). The maximum aggregated amount in any year is the lesser of 125 percent of the dollar limit in effect under Code Section 415(c)(1)(A) or 25 percent of the Participant's Total Compensation for such Year.

(3)     "Projected annual benefit" means the Annual Benefit as defined in Section 1.1 that the Participant would be entitled to under the Plan, or any other defined benefit plan, if the Participant were to continue to participate in the Plan until his or her Normal Retirement Age (or current age, if later), and the Participant's Total Compensation for the current Plan Year and all other relevant factors used to determine benefits under the Plan, or any other defined benefit plan, were to remain constant for all future years.

(b)     If the Participant's defined benefit fraction and defined contribution fraction would otherwise exceed 1.0, the Participant's benefit accruals under this Plan shall be reduced to the extent necessary to prevent such combined fraction from exceeding 1.0 in the following order:

(A)     first, the Participant's Final Salary Benefit, if any, accruals or the benefit described under Section 4.6 for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

App-5

CBPJPMC00000703