(B)     second, the Participant's Credit Balance accruals for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

(C)     third, the Participant's accruals under the 401(k) Savings Incentive Plan of The Chase Manhattan Bank shall be reduced.

1.9    TEFRA Combined Fraction Grandfather.    If a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1983 would otherwise exceed 1.0, then the numerator of the defined contribution fraction shall be permanently reduced, in accordance with applicable regulations, by an amount so that the sum of the defined benefit fraction and defined contribution fraction does not exceed 1.0 for such year.

1.10    TRA 86 Combined Fraction Grandfather.    With respect to the sum of a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1987, in accordance with applicable regulations, an amount shall be permanently subtracted from the numerator of the defined contribution fraction (not exceeding such numerator) so that the sum of the defined benefit fraction and defined contribution fraction computed under Code Section 415(e)(1) (determined as if the Code Section 415(e)(1) which are effective for the first year beginning after December 31, 1986, were in effect for such year) does not exceed 1.0 for such year.

App-6

CBPJPMC00000704

## APPENDIX II
<u>MHT Plan Transaction Rules</u>

This Appendix describes transactions set forth in the MHT Plan which impacts the calculation of service, vesting and benefits under this Plan including the frozen benefits described in Section 5.5; <u>provided</u> that, in the event of any inconsistency between this Appendix and the MHT Plan with respect to the matters described herein, the MHT Plan shall control; <u>provided</u>, <u>further</u>, that the benefit accruals set forth in the MHT Plan ceased as of December 31, 1992.

2.1    <u>Acquisition of CIT</u>.    (a)  Every Eligible Employee (as defined in the MHT Plan) who was a participant of the Retirement Plan for Employees of C.I.T. Financial Corporation and Certain of its Subsidiaries as such plan existed immediately preceding July 1, 1986 (the "C.I.T. Plan"), became a participant of the MHT Plan on July 1, 1986.

(b)    Every Eligible Employee (as defined in the MHT Plan) who was employed by The C.I.T. Group ("C.I.T.") on July 1, 1986 and who was not a participant of the C.I.T. Plan on July 1, 1986 became a participant of the MHT Plan on the earlier of (i) the date he or she would have become a participant of the C.I.T. Plan if the provisions thereof had remained in effect, or (ii) upon satisfaction of the eligibility requirements under the MHT Plan as then in effect.

(c)    As provided in Article III, a Member's (as defined in the MHT Plan) service with C.I.T. prior to July 1, 1986 are be counted in accordance with the rules of the MHT Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan.

(d)    As provided in Article III, a Member's benefit service on account of service with C.I.T. prior to July 1, 1986 are counted in accordance with the rules of the MHT Plan towards the Member's Years of Benefit Service under the MHT Plan; <u>provided</u>, <u>however</u>, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

(e)    See benefit formula for C.I.T. in Section 7.1(e) of MHT Plan.

(f)    With respect to any Member who was (i) actively employed by C.I.T. and a member of the C.I.T. Plan on June 30, 1986, and (ii) age 54 with 9 years of benefit service

App-7

CBPJPMC00000705

under the C.I.T. Plan on June 30, 1986, such Member's normal retirement benefit may be paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on June 30, 1986, provided such Member files an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan, as the case may be. With respect to any Member of the C.I.T. Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986, paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan, or this Plan, as the case may be.

2.2    Plan Merger with MHCS.  (a) Every Eligible Employee who was a participant of the Retirement Plan of Manufacturers Hanover Financial Services, Inc. as such plan existed immediately preceding January 1, 1987, became a participant of the MHT Plan on January 1, 1987.

(b)    A Member's service with Manufacturers Hanover Financial Services, Inc. ("MHCS") prior to January 1, 1987 shall be counted in accordance with the rules of the MHT Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or this Plan, as provided in Article III.

(c)    A Member's benefit service on account of service with MHCS prior to January 1, 1987 shall be counted in accordance with the rules of the MHT Plan towards the Member's Years of Benefit Service under former Section 5.1(b) of the Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

(d)    A Member who was employed by MHCS prior to January 1, 1987, terminates service with MHCS on or after January 1, 1987 and retires on or after his or her Normal Retirement Date (as defined in the MHT Plan) shall have a normal retirement benefit (as defined in the MHT Plan) that is the greater of (i) the benefit computed under the MHT] Plan, or (ii) the benefit that would been payable if such benefit was computed pursuant to the applicable provisions of the MHCS Plan as in effect immediately preceding January 1, 1987, reduced by the Actuarial Equivalent (using the UP 84 mortality table and the interest

App-8

CBPJPMC00000706

prescribed by the Pension Benefit Guaranty Corporation with respect to terminations occurring on the date as of which equivalence is being determined) of the normal form of the Member's benefit provided by the vested portion of his or her Flexible Retirement Account as of his or her Normal Retirement Date. The benefit described in Section 2.2(d)(i) or (ii) was frozen as provided in former Section 5.5 of this Plan as of December 31, 1992.

    (e)    With respect to any Member both actively employed by MHCS and who was a member of the MHCS Plan on June 30, 1986, and on such date was within one year of eligibility for early retirement under the terms of the MHCS Plan as in effect on June 30, 1986 (i.e., was age 54 and had 9 Years of Benefit Service), such Member's normal retirement benefit may be paid in one of the optional forms pursuant to sections 6.1 and 6.2 of the MHCS Plan as in effect on June 30, 1986, provided such Member has filed an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan, as the case may be. With respect to any Member of the MHCS Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986 paid in one of the optional forms pursuant to the provisions of sections 6.1 and 6.2 of the MHCS Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan or this Plan, as the case may be.

    2.3    <u>Acquisition of Bankers Trust Company</u>. (a) A Member's service with Bankers Trust Company prior to its acquisition is counted in accordance with the Agreement (as defined below) entered into at the time of the acquisition towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or under this Plan as provided in Article III.

    (b)    Any Employee (as defined in the MHT Plan) formerly employed by Bankers Trust Company who has been employed by Manufacturers Hanover Trust Company ("MHT") pursuant to Section 9.9 of the Agreement between MHT and Bankers Trust Company dated as of October 31, 1979 (the "agreement"), shall, as of the date of his or her employment by MHT become vested in his or her accrued benefit under the Plan for Pensions of Bankers Trust Company, computed as of the closing date of the purchase and sale of the banking offices described in the agreement (the "closing date").

App-9

CBPJPMC00000707

(c)     Such an Employee's accrued normal retirement benefit under the MHT Plan shall be the greater of:

(i)     the accrued normal retirement benefit computed in accordance with the Plan for Pensions of Bankers Trust Company as in effect on the closing date, taking into account the Employee's total years of service and his or her compensation both with MHT and Bankers Trust Company; or

(ii)    the sum of (1) the Employee's accrued normal retirement benefit as of the closing date under the Plan for Pensions of Bankers Trust Company and (2) the Employee's accrued normal retirement benefit under the MHT Plan taking into account only years of service as an Employee following the closing date.

The benefit described in Section 2.3(c)(i) or (ii) was frozen as provided in former Section 5.5 of this Plan as of December 31, 1992.

2.4     Certain Former Employees of Wells Fargo Bank.   Any Employee formerly employed by the Corporate Trust and Corporate Agency departments of Wells Fargo Bank ("Wells") who became an Employee on or after August 18, 1983 as a result of the purchase of certain assets from Wells and for whom assets were transferred to the Plan shall, as of the date of his employment with the Bank or a Related Company (each as defined in the MHT Plan), have each year of service for which credit was given under the Wells Fargo & Company Retirement Plan, as in effect on August 18, 1983 ("Wells Plan"), credited as a Year of Service for purposes of eligibility and vesting under the MHT Plan. Each such year of service under the Wells Plan shall also be credited as a Year of Benefit Service under the MHT Plan for the purpose of determining the Employee's accrued benefit under the MHT Plan as of January 1, 1993.

2.5     Certain Former Employees of Dollar Dry Dock.   Pursuant to the Agreement to Purchase Assets and Assume Liabilities dated as of January 10, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York and the Amendment to Purchase Assets and Assume Liabilities dated as of June 23, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York, any Employee who was employed by Dollar Dry Dock on July 13, 1986 and became an Employee on July 14, 1986 pursuant to such amended agreement, has his years of service with Dollar

CBPJPMC00000708

Dry Dock prior to July 14, 1986 taken into account as Years of Service under the MHT Plan for purposes of: (i) determining eligibility to participate in the MHT Plan or this Plan, as provided in Article III, and (ii) determining nonforfeitable rights under MHT Plan or this Plan, as provided in Article III. Such years of service with Dollar Dry Dock prior to July 14, 1986 shall also be taken into account as Years of Benefit Service for purposes of determining eligibility for early retirement benefits and reduced vested benefits under the MHT Plan and this Plan, as provided in Article III, but not for purposes of benefit accrual, provided that such Employee has at least 11 Years of Service with a Participating Company (as defined in the MHT Plan) and Dollar Dry Dock combined. As provided in Article III, years of Service for the period of employment with Dollar Dry Dock are determined in accordance with the rules of the MHT Plan.

2.6    Certain Former Employees of Goldome.    (a)    Pursuant to the Agreement between Goldome and Manufacturers Hanover Trust Company Relating to the Sale of Certain New York City Metropolitan Area Branches dated as of March 29, 1989, any Employee who was employed by Goldome on November 12, 1989 and became an Employee on November 13, 1989 pursuant to such agreement, had his years of service with Goldome prior to November 13, 1989 (including years of service with any other employer prior to November 13, 1989 which is taken into account under the Goldome Retirement Plan) taken into account as Years of Service under the MHT Plan solely for purposes of: (i) determining eligibility to participate in the MHT Plan and this Plan as provided in Article III, and (ii) determining nonforfeitable rights under of the MHT Plan and as provided in Article III of this Plan, and (iii) for Severance Dates occurring on or after July 1, 1994, determining eligibility for the Benefits described in former Section 5.2(a) or 5.2(c) but only in the event of an Eligible Termination.    Years of Service for the period of employment with Goldome shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan, as provided for in Article III.

(b)    Pursuant to the Agreement between Goldome and Manufacturers Hanover Trust Company Relating to the Further Sale of Certain New York City Metropolitan Area Branches dated as of November 27, 1990, any Employee who was employed by Goldome on May 27, 1991 and became an Employee on May 28, 1991 pursuant to such agreement, had his or her years of service with Goldome prior to May 28, 1991 (including years of service with any other employer prior to May 28, 1991 which is taken into account under the Goldome Retirement Plan) taken into account as Years of Service under this Plan solely for purposes of:

CBPJPMC00000709

(i) determining eligibility to participate in the MHT Plan or this Plan, as provided in Article III, (ii) determining nonforfeitable rights under of the MHT Plan and this Plan as provided in Article III, and (iii) for Severance Dates occurring on or after July 1, 1994, determining eligibility for the Benefits described in Section 5.2(a) or 5.2(c) but only in the event of an Eligible Termination. Years of Service for the period of employment with Goldome shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan as set forth in Article III.

2.7    Certain Former Employees of Dan River.    Any Employee who (i) was employed by Dan River on May 25, 1989, and (ii) became an Eligible Employee on May 26, 1989, shall have his or her years of service with Dan River prior to May 26, 1989 taken into account as Years of Service under MHT Plan and this Plan, as the case may be, for purposes of: (i) determining eligibility to participate in MHT Plan and this Plan, as provided in Article III, (ii) determining nonforfeitable rights under MHT Plan and this Plan as provided in Article III. Years of Service for the period of employment with Dan River shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan as set forth in Article III.

2.8    Manufacturers Hanover Mortgage Corporation.    The normal retirement benefit (as defined in the MHT Plan) payable to a Member who terminates service with Manufacturers Hanover Mortgage Corporation after December 31, 1984 and retires on or after his Normal Retirement Date (as defined in the MHT Plan) shall be payable in accordance with Section 5.4(a) of the Stock Purchase Agreement dated as of March 24, 1986 between Manufacturers Hanover Corporation and Fireman's Fund Insurance Company.

2.9    Other Acquisitions    (a)    A Member's service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan and accordance with Article III of this Plan.

(b)    A Member's benefit service on account of service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Benefit Service (as defined in the MHT

CBPJPMC00000710

Plan) under the MHT Plan and former Section 5.1 of this Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

2.10    Acquisitions Prior to 1976.    A Member on January 4, 1976 who had service with either National Bronx Bank, Peoples Industrial Bank, Banco Commerciale, Mortgage Corporation of New York or Standard National Bank of New York prior to the acquisition of any such corporation by Manufacturers Hanover Trust Company, shall be credited with Years of Benefit Service under the MHT Plan for the period of his or her continuous service with such corporation after completing one year of service with such corporation and attaining age 25.

2.11    Sale of Manufacturers Hanover Investment Corporation.    (a)    Pursuant to the Stock Purchase Agreement dated as of January 7, 1988 between Manufacturers Hanover Corporation and Paine Webber Group Inc. each employee of Manufacturers Hanover Investment Corporation ("MHIC") or MH Investment Counsel, Inc. ("Investment Counsel") who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988, and who is not fully vested as of January 29, 1988 under the Plan shall be given Years of Service solely for vesting purposes under the MHT Plan or this Plan, as the case may be, for periods of continuous employment with the Paine Webber Group, Inc., MHIC, or Investment Counsel, as the case may be, after January 29, 1988.

(b)    Benefits payable to an employee of MHIC or Investment Counsel who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988 and who does not make an election to retire under this Plan on or prior to February 29, 1988, shall be payable to such an employee pursuant to the otherwise applicable terms of, and at the time and in the amounts provided under the MHT Plan based upon such employee's Years of Service (including Years of Service under subparagraph (a) of this Section), Years of Benefit Service and salary received from MHIC or Investment Counsel, as the case may be, through January 29, 1988. This Plan has succeeded to this obligation of the MHT Plan.

(c)    Benefits payable to such an employee under the terms of the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable until such employee retires or otherwise terminates employment with the Paine Webber Group, Inc., MHIC or Investment Counsel. An employee not eligible to retire under the MHT Plan on

CBPJPMC00000711

or before January 29, 1988 shall be treated as a terminated vested employee upon his termination of employment with MHIC, Investment Counsel or the Paine Webber Group, Inc. This provision also applies to the Plan.

2.12    Sale of Manufacturers Hanover Consumer Services.

(a)    Pursuant to the Stock Purchase Agreement dated as of April 21, 1988 among Manufacturers Hanover Corporation, Manufacturers Hanover Financial Corporation, and Credithrift Financial Corporation, each Employee of Manufacturers Hanover Consumer Services ("MHCS"), or of any company in which MHCS owns or holds any interest and which MHCS controls ("MHCS Company"), on May 31, 1988, who participated in the Plan as of May 31, 1988 (such employees hereinafter are referred to as "MHCS Employees") shall be credited with Years of Service, solely for purposes of vesting under the MHT Plan and, as provided in Article III, under this Plan, for periods of employment after May 31, 1988 with Credithrift Financial Corporation ("Credithrift"), MHCS or any affiliate of Credithrift or MHCS, as if such periods of employment had been with the  Bank or another Participating Company (as defined in the MHT Plan).

(b)    Benefits accrued through May 31, 1988 by MHCS Employees under the MHT Plan shall be payable to such MHCS Employees pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan, subject to this Section, based upon such MHCS Employees' Years of Benefit Service with, and salary received from, MHCS and any MHCS Company through May 31, 1988 (and periods of employment prior to May 31, 1988 with any other employer taken into account under the MHT Plan).

(c)    Benefits accrued under the terms of the MHT Plan by former employees of MHCS or any MHCS Company and any predecessors thereof whose termination of employment occurred prior to May 31, 1988 ("Former MHCS Employees"), to the extent not previously distributed, shall be payable to such Former MHCS Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan. This Plan has succeeded to this obligation of the MHT Plan.

(d)    Any MHCS Employee eligible for an early retirement benefit provided under Section 7.2 of the MHT Plan as of May 31, 1988 shall remain eligible for such benefit upon their termination of employment; every other MHCS Employee shall be eligible for the benefit

CBPJPMC00000712

provided under Section 7.3 of the MHT Plan for benefits commencing prior to such employee's Normal Retirement Date. This Plan has succeeded to this obligation of the MHT Plan.

(e)    No further benefits shall accrue under the MHT Plan (and accordingly, this Plan) to any MHCS Employee or Former MHCS Employee subsequent to May 31, 1988 (unless any such employee is hired after May 31, 1988 by an Employer under this Plan and again becomes eligible to accrue benefits thereunder).

(f)    Benefits payable to an MHCS Employee under the MHT Plan (and accordingly, this Plan) upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the MHCS Employee retires or otherwise terminates employment with Credithrift, MHCS and any affiliate of Credithrift or MHCS.

(g)    MHCS and each MHCS Company shall cease to be a Participating Company and a Related Company as those terms are defined in the MHT Plan on May 31, 1988.

2.13    Sale of C.I.T. (a) Pursuant to the CIT Stock Purchase Agreement dated as of September 18, 1989 between The Dai-Ichi Kangyo Bank, Limited and Manufacturers Hanover Corporation (the "Stock Purchase Agreement") and applicable law, (i) employees (including employees on disability, layoff, leave of absence or vacation) of The CIT Group Holdings, Inc. ("CIT"), or of any company of which CIT owns, directly or indirectly, 25% or more of the outstanding capital stock, other than a company which is an Investment Holding within the meaning of the Stock Purchase Agreement ("CIT Company") (such employees hereinafter referred to as "CIT Employees") and (ii) former employees of CIT, a CIT Company, or any corporation or other entity that was directly or indirectly owned by CIT at any time on or after May 1, 1984, whose termination of employment occurred before the Closing Date (as defined by the Stock Purchase Agreement) (such former employees hereinafter referred to as "Former CIT Employees"), accrued no further benefits under the MHT Plan as of the Closing Date. Accordingly, they accrued no additional benefits under this Plan.

(b)    No period of service by any CIT Employees and Former CIT Employees with The Dai-Ichi Kangyo Bank, Limited, CIT, any CIT Company, or any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT subsequent to the Closing Date shall be taken into account for any purpose under the MHT Plan or this Plan.

App-15

CBPJPMC00000713

(c)     Those benefits payable to CIT Employees and Former Employees under annuity contracts purchased by the MHT Plan (which shall be the only benefits payable to CIT Employees and Former CIT Employees subsequent to the transfer of assets from MHT Plan to the qualified defined benefit pension plan established by CIT pursuant to the CIT Stock Purchase Agreement) shall to the extent not previously distributed or transferred to a qualified defined benefit pension plan established by CIT pursuant to the Stock Purchase Agreement, be payable to CIT Employees and Former CIT Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan. On and after the date of the transfer of assets from the MHT Plan to the qualified defined benefit plan established by CIT pursuant to the Stock Purchase Agreement, the MHT Plan and accordingly, this Plan shall have no liabilities or obligations with respect to CIT Employees or Former CIT Employees except as expressly provided in this paragraph (c).

(d)     Benefits provided by such annuity contracts as described in paragraph (c) of this Section to a CIT Employee under the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the CIT Employee retires or otherwise terminates employment with The Dai-Ichi Kangyo Bank, Limited, CIT and any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT.

(e)     CIT and each CIT Company ceased to be a Participating Company and a Related Company on the Closing Date as those terms are defined under the MHT Plan.

App-16

CBPJPMC00000714

# APPENDIX III
### Top-Heavy Provisions

3.1     Top-Heavy Determination.     For any Plan Year commencing in 1984 or thereafter, the Plan is a Top-Heavy Plan (a) if the Plan is not a member of a Required Aggregation Group and the Plan has a Top-Heavy Ratio greater than 60% or (b) if the Plan is a member of a Required Aggregation Group which has a Top-Heavy Ratio of greater than 60%. Notwithstanding the above, if the Plan is a member of a Permissive Aggregation Group with a Top-Heavy Ratio less than or equal to 60 percent it shall not be considered a Top-Heavy Plan.

The following provisions of this Appendix III apply notwithstanding any other provision of the Plan.

3.2     Minimum Vesting.     If the Plan is determined to be a Top-Heavy Plan for a Plan Year. a Participant with a Period of Service of 3 years shall be fully vested in his/her Accrued Benefit.

If the Plan subsequently is determined to no longer be a Top-Heavy Plan, then the above vesting shall not apply to any portion of a Participant's Accrued Benefit which is accrued on or after the first day of the first Plan Year in which the Plan is no longer a Top-Heavy Plan.

3.3     Minimum Benefit Accrual.

(a)     If the Plan is determined to be a Top-Heavy Plan for a Plan Year, each Participant who has not separated from service as of the end of the Plan Year and who is not a Key Employee, shall accrue a minimum Annual Benefit in the form of a single life annuity commencing as of the Normal Retirement Date equal to two percent (three percent in any year when the Top-Heavy Ratio is 90 percent or greater) of Top-Heavy Average Total Compensation multiplied by the number of Plan Years during which the Plan was Top-Heavy during a Participant's Years of Service up to a maximum of 10 years.

App-17

CBPJPMC00000715

(b)    A Top-Heavy Plan shall not be treated as meeting the requirements of this Section 3.3 unless the Plan meets such requirements without taking into account any Social Security contributions or benefits.

(c)    Notwithstanding the above provisions, this Section 3.3 will not apply to any Participant to the extent that such Participant is covered under any other qualified plan of an Affiliated Company and such other plan provides the minimum allocation or benefit requirement applicable to Top-Heavy plans.

3.4    <u>Adjustment to Combined Plan Limitation</u>.    If the Plan is determined to be a Top-Heavy Plan for any Plan Year, then the limitation provided under Section 2.8 of Appendix I the Plan shall be determined by substituting "100 percent" for "125 percent" wherever it appears in such section.

3.5    <u>Definitions</u>.

(a)    "Determination Date" means the last day of the preceding plan year for any plan year subsequent to the first plan year of a plan. For the first plan year of any plan, Determination Date means the last day of the plan year.

(b)    "Key Employee" means any Employee or former Employee (and the beneficiaries of such Employee or former Employee) who at any time during the Determination Period was an officer of an Affiliated Company with Total Compensation greater than 50% of the amount in effect under Section 415(b)(1)(A) of the Code, an owner (or considered an owner under Section 318 of the Code) of one of the ten largest interests in an Affiliated Company if such individual's Total Compensation exceeds the dollar limitation under Section 415(c)(1)(A) of the Code, a five percent owner of an Affiliated Company, or a one percent owner of an Affiliated Company who has an annual compensation of more than $150,000. Determination Period" means the plan year containing the Determination Date and the four preceding plan years. The determination of who is a key Employee will be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(c)    "Permissive Aggregation Group" means each plan in the Required Aggregation Group and any other qualified plan(s) chosen by the  Company which are maintained by an

CBPJPMC00000716

Affiliated Company, if such group of plans would meet the requirements of Sections 401(a)(4) and 410 of the Code.

(d)     "Required Aggregation Group" means (i) each qualified plan of an Affiliated Company in which at least one Key Employee participates and (ii) any other qualified plan of an Affiliated Company which enables any plan described in (i) to meet the requirements of Section 401(a)(4) or Section 410 of the Code.

(e)     "Top-Heavy Ratio" means, with respect to the plans taken into consideration, a fraction, the numerator of which is the sum of the Key Employees' account balances under the applicable defined contribution plans and the present value of Key Employees' accrued benefits under the applicable defined benefit plans, and the denominator of which is the sum of all participants' account balances under the applicable defined contribution plans and the present value of all participants' benefits under the applicable defined benefit plans. Both the numerator and the denominator of this fraction are adjusted so as to include plan distributions made to participants in the five-year period ending on the Determination Date (including distributions under a terminated plan which if it had not been terminated would have been part of a Required Aggregation Group) and in the case of defined contribution plans any contributions due but unpaid as of the Determination Date. The value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the Determination Date. The account balances and accrued benefits of an individual who is not a Key Employee but who was a Key Employee in a prior year shall be disregarded and the account balance of an individual who has not performed any services for any employer maintaining a plan to which this Appendix IV applies at any time during the five years preceding the Determination Date shall also be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Section 416 of the Code and the Regulations thereunder. When more than one plan is being considered, the value of account balances and accrued benefits shall be calculated with reference to the Determination Dates that fall within the same calendar year. Present values shall be based on reasonable actuarial assumptions as to interest and mortality. Effective for Years ending subsequent to December 31, 1986, solely for the purpose of determining the Top Heavy Ratio, the accrued benefits under the applicable defined benefit plans of any Participant who is not a Key Employee shall be determined under the method which is used for accrual purposes for all plans maintained by any Affiliated Company, or, if there is no such method,

App-19

CBPJPMC00000717

**Appendix V**

**Actuarial Equivalence Factors for Optional Forms of Payment**

For purposes of determining an Actuarial Equivalent benefit, the following interest rate and mortality basis applies unless stated otherwise in the Plan or this Appendix:

1. Interest rate used for discounting purposes equals the average 30-year Treasury rate in effect for the October preceding the year of determination

2. GA-83 Mortality Table [(50% Male, 50% Female)]

1

CBPJPMC00000718

as if such benefits accrued not more rapidly than the slowest accrual rate permitted under Section 411(b)(1)(C) of the Code.

(f)    "Total Compensation" has the meaning ascribed thereto by Appendix I, Section 1.1(b).

(g)    "Top Heavy Average Total Compensation" means total compensation over any five consecutive Plan Years that procedures the highest average, provided that Plan Years beginning after the last Plan Year in which the Plan was Top-Heavy shall be disregarded.

CBPJPMC00000719

## Appendix V

### Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 49% RS (Spouse) | 100% of the straight life annuity | Not available | 92% of the annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) | See attached Table 1 | 92% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) |
| 50% RS (Spouse) | 97% of the straight life annuity (adjusted up or down by 1% for each year that the difference between the annuitants exceeds 10 years, but not more than 100%) | 90% of the straight life annuity (adjusted up or down by 5% for each year that the beneficiary is older/younger than the Participant) | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) | See attached Table 1 | 90% of straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) |
| 50% RS (Non Spouse) | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) | Same as above | Same as above | See attached Table 1 | Same as above |
| 50% & 5% RS | Not available | 87% of the straight life annuity (adjusted up/down by 6% for each year that beneficiary is older/younger than the Participant) | Not available | See attached Table 1 | 87% of the straight life annuity (adjusted up/down by 6% for each year that beneficiary is younger than the Participant) |

CBPJPMC00000720

## Appendix V

### Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Balance Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 75% J&S | Not available | 86% of the straight life annuity (adjusted up/down by 8% for each year that beneficiary is older/young than the Participant) | Not available | See attached Table 1 | 85% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (Spouse) | 86% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) | 85% of the straight life annuity (adjusted up down by 1% for each year that beneficiary is older/younger than the Participant) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 80% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (No spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%) | Same as above | Same as above | See attached Table 1 | Same as above |
| 5 Years Certain | Not available | 97.5% of the straight life annuity (adjusted up/down by 5% for each year that Participant is younger, older than age 65) | Not available for service after 1992 | Not available | 97.5% of the straight life annuity (adjusted up down by 5% for each year that Participant is younger older than age 65) |
| 10 Years Certain | Not available | 92% of the straight life annuity (adjusted up by 5% or down by 1% for each year that Participant is younger or older than age 65) | Not available for service after 1992 | Not available | 92% of the straight life annuity (adjusted up by 5% or down by 1% for each year that Participant is younger or older than age 65) |

3

CBPJPMC00000721

**Appendix V**

**Actuarial Equivalence Factors for Optional Forms of Payment**

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 15 Years Certain | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65) | Not available for service after 1992 | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65) |
| Level Income Option | Actuarial Equivalence using 1984 Mortality Table and 7% interest rate | Not available | Actuarial Equivalence using 1984 Mortality Table and 7% interest rate | Actuarial Equivalence using 1984 Mortality Table and 7% interest rate | Actuarial Equivalence using 1984 Mortality Table and 7% interest rate |
| Increasing Annuity | Not available | Actuarial Equivalence* | Actuarial Equivalence (Cash Balance Formula only) | Actuarial Equivalence | Actuarial Equivalence |
| Lump Sum (Cash Balance Plan) | Not available | Actuarial Equivalence* | Actuarial Equivalence* | Actuarial Equivalence of single life annuity | Actuarial Equivalence of single life annuity* |
| Lump Sum (Cash-out on Final Pay Plan benefits) | Actuarial Equivalence | Actuarial Equivalence* | Actuarial Equivalence | Actuarial Equivalence | Not applicable |

\* For retirements that occur between September 1, 1996 and August 31, 1997 for former Chemical participants only, the Participant will receive the greater benefit determined using GA-83 Mortality Table (50% Male/50% Female) and (1) the 30 year Treasury rate in effect for the October preceding the year of determination or (2) the 30 year Treasury rate in effect two months preceding benefit commencement. For retirements after August 31, 1997, the Participant will receive the benefit determined using GA-83 Mortality Table (50% Male/50% Female) and the 30 year Treasury rate in effect for the October preceding the year of determination.

CBPJPMC00000722

APPENDIX  V

TABLE 1

100% JOINT AND SURVIVOR FACTORS

| AGE OF RETIREE | FACTOR |
|---|---|
| 50 | .9105 |
| 51 | .9024 |
| 52 | .8943 |
| 53 | .8864 |
| 54 | .8784 |
| 55 | .8706 |
| 56 | .8628 |
| 57 | .8551 |
| 58 | .8475 |
| 59 | .8400 |
| 60 | .8325 |
| 61 | .8250 |
| 62 | .8177 |
| 63 | .8104 |
| 64 | .8032 |
| 65 | .7960 |
| 66 | .7889 |
| 67 | .7819 |
| 68 | .7749 |
| 69 | .7680 |
| 70 | .7611 |

A.  <u>100% Joint and Survivor Life Annuity</u>.  If the member and th
joint annuitant are not the same age, the factor will be
increased (decreased) by 0.006 for each year that the joint
annuitant is older (younger) than the Member with an upper
limit on the factor of 0.99.

B.  <u>Other Than 100% Joint and Survivor Life Annuity</u>.  The facto:
for an optional form of benefit other than a 100% Joint and
Survivor Annuity is calculated from the adjusted 100% Joint
and Survivor Annuity under the following formula, with the
result rounded to four decimal places.

Factor = F/(Z + [(1-Z) x F])

F =  adjusted 100% Joint and Survivor Life Annuity factor

Z =  Percentage of reduced benefit payable to the joint
annuitant (e.g., 50% equals 0.5, 66-2/3% equals
0.666667, etc.)

CBPJPMC00000723

# APPENDIX IV

Special Effective Dates for Tax Reform Act of 1986 Provisions

4.1    Tax Reform Act of 1986 Provisions.

(a)    Section 1.39: "Employee".  Effective January 1, 1987, Employee shall include any person who is a leased employee within the meaning of Section 414(n)(2) of the Code (other than a leased employee described in Section 414(n)(5) of the Code).

(b)    Section 1.79: "Salary".  Effective January 1, 1989, Salary shall not include any amount in excess of $200,000 as adjusted for cost of living in accordance with Section 415(d) of the Code. Effective January 1, 1989, the family aggregation rules of Section 414(q)(6), as modified by Section 401(a)(17) of the Code, shall apply when determining the Salary of an employee.

(c)    Section 2.1: "Eligible Employee."  Effective January 1, 1987, Eligible Employee shall not include any person who is a leased employee within the meaning of Section 414(n) of the Code.

(d)    Section 3.1(h): Years of Service.  Section 3.1(i) regarding leased employees is effective January 1, 1987.

(e)    Article IV and Former Article V: Protected Benefits.  Effective January 1, 1989, (1) accrued benefits, (2) optional forms of benefit, and (3) early retirement benefits or a retirement-type subsidy may not be subject to employer discretion, reduced, or eliminated.

(f)    Former Section 5.5: Frozen Integrated Plan Formula.  The integrated normal retirement benefit under the MHT Plan equal to: 2% of final average salary for each of the first 20 years of benefit service, plus 1% of final average salary for each additional year of benefit service up to a maximum of 40 years of benefit service, reduced by .4% of covered compensation for each year of benefit service up to a maximum of 35 years of benefit service, and further reduced by the actuarial equivalent of the normal form of the participant's benefit provided by the vested portion of his flexible retirement allocations, is effective January 1, 1989 through December 31, 1993 based on definitions of covered compensation, final average

App-21

CBPJPMC00000724

salary, social security retirement age, and cumulative disparity that comply with Code Section 401(a)(5) and 414(l) effective January 1, 1989.

(g)    <u>Section 6: Vesting</u>.  Section 6.1(a) regarding the five year cliff vesting schedule is effective January 1, 1989.

(h)    <u>Section 8.4: Latest Permissible Distribution Dates</u>.  Section 8.4 regarding the distribution rules under Section 401(a)(9) of the Code is effective January 1, 1989 or such other date expressly set forth in Section 8.4.

(i)    <u>Sections 1.3 and 1.4 of Appendix I: Reductions on Account of Years of Service or Early or Late Retirement</u>.  Effective January 1, 1987, the defined benefit limits imposed by Code Section 415 are adjusted on account of (i) having fewer than ten years of participation or service as set forth in Section 1.3 of Appendix I and (ii) early or late commencement of benefits as set forth in Section 1.4 of Appendix I.

(j)    <u>Section 1.8(b) of Appendix I: Defined Contribution Fraction</u>.  The inclusion of employee contributions and certain amounts allocated for medical benefits in determining the defined contribution fraction in Section 1.8(a)(2) of Appendix I for purposes of Section 415 of the Code is effective January 1, 1987.

(k)    <u>Section 4 of Appendix III</u>.  The deletion of the requirement that benefits be based on compensation that does not exceed $200,000 during years that the plan is top-heavy is effective January 1, 1989.  The provision that a participant who has three years of service be permitted to continue to vest under the top-heavy vesting schedule is effective January 1, 1989.

CBPJPMC00000725

# APPENDIX VI
## Section 401(a)(17) Limitation

6.1    Purpose.    This Appendix is intended to satisfy the requirements of Section 401(a)(17) of the Code and regulations promulgated thereunder with respect to the computation of the Accrued Benefits of Participants under the Plan whose benefits are impacted by the annual compensation limit set forth in Section 401(a)(17) of the Code.

6.2    Benefits Accrued After January 1, 1994.    Effective for all benefits accrued on or after January 1, 1994, "Salary" shall not exceed the limitation set forth in Section 401(a)(17) (as amended by Omnibus Budget Reconciliation Act of 1993), as adjusted by the Commissioner of Internal Revenue, for increases in the cost of living in accordance with Section 401(a)(17) of the Code ("Applicable Limit").    Such adjustment in effect for a calendar year applies to a period not exceeding 12 months, over which Salary is determined beginning in such calendar year.    If such period consists of fewer than 12 months, the Section 401(a)(17) limit will be multiplied by a fraction, the numerator of which is the number of pay periods in the period, and denominator of which is the total number of pay periods.

6.3    Article IV Benefits Accrued Prior to January 1, 1994 Under this Plan or the MHT Plan.

(a)    Division of Account.    The Credit Balance of a Participant as of December 31, 1993 shall consists of two amounts.    The first amount shall be determined by calculating the benefit (including the benefit under the Prior Plan) under Article IV by taking into consideration Salary, not in excess of the Applicable Limit, for all Periods of Service (which are applicable to the Participant under Article IV) and adding thereto Interest and Transition Credits, as applicable ("401(a)(17) Balance").    The remaining amount shall be the excess of the Account Balance as of December 31, 1993 over the amount determined pursuant to the proceeding sentence ("Excess 401(a)(17) Balance").

(b)    Interest and Transitions.    Interest and Transition Credits shall continue to apply to the 401(a)(17) Balance for calendar years after December 31, 1993.    Interest Credits, without considering any amendments made after December 31, 1993, shall apply to the Excess 401(a)(17) Balance for calendar years after December 31, 1993.

CBPJPMC00000726

6.4    <u>Extended Wear Away</u>. The Accrued Benefit of a 401(a)(17) Participant shall be the greater of:

(a)    the sum of the (i) portion of the Accrued Benefit determined under the benefit formula set forth in Article V as applied to the Participant's total Period of Service (and Years of Benefits Service under the MHT Plan) and Salary not in excess of the Applicable Limit and (ii) portion of Accrued Benefit determined under the benefit formula set forth in Article IV as applied to the Participant's total Period of Service and Salary not in excess of the Applicable Limit including the 401(a)17 Balance plus future accruals under Article IV.

(b)    the sum of:

(x)    the sum of the (i) portion of the Accrued Benefit under Article V as of December 31, 1993 and (ii) the portion of the Accrued Benefit under Article IV as of December 31, 1993 (including the Excess 401(a)(17) Balance and the 401(a)(17) Balance). (Both (i) and are (ii) frozen in accordance with Regulations §1.401(a)(4)-13 which includes the adjustment as described in Section 6.3(b) above.); and

(y)    the Accrued Benefit determined under Articles IV and V commencing as of January 1, 1994, as applied to the Participant's Period of Service after January 1, 1994 and Salary not in excess of the Applicable Limit.

To the extent that benefits are accrued after December 31, 1996 under Article IV, the above formula shall be appropriately adjusted.

A 401(a)(17) Participant means a Participant whose Accrued Benefit as of a date on or after January 1, 1994 is based upon Salary prior to such date that exceeded $150,000.

**6.5    Chase Plan.** Benefits accrued under the Chase Plan prior to its merger with this Plan shall be calculated in accordance with the methodology used by the Chase Plan with respect to Section 401(a)(17).    Effective January 1, 1997, the extended wear away formula of Section 6.4 shall be applicable to such accrued benefit except that December 31, 1996 shall be substituted for December 31, 1993.

CBPJPMC00000727

# APPENDIX VII

### Transaction After January 1, 1993

This Appendix describes certain transaction which impacts the calculation of service and vesting under this Plan.

7.1    **Acquisition of Ameritrust.**  With respect to an individual who was employed by Ameritrust Texas Corporation, Ameritrust Texas Financial Corporation, or Ameritrust Texas National Association, on September 15, 1993 and who became an Eligible Employee on September 16, 1993, such individual's Period of Service will include service with Ameritrust (which service would have been recognized under Section 3.1 had such service been with an Employer) solely for purposes of:

(i)    participation in the Plan as provided in Article II, and

(ii)    vesting in the Plan as provided in Article VI.

By way of clarification (Accruing Factors), such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Ameritrust, nor shall Salary include any compensation earned from Ameritrust.

7.2    **Cullen/Frost.**    With respect to an individual who was employed by Cullen/Frost, Bank of Dallas, N.A., on April 14, 1994 and who became an Eligible Employee on April 15, 1994, such individual's Period of Service will include service with Cullen Frost (which service would have been recognized under Section 3.1 had such service been an Employer) solely for purposes of:

(i)    participation in the Plan as provided in Article II, and

(ii)    vesting in the Plan as provided in Article VI.

CBPJPMC00000728

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement and Articles IV and V and IX shall not include any Periods of Service with Cullen Frost, nor shall Salary include any compensation earned from Cullen Frost.

    7.3   <u>Liberty Securities Corporation</u>.  With respect to an individual who was employed by Liberty Securities Corporation on July 31, 1994 and who become an Eligible Employees as of August 1, 1994 by reason of his/her employment with Chemical Investment Service Corp., such individual's Period of Service will include service with Liberty Securities Corporation (which service would have been recognized under Section 3.1 had service been an Employer) solely for purposes of:

        (i)      participation in the Plan as provide in Article II, and

        (ii)     vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Liberty Securities Corporation, nor shall Salary include any compensation earned from Liberty Securities Corporation.

    "7.4     <u>Sale of BankLink, Inc</u>.  Any individual who (i) is employed by BankLink, Inc. on March 7, 1995, (ii) is a Participant, and (iii) has a Period of Service of 4 years or more on such date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.  In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

    "7.5     <u>Formation of Chemical Mellon Shareholder Services</u>.  Any Participant, who is transferred to and is employed by Chemical Mellon Shareholder Services ("CMS") on April 30, 1995, May 31, 1995 or July 31, 1995 and who had a Period of Service of 4 years or more on the applicable date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.  In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit".

CBPJPMC00000729

"7.6    **Sale of Chemical New Jersey Holding, Inc.**  Any Participant who (i) is employed by Chemical New Jersey Holdings, Inc., or one of its subsidiaries ("CONJ.") on June 30, 1995 and (ii) has a Period of Service of 4 years or more on (a) October 6, 1995, and whose employment with CONJ. involuntarily terminates on or after such date as a direct result of the sale of CONJ. to PAC Bank Corp. ("Sale") or (b) the date of such Sale and whose employment with CONJ. or its successor continues after the Sale, shall be treated, as of the date of Sale or involuntary termination of employment, as applicable, for all purposes of the Plan as if such individual had incurred an Eligible Termination.  In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant after the date of Sale or involuntary termination of employment, as applicable, who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.  This Section has no application to any former Employee of CONJ. who is employed by an Affiliated Company either prior to or following the Sale, unless such Employee's employment is scheduled to terminate as a result of the Sale.  Notwithstanding anything to the contrary, this provision shall have no application, unless the Sale is consummated.

7.7    **Sale of Assets to Heritage Bank.**  Any Participant (i) who is employed by Texas Commerce Bank at its Liberty branch as of January 18, 1995, (ii) whose employment is terminated with Texas Commerce Bank as a result of the sale of such branch to Heritage Bank on January 19, 1995, (iii) who has a Period of Service of 4 years or more on January 18, 1995 and (iv) is employed by Heritage Bank as of January 19, 1995, shall be treated for all purposes of this Plan as if such Participant had incurred an Eligible Termination. In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

App-27

CBPJPMC00000730

7.8.        <u>Sale Assets to Cash Flex</u>.  Any Participant (i) who is employed by Texas Commerce Bank in Dallas lock box operation on September 18, 1995, (ii) whose employment with Texas Commerce Bank is terminated as a result of the sale of such assets to Cash Flex on September 19, 1995, (iii) who has a Period of Service of 4 years or more on September 18, 1995 and (iv) is employed by Cash Flex as of September 19, 1995, shall be treated for all purposes of this Plan as if such Participant had incurred an Eligible Termination. In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

CBPJPMC00000731

## APPENDIX VIII

### Chase Manhattan Mortgage Corporation
### Chemical Residential Mortgage Employees

The following provisions applied to employees of Chemical Residential Mortgage Corporation ("CRMCo") on January 1, 1996. To the extent not otherwise addressed in this Appendix, all other terms and conditions of the Plan apply to individuals employed by CRMCo as an Eligible Employee.

CRMCo merged with Chase Manhattan Mortgage Corporation. The terms and conditions of this Plan and this Appendix continued to apply to those individuals who were participating in this Plan prior to such merger or became participants thereafter.

This Appendix is not applicable to Employees of Chase Manhattan Mortgage Corporation not described in the preceding paragraph and who continued to participate (or became eligible to participate) in the Chase Plan prior to this merger with this Plan. This Appendix has no application to those individuals, except for paragraph 8.5 below, which is applicable to all Eligible Employees of Chase Manhattan Mortgage Corporation on or after January 1, 1997.

8.1    Effective January 1, 1996, CRMCo was a Participating Company under the Plan only with respect to the benefit described in Article IV of the Plan — Credit Balance Benefits. Any Participant who was an Employee of CRMCo on or after January 1, 1996 did not accrue any benefit of the plan under Article V of the Plan as then in effect. In addition, in the event of a transfer of such Participant to, or his/her re-employment by, a Participating Company (other than CRMCo), Periods of Service with CRMCo was not included for purposes of calculating any accrued benefit under Article V of the Plan as then in effect; provided that such Period of Service with CRMCo (but not with Margaretten Financial Corporation prior to its acquisition by the Corporation) shall be included for purposes of

CBPJPMC00000732

determining Early Retirement eligibility. Rules for recognition of service with Margaretten Financial Corporation shall be as set forth in paragraph 8.7 below.

8.2    Each individual who (i) was employed as an Eligible Employee by CRMCo on January 1, 1996 and (ii) was covered by, or eligible for, the benefit plans established by Margaretten Financial Corporation as of December 31, 1995, was be eligible to participate in the Plan as of the later of January 1, 1996 or the first day of the month coincident with, or next following, a Period of Service of one year, under the 3%, 4%, 5% or 6% Salary Credit schedule of Section 4.3 of the Plan as then in effect. Employees of CRMCo participating in the Plan as of December 31, 1995 continued to receive Salary Credits at the 4% rate for Periods of Service between one and ten years.

8.3    As of December 31, 1995, in lieu of any benefit payable under former Article V, each Participant who is employed by CRMCo on such date and had accrued a Final Salary Benefit was be credited with an additional credit balance equal to his "Final Salary Credit." The Final Salary Credit is the lump sum present value of such Participant's benefit under former Section 5.1 of the Plan as of December 31, 1995 (or if greater, the benefit set forth in former Section 5.5 of the Plan), as then in effect subject to the assumptions as set forth below:

(A)    the interest discount rate based on 30-year Treasury securities for the month of November 1995 is used;

(B)    for those Participants who are age 60 or older as of December 31, 1995, the Final Salary Benefit is assumed to be immediately payable without actuarial reduction for commencement prior to age 65;

(C)    for those Participants who have not attained age 60 as of December 31, 1995, the Final Salary Benefit is assumed to be payable as of age 60 without actuarial reduction for commencement prior to age 65;

App-30

(D)    GA-83 Mortality Table (50% Male/50% Female) is used;

(E)    Final Average Salary and Period of Service are fixed as of December 31, 1995 in the case of a benefit under Section 5.1 (and in the case of a benefit under Section 5.5, Final Average Salary, Period of Service and Years of Benefit Service are fixed as of December 31, 1992) or such earlier date as may be relevant; and

(F)    if applicable, the Flexible Retirement Account shall be valued as of December 31, 1995.

The Final Salary Credit described above is not intended to be the accrued benefit under former Article V of any Participant who was employed by CRMCo on December 31, 1995.

8.4    Notwithstanding anything in the Plan to the contrary, the aggregate Credit Balance as of December 31, 1995 of a Participant who is employed by CRMCo on January 1, 1996, whether derived from a Prior Service Balance, the Final Salary Credit or Salary Credits, will receive Transition Credits rather than Interest Credits commencing with respect to credits to be made after January 1, 1996. Such Transition Credits shall end on the day immediately preceding one of the events set forth in Section 4.2 of the Plan.

8.5    For purposes of Pay Credits under Article IV, Eligible Compensation for any Participant employed by Chase Manhattan Corporation, effective January 1, 1997 (or previously CRMCo on or after January 1, 1996 with respect to Salary Credits) and who receives draw, commissions in excess of draw, or production overrides on or after that date for any calendar year shall be the sum of base salary and 50% of the lesser of (i) the sum of such draw, commission in excess of draw or production overrides (including deferred amounts) or

App-31

CBPJPMC00000734

(ii) the amount specified in Section 401(a)(17) of the Code.  The limitation set forth in (ii) shall be applied on cumulative basis.

8.6    As of any Date of Distribution, the Plan shall determine the greater of the Accrued Benefit (including Final Salary Benefit and Credit Balance) fixed and earned as of December 31, 1995 (or such earlier date if applicable) and shall compare such amount to the Accrued Benefit (including Final Salary Benefit and Credit Balance) under the Plan as of the Date of Distribution and shall distribute the greater amount to the Participant.  In making such comparison, the Credit Balances of the Participants as of the relevant dates shall be converted to annuities utilizing the rules set forth in Appendix V.

8.7    Service with Margaretten Financial Corporation and its Affiliated Companies prior to its acquisition by an Employer is recognized for vesting and eligibility only and only if the individual was employed on January 1, 1996 by CRMCo.  Such service was not recognized for purposes of Article V of the Plan, as then in effect.

CBPJPMC00000735

## APPENDIX IX

### Section 411(d)(6)(A) Rules

This Appendix is designed to insure that the Plan complies with Section 411(d)(6)(A) of the Code. The rules set forth below apply to individuals who were participants accruing a benefit under this Plan or the Chase Plan on December 31, 1996 and who accrued a benefit under this Plan.

I.    When the Credit Balance specified in this Plan becomes payable, it shall be compared to the applicable Frozen Minimum Benefit. The Participant shall be entitled to receive the greater of the two amounts in any form permitted by this Plan.

II.    **Frozen Minimum Benefit** means:

(i)    with respect to the Chase Plan, the annuity benefit described in Section 7.1 and Section 7.11 of the Chase Plan, which annuity benefit was frozen as of December 31, 1988 under the Chase Plan and balance of the Account described in Section 7A.1 of the Chase Plan which was frozen as of December 31, 1996 (or if greater than the account, the annuity described in Section 7.2A of the Chase Plan); or

(ii)    with respect to the Plan, the Final Salary Benefit (if any) described in former Section 5.1 of the Plan (or if greater, the previously frozen benefit described in Section 5.5 (reduced by the value of the Flexible Retirement Account as of July 31, 1996) frozen as of the December 31, 1996 (including the Period of Service and Final Average Salary as of December 31, 1996) plus the sum of Salary-Based and Prior Service Balances which were frozen as of December 31, 1996 (or if greater than the entire benefit under the Plan, the December 31, 1990 annuity benefit with respect to the Retirement Plan of Chemical Bank and Certain Affiliate adjusted if applicable by the benefits set forth in Section 7.1).

For sake of clarification while Salary-Based and Prior Services were frozen, they continued to be credited with Interest Credits under the terms of the Plan.

CBPJPMC00000736

III.    Rules of Application.

1.    The Credit Balance, as of the relevant determination date, is compared to the sum of II(i) and II(ii), if applicable, to determine the greater benefit.

2.    In comparing the Credit Balance to any Frozen Minimum Benefit payable as an annuity, the Credit Balance shall be converted to a single life annuity. For purposes of such conversion, the interest rate factor shall be as specified in Section 4.5 and other factors as specified by the Appendix V. The Frozen Minimum Benefit shall be calculated as a single life annuity utilizing the factors set forth in the applicable plan; and the early retirement factors, if any, as set forth in the applicable plan shall be used.

3.    In comparing the Credit Balance to any Frozen Minimum Benefit payable in the form of a cash balance, credit balance or balance to an account, the applicable Frozen Minimum Benefit shall be deemed to have received Interest Credits at the Interest Rate solely attributable to the formula set forth in this Plan without the additional 1 percent rate of interest, applicable to any Plan Year.

4.    In comparing the Credit Balance to any Frozen Minimum payable in the form of an annuity and a cash balance credit balance or Account balance, the Credit Balance shall be converted into a single life annuity as specified in 2 above. The portion of the Frozen Minimum Benefit payable as a cash balance, credit balance or Account balance shall also be converted into a single life annuity after first being adjusted for Interest Credits specified in 3 above.

IV.    Calculations for Participants Not Described Above.

1.    In the event that individual had a Severance Date prior to January 1, 1997 and is not reemployed, the terms of this Plan, Chase Plan or Prior Plan, shall continue to apply to the determination of the greater benefit provided that the Interest Rate specified in Section 4.5 shall be applicable at the time of relevant determination and that GA-83 Mortality (50% Male/50% Female) Table shall be used.

App-34

CBPJPMC00000737

APPENDIX X

Final Salary Benefit Provisions

This Appendix X contains for convenience, the material provisions of the Plan that as of December 31, 1996 applied to the Final Salary Benefit. It is not intended to be all inclusive. Effective December 31, 1996, there were no further accruals under the Plan with respect to the Final Salary Benefit. Additionally, certain sections have been amended for purposes of clarification.

## ARTICLE I

"Final Average Salary" means as of any determination date, the average annual Salary received by an Eligible Employee from an Employer during a Period of Service consisting of any 60 consecutive month period within a 120 consecutive month period immediately preceding a Severance Date which will produce the highest annual average salary. If a Participant has a Period of Service of less than five years, such individual's Final Average Salary will be the average monthly Salary received during such Period of Service, multiplied by twelve. (In the case of a Participant who is entitled to benefits under a long-term disability plan or program of an Employer, Final Average Salary means the annual Salary received by an Eligible Employee immediately preceding the onset of the disability.) If the Final Average Salary is being determined by reason of again becoming a Participant following any termination of status as an Eligible Employee, the months prior to the occurrence of such event and the months after such individual again becomes a Participant shall be deemed to be consecutive (but the intervening months shall not be taken into account). In addition, the months preceding an Authorized Absence without pay and the months following a return to work shall be deemed to be consecutive for the purposes of this Section (but the intervening months shall not be taken into account). Notwithstanding the foregoing, Final Average Salary shall be fixed and frozen as December 31, 1996 with respect to the benefit set forth in Article V (other than Section 5.5 where such amounts were frozen as of December 31, 1992).

\* \* \*

"Spouse" shall mean for purposes of the Final Salary Benefit, the person: legally married to the Participant throughout the one year period ending on the Participant's (i) date of death, or if earlier, (ii) Annuity Starting Date, provided that the Participant's spouse who has

App-35

CBPJPMC00000738

been married for less than a year on the Annuity Starting Date shall become a Surviving Spouse if such spouse is married to the Participant throughout the one year period ending on the Participant's date of death, and in each case, such spouse survives the Participant.

Notwithstanding any of the foregoing, a former spouse shall be treated as a Surviving Spouse to the extent provided under a qualified domestic relations order as described in Code Section 414(p).

"Period of Services" means . . . Solely for purposes of Section 5.1(a)(ii), as in effect immediately prior to January 1, 1997 a Period of Service means any period commencing after December 31, 1992 (or if later the date that an individual becomes a Participant) and before December 31, 1996 during which an employment relationship exists between an Eligible Employee and an Employer.

## ARTICLE III
### Period of Service

(f)     For purposes of calculating the Final Salary Benefit in Section 5.1(a)(ii), Periods of Service means any periods of service commencing on the later of (1) January 1; 1993 or (2) the date an Eligible Employee becomes a Participant (or again becomes a Participant, whichever is applicable) pursuant to Section 2.2 and ending, with the earlier of, (1) the Participant's Severance Date, (2) the date ceases to be an Eligible Employee or (3) December 31, 1996.

(g)     Solely for purposes of calculating a Final Salary Benefit under Section 5.1, service during a calendar month in which a Participant incurs a final Severance Date, or is no longer an Eligible Employee shall be deemed as a whole month.

Effective for Periods of Service with an Employer prior to January 1, 1997, notwithstanding (ii) above, a Period of Service will include for purposes of former Section

CBPJPMC00000739

5.1(b), as in effect immediately prior to January 1, 1997, any Years of Benefit Service if employed by a Participating Company under the MHT Plan before January 1, 1983 and if a Break in Service is incurred prior to January 1, 1988; provided that the Employee is reemployed after January 1, 1988 and before January 1, 1997 as an Eligible Employee and does not incur a Break in Service prior to the expiration of a Period of Service of one year or more.

CBPJPMC00000740

FORMER ARTICLE V

Final Salary Benefit

Notwithstanding any thing in Article V to the contrary, effective December 31, 1996, there shall be no further accruals under this Article V. The benefit under Article V shall become a frozen minimum benefit for those individuals who had accrued a Final Salary Benefit and who are accruing a benefit under Article IV, as of January 1, 1997.

5.1    Final Salary Benefit

(a)    The Final Salary Benefit of a Participant who is vested in his/her Accrued Benefit shall be a single life annuity, payable in equal monthly installments starting on his/her Normal Retirement Date in an annual amount equal to the product of:

(i)    one percent of Final Average Salary, and

(ii)    the Periods of Service after December 31, 1992 during which such Periods of Service, the Participant was both an Eligible Employee and a Participant, determined in accordance with Article III, and expressed in whole year periods and whole month periods (if any).

(b)    The Final Salary Benefit of a Participant who had a accrued benefit under the MHT Plan prior to its merger into this Plan which was not in pay status as of December 31, 1992, who was an Eligible Employee on January 1, 1993 and who is vested in his/her Accrued Benefit shall include the following annual amount (in addition to the annual amount described in paragraph (a) above)

App-38

CBPJPMC00000741

which shall be a single life annuity, payable in equal monthly installments starting on his/her Normal Retirement Date in an annual amount equal to the sum of:

(i)     the product of (A) 1.25 percent of Final Average Salary and (B) Years of Benefit Service under the MHT Plan through December 31, 1992 but not in excess of 20 years, and

(ii)    the product of (A) .75 percent of Final Average Salary and (B) Years of Benefit Service under the MHT Plan through December 31, 1992 in excess of 20 years (but not more than 40 years).

Years of Benefit Service shall have the meaning set forth in the MHT Plan. Final Average Salary shall include Salary earned after December 31, 1992. By way of clarification, with respect to the Participants described above, the benefit described in Section 5.1 is in lieu of the benefit accrued under the MHT Plans.

(c)     Accruals under this Section 5.1 continue for each Participant who continues to be an Eligible Employee after attaining Normal Retirement Age. A Participant who remains employed beyond his/her Normal Retirement Age may elect to retire and start receiving his/her Final Salary Benefit on the first day of any month after terminating employment as an Employee.

CBPJPMC00000742

5.2    <u>Payments Prior to Age 65</u>

(a)    A Participant, who retires on his/her Early Retirement Date from the employ of an Employer, may elect to have payments of his/her vested Final Salary Benefit commence as of the first day of any month after attaining age 55 subject to the following:

(i)    The Final Salary Benefit as determined under Section 5.1 is payable without reduction (x) if the Annuity Starting Date is the first day of the month after a Participant attains age 60 <u>and</u> (y) if the Participant has on his/her Severance Date (1) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years and (2) attained at least age 55;

(ii)    The Final Salary Benefit as determined under Section 5.1 is payable with a reduction of .5 percent for each month by which the Annuity Starting Date precedes the first day of the month after the Participant attains age 60 if the Participant has on his/her Severance Date (x) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years and (y) attained at least age 55, and

(b)    A Participant described in either Section 9.5(b) or (c) may elect to have the payment of Final Salary Benefit commence as of (x) the first day of any month after attaining age 54 and before attaining age 60 subject to the reduction factor

App-40

CBPJPMC00000743

specified in Section 5.2(a)(ii), or (y) the first day of any month after attaining age 60 without reduction as specified in Section 5.2(a)(i).

(c)    A Participant may elect to have payment of his/her vested Final Salary Benefit as determined under Section 5.1 commence as of the first day of any month after attaining age 55, subject to a reduction of .625 percent for each month by which the Annuity Starting Date precedes the Participant's Normal Retirement Date if the Participant has on his/her Severance Date (x) a total Period of Service of at least 10 years (including service prior to the Effective Date) and (y) not attained age 55.

## 5.3    MHT Eligible Retirees

(a)    This Section 5.3 applies to each (i) MHT Eligible Retiree and (ii) Participant in the MHT Plan who (A) incurred an Eligible Termination on or after July 15, 1991 and before June 30, 1992, as a result of a merger related downsizing due to the merger of the Corporation and Manufacturers Hanover Corporation and of certain of their subsidiaries and who received a lump sum severance payment from his Employer, and (B) would have satisfied the age and service requirements to be an Eligible Retiree, but for such prior Eligible Termination (a "Retroactive Eligible Retiree").

(b)    Notwithstanding Section 9.5, an MHT Eligible Retiree who has not attained age 54, may nonetheless elect to terminate his/her employment as an Employee on or after attaining age 50 and start receiving his/her Final Salary Benefit on the first day of any month thereafter.  Such Final Salary Benefit is reduced by .5

CBPJPMC00000744

percent for each month by which the Annuity Starting Date precedes the first day of the month after the date such individual would attain age 60.

(c)    An MHT Eligible Retiree who has completed a Period of Service of at least 11 years, but less than 20 years as of his/her actual Severance Date, shall be (i) credited with an additional six month Period of Service for purposes of benefit accrual under Section 5.1, and (ii) treated as if the benefit commenced six months later than the actual date of commencement for purposes of the actuarial reductions specified in Section 5.3 (b) above, or Section 5.2 above, as the case may be.

(d)    An MHT Eligible Retiree who has completed a Period of Service of at least 20 years, shall be (i) credited with an additional Period of Service of one year for purposes of benefit accrual under Section 5.1, and (ii) treated as if the benefit commenced twelve months later than the actual date of commencement for purposes of the actuarial reductions specified in Section 5.3 (b) above, or Section 5.2 above, as the case may be.

(e)    An MHT Eligible Retiree shall be entitled to an increase in his/her monthly benefit under the Final Salary Benefit in an amount equal to ten percent of the monthly amount payable to a MHT Eligible Retiree after (i) the Final Salary Benefit has been adjusted to reflect the commencement date (including any additional Periods of Service or actuarial adjustments, if any, under this Section 5.3), and (ii) the Final Salary Benefit has been converted into the form of benefit elected by the Participant under Article 8 of the Plan.

CBPJPMC00000745

(f)     A Retroactive Eligible Retiree who commenced receiving benefits under the MHT Plan prior to July 1, 1992 shall be entitled to an increase in his/her monthly benefit payable under the MHT Plan in an amount equal to ten percent of the monthly amount being paid to such individual, commencing July 1, 1992. A Retroactive Eligible Retiree who retired or otherwise incurred an Eligible Termination on or prior to June 30, 1992, but elected to defer commencement of his/her benefits under the MHT Plan, shall be entitled to a ten percent increase in his/her monthly benefit under the MHT Plan in the same manner as a MHT Eligible Retiree described above in paragraph (e).

(g)     Benefits payable to a (i) Surviving Spouse of an MHT Eligible Retiree or Retroactive Eligible Retiree under (A) the Joint and 50% Survivor (Spouse) Annuity or the Joint and Survivor Benefit under this Plan, or (B) the MHT Plan QJSA benefit, the additional joint and survivor benefit or the post-retirement survivor benefit (each as described in the MHT Plan) or (ii) Beneficiary under the Joint and Survivor Benefit, each shall be calculated as a percentage of the monthly amount actually received by the deceased Eligible Retiree (or Retroactive Eligible Retiree) after all benefit increases and actuarial adjustments under this Section 5.3, if any, have been applied to the deceased's benefit. This shall also apply to a deferred benefit commencement date.

(h)     The survivor benefit payable to the Surviving Spouse of a Participant who would have been an Eligible Retiree but for the fact the he/she died:

(i)     prior to July 1, 1992, under the MHT Plan QPSA shall be based on the MHT Plan QJSA that would have been payable to the deceased,

App-43

excluding the benefit increases and actuarial adjustments provided under this Section 5.3, or

(ii)    on or after July 1, 1992, but prior to the date specified by his/her Employer, under the MHT Plan QPSA shall be based on the MHT Plan QJSA that would have been payable to the deceased, after including all benefit increases and actuarial adjustments provided under this Section 5.3.

**5.4    Chemical Residential Mortgage Company**

Solely for the purpose of calculating the Period of Service as a Participant under Section 5.1(a)(ii), an Eligible Employee who was employed by Chemical Residential Mortgage Company on January 1, 1993 and who did not participate in the Prior Plan or the MHT Plan on such date shall be deemed to be a Participant in this Plan from the date that such individual would have been eligible to participate in the MHT Plan had such MHT Plan been adopted by Chemical Residential Mortgage Company when it first became a member of the controlled group of corporations of which MHT was a member.  In applying the foregoing sentence, the reference to December 31, 1992 in Section 5.1(a)(ii) shall not be applicable.

CBPJPMC00000747

5.5    <u>Minimum Benefit</u>

Notwithstanding anything in this Article V to the contrary, a Participant with a vested Accrued Benefit who was a Participant in the MHT Plan on December 31, 1992 and who incurs a Severance Date after December 31, 1992 will receive the greater of the Final Salary Benefit as described in Section 5.1 or the minimum alternative benefit described below, if applicable. Such minimum alternative benefit is the maximum benefit accrued for such Participant under the MHT Plan up to December 31, 1992 (including actuarial adjustments and forms of payments, if any) without taking into account any additional Years of Service, Years of Benefit Service, Periods of Service, or increases in Final Average Salary after December 31, 1992. In calculating such minimum alternative benefit(s), the terms and conditions of the MHT Plan shall apply. If applicable under the relevant formula of the MHT Plan, the vested value of the Flexible Retirement Account maintained in name of the Participant under Savings Incentive Plan of Chemical Bank and Certain Affiliated Companies will be determined at the earlier of five months prior to such individual's Severance Date; <u>provided</u> that with respect to any individual who separated from service prior to May 31, 1993 and whose Annuity Starting Date for purpose of the Final Salary Benefit occurs on or before May 31, 1993, the value of the Flexible Retirement Account shall be determined as of December 31, 1992. In no event shall a Participant's minimum alternative benefit (computed without regard to the Flexible Retirement Account under the Savings Incentive Plan of Chemical Bank and Certain Affiliated Companies) on a Normal Retirement Date be less than the amount (computed without regard to the Flexible Retirement Account) the Participant could have received if he/she had retired on any date which could have been an Early Retirement Date.

App-45

CBPJPMC00000748

5.6    Disability and Military Leave

(a)    In the event of a short-term disability of a Participant, the Final Salary Benefit
will be based upon the Participant's Salary during the period of disability, and
will include the period of disability as a Period of Service if it constitutes an
Authorized Absence; provided that Salary shall not include any state disability
payments made after the date an Employer ceases the payment of Salary.

(b)    In the event of a long-term disability of a Participant who is entitled to benefits
under the Disability Plan after December 31, 1992, the Final Salary Benefit will
continue to be accrued during the period while disability benefits are received
from the Disability Plan; provided that for Authorized Leaves commencing on
or after January 1, 1995, the rate of accrual with respect to the Final Salary
Benefit for such Participants shall be 50 percent of the percentage set forth in
Section 5.1(a); provided, further, that such reduced rate of accrual shall
commence as of the first day of the month following the receipt of disability
benefits under the Disability Plan for a period of 18 months.  Such accrual will
continue until the earlier of:

(i)    the date of the Participant's return to active employment with an
Employer,

(ii)    his Severance Date, or

(iii)    the date that the Participant elects to receive any benefit provided
under this Plan, or

App-46

CBPJPMC00000749

(iv)    long term disability benefits cease under the Disability Plan.

(c)    In the event a Participant is credited with Service while on military leave pursuant to Article III, such individual will accrue additional benefits under the Final Salary Benefit for such Period of Service upon return to employment with the Employer within the period during which employment is guaranteed by law.

5.7    <u>Cost-of-Living Adjustments</u>

Cost-of-Living Adjustments that became payable under the Retirement Plan of Chemical Bank and Certain Affiliates (predecessor of the Prior Plan) and the MHT Plan before the Effective Date shall continue to be payable in accordance with the terms of each respective Plan.

5.8    <u>Supplements</u>

The provision of "supplements" described in Section 17.4 of the MHT Plan shall remain in effect in determining the rights and benefits of such former Participants.

5.9    <u>TCB Eligible Retiree and Others</u>.  In lieu of any other adjustment hereunder, a Participant who is a TCB Eligible Retiree or an individual described in Section 4.7(b) and who has not attained at least age 55 as of his/her Severance Date may elect to commence his/her Final Salary Benefit as of the first day of any month following his/her Severance Date and such Final Salary Benefit shall be reduced by 0.5% for each month by which the Date of Distribution precedes the first day of the month following age 60.  In addition, effective April

App-47

CBPJPMC00000750

1, 1996, a Participant who (i) has attained at least age 54 and has a continuous Period of Service with this or her Employer of at least 15 years, both as of his/her Severance Date and (ii) incurs an Eligible Termination between August 27, 1995 and December 32, 1996, may elect to commence his/her Final Salary Benefit as of the first date of any month following his/her Severance Date, and such Final Salary Benefit shall be reduced by 0.5% for each month by which the Date of Distribution precedes the first day of the month following age 60.

\* \* \*

## FORMER ARTICLE VIII

8.2    (a)    With respect to the Final Salary Benefit earned prior to December 31, 1996 and not included in the Credit Balance, the normal form for such Participant shall be the Joint and 50% Survivor (spouse) Annuity which shall be the Actuarial Equivalent of the single life annuity provided by the Adjusted Final Salary Benefit (using those factors set forth in Appendix V).

8.2    (b)    With respect to the Final Salary earned prior to December 31, 1996 and not included in the Credit Balance, the normal form shall be the single life annuity provided by the Participant's Adjusted Final Salary Benefit.

\* \* \*

App-48

CBPJPMC00000751

8.7    <u>Final Salary Benefit QPSA</u>

This Section shall not be effective after December 31, 1996 except with respect to individuals who incurred a Severance Date prior to January 1, 1997.

(a)    <u>QPSA for Surviving Spouse</u>.  Subject to the involuntary cash out rule in Section 8.10, if a Participant dies prior to his/her Annuity Starting Date, has a vested Final Salary Benefit and there is a Surviving Spouse, such Surviving Spouse shall be entitled to receive a QPSA with respect to his/her Final Salary Benefit ("Final Salary Benefit QPSA").  The Final Salary Benefit QPSA shall be a single life annuity that provides monthly payments during the Surviving Spouse's lifetime, and ends with the payment for the month in which such Surviving Spouse dies.  The Final Salary Benefit QPSA shall be payable in the following amounts.

(i)     If such Participant dies after he/she is eligible for an early retirement benefit under Section 9.5, the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had retired on day before the death, and payments had commenced on the first day of the month coincident with or following such death, and then died.

(ii)    If such Participant dies after he/she is eligible for a vested reduced benefit under Section 9.6(b), the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving

App-49

CBPJPMC00000752

Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had terminated employment on day before death (or if earlier, his/her Severance Date) survived to age 55, elected to receive a vested reduced benefit on the first day of the following month, and then died.

(iii)    If such Participant dies after he/she is eligible for a vested Final Salary Benefit, but does not have a Period of Service of at least 10 years, the Final Salary Benefit QPSA shall be the same annuity that would have been payable to the Surviving Spouse under the Joint and 50% Survivor (Spouse) Annuity, if the Participant had terminated employment on the day before death (or if earlier, his/her Severance Date) survived to age 65, commenced receiving benefits on his/her Normal Retirement Date, and then died.

(b)    QPSA Commencement Dates.    The earliest date that the Final Salary Benefit QPSA may commence is the later of:

(1)    the first day of the month following the date of the Participant's death, or as soon as practicable thereafter, and

(2)    the first day of the month on which such Participant would have been eligible for early retirement under Section 9.5 or to commence receiving reduced vested benefits under Section 9.6; or if such Participant was not eligible for benefits under Sections 9.5 or 9.6 at

CBPJPMC00000753