the time of death, the date that would have been such Participant's Normal Retirement Date;

and the latest date that the Final Salary Benefit QPSA shall commence is the date that would have been the Participant's Normal Retirement Date, provided, however, that such QPSA shall not commence without the Surviving Spouse's consent prior to the date the Participant would have reached his/her Normal Retirement Date.

(c)  No QPSA Waiver. The Final Salary Benefit QPSA may not be waived by a Participant.

(d)  No Surviving Spouse. If a Participant dies prior to his/her Annuity Starting Date and has a vested Final Salary Benefit but there is no Surviving Spouse, no benefit shall be payable from the Plan with respect to such Final Salary Benefit.

* * *

FORMER ARTICLE IX

9.3  Final Salary Benefit Normal Retirement Date

A Participant may elect to retire on his/her Normal Retirement Date by giving a Notice to the Administrator. Unless the Final Salary Benefit is part of the Credit Balance as of January 1, 1997, subject to Section 9.1(c), a Participant who gives proper notice and retires on his/her Normal Retirement Date shall commence receiving his/her vested Final Salary Benefit as of such Normal Retirement Date.

App-51

CBPJPMC00000754

### 9.4 Final Salary Benefit Deferred Retirement Date

Subject to Section 9.9 and Section 9.1(c), a Participant who remains employed beyond his/her Normal Retirement Date may elect to retire on the first day of any month thereafter by giving a Notice to the Administrator. Unless the Final Salary Benefit is part of the Credit Balance as of January 1, 1997, a Participant who retires on a deferred retirement date shall commence receiving his/her vested Final Salary Benefit as of such deferred retirement date.

### 9.5 Final Salary Benefit Early Retirement Dates

Unless the Final Salary Benefit is part of the Credit Balance as of January 1, 1997, subject to Section 9.1(c), a Participant may receive a benefit prior to his/her Normal Retirement Date and after incurring a Severance Date under the following circumstances:

(a) A Participant, who has as of his/her Severance Date (1) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years, and (2) attained at least age 55, may elect to retire and commence receiving the vested Adjusted Final Salary Benefit set forth in Section 5.2(a) on the first day of any month thereafter (an "Early Retirement Date") by giving a Notice to the Administrator.

(b) A Participant who has as of his/her Severance Date (i) completed a total Period of Service (including service prior to the Effective Date) of at least 10 years, (ii) attained at least age 54 and (iii) incurs an Eligible Termination, may elect to retire and commence receiving the vested Adjusted Final Salary Benefit set forth

App-52

in Section 5.2(b), on the first day of any month after attaining age 54 by giving Notice to the Administrator.

(c) A Participant who has as of his/her Severance Date (i) incurred a Disability QCC Termination and (ii) attained at least age 54 at the time of such Disability QCC Termination, may elect to receive the vested Adjusted Final Salary Benefit set forth in Section 5.2(b) on the first day of any month after attaining age 54 by giving Notice to Administrator.

(d) A Participant who terminates employment on or after an Early Retirement Date under this Section 9.5 may instead elect, by giving a Notice to the Administrator, to defer commencement of the payment of his/her Accrued Benefit until the first day of any month following such Early Retirement Date, but not later than his/her Normal Retirement Date. Such an election to defer may be revoked by Notice to the Administrator and a new election to receive benefits at an earlier date may be made. In no event shall a Participant be entitled to extend the date for receipt of his or her benefit once an election has been made.

9.6   **Final Salary Benefit Vested Deferred Benefits**

(a)   Unless the Final Salary Benefit is part of Credit Balance as of January 1, 1997, subject to Section 9.1(c), a Participant whose Severance Date occurs (i) prior to the time he/she is eligible to receive benefits under Section 9.3 or 9.5, and (ii) after he/she is vested under the Plan, shall commence receiving his/her Final Salary Benefit as of his/her Normal Retirement Date, unless he/she makes an election under paragraphs (b) of this Section 9.6.

(b)   A Participant who completes a total Period of Service (including service prior to the Effective Date) of at least 10 years, but has not attain age 55 prior to his/her Severance Date, may elect to receive the vested Adjusted Final Salary Benefit set forth in Section 5.2(c), starting on the first day of any month after attaining age 55, following proper Notice to the Administrator.

9.7   **Special Commencement Date for MHT Eligible Retirees**

Unless the Final Salary Benefit is part of the Credit Balance as of January 1, 1997, subject to Section 9.1(c), an MHT Eligible Retiree whose Severance Date occurs prior to the time he/she is eligible to receive benefits under Section 9.5 or 9.6, may nonetheless elect to commence receiving the vested Adjusted Final Salary Benefit described in Section 5.3(b) as of the first day of any month after attaining age 50 but not later than his/her Normal Retirement Date, following giving proper Notice to the Administrator.

CBPJPMC00000757

APPENDIX XI

Voluntary Retirement Programs under Chemical Plan

This Appendix contains Sections of the Plan prior to January 1, 1997, which were applicable to certain voluntary retirement programs.

1.20    "Chemical Eligible Retiree" means an individual who satisfied the definition of Eligible Retiree and was a participant in the Prior Plan on or before June 30, 1992.

1.35    "Eligible Retiree" means a Participant (a) who was actively at work on April 15, 1992 or who was on an Authorized Absence but returned to work by June 1, 1992, (b) who was not employed at the level of an Executive Vice President or above immediately prior to the merger of the Corporation and Manufacturers Hanover Corporation (in the case of Texas Commerce Bancshares, Inc. and its reporting subsidiaries and reporting affiliates, not employed as a Senior Vice President or above), (c) whose application to terminate employment voluntarily was received on or before June 1, 1992, was not timely rescinded by the Participant, and was accepted by his Employer, (d) who terminated employment as of the date specified by his Employer but in no event later than December 31, 1992 and (e) who would have had as of December 31, 1992:

   (i)     a Period of Service of at least 15 years and attained at least age 50, in the case of all Employers; or

   (ii)    a Period of Service of at least 11 years and attained at least age 54, in the case of all Employers (other than Texas Commerce Bancshares, Inc. and its reporting subsidiaries and reporting affiliates, and other than Chemical New Jersey Holdings and its reporting subsidiaries and its reporting affiliates); or

   (iii)   a Period of Service of at least 5 years and attained at least age 62, in the case of an individual employed by Texas Commerce Bancshares, Inc. and its reporting subsidiaries and its reporting affiliates.

CBPJPMC00000758

1.58    "MHT Eligible Retiree" means an individual who satisfied the definition of an Eligible Retiree and was a participant in the MHT Plan on or before June 30, 1992.

1.74    "Program" means a voluntary retirement program (expiring on June 10, 1992), allowing a Chemical Eligible Retiree or MHT Eligible Retiree to voluntarily terminate employment and receive an additional benefit hereunder.

1.82    "TCB Program" shall mean a voluntary retirement program (expiring on March 31, 1995), allowing a TCB Eligible Retiree to voluntarily terminate employment and receive the additional benefits described in Sections 4.7, 5.8 and 8.12.

1.85    "TCB Eligible Retiree" shall mean an active Eligible Employee (a) who is employed (i) by one of the subsidiaries of Texas Commerce Equities Holdings, Inc., or (ii) by Chemical Securities, Inc., and was formerly employed by Texas Commerce Bank National Association and is identified on the payroll system as an employee of Chemical Securities, Inc. (Texas), (b) who was actively employed on January 17, 1995 or who was on an approved leave of absence but scheduled to return to work by April 17, 1995, (c) whose application to voluntarily terminate employment under the TCB Program was received on or before March 6, 1995, was not timely rescinded by the Employee, and was accepted by his/her Employer, resulting in the payment of a severance benefit pursuant to the TCB Program, (d) who terminates employment as of the date specified by his/her Employer but in no event later than December 31, 1995 and (e) who would have had as of December 31, 1995 a Period of Service of a least 10 years and attained at least age 50. By way of clarification, the employees of the following subsidiaries of Texas Commerce Equities Holdings, Inc. are eligible for the Program:

>   Texas Commerce Bank National Association
>   Texas Commerce Bank - San Angelo, National Association
>   Texas Commerce Realty Advisors, Inc.
>   Texas Commerce Investment Management Company
>   Chemical Securities of Texas, Inc.
>   Texas Commerce Trust Company of New York

CBPJPMC00000759

4.6  **Eligible Retiree and Certain Others**

(a) Notwithstanding anything herein to the contrary, a Participant who was a Chemical Eligible Retiree will receive an additional benefit equal to 10 percent of the greater of (i) such Participant's Credit Balance as of the later of June 30, 1992 or Severance Date or (ii) such Participant's frozen accrued benefit as of the later of June 30, 1992 or the Severance Date. Such additional benefit will be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder. Such additional benefit will be subject to Interest Credits (or in the case of a frozen accrued benefits, actuarial adjustments) only from the later of July 1, 1992 or day following the Severance Date.

(b) A Participant in the Prior Plan (i) who incurred an Eligible Termination on or between July 15, 1991 and June 30, 1992, as a result of a merger related downsizing due to the merger of the Corporation and Manufacturers Hanover Corporation and of certain of their subsidiaries and who received a lump sum severance payment from his Employer, or (ii) whose inactive employment was specifically scheduled to terminate after July 1, 1992 as the result of the expiration of a paid Authorized Leave (unrelated to a short- or long-term disability) and who elected to terminate such leave status prior to its expiration, and who in either the case of (i) or (ii) would have satisfied the age and service requirements to be a Chemical Eligible Retiree but for such prior Eligible Termination or terminal paid Authorized Leave, will receive:

(A) with respect to annuity payments in pay status on or before July 1, 1992, an additional benefit equal to a 10 percent increase in each such annuity payment commencing with the first payment due on or after June 30, 1992;

(B) with respect to a lump sum distribution made prior to June 30, 1992, an additional benefit equal to 10 percent of such lump sum distribution payable as of June 30, 1992 to be paid as a lump sum; and

(C) with respect to a Credit Balance not in pay status as of June 30, 1992, a credit to such Account equal to 10 percent of the Credit Balance (or frozen accrued benefit, if greater) as of (x) the end of the third month following the Severance Date of a Participant if the employment of the Participant terminated prior to June 30, 1992; or (y) Severance Date if later than June 30, 1992; _provided_ that any such additional benefit described herein shall be subject to Interest Credits or actuarial adjustments only from the later of July 1, 1992 or the Severance Date; and _provided_ further that such additional benefit shall be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder.

(c) No additional benefit shall be payable under this Section, unless the Chemical Eligible Retiree (or Participant described in Section 4.6 (b)) (i) has executed a general release in a form prescribed by the Plan Administrator and which release is accepted in writing by the Plan Administrator, (ii) is not deceased as

App-58

of June 30, 1992 and (iii) terminates employment or terminates leave status under terms and conditions specified by his Employer on a date agreed to by his Employer.

4.7 <u>TCB Eligible Retiree and Certain Others</u>

(a) Notwithstanding anything herein to the contrary, a Participant who is a TCB Eligible Retiree shall receive an additional benefit equal to 10 percent of the greater of (i) such Participant's Credit Balance as of March 31, 1995 or (ii) such Participant's frozen accrued benefit under the former Retirement Plans of Texas Commerce Bancshares or of Chemical Bank. Such additional benefit shall be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder. Such additional benefit shall be subject to Interest Credits only from the later of April 1, 1995 or the day following his/her Severance Date. For these purposes, the frozen accrued benefit means the greater of accrued benefit under the Retirement Plan of Chemical Bank and Certain Affiliates of the TCB Eligible Retiree as the date of the merger of the Retirement Plans of Texas Commerce and Chemical Bank or the December 31, 1990 date of the introduction of the Prior Plan, adjusted for mortality factors and the appropriate interest as of March 31, 1995.

(b) A Participant (i) whose active employment terminated due to job elimination or retirement or who had applied to retire between September 28, 1994 and January 17, 1995, and whose Severance Date was prior to March 31, 1995, (ii)

App-59

CBPJPMC00000762

who would have been eligible to be treated as a TCB Eligible Retiree but for such prior termination of employment shall receive:

(A)   with respect to annuity payments in pay status on March 31, 1995, an additional benefit equal to a 10 percent increase in each such annuity payment commencing with the first payment due after March 31, 1995;

(B)   with respect to a lump sum distribution made prior to March 31, 1995, an additional benefit equal to 10 percent of such lump sum distribution which such additional benefit shall be distributed within a reasonable period following March 31, 1995 without interest;

(C)   with respect to a Credit Balance not in pay status as of March 31, 1995, a credit equal to 10 percent of the Credit Balance (or frozen accrued benefit, if greater in value) as of the Severance Date; <u>provided</u> that any such additional benefit described in subparagraph (c) shall be subject to Interest Credits only from April 1, 1995; and <u>provided, further</u>, that such additional benefit shall be payable as of the Date of Distribution in the same form as the Participant's other benefits hereunder.

(c)   No additional benefit shall be payable under this Section, unless the Eligible Retiree or Participant described in Section 4.7(b), (i) is not deceased as of

App-60

March 31, 1995 and (ii) terminates employment under terms and conditions specified by his Employer.

7.12  **TCB Eligible Retiree**.  Notwithstanding anything herein to the contrary but subject to spousal consent, a TCB Eligible Retiree or an individual described in Section 4.7(b) may elect to receive the actuarial equivalent of his/her Final Salary Benefit in the form of a lump sum.

# APPENDIX XII

## Hours of Service

12.1 <u>Affiliated Companies with Hourly Records</u>. (a) If an Eligible Employee is employed by an Affiliated Company that keeps its employment records for such Employer on the basis of hours, such Employee will be credited with Periods of Service for his or her employment with such Affiliated Company in accordance with this Appendix XII, unless the Administrator provides for the method set forth in Article III.

(b) If an Eligible Employee was previously employed on an hourly basis by an Affiliated Company, such Employee will be credited with Periods of Service for such previous employment with such Affiliated Company in accordance with this Appendix XII solely for purposes of determining eligibility to participate in the Plan. By way of clarification, after such Eligible Employee becomes eligible to participate in the Plan, the computation of his or her Periods of Service for all other purposes shall be governed by the provisions of Article III and V of the Plan.

12.2 <u>Years of Service</u>. A one year of Period Service shall mean each Plan Year in which the Employee has 1,000 hours of service (as defined below); <u>provided, however</u>, that solely for the purposes of determining eligibility to participate in the Plan, a one year Period of Service shall be credited on the earlier of:

(1) the last day of the twelve consecutive month period which begins on the first day on which the Employee has an hour of service, if he or she has at least 1,000 hours of service in that period,

(2) last day of the Plan Year which includes the first day on which the Employee has an hour of service if he or she has at least 1,000 hours of service in that Plan Year.

If an Employee fails to be credited with a one year Period of Service in either the twelve consecutive month period beginning on the first day on which the Employee has an Hour of Service or the Plan Year that includes the first day on which the Employee has an hour of service, he or she will be credited with a one year Period of Service on the last day of any succeeding Plan Year in which he or she has at least 1,000 hours of service.

12.3 Hours of Service. For purposes of this Section 12.3, an hour of service shall include:

(1) Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company for the performance of duties for such Affiliated Company. These hours shall be credited to the Employee for the period during which the duties are performed.

(2) Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. Not more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

(3) Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Affiliated Company. The same hours of service

App-63

will not be credited both under paragraph (1) or (2), as the case may be, and under this paragraph (3). These hours will be credited to the Employee for the one year Period of Service to which the award for agreement pertains rather than for the one year Period of Service in which the award, agreement or payment is made.

12.4 <u>One-Year Break in Service</u>. A One-Year Break in Service shall mean one or more consecutive Plan Years during which an Employee does not complete at least 501 hours of service. Solely for the purpose of determining whether a One-Year Break in Service has occurred, an Employee who is absent from work by virtue of (A) the Employee's pregnancy, (B) birth of the Employee's child, (C) placement of a child with the Employee by adoption, or (D) caring for any such child, shall be credited with the lesser of (i) the Hours of Service which would normally have been credited to the Employee but for such absence, or if the Plan is unable to determine such hours, 8 hours per day of such absence, or (ii) 501 hours; <u>provided</u>, that if such absence spans more than one Plan Year, such hours shall be credited in either the Plan Year in which such absence commenced (if the Employee would thereby be prevented from incurring a One-Year Break in Service) or the immediately following Plan Year.

App-64

CBPJPMC00000767

<u>**Appendix V**</u>

<u>**Actuarial Equivalence Factors for Optional Forms of Payment**</u>

For purposes of determining an Actuarial Equivalent benefit, the following interest rate and mortality basis applies unless stated otherwise in the Plan or this Appendix:

1. Interest rate used for discounting purposes equals the average 30-year Treasury rate in effect for the October preceding the year of determination

2. GA-83 Mortality Table [(50% Male/50% Female)]

1

CBPJPMC00000768

Appendix V

Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 40% J&S (Spouse) | 100% of the straight life annuity | Not available | 92% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 92% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). |
| 50% J&S (Spouse) | 97% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | 90% of the straight life annuity (adjusted up/down by .5% for each year that the Beneficiary is older/younger than the Participant). | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 90% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 50% J&S (Non Spouse) | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | Same as above | Same as above | See attached Table 1 | Same as above |
| 66 2/3% J&S | Not available | 87% of the straight life annuity (adjusted up/down by .6% for each year that Beneficiary is older/younger than the Participant). | Not available | See attached Table 1 | 87% of the straight life annuity (adjusted up/down by .6% for each year that Beneficiary is older/younger than the Participant). |

2

CBPJPMC00000769

Appendix V

Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 75% J&S | Not available | 86% of the straight life annuity (adjusted up/down by .8% for each year that Beneficiary is older/young than the Participant). | Not available | See attached Table 1 | 85% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (Spouse) | 86% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | 83% of the straight life annuity (adjusted up/down by 1% for each year that Beneficiary is older/younger than the Participant). | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 80% of straight life annuity (adjusted up or down by 1% each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (No spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | Same as above. | Same as above. | See attached Table 1. | Same as above. |
| 5 Years Certain | Not available | 97.3% of the straight life annuity (adjusted up/down by .3% for each year that Participant is younger/older than age 65). | Not available for service after 1992. | Not available | 97.3% of the straight life annuity (adjusted up/down by .3% for each year that Participant is younger/older than age 65). |

3

Appendix V

Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 10 Years Certain | Not available | 92% of the straight life annuity (adjusted up by .5% or down by 1% for each year that Participant is younger or older than age 65). | Not available for service after 1992. | Not available | 92% of the straight life annuity (adjusted up by .5% or down by 1% for each year that Participant is younger or older than age 65). |
| 15 Years Certain | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65). | Not available for service after 1992. | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65). |
| Level Income Option | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate | Not available | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate. | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate. |
| Increasing Annuity | Not available | Actuarial Equivalence* | Actuarial Equivalence (Cash Balance Formula only). | Actuarial Equivalence | Actuarial Equivalence |
| Lump Sum (Cash Balance Plan) | Not available | Actuarial Equivalence* | Actuarial Equivalence* | Actuarial Equivalence of single life annuity | Actuarial Equivalence of single life annuity* |
| Lump sum (Cashout on Final Pay Prior Plan Benefits) | Actuarial Equivalence | Actuarial Equivalence* | Actuarial Equivalence | Actuarial Equivalence | Not applicable |

4

<u>Appendix V</u>

<u>Actuarial Equivalence Factors for Optional Forms of Payment</u>

* For retirements that occur between September 1, 1996 and August 31, 1997 for former Chemical participants only, the Participant will receive the greatest benefit determined using GA-83 Mortality Table [(50% Male/50% Female)] and (1) the 30-year Treasury rate in effect for the October preceding the year of determination or (2) the 30-year Treasury rate in effect two months preceding benefit commencement. For retirements after August 31, 1997, the Participant will receive the benefit determined using GA-83 Mortality Table [(50% Male/50% Female)] and the 30-year Treasury rate in effect for the October preceding the year of determination.

5

CBPJPMC00000772