**EXHIBIT 8**

RETIREMENT PLAN

OF

THE CHASE MANHATTAN BANK

AND

CERTAIN AFFILIATED COMPANIES

Effective January 1, 1997, as amended

CBPJPMC00000476

RETIREMENT PLAN OF

THE CHASE MANHATTAN BANK AND CERTAIN AFFILIATED COMPANIES

### Table of Contents

ARTICLE I -- DEFINITIONS.................................................................2

ARTICLE II -- ELIGIBILITY AND PARTICIPATION ........................................15

  2.1 Eligible Employee .................................................................15

  2.2 Participation ....................................................................16

  2.3 Other Participation ..............................................................16

ARTICLE III -- SERVICE ...............................................................17

  3.1 Periods of Service ...............................................................17

ARTICLE IV -- ACCOUNT BALANCE ........................................................20

  4.1 (a) Accounts ....................................................................21

  (b) Participant in the Plan .........................................................21

  (c) Participant in Chase Plan .......................................................22

  4.2 Transition Credits ..............................................................25

  4.3 Pay-Based Credit Balance ........................................................26

  4.4 Disability, Military Service ....................................................29

  4.5 Accrued Benefit ................................................................31

  4.6 (a) Continued Accrual ...........................................................32

  4.7 Special 1997 Benefits ..........................................................36

ARTICLE V -- VESTING .................................................................36

  5.1 Vested Benefit .................................................................36

5.2 Forfeitures ............................................................................................37

5.3 Outstanding Checks.............................................................................37

ARTICLE VI -- TRANSFERS AND REEMPLOYMENT................................38

6.1 Transfer from One Employer to Another Employer.........................38

6.2 Transfer from Employer to a Non-Participating Company ..............39

6.3 Transfer from Non-Participating Company to Employer .................39

6.4 Reemployment of Vested Participant.................................................40

6.5 Reemployment of Nonvested Participants .........................................41

ARTICLE VII -- BENEFITS....................................................................41

7.1 Form of Distributions Generally ......................................................41

7.2 Normal Form of Benefit ...................................................................43

7.3 Optional Forms of Benefit................................................................44

7.4 Special Rules for Voluntary Cash Outs ...........................................46

7.5 Special Rules...................................................................................46

7.6 Death Benefit ..................................................................................47

7.7 QJSA Waiver Rules .........................................................................50

7.8 Spousal Consent Rules.....................................................................51

7.9 Involuntary Cash Outs .....................................................................52

7.10 Qualified Domestic Relations Orders.............................................53

ARTICLE VIII -- DATES OF DISTRIBUTION.........................................53

8.1 Earliest Permissible Distribution Dates ...........................................53

8.2 Credit Balance Dates of Distribution ...............................................55

8.3 Grandfathered Participant ................................................................56

8.4 Failure to Make an Election .............................................................56

CBPJPMC00000478

8.5 Latest Permissible Distribution Dates ................................................................. 57

8.6 Payments to Individuals on Long-Term Disability ........................................... 59

8.7 Payments Due Infants and Incompetents .......................................................... 59

8.8 Eligible Rollover Distribution ............................................................................. 60

ARTICLE IX -- FIDUCIARIES ................................................................................... 60

9.1 The Benefits Fiduciary Committee ..................................................................... 60

9.2 Plan Investment Management Committee .......................................................... 61

9.3 Named Fiduciaries ............................................................................................... 61

9.4 Administrator ........................................................................................................ 62

9.5 Board of Directors ................................................................................................ 62

9.6 Power of Delegation ............................................................................................. 62

9.7 Reports of the Named Fiduciaries ...................................................................... 63

9.8 Service in Various Fiduciary Capacities ............................................................ 63

9.9 Ministerial Plan Services ..................................................................................... 63

9.10 Power to Make Rules and Retain Services ...................................................... 64

9.11 Expenses .............................................................................................................. 64

9.12 Manner of Exercise of Authority ...................................................................... 64

9.13 Indemnity ............................................................................................................ 64

ARTICLE X -- CLAIMS PROCEDURE ...................................................................... 65

10.1 Submission of Claims ......................................................................................... 65

10.2 Process for Denying a Claim ............................................................................. 65

10.3 Appeal of Denial ................................................................................................. 66

10.4 Final Review ........................................................................................................ 66

ARTICLE XI -- TRUST FUND .................................................................................... 66

iii

11.1 Declaration of Trust................................................................................................66

11.2 Incorporation as Part of the Plan.........................................................................66

11.3 Participating Companies.........................................................................................67

11.4 Plan Expenses..........................................................................................................67

ARTICLE XII -- AMENDMENT OF THE PLAN ..............................................................67

12.1 Plan for Exclusive Benefit of Participants............................................................67

12.2 Amendments.............................................................................................................68

12.3 Return of Contributions .........................................................................................68

ARTICLE XIII -- MERGER OR CONSOLIDATION OF PLAN .......................................69

13.1 Benefit Requirements..............................................................................................69

ARTICLE XIV -- TERMINATION OF THE PLAN ...........................................................69

14.1 Voluntary..................................................................................................................69

14.2 Termination..............................................................................................................69

14.3 Section 401(a)(4) - Restriction on Benefits and Distribution .............................70

ARTICLE XV -- MISCELLANEOUS PROVISIONS .........................................................71

15.1 Construction.............................................................................................................71

15.2 Employment Status and Rights.............................................................................71

15.3 Source of Benefit Payments...................................................................................72

15.4 Non-Assignability....................................................................................................72

15.5 Appendices ..............................................................................................................72

iv

| | |
|---|---|
| Appendix I | Maximum Benefits - Section 415 |
| Appendix II | MHT Plan Transaction Rules |
| Appendix III | Top-Heavy Provisions |
| Appendix IV | Special Effective Dates for Tax Reform Act of 1986 Provisions |
| Appendix V | Actuarial Factors |
| Appendix VI | Section 401(a)(17) Limitation |
| Appendix VII | Transactions After January 1, 1993 |
| Appendix VIII | Chase Manhattan Mortgage Corporation |
| | Chemical Residential Mortgage Employees |
| Appendix IX | Section 411(d)(6)(A) Rules |
| | |
| Appendix X | Hours of Service |
| Appendix XI- | Retirement Plan Benefits Under the Alternate |
| | Retirement Formula |

CBPJPMC00000481

# RETIREMENT PLAN OF
## THE CHASE MANHATTAN BANK AND CERTAIN AFFILIATED COMPANIES

*Preamble*

The Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies ("Plan") provides retirement benefits for employees of The Chase Manhattan Bank and certain affiliated companies which become Participating Companies.

The Plan (originally named the Retirement Plan of Chemical Bank and Certain Affiliated Companies) was amended, renamed and restated as of January 1, 1997. As of December 31, 1996, the Retirement and Family Benefits Plan of The Chase Manhattan Bank, N.A. ("Chase Plan") was merged into the Plan. Accruals under the Chase Plan ceased as of December 31, 1996, and the Plan assumed the Chase Plan's accrued liabilities and assets as of December 31, 1996. With certain exceptions enumerated herein, benefits for employees who retired or terminated employment prior to December 31, 1996 and their beneficiaries will be provided for under the terms and conditions of this Plan and the Chase Plan as in effect immediately prior to their merger as of December 31, 1996.

The Plan also is a successor plan to, and a continuation of, the Cash Plan for Retirement of Chemical Bank and Certain Affiliates ("Prior Plan"). Simultaneously with the amendment and restatement of the Prior Plan as of January 1, 1993, the Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies ("MHT Plan") was merged with the Plan, effective January 1, 1993. The Plan is a successor plan to, and continuation of, the MHT Plan. With certain exceptions, benefits for employees who retired or terminated employment prior to January 1, 1993, and their beneficiaries will be provided for under the terms and conditions of the Prior Plan or MHT Plan, respectively, as in effect as of December 31, 1992.

The Plan is intended to qualify under Section 401 of the Internal Revenue Code of 1986 and the related trust is intended to be tax-exempt under Section 501 of such Code.

## ARTICLE I
### Definitions

1.1    **"Account"** means a bookkeeping account established and maintained with respect to each Participant pursuant to Section 4.1.

1.2    **"Accrued Benefit"** means, as of any determination date prior to January 1, 1997, with respect to the Plan (i) an amount equal to an increasing monthly annuity for the life of the Participant determined in accordance with Section 4.5 as in effect on December 31, 1996, and (ii) an amount equal to an annuity for the life of the Participant determined in accordance with former Section 5.1 and means, as of any determination date prior to January 1, 1997 with respect to the Chase Plan, the "Retirement Benefit" as defined and determined under the Chase Plan. Effective January 1, 1997, Accrued Benefit means, as of any determination date, an amount equal to the monthly annuity for the life of a Participant determined in accordance with Section 4.5 (or, if applicable, the amount in Section 4.6). See also Appendix VI.

1.3    **"Accruing Factor"** means the factor described in Section 4.3(b).

1.4    **"Actuarial Equivalent"** means, with respect to any specified annuity or benefit, another annuity or benefit commencing at a different date and/or payable in a different form than the specified annuity or benefit, but which has the same present value as the specified annuity or benefit (except where expressly provided otherwise in the Plan, determined on the basis of the interest rate, mortality table and other factors, if any, applicable to such other annuity or benefit, as specified in Appendix V as in effect at the date such other annuity or benefit is being determined).

1.5    **"Affiliated Company"** means with respect to any Participating Company that Participating Company and any corporation, trade or business which together with such Participating Company is a member of the same controlled group of corporations, trade or business under common control or any affiliated service group within the meaning of Sections 414(b), (c), (m), or (o) of the Code, except that for purposes of Appendix III "within the meaning of Section 414(b), (c), (m) or (o) of the Code as modified by Section 415(h) of the Code shall be substituted for the preceding reference "within the meaning of Sections 414(b), (c), (m) or (o) of the Code. Any such entity

2

CBPJPMC00000483

shall be treated as an Affiliated Company only for the period while it is a member of the controlled group of corporations or considered to be in a common control group.

1.6 **"Alternative Benefit"** means the benefit described in Appendix XI.

1.7 **"Annuity Starting Date"** means (i) the first day of the first period for which an amount is paid as an annuity, or any other periodic form or (ii) in the case of a benefit not payable in the form of an annuity, the first day of the month following the date in which all events have occurred which entitle the Participant to the benefit.

1.8 **"Appropriate Form"** means the form (or other means of communication, including an interactive telephonic system maintained by the Company) provided for a particular purpose, as prescribed by the Plan Administrator.

1.9 **"Authorized Absence"** means any period of absence from employment permitted by any Affiliated Company pursuant to a uniform policy (including a reinstatement policy), whether or not the Participant receives compensation for such period of absence.

1.10 **"Beneficiary"** means the Surviving Spouse, provided that if there is no Surviving Spouse, or if the Participant's spouse consents to the designation of a nonspouse Beneficiary under Section 7.8, the Beneficiary shall be the person or persons designated by a Participant by Notice to the Administrator to receive benefits from the Plan on account of the death of the Participant, unless such designation has been revoked by a Notice to the Administrator or shall have become null and void as specified hereunder. If no Notice to the Administrator is on file, or if the designated Beneficiaries have predeceased the Participant, and if in either case, there is no Surviving Spouse, the Participant's estate shall be the Beneficiary with respect to Credit Balance benefit payable under Section 7.6.

1.11 **"Benefits Fiduciary Committee"** means the Committee described in Article IX.

1.12 **"Board"** means either the Board of Directors of the Corporation or the Company or the Compensation and Benefits Committee of Board of Directors of the Corporation or the Company.

3

1.13    **"Break in Service"** means any 12-consecutive month period beginning on a Severance Date during which an Employee does not complete an Hour of Service and any anniversary date thereof; provided that the Employee is not paid for or entitled to pay (including back pay) for the performance of duties by the Company or an Affiliated Company at any time during such 12-month period.

1.14    **"Chase"** means The Chase Manhattan Bank National Association and its Affiliated Companies, as in existence immediately prior to the Chase Merger.

1.15    **"Chase Average Compensation"** means Average Compensation as set forth in Section 7.2A of the Chase Plan; provided that it shall include any salary reductions amounts under Section 132(f) of the Code. See Section 4.6 of this Plan.

1.16    **"Chase Compensation"** means Compensation as defined in Article II of the Chase Plan.

1.17    **"Chase Lump Sum Final Pay Benefit"** means the lump sum benefit calculated under Section 4.1(c).

1.18    **"Chase Merger"** means the merger of The Chase Manhattan Corporation into the Corporation as of March 31, 1996.

1.19    **"Chase Plan"** means the Retirement and Family Benefits Plan of The Chase Manhattan Bank, N.A. as in effect on December 31, 1996 immediately prior to its merger into the Plan.

1.20    **"Chase Service"** means Service as defined in the Chase Plan.

1.21    **"Chase Years of Benefit Service"** means each 12 months of Benefit Service (or fraction thereof) as set forth in the Section 4.7 of the Chase Plan taking into account all rules set forth in Article IV and definitions of the Chase Plan. See Section 4.6 of this Plan.

1.22    **"Code"** means the Internal Revenue Code of 1986, as amended from time to time.

4

CBPJPMC00000485

1.23    **"Company"** means The Chase Manhattan Bank (formerly Chemical Bank) and any successor corporation.

1.24    **"Corporation"** means The Chase Manhattan Corporation (formerly Chemical Banking Corporation) and any successor corporation.

1.25    **"Credit Balance"** means the amount determined under Article IV, except for the benefits described in Section 4.6.

1.26    **"Credit Balance QPSA"** means the annuity described in Section 7.6(b).

1.27    **"Date of Distribution"** means the date set forth in Section 4.3(f).

1.28    **"Date of Employment"** means the date an Employee first performs an Hour of Service.

1.29    **"Date of Reemployment"** means the date on which an Employee first performs an Hour of Service following a Severance Date.

1.30    **"Disability Plan"** means the Long Term Disability Plan of The Chase Manhattan Bank and Certain Affiliated Companies (formerly known as the Long-Term Disability Plan of Chemical Bank and Certain Affiliated Companies) or any successor plan.

1.31    **"Early Retirement Date"** means the Participant's date of retirement prior to his/her Normal Retirement Date with respect to a Final Salary Benefit as set forth in former Section 9.5 of this Plan.

1.32    **"Effective Date"** means January 1, 1993, for the Plan prior to January 1, 1997 and means January 1, 1997 for this amended and restated Plan.

1.33    **"Eligible Compensation"** means, except as otherwise defined herein, for purposes of calculating the Pay-Based Credit, the regular base salary actually earned by (and meant for purposes of calculating the Final Salary Benefit under former Article V, the base rate of pay of) an Eligible Employee from an Employer for services rendered (including (i) shift differentials and (ii) salary reductions contributions under Sections 125, 132(f), or 401(k) of the Code or reductions for amounts under any other deferred

5

compensation program.).   Notwithstanding the foregoing, with respect to Chase Investment Services Corporation or its successor, Eligible Compensation shall also mean the fixed draw or rate of draw, as applicable, for services rendered but does not include commissions or production overrides. See Appendix VIII for special definition of Eligible Compensation related to draw, commissions and production overrides (including deferred amounts) with respect to Employees of Chase Manhattan Mortgage Corporation or its successor who receive compensation of such nature.  Employees, who are assigned to work for Chase Financial Corporation Home Equity or its sucessor, a division, and who earn draw, commission or production overrides, shall be subject to the special definition of Elligible Compensation set forth in Appendix VIII as if they were Employees of Chase Manhattan Mortgage Corporation.  In addition, Eligible Compensation does not include (i) salary advances, (ii) overtime, (iii) premium pay, (iv) bonuses, (v) incentive compensation, (vi) directors' fees, (vii) severance whether paid in a lump sum or installments, (viii) deferred compensation, (ix) payments under this Plan or any other employee benefit plan, other than a wage continuation plan as a result of a short-term disability, (x) accrued vacation paid in a lump sum on termination of employment, or (xi) any other kind of extra or additional remuneration.  If such Eligible Compensation is based in part, or in whole, upon Eligible Compensation paid in a foreign currency, such Eligible Compensation shall be converted into United States dollars based upon an average exchange rate for the period in which the Eligible Compensation was paid.  Eligible Compensation taken into account under this Plan for any Participant shall not exceed the dollar amount prescribed by the Secretary of Treasury or his delegate in accordance with Section 401(a)(17) of the Code ("Applicable Amount")..

1.34    "Eligible Employee" means any Employee eligible to participate in this Plan in accordance with Section 2.1.

1.35    "Eligibility Period" means the Period of Service determined in accordance with Section 2.2(a).

1.36    "Eligible Retirement Plan" means an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 403(b) of the Code, an annuity plan described in Section 403(a) of the Code or a qualified trust described in Section 401(a) of the Code that is a defined contribution plan which accepts rollover distributions.  However, with respect to the Participant's

CBPJPMC00000487

surviving Spouse, or a former Spouse who is an alternate payee within the meaning of Section 414(p) of the Code, an Eligible Retirement Plan may only be an individual retirement account or individual retirement annuity.

1.37    **"Eligible Rollover Distribution"** means any distribution under the Plan of all or any portion of a Participant's vested Accrued Benefit that qualifies as an eligible rollover distribution within the meaning of Section 402(c)(4) of the Code.

1.38    **"Eligible Termination"** means an Employee's involuntary termination of employment with an Employer or Affiliated Company due to one or more of the following: the permanent and complete closing of a location, a reduction in force, corporate downsizing or a job elimination, but does not include the transfer of any Employee to any Affiliated Company. An Employee's termination of employment with an Employer or an Affiliated Company for any other reason not specifically stated above, including, but not limited to, resignation, voluntary retirement, discharge for cause, death, disability, or failure to return from an approved leave of absence (including leaves of absence for medical reasons) shall not constitute an Eligible Termination. Eligible Termination also shall not include an Employee's termination of employment with any Employer or an Affiliated Company as a result of a court decree, sale (whether, in whole or in part, of stock or assets), merger or other combination, spin-off, reorganization or liquidation, dissolution or other winding up involving any Affiliated Company.

1.39    **"Employee"** means any person employed by the Company or an Affiliated Company whether or not an Eligible Employee. The term Employee shall also include any person who is a leased employee within the meaning of Section 414(n)(2) of the Code (other than a leased employee described in Section 414(n)(5) of the Code).

1.40    **"Employer"** means the Company and any Participating Company.

1.41    **"ERISA"** means the Employee Retirement Income Security Act of 1974 as amended from time to time.

1.42    **"Fiduciary"** means a person described as such in Article IX.

7

CBPJPMC00000488

1.43    **"Final Salary Benefit"** means the benefit described in former Article V of this Plan prior to January 1, 1997.

1.44    **"Final Salary Benefit QPSA"** means the annuity described in former Section 8.7(a) of this Plan prior to January 1, 1997.

1.45    **"Final Average Salary"** has the meaning set forth in this Plan immediately prior to January 1, 1997.

1.46    **"Frozen Minimum Benefit"** has the meaning set forth in Appendix IX.

1.47    **"Government Payments"** has the meaning ascribed thereto by the Chase Plan.

1.48    **"Grandfathered Benefits"** means the benefits described in Section 4.6(a) ,(b) or (c).

1.49    **"Grandfathered Participant"** means an individual described in Section 4.6(d).

1.50    **"Hour of Service"** means an hour for which an individual is, directly or indirectly, paid or entitled to payment for the performance of duties by the Employer or Affiliated Company.

1.51    **"Interest Credit"** means the amount credited to an account pursuant to Section 4.3.

1.52    **"Interest Factor"** means for any Valuation Date a constant yield compounded on a monthly basis for each calendar month which yield would equal on an annualized basis the Interest Rate then applicable to the Account; provided that for any period less than a month the Interest Factor shall be the monthly yield for the month in which the period falls multiplied by a fraction, the numerator of which is the number of days in such period over the total number of days in such calendar month.

1.53    **"Interest Rate"** means, for a Plan Year, the average annual interest rates for one-year United States Treasury Constant Maturities for the months of September, October and November immediately preceding the Plan Year, as published in the Federal Reserve Statistical Release L13 (415) (or if unavailable, a similar publication) (the "minimum rate") plus (ii) effective for Plan Years commencing January 1, 1997 and each Plan Year thereafter, one percent.

8

CBPJPMC00000489

1.54    "**Joint and 50% Survivor (Spouse) Annuity**" or "**QJSA**" means an annuity which provides reduced monthly installments during the Participant's lifetime, ending with the payment due for the month in which he/she dies, and if the Participant dies leaving a Surviving Spouse, a survivor annuity providing monthly installments for the life of the Surviving Spouse equal to 50% of the monthly installments that the deceased Participant was receiving at the time of death. Such survivor annuity shall commence on the first day of the month following the date of the Participant's death and end with the payment due for the month in which the Surviving Spouse dies.

1.55    "**Lump Sum Final Pay Benefit**" means the lump sum benefit calculated under Section 4.1(b).

1.56    "**Lump Sum Accrued Benefit Amount**" means the Actuarial Equivalent of a Participant's Accrued Benefit derived from his/her Credit Balance when expressed as a single sum.

1.57    "**MHT**" means Manufacturers Hanover Trust Company.

1.58    "**MHC Merger**" means the merger of Manufacturers Hanover Corporation into the Corporation on December 31, 1991.

1.59    "**MHT Plan QPSA**" means the Qualified Pre-retirement Survival Annuity as defined in the MHT Plan.

1.60    "**MHT Plan QJSA**" means the Qualified Joint and Survivor Annuity as defined in the MHT Plan.

1.61    "**MHT Plan**" means the Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies as in effect on December 31, 1992.

1.62    "**Normal Retirement Age**" means the later of age 65 or the completion of a 5 year Period of Service; <u>provided</u> that for any individual who was a member of the MHT Plan on December 31, 1988, Normal Retirement Age means age 65.

1.63    "**Normal Retirement Date**" means the first day of the month following the month in which a Participant attains Normal Retirement Age.

9

CBPJPMC00000490

1.64    **"Notice to the Administrator"** means notice (electronic or telephonic, if authorized) on an Appropriate Form which is properly completed and is delivered to the designated office of the Plan, which Appropriate Form shall be deemed to have been given when it is recorded as received by that office, including the use of telephonic and electronic receipts.

1.65    **"Participant"** means any Eligible Employee included in the Plan as provided in Article II, or as the context requires, an individual with an Accrued Benefit under the Plan (i) who has a Severance Date and either (A) has not incurred a Break in Service exceeding five years, or (B) is vested in his Accrued Benefit but has not received all benefits from this Plan, or (ii) is no longer an Eligible Employee, but continues to be employed by an Affiliated Company which is not a Participating Company; <u>provided</u> that an individual described in (i) or (ii) is not a Participant for purposes of calculating additional accruals after such Severance Date or after the date he or she no longer qualifies as an Eligible Employee under Article II.

1.66    **"Participating Company"** means any Affiliated Company which, with the consent of the Plan Administrator, adopts the Plan by action of its board of directors; <u>provided</u> that any entity participating as an employer in the Plan as of December 31, 1996 or the Chase Plan as of December 31, 1996 will be a Participating Company as of January 1, 1997, without further action.

1.67    **"Pay-Based Credit"** means the amount described in Section 4.3.

1.68    **"Pay -Based Credit Balance"** means the balance described in Section 4.3.

1.69    **"Pay Credit Service"** shall have the meaning set forth in Section 4.3(g).

1.70    **"PBGC"** means the Pension Benefit Guaranty Corporation.

1.71    **"Period of Service"** means the period during which an employment relationship exists between an Employee and the Company or an Affiliated Company determined in accordance with Article III.

10

CBPJPMC00000491

1.72 **"Period of Severance"** means the period between an Employee's Severance Date and his Date of Reemployment determined in accordance with Article III. A one-year Period of Severance means the 12-consecutive-month period beginning on an Employee's Severance Date and ending on the first anniversary of such date.

1.73 **"Plan"** means the Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies (formerly the Retirement Plan of Chemical Bank and Certain Affiliated Companies) as amended from time to time.

1.74 **"Plan Administrator"** or "Administrator" means the individual who is selected by the Board to be the plan administrator under Article IX; absent a designation to the contrary by the Board, the individual who holds the title Director Human Resources of the Company or successor title shall be the Plan Administrator.

1.75 **"Plan Investment Management Committee"** means the committee described in Article X.

1.76 **"Plan Year"** means each calendar year commencing January 1.

1.77 **"Prior Plan"** means the Cash Plan for Retirement of Chemical Bank and Certain Affiliated Companies as in effect on December 31, 1992.

1.78 **"Prior Service Balance"** means the amount described in Section 4.1, which was calculated under Section 4.2 of the Prior Plan and includes Transition Credits under the Prior Plan and this Plan. It shall be a subaccount for purposes of Transition Credits under Section 4.2 of this Plan.

1.79 **"Qualified Military Service"** means qualified military service within the meaning of USERRA and Section 414(u)(5) of the Code.

1.80 **"Required Beginning Date"** means for all Participants (other than five percent owners) the April 1 of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 ½ or (ii) the calendar year in which the Participant terminates employment. The "Required Beginning Date" for Participants who are five percent

11

CBPJPMC00000492

owners is April 1 of the calendar year following the calendar year in which such Participant attains 70 ½.

**1.81**    **"Retirement Date"** means a Normal Retirement Date.

**1.82**    **"Severance Date"** means the earlier of:

    (a)    the date on which an Employee quits, terminates, retires, is discharged or dies; or

    (b)    the first anniversary of the date on which the Employee begins an absent from service (with or without pay) with an Employer or an Affiliated Company for reasons other than than those described in (a) above; provided, however:

        (i)    such Severance Date shall be disregarded if he/she next performs an Hour of Service within 12 months after (A) his/her Severance Date, or if earlier, (B) the date he/she was otherwise first absent from service;

        (ii)    such Severance Date shall be disregarded for an individual who is absence from work on account of  Qualified Military Sevice to the extent required under laws enacted by the Congress of the United States (including USERRA), provided that such individual next performs an Hour of Service prior to the expiration of the period during which employment rights are guaranteed by law;

        (iii)    such Severance Date shall be disregarded for an individual who is absence from work on account of authorized leave of absence to the extent required under the Family and Medical Leave of 1993, as amended;

        (iv)    if a Severance Date is disregarded under either of the three precedingsubsections, such Employee's Period of Service shall include the period beginning on such Severance Date and ending on the date on which he/she next performs an Hour of Service;

CBPJPMC00000493

(v)    if an Eligible Employee is absent from service on account of disability and is receiving benefits under one or more long-term disability plans or programs of an Employer or an Affiliated Company, he/she shall not incur a Severance Date until the earlier of the date (A) such long-term disability benefits terminate, unless he/she is reemployed as an Eligible Employee on such date, (B) the date of death; or (C) he/she elects to receive benefits under this Plan; and

(vi)    if an Employee is absent from service on account of (A) her pregnancy, (B) birth of his/her child, (C) his/her adoption of a child, or (D) caring for any such child, the Severance Date is the second anniversary of the first day of absence from service. Nevertheless, the period between the first and second anniversary of such first day of absence shall count neither as a Period of Service nor as a Period of Severance.

1.83    **"Surviving Spouse"** means for purposes of the Credit Balance, the person legally married to the Participant at the time of the Participant's death, or if earlier, as of the Participant's Annuity Starting Date, and (ii) who survives such Participant.

1.84    **"Transition Credit"** means the amount determined under Section 4.2(d).    The reference to Transition Credit under this Plan has no relationship to the Transition Credits provided under the Chase Plan.

1.85    **"Transition Factor"** means for any Valuation Date the monthly and partial month yield calculated in the same manner as the Interest Factor, except that the Transition Rate shall be used.

1.86    **"Transition Rate"** means the Interest Rate for any Plan Year multiplied by 1.25.

1.87    **"Trust Fund"** means the assets which is from time to time held by the Trustee under the Agreement of Trust.

1,88 **"Trustee"** means the trustee or trustees under the Agreement of Trust at the particular time.

1,89    **"USERRA" means the Uniformed Services Employment and Reemployment Rights of 1994, as amended from time to time.**

13

CBPJPMC00000494

1.90    **"Valuation Date"** means the last business day of each calendar month; <u>provided</u> that with respect to any required determination of a Credit Balance as set forth herein, it shall mean the day immediately preceding the date of the required determination.

1.91    **"Years of Benefit Service"** means the years of benefit service as determined under Sections 3.4 and 3.5 of the MHT Plan through December 31, 1992.

1.92    **"Years of Service"** means the years of service as determined under Section 3.1 through 3.3 of the MHT Plan through December 31, 1992.

14

CBPJPMC00000495

## ARTICLE II

### Eligibility and Participation

2.1    **Eligible Employee**

An Employee of an Employer shall be an Eligible Employee if such Employee:

(a)    is on a United States payroll of such Employer and such Employer actually pays the tax imposed by the Federal Insurance Contribution Act on such individual's Eligible Compensation as of the date that the Eligible Compensation is paid;

(b)    is employed as a salaried employee, or is employed on a draw, commission or production override basis; provided that such draw, commission or production override is recognized as Eligible Compensation

(c)    is not (i) a "Leased Employee" as defined in Section 414(n) of the Code, (ii) classified by the Employer as an independent contractor, (iii) classified by the Employer as employed by an independent contractor, and/or (iv) employed or treated by an Employee in a status other than that of a common law employee by the Employer, regardless of whether such individual is subsequently determined to be a common law employee as the result of administrative agency or judical proceeding.

(d)    is not employed on a temporary, seasonal casual, retainer, or occasional basis or is not paid on an hourly basis; and

(e)    is not an active participant in any other defined benefit plan of an Employer or an Affiliated Company.

15

CBPJPMC00000496

By way of clarification, a person who (i) serves only as a director of an Employer, (ii) agrees to render services as or to an independent contractor, (iii) is considered by the Employer to be rendering services as or to an independent contractor or (iv) whose compensation is paid solely in the form of a commission or fee under contract, is not considered employed by an Employer.

### 2.2    Participation

(a)    An Eligible Employee shall become a Participant at the earlier of (i) or (ii).

    (i)    Each Eligible Employee who was an active participant in the Plan or the Chase Plan on December 31, 1996 and is an Eligible Employee on January 1, 1997, shall be a Participant in the Plan as of January 1, 1997.

    (ii)    Each other Eligible Employee shall become a Participant in the Plan on the first day of the month coincident with or next following (I) the completion of a Period of Service of one year (the "Eligibility Period"); or, (II) if an Employee has satisfied the Eligibility Period, the date such individual becomes an Eligible Employee.

(b)    An Eligible Employee who satisfied the Eligibility Period prior to his/her Severance Date shall become a Participant again on the date such individual again becomes an Eligible Employee.

(c)    An Employee who failed to satisfy the Eligibility Period prior to his/her Severance Date (or prior to the date he/she ceased to be an Eligible Employee) shall become a Participant in accordance with Section 2.2(a)(ii).; provided that if his/her Period of Severance is less than one year, such Period of Severance shall be included in the Eligibility Period.

### 2.3    Other Participation

16

CBPJPMC00000497

Notwithstanding Section 2.1 a Participant shall be treated as an Eligible Employee and may continue to participate hereunder, if such individual remains an Employee without experiencing a Severance Date and either (i) becomes paid on an hourly basis rather than salaried or (ii) subject to Section 6.2, is transferred from a United States payroll of an Employer to a foreign payroll of an Employer or an Affiliated Company. Further, if an Employee who was paid on an hourly basis later becomes an Eligible Employee, then the rules of Appendix X shall govern the computation of Period of Service for purposes of this Article II, but not for purposes of Article V, which shall continue to be governed by Article III.

### ARTICLE III

Service

**3.1**  **Periods of Service**.

    (a) Subject to the rules set forth in this Section 3.1, Periods of Service means the periods of service commencing on an Employee's Date of Employment or Date of Reemployment, whichever is applicable, and ending on any Severance Date.

    (b) Except as otherwise provided in the last sentence of Section 2.3 and Appendix X- and unless otherwise specified herein, service before and after January 1, 1993, will be aggregated for eligibility hereunder and vesting of benefits hereunder (if a Participant participated in the Prior Plan or MHT Plan on December 31, 1992) as follows:

        (i) Periods of Service prior to January 1, 1993 will be determined as if this Plan had been in effect since the Employee's Date of Employment; provided that if an Employee was a participant in the Prior Plan or the MHT Plan, his/her Period of Service as of the Effective Date will not be less than his Period of Service or Years of Service as calculated under the Prior Plan or MHT Plan respectively; and

17

CBPJPMC00000498

(ii)    All Periods of Service after December 31, 1992, will be determined under the terms of this Plan, without reference to the Prior Plan or the MHT Plan.

By way of clarification, Section 3.1(b)(i) is not intended to provide for vesting or benefit accruals under the MHT Plan or Prior Plan (or any predecessor plan) with respect to benefits which were forfeited prior to the Effective Date of this Plan.

(c)    For purposes of calculating the Pay Credit Service under Section 4.3, as of any particular date, Periods of Service will include only the service with the controlled group of corporations (within the meaning of Section 414(b) of the Code) that employed an Employee (i) on December 31, 1991 in the case of the MHT Merger and any service thereafter with any corporation that, prior to the Chase Merger, was an Affiliated Company or (ii) (effective January 1, 1997) on March 31, 1996 in the case of the Chase Merger and any service thereafter with any Affiliated Company. (See Section 4.2(g) for further amplification of these rules.)

(d)    For each 365 days of service during any Period of Service, whether or not consecutive, the Employee will be credited with a Period of Service of one year; and except as provided in former Section 3.1(g) as in effect immediately prior to January 1, 1997, for Periods of Service of less than 365 days, a partial Period of Service will be credited on the basis of 1/365th of a year for each calendar day.

(e)    With respect to an individual who was a participant in the Chase Plan on December 31, 1996 and who becomes a Participant in this Plan on January 1, 1997, service before and after January 1, 1997 will be determined solely for vesting of future benefits hereunder and eligibility hereunder as if

18

CBPJPMC00000499

this Plan had been in effect since the Employee's Date of Employment with Chase subject to Section 2.3. Notwithstanding the foregoing sentence, this Article III is not intended to provide for vesting or benefit accruals under the Chase Plan, MHT Plan or this Plan (or any predecessor plan) with respect to benefits which were forfeited on or prior to December 31, 1996 or to increase the amount of any service that would have been otherwise accredited under the Chase Plan, including, but not limited to, acquisitions for which no prior Periods of Service were granted or recognized.

(f)     For purposes of calculating an accrued benefit under the Prior Plan, the MHT Plan or Chase Plan, only service as recognized up to the date of each respective plan merger under the Prior Plan, Chase Plan or MHT Plan will be used.

(g)     A Period of Service will not include any period of employment with an Affiliated Company prior to the date such company became an Affiliated Company, unless specifically included by an amendment to the Plan set forth in an Appendix hereto or unless specifically recognized by the Chase Plan as in effect prior to January 1, 1997..

(h)     Solely for purposes of calculating the Accrued Benefit under Section 4.5, and to the extent applicable former Article V as in effect prior to January 1, 1997, a Participant's Period of Service will not include any Period of Service prior to a Break in Service unless:

(i)     the Employee was vested in his/her accrued benefit under the Plan, Prior Plan, Chase Plan or MHT Plan prior to the Break in Service; or

(ii)    the Employee's number of consecutive one-year Breaks in Service does not equal or exceed five.

19

CBPJPMC00000500

By way of clarification, if a Participant has incurred five or more consecutive one-year Breaks in Service, the Accrued Benefit of such Participant shall be forfeited unless such Accrued Benefit had been previously vested under Article V or its predecessor Articles.

(l)    Except as provided in Sections 3.1(b) and (h) and Section 4.3(g) separate Periods of Service will be aggregated.

## ARTICLE IV
### Account Balance

To the extent that an individual is an Eligible Employee and a Participant as of January 1, 1997 and was a participant in the Chase Plan as of December 31, 1996, the benefit as described in this Article IV is in lieu of any benefit or benefits earned under the Chase Plan prior to January 1, 1997. Benefits for those individuals whose employment with Chase terminated or who had incurred a Severance Date, prior to January 1, 1997 shall be determined and be distributable under the terms and conditions of the Chase Plan, as in effect on December 31, 1996, except that Sections 4.3(d) and 4.5 apply to undistributed account balances under the Chase Plan, and except to the extent Section 4.1(d) applies.

To the extent that an individual is an Eligible Employee and a Participant as of January 1, 1997 and was a Participant in the Plan as of December 31, 1996, the benefit described in this Article IV is in lieu of any benefit or benefits earned under the Plan prior to January 1, 1997. Benefits for those individuals whose employment with an Employer terminated or who had incurred a Severance Date prior to January 1, 1997 shall be determined and be distributable under the terms and conditions of the Plan, as in effect on December 31, 1996, except that Sections 4.3(d) and 4.5 apply to undistributed credit balances and  except to the extent Section 4.1(d) applies.

20

CBPJPMC00000501

**4.1**   (a)   <u>Accounts</u>. As of the later of January 1, 1997 or the date an Eligible Employee becomes a Participant, a notional Account will be established with respect to such Participant. Credits will be made to the Account of a Participant pursuant to the provisions of this Article IV. Accounts will be notional bookkeeping accounts, and neither the maintenance of, nor the crediting of amounts to, such Accounts will be treated as (i) the allocation of assets of the Plan to, or a segregation of such assets in, any such Account or (ii) otherwise creating a right in any person to receive specific assets of the Plan.

(b)   <u>**Participant in the Plan.**</u> Effective January 1, 1997, if an Eligible Employee is a Participant on January 1, 1997 and was a Participant accruing Salary-Based Credits in the Plan as of December 31, 1996, the Credit Balance of such individual on January 1, 1997 shall equal the sum of:

(i)   the Prior Service Balance as of December 31, 1996 if any;

(ii)   the Salary-Based Credit Balance, as defined in this Plan as of December 31, 1996 if any; and

(iii)   any Lump Sum Final Pay Benefit which shall be based on the benefit (if any) described in former Section 5.1 of the Plan computed as of December 31, 1996 (or if greater, the minimum alternative benefit described in former Section 5.5 of the Plan as in effect on December 31, 1996 which was frozen as of December 31, 1992) and converted into a lump sum on the following basis:

(A)   a 6.25% interest rate is used for discounting purposes;

(B)   benefit under former Article V is payable as of the first day of the month following age 60 (or if over age 60, payable as of January 1, 1997);

(C)   GA-83 Mortality Table (50% Male /50% Female) is used;

21

CBPJPMC00000502

(D)    for purposes of the minimum alternative benefit under former Section 5.5 of the Plan, the offset for the Flexible Retirement Account shall be its value on July 31, 1996;

(E)    Period of Service and Final Average Salary is fixed and frozen as of December 31, 1996; and

(F)    reductions for amounts under a qualified domestic relations order or any required minimum distribution under Section 401(a)(9) shall be applied.

Notwithstanding the above, if an Employee is not an Eligible Employee on January 1, 1997 but had an Accrued Benefit derived from the benefit described in former Article V, such benefit shall be a Lump Sum Final Salary Benefit converted as specified above.

By way of clarification, if the accrued benefit described in former Article V has previously been converted into a Credit Balance, or forfeited or is in pay status, it shall not be recalculated or restored under this Section 4.1(b).

(c)    **Participant in Chase Plan.**  Effective January 1, 1997, if an Eligible Employee is a Participant on January 1, 1997 and was a participant accruing benefits based on compensation under Section 7-A of the Chase Plan as of December 31, 1996, the Credit Balance of such individual on January 1, 1997 shall be equal to the sum of:

(i)    greater of (A) the balance of the Account (as defined in the Chase Plan) of the individual as of December 31, 1996 as calculated under Sections 7-A 1.C and D of the Chase Plan or (B) the annuity benefit described in Section 7-A.2A of the Chase Plan as of December 31, 1996 using Chase Compensation after December 31, 1988 up to December 31, 1996 and utilizing the methodology and

22

CBPJPMC00000503

factors set forth in Section 4.1(c)(ii) (A), (B), (C) and (F) to convert such annuity to a lump sum amount; and

(ii)    the Chase Lump Sum Final Pay Benefit which shall be based on the vested accrued benefit (if any) under Section 7.2 of the Chase Plan which was frozen pursuant to Section 7.1 and Section 7.11 of the Chase Plan as of December 31, 1988 using Chase Years of Benefit Service and Chase Average Compensation fixed and frozen as of December 31, 1988 and converted into a lump sum on the following basis:

(A)    a 6.25% interest rate is used for discounting purposes;

(B)    the benefit under Section 7.1 of the Chase Plan is payable as of the first day of the month following age 60 (or if over age 60, payable as of January 1, 1997);

(C)    GA-83 Mortality Table (50% Male/50% Female) is used;

(D)    for purposes of Section 7.2 of the Chase Plan, an estimate of the Participant's Social Security earnings for periods of service prior to employment by Chase, unless the Plan Administrator has received a written request from the Participant to use actual Social Security; and

(E)    any offsets provided under the Chase Plan, including without limitation Government Payments, or any reduction for amounts under a qualified domestic relations order or required minimum distribution under Section 401(a)(9), shall be applied.

Notwithstanding the above, if an Employee is not an Eligible Employee on January 1, 1997 but had an accrued benefit under Section 7.2 of the Chase Plan as of

23

CBPJPMC00000504

December 31, 1988 which was frozen pursuant to Sections 7.1 and 7.11 of the Chase Plan, then such benefits shall be a Chase Lump Sum Final Pay Benefit converted as specified above.

. If the accrued benefit has been forfeited or is in pay status, it shall not be recalculated or restored under this Section 4.1(c).

By way of clarification Section 4.1(c)(ii) is not intended (I) to utilize a different formula in calculating the frozen annuity benefit than that provided by the Chase Plan for any particular participant in the Chase Plan as of December 31, 1988 or (II) to convert a benefit earned by a "Panama Employee" as defined in Appendix IX of the Chase Plan or earned by any former employee of Troy & Nichols, Inc., under the Troy & Nichols, Inc. Defined Benefit Plan.

(d)    **Dual Service**. (i) Effective January 1, 1997, an Eligible Employee (I) who is a Participant on January 1, 1997 accruing a Pay-Based Credit, (II) who had accrued a benefit, which had not been forfeited prior to January 1, 1997 under the predecessor plans (as described below) by virtue of his/her prior employment with Chase, the Company or MHT prior to the MHT Merger or Chase Merger and (III) whose benefit is not otherwise converted in subsection (b) or (c) above, shall have such benefit converted into an additional Credit Balance using the methodology set forth in Section 4.1(b) or Section 4.1(c), as is applicable.

(ii)    The foregoing Section 4.1(d)(i) shall not apply if such benefit (I) is in pay status as of December 31, 1996, (II) has already been taken into consideration in calculating any portion of the Credit Balance or (III) would be duplicative of any other benefit under this Plan or any predecessor plan.

(iii)    For purposes of this subsection (d), a benefit under a predecessor plan would be the vested benefit under (I) Section 4.1 of the Retirement Plan of Chemical Bank and Certain Affiliates accrued on or before December 31, 1990 without reference to Section 7.1(c) or any predecessor section, (II) Section 7.1 of the MHT Plan accrued on or before December 31, 1992, (III) Section 7.2 of the Chase Plan accrued on or before December 31, 1988, which was

24

frozen pursuant to Sections 7.1 and 7.11 of the Chase Plan, and (IV) former Section 5.1 of the Plan as in effect immediately prior to January 1, 1997 without reference to Section 7.1(c) or any predecessor section; provided that nothing in this subsection shall be construed to require the conversion of the benefits accrued under the Troy & Nichols, Inc. Defined Benefit Plan or the benefits accrued with respect to the Panama Employees as defined in Appendix IX of the Chase Plan.

(iv)    If an Eligible Employee described above had separate account balances in any of the plans described above, they shall be added together.

(v)    The additional Credit Balance as a result of the application of this Section 4.1(d) shall be in lieu of the benefit it represents under the predecessor plans.

4.2    **Transition Credits**.

(a)    As of any Valuation Date, credits are made to the Prior Service Balance of each Participant equal to the Transition Credit.  Such Transition Credit terminates on the earliest of the date that a Participant:

(i)    ceases to qualify as an Eligible Employee;

(ii)    fails to return to service from an Authorized Absence (including a leave for short-term disability), or

(iii)    has a Severance Date.

(b)    The Prior Service Balance of a Participant who is receiving or entitled to receive benefits under a long term disability plan or program of an Employer will receive Transition Credits until the earlier of a Participant's Severance

25

CBPJPMC00000506

Date or the effective date of an election to receive any portion of the Accrued Benefit of such individual under the Plan.

(c)     Following the date that the Transition Credit ceases, credits are made to the Prior Service Balance (as if such Balance were a Pay-Based Credit Balance) equal to the Interest Credit as set forth in Section 4.3.

(d)     The Transition Credit for any Valuation Date equals the Prior Service Balance as of the immediately preceding Valuation Date multiplied by the Transition Factor.

### 4.3     Pay-Based Credit Balance

(a)     Effective as of January 1, 1997, as of any Valuation Date, credits are made to the Account of each Participant who is an Eligible Employee equal to the Pay-Based Credit. Such credits continue to be made for each Participant who continues to be an Eligible Employee after attaining Normal Retirement Date. Pay-Based Credits shall cease as provided in Section 4.3(e).

(b)     Effective as of January 1, 1997, the Pay-Based Credit equals the Eligible Compensation of the Participant for the period commencing with the date of participation and ending on the monthly Valuation Date immediately following such date (and thereafter the Eligible Compensation for the period following such monthly Valuation Date and ending on the next following monthly Valuation Date and succeeding monthly periods) times the "Accruing Factor." (Eligible Compensation shall be prorated for a calendar month when the date of participation is not the beginning of a calendar month.) Effective as of January 1, 1997, the Accruing Factor is a percentage based upon the Participant's completed years of Pay Credit Service as of the first day of the calendar month for which the Pay-Based Credit is provided as follows:

26

CBPJPMC00000507

| Completed Full Years of Pay Credit Service | Percentage of Eligible Compensation |
|---|---|
| 1 - 3 | 4% |
| 4 - 6 | 5% |
| 7 - 10 | 6% |
| 11 -15 | 8% |
| 16 - 20 | 10% |
| 21 - 25 | 12% |
| 26 or more | 14% |

(c)    As of any Valuation Date, credits are made to the Pay -Based Credit Balance equal to the Interest Credit. Such Interest Credits continue to be made for Participants until such Interest Credits cease in accordance with subsection (f) below.

(d)    The Interest Credit as of the Valuation Date equals the Pay -Based Credit Balance as of the immediately preceding Valuation Date multiplied by the Interest Factor.

(e)    The Pay -Based Credits cease as of a Participant's Severance Date or the date such individual is no longer an Eligible Employee. Notwithstanding anything herein to the contrary, the Participant's Pay -Based Credit Balance will be increased by multiplying the appropriate Accruing Factor by Eligible Compensation paid after the Severance Date or the date such individual is no longer an Eligible Employee, but earned prior to such date while a Participant.

(f)    The Interest Credits cease as of the day immediately preceding the Date of Distribution. Date of Distribution shall mean the day immediately preceding the Annuity Starting Date.

27

CBPJPMC00000508

(g)    Pay Credit Service shall mean a Period of Service with an Employer (or as is provided in Sections 6.2 and 6.3) as an Employee; <u>provided</u> that if an individual had been employed by MHT or its Affiliated Companies and had also been employed for the Corporation or its Affiliated Companies prior to the MHT Merger, then only his/her Period of Service with the entity employing him or her immediately prior to the MHT Merger shall be included in Pay Credit Service; <u>provided</u> further that if an individual was employed by the Corporation or its Affiliated Companies, immediately prior to the Chase Merger, then only the Period of Service with the Corporation or its Affiliated Companies recognized under the Plan as of that date shall be included in Pay Credit Service (e.g. prior Periods of Service with Chase and its Affiliated Companies are not recognized for this purpose), <u>provided further</u> that if an individual was employed by Chase or its Affiliated Companies immediately prior to the Chase Merger, then only the Period of Service with Chase and its Affiliated Companies as of that date (e.g. prior Periods of Service with the Corporation is not recognized for this purpose) shall be included in Pay Credit Service.  Similar rules shall be used with respect to a re-employed Employee so that only the Period of Service with the Employer at or immediately prior to the relevant Merger shall recognized.  Any additional service credited under the Chase Plan or the Plan with respect to a voluntary retirement program or otherwise shall not be included in the Pay Credit Service. Unless listed in an Appendix, no service prior to the date an Employee was actually employed by Chase or an Affiliated Company shall be a Period of Service for these purposes.  Further, notwithstanding any provision in Section 3.1 to the contrary, no Period of Service shall be included in Pay Credit Service if such service was not recognized for vesting purposes under the Chase Plan immediately prior to January 1, 1997.

**4.4    Disability, Military Service**

CBPJPMC00000509

(a)    In the event of an Authorized Absence by reason of a short-term disability of a Participant, the Pay-Based Credit credited to the Participant's Pay-Based Credit Balance will be based on the Participant's Eligible Compensation paid during the period of disability; provided that Eligible Compensation shall not include any state disability payments made after the date an Employer ceases the payment of Eligible Compensation.  An individual who was a Disabled Member under Section 7.8 of the Chase Plan as of December 31,1988 shall have his/her benefit determined under such Section of the Chase Plan and not under this Plan.

(b)(i)   In the event of an Authorized Absence prior to January 1, 1995 (but only with respect to those individuals who were employed by Chemical Bank and its Affiliates on such date) by reason of a long-term disability of a Participant who receives benefits under the Disability Plan, the Pay-Based Credit credited to the Participant's Pay-Based Credit Balance on any Valuation Date will be based on the Participant's Eligible Compensation as defined below.

(ii)   In the event of an Authorized Absence commencing on or after January 1, 1995 by reason of a long-term disability which results in the receipt of long-term disability benefits (I) under the Disability Plan on or after January 1, 1995 but before January 1, 1997 with respect to an individual employed by Chemical Bank and its Affiliates or (II) under the Disability Plan on or after January 1, 1997, the Pay Credit for each such Participant shall be based upon a percentage which is 50 percent of the percentage set forth in Section 4.3; provided, further, that such reduced percentage shall commence as of the first day of the month following the receipt of disability benefits under the Disability Plan for a period of up to 24 months unless earlier terminated as set forth below.  Effective for accruals on or after January 1, 1997, the foregoing sentence, including the percentage and 24 month period shall apply to an individual who was receiving long-term disability benefits under the Chase disability program on December 31, 1996.  Such Pay-Based Credit will terminate on until the earliest of:

29

CBPJPMC00000510

(A)     the date of a Participant's return to active employment with an Employer or an Affiliated Company, or

(B)     a Participant's Severance Date, or

(C)     the date that the Participant elects to receive any benefit provided under this Plan, or

(D)     the date disability benefits cease under the Disability Plan.

Solely for purposes of this Section 4.4(b), Eligible Compensation shall mean (i) the actual rate of pay immediately preceding the onset of disability expressed as a monthly amount or (ii)in the case of a Participant whose Eligible Compensation consists of  draw, commissions, or production overrides, the amount of such Eligible Compensation, to the extent recognized hereunder, for the calendar month immediately preceding the onset of the disability expressed as a monthly amount.

(c)     In the event a Participant is credited with Service while on Authorized Absence by reason of Qualified Military Service to the extent required under laws enacted by the Congress of the United States (including USERRA)), such individual will receive Interest Credits and Pay-Based Credits for such Period of Service upon return to employment with the Employer or an Affiliated Company within the periods required by Section 1.82(ii).  The Pay-Based Credit credited to the Participant's Pay-Based Credit Balance will be based on the Participant's Eligible Compensation for the month immediately preceding the date of the absence. Any Prior Service Balance will be credited with the excess of (i) the Transition Credit from the date of the absence to the Date of Reemployment over (ii) the Interest Credits, if any, actually credited to his Prior Service Balance; provided, however,

30

CBPJPMC00000511

that nothing in this Section 4.4(e) shall result in the double crediting of any Transition Credits.

4.5    **Accrued Benefit**

Effective as of January 1, 1997, the Accrued Benefit derived from the Credit Balance of a Participant described in Article IV as of any determination date, is an annuity for the life of the Participant (without survivor benefits) at the Normal Retirement Date of such individual, which is the Actuarial Equivalent of the Participant's Credit Balance as of the Normal Retirement Date. Effective as of January 1, 1997, except as otherwise provided in this Section 4.5, the Actuarial Equivalent assumptions of Appendix V shall be used to convert a Frozen Minimum Benefit under the Prior Plan into a lump sum. Effective for distributions on or after March 31, 1995 and before September 30, 1996, the 30-year Treasury securities rate published for the month preceding the Date of Distribution shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit under the Prior Plan into a lump sum (See Appendix IX). Effective for distributions after September 30, 1996, the 30-year Treasury securities rate for the month of October of the immediately preceding Plan Year shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit under the Prior Plan (see Appendix IX) into a lump sum for distributions commencing on or after January 1 of the next Plan Year, provided that the October 1996 rate shall be used for distributions for the period of October 1, 1996 through December 31, 1997; provided further, that for the period of September 30, 1996 through September 30, 1997, the 30-year Treasury securities rate for the month preceding the Date of Distribution shall be used to convert the Credit Balance into an annuity form or to convert a Frozen Minimum Benefit under the Prior Plan (see Appendix IX) but only with respect to those individuals participating in this Plan on September 30, 1996 and only if it provides the higher benefit.

4.6    (a)    **Continued Accrual.** Except in the case of a Grandfathered Participant who (x) was a Participant in the Chase Lincoln First Bank, N.A. Retirement Plan on July 31, 1984, or (y) was a Participant in the Retirement Plan of the Rochester Community Savings on

31

CBPJPMC00000512

August 31, 1984 and immediately transferred to the employment of Chase Lincoln First Bank N.A. on such date, a Grandfathered Participant shall be entitled to elect to receive(after incurring a Severance Date) an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installments) under this Plan equal to the excess of the sum of (i), (ii) and (iii) over (x):

(i)     2% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service up to December 31, 1996 and (B) Periods of Service thereafter, such sum of (A) and (B) not to exceed in the aggregate 20 years, plus

(ii)    1.75% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service to December 31, 1996 and (B) Periods of Service thereafter to the extent such sum of (A) and (B) exceeds 20 years but not more than 30 years; plus

(iii)   1.00% of Chase Average Compensation multiplied by the sum of (A) Chase Years of Benefit Service up to December 31, 1996 and (B) Periods of Service thereafter to the extent such sum of (A) and (B) exceeds 30 years but not more than 40 years; less

(x)     Government Payments as adjusted in Sections 7.2 C and D of the Chase Plan plus any other offsets or reductions permitted under the Chase Plan.

A Grandfathered Participant described in this Section 4.6(a) who was transferred by Chase or an Affiliated Company of Chase to the employment of Chase Lincoln First Bank, N.A., after July 31, 1984 and before December 31, 1988 shall have his/her benefit calculated under the formula set forth in this Section 4.6(a) and Section 4.6(b) and (c) shall have no application.

32

CBPJPMC00000513

(b)    Chase Lincoln First Bank.  A Grandfathered Participant who was a participant in the Chase Lincoln First Bank, N.A. Retirement Plan on July 31, 1984 shall be entitled to elect to receive (after incurring a Severance Date) an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installments) which is the greater of (i) or (ii).

(i)    the benefit described in Appendix A of the Chase Lincoln First Bank, N.A. Retirement Plan (as restated August 1, 1984) assuming that the benefit was not frozen and fixed as of July 31, 1984, utilizing years of Credited Service and Average Final Compensation as defined in such Plan to the Severance Date, or

(ii)    (A)    the Frozen Lincoln Accrued Benefit as described in Appendix A of the Chase Lincoln First Bank, N.A. Retirement Plan frozen and fixed as of August 1, 1984, plus

(B)    the benefit calculated under the formula set forth in Section 4.6 (a) above except that Chase Average Compensation and Chase Years of Benefit Service shall commence as of August 1, 1984.

A Grandfathered Participant described in this Section 4.6(b) who was transferred from the employment of Chase Lincoln First Bank, N.A., after July 31, 1984 and before December 31, 1988 to that of Chase or an Affiliated Company of Chase shall have his/her benefit calculated under the formula set forth in this Section 4.6 (b) and Section 4.6(a) and (c) shall have no application.

(c)    Rochester Community Bank.  A Grandfathered Participant who was a participant in the Retirement Plan of the Rochester Community Savings Bank on August 31, 1984 and was immediately thereafter transferred to the employ of Chase Lincoln First

33

CBPJPMC00000514

Bank, N.A. shall be entitled to elect to receive (after incurring a Severance Date) an annual benefit amount, commencing at age 65, for his or her life (payable in monthly installment) which is the greater of (i) or (ii).

      (i)    the amount determined under Section 4.6(b)(i) treating all years of Credited with the Rochester Community Savings Bank as if they were with Chase Lincoln First Bank, N.A. or

      (ii)    the sum of the (x) accrued benefit under the Retirement Plan of Rochester Community Savings Bank fixed and frozen as of August 31, 1984 and (y) the benefit calculated under the formula set forth in Section 4.6(a) above, except that Chase Average Compensation and Chase Years of Benefit Service shall commence as of September 1, 1984.

A Grandfathered Participant described in this Section 4.6(c) who was transferred from the employment of Chase Lincoln First Bank, N.A., after August 31, 1984 and before December 31, 1988 to that of Chase or an Affiliated Company of Chase shall have his/her benefit calculated under the formula set forth in this Section 4.6 (c) and Section 4.6(a) and (b) shall have no application.

      (d)    <u>Grandfathered Participant</u>. Effective for Severance Dates on or after January 1, 1997, a Grandfathered Participant is an Eligible Employee who becomes a Participant as of January 1, 1997 in this Plan and was a participant (member) in the Chase Plan as of December 31, 1996 (accruing benefits by virtue of Section 7-A.6 of the Chase Plan) and who, as of December 31, 1988, was a participant (member) in the Chase Plan and as of December 31, 1988 (i) had attained at least age 47 and whose age and number of completed years of Chase Service in the aggregate totaled at least 64, (ii) had attained at least age 52, or (iii) completed 25 or more years of Chase Service.

34

(e)    The benefit provided in this Section 4.6 is a separate accrued benefit and shall be in lieu of the Credit Balance t of the Participant.  The Participant shall have the option to elect prior to his/her Annuity Starting Date either the benefit under this Section 4.6 or his/her Credit Balance provided that the benefit under Section 4.6 shall not be payable in the form of a lump sum and shall only be payable in the form of a life annuity.  If a Participant elects the benefit under this Section 4.6, the benefit under Section 4.1 and Section 4.3 shall no longer be available.

(f)    A Grandfathered Participant who is reemployed after January 1, 1997 shall not accrue an additional benefit under Section 4.6 for an additional Period of Service following the Date of Reemployment; provided that if the employment of a Grandfathered Participant was initially terminated as a result of an Eligible Termination, then the individual shall also accrue a benefit under this Section 4.6.   If the benefit described in this Section 4.6 or comparable provision of the Chase Plan is in pay-status at the Date of Reemployment, then the Grandfathered Participant will be entitled to make a new election as between those benefits accrued after the Date of Reemployment under Section 4.6 or Section 4.3 (if applicable).

(g)    Except as otherwise provided by the last sentence of Section 4.4(a) with respect to the Chase Plan, there shall not be accruals under this Section  4.6 for individuals who are on Authorized Absences due to a long-term disability.

(h)    As noted in the introduction to Article IV, the benefits described in this Section 4.6 are in lieu of benefits accrued under the Chase Plan for those Eligible Employees employed on January 1, 1997.  However, there is no intention to increase the amount of any accrual previously earned under the Chase Plan.

4.7    **Special 1997 Benefits.**  For calendar year 1997, if, pursuant to Appendix IX, one of the Frozen Minimum Benefit plus the benefit described in this Section 4.7 is greater than the benefit derived under Article IV (other than Section 4.6) of this Plan at the date of determination, then a benefit shall be payable under this Section in lieu any other benefit under this Plan or its

35

CBPJPMC00000516

predecessor plans. There shall be added to such Frozen Minimum Benefit the (i) the Pay-Based Credits under Section 4.3 from January 1, 1997 to the earlier of the Severance Date or December 31, 1997, plus (ii) Interest Credits (based upon the Interest Rate then applicable, less one percent) on such Pay-Based Credits for such period only. After December 31, 1997, this additional benefit shall become a new Frozen Minimum Benefit

## ARTICLE V

### Vesting

5.1    Vested Benefit

(a)    A Participant who has completed a Period of Service of at least 5 years has a nonforfeitable right to 100% of such individual's Accrued Benefit; provided that if the employment of a Participant terminates as a result of an Eligible Termination after a Period of Service of at least 4 years, such Participant shall have a nonforfeitable right to 100% of such individual's Accrued Benefit; provided that if a Participant shall die after January 1, 1998 and prior to having completed a Period of Service of at least 5 years, the Accrued Benefit of such individual shall vest..

(b)    Upon attainment of Normal Retirement Age, a Participant has a nonforfeitable right to 100% of his Accrued Benefit.

(c)    When a Participant has a nonforfeitable right to 100% of his Accrued Benefit, such individual is entitled to Plan benefits pursuant to Article IV.

(d)    A Participant who had a Period of Service with Chemical Bank and its Affiliated Companies as of December 11, 1995 of three years or more and was employed by Chemical Bank and its Affiliated Companies on December 11, 1995, has a nonforfeitable right to 100% of such individual's Accrued Benefit.

36

(e)    A Participant in the Chase Plan who had three Years of Eligibility Service or more (as defined in the Chase Plan) as of December 11, 1995 and was employed by Chase and its Affiliated Companies on December 11, 1995 has a nonforfeitable right to 100% of such individual's Accrued Benefit.

**5.2**    <u>Forfeitures</u>

(a)    A Participant who is not vested in his Accrued Benefit as of his or her Severance Date will be deemed to have received a cash-out of the vested portion of his or her Accrued Benefit, and the unvested portion shall be forfeited. The Accrued Benefit that has been forfeited is subject to being re-established pursuant to the provisions of Section 6.5.

(b)    Any forfeiture will be used to reduce the contributions to the Plan otherwise payable by the Employers and will not be applied to increase the benefits that any Participant or retired Participant would otherwise receive under the Plan.

**5.3**    <u>Outstanding Checks</u>

In the event the Plan Administrator, after reasonable effort, is unable to locate a Participant or Beneficiary to whom an outstanding check is payable with respect to benefits due from the Plan, such outstanding checks shall be canceled and used to reduce future Employer contributions; <u>provided</u>, <u>however</u>, that such benefit shall be restored (in an amount equal to the amount canceled) upon proper claim made by such Participant or Beneficiary. Benefits canceled under this Section 5.3 shall be restored to the Participant or Beneficiary in the following order of priority:

(a)    from canceled benefits arising under this Section 5.3, and

(b)    from additional Employer contributions made to restore such canceled benefits.

CBPJPMC00000518

## ARTICLE VI

### Transfers and Reemployment

**6.1    Transfer from One Employer to Another Employer**

A Participant whose employment changes from one Employer to another without a Severance Date will continue to accrue benefits hereunder.

**6.2    Transfer from Employer to a Non-Participating Company**

As of the date that a Participant commences employment with an Affiliated Company that is not an Employer, the Credit Balance of an Account will be frozen other than for Interest Credits under Section 4.3 and additional Periods of Service for purpose of the Section 4.6 shall cease. Service with such Affiliated Company will continue to be counted for purposes of vesting and the appropriate Accruing Factor (but not for purposes of Section 4.6)) in the event that the Participant should return to service with an Employer. Notwithstanding the foregoing sentence, a Participant (effective April 1, 1991 for Participants covered by the MHT Plan) will continue to accrue benefits under Article IV (including Section 4.6 if applicable) if such individual ceases to be an Eligible Employee because he/she is transferred to a foreign payroll but continues to perform services on a salaried basis for an Employer or Affiliated Company outside the United States and its possessions; provided that such individual does not participate in a foreign defined benefit pension plan or, in the case where pension benefits are provided through a defined contribution plan, does not participate in such plan.

**6.3    Transfer from Non-Participating Company to Employer**

As of the date that an Eligible Employee transfers from an Affiliated Company that is not an Employer to an Employer, such individual will become a Participant upon meeting the Eligibility Period; and his Period of Service with the Affiliated Company shall count for

38

CBPJPMC00000519

purposes of vesting, the Eligibility Period, and the appropriate Accruing Factor. Such individual shall not accrue an additional benefit under Section 4.6 for the Period of Service with such Affiliated Company.

6.4    **Reemployment of Vested Participant**

(a)    With respect to the vested Credit Balance described in Article IV (including any benefit from the Prior Plan), or the Account balance described in Section 7.1A of the Chase Plan, when a Participant who has incurred a Severance Date is reemployed as an Eligible Employee after January 1, 1997:

(i)    if such individual has received a lump sum distribution of the Credit Balance or Account balance (or in the case of the Chase Plan elected receipt of the benefit described in Section 7.1 or Section 4.6), such Credit Balance of his/her Account is zero as of his Date of Reemployment; and such Account is increased after the Date of his Reemployment only for Pay-Based and Interest Credits as provided under Article IV; or

(ii)    if such individual has not received a lump-sum or annuity distribution of the Credit Balance or Account balance (or in the case of the Chase Plan has not elected receipt of benefit described in Section 7.1 or Section 4.6), such Credit Balance is equal to the amount credited to such Account as of the date of his Date of Reemployment; and subsequent to such Date of Reemployment, such Account will be increased for Pay-Based and Interest Credits as provided under the Article IV; provided that such individual's Prior Service Balance, if any, will receive Interest Credits only.

(ii)    See Section 6.4(b) for rules when benefits are in pay status.

39

(b)    With respect to the Accrued Benefit in periodic pay status (after January 1, 1997) of a Participant who has incurred a Severance Date and is reemployed as an Employee. the benefit payments shall not be suspended.:

## 6.5    Reemployment of Nonvested Participants

If an individual who was a Participant and not vested in an Accrued Benefit as of such individual's Severance Date is reemployed by an Employer within five years after such Severance Date, such individual upon again becoming an Eligible Employee will have:

(i)    a restored Credit Balance equal to the Lump Sum Accrued Benefit Amount as of the Severance Date plus Interest Credits thereon to the Date of Reemployment, and such Credit Balance will again be determined as provided under Article IV; provided that the Prior Service Balance, if any, will be entitled to Interest Credits only; and

(ii)    to the extent that the individual had accrued a benefit under former Article V of the Plan, as in effect immediately prior to January 1, 1997 which becomes vested after the Date of Re-Employment on or after January 1, 1997, it shall not become an additional Credit Balance.

If such individual is reemployed more than five years after the Severance Date so that such individual has incurred a Break in Service of five years or more, such individual will be treated as a new Employee, and the prior Periods of Service will be disregarded so that any benefit under this Plan or Chase Plan (including, but not limited to, Credit Balance or Final Salary Benefit) shall be forfeited; provided that, such prior Periods of Periods will be recognized for purposes of participation, the Accruing Factor and vesting of future accruals under this Plan following the Date of Reemployment.

40

CBPJPMC00000521

# ARTICLE VII

## Benefits

**7.1    Form of Distributions Generally**

(a)    Subject to the terms and conditions of this Article VII, a Participant with a vested Accrued Benefit who is entitled to commence receiving such benefits under Article VIII, shall receive his/her Credit Balance in one of the forms of benefit set forth in this Article VII.  In the case of benefit specified in Section 4.6, it shall be distributable only in the forms available under the Chase Plan for the benefit described in Section 7.2 of the Chase Plan.  (These forms are an annuity based upon the Grandfathered Participant's life expectancy or a 50%, 75% or 100% joint and survivor annuity.)  See Appendix V for the relevant actuarial factors.

(b)    With respect to benefits accrued under this Plan prior to January 1, 1997, under the Retirement Plan of Chemical Bank and Certain Affiliates prior to January 1, 1991, under the MHT Plan prior to January 1, 1993, and under the Chase Plan prior to January 1, 1997, the payment forms applicable to the benefits accrued to the applicable date shall be preserved to the extent required by Section 411(d)(6) of the Code.

(c)    For the purposes of Appendix IX, with respect to an Eligible Employee who incurs a Severance Date on or after January 1, 1997 and was an active Participant in this Plan immediately prior to its merger with the Chase Plan and accrued an annuity benefit under the terms of the Retirement Plan of Chemical Bank and Certain Affiliates as of December 31, 1990 or the annuity benefit described in former Section 5.5 of this Plan (as in effect immediately prior to January 1, 1997), then the annuity benefit payable to a Participant under such Retirement Plan or former Section 5.5 (but only if such December 31, 1990 benefit or Section 5.5 benefit applicable to the Participant provided a larger benefit due to the Participant) shall be increased by .25 percent for each full month between (i)

41

CBPJPMC00000522

January 1, 1991, in the case of the benefit accrued under the Retirement Plan of
Chemical Bank and Certain Affiliates) and the earlier of December 31, 1995 or
the Participant's Severance Date or (ii) January 1, 1993, in the case of the benefit
described in former Section 5.5 of the Plan and the earlier of December 31, 1995
or the Participant's Severance Date. Subject to Section 411(d)(6) of the Code, the
payment of increased benefits shall be made in the same form as elected by the
Participant for his or her Accrued Benefit..

### 7.2    Normal Form of Benefit

(a)    The normal form of benefit for a Participant who is married on his/her Annuity
Starting Date shall be the Joint and 50% Survivor (Spouse) Annuity with respect
to (I) a Participant's Credit Balance which must be the Actuarial Equivalent of
such Lump Sum Accrued Benefit or (II) if elected and applicable, the Actuarial
Equivalent of the single life annuity described in Section 4.6, adjusted using the
factors described in Appendix V.

(b)    The normal form of benefit for a Participant who is not married on his/her
Annuity Starting Date shall be with respect to (I) such individual's Credit Balance
the single life annuity described in Section 4.5 or (II) if elected and applicable, the
single life annuity described in Section 4.6 (if any).

(c)    If, after a Participant has commenced receiving his/her benefits in the form of a
Joint and 50% Survivor (Spouse) Annuity, the Participant's spouse designated as
the survivor predeceases him/her, no adjustment shall be made in the benefits paid
to such Participant, the Participant may not name a new survivor beneficiary and
all benefit payments should cease on the Participant's death. This same rule
applies to all Joint and Survivor Annuities described in Section 7.3 or otherwise
offered under the Plan.

42

CBPJPMC00000523

(d)    A Participant may, by Notice to the Administrator, and without consent of his/her spouse, elect to commence receiving a Joint and 50% Survivor (Spouse) Annuity on any date specified as permissible in Article VIII.

(e)    Notwithstanding any other provision of this Plan, if the present value of a Participant's vested Accrued Benefit exceeds $5000 (or such other amount specified in Sections 411(a)(11) and 417(e) of the Code), no distribution shall be made without the Participant's written consent prior to Normal Retirement Age, and if such distribution is in a form other than a Joint and 50% Survivor (Spouse) Annuity and the Participant is married, the spouse's written consent, which must be notarized or witnessed by Plan representative. See Section 7.8.

**7.3    Optional Forms of Benefit**

(a)    Subject to the remainder of this Article 7, a Participant may elect to receive his/her vested Credit Balance in one of the optional forms of benefit described below rather than receiving such benefit in the form specified in Section 7.2. Each such optional form of benefit shall be the Actuarial Equivalent of the Participant's Accrued Benefit. Conversion factors for Actuarial Equivalents are set forth in Appendix V.

(b)    Single Life Annuity. The Credit Balance may be received in the form of a Single Life Annuity which provides for payments in twelve equal monthly installments per year during a Participant's lifetime, ending with the payment due for the month in which the Participant dies.

(c)    Joint and Survivor Benefit. The Credit Balance may be received in the form of a 50% or 100% Joint Survivor (Spouse or non Spouse) Annuity (the "Joint and Survivor Benefit") which provides reduced monthly payments during the Participant's lifetime, and after death, a survivor annuity for the Participant's Surviving Spouse or other surviving Beneficiary with monthly payments equal to

43

CBPJPMC00000524