(c)    If a Participant would otherwise accrue a benefit during a Plan Year that would produce an Annual Benefit that exceeds the primary limit imposed by Code Section 415(b), such Participant's rate of accrual will be reduced so that his or her Annual Benefit does not exceed such primary limit.

(d)    For purposes of this Appendix I, in determining what is an Affiliated Company, the phrase "more than 50%" shall be substituted for the phrase "at least 80%" in each place it appears in Code Section 1563(a)(1).

1.2    <u>Primary Limit under Code Section 415.</u>    (a)  Under the primary limit imposed by Code Section 415(b), the maximum Annual Benefit payable to a Participant may not exceed the lesser of:

(i)    $90,000 increased annually during the Participant's employment to reflect the cost-of-living adjustment set forth in Code Section 415(d)(1)(A) but only for the year in which such adjustment is effective, or

(ii)    100 percent of the Participant's average annual Total Compensation (as defined below) for the Participant's three highest paid consecutive Plan Years while an active Participant ("highest three year average compensation");

provided, however, that the primary limit on the Annual Benefit payable to a former Participant shall be increased after the Employee's separation from service to reflect post-separation increases in the cost-of-living, as provided by Code Section 415(d)(1)(A) and (B) and the regulations thereunder; provided, further, that if such former Participant receives his or her benefit from the Supplemental Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies in a single lump sum, the cost-of-living adjustment set forth in the first proviso shall not be made.

101

CBPJPMC00001420

(b)      For purposes of this Appendix I, "Total Compensation" means a Participant's wages as defined in Code Section 3401(a), and all other payments of compensation, as reported or reportable on Form W-2 for the Plan Year, but excluding amounts paid or reimbursed for moving expenses incurred by such Participant, all as set forth in Treas. Reg. § 1.415-2(d)(11)(i).

1.3     Reduction of Primary Limit for Former Participants with Less than Ten Years.

(a)      If a former Participant has less than 10 years of participation (as defined in Code Section 415(b)(5) and as modified by Code Section 415(b)(5)(D), the maximum Annual Benefit payable under Section 1.2(a) shall be reduced by multiplying such dollar amount by a fraction in which the numerator is the actual number of years, or parts thereof, of participation in the Plan (and predecessor plans), and the denominator is ten (but not less than 1/10).

(b)      If a former Participant has less than 10 years of service (as defined in Code Section 415(b)(5)), the maximum Annual Benefit payable under Section 1.2(b), shall be reduced by multiplying the amount by a fraction in which the numerator is the actual number of years, or parts thereof, of such service, and the denominator is ten (but not be less than 1/10). Likewise, the denominator of the defined benefit fraction in Section 1.8 shall be reduced by the same fraction but years of service shall include future years of service occurring before the Participant's Normal Retirement Age.

1.4     Impact of Early and Late Commencement of Benefits.   (a)  If a Participant's Annual Benefit commences before the Participant's social security retirement age, but on or after age 62, the dollar limit in Section 1.2(a) shall be reduced (after adjustment under Section 1.3, if any) as follows:

(i)      If the social security retirement age is 65, the reduction shall be 5/9 of one percent per month for each month by which benefits commence prior to the month the Participant attains 65; and

(ii)      If the social security retirement age exceeds 65, the reduction shall be 5/9 of one percent for each of the first 36 months and 5/12 of one percent for each of the

102

CBPJPMC00001421

additional months (up to 24 months) by which benefits commences prior to the month the Participant attains social security retirement age.

(b)     If a Participant's Annual Benefit commences before he or she reaches 62, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at age 62 as determined above, using the greater of the interest rate specified in Appendix V or 5 percent.

(c)     If a Participant's Annual Benefit commences after social security retirement age, the dollar limit in Section 1.2(a) shall be the actuarial equivalent of an Annual Benefit commencing at social security retirement age (after adjustment under Section 1.3, if any), using the lesser of the interest rate specified in Appendix or 5 percent.

(d)     Social security retirement age means the age used as the retirement age under section 216(1) of the Social Security Act, which is presently 65 for a person born before 1938, age 66 for a person born between 1938 and 1954, and age 67 for a person born after 1954.

1.5     Special $10,000 Rule.  If a Participant has never participated in a defined contribution plan, a welfare benefit plan described in Code Section 419(e), or an individual medical account described in Code Section 415(1)(2) maintained by an Employer or an Affiliated Company, the primary limit set forth in Section 1.2 shall not prevent such Participant from receiving an Annual Benefit of up to $10,000 multiplied by a fraction in which the numerator is the actual number of years, or parts thereof, of service (as defined in Code Section 415(b)(5), and the denominator is ten (but not less than 1/10).

1.6     TEFRA Code Section 415 Grandfather.  In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan before January 1, 1983, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1982 under the terms and conditions of the Prior Plan or

103

CBPJPMC00001422

the MHT Plan and the Code Section 415 limits as effective on July 1, 1982, disregarding any cost-of-living adjustments occurring after July 1, 1982.

1.7    <u>TRA 86 Code Section 415 Grandfather</u>.  In the case of an individual (i) who was a participant of the Prior Plan or the MHT Plan on January 1, 1987, and (ii) had an accrued benefit that would otherwise exceed Section 1.2, the primary limit under Code Section 415(b) for such individual shall be equal to such accrued benefit. For this purpose "accrued benefit" means the individual's accrued benefit on December 31, 1986 under the terms and conditions of the Prior Plan or the MHT Plan and the Code Section 415 limits effective on May 5, 1986 (including any adjustment made under Section 1.5), disregarding any cost-of-living adjustments occurring after May 5, 1986.

1.8    <u>Combined Fraction Limit</u>.  (a)  The sum of a Participant's defined benefit fraction (as defined below) and defined contribution fraction (as defined below) shall not exceed 1.0 in any Plan Year. For this purpose:

(1)    "Defined benefit fraction" means a fraction, the numerator of which is the sum of the Participant's projected annual benefits under all defined benefit plans (whether or not terminated) of the Employer and Affiliated Companies, and the denominator of which is the lesser of 125 percent of the dollar limit in effect for the Plan Year under Code Section 415(b)(1)(A) (including any adjustments to such limitation under Sections 1.3, 1.6 and 1.7) or 140 percent of highest three year average compensation (as defined in Section 1.2).

(2)    "Defined contribution fraction" means a fraction, the numerator of which is the sum of the annual additions(as determined under Code Section 415(c) for the year in which such annual additions were credited) credited to the account of a Participant in all years up to the close of the current year under one or more defined contribution plans (whether or not terminated)

104

CBPJPMC00001423

maintained by any Affiliated Company (whether before or after it became an Affiliated Company), including any amounts credited to a welfare benefit fund or an individual medical account described in Code Sections 419(e) and 415(1)(2) respectively, and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior years of service with any Affiliated Company (regardless of whether a defined contribution plan was maintained by such employer). The maximum aggregated amount in any year is the lesser of 125 percent of the dollar limit in effect under Code Section 415(c)(1)(A) or 25 percent of the Participant's Total Compensation for such Year.

(3)    "Projected annual benefit" means the Annual Benefit as defined in Section 1.1 that the Participant would be entitled to under the Plan, or any other defined benefit plan, if the Participant were to continue to participate in the Plan until his or her Normal Retirement Age (or current age, if later), and the Participant's Total Compensation for the current Plan Year and all other relevant factors used to determine benefits under the Plan, or any other defined benefit plan, were to remain constant for all future years.

(b)    If the Participant's defined benefit fraction and defined contribution fraction would otherwise exceed 1.0, the Participant's benefit accruals under this Plan shall be reduced to the extent necessary to prevent such combined fraction from exceeding 1.0 in the following order:

(A)    first, the Participant's Final Salary Benefit accruals for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

(B)    second, the Participant's Credit Balance accruals for the Plan Year shall be reduced, and if such reduction is not sufficient, then;

105

CBPJPMC00001424

(C)     third, the Participant's accruals under the Savings Incentive Plan of Chemical Bank and Certain Affiliated Companies shall be reduced.

1.9     <u>TEFRA Combined Fraction Grandfather</u>.  If a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1983 would otherwise exceed 1.0, then the numerator of the defined contribution fraction shall be permanently reduced, in accordance with applicable regulations, by an amount so that the sum of the defined benefit fraction and defined contribution fraction does not exceed 1.0 for such year.

1.10    <u>TRA 86 Combined Fraction Grandfather</u>.  With respect to the sum of a Participant's defined contribution fraction plus defined benefit fraction for the last year beginning before January 1, 1987, in accordance with applicable regulations, an amount shall be permanently subtracted from the numerator of the defined contribution fraction (not exceeding such numerator) so that the sum of the defined benefit fraction and defined contribution fraction computed under Code Section 415(e)(1) (determined as if the Code Section 415(e)(1) which are effective for the first year beginning after December 31, 1986, were in effect for such year) does not exceed 1.0 for such year.

106

CBPJPMC00001425

## Appendix II

### MHT Plan Transaction Rules

This Appendix describes transactions set forth in the MHT Plan which impacts the calculation of service, vesting and benefits under this Plan including the frozen benefits described in Section 5.5; provided, that, in the event of any inconsistency between this Appendix and the MHT Plan with respect to the matters described herein, the MHT Plan shall control; provided, further, that the benefit accruals set forth in the MHT Plan ceased as of December 31, 1992.

2.1    Acquisition of CIT.  (a)  Every Eligible Employee (as defined in the MHT Plan) who was a participant of the Retirement Plan for Employees of C.I.T. Financial Corporation and Certain of its Subsidiaries as such plan existed immediately preceding July 1, 1986 (the "C.I.T. Plan"), became a participant of the MHT Plan on July 1, 1986.

(b)    Every Eligible Employee (as defined in the MHT Plan) who was employed by The C.I.T. Group ("C.I.T.") on July 1, 1986 and who was not a participant of the C.I.T. Plan on July 1, 1986 became a participant of the MHT Plan on the earlier of (i) the date he or she would have become a participant of the C.I.T. Plan if the provisions thereof had remained in effect, or (ii) upon satisfaction of the eligibility requirements under the MHT Plan as then in effect.

(c)    As provided in Article III, a Member's (as defined in the MHT Plan) service with C.I.T. prior to July 1, 1986 are be counted in accordance with the rules of the MHT Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan.

(d)    As provided in Article III, a Member's benefit service on account of service with C.I.T. prior to July 1, 1986 are counted in accordance with the rules of the MHT Plan towards the Member's Years of Benefit Service under the MHT Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e.. there shall be no double-counting as a result of this section).

107

CBPJPMC00001426

(e)    See benefit formula for C.I.T. in Section 7.1(e) of MHT Plan.

(f)    With respect to any Member who was (i) actively employed by C.I.T. and a member of the C.I.T. Plan on June 30, 1986, and (ii) age 54 with 9 years of benefit service under the C.I.T. Plan on June 30, 1986, such Member's normal retirement benefit may be paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on June 30, 1986, provided such Member files an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan, as the case may be. With respect to any Member of the C.I.T. Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986, paid in one of the optional forms pursuant to the provisions of sections 8.2 and 8.3 of the C.I.T. Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan, or this Plan, as the case may be.

2.2    Plan Merger with MHCS.    (a) Every Eligible Employee who was a participant of the Retirement Plan of Manufacturers Hanover Financial Services, Inc. as such plan existed immediately preceding January 1, 1987, became a participant of the MHT Plan on January 1, 1987.

(b)    A Member's service with Manufacturers Hanover Financial Services, Inc. ("MHCS") prior to January 1, 1987 shall be counted in accordance with the rules of the MHT Plan towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or this Plan, as provided in Article III.

(c)    A Member's benefit service on account of service with MHCS prior to January 1, 1987 shall be counted in accordance with the rules of the MHT Plan towards the Member's Years of Benefit Service under Section 5.1(b) of the Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

108

CBPJPMC00001427

(d)    A Member who was employed by MHCS prior to January 1, 1987, terminates service with MHCS on or after January 1, 1987 and retires on or after his or her Normal Retirement Date (as defined in the MHT Plan) shall have a normal retirement benefit (as defined in the MHT Plan) that is the greater of (i) the benefit computed under the MHT] Plan, or (ii) the benefit that would been payable if such benefit was computed pursuant to the applicable provisions of the MHCS Plan as in effect immediately preceding January 1, 1987, reduced by the Actuarial Equivalent (using the UP 84 mortality table and the interest prescribed by the Pension Benefit Guaranty Corporation with respect to terminations occurring on the date as of which equivalence is being determined) of the normal form of the Member's benefit provided by the vested portion of his or her Flexible Retirement Account as of his or her Normal Retirement Date. The benefit described in Section 2.2(d)(i) or (ii) was frozen as provided in Section 5.5 of this Plan as of December 31, 1992.

(e)    With respect to any Member both actively employed by MHCS and who was a member of the MHCS Plan on June 30, 1986, and on such date was within one year of eligibility for early retirement under the terms of the MHCS Plan as in effect on June 30. 1986 (i.e., was age 54 and had 9 Years of Benefit Service), such Member's normal retirement benefit may be paid in one of the optional forms pursuant to sections 6.1 and 6.2 of the MHCS Plan as in effect on June 30, 1986, provided such Member has filed an appropriate election with the Committee. Absent such an election, the Member's Plan benefit will be distributed pursuant to the general provisions of the MHT Plan or this Plan, as the case may be. With respect to any Member of the MHCS Plan on June 30, 1986 who does not satisfy the conditions of the first sentence of this paragraph as of June 30, 1986, such Member may elect to have his Plan benefit, to the extent accrued as of June 30, 1986 paid in one of the optional forms pursuant to the provisions of sections 6.1 and 6.2 of the MHCS Plan as in effect on such date. All benefits accrued thereafter shall be subject to the general provisions of the MHT Plan or this Plan, as the case may be.

2.3    Acquisition of Bankers Trust Company. (a) A Member's service with Bankers Trust Company prior to its acquisition is counted in accordance with the Agreement (as defined below)

109

CBPJPMC00001428

entered into at the time of the acquisition towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan or under this Plan as provided in Article III..

(b)    Any Employee (as defined in the MHT Plan) formerly employed by Bankers Trust Company who has been employed by Manufacturers Hanover Trust Company ("MHT") pursuant to Section 9.9 of the Agreement between MHT and Bankers Trust Company dated as of October 31, 1979 (the "agreement"), shall, as of the date of his or her employment by MHT become vested in his or her accrued benefit under the Plan for Pensions of Bankers Trust Company, computed as of the closing date of the purchase and sale of the banking offices described in the agreement (the "closing date").

(c)    Such an Employee's accrued normal retirement benefit under the MHT Plan shall be the greater of:

> (i)    the accrued normal retirement benefit computed in accordance with the Plan for Pensions of Bankers Trust Company as in effect on the closing date, taking into account the Employee's total years of service and his or her compensation both with MHT and Bankers Trust Company; or

> (ii)    the sum of (1) the Employee's accrued normal retirement benefit as of the closing date under the Plan for Pensions of Bankers Trust Company and (2) the Employee's accrued normal retirement benefit under the MHT Plan taking into account only years of service as an Employee following the closing date.

The benefit described in Section 2.3(c)(i) or (ii) was frozen as provided in Section 5.5 of this Plan as of December 31, 1992.

2.4    <u>Certain Former Employees of Wells Fargo Bank</u>.  Any Employee formerly employed by the Corporate Trust and Corporate Agency departments of Wells Fargo Bank ("Wells") who became an Employee on or after August 18, 1983 as a result of the purchase of certain assets from

110

CBPJPMC00001429

Wells and for whom assets were transferred to the Plan shall, as of the date of his employment with the Bank or a Related Company (each as defined in the MHT Plan), have each year of service for which credit was given under the Wells Fargo & Company Retirement Plan, as in effect on August 18, 1983 ("Wells Plan"), credited as a Year of Service for purposes of eligibility and vesting under the MHT Plan. Each such year of service under the Wells Plan shall also be credited as a Year of Benefit Service under the MHT Plan for the purpose of determining the Employee's accrued benefit under the MHT Plan as of January 1, 1993.

2.5    Certain Former Employees of Dollar Dry Dock.  Pursuant to the Agreement to Purchase Assets and Assume Liabilities dated as of January 10, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York and the Amendment to Purchase Assets and Assume Liabilities dated as of June 23, 1986 between Manufacturers Hanover Trust Company and Dollar Dry Dock Savings Bank of New York, any Employee who was employed by Dollar Dry Dock on July 13, 1986 and became an Employee on July 14, 1986 pursuant to such amended agreement,  has his years of service with Dollar Dry Dock prior to July 14, 1986 taken into account as Years of Service under  the MHT Plan for purposes of: (i) determining eligibility to participate in the MHT Plan or this Plan, as provided in Article III, and (ii) determining nonforfeitable rights under  MHT Plan or this Plan, as provided in Article III. Such years of service with Dollar Dry Dock prior to July 14, 1986 shall also be taken into account as Years of Benefit Service for purposes of determining eligibility for early retirement benefits and reduced vested benefits under the MHT Plan and this Plan, as provided in Article III, but not for purposes of benefit accrual, provided that such Employee has at least 11 Years of Service with a Participating Company (as defined in the MHT Plan) and Dollar Dry Dock combined. As provided in Article III, years of Service for the period of employment with Dollar Dry Dock  are determined in accordance with the rules of the MHT Plan.

2.6    Certain Former Employees of Goldome.  (a)  Pursuant to the Agreement between Goldome and Manufacturers Hanover Trust Company Relating to the Sale of Certain New York City Metropolitan Area Branches dated as of March 29, 1989, any Employee who was employed by Goldome on November 12, 1989 and became an Employee on November 13, 1989 pursuant to such

111

CBPJPMC00001430

agreement, had his years of service with Goldome prior to November 13, 1989 (including years of service with any other employer prior to November 13, 1989 which is taken into account under the Goldome Retirement Plan) taken into account as Years of Service under the MHT Plan solely for purposes of: (i) determining eligibility to participate in the MHT Plan and this Plan as provided in Article III, and (ii) determining nonforfeitable rights under of the MHT Plan and as provided in Article III of this Plan, and (iii) for Severance Dates occurring on or after July 1, 1994, determining eligibility for the Benefits described in Section 5.2(a) or 5.2(c) but only in the event of an Eligible Termination. Years of Service for the period of employment with Goldome shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan, as provided for in Article III.

      (b)    Pursuant to the Agreement between Goldome and Manufacturers Hanover Trust Company Relating to the Further Sale of Certain New York City Metropolitan Area Branches dated as of November 27, 1990, any Employee who was employed by Goldome on May 27, 1991 and became an Employee on May 28, 1991 pursuant to such agreement, had his or her years of service with Goldome prior to May 28, 1991 (including years of service with any other employer prior to May 28, 1991 which is taken into account under the Goldome Retirement Plan) taken into account as Years of Service under this Plan solely for purposes of: (i) determining eligibility to participate in the MHT Plan or this Plan, as provided in Article III, (ii) determining nonforfeitable rights under of the MHT Plan and this Plan as provided in Article III, and (iii) for Severance Dates occurring on or after July 1, 1994, determining eligibility for the Benefits described in Section 5.2(a) or 5.2(c) but only in the event of an Eligible Termination. Years of Service for the period of employment with Goldome shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan as set forth in Article III.

      2.7   <u>Certain Former Employees of Dan River</u>. Any Employee who (i) was employed by Dan River on May 25, 1989, and (ii) became an Eligible Employee on May 26, 1989, shall have his or her years of service with Dan River prior to May 26, 1989 taken into account as Years of Service under MHT Plan and this Plan, as the case may be, for purposes of: (i) determining eligibility to

112

CBPJPMC00001431

participate in MHT Plan and this Plan, as provided in Article III, (ii) determining nonforfeitable rights under MHT Plan and this Plan as provided in Article III. Years of Service for the period of employment with Dan River shall be determined in accordance with the rules of the MHT Plan and shall be taken into account for purposes of this Plan as set forth in Article III.

2.8   Manufacturers Hanover Mortgage Corporation.   The normal retirement benefit (as defined in the MHT Plan) payable to a Member who terminates service with Manufacturers Hanover Mortgage Corporation after December 31, 1984 and retires on or after his Normal Retirement Date (as defined in the MHT Plan) shall be payable in accordance with Section 5.4(a) of the Stock Purchase Agreement dated as of March 24, 1986 between Manufacturers Hanover Corporation and Fireman's Fund Insurance Company.

2.9   Other Acquisitions   (a)  A Member's service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Service (as defined in the MHT Plan) under the MHT Plan and accordance with Article III of this Plan.

(b)   A Member's benefit service on account of service with Dollar Dry Dock, Iselin Jefferson, United California Bank, Ritter Financial Corp. and Lionel D. Edie prior to their acquisition shall be counted in accordance with the agreement entered into at the time of their respective acquisitions towards the Member's Years of Benefit Service (as defined in the MHT Plan) under the MHT Plan and Section 5.1 of this Plan; provided, however, that this provision shall not result in the crediting of any day of service towards more than one Year of Benefit Service (i.e., there shall be no double-counting as a result of this section).

2.10   Acquisitions Prior to 1976.   A Member on January 4, 1976 who had service with either National Bronx Bank, Peoples Industrial Bank, Banco Commerciale, Mortgage Corporation of New York or Standard National Bank of New York prior to the acquisition of any such corporation by

113

CBPJPMC00001432

Manufacturers Hanover Trust Company, shall be credited with Years of Benefit Service under the MHT Plan for the period of his or her continuous service with such corporation after completing one year of service with such corporation and attaining age 25.

2.11    Sale of Manufacturers Hanover Investment Corporation.    (a)  Pursuant to the Stock Purchase Agreement dated as of January 7, 1988 between Manufacturers Hanover Corporation and Paine Webber Group Inc. each employee of Manufacturers Hanover Investment Corporation ("MHIC") or MH Investment Counsel, Inc. ("Investment Counsel") who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988, and who is not fully vested as of January 29, 1988 under the Plan shall be given Years of Service solely for vesting purposes under the MHT Plan or this Plan, as the case may be, for periods of continuous employment with the Paine Webber Group, Inc., MHIC, or Investment Counsel, as the case may be, after January 29, 1988.

(b)    Benefits payable to an employee of MHIC or Investment Counsel who remains an employee of MHIC or Investment Counsel immediately after January 29, 1988 and who does not make an election to retire under this Plan on or prior to February 29, 1988, shall be payable to such an employee pursuant to the otherwise applicable terms of, and at the time and in the amounts provided under the MHT Plan based upon such employee's Years of Service (including Years of Service under subparagraph (a) of this Section), Years of Benefit Service and salary received from MHIC or Investment Counsel, as the case may be, through January 29, 1988.  This Plan has succeeded to this obligation of the MHT Plan.

(c)    Benefits payable to such an employee under the terms of the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable until such employee retires or otherwise terminates employment with the Paine Webber Group, Inc., MHIC or Investment Counsel. An employee not eligible to retire under the MHT Plan on or before January 29, 1988 shall be treated as a terminated vested employee upon his termination of employment with MHIC, Investment Counsel or the Paine Webber Group, Inc.  This provision also applies to the Plan.

114

CBPJPMC00001433

2.12    <u>Sale of Manufacturers Hanover Consumer Services.</u>

(a)    Pursuant to the Stock Purchase Agreement dated as of April 21, 1988 among Manufacturers Hanover Corporation, Manufacturers Hanover Financial Corporation, and Credithrift Financial Corporation, each Employee of Manufacturers Hanover Consumer Services ("MHCS"), or of any company in which MHCS owns or holds any interest and which MHCS controls ("MHCS Company"), on May 31, 1988, who participated in the Plan as of May 31, 1988 (such employees hereinafter are referred to as "MHCS Employees") shall be credited with Years of Service, solely for purposes of vesting under the MHT Plan and, as provided in Article III, under this Plan, for periods of employment after May 31, 1988 with Credithrift Financial Corporation ("Credithrift"), MHCS or any affiliate of Credithrift or MHCS, as if such periods of employment had been with the Bank or another Participating Company (as defined in the MHT Plan).

(b)    Benefits accrued through May 31, 1988 by MHCS Employees under the MHT Plan shall be payable to such MHCS Employees pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan, subject to this Section, based upon such MHCS Employees' Years of Benefit Service with, and salary received from, MHCS and any MHCS Company through May 31, 1988 (and periods of employment prior to May 31, 1988 with any other employer taken into account under the MHT Plan).

(c)    Benefits accrued under the terms of the MHT Plan by former employees of MHCS or any MHCS Company and any predecessors thereof whose termination of employment occurred prior to May 31, 1988 ("Former MHCS Employees"), to the extent not previously distributed, shall be payable to such Former MHCS Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan. This Plan has succeeded to this obligation of the MHT Plan.

(d)    Any MHCS Employee eligible for an early retirement benefit provided under Section 7.2 of the MHT Plan as of May 31, 1988 shall remain eligible for such benefit upon their termination of

115

CBPJPMC00001434

employment; every other MHCS Employee shall be eligible for the benefit provided under Section 7.3 of the MHT Plan for benefits commencing prior to such employee's Normal Retirement Date. This Plan has succeeded to this obligation of the MHT Plan.

(e)    No further benefits shall accrue under the MHT Plan (and accordingly, this Plan) to any MHCS Employee or Former MHCS Employee subsequent to May 31, 1988 (unless any such employee is hired after May 31, 1988 by an Employer under this Plan and again becomes eligible to accrue benefits thereunder).

(f)    Benefits payable to an MHCS Employee under the MHT Plan (and accordingly, this Plan) upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the MHCS Employee retires or otherwise terminates employment with Credithrift, MHCS and any affiliate of Credithrift or MHCS.

(g)    MHCS and each MHCS Company shall cease to be a Participating Company and a Related Company as those terms are defined in the MHT Plan on May 31, 1988.

2.13    Sale of C.I.T.    (a)    Pursuant to the CIT Stock Purchase Agreement dated as of September 18, 1989 between The Dai-Ichi Kangyo Bank, Limited and Manufacturers Hanover Corporation (the "Stock Purchase Agreement") and applicable law, (i) employees (including employees on disability, layoff, leave of absence or vacation) of The CIT Group Holdings, Inc. ("CIT"), or of any company of which CIT owns, directly or indirectly, 25% or more of the outstanding capital stock, other than a company which is an Investment Holding within the meaning of the Stock Purchase Agreement ("CIT Company") (such employees hereinafter referred to as "CIT Employees") and (ii) former employees of CIT, a CIT Company, or any corporation or other entity that was directly or indirectly owned by CIT at any time on or after May 1, 1984, whose termination of employment occurred before the Closing Date (as defined by the Stock Purchase Agreement) (such former employees hereinafter referred to as "Former CIT Employees"), accrued no further benefits under the MHT Plan as of the Closing Date. Accordingly, they accrued no additional benefits under this Plan.

116

CBPJPMC00001435

(b)    No period of service by any CIT Employees and Former CIT Employees with The Dai-Ichi Kangyo Bank, Limited, CIT, any CIT Company, or any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT subsequent to the Closing Date shall be taken into account for any purpose under the MHT Plan or this Plan.

(c)    Those benefits payable to CIT Employees and Former Employees under annuity contracts purchased by the MHT Plan (which shall be the only benefits payable to CIT Employees and Former CIT Employees subsequent to the transfer of assets from MHT Plan to the qualified defined benefit pension plan established by CIT pursuant to the CIT Stock Purchase Agreement) shall to the extent not previously distributed or transferred to a qualified defined benefit pension plan established by CIT pursuant to the Stock Purchase Agreement, be payable to CIT Employees and Former CIT Employees (and, in the event of their deaths, their beneficiaries) pursuant to the terms of, and at the time and in the amounts provided under, the MHT Plan. On and after the date of the transfer of assets from the MHT Plan to the qualified defined benefit plan established by CIT pursuant to the Stock Purchase Agreement, the MHT Plan and accordingly, this Plan shall have no liabilities or obligations with respect to CIT Employees or Former CIT Employees except as expressly provided in this paragraph (c).

(d)    Benefits provided by such annuity contracts as described in paragraph (c) of this Section to a CIT Employee under the MHT Plan upon early or normal retirement or upon any other termination of employment shall not be payable prior to the date the CIT Employee retires or otherwise terminates employment with The Dai-Ichi Kangyo Bank, Limited, CIT and any affiliate of The Dai-Ichi Kangyo Bank, Limited or CIT.

(e)    CIT and each CIT Company ceased to be a Participating Company and a Related Company on the Closing Date as those terms are defined under the MHT Plan.

117

CBPJPMC00001436

Appendix III

Top-Heavy Provisions

3.1    Top-Heavy Determination.  For any Plan Year commencing in 1984 or thereafter, the Plan is a Top-Heavy Plan (a) if the Plan is not a member of a Required Aggregation Group and the Plan has a Top-Heavy Ratio greater than 60% or (b) if the Plan is a member of a Required Aggregation Group which has a Top-Heavy Ratio of greater than 60%. Notwithstanding the above, if the Plan is a member of a Permissive Aggregation Group with a Top-Heavy Ratio less than or equal to 60 percent it shall not be considered a Top-Heavy Plan.

The following provisions of this Appendix III apply notwithstanding any other provision of the Plan.

3.2    Minimum Vesting.  If the Plan is determined to be a Top-Heavy Plan for a Plan Year. a Participant with a Period of Service of 3 years shall be fully vested in his/her Accrued Benefit.

If the Plan subsequently is determined to no longer be a Top-Heavy Plan, then the above vesting shall not apply to any portion of a Participant's Accrued Benefit which is accrued on or after the first day of the first Plan Year in which the Plan is no longer a Top-Heavy Plan.

3.3    Minimum Benefit Accrual.

(a)    If the Plan is determined to be a Top-Heavy Plan for a Plan Year, each Participant who has not separated from service as of the end of the Plan Year and who is not a Key Employee, shall accrue a minimum Annual Benefit in the form of a single life annuity commencing as of the Normal Retirement Date equal to two percent (three percent in any year when the Top-Heavy Ratio is 90 percent or greater) of Top-Heavy Average Total Compensation multiplied by the number of Plan Years during which the Plan was Top-Heavy during a Participant's Years of Service up to a maximum of 10 years.

118

CBPJPMC00001437

(b)    A Top-Heavy Plan shall not be treated as meeting the requirements of this Section 3.3 unless the Plan meets such requirements without taking into account any Social Security contributions or benefits.

(c)    Notwithstanding the above provisions, this Section 3.3 will not apply to any Participant to the extent that such Participant is covered under any other qualified plan of an Affiliated Company and such other plan provides the minimum allocation or benefit requirement applicable to Top-Heavy plans.

3.4    <u>Adjustment to Combined Plan Limitation</u>.  If the Plan is determined to be a Top-Heavy Plan for any Plan Year, then the limitation provided under Section 2.8 of Appendix I the Plan shall be determined by substituting "100 percent" for "125 percent" wherever it appears in such section.

3.5    <u>Definitions</u>.

(a)    "Determination Date" means the last day of the preceding plan year for any plan year subsequent to the first plan year of a plan. For the first plan year of any plan, Determination Date means the last day of the plan year.

(b)    "Key Employee" means any Employee or former Employee (and the beneficiaries of such Employee or former Employee) who at any time during the Determination Period was an officer of an Affiliated Company with Total Compensation greater than 50% of the amount in effect under Section 415(b)(1)(A) of the Code, an owner (or considered an owner under Section 318 of the Code) of one of the ten largest interests in an Affiliated Company if such individual's Total Compensation exceeds the dollar limitation under Section 415(c)(1)(A) of the Code, a five percent owner of an Affiliated Company, or a one percent owner of an Affiliated Company who has an annual compensation of more than $150,000.  Determination Period" means the plan year containing the

119

CBPJPMC00001438

Determination Date and the four preceding plan years. The determination of who is a key Employee will be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(c)    "Permissive Aggregation Group" means each plan in the Required Aggregation Group and any other qualified plan(s) chosen by the  Company which are maintained by an Affiliated Company, if such group of plans would meet the requirements of Sections 401(a)(4) and 410 of the Code.

(d)    "Required Aggregation Group" means (i) each qualified plan of an Affiliated Company in which at least one Key Employee participates and (ii) any other qualified plan of an Affiliated Company which enables any plan described in (i) to meet the requirements of Section 401(a)(4) or Section 410 of the Code.

(e)    "Top-Heavy Ratio" means, with respect to the plans taken into consideration, a fraction, the numerator of which is the sum of the Key Employees' account balances under the applicable defined contribution plans and the present value of Key Employees' accrued benefits under the applicable defined benefit plans, and the denominator of which is the sum of all participants' account balances under the applicable defined contribution plans and the present value of all participants' benefits under the applicable defined benefit plans. Both the numerator and the denominator of this fraction are adjusted so as to include plan distributions made to participants in the five-year period ending on the Determination Date (including distributions under a terminated plan which if it had not been terminated would have been part of a Required Aggregation Group) and in the case of defined contribution plans any contributions due but unpaid as of the Determination Date. The value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the Determination Date.  The account balances and accrued benefits of an individual who is not a Key Employee but who was a Key Employee in a prior year shall be disregarded and the account balance of an individual who has not performed any services for any employer maintaining a plan to which this Appendix IV applies at any time during the five years preceding the Determination Date shall also be disregarded.  The calculation

120

CBPJPMC00001439

of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Section 416 of the Code and the Regulations thereunder. When more than one plan is being considered, the value of account balances and accrued benefits shall be calculated with reference to the Determination Dates that fall within the same calendar year. Present values shall be based on reasonable actuarial assumptions as to interest and mortality. Effective for Years ending subsequent to December 31, 1986, solely for the purpose of determining the Top Heavy Ratio, the accrued benefits under the applicable defined benefit plans of any Participant who is not a Key Employee shall be determined under the method which is used for accrual purposes for all plans maintained by any Affiliated Company, or, if there is no such method, as if such benefits accrued not more rapidly than the slowest accrual rate permitted under Section 411(b)(1)(C) of the Code.

(f)     "Total Compensation" has the meaning ascribed thereto by Appendix I, Section 1.1(b).

(g)     "Top Heavy Average Total Compensation" means total compensation over any five consecutive Plan Years that procedures the highest average, provided that Plan Years beginning after the last Plan Year in which the Plan was Top-Heavy shall be disregarded.

Appendix IV

Special Effective Dates for Tax Reform Act of 1986 Provisions

4.1     Tax Reform Act of 1986 Provisions.

(a)     Section 1.33: "Employee". Effective January 1, 1987, Employee shall include any person who is a leased employee within the meaning of Section 414(n)(2) of the Code (other than a leased employee described in Section 414(n)(5) of the Code).

(b)     Section 1.66: "Salary". Effective January 1, 1989, Salary shall not include any amount in excess of $200,000 as adjusted for cost of living in accordance with Section 415(d) of the Code.

121

CBPJPMC00001440

Effective January 1, 1989, the family aggregation rules of Section 414(q)(6), as modified by Section 401(a)(17) of the Code, shall apply when determining the Salary of an employee.

      (c)    Section 2.1: "Eligible Employee." Effective January 1, 1987, Eligible Employee shall not include any person who is a leased employee within the meaning of Section 414(n) of the Code.

      (d)    Section 3.1(i): Years of Service. Section 3.1(i) regarding leased employees is effective January 1, 1987.

      (e)    Sections 4 and 5: Protected Benefits. Effective January 1, 1989, (1) accrued benefits, (2) optional forms of benefit, and (3) early retirement benefits or a retirement-type subsidy may not be subject to employer discretion, reduced, or eliminated.

      (f)    Section 5.5: Frozen Integrated Plan Formula. The integrated normal retirement benefit under the MHT Plan equal to: 2% of final average salary for each of the first 20 years of benefit service, plus 1% of final average salary for each additional year of benefit service up to a maximum of 40 years of benefit service, reduced by 4% of covered compensation for each year of benefit service up to a maximum of 35 years of benefit service, and further reduced by the actuarial equivalent of the normal form of the participant's benefit provided by the vested portion of his flexible retirement allocations, is effective January 1, 1989 through December 31, 1993 based on definitions of covered compensation, final average salary, social security retirement age, and cumulative disparity that comply with Code Section 401(a)(5) and 414(l) effective January 1, 1989.

      (g)    Section 6: Vesting. Section 6.1(a) regarding the five year cliff vesting schedule is effective January 1, 1989.

      (h)    Section 9.9: Latest Permissible Distribution Dates. Section 9.9 regarding the distribution rules under Section 401(a)(9) of the Code is effective January 1, 1989 or such other date expressly set forth in Section 9.9.

122

CBPJPMC00001441

(i)      <u>Sections 1.3 and 1.4 of Appendix I: Reductions on Account of Years of Service or Early or Late Retirement</u>.  Effective January 1, 1987, the defined benefit limits imposed by Code Section 415 are adjusted on account of (i) having fewer than ten years of participation or service as set forth in Section 1.3 of Appendix I and (ii) early or late commencement of benefits as set forth in Section 1.4 of Appendix I.

(j)      <u>Section 1.8(b) of Appendix I: Defined Contribution Fraction</u>.  The inclusion of employee contributions and certain amounts allocated for medical benefits in determining the defined contribution fraction in Section 1.8(a)(2) of Appendix I for purposes of Section 415 of the Code is effective January 1, 1987.

(k)      <u>Section 4 of Appendix III</u>.  The deletion of the requirement that benefits be based on compensation that does not exceed $200,000 during years that the plan is top-heavy is effective January 1, 1989.  The provision that a participant who has three years of service be permitted to continue to vest under the top-heavy vesting schedule is effective January 1, 1989.

123

CBPJPMC00001442

APPENDIX V

## Retirement Plan of Chemical Bank Conversion Factors for Optional Forms of Payment

| Option | | | | |
|---|---|---|---|---|
| 66 2/3% J&S | Not available | 92% of the straight life annuity (adjusted upward by .6% for each year that Beneficiary is older/younger than the Participant) | | Not available |
| 75% J&S | Not available | 90% of the straight life annuity (adjusted upward by .9% for each year that Beneficiary is older/younger than the Participant) | | Not available |
| 8 Years Certain | Not available | 97.3% of the straight life annuity (adjusted upward by .3% for each year that Participant is older/younger than the Participant) | | Not available for service after 1982. Relate only for grandfathered benefit |
| 10 Years Certain | Not available | 92% of the straight life annuity (adjusted upward by .3% or down by 1% for each year that Participant is younger or older than age 65) | | Not available for service after 1982. Relate only for grandfathered benefit |
| 15 Years Certain | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.6% for each year that Participant is younger of older than age 65) | | Not available for service after 1982. Relate only for grandfathered benefit |

CBPJPMC00001443

APPENDIX V

# Retirement Plan of Chemical Bank Conversion Factors for Optional Forms of Payment

| Leveling Option | Actuarial Equivalence using UP94 Mortality Table and 7% interest rate | Actuarial Equivalence using UP94 Mortality Table and 7% interest rate |
|---|---|---|
| Increasing annuity | Not available | Actuarial Equivalence using UP94 Mortality Table and the lesser of 9% or the PBGC interest rate in effect on January 1 of the year of determination (Cash Balance Formula only) | Actuarial Equivalence using UP94 Mortality Table and the lesser of 9% or the PBGC interest rate in effect on January 1 of the year of determination |
| Lump sum (Cash Balance Plan) | Not available | Actuarial Equivalence of increasing annuity using UP94 Mortality Table and the lesser of 9% or the PBGC interest rate in effect on January 1 of the year of determination | Actuarial Equivalence of increasing annuity using UP94 Mortality Table and the lesser of 9% or the PBGC interest rate in effect on January 1 of the year of determination |
| Lump sum (De-minimis Cashout on Final Pay Formula) | Actuarial Equivalence using UP94 Mortality Table and the PBGC interest rate in effect on January 1 of the year of determination | Not available | Actuarial Equivalence using UP94 Mortality Table and the PBGC interest rate in effect on January 1 of the year of determination |

Except as otherwise provided in this Appendix or the Plan, for purposes of determining benefits of equivalent actuarial value, Actuarial Equivalent shall be determined on the basis of the following factors:

(a)    Mortality Table – UP-1984 Mortality Table

(b)    Interest Rate – the rate used by the Pension Benefit Guaranty Corporation to value immediate annuities for plans having terminated on the January 1 of the year in which the determination date occurs.

CBPJPMC00001444

APPENDIX V

## Retirement Plan of Chemical Bank Conversion Factors for Optional Forms of Payment

| Option | | | |
|---|---|---|---|
| 50% J&S (Spouse) | 87% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) | 80% of the straight life annuity (adjusted up/down by .5% for each year that the beneficiary is older/younger than the Participant) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) |
| 80% J&S (Non Spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) | Same as above | Same as above |
| 40% J&S (Spouse) | 100% of the straight life annuity | Not available | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) |
| 100% J&S (Spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) | 80% of the straight life annuity (adjusted up/down by 1% for each year that beneficiary is older/younger than the Participant) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) |
| 100% J&S (No Spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitant exceeds 10 years, but not more than 100%) | Same as above | Same as above |

## Appendix VI

### Section 401(a)(17) Limitation

6.1    Purpose.  This Appendix is intended to satisfy the requirements of Section 401(a)(17) of the Code and regulations promulgated thereunder with respect to the computation of the Accrued Benefits of Participants under the Plan whose benefits are impacted by the annual compensation limit set forth in Section 401(a)(17) of the Code.

6.2    Benefits Accrued After January 1, 1994.  Effective for all benefits accrued on or after January 1, 1994, "Salary" shall not exceed the limitation set forth in Section 401(a)(17) (as amended by Omnibus Budget Reconciliation Act of 1993), as adjusted by the Commissioner of Internal Revenue, for increases in the cost of living in accordance with Section 401(a)(17) of the Code ("Applicable Limit").  Such adjustment in effect for a calendar year applies to a period not exceeding 12 months, over which Salary is determined beginning in such calendar year.  If such period consists of fewer than 12 months, the Section 401(a)(17) limit will be multiplied by a fraction, the numerator of which is the number of pay periods in the period, and denominator of which is the total number of pay periods.

6.3    Article IV Benefits Accrued Prior to January 1, 1994.

(a)    Division of Account.  The Credit Balance of a Participant as of December 31, 1993 shall consists of two amounts.  The first amount shall be determined by calculating the benefit (including the benefit under the Prior Plan) under Article IV by taking into consideration Salary, not in excess of the Applicable Limit, for all Periods of Service  (which are applicable to the Participant under Article IV) and adding thereto Interest and Transition Credits, as applicable ("401 (a)(17) Balance").  The remaining amount shall be the excess of the Account Balance as of December 31, 1993 over the amount determined pursuant to the proceeding sentence ("Excess 401(a)(17) Balance").

(b)    Interest and Transitions.  Interest and Transition Credits shall continue to apply to the 401(a)(17) Balance for calendar years after December 31, 1993.  Interest  Credits, without considering

124

CBPJPMC00001446

any amendments made after December 31, 1993, shall apply to the Excess 401 (a)(17) Balance for calendar years after December 31, 1993.

6.4    Extended Wear Away.  The Accrued Benefit of a 401(a)(17) Participant shall be the greater of:

(a)    the sum of the (i) portion of the Accrued Benefit determined under the benefit formula set forth in Article V  as applied to the Participant's total Period of Service (and Years of Benefits Service under the MHT Plan) and Salary not in excess of the Applicable Limit and (ii) portion of Accrued Benefit determined under the benefit formula set forth in Article IV as applied to the Participant's total Period of Service and Salary not in excess of the Applicable Limit including the 401(a)17 Balance plus future accruals under Article IV.

(b)    the sum of:

(x)the sum of the (i) portion of the Accrued Benefit under Article V as of December 31, 1993 and (ii) the portion of the Accrued Benefit under Article IV as of December 31, 1993 (including the Excess 401(a)(17) Balance and the 401(a)(17) Balance).  (Both (i) and are (ii) frozen in accordance with Regulations §1.401(a)(4)-13 which  includes the adjustment as described in Section 6.3(b) above.); and

(y)the Accrued Benefit determined under Articles IV and V commencing as of January 1, 1994, as applied to the Participant's Period of Service after January 1, 1994 and Salary not in excess of the Applicable Limit.

125

CBPJPMC00001447

A 401(a)(17) Participant means a Participant whose Accrued Benefit as of a date on or after January 1, 1994 is based upon Salary prior to such date that exceeded $150,000.

CBPJPMC00001448

## APPENDIX VII

## SPECIAL TEMPORARY BENEFIT

7.1    In lieu of any other benefit provided under Article IV, V or VIII of the Plan, an Eligible Participant (as defined in 7.4 below) shall be entitled to elect during the Election Period (as defined in 7.5 below) a special temporary lump sum benefit equal to the normal form of benefit accrued as of December 31,1990 (or accrued as of the Severance Date of the Eligible Participant if earlier than December 31,1990) under the Retirement Plan of Chemical Bank and Certain Affiliates (which benefit was frozen upon the adoption of the Prior Plan) converted to a lump sum using the 4.5 percent rate established by the PBGC for an Eligible Participant whose Severance Date is prior to the January 1,1995 and the 6 percent rate established by the PBGC for an Eligible Participant whose Severance Date is on or after January 1, 1995 and before February 1, 1995, and, in each case, using the UP84 Mortality Table based on the life expectancies of such Eligible Participant as of the Date of Distribution ('Special Temporary Benefit'). In the case of an Eligible Participant over age 62 on the Date of Distribution, the Temporary Benefit shall be calculated as if such individual were age 62 on such date.

7.2    The Special Temporary Benefit shall not be increased directly or indirectly by the percent age increase to the minimum benefit adopted set forth at Section 8.1(c) of the Plan.

7.3    The Date of Distribution of such Special Temporary Benefit shall be October 1, 1995; provided that such Special Temporary Benefit shall be payable only if the Administrator shall have received a properly completed election form (including, if necessary, spousal consents) during the Election Period.

7.4    An 'Eligible Participant" shall mean an individual (i) who incurred a Severance Date employment after January 1, 1989 and on or before January 31, 1995, (ii) who participated in the Retirement Plan of Chemical Bank and Certain Affiliates, (iii) who had not elected to received his/her benefits under this Plan, the Prior Plan or the Retirement Plan of Chemical Bank

127

CBPJPMC00001449

and Certain Affiliates prior to March 31, 1995 and (iv) whose Special Temporary Benefit is greater than any other lump sum benefit otherwise is available under the Plan as of the first day of the Election Period. If a Participant would have been an Eligible Participant, but for having received a lump sum distribution on or after January 1, 1995 and before the first day of the Election Period, he shall receive a lump sum (without filing an election form) equal to the excess of the Special Temporary Benefit over the amount actual received.

7.5    The 'Election Period" shall be period commencing July 15, 1995 and ending September 1, 1995, during which period Participant must affirmatively elect to receive his or her Special Temporary Benefit by filing a properly completed election form for the Special Temporary Benefit or any other grater lump sum benefit as of the Date of Distribution.

CBPJPMC00001450

# APPENDIX VIII

This Appendix describes certain transaction since the Effective Date which impacts the calculation of service and vesting under this Plan.

**8.1    Acquisition of Ameritrust.**  With respect to an individual who was employed by Ameritrust Texas Corporation, Ameritrust Texas Financial Corporation, or Ameritrust Texas National Association, on September 15, 1993 and who became an Eligible Employee on September 16, 1993, such individual's Period of Service will include service with Ameritrust (which service would have been recognized under Section 3.1 had such service been with an Employer) solely for purposes of:

      (i)      participation in the Plan as provided in Article II, and

      (ii)      vesting in the Plan as provided in Article VI.

By way of clarification (Accruing Factors), such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Ameritrust, nor shall Salary include any compensation earned from Ameritrust.

**8.2    Cullen/Frost.**  With respect to an individual who was employed by Cullen/Frost, Bank of Dallas, N.A., on April 14, 1994 and who became an Eligible Employee on April 15, 1994, such individual's Period of Service will include service with Cullen Frost (which service would have been recognized under Section 3.1 had such service been an Employer) solely for purposes of:

      (i)      participation in the Plan as provided in Article II, and

      (ii)      vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement and Articles IV and V and IX shall not include any Periods of Service with Cullen Frost, nor shall Salary include any compensation earned from Cullen Frost.

CBPJPMC00001451

8.3    <u>Liberty Securities Corporation</u>.    With respect to an individual who was employed by Liberty Securities Corporation on July 31, 1994 and who become an Eligible Employees as of August 1, 1994 by reason of his/her employment with Chemical Investment Service Corp., such individual's Period of Service will include service with Liberty Securities Corporation (which service would have been recognized under Section 3.1 had service been an Employer) solely for purposes of:

         (i)       participation in the Plan as provide in Article II, and

        (ii)      vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Liberty Securities Corporation, nor shall Salary include any compensation earned from Liberty Securities Corporation.

8.4    <u>Sale of BankLink, Inc</u>.    Any individual who (i) is employed by BankLink, Inc. on March 7, 1995, (ii) is a Participant, and (iii) has a Period of Service of 4 years or more on such date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.    In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

8.5    <u>Formation of Chemical Mellon Shareholder Services</u>.    Any Participant, who is transferred to and is employed by Chemical Mellon Shareholder Services ("CMS") on April 30, 1995, May 31, 1995 or July 31, 1995 and who had a Period of Service of 4 years or more on the applicable date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.    In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit".

8.6    <u>Sale of Chemical New Jersey Holding, Inc</u>.    Any Participant who (i) is employed by Chemical New Jersey Holdings, Inc., or one of its subsidiaries ("CONJ.") on

130

CBPJPMC00001452

June 30, 1995 and (ii) has a Period of Service of 4 years or more on (a) October 6, 1995, and whose employment with CONJ. involuntarily terminates on or after such date as a direct result of the sale of CONJ. to PAC Bank Corp. ("Sale") or (b) the date of such Sale and whose employment with CONJ. or its successor continues after the Sale, shall be treated, as of the date of Sale or involuntary termination of employment, as applicable, for all purposes of the Plan as if such individual had incurred an Eligible Termination. In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant after the date of Sale or involuntary termination of employment, as applicable, who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit. This Section has no application to any former Employee of CONJ. who is employed by an Affiliated Company either prior to or following the Sale, unless such Employee's employment is scheduled to terminate as a result of the Sale. Notwithstanding anything to the contrary, this provision shall have no application, unless the Sale is consummated.

       8.7       **Sale of Assets to Heritage Bank.** Any Participant (i) who is employed by Texas Commerce Bank at its Liberty branch as of January 18, 1995, (ii) whose employment is terminated with Texas Commerce Bank as a result of the sale of such branch to Heritage Bank on January 19, 1995, (iii) who has a Period of Service of 4 years or more on January 18, 1995 and (iv) is employed by Heritage Bank as of January 19, 1995, shall be treated for all purposes of this Plan as if such Participant had incurred an Eligible Termination. In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

       8.8.       **Sale Assets to Cash Flex.** Any Participant (i) who is employed by Texas Commerce Bank in Dallas lock box operation on September 18, 1995, (ii) whose employment with Texas Commerce Bank is terminated as a result of the sale of such assets to Cash Flex on September 19, 1995, (iii) who has a Period of Service of 4 years or more on September 18, 1995 and (iv) is employed by Cash Flex as of September 19, 1995, shall be treated for all purposes of this Plan as if such Participant had incurred an Eligible Termination. In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

131

CBPJPMC00001453

# APPENDIX IX

## Chemical Residential Mortgage Employees

The following provisions applied to employees of Chemical Residential Mortgage Corporation ('CRMCo') on January 1, 1996. To the extent not otherwise addressed in this Appendix, all other terms and conditions of the Plan apply to individuals employed by CRMCo as an Eligible Employee.

9.1    Effective January 1, 1996, CRMCo was a Participating Company under the Plan only with respect to the benefit described in Article IV of the Plan -- Credit Balance Benefits.. Any Participant who was an Employee of CRMCo on or after January 1, 1996 did not accrue any benefit of the plan under Article V of the Plan. In addition, in the event of a transfer of such Participant to, or his/her re-employment by, a Participating Company (other than CRMCo), Periods of Service with CRMCo shall be not included for purposes of calculating any accrued benefit under Article V of the Plan; provided that such Period of Service with CRMCo (but not with Margaretten Financial Corporation prior to its acquisition by the Corporation) shall be included for purposes of determining Early Retirement eligibility. Rules for recognition of service with Margaretten Financial Corporation shall be as set forth in paragraph 9.7 below.

9.2    Each individual who (i) was employed as an Eligible Employee by CRMCo on January 1, 1996 and (ii) was covered by, or eligible for, the benefit plans established by Margaretten Financial Corporation as of December 31, 1995, shall be eligible to participate in the Plan as of the later of January 1, 1996 or the first day of the month coincident with, or next following, a Period of Service of one year, under the 3%, 4%, 5% or 6% Salary Credit schedule of Section 4.3 of the Plan. Employees of CRMCo participating in the Plan as of December 31, 1995 shall continue to receive salary credits at the 4% rate for Periods of Service between one and ten years.

132

9.3     As of December 31, 1995, in lieu of any benefit payable under Article V, each Participant who is employed by CRMCo on such date and had accrued a Final Salary Benefit will be credited with an additional credit balance equal to his 'Final Salary Credit." The Final Salary Credit is the lump sum present value of such Participant's benefit under former Section 5.1 of the Plan as of December 31, 1995 (or if greater, the benefit set forth in Section 5.5 of the Plan), as then in effect subject to the assumptions as set forth below:

(A)     the interest discount rate based on 30-year Treasury securities for the month of November 1995 is used;

(B)     for those Participants who are age 60 or older as of December 31, 1995, the Final Salary Benefit is assumed to be immediately payable without actuarial reduction for commencement prior to age 65;

(C)     for those Participants who have not attained age 60 as of December 31, 1995, the Final Salary Benefit is assumed to be payable as of age 60 without actuarial reduction for commencement prior to age 65;

(D)     GA-83 Mortality Table is used;

(E)     Final Average Salary and Period of Service are fixed as of December 31, 1995 in the case of a benefit under Section 5.1 (and in the case of a benefit under Section 5.5, Final Average Salary, Period of Service and Years of Benefit Service are fixed as of December 31, 1992) or such earlier date as may be relevant; and

(F)     if applicable, the Flexible Retirement Account shall be valued as of December 31, 1995.

133

CBPJPMC00001455

The Final Salary Credit described above is not intended to be the accrued benefit under Article V of any Participant who was employed by CRMCo on December 31, 1995.

9.4    Notwithstanding anything in the Plan to the contrary, the aggregate Credit Balance as of December 31, 1995 of a Participant who is employed by CRMCo on January 1, 1996, whether derived from a Prior Service Balance, the Final Salary Credit or Salary Credits, will receive Transition Credits rather than Interest Credits commencing with respect to credits to be made after January 1, 1996. Such Transition Credits shall end on the day immediately preceding one of the events set forth in Section 4.2 of the Plan.

9.5    For purposes of Salary Credits under Article IV, Eligible Salary for any Participant employed by CRMCo on or after January 1, 1996 and who receives draw, commissions in excess of draw, or production overrides on or after that date for any calendar year shall be the sum of base salary and 50% of the lesser of (i) the sum of such draw, commission in excess of draw or production overrides or (ii) the amount specified in Section 401(a)(17) of the Code. The limitation set forth in (ii) shall be applied on cumulative basis.

9.6    As of any Date of Distribution, the Plan shall determine the greater of the Accrued Benefit (including Final Salary Benefit and Credit Balance) fixed and earned as of December 31, 1995 (or such earlier date if applicable) and shall compare such amount to the Accrued Benefit (including Final Salary Benefit and Credit Balance) under the Plan as of the Date of Distribution and shall distribute the greater amount to the Participant. In making such comparison, the Credit Balances of the Participants as of the relevant dates shall be converted to annuities utilizing the rules set forth in Appendix V.

9.7    A Period of Service for a CRMCo Employee who is employed on January 1, 1996 will include any Period of Service with Margaretten Financial Corporation or its Affiliated Companies (assuming such service would have been recognized if Margaretten had been an Employer) for purposes of participation under Article II of the Plan, vesting under Article VI of

134

CBPJPMC00001456

the Plan and Section 4.3 of the Plan; provided such Period of Service with Margaretten prior to its acquisition by the Corporation will not be recognized for any purpose under Article V, including eligibility for Early Retirement.

135

CBPJPMC00001457

## APPENDIX X

### COST OF LIVING INCREASE 1996

Effective September 30, 1996, the following increase shall apply:

| Years of Retirement | Retirement Plan of Manufactures Hanover Trust Company and Affiliated Companies Percentage Increase in Monthly Benefit |
|---|---|
| 1974 or earlier | 60% |
| 1975 through 1978 | 45% |
| 1979 through 1981 | 20% |
| 1982 through 1984 | 03% |

Such increase shall only apply to those individuals who terminated employment after satisfying the definition of Early or Normal Retirement under the Retirement Plan of Manufacturers Hanover Trust Company and Certain Affiliated Companies, as in effect on the date of termination of employment. Such increase shall apply to benefits in pay status to surviving spouses of individuals described in the preceding sentence. Such increase shall not apply to any deferred vested benefits for terminated participants or those individuals who did not satisfy the definitions of Early or Normal Retirement. This does not apply to a lump sum distribution

| Year of Retirement | Retirement Plan of Chemical Bank and Certain Affiliates Percentage Increase In Monthly Benefits |
|---|---|
| 1974 or earlier | 80% |
| 1975 through 1978 | 60% |
| 1979 through 1981 | 30% |
| 1982 through 1984 | 05% |

136

CBPJPMC00001458

Such increase shall only apply to those individual who terminated employment after satisfying the definition of Early or Normal Retirement under the Retirement Plan of Chemical Bank and Certain Affiliates, as in effect on the date of termination of employment. Such increase shall apply to benefits in pay status to surviving spouses of individuals described in the preceding sentence. Such increase shall not apply to any deferred vested benefits for terminated participants or those individuals who did not satisfy the definitions of Early or Normal Retirement. This does not apply to a lump sum distribution, if any.

137

CBPJPMC00001459

# APPENDIX XI

## HOURS OF SERVICE

11.1  <u>Affiliated Companies with Hourly Records</u>.  If an Eligible Employee is employed by an Affiliated Company that keeps its employment records on the basis of hours, such Employee will be credited with Periods of Service for his or her employment with such Affiliated Company in accordance with this Appendix XI.

By way of clarification, after such Eligible Employee becomes eligible to participate in the Plan, the computation of his or her Periods of Service for all other purposes shall be governed by the provisions of Article III and IV of the Plan.

11.2  <u>Years of Service</u> .  A one year of Period Service shall mean each Plan Year in which the Employee has 1,000 hours of service (as defined below); <u>provided, however</u>, that solely for the purposes of determining eligibility to participate in the Plan, a one year Period of Service shall be credited on the earlier of:

(1)  the last day of the twelve consecutive month period which begins on the first day on which the Employee has an hour of service, if he or she has at least 1,000 hours of service in that period,

(2)  last day of the Plan Year which includes the first day on which the Employee has an hour of service if he or she has at least 1,000 hours of service in that Plan Year.

If an Employee fails to be credited with a one year Period of Service in either the twelve consecutive month period beginning on the first day on which the Employee has an Hour of

138

CBPJPMC00001460

Service or the Plan Year that includes the first day on which the Employee has an hour of service, he or she will be credited with a one year Period of Service on the last day of any succeeding Plan Year in which he or she has at least 1,000 hours of service.

      11.3  Hours of Service.  For purposes of this Section 11.3, an hour of service shall include:

(1)    Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company for the performance of duties for such Affiliated Company. These hours shall be credited to the Employee for the period during which the duties are performed.

(2)    Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.  Not more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period).  Hours under this paragraph will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

(3)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Affiliated Company.  The same hours of service will not be credited both under paragraph (1) or (2), as the case may be, and under this paragraph (3).  These hours will be credited to the Employee for the one year Period of Service to which the award for agreement pertains rather than for the one year Period of Service in which the award, agreement or payment is made.

139

CBPJPMC00001461

11.4  <u>One-Year Break in Service</u>. A One-Year Break in Service shall mean one or more consecutive Plan Years during which an Employee does not complete at least 501 hours of service.  Solely for the purpose of determining whether a One-Year Break in Service has occurred, an Employee who is absent from work by virtue of (A) the Employee's pregnancy, (B) birth of the Employee's child, (C) placement of a child with the Employee by adoption, or (D) caring for any such child, shall be credited with the lesser of (i) the Hours of Service which would normally have been credited to the Employee but for such absence, or if the Plan is unable to determine such hours, 8 hours per day of such absence, or (ii) 501 hours; <u>provided</u>, that if such absence spans more than one Plan Year, such hours shall be credited in either the Plan Year in which such absence commenced (if the Employee would thereby be prevented from incurring a One-Year Break in Service) or the immediately following Plan Year.

140

EXHIBIT I

RETIREMENT PLAN INTEREST RATES ON CASH BALANCE

| Calendar Year | Annual Rate |
|---|---|
| 1993 | 5.4% |
| 1994 | 5.4% |
| 1995 | 8.1% |
| 1996 | 7.5% |

INTEREST RATE ON PRIOR SERVICE BALANCE

| Calendar Year | Annual Rate |
|---|---|
| 1993 | 6.8% |
| 1994 | 6.8% |
| 1995 | 10.1% |
| 1996 | 9.4% |

CBPJPMC00001463