social security retirement age, and cumulative disparity that comply with Code Section 401(a)(5) and 414(l) effective January 1, 1989.

(g)    Section 6: Vesting.    Section 6.1(a) regarding the five year cliff vesting schedule is effective January 1, 1989.

(h)    Section 8.5: Latest Permissible Distribution Dates.    Section 8.5 regarding the distribution rules under Section 401(a)(9) of the Code is effective January 1, 1989 or such other date expressly set forth in Section 8.5.

(i)    Sections 1.3 and 1.4 of Appendix I: Reductions on Account of Years of Service or Early or Late Retirement.    Effective January 1, 1987, the defined benefit limits imposed by Code Section 415 are adjusted on account of (i) having fewer than ten years of participation or service as set forth in Section 1.3 of Appendix I and (ii) early or late commencement of benefits as set forth in Section 1.4 of Appendix I.

(j)    Section 1.8(b) of Appendix I: Defined Contribution Fraction.    The inclusion of employee contributions and certain amounts allocated for medical benefits in determining the defined contribution fraction in Section 1.8(a)(2) of Appendix I for purposes of Section 415 of the Code is effective January 1, 1987.

(k)    Section 4 of Appendix III.    The deletion of the requirement that benefits be based on compensation that does not exceed $200,000 during years that the plan is top-heavy is effective January 1, 1989.    The provision that a participant who has three years of service be permitted to continue to vest under the top-heavy vesting schedule is effective January 1, 1989.

CBPJPMC00000575

## Appendix V

### Actuarial Equivalence Factors for Optional Forms of Payment

For purposes of determining an Actuarial Equivalent benefit, the following interest rate and mortality basis applies unless stated otherwise in the Plan or this Appendix:

1. Interest rate used for discounting purposes equals the average 30-year Treasury rate in effect for the October preceding the year of determination

2. GA-83 Mortality Table [(50% Male/50% Female)]

1

CBPJPMC00000576

**Appendix V**

**Actuarial Equivalence Factors for Optional Forms of Payment**

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 10% J&S (Spouse) | 100% of the straight life annuity | Not available | 92% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 92% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). |
| 50% J&S (Spouse) | 97% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | 90% of the straight life annuity (adjusted up/down by .5% for each year that the Beneficiary is older/younger than the Participant). | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 90% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 50% J&S (Non Spouse) | 90% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | Same as above | Same as above | See attached Table 1 | Same as above |
| 66 2/3% J&S | Not available | 87% of the straight life annuity (adjusted up/down by .6% for each year that Beneficiary is older/younger than the Participant). | Not available | See attached Table 1 | 87% of the straight life annuity (adjusted up/down by .6% for each year that Beneficiary is older/younger than the Participant). |

2

CBPJPMC00000577

**Appendix V**

**Actuarial Equivalence Factors for Optional Forms of Payment**

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 75% J&S | Not available | 86% of the straight life annuity (adjusted up/down by .8% for each year that Beneficiary is older/young than the Participant). | Not available | See attached Table 1 | 85% of straight life annuity (adjusted up or down by 1% for each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (Spouse) | 86% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | 83% of the straight life annuity (adjusted up/down by 1% for each year that Beneficiary is older/younger than the Participant). | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | See attached Table 1 | 80% of straight life annuity (adjusted up or down by 1% each year that age difference between annuitants exceeds 10 years, but not more than 100%). |
| 100% J&S (No spouse) | 80% of the straight life annuity (adjusted up or down by 1% for each year that the age difference between the annuitants exceeds 10 years, but not more than 100%). | Same as above. | Same as above. | See attached Table 1. | Same as above. |
| 5 Years Certain | Not available | 97.3% of the straight life annuity (adjusted up/down by 3% for each year that Participant is younger/older than age 65). | Not available for service after 1992. | Not available | 97.3% of the straight life annuity (adjusted up/down by 3% for each year that Participant is younger/older than age 65). |
| 10 Years Certain | Not available | 92% of the straight life annuity (adjusted up by .5% or down by 1% for each year that Participant is younger or older than age 65). | Not available for service after 1992. | Not available | 92% of the straight life annuity (adjusted up by .5% or down by 1% for each year that Participant is younger or older than age 65). |

3

CBPJPMC00000578

## Appendix V

### Actuarial Equivalence Factors for Optional Forms of Payment

| Option | For Accrued Benefits as of 12/31/92 under the Retirement Plan of Manufacturers Hanover Trust | For Accrued Benefits as of 12/31/92 under the Cash Plan for Retirement of Chemical Bank | Retirement Plan of Chemical Bank and Certain Affiliates | Prior Chase Plan or Grandfathered Participants as defined in Section 4.6(d) | Chase Retirement Plan |
|---|---|---|---|---|---|
| 15 Years Certain | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65). | Not available for service after 1992. | Not available | 84% of the straight life annuity (adjusted up by 1% or down by 1.5% for each year that Participant is younger or older than age 65). |
| Level Income Option | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate | Not available | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate. | Actuarial Equivalence using UP84 Mortality Table and 7% interest rate. |
| Increasing Annuity | Not available | Actuarial Equivalence* | Actuarial Equivalence (Cash Balance Formula only). | Actuarial Equivalence | Actuarial Equivalence |
| Lump Sum (Cash Balance Plan) | Not available | Actuarial Equivalence* | Actuarial Equivalence* | Actuarial Equivalence of single life annuity | Actuarial Equivalence of single life annuity* |
| Lump sum (Cashout on Final Pay Prior Plan Benefits) | Actuarial Equivalence | Actuarial Equivalence* | Actuarial Equivalence | Actuarial Equivalence | Not applicable |

* For retirements that occur between September 1, 1996 and August 31, 1997 for former Chemical participants only, the Participant will receive the greatest benefit determined using GA-83 Mortality Table [(50% Male/50% Female)] and (1) the 30-year Treasury rate in effect for the October preceding the year of determination or (2) the 30-year Treasury rate in effect two months preceding benefit commencement. For retirements after August 31, 1997, the Participant will receive the benefit determined using GA-83 Mortality Table [(50% Male/50% Female)] and the 30-year Treasury rate in effect for the October preceding the year of determination.

4

CBPJPMC00000579

APPENDIX  V

## TABLE 1

### 100% JOINT AND SURVIVOR FACTORS

| AGE OF RETIREE | FACTOR |
|---|---|
| 50 | .9105 |
| 51 | .9024 |
| 52 | .8943 |
| 53 | .8864 |
| 54 | .8784 |
| 55 | .8706 |
| 56 | .8628 |
| 57 | .8551 |
| 58 | .8475 |
| 59 | .8400 |
| 60 | .8325 |
| 61 | .8250 |
| 62 | .8177 |
| 63 | .8104 |
| 64 | .8032 |
| 65 | .7960 |
| 66 | .7889 |
| 67 | .7819 |
| 68 | .7749 |
| 69 | .7680 |
| 70 | .7611 |

A.   100% Joint and Survivor Life Annuity.  If the member and th
joint annuitant are not the same age, the factor will be
increased (decreased) by 0.006 for each year that the joint
annuitant is older (younger) than the Member with an upper
limit on the factor of 0.99.

B.   Other Than 100% Joint and Survivor Life Annuity.  The facto
for an optional form of benefit other than a 100% Joint and
Survivor Annuity is calculated from the adjusted 100% Joint
and Survivor Annuity under the following formula, with the
result rounded to four decimal places.

Factor = F/(Z + [(1-Z) x F])

F = adjusted 100% Joint and Survivor Life Annuity factor

Z = Percentage of reduced benefit payable to the joint
annuitant (e.g., 50% equals 0.5, 66-2/3% equals
0.666667, etc.)

CBPJPMC00000580

## APPENDIX VI
### Section 401(a)(17) Limitation

6.1    Purpose.    This Appendix is intended to satisfy the requirements of Section 401(a)(17) of the Code and regulations promulgated thereunder with respect to the computation of the Accrued Benefits of Participants under the Plan whose benefits are impacted by the annual compensation limit set forth in Section 401(a)(17) of the Code.

6.2    Benefits Accrued After January 1, 1994.    Effective for all benefits accrued on or after January 1, 1994, "Salary" shall not exceed the limitation set forth in Section 401(a)(17) (as amended by Omnibus Budget Reconciliation Act of 1993), as adjusted by the Commissioner of Internal Revenue, for increases in the cost of living in accordance with Section 401(a)(17) of the Code ("Applicable Limit"). Such adjustment in effect for a calendar year applies to a period not exceeding 12 months, over which Salary is determined beginning in such calendar year. If such period consists of fewer than 12 months, the Section 401(a)(17) limit will be multiplied by a fraction, the numerator of which is the number of pay periods in the period, and denominator of which is the total number of pay periods.

6.3    Article IV Benefits Accrued Prior to January 1, 1994 Under this Plan or the MHT Plan.

(a)    Division of Account.    The Credit Balance of a Participant as of December 31, 1993 shall consists of two amounts. The first amount shall be determined by calculating the benefit (including the benefit under the Prior Plan) under Article IV by taking into consideration Salary, not in excess of the Applicable Limit, for all Periods of Service (which are applicable to the Participant under Article IV) and adding thereto Interest and Transition Credits, as applicable ("401 (a)(17) Balance"). The remaining amount shall be the excess of the Account Balance as of December 31, 1993 over the amount determined pursuant to the proceeding sentence ("Excess 401(a)(17) Balance").

(b)    Interest and Transitions.    Interest and Transition Credits shall continue to apply to the 401(a)(17) Balance for calendar years after December 31, 1993. Interest Credits, without considering any amendment increasing the rate for single year made after December 31, 1993, shall apply to the Excess 401 (a)(17) Balance for calendar years after December 31, 1993.

CBPJPMC00000581

6.4    Extended Wear Away. The Accrued Benefit of a 401(a)(17) Participant shall be the greater of:

(a)    the sum of the (i) portion of the Accrued Benefit determined under the benefit formula set forth in Article V as in effect prior to January 1, 1997 as applied to the Participant's total Period of Service (and Years of Benefits Service under the MHT Plan) and Salary not in excess of the Applicable Limit and (ii) portion of Accrued Benefit determined under the benefit formula set forth in Article IV as applied to the Participant's total Period of Service and Salary not in excess of the Applicable Limit including the 401(a)17 Balance plus future accruals under Article IV.

(b)    the sum of:

(x)    the sum of the (i) portion of the Accrued Benefit under Article V (as in effect prior to January 1, 1997) as of December 31, 1993 and (ii) the portion of the Accrued Benefit under Article IV as of December 31, 1993 (including the Excess 401(a)(17) Balance and the 401(a)(17) Balance). (Both (i) and are (ii) frozen in accordance with Regulations §1.401(a)(4)-13 which includes the adjustment as described in Section 6.3(b) above.); and

(y)    the Accrued Benefit determined under Article IV and Article V (as in effect prior to January 1, 1997) commencing as of January 1, 1994, as applied to the Participant's Period of Service after January 1, 1994 and Salary not in excess of the Applicable Limit.

To the extent that benefits are accrued after December 31, 1996 under Article IV, the above formula shall be appropriately adjusted.

A 401(a)(17) Participant means a Participant whose Accrued Benefit as of a date on or after January 1, 1994 is based upon Salary prior to such date that exceeded $150,000.

6.5    Chase Plan. Benefits accrued under the Chase Plan prior to its merger with this Plan shall be calculated in accordance with the methodology used by the Chase Plan with respect

VI-2

CBPJPMC00000582

to Section 401(a)(17). Effective January 1, 1997, the extended wear away formula of Section 6.4 shall be applicable to such accrued benefit except that December 31, 1996 shall be substituted for December 31, 1993.

VI-3

CBPJPMC00000583

## APPENDIX VII
Transaction After January 1, 1993

This Appendix describes certain transaction which impacts the calculation of service and vesting under this Plan.

**7.1**    **Acquisition of Ameritrust**.  With respect to an individual who was employed by Ameritrust Texas Corporation, Ameritrust Texas Financial Corporation, or Ameritrust Texas National Association, on September 15, 1993 and who became an Eligible Employee on September 16, 1993, such individual's Period of Service will include service with Ameritrust (which service would have been recognized under Section 3.1 had such service been with an Employer) solely for purposes of:

(i)        participation in the Plan as provided in Article II, and

(ii)       vesting in the Plan as provided in Article VI.

By way of clarification (Accruing Factors), such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Ameritrust, nor shall Salary include any compensation earned from Ameritrust.

**7.2**    **Cullen/Frost**.  With respect to an individual who was employed by Cullen/Frost, Bank of Dallas, N.A., on April 14, 1994 and who became an Eligible Employee on April 15, 1994, such individual's Period of Service will include service with Cullen Frost (which service would have been recognized under Section 3.1 had such service been an Employer) solely for purposes of:

(i)        participation in the Plan as provided in Article II, and

(ii)       vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages and early retirement and Articles IV and V and IX shall not include any Periods of Service with Cullen Frost, nor shall Salary include any compensation earned from Cullen Frost.

7.3    **Liberty Securities Corporation**.    With respect to an individual who was employed by Liberty Securities Corporation on July 31, 1994 and who become an Eligible Employees as of August 1, 1994 by reason of his/her employment with Chemical Investment Service Corp., such individual's Period of Service will include service with Liberty Securities Corporation (which service would have been recognized under Section 3.1 had service been an Employer) solely for purposes of:

(i)    participation in the Plan as provide in Article II, and

(ii)    vesting in the Plan as provided in Article VI.

By way of clarification, such individual's Period of Service for purposes of benefit accruals, percentages (Accruing Factors) and early retirement under Articles IV, V and IX shall not include any Periods of Service with Liberty Securities Corporation, nor shall Salary include any compensation earned from Liberty Securities Corporation.

7.4    **Sale of BankLink, Inc.**    Any individual who (i) is employed by BankLink, Inc. on March 7, 1995, (ii) is a Participant, and (iii) has a Period of Service of 4 years or more on such date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.  In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit.

7.5    **Formation of Chemical Mellon Shareholder Services**.  Any Participant, who is transferred to and is employed by Chemical Mellon Shareholder Services ("CMS") on April 30, 1995, May 31, 1995 or July 31, 1995 and who had a Period of Service of 4 years or more on the applicable date, shall be treated for all purposes of this Plan as if such individual had incurred an Eligible Termination.  In addition, nothing in Section 9.1 shall be construed to preclude a distribution to any such Participant who otherwise satisfies the age and service requirements of the Plan for a distribution of his or her Accrued Benefit".

7.6    **Sale of Chemical New Jersey Holding, Inc.**  Any Participant who (i) is employed by Chemical New Jersey Holdings, Inc., or one of its subsidiaries ("CONJ.") on June 30, 1995 and (ii) has a Period of Service of 4 years or more on (a) October 6, 1995, and

CBPJPMC00000585

Company, Inc., or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.10    **Asset Purchase of the Corporate Trust Business from PNC Bankcorp under an agreement dated as of December 10, 1998.**  Service as an employee of PNC Bankcorp, or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.11    **Stock Purchase of shares of FJB&B, Inc. (parent of Home South Mortgage Corp. and First Town Mortgage Corp.) under an agreement dated as of November 2, 1998.**  .  Service as an employee of FJB&B, Inc., or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.12    **Stock Purchase of the shares of Morgan Stanley Trust Company and Morgan Stanley Bank Luxembourg, S.A. under an agreement dated as of May 7, 1998.** Service as an employee of Morgan Stanley Dean Witter & Co., or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

CBPJPMC00000586

7.13    <u>Stock Purchase of shares of Mellon Mortgage Company under an agreement dated as of August 3, 1999</u>.  Service as an employee of Mellon Bank N.A., or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.14    <u>Asset Purchase from DCS Corporation under an agreement dated as of February, 1999</u>.  Service as an employee of DCS Corporation, or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.15    <u>Asset Purchase from USI Employee benefits and Commercial Insurance agency LLC under an agreement dated July, 1999</u>.  Service as an employee of USI employee Benefits and Commercial Insurance agency LLC, or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is an "Employee," as defined in this Plan on the closing of the asset purchase. Such service does not count for pay credit purposes.

7.16    <u>AT&T Solutions.</u>  Employees of Heritage Chase who became employees of AT&T Solutions pursuant to an agreement dated May 14, 1998, and who became employees of The Chase Manhattan Corporation or one of its subsidiaries on May 1, 1998, shall have that period of service with AT&T Solutions included for participation and vesting purposes under the Plan. Such service does not count for pay credit purposes.

7.17    <u>Fiserv.</u>  Employees of Heritage Chase who became employees of Fiserv pursuant to an agreement dated March 31, 1995, and who subsequently became employees of The Chase

CBPJPMC00000587

Manhattan Corporation or one of its subsidiaries in calendar year 1997 pursuant to an agreement with Fiserv shall have that period of service with Fiserv included for participation and vesting purposes under the Plan.

7.18 **TransAmerica**. Employees of TransAmerica who became employees of The Chase Manhattan Corporation or one of its subsidiaries on October 8, 1998, shall have their period of service with TransAmerica included for participation and vesting purposes under the Plan. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.19 **Acquisition of Hambrecht & Quist Group ("H&Q") under an Agreement and Plan of Merger dated as of September 27, 1999.** Service as an employee of Hambrecht & Quist Group, or its subsidiaries, will count for purposes of vesting and participation with respect to the Plan, to the extent the employee becomes an "Employee," as defined in this Plan on the "Closing Date," as defined in such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.20 **Purchase of Beacon Group LLC ("Beacon") dated as of June 27, 2000.** An employee of Beacon who becomes an employee of The Chase Manhattan Corporation or one of its subsidiaries on August 1, 2000, shall be eligible to participate in this Plan immediately and shall be fully vested in Matching Contributions hereunder. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.21 **Purchase of all or substantially all of the operating assets of Goldman, Lichtenberg, Wasserman and Grossman, Inc. ("GLWG") pursuant to an agreement and plan of merger ("Merger Agreement").** Service as an employee of GLWG or one of its subsidiaries will count for purposes of vesting and participation with respect to the Plan, provided that the individual becomes an employee of The Chase Manhattan Corporation or one of its subsidiaries on August 1, 2000. Such service does not count for pay credit purposes except

CBPJPMC00000588

that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.22    **Asset Purchase from First Tennessee Bank, National Association, under an agreement dated October, 2000.**    Service as an employee of First Tennessee Bank, National Association, or one of its subsidiaries will count for purposes of vesting and participation with respect to the Plan, to the extent the employee is a "Transferred Employee," as defined by such agreement. Such service does not count for pay credit purposes except that an employee immediately eligible to participate in the Plan will receive pay credits at the 4 percent rate.

7.23    **Participation by Brown & Company Securities Corporation in Plan as of January 1, 2001.** Service with Brown will count for participation and eligibility under the Plan.  Service with Brown which commenced on or after January 1, 1984 will count for pay credit purpose.

7.24    **Participation in the Plan as of January 1, 2001 by employees of Robert Fleming Inc. covered by its United States benefit program on December 31, 2000.** Service of such employees with   Roberty Fleming Inc. and its affilateswill count for participation,  eligibility and pay credit purposes under the Plan if the employees are employed on January 1, 2001 by an Employer.

VII-7

CBPJPMC00000589

## APPENDIX VIII

### Chase Manhattan Mortgage Corporation
### Chemical Residential Mortgage Employees

The following provisions applied to employees of Chemical Residential Mortgage Corporation ("CRMCo") on January 1, 1996. To the extent not otherwise addressed in this Appendix, all other terms and conditions of the Plan apply to individuals employed by CRMCo as an Eligible Employee.

CRMCo merged with Chase Manhattan Mortgage Corporation. The terms and conditions of this Plan and this Appendix continued to apply to those individuals who were participating in this Plan prior to such merger or became participants thereafter.

This Appendix is not applicable to Employees of Chase Manhattan Mortgage Corporation not described in the preceding paragraph and who continued to participate (or became eligible to participate) in the Chase Plan prior to this merger with this Plan. This Appendix has no application to those individuals, except for paragraph 8.5 below, which is applicable to all Eligible Employees of Chase Manhattan Mortgage Corporation on or after January 1, 1997.

8.1    Effective January 1, 1996, CRMCo was a Participating Company under the Plan only with respect to the benefit described in Article IV of the Plan -- Credit Balance Benefits. Any Participant who was an Employee of CRMCo on or after January 1, 1996 did not accrue any benefit of the plan under Article V of the Plan as then in effect. In addition, in the event of a transfer of such Participant to, or his/her re-employment by, a Participating Company (other than CRMCo), Periods of Service with CRMCo was not included for purposes of calculating any accrued benefit under Article V of the Plan as then in effect; provided that such Period of Service with CRMCo (but not with Margaretten Financial Corporation prior to its acquisition by the Corporation) shall be included for purposes of determining Early Retirement eligibility. Rules for recognition of service with Margaretten Financial Corporation shall be as set forth in paragraph 8.6 below.

CBPJPMC00000590

8.2     Each individual who (i) was employed as an Eligible Employee by CRMCo on January 1, 1996 and (ii) was covered by, or eligible for, the benefit plans established by Margaretten Financial Corporation as of December 31, 1995, was be eligible to participate in the Plan as of the later of January 1, 1996 or the first day of the month coincident with, or next following, a Period of Service of one year, under the 3%, 4%, 5% or 6% Salary Credit schedule of Section 4.3 of the Plan as then in effect.  Employees of CRMCo participating in the Plan as of December 31, 1995 continued to receive Salary Credits at the 4% rate for Periods of Service between one and ten years.

8.3     As of December 31, 1995, in lieu of any benefit payable under former Article V, each Participant who is employed by CRMCo on such date and had accrued a Final Salary Benefit was be credited with an additional credit balance equal to his "Final Salary Credit."  The Final Salary Credit is the lump sum present value of such Participant's benefit under former Section 5.1 of the Plan as of December 31, 1995 (or if greater, the benefit set forth in former Section 5.5 of the Plan), as then in effect subject to the assumptions as set forth below:

(A)     the interest discount rate based on 30-year Treasury securities for the month of November 1995 is used;

(B)     for those Participants who are age 60 or older as of December 31, 1995, the Final Salary Benefit is assumed to be immediately payable without actuarial reduction for commencement prior to age 65;

(C)     for those Participants who have not attained age 60 as of December 31, 1995, the Final Salary Benefit is assumed to be payable as of age 60 without actuarial reduction for commencement prior to age 65;

(D)     GA-83 Mortality Table (50% Male/50% Female) is used;

CBPJPMC00000591

    (E)    Final Average Salary and Period of Service are fixed as of December 31, 1995 in the case of a benefit under Section 5.1 (and in the case of a benefit under Section 5.5, Final Average Salary, Period of Service and Years of Benefit Service are fixed as of December 31, 1992) or such earlier date as may be relevant; and

    (F)    if applicable, the Flexible Retirement Account shall be valued as of December 31, 1995.

The Final Salary Credit described above is not intended to be the accrued benefit under former Article V of any Participant who was employed by CRMCo on December 31, 1995.

    **8.4**    Notwithstanding anything in the Plan to the contrary, the aggregate Credit Balance as of December 31, 1995 of a Participant who is employed by CRMCo on January 1, 1996, whether derived from a Prior Service Balance, the Final Salary Credit or Salary Credits, will receive Transition Credits rather than Interest Credits commencing with respect to credits to be made after January 1, 1996. Such Transition Credits shall end on the day immediately preceding one of the events set forth in Section 4.2 of the Plan.

    **8.5**    For purposes of Pay Credits under Article IV, Eligible Compensation for any Participant employed by Chase Manhattan Corporation, effective January 1, 1997 (or previously CRMCo on or after January 1, 1996 with respect to Salary Credits) and who receives draw, commissions in excess of draw, or production overrides on or after that date for any calendar year shall be the sum of base salary and 50% of the lesser of (i) the sum of such draw, commission in excess of draw or production overrides (including deferred amounts) or (ii) the amount specified in Section 401(a)(17) of the Code. The limitation set forth in (ii) shall be applied on cumulative basis.

VIII-3

CBPJPMC00000592

**8.6**    Service with Margaretten Financial Corporation and its Affiliated Companies prior to its acquisition by an Employer is recognized for vesting and eligibility only and only if the individual was employed on January 1, 1996 by CRMCo.  Such service was not recognized for purposes of Article V of the Plan, as then in effect.

CBPJPMC00000593

## APPENDIX IX

### Section 411(d)(6)(A) Rules

This Appendix is designed to insure that the Plan complies with Section 411(d)(6)(A) of the Code. The rules set forth below apply to individuals who were participants accruing a benefit under this Plan or the Chase Plan on December 31, 1996 and who accrued a benefit under this Plan.

I.    When the Credit Balance specified in this Plan becomes payable, it shall be compared to the applicable Frozen Minimum Benefit. The Participant shall be entitled to receive the greater of the two amounts in any form permitted by this Plan.

II.   **Frozen Minimum Benefit** means:

(i)    with respect to the Chase Plan, the annuity benefit described in Section 7.1 and Section 7.11 of the Chase Plan, which annuity benefit was frozen as of December 31, 1988 under the Chase Plan and balance of the Account described in Section 7-A.1 of the Chase Plan which was frozen as of December 31, 1996 (or if greater than the account, the annuity described in Section 7-A.2A of the Chase Plan); or

(ii)    with respect to the Plan, the Final Salary Benefit (if any) described in former Section 5.1 of the Plan (or if greater, the previously frozen benefit described in Section 5.5 (reduced by the value of the Flexible Retirement Account as of July 31, 1996)) frozen as of the December 31, 1996 (including the Period of Service and Final Average Salary as of December 31, 1996) plus the sum of Salaried-Based and Prior Service Balances which were frozen as of December 31, 1996 (or if greater than the Credit Balance under the Plan, the December 31, 1990 annuity benefit with respect to the Retirement Plan of Chemical Bank and Certain Affiliates adjusted, if applicable, by Section 7.1(c)).

For sake of clarification, the Credit Balance and the Account described in Section 7A.1 of the Chase Plan which were frozen as of December 31, 1996 shall receive Interest Credits at the minimum interest rate provided for in Section 1.52.

CBPJPMC00000594

III.    **Rules of Application.**

1.    The Credit Balance, as of the relevant determination date, is compared to the sum of II(i) and II (ii) if applicable, to determine the greater benefit.

2.    In comparing the Credit Balance to any Frozen Minimum Benefit payable as an annuity, the Credit Balance shall be converted to a single life annuity. For purposes of such conversion, the interest rate factor shall be as specified in Section 4.5 and other factors as specified by the Appendix V. The Frozen Minimum Benefit shall be calculated as a single life annuity utilizing the factors set forth in the applicable plan; and the early retirement factors, if any, as set forth in the applicable plan shall be used.

4.    In comparing the Credit Balance to any Frozen Minimum payable in the form of an annuity and a cash balance credit balance or Account balance, the Credit Balance shall be converted into a single life annuity as specified in 2 above. The portion of the Frozen Minimum Benefit payable as a cash balance, credit balance or Account balance shall also be converted into a single life annuity after first being adjusted for Interest Credits specified in 3 above.

IV.    **Calculations for Participants Not Described Above.**

1.    In the event that a Participant had a Severance Date prior to January 1, 1997 and is not reemployed by Chase, the terms of this Plan, Chase Plan, MHT Plan or Prior Plan, shall continue to apply to the determination of the greater benefit provided that the Interest Rate specified in Section 4.5 shall be applicable at the time of relevant determination and that GA-83 Mortality (50% Male/50% Female) Table shall be used.

CBPJPMC00000595

## APPENDIX X

### Hours of Service

10.1    Affiliated Companies with Hourly Records.    (a)    If an Eligible Employee is employed by an Affiliated Company that keeps its employment records for such Employer on the basis of hours, such Employee will be credited with Periods of Service for his or her employment with such Affiliated Company in accordance with this Appendix X, unless the Administrator provides for the method set forth in Article III.

(b)    If an Eligible Employee was previously employed on an hourly basis by an Affiliated Company, such Employee will be credited with Periods of Service for such previous employment with such Affiliated Company in accordance with this Appendix XI solely for purposes of determining eligibility to participate in the Plan.  By way of clarification, after such Eligible Employee becomes eligible to participate in the Plan, the computation of his or her Periods of Service for all other purposes shall be governed by the provisions of Article III and V of the Plan.

10.2    Years of Service .    A one year of Period Service shall mean each Plan Year in which the Employee has 1,000 hours of service (as defined below); provided, however, that solely for the purposes of determining eligibility to participate in the Plan, a one year Period of Service shall be credited on the earlier of:

(1)    the last day of the twelve consecutive month period which begins on the first day on which the Employee has an hour of service, if he or she has at least 1,000 hours of service in that period,

CBPJPMC00000596

(2)    last day of the Plan Year which includes the first day on which the Employee has an hour of service if he or she has at least 1,000 hours of service in that Plan Year.

If an Employee fails to be credited with a one year Period of Service in either the twelve consecutive month period beginning on the first day on which the Employee has an Hour of Service or the Plan Year that includes the first day on which the Employee has an hour of service, he or she will be credited with a one year Period of Service on the last day of any succeeding Plan Year in which he or she has at least 1,000 hours of service.

10.3    <u>Hours of Service</u>.  For purposes of this Section 12.3, an hour of service shall include:

(1)    Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company for the performance of duties for such Affiliated Company.  These hours shall be credited to the Employee for the period during which the duties are performed.

(2)    Each hour for which an Employee is paid, or entitled to payment, by an Affiliated Company on account of a period of time during which no duties are performed (irrespective of whether employment has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.  Not more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period).  Hours under this paragraph will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

XII-2

CBPJPMC00000597

(3)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Affiliated Company. The same hours of service will not be credited both under paragraph (1) or (2), as the case may be, and under this paragraph (3). These hours will be credited to the Employee for the one year Period of Service to which the award for agreement pertains rather than for the one year Period of Service in which the award, agreement or payment is made.

10.4    <u>One-Year Break in Service</u>. A One-Year Break in Service shall mean one or more consecutive Plan Years during which an Employee does not complete at least 501 hours of service. Solely for the purpose of determining whether a One-Year Break in Service has occurred, an Employee who is absent from work by virtue of (A) the Employee's pregnancy, (B) birth of the Employee's child, (C) placement of a child with the Employee by adoption, or (D) caring for any such child, shall be credited with the lesser of (i) the Hours of Service which would normally have been credited to the Employee but for such absence, or if the Plan is unable to determine such hours, 8 hours per day of such absence, or (ii) 501 hours; <u>provided</u>, that if such absence spans more than one Plan Year, such hours shall be credited in either the Plan Year in which such absence commenced (if the Employee would thereby be prevented from incurring a One-Year Break in Service) or the immediately following Plan Year.

CBPJPMC00000598

APPENDIX XIAPPENDIX XI

Retirement Plan Benefits
Under the Alternate Retirement Formula

The provisions of this Appendix constitute a part of The Retirement Plan of The Chase Manhattan Bank (the "Retirement Plan").

Section 1.     Introduction.  If a Participant is eligible to have his/her benefit calculated under the Alternate Retirement Formula, as defined in this Appendix, the amount of the Participant's benefits under the Retirement Plan shall be determined solely as set forth in this Appendix. Except as otherwise specifically provided in this Appendix, the benefits provided under this Appendix shall be paid in lieu of any benefits which would have otherwise been provided under the Retirement Plan in the absence of this Appendix.

The applicability of the provisions of this Appendix to Transitional Participants, as defined in Section 2.3, is subject to special conditions and modifications.

Section 2.     Eligibility.

2.1     Requirements.  A Participant shall be entitled to have his/her benefit calculated under the Alternate Retirement Formula as set forth in Section 3 below (an "Entitled Participant") if all the following conditions are satisfied:

(a)     the Participant was earning benefit accruals (i.e. salary credits and final pay benefits) under the Retirement Plan of Chemical Bank and Certain Affiliated Companies as of December 31, 1996 ("1993 Retirement Plan");

(b)     as of December 31, 1988, the Participant was earning benefit accruals under the Retirement Plan of Chemical Bank and Certain Affiliates ("1988 Retirement Plan") as result of receiving compensation recognized under the 1988 Retirement Plan and (i) had attained at least

CBPJPMC00000599

age 47 and whose age and Periods of Service (expressed as years) in the aggregate totaled at least 64, or (ii) had attained at least age 52, or (iii) had completed an aggregate Period of Service of at least 25 years;

       (c)    the Participant's Severance Date occurs on or after September 30, 1998;

       (d)    the Participant's employment with the Employer was involuntarily terminated;

       (e)    the Participant did not incur an one year Break in Service during his/her Period of Service with Chemical Bank or its Affiliated Companies as they existed immediately prior to the Chase Merger (i.e. the period from December 31, 1998 to March 31, 1996) and, subsequent to the Chase Merger, with an Employer(i.e.the period from April 1, 1996 to December 31, 1996); and

       (f)    the Participant elected, during the election period set forth in Section 2.2 below ("Election Period"), by filing with the Plan Administrator or his delegate a release form (without change or modification) supplied by the Plan Administrator for this purpose; provided, further, that he or she does not revoke the release within the period specified therein.

By way of clarification, if an individual was employed as of December 31, 1988 by Chemical Bank or one of its Affiliated Companies (as they existed as of December 31, 1988) and subsequently became an employee of MHT or Chase. in either case prior to the MHT Merger or Chase Merger, then such individual is not an Entitled Participant, unless such individual was re-employed by Chemical Bank or one its Affiliated Companies before such individual incurred a one year Break in Service and before the MHT or Chase Mergers.  Further, Period of Service

XIII-2

CBPJPMC00000600

shall be determined as of December 31, 1988; and the 1988 Retirement Plan's definition of a Period of Service shall be used to determine eligibility.

    2.2.   Election Period.  The Election Period for purposes of any benefit entitlement under this Appendix begins on the Severance Date of the Participant and ends on the 60th day after the date that the Plan Administrator supplies both supplies the release and notifies the Participant of his/her eligibility to have his or her benefit calculated under this Appendix. Failure to file the release specified in Section 2.1(f) within the specified time period or a revocation of said release shall make the individual ineligible for benefits hereunder.

    2.3   Transitional Participants. As used in this Appendix, the term "Transitional Participant" shall mean an Entitled Participant; provided that his/her employment involuntarily terminated on or after January 1, 1997 and before September 30, 1998; provided, further, that such individual satisfied the criteria set forth in Sections 2.1 (other than Section 2.1(c)).  The Plan Administrator shall provide each such individual with (i) a description his or her eligibility to have such individual's benefit calculated under this Appendix, (ii) a calculation of the additional benefit that the Alternate Retirement Formula provides over and above amounts previously received by such individual or previously estimated benefit and (iii) the release form described in Section 2.1(f).  Notwithstanding Section 2.2, such individual shall have 60 days to execute and return the release form from the date that the Plan Administrator provides the information set forth above.  If such Transitional Participant fails to execute and return these forms within the requisite time period or revokes his or her release, this Appendix shall have no application to the benefit of such Transitional Participant.  Notwithstanding the foregoing, the Plan Administrator shall have no obligation to provide to any Transitional Participant whose

XIII-3

CBPJPMC00000601

benefit is in pay status or has been distributed any of the above information or forms if the Alternate Retirement Formula does not provide an additional benefit to such individual over the amounts previously distributed or in pay status.

Section 3.    Alternate Retirement Formula and Calculations.

3.1    Alternate Retirement Formula. The amount of the benefit which shall be payable to or with respect to an Entitled Participant under the Retirement Plan, as amended by this Appendix, shall be determined only under this Appendix and shall equal the sum of:

(a)    an amount determined pursuant to the formula set forth in Section 4.1 of the 1988 Retirement Plan, assuming that the Plan had remained in effect until December 31, 1992, using for these purposes the "Highest Average Compensation" and "Period of Service" as a participant in the 1988 Retirement Plan and as defined by the 1988 Retirement Plan which amounts or service shall be fixed and frozen, for this purpose, as of December 31, 1992;

(b)    an amount equal to the portion of the Accrued Benefit under the 1993 Retirement Plan attributable to the period of January 1, 1993 to December 31, 1996 with respect to the Final Pay Benefit as calculated under Section 5.1 of 1993 Retirement Plan;

(c)    an amount equal to the portion of the Accrued Benefit under the 1993 Retirement Plan attributable to Salary-Based Credits accrued from January 1, 1993 to December 31, 1996 and Interest Credits on such Salary Credits commencing March 31, 1993 through December 31, 1996 as calculated under Article IV of the 1993 Retirement Plan (without reference to cash balance benefits under any Prior Plan);

XIII-4

CBPJPMC00000602

(d)     an amount equal to the Pay Credits and Interest Credits (including interest credits on the balance of Section 3.1 (c) above) under Section 4.3. of this Plan from January 1, 1997 to the Severance Date of the Entitled Participant.

The benefits referenced in Sections 3.1(a) and (b) of this Appendix shall be converted to lump sums utilizing the actuarial factors set forth in Appendix V and the Plan. The benefits referenced in Sections 3.1(c) and (d) shall be converted to annuities utilizing the actuarial factors set forth in Appendix V and this Plan. In the event that the Entitled Participants elects an annuity benefit in a form other than a life annuity, the actuarial factors of Appendix V and this Plan shall be utilized to compute the amount of the form of the annuity elected.

Section 3.2     Dual Employees.     In the event that an Entitled Participant shall have a vested unpaid accrued benefit under the MHT Plan or the Chase Plan due to a Period of Service with either Chase or MHT prior to December 31, 1988, which benefit has not been distributed and/or is not in pay status as of the individual's Severance Date, that benefit shall be added to the benefit of Section 3.1 and shall be payable under this Article XIII. .

Section 3.3     Beneficiary.     In the event of the death of a Participant who would qualify as an Entitled Participant (including a Transitional Participant) but for the fact such Participant died prior to making the election or while employed, the benefit of the Beneficiary (or it applicable to a benefit in pay status, the estate) of such individual shall be calculated under this Appendix as if the Entitled Participant actually terminated employment immediately prior to the date of death and had made the election specified above.

Section 3.4     Distributions. The benefits determined under this Section 3 shall be distributed in the manner provided under Section 4 of this Appendix. However, in no event will

XIII-5

CBPJPMC00000603

the benefit payable hereunder at the Date of Distribution ever be less than the benefit specified in Article IV of the Plan or Appendix IX of the Plan.

Section 4.    Form of Benefit Pavement.

4.1    Form.  The benefit of an Entitled Participant under Section 3 of this Appendix shall be paid in the same manner and subject to the same conditions as the benefit under Retirement Plan that would otherwise be distributed to the Entitled Participant.

4.2    Transitional Participant.  If the retirement benefit of a Transitional Participant is being paid in the form of an annuity or has been distributed as a lump sum, then such Participant's benefit under Section 3.1 shall be (a) calculated as of the original Date of Distribution or Annuity Starting Date and (b) converted to the same form as elected by such individual as such applicable date. The Entitled Participant shall receive the excess of the amount provided under the Alternate Formula over the original retirement benefit.  If the Transitional Participant had elected a lump sum, then such excess shall be distributed as a lump sum with interest thereon based on the Interest Rate as in effect for each applicable Plan Year from the Date of Distribution to the end of the month immediate preceding the date that such excess is distributed to the individual.   If the Transitional Participant had elected an annuity, then such excess shall be added to the monthly annuity payment within a 90 days  following receipt of the release and calculation of such new benefit amounts.  In addition, there shall be a single make up payment from the Annuity Starting Date to the date of first month in which the annuity payment is increased equal to the sum of the monthly excess with interest thereon based on the Interest Rate as in effect for each applicable Plan Year from the date each payment would have been made to the date the excess is distributed.

XIII-6

CBPJPMC00000604