UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

FRANK BILELLO, individually and on behalf of all
others similarly situated,

                      Plaintiff,

              vs.

JPMORGAN CHASE RETIREMENT PLAN,
JPMORGAN CHASE DIRECTOR OF HUMAN
RESOURCES, as administrator of the JPMorgan
Chase Retirement Plan,

                  Defendants.

----------------------------------------------------------------x

Via ECF

Case No.: 07-CV-7379(RJS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

SIMPSON THACHER & BARTLETT LLP
Thomas C. Rice, Esq. (trice@stblaw.com)
Jonathan K. Youngwood, Esq.
(jyoungwood@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

JPMORGAN CHASE LEGAL DEPARTMENT
Meryl R. Kaynard, Esq.
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
Telephone:  (212) 552-6825

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND......................................................................................................4

    A.    Cash Balance Plans ..............................................................................................4

    B.    The Cash Plan for Retirement of Chemical Bank and Certain Affiliates ...............5

    C.    Subsequent Retirement Plan Mergers ...................................................................7

ARGUMENT ...........................................................................................................................7

I.    PLAINTIFF'S "BACKLOADING" CLAIMS (COUNTS 1 AND 6) FAIL TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED...................................7

    A.    The Amended Complaint's Claim Regarding The 1991 Conversion Of
Chemical's Retirement Plan To A Cash Balance Plan (Count 6) Fails
As A Matter Of Well-Established Law....................................................................7

    B.    The Amended Complaint Fails To Allege Backloading With Respect
To The 1997 Chase Plan (Count 1)......................................................................11

II.    COUNTS 2 AND 3 FAIL TO ASSERT A VALID ERISA CAUSE OF ACTION .........12

III.    PLAINTIFF LACKS STANDING TO ASSERT COUNTS 4 AND 5 ............................14

IV.    COUNTS 1 AND 7 FAIL TO SATISFY THE BASIC PLEADING
REQUIREMENTS OF RULE 8 AND OTHERWISE FAIL TO STATE A
CLAIM.........................................................................................................................16

V.    COUNTS 1-9 ARE TIME-BARRED.............................................................................19

VI.    COUNTS 10 AND 11 FAIL AS A MATTER OF LAW .................................................23

    A.    Defendants Met Their Obligations Under ERISA §§ 104(b)(4) and
105(a) ..................................................................................................................23

    B.    There Was No Breach of Fiduciary Duty .............................................................24

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06-Civ-5383, 2007 WL 2077153 (S.D.N.Y. July 20, 2007) .................................. 16

*Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139 (D. Ariz. 2005) ........................................................................................................ 9

*AMA v. United HealthCare Corp.*, No. 00 Civ. 2800 (LMM), 2001 WL 863561 (S.D.N.Y. July 31, 2001) ...................................................... 25

*Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir. 1997) ................................................................... 24

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) ................................. 15, 16

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ............... 21

*Bryerton v. Verizon Commc'ns, Inc.*, No. 07-1680 (2d Cir.) ....................... 2

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44 (2d Cir. 1999) ............................................................................. 20

*Cedotal v. Whitney Nat'l Bank*, No. 94-1397, 2007 WL 2264438 (E.D. La. Aug. 3, 2007) ................................................................................. 19

*Charles v. Pepco Holdings, Inc.*, 513 F. Supp. 2d 47 (D. Del. 2007) ........... 8

*Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636 (7th Cir. 2006) ............... 2

*Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007) ..................... 2

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) ..................... 4, 11, 15

*Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485 (D.N.J. 2007) ......... 9

*Gillis v. SPX Corp. Individual Account Ret. Plan*, 511 F.3d 58 (1st Cir. 2007) .................................................................................... 19

*Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006) ...................................................... 4, 5, 14

*Hirt v. The Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331 (S.D.N.Y. 2006) .............................................................................. 19

ii

*Hirt v. The Equitable Ret. Plan for Employees, Managers and Agents*, No. 06-4757 (2d Cir.) ............................................................................................ 2

*In re JPMorgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007) ........................................................................................................ 2, 23

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ............................................... 16, 17

*Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993) ............... 11

*King v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus.*, No. 01-CV-2604 (ILG), 2003 WL 22071612 (E.D.N.Y. Sept. 5, 2003) .......................................................................... 8

*Langman v. Laub*, 328 F.3d 68 (2d Cir. 2003) ............................................ 9

*Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537 (S.D.N.Y. 2006) ............................................................................................... 4

*Leung v. Skidmore, Owings & Merrill LLP*, 213 F. Supp. 2d 1097 (N.D. Cal. 2002) ....................................................................................... 24

*Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006) ............... 11

*Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) ......... 2, 8, 9, 19

*Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628 (7th Cir. 1986) ...................... 14

*Reyes v. CUNY*, No. 06-Civ-3639, 2007 WL 2186961 (S.D.N.Y. July 26, 2007) ............................................................................................. 16

*Richards v. FleetBoston Financial Corp.*, 427 F. Supp. 2d 150 (D. Conn. 2006) .............................................................................................. 9

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ......................................... 20

*Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895 (7th Cir. 1999) .......................................................................... 23

*Stamper v. Total Petroleum, Inc.*, 188 F.3d 1233 (10th Cir. 1999) ................... 14

*Uhlein v. Seymour*, No. 7:03-CV-1147 (TJM/GHL), 2006 U.S. Dist. LEXIS 16742 (N.D.N.Y. Apr. 6, 2006) ................................................ 16

*West v. Murphy*, 99 F.3d 166 (4th Cir. 1996) .............................................. 14

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, No. 06-cv-500-DRH, 2007 WL 2608875 (S.D. Ill. Sept. 6, 2007) ...................... 10

iii

## Statutes

26 U.S.C. § 401(a)(25) ........................................................................................ 13

29 U.S.C § 1022 .................................................................................................... 7

29 U.S.C § 1024(b) ............................................................................................... 7

29 U.S.C. § 1024(b)(4) ........................................................................................ 23

29 U.S.C. § 1025(a)(2)(A) ................................................................................... 24

29 U.S.C. § 1053(a) ............................................................................................... 7

29 U.S.C. § 1054(b)(1)(B) ................................................................................. 7, 8

29 U.S.C. § 1102(a)(1) ........................................................................................ 13

29 U.S.C. § 1102(b)(4) ........................................................................................ 13

ERISA § 202 ........................................................................................................ 14

ERISA § 203 ........................................................................................................ 14

ERISA § 204(b)(1)(B) ........................................................................................ 7, 8

IRC § 410(a) ........................................................................................................ 14

IRC § 411 ............................................................................................................. 14

Pub. L. 109-280 (2006) ....................................................................................... 15

Pub. L. No. 99-272 (1986) ................................................................................... 18

### Administrative Materials

Rev. Rul. 2008-7, 2008-7 I.R.B. 419, 2008 WL 274325 (Feb. 1, 2008) ......................... 10, 11, 12

### Legislative Materials

H.R. Rep. No. 93-807 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4670 ....................... 8

### Other Authorities

Pension Benefit Guaranty Corp., Pension Insurance Data Book 2005 62 (2006), *available at* http://www.pbgc.gov/docs/2005databook.pdf .................................................... 5

## PRELIMINARY STATEMENT

Plaintiff, a participant in the JPMorgan Chase Retirement Plan (the "JPMC Plan"), brings this purported class action on behalf of participants in the JPMC Plan and certain predecessor retirement plans to the JPMC Plan (collectively, the "plans").[1] The plans are "cash balance plans," a common form of defined benefit plan, in which an employee's retirement benefit is recorded as a balance in a notional account comprised of "pay credits" (a percentage of the employee's pay) and "interest credits" (which are applied to the notional account) that accrue over time. When a participant elects to receive his or her vested retirement benefit, the benefit is paid either as a lump sum or an annuity, based on the balance reflected in the notional account.

After Defendants filed their motion to dismiss Plaintiff's original complaint, and on the day his opposition papers were due, Mr. Bilello filed the First Amended Class Action Complaint (the "Amended Complaint" or "Compl."). The Amended Complaint repeats Plaintiff's original claims and adds a hodgepodge of new theories as to how the plans supposedly did not comply with certain ERISA provisions. The Amended Complaint's eleven counts are unwieldy but fall into the following five categories:

(1)    the plans are impermissibly "backloaded" in violation of 29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B) (Counts 1 and 6);

(2)    Defendants violated the "definitely determinable" requirement of the Internal Revenue Code § 401(a)(25) (Counts 2 and 3);

(3)    the plans result in an illegal forfeiture of benefits in violation of 29 U.S.C. § 1053(a), ERISA § 203(a) (Counts 4 and 5);

(4)    Defendants failed to comply with the notice and disclosure requirements of ERISA in connection with either the original conversion to a cash balance plan or

---

[1]    The predecessor retirement plans at issue in this action are the Cash Plan for Retirement of Chemical Bank and Certain Affiliates (the "1991 Chemical Cash Plan"), the Retirement Plan of Chemical Bank and Certain Affiliated Companies (the "1993 Chemical Plan"), and the Retirement Plan of The Chase Manhattan Bank & Certain Affiliated Companies (the "1997 Chase Plan"). A chronology of the relevant plans is attached at Appendix A.

a merger of predecessor plans resulting in a cash balance plan (Counts 7, 8 and 9; collectively, the "notice claims"), and

(5)     Defendants failed to comply with the disclosure obligations of 29 U.S.C. §§ 1024(b) and 1025(a), ERISA §§ 104(b) and 105(a), resulting in a breach of Defendants' fiduciary obligations under 29 U.S.C. § 1104(a), ERISA § 404(a) (Counts 10 and 11).[2]

Each of Plaintiff's claims is without merit and should be dismissed.

*Counts 1 and 6:* Plaintiff's "backloading" claims fail to state a claim on which relief can be granted. Count 6 is virtually identical to "backloading" claims that have been universally rejected by the federal courts that have considered them, and is directly contrary to the IRS's interpretation of its own regulation. As the courts have consistently recognized, the theory underlying Plaintiff's backloading claim contravenes the clear purpose and plain text of 29 U.S.C. § 1054(b)(1)(B). Count 1, which seeks to state a different type of backloading claim with respect to one of the plans at issue, fails to allege the specific elements of a backloading claim.

---

[2]     In an action pending before Hon. Harold Baer, Jr., plaintiffs, represented by counsel for Plaintiff here, claim that the cash balance plans of JPMorgan Chase and its predecessor companies are age discriminatory in violation of 29 U.S.C. § 1054(b)(1)(H)(i), ERISA § 204(b)(1)(H)(i). Defendants' motion to dismiss that age discrimination claim was denied, and the action is proceeding. Plaintiffs' theory – that interest on cash balance plan accounts is age discriminatory because older employees may earn less interest through retirement than younger workers – is contrary to the overwhelming weight of authority, including decisions from each of the three Circuit Courts to have considered such a claim. *See Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007) (holding that cash balance plans are not age discriminatory); *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) (same); *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636 (7th Cir. 2006) (same). The age discrimination issue is also before the Second Circuit in fully briefed appeals. *Hirt v. The Equitable Ret. Plan for Employees, Managers and Agents*, No. 06-4757, 06-5190 (2d Cir.); *Bryerton v. Verizon Commc'ns, Inc.*, No. 07-1680 (2d Cir.).

Judge Baer certified a class in the case before him which includes age discrimination claims on behalf plan participants (including Mr. Bilello and other participants he purports to represent here), *In re JPMorgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007), but denied those plaintiffs the right to pursue the notice claims that Mr. Bilello asserts here. Judge Baer declined to accept this case as related to *In re JPMorgan Chase Cash Balance Litigation.*

***Counts 2 and 3:*** Plaintiff's "definitely determinable" claims also fail to state a claim. These claims are premised on a requirement in the Internal Revenue Code that relates to tax qualification — a requirement that does not appear in ERISA. Indeed, the courts have repeatedly rejected a private right of action under ERISA arising from that requirement.

***Counts 4 and 5:*** The allegations in Counts 4 and 5 are based upon the plans' alleged failure — for participants who retire and take their benefits before age 65 — to project certain interest credits to age 65, which, Plaintiff claims, results in an alleged forfeiture of these interest credits. But Mr. Bilello is *66 years old and has not yet taken his benefit.* Because he cannot claim that he has or ever will be injured by the forfeiture of interest credits projected to age 65, Plaintiff lacks standing to assert these purely hypothetical claims.

***Counts 1 and 7:*** Count 1 (backloading) and Count 7 (regarding notices of significant reductions in future benefit accruals) are impermissibly vague and conclusory and, therefore, fail to satisfy Rule 8 of the Federal Rules of Civil Procedure. For example, while Count 1 alleges that *all* of Defendants' plans are backloaded, it identifies only *one* plan (the 1997 Chase Plan) and asserts only the most conclusory allegations concerning that plan. Count 7 alleges only the barest facts concerning the timing and content of the notices provided in connection with the 1991 Chemical Cash Plan, and even those allegations are contradicted by other allegations in the Amended Complaint and the exhibits attached thereto.

***Counts 1-9:*** All of the counts in the Amended Complaint, except for the last two, concern events that took place in the early to mid-1990s and are time-barred. New York applies a 6-year statute of limitations to claims relating to employee benefit plans. Yet Counts 1-9 purport to challenge notices, plan communications, plan amendments and events that took place more than 8 (and as many as 17) years ago.

*Counts 10 and 11:* Finally, the breach of fiduciary duty claims (Counts 10 and 11) are based on a fundamental misreading of ERISA's participant disclosure provisions and the fiduciary duties associated with such disclosure. Because they seek to impose requirements on Defendants that vastly exceed those imposed by ERISA, Counts 10 and 11 fail as a matter of law and should be dismissed.

## FACTUAL BACKGROUND

### A.    Cash Balance Plans

Under a cash balance plan, an employee's benefit is reflected in a notional account. Generally, this notional account is made up of two credits: "pay credits" and "interest credits." Pay credits can be based upon years of service, and are credited to an employee's notional account as a percentage of the employee's pay (*e.g.*, an employee making $50,000 annually who is entitled to a 5% pay credit based on years of service will have $2,500 credited to his or her notional account). Interest credits, which are generally the same for all employees, are credited to the notional account by applying a common interest rate to the account balances.[3]

Cash balance plans offer both employers and employees advantages over many other types of plans. For employers, cash balance plans can be more predictable than certain other types of plans. In other types of defined benefit plans, such as a final average pay plan,[4] the employer's cost and the employee's benefit depend upon future pay increases, which cannot be known as the benefit is accrued. For employees, cash balance plans are easy to understand

---

[3]    *See generally Esden v. Bank of Boston*, 229 F.3d 154, 158 (2d Cir. 2000); *Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*, 441 F. Supp. 2d 516, 520 (S.D.N.Y. 2006); *Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 541 (S.D.N.Y. 2006).

[4]    A "final average pay plan" is a type of defined benefit plan in which the annual retirement benefit for each employee is a percentage of an employee's final average salary over a designated period of years, multiplied by the employee's years of service. *Esden*, 229 F.3d at 158 n.4.

and allow for an even accrual of benefits. In addition, cash balance plans often offer employees the option of a lump sum benefit upon termination of employment and are generally more portable than other defined benefit plans — so that even employees that have several jobs in their career may accrue and vest in substantial retirement benefits.[5]

**B.    The Cash Plan for Retirement of Chemical Bank and Certain Affiliates**

Chemical Bank, the plan sponsor, amended its retirement plan as of January 1, 1991 (the "Cash Plan Amendment"), resulting in the 1991 Chemical Cash Plan.[6] Compl. Ex. 4. Before the 1991 amendment, the Chemical Plan provided retirement benefits pursuant to a final average pay formula. The 1991 Chemical Cash Plan was a cash balance plan.

As of January 1, 1991 a "bookkeeping account" was set up for each participant in the 1991 Chemical Cash Plan. Compl. Ex. 4 § 4. The initial account balance, or "Credit Balance," of this bookkeeping account was calculated as follows:

> The Account consists of two sub-accounts – the Prior Service Balance, if any, and the Salary-Based Credit Balance. The Prior Service Balance consists of the Prior Service Credit plus Transition Credits. The Salary-Based Credit Balance consists of Salary-Based Credits plus Interest Credits. The aggregate of the two balances equals the "Credit Balance" of an Account.

*Id.* § 4.1(b). For the purposes of calculating this initial account balance, the January 1, 1991 cash balance formula was applied retroactively to January 1, 1989. Compl. ¶ 27. As such, the "Prior

---

[5]    *See, e.g., Hirt*, 441 F. Supp. 2d at 520 (noting that "[a]s the nation's work force became more mobile, the interest of participants in earlier vesting and more flexible portability of their retirement benefits also grew. Cash balance plans were introduced to satisfy these interests."). Cash balance plans are an integral part of this country's pension plan system. Over one quarter of the total working population covered by defined benefit plans are cash balance plan or other "hybrid plan" participants. *See* Pension Benefit Guaranty Corp., <u>Pension Insurance Data Book 2005</u> 62 (2006), *available at* http://www.pbgc.gov/docs/2005databook.pdf.

[6]    Plaintiff erroneously refers to this plan, which did not exist in 1989, as the "1989 Cash Plan."

Service Credit" was the present value of the lump sum amount based on a participant's final

average pay benefit "immediately preceding January 1, 1989," plus transition credits from 1989

forward, and the "Salary-Based Credit Balance" was the sum of pay credits and interest credits

that would have accrued under the 1991 Chemical Cash Plan had it been in effect since January

1, 1989. Compl. ¶ 30; Compl. Ex. 4 §§ 4.1-4.3.

The Cash Plan Amendment ensured that no benefits accrued under the old final

average pay plan through the end of 1990 would be lost. The 1991 Chemical Cash Plan provided

a guaranteed minimum benefit set at the level of benefits an employee had accrued under the old

plan as of December 31, 1990:

> In no event will the benefit provided under the Plan be less than the
> Participant's accrued benefit determined as of December 31, 1990, under
> the terms of the Prior Plan immediately prior to the Effective Date.

Compl. Ex. 4 § 7.1(b).[7] Active participants began accruing benefits under the 1991 Chemical

Cash Plan on January 1, 1991, and stopped accruing benefits under the pre-amendment final pay

formula on December 31, 1990.

Defendants distributed various communications to participants announcing the

conversion from the final pay plan to the 1991 Chemical Cash Plan. Among the communications

were the notices attached as Exhibits 2 and 3 to the Amended Complaint, which were distributed

in July and September 1990 — well before January 1, 1991, the date the amendment took effect

and the first date on which a cash balance formula was used to calculate an employee's

retirement benefit. Compl. ¶ 96.

---

[7]    For example, consider a pre-amendment Chemical Plan participant who left Chemical on
March 1, 1991 and elected to immediately receive his or her retirement benefit. Pursuant to the
1991 Chemical Cash Plan, that participant was entitled to the greater of his or her hypothetical
account balance on March 1, 1991, or the benefit he or she had accrued under the pre-
amendment Chemical Plan through December 31, 1990.

## C.     Subsequent Retirement Plan Mergers

Plan mergers took place following the 1991 merger of Chemical Banking Corporation ("Chemical") and Manufacturer's Hanover Corporation ("MHT"), and then again following the 1996 merger of Chemical and The Chase Manhattan Corporation ("Chase").  In connection with each of these plan mergers, Defendants distributed notices to plan participants in accordance with ERISA.  *See, e.g.*, Compl. Exs. 1-3.  Defendants also distributed Summary Plan Descriptions ("SPDs") following the 1991, 1993 and 1997 plan conversions/mergers (*see, e.g.*, Compl. Exs. 9-10), as well as Summaries of Material Modifications ("SMMs"), as required.  *See* ERISA §§102(a), 104(b), 29 U.S.C §§ 1022, 1024(b).

## ARGUMENT

## I.     PLAINTIFF'S "BACKLOADING" CLAIMS (COUNTS 1 AND 6) FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.     The Amended Complaint's Claim Regarding The 1991 Conversion Of Chemical's Retirement Plan To A Cash Balance Plan (Count 6) Fails As A Matter Of Well-Established Law

Under ERISA, a plan may be impermissibly "backloaded" if the accrual for an employee in one year is more than 133 1/3 percent what it is for any prior plan year.  *See, e.g.,* 29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B).  Count 6 alleges that the 1991 Chemical Cash Plan violated ERISA's "backloading" rules.  According to the Amended Complaint, because the 1991 Chemical Cash Plan adopted a "minimum guaranteed benefit" to preserve benefits that participants had already accrued under the pre-amendment plan (a step *required* by ERISA's non-forfeiture rules),[8] accruals under the 1991 Chemical Cash Plan did not actually commence

---

[8]     ERISA § 203(a) prohibits the forfeiture of already-accrued benefits in a defined benefit plan.  29 U.S.C. § 1053(a).  Thus, when a benefit formula changes, the benefit to which a participant was entitled under the prior formula as of the date of the change must be preserved, and the participant is entitled to the greater of what was previously accrued or the benefit that the new formula provides.

until the minimum guaranteed benefit was exceeded.  Compl. ¶¶ 79-80.  As a result, Mr. Bilello claims, the 1991 Chemical Cash Plan created an alleged "wear away" effect; that is, "a period of very small or no benefit accruals followed by a period of regular benefit accruals result[ing] in a violation of the 133 1/3% rule in the year benefit accruals resume. . . ."  Compl. ¶ 81.

ERISA's backloading rules were enacted to protect younger employees by ensuring that benefit accruals are not disproportionately accumulated in the later years of an employee's career:  "The primary purpose of [minimum accrual rates] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue 'backloading,' *i.e.*, by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement."  H.R. Rep. No. 93-807 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4670, 4688.  *See also Register*, 477 F.3d at 71; *Charles v. Pepco Holdings, Inc.*, 513 F. Supp. 2d 47, 52 (D. Del. 2007); *King v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus.*, No. 01-CV-2604 (ILG), 2003 WL 22071612, at *13-14 (E.D.N.Y. Sept. 5, 2003) (finding that the policy behind ERISA § 204(b)(1)(B) "renders [plaintiff's backloading] argument meritless").

In passing this provision, Congress did not intend to prevent employers from amending existing plans and adopting new benefit formulas.  To the contrary, ERISA expressly provides that a backloading analysis should ***not*** include a comparison of benefits under a pre-amendment retirement plan formula to post-amendment benefits.  ERISA § 204(b)(1)(B) states that when performing a backloading analysis, "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years."  29 U.S.C. § 1054(b)(1)(B), ERISA § 204(b)(1)(B).  "In other words, the test applies to how a given plan operates at a given

time and prevents it from being unfairly weighted against shorter-term employees." *Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003).

Despite the purpose and express language of the statute, the Amended Complaint plainly asks this Court to compare accruals under the pre-amendment Chemical Plan final average pay formula with accruals under the post-amendment 1991 Chemical Cash Plan formula. Courts have repeatedly rejected this type of backloading claim.

For example, in *Richards v. FleetBoston Financial Corp.*, 427 F. Supp. 2d 150, 170-71 (D. Conn. 2006), the plaintiff argued that an alleged "wear-away effect" in a cash balance plan, which guaranteed that participants would never receive less than their accrued benefit under the predecessor plan, violated ERISA. Citing the plain language of § 204(b)(1)(B)(i) and the Second Circuit's decision in *Langman*, the *Richards* court rejected this argument. It explained that "[i]f the Amended Plan is treated as having been in effect for all plan years, employees such as Richards would never have accrued a benefit under the Traditional Plan [the predecessor plan], and would have started accruing benefits under the cash balance formula from the start of their employment. Assuming such a scenario, such employees would suffer no backloading of benefits." *Id.* at 171; *see also Register*, 477 F.3d at 72 ("[O]nce there is an amendment to the prior plan, only the new plan formula is relevant when ascertaining if the plan satisfies the 133 1/3 % test."); *Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485, 494 (D.N.J. 2007) ("Plaintiff must calculate the entire accrual history as if the [current cash balance plan terms] had been in effect for every year, and thus that the [prior plan terms] had never been in effect."); *Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1160 (D. Ariz. 2005) ("[O]ne does not compare the new formula with the old formula; rather, the backloading question must be answered by considering the new formula on a stand-alone basis."); *Wheeler v.*

*Pension Value Plan for Employees of the Boeing Co.*, No. 06-cv-500-DRH, 2007 WL 2608875,
at *12 (S.D. Ill. Sept. 6, 2007). By contrast, not a single court has adopted Plaintiff's
interpretation.

Moreover, this month, the IRS issued a Revenue Ruling that also rejects the
premise underlying Plaintiff's "backloading" claim. *See* Rev. Rul. 2008-7, 2008-7 I.R.B. 419,
2008 WL 274325 (Feb. 1, 2008). The IRS ruling describes a hypothetical plan that, like the
1991 Chemical Cash Plan, was converted from a final pay plan to a cash balance plan. Under the
hypothetical plan, a participant's accrued benefit is defined as the greater of (1) their accrued
benefit under the final pay plan through the date of the conversion, and (2) the accrued benefit
provided under the cash balance formula. The ruling addresses the possibility that the cash
balance formula would not immediately provide a greater benefit than the old plan, resulting in
"a period where the annual rate of accrual is zero" (*i.e.*, a "wear-away") followed by years of
positive benefit accrual. *Id.* The IRS flatly rejected the argument that this would violate the 133
1/3 percent rule:

> Ordinarily, a period of a zero annual rate of accrual followed by a period
> of positive annual rates of accrual would result in a plan failing to satisfy
> the 133 1/3% rule. However, because there is no ongoing accrual under
> the pre-conversion formula . . . ***the [cash balance] formula is the only
> formula under the plan*** . . . and . . . that formula is treated as if it were in
> effect for all other plan years. Accordingly, the benefits under the [cash
> balance] formula are ***the only benefits that need to be considered for
> purposes of applying the 133 1/3% rule*** (and the § 411(d)(6) protected
> benefit under the pre-conversion formula accrued through the date of
> conversion is disregarded in applying § 411(b)(1)(B)).

*Id.* (emphasis added).

The 1991 Chemical Cash Plan — just like the hypothetical plan in the IRS's
February 2008 revenue ruling — allegedly resulted in a period of "zero accrual" followed by
years of positive benefit accrual. Compl. ¶¶ 80-81. But even assuming the 1991 Chemical Cash

Plan resulted in the wear-away alleged in Count 6, the 1991 Chemical Cash Plan formula must be considered the "*only formula under the plan*" and the benefits under that formula "*are the only benefits that need to be considered for purposes of applying the 133 1/3% rule.*"  Rev. Rul. 2008-7, 2008-7 I.R.B. 419, 2008 WL 274325.[9]  There was no impermissible "backloading," and Count 6 fails as a matter of law.[10]

### B.  The Amended Complaint Fails To Allege Backloading With Respect To The 1997 Chase Plan (Count 1)

Count 1 of the Amended Complaint purports to assert a backloading claim against "*all* versions of the cash balance plan from 1989 to the present," yet makes factual allegations concerning *only* the 1997 Chase Plan.[11]  Specifically, Count 1 alleges that the 1997 Chase Plan violates the 133 1/3 percent backloading rule because (1) the plan had a pay credit schedule of 4% - 14%, (2) "the annual rate of accrual of pay credits increases by more than one third," and (3) the plan did not provide for a minimum interest credit rate of at least 5.25%.  Compl. ¶ 51. These vague allegations fail to articulate a claim for backloading.

As discussed above, under the 133 1/3 percent rule, "the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%."  *Esden*, 229 F.3d at 167 n.18 (citing ERISA § 204(b)(1)(B); I.R.C. § 411(b)(1)(B)).

---

[9]     The IRS's interpretation of its own regulations is entitled to deference.  *See Esden*, 229 F.3d at 154.

[10]     Plaintiff's "backloading" claims (in Counts 1 and 6) also must be dismissed because Plaintiff has failed to allege that he exhausted the administrative remedies provided under any such plan.  *See, e.g., Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (ERISA requires exhaustion of "administrative appeals provided for in the relevant plan or policy"); *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) ("[F]ederal courts-including this Circuit-have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.") (quotation omitted).

[11]     *See* Point IV, *infra,* regarding the Count 1's failure to satisfy Rule 8.

The IRS recently explained that applying the 133 1/3 percent rule requires a calculation of "the annual rate at which the retirement benefits payable at normal retirement age accrue under the plan." Rev. Rul. 2008-7, 2008-7 I.R.B. 419, 2008 WL 274325. Once this annual rate is determined for the current plan year and all future plan years, the difference between the rate of accrual for any plan year may be compared "to see whether the ratio of the later annual rate of accrual to the earlier annual rate of accrual exceeds 133 1/3 %." *Id.* For each plan year, the rate of accrual may be measured by "the increase in the dollar amount of the accrued benefit or the increase in the dollar amount of the accrued benefit expressed as a percentage of compensation for the plan year." *Id.*

Based on these standards, Count 1 fails to plead a backloading claim. Accepting for purposes of this motion Plaintiff's allegation that a 5.25% interest rate would have avoided backloading, the Amended Complaint does not actually allege that the interest rate was below that amount for any plan year. Moreover, Count 1 never alleges the annual rate of accrual under the 1997 Chase Plan for *any* plan year, whether measured in terms of an increase in the dollar amount of the accrued benefit or as a percentage of compensation for the plan year. Nor does Count 1 allege that the ratio of any later annual rate of accrual (measured at normal retirement age) to any earlier annual rate of accrual under the 1997 Chase Plan exceeds 133 1/3 percent. In other words, Count 1 *does not allege that backloading ever actually occurred.* Count 1 fails to state a claim and must be dismissed.

## II.    COUNTS 2 AND 3 FAIL TO ASSERT A VALID ERISA CAUSE OF ACTION

Counts 2 and 3 both relate to the "definitely determinable" requirement in Internal Revenue Code ("IRC") § 401(a)(25). Count 2 alleges that "the cash balance plans in effect from 1989 to 1997" violated ERISA §§ 402(a)(1) and 402(b)(4) because the employer had discretion in setting the variable interest rate and, therefore, benefits were not "definitely determinable."

12

Compl. ¶¶ 55-56.  Count 3 alleges that, since a variable interest rate renders it impossible to "definitely determine" the accrued benefit before normal retirement age, the 1991 Chemical Cash Plan and its "successors in interest" violate ERISA because they do not prescribe a method for selecting the interest projection rate.  *Id.* ¶¶ 58-61.  Placing aside the validity of the allegations,[12] both counts incorrectly assume that the "definitely determinable" requirement in IRC § 401(a)(25)  gives rise to a cause of action under ERISA §§ 402(a)(1) and 402(b)(4).  It does not and on that ground alone these claims must be dismissed.

The IRC provides that "[a] defined benefit plan shall not be treated as providing definitely determinable benefits unless, whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are specified in the plan in a way which precludes employer discretion."  26 U.S.C. § 401(a)(25).  This requirement is included in IRC § 401(a), which sets forth a number of elements that must be satisfied in order for a pension plan to qualify for favorable tax treatment.  Section 402 of ERISA ("Establishment of Plan") sets forth various requirements relating to the establishment of employee benefit plans.  Sections 402(a)(1) and 402(b)(4) require that benefit plans be "established and maintained pursuant to a written instrument" that "specif[ies] the basis on which payments are made to and from the plan."  29 U.S.C. §§ 1102(a)(1), (b)(4).

Plaintiff does not (and cannot) argue that there is a violation of the terms of ERISA §§ 402(a)(1) and 402(b)(4).  Rather, Plaintiff asks the Court to read the "definitely determinable" requirement of IRC § 401(a)(25) into these ERISA sections in order to invent an ERISA cause of action.  Plaintiff's claim ignores the obvious: although Congress expressly

---

[12]    While not at issue in this motion, the plans implicated by Counts 2 and 3 were approved by the IRS at the time, and Plaintiff does not even allege otherwise.

incorporated *certain* requirements into both ERISA and the IRC,[13] the "definitely determinable" requirement is *only* found in the IRC. *See id.* Not surprisingly, courts have repeatedly held that the tax qualification requirements found only in IRC § 401 (such as the "definitely determinable" requirement) do not give rise to an ERISA cause of action. *See Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) ("There is no basis . . . to find that the provisions of IRC § 401 — which relate solely to the criteria for tax qualification under the Internal Revenue Code — are imposed on pension plans by the substantive terms of ERISA."); *West v. Murphy*, 99 F.3d 166, 169 (4th Cir. 1996) (finding the reliance on IRC § 401 in an ERISA claim to be "misplaced"); *Stamper v. Total Petroleum, Inc.*, 188 F.3d 1233, 1238 (10th Cir. 1999) ("it would be improper to read into ERISA [the definitely determinable] requirement [that] Congress elected to apply only to the Tax Code"); *Hirt*, 441 F. Supp. 2d at 540 ("The requirement under the Tax Code that the benefits be "definitely determinable" in order to qualify for tax benefits, 26 U.S.C. § 401(a)(25), does not apply to ERISA actuarial requirements."). Accordingly, Counts 2 and 3 fail as a matter of law and must be dismissed.

## III.   PLAINTIFF LACKS STANDING TO ASSERT COUNTS 4 AND 5

In Counts 4 and 5, Plaintiff alleges that the 1991 Chemical Cash Plan effects a forfeiture of accrued benefits in violation of ERISA § 203(a). Plaintiff's allegation appears to be based on IRS Notice 96-8. Under Notice 96-8, in certain circumstances cash balance plans were required (for employees who took lump sum distributions before normal retirement age, which is generally age 65[14]) to project future interest credits to age 65 and then discount the result back to

---

[13]    *See, e.g.*, ERISA § 202 and IRC § 410(a) (both setting forth minimum participation standards); ERISA § 203 and IRC § 411 (both setting forth minimum vesting standards).

[14]    The 1991 Chemical Cash Plan defines normal retirement age as the later of age 65 or the 5th anniversary of employment. *See* Ex. 4 at § 1.36. For Mr. Bilello, who began his employment with Chemical in 1960, normal retirement age is age 65.

present value using an IRS-specified discount rate. *See Esden*, 229 F.3d at 165-171 (discussing Notice 96-8).[15] The projection of interest credits to age 65 results in a greater amount than a participant's account balance only when the plan's interest credit rate exceeds the IRS-specified discount rate. In these limited circumstances only, the plan is required to pay that greater amount in order to avoid a forfeiture.

Counts 4 and 5 fail to allege the fundamental prerequisite of any forfeiture claim premised on Notice 96-8, *i.e.*, that the 1991 Chemical Cash Plan's interest crediting rate in any plan year exceeded the IRS discount rate.[16] Absent such allegation, there has been no injury.

Counts 4 and 5 must also be dismissed because Plaintiff lacks constitutional standing to assert these claims. Both Counts allege a forfeiture that can only affect participants who retire before the normal retirement age of 65. Compl. ¶¶ 66, 70. Plaintiff, however, is 66, *see* Rice Aff. ¶ 5 and Ex. C, and remains a current employee of JPMC, Compl. ¶ 10. Mr. Bilello cannot possibly be injured by the forfeiture alleged in Counts 4 and 5 — which allegedly affects participants who retire before reaching age 65 — and thus has no standing to assert such claims.

---

[15]     As indicated in Notice 96-8, this calculation was unnecessary if a plan used a safe harbor interest rate. Under the Pension Protection Act of 2006, this calculation is no longer required. *See* Pension Protection Act of 2006, Pub. L. 109-280, § 701(a)(2) (an applicable defined benefit plan does not fail to meet the requirements of IRC § 417(e) if, under the plan, "the present value of the accrued benefit (or any portion thereof) of any participant is . . . equal to the amount expressed as the balance in the hypothetical account").

[16]     Count 5 relates to "transition credits," not interest credits. Plaintiff cannot claim a forfeiture of "transition credits" for the additional reason that these credits (unlike interest credits) cease with an employee's termination and need not be projected through age 65. *See* Compl. Ex. 4 § 4.2(b). In other words, Count 5 — the alleged need to calculate future "transition credits" to age 65 for an employee who terminated his employment — is based on a fundamental misunderstanding of the plan's operation.

**IV.     COUNTS 1 AND 7 FAIL TO SATISFY THE BASIC PLEADING REQUIREMENTS OF RULE 8 AND OTHERWISE FAIL TO STATE A CLAIM**

In *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitlement to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the allegations in
> the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (internal citations omitted). As the Second Circuit has explained, *Twombly*

articulated "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with

some factual allegations in those contexts where such amplification is needed to render the claim

*plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Courts in this District have not

hesitated to dismiss claims that fail to satisfy this Rule 8 standard. *See, e.g., Reyes v. CUNY*, No.

06-Civ-3639, 2007 WL 2186961, at *5 (S.D.N.Y. July 26, 2007); *Alexandra Global Master*

*Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06-Civ-5383, 2007 WL 2077153, at *9 (S.D.N.Y.

July 20, 2007).

Count 1 of the Amended Complaint purports to assert a backloading claim against

"all versions of the cash balance plan from 1989 to the present" — a sweeping allegation that

encompasses at least the 1991 Chemical Cash Plan, the 1993 Chemical Plan and the 1997 Chase

Plan — yet makes factual allegations concerning only one of these plans, the 1997 Chase Plan.

*See* Compl. ¶ 51. This "kill all birds with one stone" pleading tactic provides insufficient notice

as to the factual basis (if any) of Plaintiff's backloading claim and the plans that it may relate to,

making it impossible for Defendants to respond to the claims and mount a meaningful defense.

*See Uhlein v. Seymour,* No. 7:03-CV-1147 (TJM/GHL), 2006 U.S. Dist. LEXIS 16742, at *13

(N.D.N.Y. Apr. 6, 2006) (insufficient allegations render it difficult to "shape a comprehensive

defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."). Moreover, Plaintiff *only* seeks relief with respect to the 1991 Chemical Cash Plan (Compl. Prayer For Relief ¶ B.1.), despite the absence of any specific factual allegation in Count 1 concerning that plan. As such, Count 1 is hopelessly vague, and clearly insufficient under Rule 8.

Count 7 also fails to comply with Rule 8. The claim purports to relate to notices distributed prior to the implementation of the 1991 Chemical Cash Plan, the 1993 Chemical Plan, and the 1997 Chase Plan. There are no allegations whatsoever concerning notices related to the 1993 Chemical Plan. With respect to the 1997 Chase Plan, the Amended Complaint does no more than state the notice requirements of ERISA § 204(h) and summarily conclude that Defendants did not comply with those requirements. *See* Compl. ¶ 98. These mere "recitations of the elements of" an ERISA § 204(h) claim fail to provide the requisite "amplification" to "raise a right to relief above the speculative level." *Iqbal*, 490 F.3d at 157-58.

Plaintiff's failure to meet the "plausibility standard" of Rule 8 is further demonstrated by the fact that, in the few instances where Court 7 alleges any facts, those facts show that Plaintiff has no cognizable claim under ERISA § 204(h).

Count 7 alleges that the notices distributed by Defendants in 1990 in connection with the 1991 Chemical Cash Plan violated ERISA § 204(h) in two ways: (1) the notices were untimely, because they were distributed after the alleged "January 1, 1989 effective date" of the plan; (2) the content of the notices did not satisfy the alleged "warning requirement" of ERISA § 204(h). Compl. ¶ 96. These allegations are inadequate as a matter of law.

First, at the time of the 1991 Chemical Cash Plan, ERISA § 204(h) provided that: "[a] single employer plan may not be amended so as to provide for a significant reduction in the

rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to . . . each participant." Pub. L. No. 99-272, 100 Stat. 82 § 11006 (1986).

According to Plaintiff, because the 1991 Chemical Cash Plan calculated participants' January 1, 1991 opening balance using a cash balance formula that was retroactive to January 1, 1989, notice should have been distributed to plan participants sometime in 1988. That argument is specious. The 1991 Chemical Cash Plan was not adopted until 1990, and ERISA § 204(h) plainly says that notice must be given "after adoption." Moreover, the prior plan continued to provide accrued benefits to its participants who were eligible for such accruals through December 31, 1990.[17] The notices were distributed more than 15 days prior to December 31, 1990 when accruals under the prior plan ceased, Compl. ¶ 96, and thus, more than 15 days prior to the effectiveness of any reduction. Such notices were timely under ERISA § 204(h).

Second, the substance of the notices complied with ERISA. At the time of the Cash Plan Amendment, ERISA § 204(h) required that participants receive a notice "setting forth the plan amendment and its effective date." The September 1990 notice (attached to the Amended Complaint at Exhibit 3) satisfied this requirement. This notice clearly stated that "Cash Plan will begin January 1, 1991" (*i.e.*, the effective date) and provided an extensive overview of the Cash Plan Amendment—including sections detailing "How Cash Plan Works – An Overview," "Prior Service Balance," "Salary Based Credits," "Interest Credits," "Vesting,"

---

[17]    While the 1991 Chemical Cash Plan applied the cash balance formula retroactive to January 1, 1989, all accruals under the old final pay formula between January 1, 1989 and December 31, 1990 were preserved under the guaranteed minimum benefit. No participant was subjected to reduced future benefit accruals between January 1, 1989 and December 31, 1990.

"Payment Options," and five examples of "how Cash Plan works for different employees." Compl. Ex. 3.

Plaintiff alleges that the Defendants should have advised Plan participants *of the effect* of the Cash Plan Amendment by disclosing an alleged "reduction in the rate of future benefit accrual and the reduction in the rate of future benefit accrual based on age." Compl. ¶ 97. At the time, ERISA did not require such disclosure. *See Register*, 477 F.3d at 73 ("The brochure set forth the plan amendment and the effective date. That explanation was all that was required."); *Gillis v. SPX Corp. Individual Account Ret. Plan*, 511 F.3d 58, 63, n.4 (1st Cir. 2007) (at time notice was issued all that § 204(h) required was "a written notice, setting forth the plan amendment and its effective date" and that plaintiff "incorrectly cite[d]" to a subsequent, amended version of § 204(h)); *Cedotal v. Whitney Nat'l Bank*, No. 94-1397, 2007 WL 2264438, at *6 (E.D. La. Aug. 3, 2007) (§ 204(h) did not require exact quotation of plan amendment or an explanation of how each participant's benefit would be affected).[18]

## V.      COUNTS 1-9 ARE TIME-BARRED

Because ERISA does not provide a statute of limitations, "the most closely analogous state statute of limitations is to be applied." *Hirt v. The Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006) (citing *Miles v. N.Y. State Teamsters of Conf. Pensions & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)). "[U]nder the New York Civil Practice Law and Rules, an action under a contract – for employee

---

[18]      In response to Defendants' motion to dismiss Plaintiff's original complaint, Plaintiff significantly narrowed his prior claims about SPDs and SMMs, limiting those claims to the allegations that (a) SPDs failed to make clear that the plans to which they related purportedly reduced "participants' rates of future benefit accrual as they age and as compared to their prior Plan" (Count 8), and (b) Defendants were required to but failed to issue an SMM after the adoption of the 1991 Chemical Plan (Count 9). However, if and to the extent Plaintiff intends to maintain any other SPD or SMM claim, any such claim similarly fails to satisfy Rule 8. Finally, we note that the SPD claim in Count 8 is dependent on a finding of age discrimination, an issue that is not before this Court. *See* fn. 2.

benefit plans, in effect, are contracts – must be commenced within six years." *Id.* (citing N.Y. CPLR § 213). Commencement of the running of the statute is governed by the federal common law discovery rule, which in the case of claimed ERISA violations is triggered when there is a "clear repudiation" of the rights alleged. *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 47 (2d Cir. 1999).

Here, the alleged rights that are the subject of the claims in Counts 1-9 were clearly repudiated in employee communications, including those attached to the Amended Complaint. As a result, Plaintiff was on notice for at least 8 years (and in some cases 15 years or more) of the purported ERISA violations that he alleges.

Count 1 alleges that "all versions of the cash balance plan from 1989 to the present" are backloaded because they fail to provide for a minimum interest credit rate. Yet the bases for each plan's calculation of interest credits were disclosed in the applicable notices, SPDs and other communications dating from the 1990s.[19] These communications did not mention a minimum interest credit rate.

Count 2 alleges that the 1991 Chemical Cash Plan and the 1993 Chemical Plan improperly provided for "employer discretion" in setting the interest credit rate. Compl. ¶ 56. Yet the SPDs for these plans plainly disclosed that Chemical retained discretion in setting the

---

[19]    *See, e.g.,* Compl. Ex. 3 at JPMC00001736 (interest credit basis for 1991 Chemical Cash Plan), Ex. 9 at CBPJPMC00014581 (interest credit basis for 1993 Chemical Plan), Ex. 10 at CBPJPMC00000801 (interest credit basis for 1997 Chase Plan). *See also Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) (On motion to dismiss, the court may consider exhibits to complaint because "we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.").

applicable interest rate, meaning that Plaintiff knew all of the facts underlying this claim during the early 1990s.[20]

Count 3 alleges that the 1991 Chemical Cash Plan and its "successors-in-interest"[21] failed to specify an allegedly required "method" for projecting future interest credits for employees who retire and take their benefits before reaching age 65.  Compl. ¶ 61.  The communications relating to the 1991 Chemical Cash Plan do not mention any such interest projection "method" and Plaintiff was on notice of this alleged failure by the early 1990s.[22]

Count 4 alleges that the 1991 Chemical Cash Plan and its "successors-in-interest"[23] failed to project future interest credits for employees who retire and take their benefits before reaching age 65.  The communications relating to the 1991 Chemical Cash Plan do not mention any such interest projection "method," so that Plaintiff was on notice of this alleged failure by the early 1990s.

Count 5 similarly alleges that the 1991 Chemical Cash Plan did not project future interest credits with respect to the "prior service credit," an amount reflecting benefits for service prior to the implementation of the plan.  The communications relating to the 1991 Chemical

---

[20]    *See, e.g.*, Rice Aff. Ex. A (1992 SPD for the 1991 Chemical Cash Plan), at 5 (minimum rate for the 1991 Chemical Cash Plan would be based on the average rate of 1-year Treasury bills and that "Chemical can provide for a rate in excess of the minimum, for any plan year" up to a maximum of 15%); Compl. Ex. 9 at CBPJPMC00014581 (minimum rate for the 1993 Chemical Plan would be based on the average rate of 1-year Treasury bills up a maximum rate of 15%, that "Chemical will adjust the rate annually").  *See also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference.") (internal citations omitted).

[21]    The Amended Complaint fails to specify which plans other than the 1991 Chemical Cash Plan are implicated by Count 3.  To the extent Count 3 implicates other plans, it violates Rule 8.

[22]    *See, e.g.*, Compl. Ex. 3 at JPMC00001736 (September 1990 notice setting forth interest credit basis for 1991 Chemical Cash Plan); Rice Aff. Ex. A (1992 SPD) (same).

[23]    The Amended Complaint fails to specify which plans other than the 1991 Chemical Cash Plan are implicated by Count 4.  To the extent Count 4 implicates other plans, it violates Rule 8.

Cash Plan do not mention *any* projection of future interest credits. Plaintiff was on notice of the absence of any such projection method by the early 1990s – again, some 15 years or more before these claims were filed.[24]

Count 6 alleges that the 1991 Chemical Cash Plan was backloaded as a result of its legally required "minimum benefit" feature. The September 1990 notice disclosed the minimum benefit feature that Plaintiff now alleges gave rise to impermissible backloading. *See* Compl. Ex. 3 at JPMC00001737. Similarly, the backloading alleged in Count 1 and the forfeiture alleged in Counts 4 and 5 likewise supposedly commenced with plan provisions enacted in and disclosed no later than the early 1990s. Thus, the statute of limitations on these claims has long since run.

Finally, the communications that are the subject of Counts 7, 8 and 9 were distributed between 1990 and 1999. Plaintiff knew or should have known of his claims upon receipt of these communications. Thus, for example, when Plaintiff received a notice in 1990 stating that the 1991 Chemical Cash Plan "will be retroactive to January 1, 1989," Compl. Ex. 3 at JPMC00001734, Plaintiff had all the facts needed to allege that notice was untimely. The statute of limitations therefore ran on this notice claim no later than 1996. Similarly, the statute of limitations expired on Plaintiff's other notice claims no later than 2005, *i.e.*, 6 years after the 1999 distribution of the SPD relating to the 1997 Chase Plan, the most recent communication specifically alleged to be inadequate. *See* Compl. ¶ 113.

---

[24]     *See, e.g.*, Compl. Ex. 3 at JPMC00001736 (September 1990 notice setting forth interest credit basis for 1991 Chemical Cash Plan); Rice Aff. Ex. A (1992 SPD for the 1991 Chemical Cash Plan) (same).

## VI.    COUNTS 10 AND 11 FAIL AS A MATTER OF LAW

Counts 10 and 11 should be dismissed because they purport to impose on Defendants obligations beyond that which is required under ERISA §§ 104(b)(4) and 105(a).

Plaintiff's counsel has made certain requests for plan documents and other materials, purportedly pursuant to ERISA §§ 104(b)(4) and 105(a). In response, Defendants provided Plaintiff with numerous current plan documents, a statement of Plaintiff's current benefits, and a 44-page worksheet setting forth Plaintiff's current total accrued benefit. Compl. ¶ 133; Rice Aff. Exs. B and C.   Defendants also granted Plaintiff's counsel permission to share with Plaintiff multiple prior plan documents previously produced in *In re JPMorgan Chase Cash Balance Litigation* dating to 1989. Rice Aff. ¶ 6 and Exs. C and D. Notwithstanding these disclosures, Count 10 alleges that Defendants were *also* obligated to provide Plaintiff with voluminous materials relating to every prior plan that Plaintiff participated in beginning in the 1960s. Count 11 alleges that the failure to provide such outdated documents amounts to a breach of fiduciary duty. Compl. ¶¶ 132, 137, 140. These allegations are baseless.

### A.    Defendants Met Their Obligations Under ERISA §§ 104(b)(4) and 105(a)

ERISA § 104(b)(4) provides that a plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The plain language of this provision concerns the *"latest"* plan documents or instruments under which a plan *"is* operated," *i.e.*, it requires only the disclosure of *current* plan documents. Defendants provided these documents to Plaintiff. Rice Aff. Ex. B. Contrary to Plaintiff's claims here, ERISA § 104(b)(4) does not require Defendants to provide outdated, prior plan documents. *See, e.g., Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895,

903 (7th Cir. 1999) ("outdated plan descriptions do not fall into any of the categories of

documents a plan administrator must provide to plan participants under [ERISA § 104(b)(4)].");

*Leung v. Skidmore, Owings & Merrill LLP*, 213 F. Supp. 2d 1097, 1105 (N.D. Cal. 2002) ("Had

Congress desired that section 1024(b)(4) provide for disclosure of outdated documents, it would

have been easy to adopt statutory language to that effect.").

Similarly, ERISA § 105(a) merely requires Defendants to provide a "pension

benefit statement" setting forth "the total benefits accrued" by a participant. 29 U.S.C. §

1025(a)(2)(A). Defendants exceeded their statutory obligations by providing Plaintiff with a

current account statement and a detailed worksheet setting forth Mr. Bilello's total current

accrued benefit. *See* Rice Aff. Ex. C. While Plaintiff alleges that this worksheet did not include

the "formula" used to calculate a prior service balance under the 1991 Chemical Cash Plan,

ERISA § 105(a) does not require disclosure of "formulas" in the participant statement. In any

event, the formula is set forth in the 1991 Chemical Cash Plan that was made available to

Plaintiff and attached to the Amended Complaint. *See* Compl. Ex. 4  § 4.2.[25]

**B.    There Was No Breach of Fiduciary Duty**

Count 11 alleges that Defendants had a "fiduciary duty" under ERISA § 404(a) to

disclose the documents at issue in Count 10. However, there can be no "fiduciary duty" to

disclose documents above and beyond that required by ERISA's express disclosure provisions.

*See Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d

Cir. 1997) (where documents were not required to be disclosed under ERISA § 104(b)(4), it

---

[25]    Count 10 also alleges that this worksheet is not "written in a manner calculated to be
understood by the average plan participant." Compl. ¶ 136 (citing ERISA § 105(a)(2)(A)(iii)).
This requirement in ERISA § 105(a) applies to participant statements, and Plaintiff fails to cite
any authority suggesting that it also applies to calculation worksheets. In any event, Plaintiff
fails to specify what was not understandable in the worksheet; thus, this allegation fails to satisfy
Rule 8.

would be "inappropriate to infer an unlimited disclosure obligation on the basis of general [fiduciary duty] provisions that say nothing about disclosure"); *AMA v. United HealthCare Corp.*, No. 00 Civ. 2800 (LMM), 2001 WL 863561, at *9 (S.D.N.Y. July 31, 2001) ("courts have clearly refused to find that the fiduciary duty provided for in § 404 expands the statutory disclosure obligations on ERISA fiduciaries.") (citation omitted).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Amended Complaint be dismissed with prejudice.

Dated:   New York, New York
         February 25, 2008

SIMPSON THACHER & BARTLETT LLP

By: _____
Thomas C. Rice, Esq. (trice@stblaw.com)
Jonathan K. Youngwood, Esq.
(jyoungwood@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

JPMORGAN CHASE LEGAL DEPARTMENT
Meryl R. Kaynard, Esq.
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
Telephone:  (212) 552-6825

*Attorneys for Defendants*