UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FRANK BILELLO, individually and on behalf of all others similarly situated, | ) ) | Via ECF |
| | ) | Civ. No. 07-7379 (RJS)(FM) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JPMORGAN CHASE RETIREMENT PLAN, JPMORGAN CHASE DIRECTOR OF HUMAN RESOURCES as administrator of the JPMorgan Chase Retirement Plan, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .......................................................................................2

    A. **The 1989 Cash Plan Became Effective, and Significantly Reduced Participants' Rates of Benefit Accrual, as of January 1, 1989.**..........................................2

III. ARGUMENT ..............................................................................................................4

    A. **Legal Standard for Assessing a Motion to Dismiss.**...........................................4

    B. **The Statute of Limitations Does Not Bar Any Claims.**......................................4

    C. **Defendants' Corporate and Plan Disclosures Regarding the Cash Plan Were Insufficient, Untimely, and Misleading.**............................................................7

        1. Defendants Violated ERISA's Notice Provision Under § 204(h). ...............7

        a. Count Seven Meets Rule 8 Pleading Requirements ...................................7

        b. Notices Regarding the 1989 Plan Amendment Were Untimely ................8

        2. Plaintiff Sufficiently States Claims for Failure to Provide Adequate Summary Plan Descriptions and Summaries of Material Modifications. ............................................10

    D. **The Plans Are Impermissibly Backloaded.** ...................................................12

        1. The 1989 Cash Plan Violates the 133 1/3% Rule (Count Six) ...................12

        a. The 1989 Cash Plan Causes Benefits to "Wearaway."...........................13

        b. The Plan's Wearaway Provision Violates the 133 1/3% Rule.................13

        c. Defendants' Application of Section 204(b)(1)(B)(i) Perverts Its Purpose ...............15

        2. The 1997 Plan Also Violates the 133 1/3% Rule (Count One) ...................16

        3. The Plans Do Not Provide "Definitely Determinable Benefits," in Violation of ERISA and the IRS Code (Counts Two and Three) ...................17

    E. **Mr. Bilello Has Been Injured Through Illegal Forfeiture of Accrued Benefits, and Has Standing to Pursue Counts Four and Five.**.........................................19

    F. **Defendants Failed to Provide Plaintiff Bilello with Requested Governing Plan**

**Documents and a Comprehensible Benefit Statement, Thereby Breaching Their Fiduciary Duty.** ...........................................................................................................21

**IV. CONCLUSION** ...............................................................................................................23

# TABLE OF AUTHORITIES

## Federal Cases

*Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504 (1981) ........................................................... 12

*Allen v. Honeywell Ret. Plan*, 382 F. Supp. 2d 1139 (D. Ariz. 2005) ................................... 14, 15

*Amara v. Cigna Corp.*, No. 01-2361, 2008 WL 450421 (D. Conn. Feb. 15, 2008) ................ 1, 10

*Anyanwu v. Columbia Broad. Sys.*, 887 F.Supp. 690 (S.D.N.Y. 1995) ......................................... 4

*Austin v. Ford*, No. 95-3730 , 1998 WL 88744 (S.D.N.Y. March 2, 1998) ................................. 22

*Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955 (2007) ....................................................... 4, 7, 8

*Berger v. Xerox Corp.*, 338 F.3d 755 (7th Cir. 2003) ................................................................... 19

*Buus v. WaMu Pension Plan*, No. 07-0903, 2007 WL 4510311 (W.D. Wash. Dec. 18,
     2007) ....................................................................................................................................... 10

*Cedotal v. Whitney National Bank*, No. 94-1397, 2007 WL 2264438 (E.D. La. Aug. 3,
     2007) ....................................................................................................................................... 10

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) ................................................. 16

*Central States v. Merck-Medco*, 433 F.3d 181 (2d Cir. 2005) ..................................................... 21

*Conley v. Gibson*, 355 U.S. 41 (1957) .......................................................................................... 8

*Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001) ............................................... 5

*DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258
     (S.D.N.Y. 1997) .................................................................................................................. 6, 15

*Drutis v. Rand McNally*, 499 F.3d 608 (6th Cir. 2007) ............................................................... 21

*Eaton v. Onan*, 117 F. Supp. 2d 812 (S.D. Ind. 2000) ................................................................ 14

*Ello v. Singh*, 531 F. Supp. 2d 553 (S.D.N.Y. 2007) ................................................................... 21

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) .......................................................... passim

*Finley v. Dun & Bradstreet*, 471 F. Supp. 2d 485 (D.N.J., 2007) ............................................... 14

*Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) .................................................................... 9

*Gillis v. SPX Corp. Individual Account Ret. Plan*, 511 F.3d 58 (1st Cir. 2007) .......................... 10

*Hirt v. Equitable*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006) ............................................................ 18

*Humphrey v. United Way of the Texas Gulf Coast*, No. H-05-758 (S.D. Tex. March
     28, 2008) ................................................................................................................................. 12

*In re Citigroup Pension Plan ERISA Litigation*, 470 F.Supp.2d 323 (S.D.N.Y. 2006) ....... 4, 9, 12

*In re J.P. Morgan Chase Cash Balance Litigation*, 460 F.Supp.2d 479 (S.D.N.Y.
     2006) ................................................................................................................................ 5, 6, 12

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ............................................................. 8

*Kassner v. 2nd Avenue Delicatessen*, 496 F.3d 229 (2d Cir. 2007) ............................ 4

*Larsen v. NMU Pension Trust*, 902 F.2d 1069 (2d Cir. 1990) .................................... 6

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008) ........................... 5

*Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F. Supp. 2d 244 (S.D.N.Y. 1998) .......... 5

*McFaul v. Loews Corp.*, No. 93-2401, 1993 WL 541778 (S.D.N.Y. Dec. 30, 1993) ... 22

*Miles v. NYS Teamsters Pension Plan*, 698 F.2d 593 (2d Cir. 1983) .......................... 5

*Novella v. Westchester County Carpenters' Pension Fund*, 443 F. Supp. 2d 540
(S.D.N.Y. 2006) ...................................................................................................... 4

*Proujansky v. Blau*, No. 92-8700, 2001 WL 963958 (S.D.N.Y. Aug. 22, 2001) ....... 22

*Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991) ........................................ 4

*Register v. PNC Financial Serv.*, 477 F.3d 56 (3d Cir. 2007) ............................... 10, 14

*Reklau v. Merchants National Corp.*, 808 F.2d 628 (7th Cir. 1986) ......................... 18

*Richards v. FleetBoston*, 427 F. Supp. 2d 150 (D. Conn. 2006) ............................... 14

*Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005) ........................................... 5, 6

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ................................................. 4

*Stamper v. Total Petroleum*, 188 F.3d 1233 (10th Cir. 1999) .................................. 18

*West v. Murphy*, 99 F.3d 166 (4th Cir. 1996) ........................................................... 18

*Wheeler v. Boeing Pension Value Plan*, No. 06-500, 2007 WL 2608875 (S.D. Ill.,
Sept 6, 2007) .......................................................................................................... 14

**Federal Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et
seq.* ........................................................................................................................ 1

ERISA § 3(7), 29 U.S.C. § 1002(7) .............................................................................. 5

ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A) .............................................................. 18

ERISA § 102, 29 U.S.C. § 1022 .................................................................................. 12

ERISA § 102(a), 29 U.S.C. § 1022(a) ......................................................................... 11

ERISA § 102(b), 29 U.S.C. § 1022(b) ......................................................................... 11

ERISA § 104(b), 29 U.S.C. § 1024(b) ................................................................... 21, 22

ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) ............................................................... 12

ERISA § 105(a), 29 U.S.C. § 1025(a) ....................................................... 18, 21, 22, 23

ERISA § 105(c), 29 U.S.C. § 1025(c) ......................................................................... 18

ERISA § 203(a), 29 U.S.C. §1053(a) .................................................................... 19, 20

ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1)..................................................................... 12

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B)................................................... passim

ERISA § 204(b)(5)(B), 29 U.S.C. § 1054(b)(5)(B)........................................................ 15

ERISA § 204(g), 29 U.S.C. § 1054(g)................................................................... 3, 13

ERISA § 204(h), 29 U.S.C. § 1054(h)................................................................ passim

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1)................................................................ 18

ERISA § 402(b)(4), 29 U.S.C. § 1102(b)(4)............................................................... 18

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)............................................................... 21

ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).............................................................. 21

IRC § 401(a), 26 U.S.C. § 401(a) ................................................................... 17, 18

IRC § 411(a), 26 U.S.C. § 411(a) ........................................................................ 19

IRC § 411(b)(1)(B), 26 U.S.C. § 411(b)(1)(B)..................................................... 16, 17

Pension Protection Act of 2006, Pub. L. 109-280 (2006)........................................ 15, 20

**Federal Rules**

Fed. R. Civ. P. 8 ................................................................................ 7, 10, 11

Fed. R. Civ. P. 8(a)(2)....................................................................................... 4

Fed. R. Civ. P. 12(b)(6)................................................................................... 4, 7

**Federal Regulations**

26 C.F.R. § 1.401(a)(4)-8................................................................................... 19

26 C.F.R. § 1.411(b)-1 ............................................................................. 12, 16, 17

29 C.F.R. § 2520.102-2............................................................................... 11, 12

29 C.F.R. § 2520.102-2(b)................................................................................ 11

29 C.F.R. § 2520.104b-3................................................................................... 11

**Other Authorities**

H.R. Rep. 93-807, reprinted in 1974 U.S.C.C.A.N. 4670 ......................................... 15

H.R. Rep. No. 99-453, 131 Cong. Rec. H13093-02, 1985 WL 724562 (1985) (Conf. Rep.)........................................................................................................ 9

IRS Notice 96-8 ...................................................................................... 17, 19

Minimum Vesting Standards and Certain Plans Covering Subsidiary Corporation Employees, 42 Fed. Reg. 42318 (Aug. 23, 1977)................................................ 16

Regulations Relating to Minimum Vesting Standards, 40 Fed. Reg. 51445 (Nov. 5, 1975) ....................................................................................................... 16

Revenue Ruling 2008-7, 2008-7 IRB 419, 2008 WL 274325 (Feb. 1, 2008) ............. 16

Stephen R. Bruce, *Pension Claims, Rights and Obligations* (2d ed. 1993)................................... 18

Treasury Decision 7501, 1977 WL 52383 (April 25, 1977)......................................................... 16

U.S. Const. Art. III........................................................................................................... 20, 21

## I.  INTRODUCTION

At the heart of this case are the harmful consequences for employees resulting from Defendants'[1] conversion of the traditional, final average pay plan of Chemical Bank to a "cash balance" pension plan, and Defendants' failures to adequately disclose these changes to Plan participants.  Effective January 1, 1989, The Cash Plan for Retirement of Chemical Bank ("the 1989 Cash Plan" or "Plan") implemented a formula that significantly reduced retirement benefits compared to its predecessor plan.  *See* Amended Class Action Complaint (Dkt. No. 3) ("Compl."), Ex. 4, ¶ 1.21 (defining Plan's "Effective Date" as January 1, 1989).  Beginning with this 1989 conversion, Defendants have failed their ERISA obligations to communicate these Plan benefit reductions to participants.

Cash balance plans are a type of defined benefit pension plan and a relatively new corporate phenomenon.  Corporations convert their traditional pension plans to cash balance plans to reduce their future pension obligations to their employees, especially older ones.[2]  In addition to having been adopted to boost the corporate bottom line at the expense of Plan participants such as Plaintiff Bilello, the 1989 Cash Plan and its subsequent amendments violate ERISA[3] in four fundamental respects:

***First***, the 1989 Cash Plan violates ERISA's strict accrual rules and is illegally

---

[1] The JPMorgan Chase Retirement Plan (the "Plan," or together with its predecessor cash balance plans, the "Plans") and JPMorgan Chase & Co.'s Director of Human Resources (collectively, "Defendants") are the Defendants herein.  JPMorgan Chase & Co. is the successor-in-interest to Chemical Bank.

[2] For a recent case (conveniently ignored by Defendants) that provides a comprehensive review of the legal challenges facing cash balance plans, including the importance of providing timely and substantively adequate notice of plan changes that negatively impact participants' benefits, *see Amara v. Cigna Corp.*, No. 01-2361, 2008 WL 450421 (D. Conn. Feb. 15, 2008) (Kravitz, J.) (hereinafter "*Cigna*") (entering liability against defendants on plaintiffs' notice claims after trial and finding that "converting to a cash balance plan can provide significant cost savings" for an employer).  In *Cigna*, the most recent cash balance plan decision in this Circuit, Judge Kravitz found that defendants' communications about the cash balance plan, similar to the violations alleged here, were inadequate and in some cases "downright misleading."  *Id.* at *2.  After a seven-day bench trial involving hearing testimony from more than a dozen witnesses and evidence from more than 800 exhibits, Judge Kravitz denied liability for the backloading, wearaway, and age discrimination claims alleged by the plaintiff class.  The exhaustive factual inquiry in *Cigna* demonstrates that the backloading and wearaway violations alleged here require factual development and are not appropriate for dismissal at this procedural stage.

[3] The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

"backloaded";

   *Second*, the Plan unlawfully provides a benefit that is subject to the discretion of the Plan Administrator, thus failing to provide a benefit that is definitely determinable;

   *Third*, the Plan causes an illegal forfeiture of participants' accrued benefits by failing to provide for the projection of future interest credits to retirement age; and

   *Fourth*, upon the 1989 conversion to a cash balance formula and in subsequent amendments, Defendants failed to provide participants with substantively adequate advance warning of these significant benefit reductions.

   Due to these legal defects, the 1989 Cash Plan and its subsequent amendments are illegal, unenforceable, and never became effective.  Plan participant Frank J. Bilello alleges Counts One through Nine on behalf of himself and a class of participants who are entitled to retirement benefits under a lawful retirement plan that fully complies with ERISA.  In addition, Mr. Bilello also asserts individual claims for fiduciary breach and violations of ERISA §§ 104 and 105 based on the Plan Administrator's failure to provide him with Plan documents and benefit statements.

## II.  FACTUAL BACKGROUND

### A. The 1989 Cash Plan Became Effective, and Significantly Reduced Participants' Rates of Benefit Accrual, as of January 1, 1989.

   Defendants argue that, although the 1989 Cash Plan was amended effective January 1, 1989 and was the basis for calculating participants' benefits as of January 1, 1989 (Compl. ¶ 27), it "did not exist in 1989."  *Compare* Compl. Ex. 4 at 1652 & ¶ 1.21 ("The Plan was amended and restated as of January 1, 1989") *with* Mot. at 5, n. 6 (arguing the 1989 Cash Plan "did not exist in 1989").  This cash balance double-speak epitomizes Defendants' inaccurate and misleading Plan communications throughout the putative class period.  Indeed, Defendants' omissions and false characterizations of the purported benefits of the cash balance plan amendment in 1989 and subsequent years have systematically prevented average Plan participants, such as Plaintiff Bilello, from fully understanding their Plan benefits.  As a result of these types of misleading communications, including the lack of any ERISA-compliant warning of benefit reductions,

Defendants have impaired Plaintiff's ability to accurately evaluate his Plan benefit.

Defendants' assertions regarding the effective date of the 1989 Cash Plan is refuted by their own Plan documents, which clearly provide that the 1989 Cash Plan "was amended and restated as of January 1, 1989." Ex. 4 at 1652 (Preamble); *see also id*. at 1658, ¶ 1.21 (defining Plan's "Effective Date" as January 1, 1989). Employees who retired prior to January 1, 1989 received benefits according to the Prior Plan, while employees retiring after that date received benefits pursuant to the 1989 Cash Plan. *Id*. at 1652.[4] Defendants fail to point to any ERISA-compliant notice of this change provided to Plan participants prior to the January 1, 1989 Cash Plan's Effective Date and, as alleged, all Plan communications provided *after* 1989 misleadingly convey the impression that participants would experience *benefits*, rather than reductions, from the Plan amendments. *See*, *e.g*., Compl. ¶ 96.

To overcome their noncompliance with the strict warning provisions of ERISA § 204(h), Defendants are forced to argue that the Plan "did not exist" in 1989. Yet the Plan began calculating and negatively impacting participants' benefits as of January 1, 1989, and because benefit accrual rates were reduced as of this date, it is the operative date for the warning requirement of ERISA § 204(h). At best, Defendants' timing argument regarding when the Plan amendment began to impact participants' rates of benefit accrual is an issue of fact that Plaintiff is entitled to pursue in discovery. Even assuming *arguendo* that the Plan "did not exist" until 1991, Plaintiff Bilello still alleges that Defendants failed to adequately warn Plan participants

---

[4] In arguing that the 1989 Cash Plan did not become effective until 1991, Defendants rely heavily on the Plan's provision that "In no event will the benefit provided under the Plan be less than the Participant's accrued benefit determined as of December 31, 1990, under the terms of the Prior Plan immediately prior to the Effective Date [of January 1, 1989]." Mot. at 6, *citing* Compl. Ex. 4, ¶ 7.1(b). However, Paragraph 7.1(b) does not prevent the application of the Plan's newly-amended cash balance formula as of Jan. 1, 1989. Rather, due to the Plan's retroactive Effective Date, ¶ 7.1(b) was required to ensure that the Plan would not run afoul of ERISA § 204(g), ERISA's "anti-cutback" provision, which prevents Plan amendments from depriving participants of previously accrued benefits. 29 U.S.C. § 1054(g)(1). Accordingly, ¶ 7.1(b) provides that participants' benefits were calculated under both the old and new plan formulas for 1989 and 1990. Participants leaving the Plan at this time or soon thereafter were entitled to the greater benefit for that narrow period. Yet even under the comparatively anemic 1989 Cash Plan, a participant's final benefit entitlement after several years of employment would eventually eclipse the benefit frozen under the old formula as of Dec. 31, 1990. For this reason, the "no less than" provision of ¶ 7.1(b) would never be triggered for most participants, including Mr. Bilello. Thus, the Plan's purported protection in ¶ 7.1(b) is illusory; it did not prevent the reduced benefit formula from impacting participants as of Jan. 1, 1989.

throughout the putative class period that the Plan amendment (whether effective in 1989 or 1991) causes a significant reduction in participants' rates of future benefit accrual.  *See* Compl. ¶ 102.

## III.    ARGUMENT

### A.    Legal Standard for Assessing a Motion to Dismiss.

In ruling on a 12(b)(6) motion to dismiss, a Court must assume that all allegations in the Complaint are true.  *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007).  Even if recovery is very unlikely, a well-pleaded complaint may proceed.  *Id.*  The complaint need only provide notice of claims and of the grounds on which they rest.  *Id.* at n.3 (referring to FRCP 8(a)(2)).  All reasonable inferences should be drawn in favor of the plaintiff.  *Kassner v. 2nd Avenue Delicatessen*, 496 F.3d 229, 237 (2d Cir. 2007).

The defendant bears the burden of proof on a motion to dismiss.  *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991); *Anyanwu v. Columbia Broad. Sys.*, 887 F.Supp. 690, 692 (S.D.N.Y. 1995) (noting substantial burden of proof on defendant in 12(b)(6) motion). The federal policy in favor of deciding claims on their merits advocates for granting a plaintiff leave to amend and refile a pleading if a Court finds that it is inadequate.  *See, e.g., Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990).

### B.    The Statute of Limitations Does Not Bar Any Claims.

Defendants assert an affirmative defense that the statute of limitations bars Counts 1-9, yet they identify no facts in the Complaint to demonstrate that the statute of limitations has begun to accrue against Mr. Bilello.  Mot. at 19-22.[5]

ERISA does not contain an explicit statute of limitations, and the parties agree that New York's six-year statute of limitations for contracts applies, as the most analogous state statute of limitations.  *See, e.g., In re Citigroup Pension Plan ERISA Litigation*, 470 F.Supp.2d 323, 332 (S.D.N.Y. 2006) (hereinafter "*Citigroup*"); Mot. at 19-20.  The Second Circuit holds that the six-year statute of limitations does not begin to run until "there has been a repudiation by the

---

[5] As an affirmative defense, Defendants bear the burden of proof for any statute of limitations argument.  *See, e.g., Novella v. Westchester County Carpenters' Pension Fund*, 443 F. Supp.2d 540, 545 (S.D.N.Y. 2006).

fiduciary which is clear and made known to the beneficiaries." *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134-35 (2d Cir. 2001); *Miles v. NYS Teamsters Pension Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Such a repudiation typically occurs when a participant's formal application for benefits is denied by the plan. *See Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F. Supp. 2d 244, 247 (S.D.N.Y. 1998).

Ascertaining such a date is a two-part inquiry: first, a fiduciary must make a repudiation; and second, this repudiation must be "*clear* and made known to the beneficiaries." *In re J.P. Morgan Chase Cash Balance Litigation*, 460 F.Supp.2d 479, 483 (S.D.N.Y. 2006) ("*JPMC I*") (emphasis in original). There is no allegation in this case that Mr. Bilello submitted a formal application for benefits, or that the Plan denied such a claim, before Mr. Bilello initiated this action on August 17, 2007.[6] Accordingly, Defendants cannot satisfy even the first component of this test. The second component, whether a repudiation was both "clear" and "made known to the beneficiary," is necessarily a fact-intensive inquiry that is not appropriate for determination on a motion to dismiss. *See id.* at 483-4 (denying JPMC's motion to dismiss on statute of limitations grounds where plaintiffs alleged that JPMC failed to provide adequate notice of a decrease in retirement benefit stemming from cash balance plan conversion); *see also Romero v. Allstate Corp.*, 404 F.3d 212, 225-26 (3d Cir. 2005) (holding that fact-finding necessary to determine the time of clear repudiation made dismissal inappropriate on the face of the complaint).

Defendants argue that a provision in a plan document, or a general plan description may serve to repudiate an individual benefit. That is not the law. Indeed, under the typical factual pattern, the earliest time at which a beneficiary would learn of a repudiation of benefits is after leaving employment and making an election to receive retirement benefits. *See, e.g. JPMC I,*

---

[6] Indeed, Mr. Bilello, a "participant" in the Plan as defined by ERISA § 3(7), submitted his first application for Plan benefits only recently, on March 12, 2008. Ex. 1 to the Declaration of Amy Williams-Derry ("Derry Decl."). *See also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1026 n.6 (2008) (clarifying that an ERISA plan "participant" includes beneficiaries who have already received a lump sum benefit from a plan, so long as they have a "colorable claim for benefits"). Mr. Bilello clearly meets this standard, and Defendants provide no authority why Mr. Bilello's benefit could possibly be repudiated by the Plan before it has even been requested.

460 F. Supp.2d at 484; *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 264-5 (S.D.N.Y. 1997) (holding statute of limitations began accruing when defendants communicated confirmation of their calculation of plaintiff's benefit to plaintiff, over her objections). An employer's clarity in repudiating benefits is critical to this inquiry: for example, a mere letter from a Plan administrator describing future benefits is inadequate to cause accrual of the statute of limitations. *Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1073-4 (2d Cir. 1990). Defendants supply no proof that any of the Plan documents they argue would establish a repudiation were ever received or reviewed by Mr. Bilello.

Defendants also cite no authority for their assertion that the statute of limitations begins to run when a plan is enacted or amended. Mot. at 20; *see DeVito*, 975 F.Supp. at 265 (noting that "Defendants fail to cite a single case in which the statute of limitations for a non-fiduciary duty ERISA claim accrued at the date of the plan's amendment or enactment"). The rule Defendants suggest, of running the statute of limitations from the date of a plan amendment, would require "Plan participants and beneficiaries, likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential Plan errors and abuses." *Id.*; *see also Romero*, 404 F.3d at 224 (holding statute of limitations did not accrue by virtue of plan amendment).

Among other violations, Plaintiff's claims concern Defendants' illegitimate conversion to a cash balance plan and resultant reductions in future benefit accrual, compounded by Defendants' failure to provide compliant notice of these reductions. *See, e.g.*, Compl. ¶ 5. As the Complaint describes, the Plans made it virtually impossible to understand or compare participants' benefits under the Prior Plan with benefits under either the 1989 Cash Plan or its subsequent amendments. *See, e.g.*, Compl. ¶¶ 30, 56, 61-2, 76, 95-102, 112-13, 121-4. Defendants' refusal to provide plan documents made it even more difficult for Plaintiff to understand the Plan's terms, let alone become aware of any alleged repudiation. Compl. ¶¶ 131-140. What information was provided either implied that Plan participants would receive a *greater* benefit under the new cash balance formula, *see, e.g.*, Compl. ¶ 96, or provided a

complex, incomprehensible, and misleading description that neither warned about nor explained the amended benefit formula. *See, e.g.*, *id*. at ¶¶ 112-13.

Defendants cannot show any allegation – especially when all reasonable inferences are drawn in favor of Mr. Bilello, as they must be on a motion to dismiss – demonstrating that Defendants both repudiated Mr. Bilello's benefits and that any such repudiation was "clear and made known" to Mr. Bilello.

## C. Defendants' Corporate and Plan Disclosures Regarding the Cash Plan Were Insufficient, Untimely, and Misleading.

### 1. Defendants Violated ERISA's Notice Provision Under § 204(h).

#### a. Count Seven Meets Rule 8 Pleading Requirements

Defendants argue that Plaintiff's Complaint fails Rule 8's "plausibility" pleading standard for Count Seven, because it contains "no allegations whatsoever concerning notices related to the 1993 Chemical Plan," and only states a failure to comply with the § 204(h) notice requirements with respect to the 1997 Chase Plan.  Mot. at 17.  But, Count Seven clearly surpasses Rule 8 and all other relevant pleading standards, including the plausibility standard. Among other allegations, the Complaint states that at no time during the class period or during the period required by ERISA § 204(h) did Plan participants receive "advance notice of the reductions in the rate of future benefit accruals due to the Plan's conversions to a cash balance formula"; "advance notice that the reductions in their rate of future benefit accruals were correlated with the attainment or advancement of age"; or "timely, accurate, or sufficiently comprehensive and understandable notice of reductions in the Plan's rate of future benefit accruals."  Compl. ¶¶ 100-102.  Defendants also failed to disclose that the 1989 Cash Plan causes wear-away.  *Id*. at ¶ 97.

Nothing about Plaintiff's factual allegations is unclear or renders it impossible for Defendants to respond.  It is a well established proposition under *Twombley* that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [for a pleading that satisfies Rule 8]"; rather, Rule 8 "requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombley*, 127 S.Ct. at 1964, quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Plaintiff does not have to allege in the Complaint every single fact that gives rise to the same legal cause of action, especially where the allegations in the Complaint provide a sufficient legal basis for a cause of action, such that the claim meets the plausibility standard. As articulated in *Iqbal v. Hasty*, on which Defendants rely, the plausibility standard only "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." 490 F.3d 143, 157-58 (2d Cir. 2007). The case at bar is not such a context, because it pertains to Defendants' numerous *omissions* in failing to provide timely and adequate notices throughout the putative Class Period. As such, citing numerous specific instances where adequate 204(h) notice *should have been*, but *was not*, provided would be mere redundancy with no bearing on the plausibility of the allegations.[7]

<div align="center">

b.    Notices Regarding the 1989 Plan Amendment Were Untimely

</div>

Plaintiff alleges that Defendants failed to provide advance notice of a significant reduction in the rate of benefit accrual caused by the Plan's adoption of the cash balance formula on January 1, 1991 and which adoption was made retroactively applicable to January 1, 1989. At all relevant times, ERISA § 204(h) required notice of a reduction in benefits to be distributed after the adoption of the plan amendment and at least 15 days before the amendment's effective date. Therefore, Defendants' contention that the Plan "did not exist" until the January 1, 1991 amendment and that notices purportedly distributed to plan participants in July and September 1990 were timely for purposes of § 204(h) is wrong any way you slice it. Firstly, for the reasons discussed *supra*, the true effective date of the plan amendment was January 1, 1989 and, therefore, the July and September 1990 notices were untimely, having been distributed well *after* the effective date of the amended formula. Secondly, even assuming, *arguendo*, Defendants'

---

[7] All relevant plan and notice documents were expressly cited in and/or attached to the Amended Complaint.

contention that the plan "did not exist" in 1989 but, rather, came into existence only on January 1, 1991, the July and September 1990 notices still violate § 204(h) timing requirements, because they pre-date the Plan amendment's adoption.

       c.      Defendants' Communications Failed to Adequately Notify Participants

The substantive adequacy of the 1990 communications under § 204(h) is an issue of fact that is not to be addressed at this stage of the litigation. Nevertheless, assuming *arguendo* that the 1990 notices were timely, such notices, as alleged, were also substantively inadequate.

Defendants rely on out-of-circuit authority to argue that at the time of the 1989 Plan amendment, ERISA did not require them to advise Plan participants "***of the effect*** of the Cash Plan Amendment" and that Defendants could therefore comply with ERISA's notice requirements notwithstanding their failure to warn participants of future benefit reductions. Mot. at 19. Indeed, the title of Section 204(h) reflects the import of the warning Congress intended to be conveyed in a Section 204(h) Notice, namely "notice of the reduction," as revealed by its legislative history:

> The conference agreement provides that an amendment to reduce significantly future benefit accruals under a plan is not effective unless, subsequent to the adoption of the amendment and at least 15 days prior to the effective date of the amendment, the plan administrator gives **written notice of the reduction to each participant in the plan**, each beneficiary ...., and each employee organization representing participants under the plan.

H.R. Rep. No. 99-453, 131 Cong. Rec. H13093-02, 1985 WL 724562 (1985) (Conf. Rep.); *accord Citigroup*, 470 F.Supp.2d at 339 (to satisfy § 204(h), notices must provide participants with "fair warning" of benefit changes or plan formulas that endanger their ERISA rights) (Scheindlin, J.). Moreover, as held in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006), ERISA requires that a § 204(h) notice explain that "benefits [will] be reduced" so employees can "make a meaningful decision regarding whether they [will] accept the terms." *Id.* at 262. A § 204(h) notice cannot be adequate where it fails to warn employees that their benefits are being

reduced.[8]

The cases Defendants cite do not support their argument.  The *Register* case involves wholly distinct facts: the *Register* defendants issued a brochure that the lower court apparently found to have been written understandably, and that explicitly identified a risk of reduction of future benefit accruals.  *Register v. PNC Financial Serv.*, 477 F.3d 56, 72-3 (3d Cir. 2007).  In *Gillis v. SPX Corp. Individual Account Ret. Plan*, 511 F.3d 58, (1st Cir. 2007), the court never reached the factual issue of § 204(h) adequacy, because plaintiff failed to properly allege an actual reduction in benefits.  *Id.* at 63-4.  Moreover, the *Gillis* reference to plaintiff's improper "citation," was just that: improper citation; *i.e.*, the plaintiff had cited to the wrong version of the statute in his complaint.[9]

> 2. Plaintiff Sufficiently States Claims for Failure to Provide Adequate Summary Plan Descriptions and Summaries of Material Modifications.

Defendants assert that Plaintiff, in Counts Eight and Nine, has "significantly narrowed" his claims regarding the adequacy of Defendants' Summary Plan Descriptions ("SPDs") and Summaries of Material Modifications ("SMMs") and apparently concede that these "narrowed" Counts are properly pled under Rule 8.  Mot. at 19, n.18.  Further, Defendants appear to seek dismissal of Counts Eight and Nine, on grounds of failure to meet Rule 8 pleading standards, only "if and to the extent Plaintiff intends to maintain any other SPD or SMM claim ….", beyond what is already maintained in the "narrowed" claims (as characterized by Defendants).

---

[8] *See also Cigna* at *40-48 (ruling in favor of the Plaintiff class post-trial on its § 204(h) claim that, under the 1997 version of the statute, notices must be comprehensible by "the average plan participant," and that "even if § 204(h) did not require the additional information regarding reductions that Plaintiffs request, [ERISA § 204(h)] certainly does not permit CIGNA to avoid providing such information and to offer material misrepresentations" regarding such benefit reductions).  Here, Plaintiff similarly alleges that the Plan communications were not understandable by the average Plan participant, that the Plan failed to warn of benefit reductions, and that Plan communications were materially misleading.  *See, e.g.*, Compl. ¶ 96-97, 112-13.  *And see also Buus v. WaMu Pension Plan*, No. 07-0903, 2007 WL 4510311, at *4 (W.D. Wash. Dec. 18, 2007) (in case with similar ERISA notice allegations, ruling plaintiffs' allegations of inadequate notice were sufficient to defeat motion to dismiss).

[9] Likewise, *Cedotal v. Whitney National Bank*, No. 94-1397, 2007 WL 2264438 at *6 (E.D. La. Aug. 3, 2007) is inapposite, since nowhere in the Complaint does Plaintiff allege that § 204(h) required an "exact quotation" of the plan amendment or "an explanation of how each participant's benefit would be affected."  Mot. at 19.  In *Cedotal*, the words "each participant's benefit" meant the "the individual benefit of each participant," an element that Plaintiff does not allege is a notice requirement of § 204(h) violated here.

Yet Plaintiff's claims exceed Defendants' narrow characterization and their full scope is adequately pled under Rule 8.[10]

Contrary to Defendants' argument, Plaintiff's allegations in Counts Eight and Nine not only identify and describe particular defects with particular plan communications, and particular failures to communicate required information, *see, e.g.*, Compl. ¶¶ 112-13, 123-24, but they also expressly incorporate and reallege all previous allegations in the Complaint. Plaintiff's claims in Counts Eight and Nine are based on the same basic omissions and misstatements described with respect to the 204(h) claims in Count Seven and adequately and plausibly put Defendants on notice of the claims against it, which is all that is necessary at this stage of the case.

Further, Plaintiff alleges in Counts Eight and Nine that, during the Class Period, Defendants failed to provide plan participants with *any* SPD or SMM that is understandable by the average plan participant as required by 29 U.S.C. § 1022(a)-(b) and applicable DOL regulations, 29 C.F.R. §§ 2520.102-2, 2520.104b-3. Defendants also failed to supply *any* SPD that was "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan" under 29 U.S.C. § 1022(a) or that did "not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries" under 29 C.F.R. § 2520.102-2(b). Similarly, Plaintiff has identified particular Plan modifications that were not disclosed to participants through compliant SMMs. Compl. ¶¶ 121-124. These omissions are alleged with particularity and provide Defendants with ample notice of Plaintiff's claims.[11]

---

[10] Further, Defendants' assertion in footnote 18 that "the SPD claim in Count 8 is dependent on a finding of age discrimination, an issue that is not before this Court" would appear to be an attempt to preclude the portion of Plaintiff's SPD claim that relates to age-discrimination on the grounds that it is an un-pled issue of law. Contrary to Defendants' apparent assertion, the issue of age-discrimination, in the context of this action, is an issue of fact and, therefore, not an appropriate subject matter for a motion to dismiss.

[11] The 1992 SPD for the 1989 Cash Plan, which Defendants provided for the first time as an attachment to their Motion, similarly violates SPD disclosure requirements; for example, the 1992 SPD states at page 9 that:

> If you were a participant in the Chemical Retirement Plan on December 31, 1988, your Cash Plan account has another component – a prior service balance – generally based on the benefit you had earned under the Retirement Plan as of December 31, 1988. ***Because this calculation is based upon a number of***

**D.    The Plans Are Impermissibly Backloaded.**

Defendants argue that the Plan's violations of ERISA's accrual rules, which cause an impermissibly backloaded plan, is not actionable.  To reach this conclusion, Defendants must ignore binding authority in this Circuit under *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000), whose logic leads to a contrary result.[12]

1.    The 1989 Cash Plan Violates the 133 1/3% Rule (Count Six)

Congress left it up to private parties to "control the level of benefits" by not "imposing mandatory pension levels or methods for calculating benefits." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 511-12 (1981).  However, "Congress in ERISA set outer bounds on permissible accrual practices, 29 U.S.C. § 1054(b)(1) ... In so doing, Congress limited the variation permitted in accrual rates applicable *across the entire period of an employee's participation in the pension plan*."  *Alessi* at 512 (emphasis added).  Those "outer bounds" are set forth in three alternative accrual rules in ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1).  Because a cash balance plan is a career-average plan, it is undisputed that the only accrual rule with which it can comply is the 133 1/3% rule.  *Citigroup*, 470 F. Supp.2d at 337.

The 133 1/3% rule "requires that the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%."  *Esden*, 229 F.3d at 167, n.18.  *See also Alessi*  at 514, n.9.  As a consequence, unlike the other two rules, the 133 1/3% rule can be violated either in earlier or later years of service.  *See* 26 C.F.R. § 1.411(b)-1(b)(2)(iii)(Example 3).

---

*assumptions and rules, it does not represent in all cases the benefit accrued under the Retirement Plan on December 31, 1988*.  (emphasis added)

By failing fully to disclose Plan provisions, and instead referring only generically to "a number of assumptions and rules" that negatively impacted participants' benefits, the SPD violates ERISA §§ 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1) and 29 C.F.R. § 2520.102-2.  *See also Humphrey v. United Way of the Texas Gulf Coast*, No. H-05-758, slip op. at 11-12 (S.D. Tex. March 28, 2008) (granting summary judgment to plaintiff class for defendants' failure to provide notice of wearaway), Derry Decl., Ex. 2.

[12] Defendants' argument that exhaustion of administrative remedies is required misstates the law in this Circuit.  Mot. at 11, n.10.  *See JPMC I*,  460 F. Supp.2d at 483 (holding no statutory exhaustion of administrative remedies required for ERISA under Second Circuit authority).

a.    The 1989 Cash Plan Causes Benefits to "Wearaway."

The 1989 Cash Plan and all of its later versions provide that when a participant's employment terminates, the Plan will compare the value of the benefit accrued *before* January 1, 1991 (the "minimum benefit") and the benefit accrued under the Cash Plan account *after* January 1, 1991, "and you will receive whichever is *greater*."    Compl., Ex. 3 at 1737, "A Minimum Benefit" (explaining Plan § 7.1(b)) (emphasis in original).    *See also supra* note 4 (describing ¶ 7.1(b)).

Because the new cash balance formula provides a lower rate of accrual than the prior formula (Compl. ¶ 37), the "minimum benefit" outlined in ¶ 7.1(b) creates a standstill where participants' benefits will not grow for a period of time after the Plan conversion.    This phenomenon is sometimes referred to as an "offset" provision that causes "wearaway."    If the old formula would have caused higher benefit accruals than the new, retroactive formula, a participant under the old formula will accrue *zero* additional benefits under the new formula until the benefit accrued under the new formula becomes greater than the "minimum benefit" previously accrued under the old formula.    Because there is a period of zero accrual, followed by resumed accrual, such an increase is necessarily greater than one-third, and violates the 133 1/3% rule.    ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).

Defendants attempt to give wearaway a positive spin by conveying the impression that wearaway is required to *protect* participants.    They state that: "when a benefit formula changes, the benefit to which a participant was entitled under the prior formula as of the date of the change *must be preserved*, and the participant is entitled to the greater of what was previously accrued or the benefit that the new formula provides." Mot. at 7, n.8 (emphasis added).    The previously accrued benefits, however, are already protected by ERISA Section 204(g) from being reduced by means of an amendment.    In fact, the sole purpose of wearaway is to accomplish *indirectly* that which Section 204(g) prohibits the Plan from doing *directly*.

b.    The Plan's Wearaway Provision Violates the 133 1/3% Rule

Defendants and the courts which have upheld wearaway have relied on ERISA Section

- 13 -

204(b)(1)(B)(i), which provides an exception to the application of the 133 1/3% rule, as follows:

> For purposes of this subparagraph [i.e., the 133 1/3% rule] any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years.

The Third Circuit's "interpretation" of Section 204(b)(1)(B)(i) in *Register*, 477 F.3d at 72, is typical:[13]

> If we treat the amended plan as in effect for all other plan years, as Congress directs us to do, appellants never would have accrued a benefit under the old plan and would have started to accrue benefits under the cash balance formula from the beginning of their employment.

This reasoning is logically flawed. The reason why "appellants never would have accrued a benefit under the old plan" is because under this formulation the cash balance formula, *including its offset*, is "treat[ed] ... as in effect for all other plan years." Section 204(b)(1)(B)(i), however, permits a new formula to be "treat[ed] ... as in effect for all other plan years" only if it is "in effect for the current year." If the offset is "in effect for the current year," then it cannot be disregarded in testing the rate of accrual in the current year of the benefit actually payable to employees. Defendants (and the court decisions on which they rely) treat the offset as "in effect for the current year" only for purposes of demonstrating compliance with the 133 1/3% rule, but disregard it for purposes of testing the rate of accrual of the benefit *actually payable* to participants. This inconsistent application of the 133 1/3% rule was rejected by the Second Circuit in *Esden*.

The cash balance plan in *Esden* used a 5.5% interest crediting rate for purposes of demonstrating compliance with the 133 1/3% rule, while using a 4% interest crediting rate when calculating the benefit actually payable to participants before the normal retirement age. Noting that the 4% rate caused the plan to violate the 133 1/3% rule, the Court rejected this inconsistent

---

[13] *See Finley v. Dun & Bradstreet*, 471 F. Supp. 2d 485, 494 (D.N.J., 2007); *Richards v. FleetBoston*, 427 F. Supp. 2d 150, 171 (D. Conn. 2006); *Allen v. Honeywell Ret. Plan*, 382 F. Supp. 2d 1139, 1160 (D. Ariz. 2005); and *Wheeler v. Boeing Pension Value Plan*, No. 06-500, 2007 WL 2608875 at *12 (S.D. Ill., Sept 6, 2007). *But see Eaton v. Onan*, 117 F. Supp. 2d 812, 845 (S.D. Ind. 2000) (denying summary judgment to defendants on backloading claim).

approach, holding that the Plan could not "have it both ways."  229 F.3d at 167, n.18.  *Esden* is binding authority in this Circuit.  If the "minimum benefit" offset is taken into account in testing the rate of accrual in the current year of the benefit actually payable to employees, then the cash balance formula violates the 133 1/3% rule because it subjects them to years of zero accruals. On the authority of *Esden*, this Court should hold that wearaway violates the 133 1/3% rule.[14]

c.     Defendants' Application of Section 204(b)(1)(B)(i) Perverts Its Purpose

Defendants' application of Section 204(b)(1)(B)(i) to justify wearaway is not only logically flawed and in violation of the 133 1/3% rule, but also perverts Congress' stated purpose in adopting it.  As noted in *Allen v. Honeywell Ret. Plan*, 382 F. Supp. 2d 1139, 1160 (D. Ariz. 2005) , a literal application of the 133 1/3% rule would "prevent a plan from ever increasing benefits for all employees by more than one third of the value of the original benefits."  As a consequence, the *stated purpose* of Section 204(b)(1)(B)(i) was to permit plan sponsors to adopt amendments increasing the rate of accrual by more than one third by providing that the 133 1/3% test should be applied only to the new amended formula, without taking into consideration the lower rate of accrual under the old formula.  *See also* H.R. Rep. 93-807, reprinted in 1974 U.S.C.C.A.N. 4670 at 4688 (confirming this approach).

There is no evidence that any plan relied on wearaway in 1974 when ERISA was adopted, no discussion of it in the legislative history, and no litigation involving wearaway until long after cash balance plans made their first appearance in 1985.  It cannot be argued, therefore, that the purpose of Section 204(b)(1)(B)(i) was to permit wearaway, or that Congress would have permitted it had Congress been aware of it in 1974.  In fact, wearaway is such an iniquitous practice that when Congress first became aware of wearaway's use in cash balance conversions, it outlawed wearaway in the Pension Protection Act of 2006 for plan amendments adopted after June 29, 2005.  *See* ERISA § 204(b)(5)(B)(ii), (iii).

---

[14]  The "minimum benefit" offset is no different from any other run-of-the-mill offset, such as the Social Security offset at issue in *DeVito v. Local 819 IBT*, 975 F. Supp. 258 (S.D.N.Y. 1997).  In *DeVito*, the Social Security offset was taken into consideration in determining that its application violated the 133 1/3% rule.  *Id.* at 269.

Defendants have perverted a remedial provision intended to permit amendments *increasing* the rate of accrual by more than one third into a ploy to *reduce* the rate of accrual to *zero* in order to get around the prohibition against reducing previously-accrued benefits. Defendants' application of Section 204(b)(1)(B)(i) is not only contrary to *Esden* as a violation of the 133 1/3% rule, but also a perversion of Congress' remedial purpose in adopting it.[15]

2.     The 1997 Plan Also Violates the 133 1/3% Rule (Count One)

Plaintiff alleges in Count One that because the Plan's pay credits *increase* as the number of years of service (and therefore age) increase, while interest credits, which are valued as of age 65, *decrease* with age, the Plan must contain a minimum interest credit (5.25%) to insure that the overall rate of accrual does not increase by more than one third. Defendants respond that, "[a]ccepting for purposes of this motion Plaintiff's allegation that a 5.25% interest rate would have avoided backloading, the Amended Complaint does not actually allege that the interest rate was below that amount for any plan year." Mot. at 12. Defendants' argument reveals a misconception of the 133 1/3% rule.

ERISA provides that a plan must satisfy the 133 1/3% rule with regard to "any individual

---

[15] Finally, Defendants' reliance on Revenue Ruling 2008-7, 2008-7 IRB 419, 2008 WL 274325 (Feb. 1, 2008) is unavailing, because the Ruling is inconsistent with the language of Section 204(b)(1)(B)(i), fails to take into account its purpose, and is contrary to the IRS' own regulations interpreting the 133 1/3% rule. Because the Ruling was not a product of the IRS' "most authoritative voice," it is entitled to no deference. *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748 (2004). The Ruling subdivided employees into different "classifications" based on age and then determined that the 133 1/3% rule was violated for some, but not for others – such as the participants in this Plan accruing the greater of two formulas in 1989-90. Although the Ruling therefore supports Plaintiff in part, it is entitled to no deference for several reasons. *First*, this approach is directly contrary to ERISA Section 204(b)(1)(B) and its IRC analogue, Section 411(b)(1)(B), both of which provide that it is a *plan* that must satisfy the 133 1/3% rule, *not* merely some "classification" of employees. *See also* 26 C.F.R. § 1.411(b)-1(b)(2)(i), and 26 C.F.R. § 1.411(b)-1(b)(ii)(Examples 2 and 3). Moreover, IRS Document 6390, as in effect for the past 30 years (Derry Decl., Ex. 3), explains at p. 8, Sect VII ("Accrued Benefits") that the same accrual method must apply to *all* employees in a plan. *Second*, the IRS' own regulations prohibit classifying employees based on age. 26 C.F.R. § 1.411(b)-1(a)(1). *Third*, the notion of "classifications" first arose in an IRS internal memorandum associated with a proposed Treasury Decision, T.D. 7501, p. 3, 1977 WL 52383 (April 25, 1977), rather than in the proposed regulations published for comment and subject to a subsequent public hearing. Regulations Relating to Minimum Vesting Standards, 40 Fed. Reg. 51445, at 51459 (Nov. 5, 1975). *Fourth*, the stated purpose of "classifications" was quite different, namely to "allow different negotiated contribution rates and benefit levels, *e.g.*, one benefit for a 50 cent an hour contribution and another benefit for a dollar an hour contribution, with the benefits under each contribution rate to be tested separately." T.D. 7501, 1977 WL 52383. No hearing on "classifications" took place before adoption of the final regulation. Minimum Vesting Standards and Certain Plans Covering Subsidiary Corporation Employees, 42 Fed. Reg. 42318 (Aug. 23, 1977).

*who is or could be a participant*" (emphasis added), so that a plan violates the 133 1/3% rule even when there is only a *possibility* that the rule could be violated. *See* ERISA § 204(b)(1)(B); IRC § 411(b)(1)(B); 26 C.F.R. § 1.411(b)-1(b)(2)(i)(B); and 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(B).[16] *See also* IRS Document 6390, *supra*, at 8, § VII. Thus, the 1997 Plan violates the 133 1/3% rule regardless of whether the interest rate was below that amount for any plan year. *See Esden,* 229 F.3d at 167 (explaining that a 5.5% minimum interest credit was the lowest rate at which compliance with the 133 1/3% rule was possible).

3.    The Plans Do Not Provide "Definitely Determinable Benefits," in Violation of ERISA and the IRS Code (Counts Two and Three)

Plaintiff alleges that the Plans violate ERISA's "definitely determinable benefit" requirement in two ways. First, although the Plans tie their variable interest crediting rate to an outside index, the Plan sponsor retains discretion to apply a greater interest rate (Count Two). Second, Plaintiff alleges that the Plans fail to provide for an interest projection rate to be used in projecting interest credits to normal retirement age, thereby making it impossible to calculate the accrued benefit prior to that age (Count Three).

IRS Notice 96-8 "specifically addresses the problem of cash balance plans where the interest credits are tied to a variable outside index." *Esden*, 229 F.3d at 166. "In such a case ...the plan must prescribe a method for determining the rate at which future interest credits will be applied to project the participant's accrued benefit as of normal retirement age. The method prescribed must preclude employer discretion in order to comply with the 'definitely determinable benefits' requirement of Code section 401(a)(25)." *Id*. at 166. The IRS has set up two "safe harbor" methods for placing the interest rate projection beyond employer discretion. *Id*. at 169-170. The Plan at issue has failed to adopt either of the methods, relying instead on *ad hoc*, discretionary decisions that violate ERISA's and the IRC's "definitely determinable"

---

[16]  26 C.F.R. § 1.411(b)-1(b)(2)(ii)(B) provides that, where the annual accrual rate after 10 years of service increases by more than one third, from 1% to 1.5% of final compensation, "the plan will be treated as failing to satisfy the requirements of this subparagraph for the plan year *even though no participant is actually accruing at the 1.5 percent rate* because an individual *who could be a participant* and who had over 10 years of service *would accrue* at the 1.5 percent rate, which rate exceeds 133 1/3 percent of the 1 percent rate.") (emphasis added).

requirement.

Defendants inaccurately represent the "definitely determinable" requirement as unenforceable by participants, alleging that it consists of a "tax qualification requirement" purportedly found only in the IRC.  Mot. at 14.[17]  In fact, binding authority in this Circuit provides that, among the "regulatory consequences" of cash balance plans' status as defined benefit plans, is that they "are subject to a series of parallel statutory constraints—under ERISA and IRC," including "the definitely determinable benefits requirements of IRC § 401(a)(25)." *Esden*, 229 F.3d at 158-9.[18]  "The definitely determinable benefits requirement means that it must be possible to determine and compute the benefits of each participant under express terms and according to an express formula that is not within the discretion of the employer." Stephen R. Bruce, *Pension Claims, Rights and Obligations* (2d ed. 1993), at 47.

Several ERISA provisions require a plan administrator to calculate an employee's accrued benefit, defined by ERISA § 3(23)(A) as the benefit under the plan "expressed in the form of an annual benefit commencing at normal retirement age," long before a participant reaches that age.  For a cash balance formula, this requirement cannot be fulfilled without knowing all the applicable interest crediting and projection rates.  *See, e.g.,* ERISA §§ 105(a) & 105(c), 29 USC §§ 1025(a) & 1025(c).  Because the Plan does not satisfy these requirements, Plaintiff's Counts Two and Three plead valid claims.

---

[17] Defendants rely on *Reklau v. Merchants National Corp.*, 808 F.2d 628, 631 (7th Cir. 1986), *West v. Murphy*, 99 F.3d 166, 169 (4th Cir. 1996), and *Stamper v. Total Petroleum*, 188 F.3d 1233, 1238 (10th Cir. 1999).  These cases are not binding authorities in this Circuit; *Esden* is.  Furthermore, they all dealt with provisions contained only in the Code, not ERISA.  The only exception, *Hirt v. Equitable*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006), was wrongly decided and is on appeal to the Second Circuit.

[18] *See also* Stephen R. Bruce, *Pension Claims, Rights and Obligations* (2d ed. 1993), at 48 ("[t]he basic point of the definitely determinable requirement, namely that a plan must be a written, nondiscretionary document, is not a Code requirement alone.  Under ERISA, all plans, whether or not qualified, must be written and must 'specify the basis on which payments are made to and from the plan").  *See* ERISA §§ 402(a)(1) (requiring that every employee benefit plan "shall be established and maintained pursuant to a written instrument") & 402(b)(4) (requiring that every employee benefit plan "specify the basis on which payments are made to and from the plan").

**E.      Mr. Bilello Has Been Injured Through Illegal Forfeiture of Accrued Benefits, and Has Standing to Pursue Counts Four and Five.**

In Count Four, Plaintiff asserts that the Plan's omission of any provision that projects interest credits to age 65 causes any payment from the Plan to be less than the statutorily-defined "accrued benefit," which must include interest credits projected to age 65. *See Esden*, 229 F.3d at 167 & n.18; IRS Notice 96-8. Providing anything less than a participant's accrued benefit causes an illegal forfeiture of accrued benefits. *See* ERISA § 203(a), 29 U.S.C. §1053(a) and IRC § 411(a). The 1989 Cash Plan causes such a forfeiture because Article 4.3(f) provides that interest credit accruals *cease* as of the day prior to distribution, with no projection to age 65.

Defendants argue that there can be no forfeiture unless the interest crediting rate used to project accrued benefits to age 65 exceeds the IRS discount rate, and that there is no allegation to that effect in the Amended Complaint. Mot. at 15. Defendants miss the point. Count Four alleges that the Plan neither provides for projecting interest credit rates, nor does it contain a *method* by which to choose an interest rate to project interest credits to age 65. As held in *Esden*, where a cash balance plan provides for a variable interest crediting rate tied to an outside index, it must not only project interest to age 65, but must also specify in the plan document which of two possible methods it will use in selecting the interest projection rate. *Esden*, 229 F.3d at 170 (relying on 26 C.F.R. § 1.401(a)(4)-8(c) and IRS Notice 96-8); *Berger v. Xerox Corp.*, 338 F.3d 755, 760 (7th Cir. 2003). Without a method for selecting the interest projection rate, a plan is limited to *ad hoc* interest rates decisions. Thus, even assuming, *arguendo*, that Defendants did in fact project interest credits to normal retirement age despite the Plans' failure to require it, Plaintiff is entitled to discovery on this valid claim to determine whether, as a factual matter, the Plan's *ad hoc* interest rates exceeded the IRS discount rate. This factual issue may not be resolved on a motion to dismiss.

In Count Five, Plaintiff asserts that the Plan violated ERISA's anti-forfeiture provision for participants with a "Prior Service Credit" by failing to project interest credits to normal retirement age based on the transition credits available in 1989 and 1990. The projection

requirement is all the clearer because the Plan itself states that the "Prior Service Credit" is not the accrued benefit, but only the present lump sum value of the accrued benefit. Consequently, employees receiving a Prior Service Credit, including Plaintiff Bilello, clearly received less than their accrued benefit. *See* Compl. ¶¶ 70-72; ERISA § 203(a), 29 U.S.C. § 1053(a).

Defendants argue that transition credits need not be projected to age 65, because they apply only in 1989 and 1990. However, as noted earlier, because the Plan does not provide a method for setting the interest projection rate, the only interest rate that could be used to effect the projection for employees collecting their benefit in 1989 or 1990 is the interest rate in effect during those years, when the projection is performed. The rate in those two years is the transition credit rate. Plaintiff's Complaint provides an example of the impact of this violation: a 45-year old participant with a $20,000 "Prior Service Credit" as of Dec. 31, 1988 collecting his pension in 1989 would have a 14% applicable interest rate (the transition interest credit rate applicable to the Prior Service Credit in 1989, which dropped to 13.8% in 1990). Compl. ¶ 71. Thus, the accrued benefit - as shown in this example - would have been $71,032, or "3.5 times the amount the Plan would have paid the participant at that time," thereby creating a forfeiture of the accrued benefit. *Id.* Clearly, Plaintiff has alleged sufficient facts in Count Five to demonstrate a claim that rises above a mere "plausibility" standard.[19]

Finally, Defendants allege that Counts Four and Five only "affect participants who retire before the normal retirement age of 65." They argue that Plaintiff, who retired at age 66, has no Article III standing to plead these claims. Mot. at 15. Defendants' premise is erroneous. Because Defendants' variable interest rate is not determined by an outside index, but is subject to *ad hoc* adjustments, and because the Plans should, but do not, contain a minimum interest rate, employees retiring at age 65 or later have no assurance that they received the amount to which ERISA entitled them, *i.e.*, their accrued benefit. Put another way, Article III standing in this

---

[19] Defendants' argument that the projection of interest credits to age 65 and then discounting back to present value is no longer required is misguided. Mot. at 15, n. 15. This argument relies on the Pension Protection Act of 2006, which by its terms is *not* retroactive and, thus, not relevant to plan violations preceding its effective date. Pub. L. 109-280 (2006).

context turns on a factual issue that depends on the outcome of the lawsuit.

As explained in *Drutis v. Rand McNally*, 499 F.3d 608, 612 (6th Cir 2007), "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) *if the plaintiff wins*. It does not depend on whether or not there is a disputed statutory impediment to winning. Such an issue goes to the merits." (Emphasis in original). In addition, Plaintiff has Article III standing to seek injunctive relief based on ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3), which authorizes any participant to seek appropriate equitable relief to redress any violation of ERISA, regardless of whether the violation has harmed him. *Central States v. Merck-Medco*, 433 F.3d 181, 199-200 (2d Cir. 2005); *Ello v. Singh*, 531 F. Supp. 2d 553, 565 (S.D.N.Y. 2007).

**F.    Defendants Failed to Provide Plaintiff Bilello with Requested Governing Plan Documents and a Comprehensible Benefit Statement, Thereby Breaching Their Fiduciary Duty.**

In Count Ten, Plaintiff alleges that Defendants have failed to provide him with Plan documents in accordance with ERISA §§ 104(b) and 105(a), 29 U.S.C. §§ 1024(b), 1025(a). Plaintiff requested that the Plan Administrator provide a benefit statement, the Plan documents relied on to perform the benefit calculations, and all calculation worksheets, so that he could understand and compute his Plan benefit. Compl. ¶¶ 131-32, 135, 138, 140. *See also* Rice Aff., Ex. B at 2 (acknowledging request for benefit statement). Defendants have only provided Plaintiff with current Plan documents, access to certain documents produced in other litigation, and an incomprehensible benefit worksheet. Consequently, and as alleged, Defendants failed to comply with ERISA's disclosure requirements and Plaintiff states valid claims for statutory damages (Count Ten) and for fiduciary breaches stemming from these ERISA violations (Count Eleven).[20]

"Liability for statutory damages under 29 U.S.C. § 1132(c)(1) [for fiduciary breach] is

---

[20] The documents itemized in Ex. D to the Rice Affidavit are beside the point. What is at issue is whether Plaintiff has pled that documents required to be produced have been withheld – not the number of documents to which Plaintiff may have access.

established when (1) a participant in a plan covered by ERISA (2) requests the plan administrator in writing to furnish information or documents (3) in the administrator's control that (4) ERISA requires the administrator to furnish and (5) the administrator fails or refuses to make the requested disclosure." *Proujansky v. Blau*, No. 92-8700, 2001 WL 963958 at*6 (S.D.N.Y. Aug. 22, 2001). *Proujansky* further holds that a potential violation of ERISA § 105(a), 29 U.S.C. § 1025(a), "squarely implicate[s]" a fiduciary breach violation. *Id.* at *9.

Defendants' insistence that they have complied with Section 104(b) because only the "*latest*" plan documents need to be produced is simply wrong. The relevant touchstone is whether the requested documents are pertinent to a participant's benefit calculation. Courts have long recognized that "ERISA requires that an administrator provide copies of documents upon the request of a plan participant" as long as the requested documents are pertinent to a participant's claim. *See, e.g., McFaul v. Loews Corp.,* No. 93-2401, 1993 WL 541778, *2 (S.D.N.Y. Dec. 30, 1993); *Austin v. Ford*, No. 95-3730, 1998 WL 88744, *5-6 (S.D.N.Y. March 2, 1998), . The documents Plaintiff requests are not "outdated," rendering inapposite the case law on which Defendants rely. *See* Mot. at 23-4. In fact, as alleged, the prior Plan documents that Defendants continue to withhold are necessary for Mr. Bilello to calculate his Prior Service Balance, which is based on Plan provisions in effect prior to 1989 – a period for which Defendants have refused to produce *any* documents. Compl. ¶¶ 130, 134-35, 137-140; *see also* Mot. at 5-6 (conceding that Prior Service Credit is based on Plan provisions in effect prior to January 1, 1989).

Finally, Defendants' assertion that Plaintiff's allegations are invalid because Plaintiff fails to "specify what was not understandable" in the "worksheet" improperly seeks to place the duty of clear communication upon the aggrieved Plan participant, rather than on the Plan Administrator. *See* Mot. at 24, n. 25. The statement is clearly inconsistent with ERISA's protective scheme, and moreover, flatly wrong. The Complaint is replete with descriptive allegations of the statement's inadequacies, omissions, and lack of comprehensibility. The document: (1) "set[s] forth the amount of the "Prior Service Balance" without any explanation of

how that amount was calculated" (Compl. ¶ 134); and (2) is "lengthy, complex, and provides neither the formula(s) on which it relies or an understandable explanation of the calculations in plain, straight-forward language" (*Id*. at ¶ 136).[21]

Defendants' argument that Plaintiff cannot establish a fiduciary breach where there is no underlying duty to produce documents improperly relies, at this stage of the pleadings, on a factual determination as to Plaintiff's Count Ten: whether all documents pertinent to Mr. Bilello's claim have been produced.  Plaintiff's allegations in Count Ten are more than sufficient to allege the underlying breach, as well as the fiduciary breach claim in Count Eleven.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Bilello respectfully requests that the motion to dismiss be denied in its entirety.

Respectfully submitted this 31st day of March, 2008.

<div style="margin-left:40%">

s/Amy Williams-Derry
Lynn Lincoln Sarko
Derek W. Loeser
Amy Williams-Derry
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

Peter S. Linden, Esq. (PL-8945)
Andrew T. Watt
KIRBY MCINERNEY LLP
830 Third Avenue
New York, NY 10022
(212) 371-6600

Richard S. Schiffrin
Joseph H. Meltzer

</div>

---

[21] Indeed, the document produced as a benefit statement (*see* Rice Aff., Ex. B at 2), which Defendants argue satisfies the ERISA standard of being "written in a manner calculated to be understood by the average plan participant," Compl. ¶ 136, *citing* ERISA § 105(a)(2)(A)(iii), is attached to the Rice Affidavit as Ex. C.  Whether this illegible and incomprehensible document is understandable to "the average plan participant," is clearly a factual issue that is not appropriate for determination at this stage of the pleadings.

Edward W. Ciolko
Joseph A. Weeden
SCHIFFRIN BARROWAY TOPAZ &
   KESSLER, LLP
280 King of Prussia Road
Radnor, PA  19087
(610) 667-7706

Edgar Pauk
LAW OFFICES OF EDGAR PAUK
144 East 44th Street, Suite 600
New York, NY  10017
Tel:  (212) 983-4000

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Thomas C. Rice                trice@stblaw.com

Jonathan K. Youngwood         jyoungwood@stblaw.com


                    s/ Amy Williams-Derry
                    Amy Williams-Derry
                    KELLER ROHRBACK L.L.P.
                    1201 Third Avenue, Suite 3200
                    Seattle, WA 98101
                    (206) 623-1900