**EXHIBIT 3**

# Employee Benefit Plans

## Explanation No. 2A
## Minimum Vesting Standards
### Defined Benefit Plans

The purpose of the Worksheet Number 2A (Form 5624) and this explanation is to identify major problems in the area of plan vesting. However, there may be issues not mentioned in the worksheet that could affect the plan's qualification.

The worksheet applies only to plans to which Internal Revenue Code section 411 applies, except plans mentioned in section 411(e) (such as governmental plans) and plans that cover participants who are employed in maritime or seasonal industries.

Generally, a "Yes" answer to a question on the worksheet indicates a favorable conclusion while a "No" answer signals a problem concerning plan qualification This rule may be altered by specific instructions for a given question. Please explain any "No" answer in the space provided on the worksheet.

The sections cited at the end of each paragraph of explanation are to the Internal Revenue Code, the Income Tax Regulations, and the Department of Labor (DOL) Regulations; Rev. Rul. means Revenue Ruling.

A basic requirement to keep in mind for the vesting standards is that each participant's vested interest must satisfy the statutory minimum at all times. A plan that generally provides faster vesting than the statutory minimum will not fail to qualify merely because the plan does not adhere to the specific language found in the statute. For example, a plan that provides full and immediate vesting at age 21 would satisfy the statutory minimum vesting requirements even though language about a requirement for years of service is not found in the plan.

Department of the Treasury
**Internal Revenue Service**
Document 6390 (Rev. 12-98)   Cat. No. 45134P

The technical principles in this publication may be changed by future regulations or guidelines.

**I. Years of Service And Breaks In Service**

This section applies only to plans in which years of service are a factor in determining a participant's vested interest. Therefore, DO NOT complete this section if the plan provides full and immediate vesting for each participant. Questions a. through f. and l. through p. apply to plans that count hours of service. Questions g. through p. apply to plans that use the elapsed time method of counting service.

**Line a.** A vesting computation period is a 12-consecutive-month period used to determine whether an employee has completed a year of service for vesting purposes. Any plan must designate a vesting computation period, except a plan that uses an "elapsed time" method of counting service, or a plan in which years of service are not a factor in determining a participant's vested interest.
*DOL Regs. 2530.200b-1(a)*

**Line b.** Depending on the definition of "hour of service" and the method used to count these hours, a plan must credit an employee with 1 year of service for vesting if the employee completes at least 1000, 870, or 750 hours of service in a vesting computation period.
  (i) (H = 1000) A plan that counts all hours of service, or that uses an equivalency based on a period of employment (day, week, semi-monthly payroll period, month, or shift), cannot require the completion of more than 1000 hours of service.
*411(a)(5)(A)*
*DOL Regs. 2530.200b-1(a)*
*DOL Regs. 2530.200b-3(e)*
  (ii) (H = 870) A plan that counts "hours worked," or that uses an equivalency based on earnings for an employee who is compensated on an hourly rate, cannot require the completion of more than 870 hours of service.
*DOL Regs. 2530.200b-3(d)(1)*
*DOL Regs. 2530.200b-3(f)(1)*
  (iii) (H = 750) A plan that counts "regular time hours," or that uses an equivalency based on earnings for an employee who is compensated on a basis other than an hourly rate, cannot require the completion of more than 750 hours of service.
*DOL Regs. 2530.200b-3(d)(2)*
*DOL Regs. 2530.200b-3(f)(2)*
  Answer the following by using the applicable method of counting hours (i,ii, or iii above).

**Line c.** If a plan counts all hours of service, credit each hour for which (1) an employee is paid or entitled to payment for the performance of duties, (2) an employee is paid or entitled to payment because of a period of time during which no duties are performed, and (3) back pay is either awarded or agreed to by the employer. Note: Item (2) may be limited to 501 hours for any single occurrence.
*DOL Regs. 2530.200b-2(a)*

If a plan credits hours of service by an equivalency based on a period of service, and an employee is required to be credited with at least 1 hour of service under the paragraph above, then, depending on the basis used, the plan must credit hours of service as follows:

| Basis of Equivalency | Number of Hours Credited |
|---|---|
| Day | at least 10 |
| Week | at least 45 |
| Bi-weekly payroll period | at least 95 |
| Month | at least 190 |

*DOL Regs. 2530.200b-3(e)*
  If a plan counts "hours worked," credit each hour for which an employee is paid or entitled to payment for the performance of duties; also credit hours for which back pay is awarded, or agreed to, by the employer to the extent that the back pay covers a period in which the employee would have been employed in the performance of duties for the employer
*DOL Regs. 2530.200b-3(d)(3)(i)*
  If a plan counts "regular time hours," credit each hour for which an employee is paid or entitled to payment for the performance of duties (except hours for which a premium rate is paid).
*DOL Regs. 2530 200b-3(d)(3)(ii)*
  If a plan credits hours of service by an equivalency based on earnings for an employee who is compensated on an hourly rate, an employee must be credited during a computation period with at least the number of hours equal to either the employee's total earnings—
(1) from time to time during the computation period, divided by the hourly rate of those times; or
(2) for performance of duties during the computation period divided either by the employee's lowest hourly rate during that time, or by the lowest hourly rate payable to an employee in the same, or a similar, job classification.
*DOL Regs. 2530.200b-3(f)(1)(i)*
  If a plan credits hours of service by an equivalency based on earnings, and determines compensation other than on an hourly rate, the employee must be credited during a computation period with at least the number of hours equal to his or her total earnings for duties performed during that period, divided by the employee's lowest hourly rate of compensation during the same period. (See the DOL Regulations). NOTE: If the same hourly rate of compensation is used for all employees, this method may result in discrimination in favor of highly compensated employees.
*DOL Regs. 2530.200b-3(f)(2)*

**Line d.** If H = 1000 in b. above, answer this question; otherwise check N/A. If a plan credits hours of service for periods during which no duties are performed, the plan must designate the method of determining the number of hours to be credited and the method of crediting the hours to the computation periods. The plan must conform to the requirements of DOL Regulations section 2530.200b-2(b) and (c). Section 2530.200b-2(f) of the DOL Regulations, however, also indicates that a plan is not required to state these rules if they are incorporated by reference.

*DOL Regs. 2530.200b-2(b) & (c)*
*DOL Regs. 2530.200b-2(f)*

---

**Line e.** A plan may disregard certain service before the employee has 5 consecutive 1-year breaks in service. If all of an employee's service with an employer is counted for determining the nonforfeitable accrued benefit, the plan need not provide these rules. In this case, check N/A.

Depending on the definition of "hour of service" and the method used to count these hours, a plan may charge an employee with a break in service for any vesting computation period in which the employee fails to complete more than B hours of service. The number required for B, if a certain method of counting hours is used, equals half of the hours used in question b, of this section of the worksheet. Therefore, a plan may provide that an employee be charged with a break in service if in a computation period the employee fails to complete: more than 500 hours of service in a plan that counts all hours of service; or, more than 435 hours if the basis used is "hours worked"; or, more than 375 hours if the basis is "regular time hours."
*DOL Regs. 2530.200b-3*
*DOL Regs. 2530.200b-4*

---

**Line f.** An individual shall be credited with certain hours of service if such individual is absent from work for any period by reason of (1) pregnancy of the individual, (2) birth of a child of the individual, (3) placement of a child with the individual in connection with an adoption or (4) caring for a child described in (2) or (3) immediately following such birth or placement. This credit is credit for maternity or paternity leave. Credit for maternity or paternity leave is only made to avoid a break in service and not to obtain a year of service. The absence does not have to be approved leave.

Credit for maternity or paternity leave is required only if such leave is on account of the reasons described above. Thus if an individual quits employment with employer A and two years later adopts a child, no credit under this provision would be given if the individual eventually returns to work for employer A because said individual's absence from employer A's workplace is on account of quitting and not on account of the adoption of or the caring for the child immediately following the adoption.

Hours of service must be credited to the computation period in which the first hour of maternity or paternity leave occurs, if such individual would experience a break in service with respect to such computation period if such maternity or paternity leave is not credited and such individual will not experience a break in service if such maternity or paternity leave is credited. If such maternity or paternity leave is not credited to the first computation period, it is credited to the second computation period whether or not it is needed to preclude a break in service.

The rules may be illustrated with the following example: Individual A separates from service on March 1, 1986 of a calendar year computation period after earning 300 hours of service. The plan defines a year of service as a computation period in which the employee earns 1000 hours. The employer provides for paid maternity leave for a period not to exceed 300 hours.

Under the normal rules for crediting service paid maternity leave must be credited for service. Therefore, individual A in 1986 would not experience a break in service even if the hours required to be credited under REA are not so credited. Accordingly, no hours of service would be credited to the first computation period in 1986. Therefore, all such hours of service are credited in the second computation period of 1987.

The number of hours credited with respect to a computation period is the number of hours such individual would normally have worked in the computation period if such individual were not on maternity or paternity leave. In the event that the number is not ascertainable, the plan may credit 8 hours with respect to any day said individual is absent for leave on account of maternity or paternity leave. The plan may limit the number of hours credited to any computation period to the number of hours needed to avoid a break in service, i.e., 501 hours, 436 hours, 376 hours depending on how hours are counted. The plan may provide that the participant has the burden of proving that the absence was by reason of one of the covered causes.

The plan can use a simplified method for complying with the requirements relating to maternity and paternity absences. If the plan's break in service rules require a minimum of six consecutive one year breaks in service for service to be disregarded (versus the statutory minimum of five), then the plan will not have to include any special rules relating to maternity and paternity absence. This simplified method is available only if the plan computes years of service on the basis of hours of service or permitted equivalencies. It does not apply to elapsed time plans.
*411(a)(6)(E)*
*1.410(a)-9*

---

**Line g.** The employment commencement date must be no later than the date on which the employee first performs an hour of service for the employer. The severance from service date is the earlier of the date the employee quits, retires, is discharged, or dies or the first anniversary of the first day of a period of absence from service for any reason other than quitting, retiring, discharge, or death.

The employee must be credited with service equal to at least the time between the employment commencement date and the severance from service date.
*1.401(a)-7(b) & 411(a)(5)(B)*

---

**Line h.** Generally, a plan must aggregate all separate periods of service, except for any that may be disregarded due to the rule of parity. Alternatively, instead of keeping separate periods of service, the plan may aggregate by adjusting the employment commencement date. If the plan uses this alternative to credit the aggregate period of service, check "Yes" for question h.
*1.410(a)-7(b)(6)(ii)*

---

**Line i.** A period of severance is the period of time between the employee's severance from service date and the date the

3

employee again performs an hour of service for the employer.

If an employee severs from service by quitting, being discharged, or retiring, and then performs an hour of service within 12 months of the severance from service date, the plan must consider the period of severance as a period of service.

Also, if an employee severs from service for any reason other than quitting, being discharged, or retiring and within the next 12 months or less quits, is discharged, or retires and then performs an hour of service within 12 months of the date on which he or she was first absent from service, the plan must consider that period of severance as a period of service.

*1.410(a)-7(d)(1)(iii) & 411(a)(5)(B)*

**Line j.** The break in service rules allow a plan to disregard certain service before the employee has 5 consecutive breaks in service. If all of an employee's service with an employer is counted for vesting, the plan need not provide these rules. In this case, check N/A for this question.

If a plan uses elapsed time, substitute "1-year period of severance" for "1-year break in service." A 1-year period of severance is a 12-consecutive-month period beginning on the severance from service date and ending on the first anniversary of that date provided that within this period the employee does not perform an hour of service for the employer maintaining the plan.

*1.410(a)-7(d)(4) & 411(a)(5)(B)*

**Line k.** An individual shall not incur the first 12-month period of severance that would otherwise be counted if said period is attributable to maternity or paternity leave. Such 12 month period is neither counted as a year of service nor as a period of severance. Maternity or paternity leave is a period an individual is absent from work by reason of (1) pregnancy of the individual, (2) birth of the child of the individual, (3) placement of a child with the individual for adoption or (4) caring for a child described in (2) or (3).

Credit for maternity or paternity leave is required only if such leave is on account of the reasons described above. Thus, if an individual quits employment with employer A and two years later adopts a child, no credit under this provision could be given if the individual eventually returns to work for employer A because such individual's absence from employer A's workplace is on account of quitting and not on account of the adoption of or the caring for the child immediately following the adoption.

If an individual works until July 1, 1986, is first absent from employment on July 1,1986, on account of maternity or paternity leave, and on July 1, 1989 performs an hour of service, the period of service must include the period from the employment commencement date until June 30, 1987 (one year after the date of separation for a reason other than employee quit, retirement, discharge or death). The period from July 1, 1987 to June 30, 1988 is neither a period of service nor a period of severance. The period of severance would be from July 1, 1988 to June 30, 1989.

*411(a)(6)(E)(iii)*
*1.410(a)-9*

**Line l.** In general, for vesting purposes, count all years of service with the employer who maintains the plan. However, there are several exceptions to the general rule. Years of service before an employee reaches age 18 may be excluded. If a plan uses a vesting computation period, count the vesting computation period in which an employee becomes 18 as a year of service. If a plan uses elapsed time, count the period after the employee becomes 18 when figuring the employee's period of service. Years of service excluded for years prior to age 22 under the law before the Retirement Equity Act may not subsequent to the effective date of the Retirement Equity Act be excluded unless 1) such service is before age 18, or 2) such service would be excluded under the Rule of Parity prior to the Retirement Equity Act. This change only applies to those with an hour of service after REA's enactment.

Except for top-heavy years, a contributory plan that uses a vesting computation period may exclude a year of service in which an employee made no mandatory contributions, if the absence of the contribution was the only reason the employee was ineligible to participate in the plan. A year of service in which a partial mandatory contribution was made may not be excluded, regardless of the effect on participation. If a plan uses elapsed time, exclude only the period in which the mandatory contribution was not made. You may disregard years of service before the employer maintained the plan or a predecessor plan as well as years of service not required to be taken into account because of a break in service. (For a definition of a predecessor plan see Regs. section 1.411(a)-5(b)(3)(v)(B).) You may also disregard the years of service completed before January 1, 1971, unless the employee completed 3 years of service (whether or not consecutive) any time after December 31, 1970. (In determining whether an employee completed 3 years of service under this rule, do not apply the other exceptions described in this paragraph.) Finally, you may disregard plan years completed before section 411 applied to the plan, if the service would have been disregarded under any terms of the plan which at that time served as break-in-service rules.

*411(a)(4)*
*1.411(a)-5(a) & (b)*

**Line m.** For vesting purposes, count all years of service with the employer, including the years spent as a nonparticipant and those when the employee was in a category of employees excluded from the plan, unless one of the exceptions noted in section 411(a)(4) applies (see l. above).

Years of service excluded for years prior to age 22 under the law before the Retirement Equity Act may not subsequent to the effective date of REA be excluded unless 1) such service is for years prior to age 18, or 2) such service would be excluded under the Rule of Parity prior to REA. This change only applies to those with an hour of service after REA's enactment.

*411(a)(4)*

**Line n.** For vesting purposes, years of service with an employer must include credit for service with other related employers (while related) that are members of a controlled group of corporations, (see section 1563(a) without regard to subsection (a)(4) and (e)(3)(C)), and trades or businesses under common control and affiliated service groups, (see sections 414(b), (c) and (m)).
*414(b), (c) and (m)*
*1.411(a)-5(b)(3)(iv)(B)*

**Line o.** If the employer maintains the plan of a predecessor employer, service with the predecessor is counted as service with the employer If the employer is not maintaining the plan of a predecessor employer, check N/A.
*414(a)(1)*

**Line p.** Services of any employee who is a leased employee to any employer aggregated under section 414(b), (c), or (m) must be credited for vesting purposes whether or not such individual is eligible to participate in the plan. Thus, for example, if an individual was an employee of X, participates in plan Y and separates from service with X subsequent to accruing a benefit in plan Y but prior to obtaining vesting in plan Y, begins working immediately with leasing company Z and through company Z is leased back to X, and is now excluded from plan Y, such service as a leased employee to X must be counted in plan Y for purposes of determining vesting, breaks in service, etc., of such individual's prior accrued benefit.
*414(n)(4)*
*Notice 84-11*

## II. Vesting on Separation From Service — Return to Service Without a Break in Service

A distinction should be made between a separation from service and a break in service. A participant may separate from service without affecting his or her position on the vesting schedule, if the participant returns to service with the employer before incurring 5 consecutive breaks in service.

For example: A plan has a vesting computation period that coincides with the calendar year. An employee separates from service after January 1, after completing 300 hours of service. The employee later returns to covered employment and completes more than 200 hours of service before December 31 of the same year.

Of course, an employee would have a break in service without a separation from service in any vesting computation period in which the employee completes 500 or less hours of service while remaining employed by the employer.

**Line a.** In a given vesting computation period, it is possible that a participant will avoid a break in service but will not complete sufficient hours of service to be credited with a year of service. In this case the participant will remain in the same position on the vesting schedule (without advancement).
*1.411(a)-6*

## III. Vesting on Return to Service After a Break in Service

**Line a.** A plan must require that if a participant with any nonforfeitable interest returns to employment after a 1-year break in service, the service completed before the break must be considered in determining the participant's vested interest in both pre-break and post-break benefit accruals after he or she has completed no more than 1 year of service. Figure service from the date of return to employment. After the waiting period is satisfied, count it for vesting in the accruals. However, in certain insured plans, service completed after 5 consecutive breaks in service need not be considered in determining vesting in pre-break employer-derived benefit accruals.
*411(a)(6)(B), (C) and (D), 411(b)(1)(F) & 1.411(a)-6(c)(1)*

**Line b.** Under the "Rule of Parity" in a plan that uses a vesting computation period, if a participant who has no nonforfeitable interest in employer-derived accrued benefits has a break in service, the plan is not required to consider pre-break service in determining the participant's vested interest in employer-derived benefit accruals if the number of consecutive 1-year breaks in service equals or is more than the greater of 5 or the number of years of pre-break service (whether or not consecutive). The aggregate years of service completed before the break does not include service that need not be counted because of earlier breaks.

For a plan that uses elapsed time, if the participant has a year of severance, the plan is not required to consider prior periods of service in determining the participant's vested interest in employer-derived benefit accruals if the latest period of severance equals or is more than the greater of 5 years or the prior periods of service.
*411(a)(6)(D)*
*1.411(a)-6(c)(1)(iii)*
*1.410(a)-7(d)(7)*

## IV. Contributory Plans

**Line a.** A plan cannot provide that an employee may forfeit any part of his or her accrued benefit that resulted from employer contributions because of the withdrawal of the employee's own contributions after the employee is vested in 50 percent of the accrued benefit that is the result of employer contributions.
*401(a)(19)*
*411(a)(3)(D)*
*1.401(a)-19*

5

**Line b.** If forfeitures cannot occur because of a withdrawal of mandatory employee contributions, check N/A.

Except for top-heavy years, a plan may permit a participant to forfeit all or part of the participant's accrued benefit that resulted from employer contributions because of withdrawal of any mandatory employee contributions if the participant is less than 50 percent vested in the accrued benefit. However, if the forfeiture is permitted, the forfeited amounts must be restored when the participant repays the amount of mandatory employee contributions withdrawn. The repayment may include interest on the withdrawn amount. Figure this interest, compounded annually from the date of withdrawal, at the rate specified in Code section 411(c)(2)(C).

When a participant has a right to part of the employer's benefit from contributions made before September 2, 1974, the right is not treated as forfeitable even though part of the benefit may be forfeited by the participant's withdrawal of an amount that resulted from the benefit. However, the benefit must have been the result of mandatory contributions by the participant before September 2, 1974, and the amount that could have been forfeited must not be more than the amount withdrawn. This rule does not apply to plans with mandatory contributions made after September 2, 1974.

The plan may require repayment no earlier than (i) in the case of a withdrawal on account of separation from service, before the earlier of 5 years after the first date on which the participant is subsequently reemployed, or the close of the first period of 5 consecutive 1-year breaks in service commencing after the withdrawal; or (ii) in the case of any other withdrawal, 5 years after the date of the withdrawal.
*411(a)(3)(D)(iii)*
*411(a)(4)(B)*
*1.411(a)-7(d)(2)*

## V. Cash-Outs

**Line a.** A cash-out is a distribution of all or some portion of the participant's nonforfeitable accrued benefit accompanied by a forfeiture of the nonvested benefit and a disregard of service to which the distributed amount was attributable. If the plan does not contain cash-out provisions, complete only this line. Note that the line may not forfeit the nonforfeitable benefit unless there has been a distribution or the break in service rules otherwise permit the forfeiture. Thus, a plan may not forfeit the participant's nonforfeitable benefit upon separation from service (without a distribution) even though the plan provides for restoration of the forfeited benefit upon the participant's return to service.
*411(a)(7)(B) & (C)*

**Line b.** An involuntary cash-out distribution must be an amount not less than the participant's entire nonforfeitable accrued benefit, including employee-derived benefits other than deductible employee contributions. The amount may not exceed $5,000 ($3,500 for plan years beginning before August 6, 1997). The participant's consent will be required if the present value of the nonforfeitable benefit is, or ever was, greater than $5.000 and the benefit is immediately distributable. A benefit is immediately distributable if any part of the benefit may be distributed before the later of normal retirement age or age 62. If a participant has attained NRA, but has not yet attained age 62 (or vice versa), the participant's failure to consent to a distribution is deemed to be an election to defer commencement of payment sufficient to satisfy section 401(a)(14). For plans subject to section 417, spousal consent is also required unless the present value of the nonforfeitable benefit has never exceeded $5,000, or the distribution is in the form of a qualified joint and survivor annuity. Also, in a plan subject to section 417, participant and spousal consent to an immediate distribution will be required where such distribution is after the "annuity starting date" (defined in section 417(f)(2)), even if the nonforfeitable accrued benefit has never exceeded $5,000.
*411(a)(7)(B)(i), 411(a)(11)*
*1.411(a)-7(d)(4)(i), 1.411(a)(11)-1*

**Line c.** All cash-outs (voluntary or involuntary) must be made due to an employee's termination of participation in the plan; the distribution is considered the result of the termination if it is made no later than the close of the second plan year after the plan year of termination, unless it can be shown under a facts and circumstance test that a later distribution is also on account of termination.
*411(a)(7)(B)*
*1.411(a)-7(d)(4)(i) & (ii)*

**Line d.** A plan that provides for voluntary or involuntary cash-outs must contain a repayment provision. However, repayment need not be permitted by the plan unless the employee received a distribution that is less than the present value of the employee's accrued benefit and the employee resumes employment. If any part of the employee's accrued benefit at the time of distribution is forfeitable, it is a distribution of less than the present value of the accrued benefit. The plan may require that interest on the full amount of the distribution must also be paid.

The plan may provide that repayment must be made (i) in the case of a withdrawal on account of separation from service, before the earlier of 5 years after the first date on which the participant is subsequently reemployed, or the close of the first period of 5 consecutive 1-year breaks in service commencing after the withdrawal; or (ii) in the case of any other withdrawal, 5 years after the withdrawal. A participant who is cashed-out and who, upon subsequent reemployment, repays the full amount must be reinstated in the full array of section 411(d)(6) protected benefits that existed with respect to his or her benefit prior to the cash-out. (See VII.c., below.)
*1.411(d)-4 Q&A 2(a)(2)(iii)*

**Line e.** For an involuntary cash-out, the only service of an employee that may be disregarded in figuring an employee's accrued benefit is that service for which a payment was received.

For a voluntary cash-out, an employee may receive less than the total nonforfeitable accrued benefit. Then, to get the accrued benefit not required to be taken into account at any time, multiply the employee's total accrued benefit at that time (figured as though there was no distribution) by a fraction. The numerator is the amount of the distribution, and the denominator is the present value of the employee's total nonforfeitable benefit immediately before the distribution. Service disregarded under this section may not be disregarded when determining employees' eligibility to participate or their position on the plan's vesting schedule.
*411(a)(7)(B)*
*1.411(a)- 7(d)(4)(iii)*

---

**Lines f. and g.** The plan must specify the interest rates to be used in determining the present value of accrued benefits and the amount of any distribution including lump sum distributions which cash-out the participant's benefit. This interest rate may not exceed the limits under section 417 as amended by section 1139 of the Tax Reform Act of 1986 (TRA '86): (i) the "applicable rate" if the vested accrued benefit (using such rate) is no greater than $25,000, and (ii) 120 percent of the "applicable rate" if the vested accrued benefit is above $25,000. The "applicable rate" is the rate (or rates) that would be used by the PBGC to determine the present value of a lump sum distribution upon termination of an insufficient trusteed single employer plan. This interest rate limitation applies in determining the present value of benefits for purposes of the $5,000 test, as well as in determining the actual amount of any distribution, other than certain annuity distributions described in line j., below.
*411(a)(11)*
*417(e)*
*Section 1139 of TRA '86 (Pub. L 99-514)*
*1.417(e)-1(d)*
*Notice 87-20, 1987-1 C.B. 456*

---

**Line h.** Generally, the plan must provide that the section 417 interest rate limitation will be determined as of the date of the annuity starting date or the first day of the plan year that contains the annuity starting date. Alternatively, the plan may provide that the interest rate limitation will be determined as of a time that is not more than 120 days before the annuity starting date, provided such time is determined in a consistent manner and is applied uniformly to all participants.
*1.417(e)-1(d)(3)*

---

**Line i.** If the plan specifies interest rates for calculating equivalent amounts of optional forms of benefit in addition to the section 417 rates, it must provide that in determining the present value of accrued benefits and amounts of distributions it will use the rate that will produce the greatest benefit. This may mean applying the section 417 interest rates to certain options for certain participants and applying another plan rate to those options for other participants.
*1.417(e)-1(d)(4)*

The rules in j. through l. apply to new plans (adopted or first effective on or after December 8, 1994). These rules also apply to existing plans that have elected to amend for the following rules. In addition, employers that elected to accelerate the effective date of these rules, applying the applicable interest rate and applicable mortality table to distributions with annuity starting dates occurring after December 7, 1994, in plan years beginning before January 1, 1995, are treated as making this election as of the date the plan amendment is adopted or if later made effective. Retroactive plan provisions (effective prior to the adoption date) are not permitted.
*417(e)*
*1.417(e)-1(d)(8)*

---

**Line j.** The plan must specify the interest rate and mortality table to be used in determining the present value of accrued benefits and the amount of any distribution, including lump sum distributions that cash-out the participant's benefit. Section 767 of the Retirement Protection Act of 1994 (RPA '94) amended section 417(e) of the Code and created the "applicable interest rate" and "applicable mortality table". The applicable interest rate for a month is the annual interest rate on 30-year Treasury securities. The applicable mortality table is set forth in Rev. Rul. 95-6, 1995-1 C.B. 80. If a plan uses an interest rate or a mortality table other than the applicable interest rate and the applicable mortality table, then, for purposes of determining the amount of a distribution in a form other than an annual benefit that is described in the next sentence, actuarial equivalence must be determined on the basis of the applicable mortality table and applicable interest rate under section 417(e), if it produces a greater benefit. An annual benefit is described in this sentence if it is an annual benefit that (i) is nondecreasing for the life of the participant or, in the case of a qualified preretirement survivor annuity, the life of the participant's spouse; or (ii) decreases during the life of the participant merely because of (a) the death of the survivor annuitant (but only if the reduction is to a level not below 50% of the annual benefit payable before the death of the survivor annuitant) or (b) the cessation or reduction of Social Security supplements or qualified disability payments.
*1.417(e)-1(d)*

---

**Line k.** A plan must specify the period for which the applicable interest rate remains constant. This stability period may be one calendar month, one plan quarter, one calendar quarter, one plan year, or one calendar year. The applicable interest rate for the stability period may be determined as the 30-year Treasury rate for any one of the five calendar months preceding the first day of the stability period. The applicable interest rate to be used for a distribution is the rate determined for the applicable look-back month. The applicable look-back month for a distribution is the look-back month for the month (or longer stability period) that contains the annuity starting date for the distribution. Alternatively, a plan may provide that, instead of the interest rate for a single look-back month, it will use an average of applicable interest rates based on two or more

consecutive permitted look-back months, provided the plan specifies how the average is computed.
*1.417(e)-1(d)(4)*

**Line l.** If the plan specifies interest rates or mortality tables for calculating equivalent amounts of optional forms of benefit in addition to the section 417 rates, it must provide that a participant's benefit must be at least as great as the benefit produced by using the applicable interest rate and the applicable mortality table. This may mean applying the section 417 applicable interest rate and applicable mortality table to certain options for certain participants and applying another plan rate or table to those options for other participants.
*1.417(e)-1(d)(5)*

**Line m.** The plan cannot immediately distribute any benefits where the present value of the vested accrued benefit (taking into consideration benefits derived from both employer and employee contributions other than deductible employee contribution) has ever been in excess of $5,000 ($3,500 for plan years beginning before August 6, 1997), without the consent of the participant. The test applies both for determining if cash-outs require consent and for the distribution amount. In checking cash-out provisions one must also be aware of the requirements of section 417(e) for plans subject to the joint and survivor provisions. Worksheet No. 3, dealing with qualified joint and survivor and qualified preretirement survivor annuities, details the requirements under section 417(e). Among other things, please note that spousal consent is required, and a special rule applies for cash-outs after the annuity starts.
*411(a)(11)*
*417(e)*

## VI. Vesting Schedule

The plan's vesting schedule identifies the factor to be used when determining a participant's nonforfeitable interest in the accrued benefit derived from employer contributions.

**Lines a. and b.** In general, a plan must provide vesting at a rate at least equal to one of the two vesting schedules described in section 411(a)(2)(A) and (B). Section 411(a)(2)(A) is satisfied if an employee is 100% vested in the employer-derived accrued benefit after no more than 5 years of service ("5-year cliff" vesting). Section 411(a)(2)(B) is satisfied if an employee is 20% vested after 3 years of service and an additional 20% for each subsequent year of service with 100% vesting after 7 years of service ("3 to 7 year graded" vesting). (For years beginning before the applicable effective date in the Small Business Job Protection Act of 1996, a multiemployer plan could provide for 10-year cliff vesting for employees covered under a multiemployer collective bargaining agreement. A multiemployer plan may not retain 10-year cliff vesting with respect to participants who have more than one hour of service under the plan in a plan year beginning on or after the applicable effective date, but must satisfy one of the vesting schedules in section 411(a)(2)(A) and (B). The applicable effective date is the earlier of January 1, 1999, or the later of January 1, 1997, or the date on which the last of the collective bargaining agreements pursuant to which the plan is maintained terminates.) A plan's vesting schedule cannot merely satisfy the requirements of any one of the applicable permissible vesting schedules in section 411(a)(2) in a given year without satisfying the requirements of that particular vesting schedule for all years. For example, a plan other than a multiemployer plan that provides no vesting for the first four years of service and then provides 60 percent vesting after 5 years of service with an additional 20 percent for each subsequent year to provide 100 percent vesting after 7 years of service would not satisfy the requirement. This schedule would satisfy a composite of the requirements of either "%-year" or "3-7 year" vesting for all years but would not meet the requirements of either one of these schedules for all years.

A plan may no longer be required to adopt a "4-40" vesting schedule. Furthermore, a plan may not continue to use the "4-40" vesting schedule because it does not provide vesting at a rate at least equal to one of the vesting schedules described in section
*411(a)(2)*
*1.411(a)-3*
*Rev. Proc. 89-29*

**Line c.** A new vesting schedule substituted by a plan amendment must satisfy one particular vesting schedule of the schedules listed in section 411(a)(2)(A) or (B) for each year of service, but this does not have to be the same schedule (of those listed in section 411(a)(2)) as the plan satisfied before the amendment. Therefore, a plan that provides for 100 percent vesting only after 5 years of service may be amended to "3 to 7 year" vesting provided the requirements of section 411(a)(10) are met.
*1.411(a)-3(a)(3)*

## VII. Accrued Benefits

Code section 411(b)(1) sets out three alternative minimum rates at which a participant's benefit must accrue under a defined benefit plan. The plan's benefit formula must satisfy any one of these standards at all times. In a particular year the plan must satisfy the test for all future years in a prospective manner. It is not permissible for a plan to satisfy one test in a given year and fail that test in a second year, even though it might satisfy another of the three tests in the second year. For example, a plan that accrues a benefit at a rate of 1.5 percent for the first 6 years of participation, 2 percent for the next 6 years, 14 percent in the 13th year and 2.6 percent in later years would satisfy the $133\frac{1}{3}$ percent test for the first 12 years only while satisfying the fractional test in the 13th and later years but not before.

The plan's vesting schedule is applied to the accrued benefit. A participant has a nonforfeitable right to a percentage (as determined by a plan's vesting schedule) of the benefit that is accrued as of a given date and not, for example, a projected benefit such as that payable at normal retirement date.

---

**Line a.** Insured Plans.

i. The rules pertaining to accrual of benefits are considered satisfied by a plan funded exclusively by the purchase of insurance contracts if certain requirements are met. The insurance contracts must satisfy the requirements of Code sections 412(i)(2) and (3). The plan must be funded entirely with individual insurance contracts that provide for level annual premiums beginning with participation. Also, premiums for benefits under the contracts must be paid no later than an individual's normal retirement age. An employee's accrued benefit as of any date must not be less than the cash surrender value of the employee's insurance contracts as of that date, assuming that sections 412(i)(4), (5) and (6) are satisfied. These sections concern when premium payments must be made, and the prohibition on security interests and policy loans under the contracts. If the plan is one described in this paragraph, complete only questions b.(i) and f. of the worksheet.
*411(b)(1)(F)*
*1.411(b)-1(d)(2)*

---

**Line b.** General

i. A plan may not qualify if it provides for a decrease in a participant's (or beneficiary's) benefit payments, or in a separated participant's nonforfeitable right to benefits, because of an increase in social security benefits after September 2, 1974, or, if later, either the date of separation or the date of the first receipt of benefits, whichever comes first.
*401(a)(15)*

ii. It is not necessary that every plan specifically identify an accrual computation period. A benefit formula such as 1 percent of total compensation for a year of service would satisfy the accrual rules by incorporating the accrual computation period into the benefit formula. A plan using elapsed time need not use an accrual computation period. However, a plan may designate any 12-consecutive-month period as the accrual computation period. The actual time periods need not be the same for all participants (for example, a 12-month period measured from date of hire), except that the length of the periods designated must be the same for all participants.

A plan may specify any number of hours of service in a given accrual computation period to accrue a full year's benefit. A participant who has less than the specified number of hours, will receive a prorated accrual, but a participant who has less than 1000, 870, or 750 hours of service in the period (depending on the basis the plan chooses) need not accrue any benefit in the period.

If the plan defines benefits in terms of hours or compensation and does not adjust the benefit for a less than full time employee to reflect the equivalent full time benefit, the plan may not then prorate the accrual rate. A plan may change accrual computation periods which may result in a gap between the new and the old periods. Credit for a partial year of participation must be given to a participant for the intervening time. See DOL Regulations section 2530.204-2(c), (d), and (e) for rules governing the application of these requirements.
*DOL Regs. 2530.204-2(c), (d)*

iii. In figuring service for benefit accrual, only the following may be disregarded:
(1) service before an employee first becomes a participant;
(2) service that may be disregarded because of breaks in service for purposes of eligibility under section 410(a)(5);
(3) for a plan that uses accrual computation periods, a computation period during which an employee is not credited with 1000 (870 or 750 if the plan properly provides) hours of service;
(4) service that may be disregarded under the vesting "rule of parity" in section 411(a)(6)(D).

NOTE: A plan that does not use accrual computation periods (including a plan that uses elapsed time) cannot disregard the service in (3).

To apply the accrual rates to years before the effective date of ERISA, consider all service from an employee's date of participation in the plan to determine the employee's accrued benefit. When it is impossible to determine the date an employee began participation, the employee is presumed to have begun participation on the date he or she began employment covered by the plan. This presumption may be rebutted by the facts and circumstances of the particular case.
*DOL Regs. 2530.204-1(b)*
*DOL Regs. 2530.204-2(b)*
*DOL Regs. 2530.204-3(a)*

iv. If a plan does not use an accrual computation period; or if a plan uses an accrual computation period and an employee can only begin participation on the first day of an accrual computation period, check N/A for this question. If an employee can enter (or re-enter) on a different date, take into account all hours of service required to be credited during the entire accrual computation period to determine whether the employee has 1000 (870 or 750) in the period. If the employee has at least 1,000 hours, the employee must receive a partial year of participation which is at least a ratable part of a full year, but may be based only on the service credited after the date participation started or restarted.
*DOL Reg. 2530.204-2(c)(3)*

v. and vi. A plan may defer the accrual of benefits on behalf of a participant until the participant has completed 2 continuous years of service not separated by a break. However, determine the rate of benefits that begin to accrue after the 2-year delay as if the delay had not occurred. For this purpose, credit an employee with a year of service for eligibility computation periods in which the employee completed 1000, 870, or 750 hours or more of service.
*411(b)(1)(E)*
*1.411(b)-1(d)(1)*

*DOL Regs. 2530.204-4*

---

**Line c.** Normal Retirement Benefit

i. The plan must provide a formula under which each participants actual accrued benefit can be determined in each plan year. For example, a benefit payable at normal retirement age, which is defined as 30 percent of a participant's average compensation for the highest 3 consecutive years and which accrues at the rate of 2 percent for each year of the first 15 years of participation, meets this requirement. In addition, a plan that provides a specified benefit not related to years of service, such as $100 a month payable for life regardless of service, would also satisfy this requirement if the benefit accrues at a rate satisfying one of the formulas. A benefit formula that simply provides a normal retirement benefit of 30 percent of average compensation would not be sufficient because it does not state a rate of accrual before normal retirement. Similarly, a benefit formula of a "participant's share of the auxiliary fund" would be insufficient unless the plan contained specific assumptions elsewhere that would be used to determine each participant's "share of the auxiliary fund" for any particular year.  Normally, the accrued benefit would fail one of the accrued benefit rules.

*411(a)(7)(A)(i)*
*411(b)(1)*

ii. The normal retirement benefit for purposes of accrual rules means the greater of the early retirement benefit under the plan, or the benefit beginning at normal retirement age.

The normal retirement benefit under a plan is determined without regard to medical or disability benefits not more than the qualified disability benefit. For this purpose, a qualified disability benefit is not more than the amount of the benefit that would be payable to the participant if he or she separated from service at normal retirement age.

In addition, the "normal retirement benefit" does not include the value of any joint and survivor annuity to the extent that it is more than the value of what the participant would be entitled to receive under a single life annuity. If a joint and survivor and a life annuity were to provide equal payments to identical participants, the cost of the joint and survivor to the employer would have to be greater to finance the additional cost of the survivor annuity. To the extent that the employer pays the extra cost, the survivor annuity is said to be "subsidized" by the employer.  The value of this subsidy is not included in the "normal retirement benefit."

Determine the early retirement benefit under a plan without regard to any qualified plan benefit provided for a participant which begins before benefits become payable to a participant under Title II of the Social Security Act. Qualified plan benefits are not more than social security benefits and terminate when the participant is eligible for social security benefits. They are designed to provide social security supplements for an eligible participant who retires before social security benefits begin. The supplements approximate all or a part of the retirement benefits that will be provided by social security. Social security supplemental payments cannot be more than the applicable social security benefit and must terminate when the social security benefits begin. A benefit, however, that is identified as a social security supplement but that is more than the social security benefit or continues beyond the point when social security begins could be a retirement benefit that must be considered when determining whether the accrual rules are met.

Ignore actuarial subsidies when determining whether the normal or early retirement benefit is greater. The following is an example of an actuarial subsidy:

Plan A provides for a benefit equal to 1 percent of high 5-year compensation for each year of service and a normal retirement age of 65. The plan also provides for a full benefit without any actuarial reduction for any employee at age 55 with 30 years of service. Although the actuarial value of the early retirement benefit could be more than the actuarial value of the benefit of the normal retirement age, the normal retirement benefit would not include the greater actuarial value of the early retirement benefit. Actuarial subsidies are ignored here.

When a plan is integrated with the social security benefits, the early retirement benefit may be adjusted for decreases under the plan formula caused by increases in social security benefits that occur on or after early retirement age.

In the case of a top-heavy plan the normal retirement benefit must reflect the minimum top-heavy benefit. Thus, the accrued benefit of a nonkey employee must be the greater of 1) the accrued benefit under the plan's accrual formula (determined under section 411(b) accrual rates adjusted to reflect top-heavy minimums) and 2) the top-heavy minimum accrued benefits.

*411(a)(9)*
*1.411(a)-7(c)*

---

**Line d.** Methods

Defined benefit plans are required to satisfy one of three accrued benefit rates that are designed to limit the "back-loading" permitted under the plan. Before ERISA, many plans provided for a faster rate of benefit accrual in the employee's later years. An employee might accrue a benefit equal to 1 percent of compensation for each year of service until age 55, and 2 percent a year after age 55. This technique is known as "backloading." Limits were put on back-loading; otherwise, a plan could provide the minimal accruals until an employee's last years of employment, at which point very large accruals could be provided.

In general, plans that meet the accrual rules are divided into two categories—plans that parallel the language of the statute and plans that otherwise satisfy the requirements though they do not contain specific statutory language.

The plan may state the method by which it is accruing benefits either by restating the language of the statue or by setting up its own method. In the first category. all that needs to be ascertained is whether the statutory concepts are faithfully reproduced and properly applied. In the second category, the plan's accrual formula does not use statutory language and the plan's method of accrual must be evaluated to determine if it comes within the parameters of the statute.

If a plan was in existence before ERISA, or gives past service credit for years before ERISA, special rules apply. Evaluate the plan's method of accrual against the standards for pre-ERISA accruals set forth in section 411(b)(1)(D).

i. 133⅓ Percent Test:

Under the 133⅓ percent rule, a plan amendment that increases the rate of accrual more than the otherwise permissible limits will be treated as having been in effect for all plan years. For purposes of this exception, the accrual rate for years before the amendment is considered to be the same rate as that made effective by the amendment. (See item B of this section for an example of this.)

The same rule applies when a plan is initially drafted to provide for periodic increases in the accrual rate that are more than the otherwise acceptable limit. The plan will satisfy the 133⅓ percent alternative if the increased accrual rate applies equally to any individual who is or could be a plan participant, for example, when all participants under the plan at any given time will be accruing benefits at the same rate. (See example in Item B of this section.)

A.  The benefit payable at normal retirement age must equal the accrued benefit at that time. For example, a plan with a benefit of 1 percent a year for service but 50 percent of compensation at age 65 would not meet this requirement.

B.  If a plan is to satisfy this alternative, the accrual rate for any plan year cannot be more than 133⅓ percent of the accrual rate for any prior plan year (on a non-cumulative basis); that is, each plan year can be tested against any single prior plan year whether or not consecutive, and the accrual rate for the year tested cannot be more than 133⅓ percent of the accrual rate for the prior plan year selected. In applying this test, the "normal retirement benefit" must be adjusted for ancillary benefits; and other factors, such as compensation, are considered to remain constant. See VII.c.ii. of these explanations.

The following example demonstrates this rule: A plan that provides an accrual rate of 1 percent of a participant's benefit for each of the first 5 years of participation, 1⅓ percent for each of the next 5 years, and 1⅞ percent for the remaining years, does not satisfy the 133⅓ percent test. Even though no single consecutive increase is more than a factor of 1⅓ of the preceding accrual rate, the rate for years after each participant's 10th year of participation (1⅞) is more than the rate for the first 5 years (1 percent) by more than the factor of 1⅓. However, a plan which provides that for the first 5 years of its existence all participants would accrue benefits at the rate of 1 percent a year, and during the next 5 years at 1⅓ percent, and 1⅞ percent for the remaining years, would satisfy the 133⅓ percent test. It would also be satisfied if the increased rates of accrual were caused by plan amendments that would apply equally to all participants at the same time regardless of years of participation. Under the last two examples, all participants under the plan at any given time accrue benefits at the same rate. In the first example, the plan fails to satisfy the test because the rate of accrual varied between participants depending on years of participation.

The plan is "back-loaded" because the more the years of participation, the higher the accrual rate, when compared to a participant with fewer years of participation.

*1.411(b)-1(b)(2)*

ii. Three Percent Test:

In most cases a unit benefit plan would not meet this alternative. For example, a plan with an entry age of 21 and normal retirement age of 65 that pays a unit benefit of 1 percent of compensation a year would not satisfy the 3 percent test. Under this plan a participant could achieve a benefit of 1 percent times 44 years of service or 44 percent total compensation by age 65. However, to satisfy the 3 percent test, this 44 percent benefit would have to accrue at a minimum rate of 3 percent of benefit a year or 1.32 percent compensation (3% x 44% comp.) a year Therefore, the requirement of the 3 percent test that the benefit accrues within 33⅓ years cannot be satisfied in a plan that, by its terms, contemplates a longer accrual period.

*1. 411(b)-1(b)(1)*

A.  The 3-percent rule cannot be applied to certain integrated plans. Under this rule, an employee must accrue full benefit after 33⅓ years. Since participants generally could enter a plan at age 21, they must accrue full benefit by age 54⅓. Under Rev. Rul. 71-446, 1971-2 C.B. 187, the flat benefit integration limit and the offset integration limit must be reduced if an employee may separate from service and receive a benefit before age 65. If the plan were fully integrated, the requirement of full accrual at 54⅓ for an employee entering at 25 could cause the plan to fail to integrate properly.

*Rev. Rul. 75-480, 1975-2 C.B. 131*

B.  To apply the 3 percent test to any plan that bases retirement benefit on compensation during any period, determine the normal retirement benefit on the basis of compensation earned during consecutive years of service, as specified in the plan, but not more than 10 years, during which compensation was the highest.

*1.411(b)-1(b)(1)(ii)(A)*

C.  To determine the plan's normal retirement benefit for purposes of applying the 3 percent test, figure the benefit based on the earliest possible entry age for any individual who is or could be a participant under the plan. If the plan does not state a minimum entry age, assume an entry age of 0 for this purpose.

*1.411(b)-1(b)(1)(i)*

D.  If the 3 percent test is being applied for a participant who will not accrue a normal retirement benefit by the plan's normal retirement age (due to insufficient years of service), consider years of participation after normal retirement age.

*1.411(b)-1(b)(1)(i)*

E.  If the answers to B., C., and D. are "Yes," the plan may satisfy this alternative if, for each year of participation each participant accrues not less than 3 percent of benefit to which he or she would be entitled if he or she participated in the plan for 33⅓ years and until age 65 (or any earlier retirement age under the plan). To apply the test, adjust the normal retirement benefit for ancillary benefits. Treat social security and other factors, such as compensation, as remaining constant for all future years. See VII.c.ii. of these explanations.

F.  Under the 3 percent test, a participant's accrued benefit at any time must equal or be more than 3 percent of the normal retirement benefit multiplied by the years of participation (not more than 33⅓). As previously noted, years of participation include years after the normal retirement age if the years are needed to accrue 100 percent of the participant's benefit. This can be expressed as follows:

Accrued benefit = 3% x Normal Retirement Benefit x Years of Participation

The following is a step by step approach to the use of this test:
(1) Figure the plan's normal retirement benefit, assuming the earliest possible entry age (if not specified by the plan, use 0).
(2) Figure the plan's greatest possible early retirement benefit in the same manner.
(3) Adjust (1) and (2) for ancillary benefits, if necessary. (See VII.c.ii. of instructions.)
(4) Multiply the larger of (1) or (2), as adjusted by 3 percent.
(5) The plan's accrued benefit must, in the aggregate, equal or be more than (4) times years of participation.

If the plan's accrued benefit is equal to or larger than (5) above, all other requirements are met, it passes this test.
*1.411(b)-1(b)*
iii. Fractional Rule:
A.  If the fractional rule is being applied to a benefit based on average compensation, figure the rate of compensation on the basis set forth in the plan but in no case apply the test to a benefit based on compensation for a period of more than 10 years of service immediately before the date the benefit is determined.

B. and C.  The fractional rule operates to prevent back-loading and ensures a proportional rate of benefit accrual. It compares the part of the final benefit payable to a participant at any time (for example, accrued benefit) to the normal retirement benefit. This is multiplied by a ratio of years of actual participation to years from entry to normal retirement age (NRA).

This relationship may be expressed as follows:

$$\text{Accrued Benefit} = \text{Normal Retirement} \times \frac{\text{Actual Years of Participation}}{\text{Years of Service from Entry to NRA}}$$

If the plan accrues benefits at the same rate for all years, this part of the test is satisfied. If the left side of the formula is more, the plan is "front-loaded" with benefits accruing more rapidly in early years. This is acceptable and the test is satisfied.

When accrual rates vary between years, test the plan to be sure it meets this standard in "critical years," that is, the last year before an increase in the accrual rate. For example, a plan may provide a benefit of 2 percent compensation for the first 5 years of participation. 1 percent for the next 5, and 1½ percent for the remaining years. The plan should be tested for compliance with the fractional rule in the last year when the accrual rate is lowest (year 10). This is the "critical year." In applying the test adjust the normal retirement benefit for ancillary benefits. Treat social security and other factors, such as compensation, as remaining constant for all future years. See VII.c.ii. of these explanations.

The following is an example of the mathematical application of this test using the facts in the example in the paragraph above:

| Year of Participation | Percent of Compensation |
|---|---|
| 1-5 | 2 |
| 5-10 | 1 |
| 10-NRA | 1½ |

Normal retirement age is 65.
Compensation is average over the last 10 years before the date that a benefit is determined.
Entry age is 25.

The "critical year" is 10. The benefit in year 10 for a participant who entered at age 25 is 15 percent of compensation. The maximum possible benefit is 60 percent of compensation. The participant has 10 years of service out of a possible 40. The formula is as follows:

15% = 60% x 10÷40
15% = 15%
The fractional test is satisfied.

When an individual accrues a benefit in an accrual computation period that begins after an accrual computation period in which the participant was not credited with a full year of participation, the participant must accrue the fractional rule benefit which is attributable to the new continuous period of participation at least ratably over the new period. One method of doing this is to change the denominator of the fraction in the accrual computation period following the accrual computation period in which less than a full year is credited, to equal the numerator plus the years remaining to normal retirement age.
*Rev. Rul. 81-10, 1981-1 C.B. 172*
*1.411(b)-1(c)*

---

**Line e.** The top-heavy rules require that the accrued benefits of a top-heavy plan may not be less at any point in time than the minimum top-heavy benefit. Nothing in the top-heavy rules permits a plan to fail to satisfy the accrued benefit rules. Consider for example a plan that provides ½ of 1% per year of service that becomes top-heavy in year X after participant A has 6 years of service at age 55. The plan provides that the accrued benefit shall not be less than the top-heavy minimum. The accrual under the plan would be as follows:

| Formula Year | (1) Accrued Benefit Under Formula | (2) Min Top Heavy Acrual | (3) Greater of (1) & (2) | (4) Increases in Accrual |
|---|---|---|---|---|
| X | 3% | 0 | 3 | – |
| X+1 | 3½ | 2 | 3½ | ½ |
| X+2 | 4 | 4 | 4 | ½ |
| X+3 | 4½ | 6 | 6 | 2 |

This plan would fail to satisfy the 133⅓% rule. It could also be shown to fail to satisfy the other accrued benefit rules.

There are many ways in which this problem could be resolved. First the plan could (but is not required to) credit 2% for each top-heavy year as additional accruals until the 20% maximum is reached. This would satisfy both the top-heavy minimum and the accrued benefit rules by providing more generous benefits. Second, the plan could provide an

accelerated accrual less generous than the first alternative which would satisfy both the top-heavy minimum and the accrued benefit rules. This result may be achieved by providing future accruals not less than the greater of 1) the required top- heavy minimum or 2) a ratable accrual from the current accrued benefit to the projected benefit at normal retirement age where such projected benefit includes the top-heavy minimums. Other methods may also be acceptable.

**Line f.** Allocation of Accrued Benefit Between Employer and Employee Contributions.

A plan's vesting schedule determines a participant's nonforfeitable interest in his or her accrued benefit from employer contributions at a given time. To determine a participant's accrued benefit that resulted from employer contributions, it is necessary to distinguish that amount from any benefit that accrues from the employee's contributions (which are always fully vested). The regulations prescribe the methods to use to determine the benefit from the employee contribution. When a plan allows voluntary employee contributions, keep separate accounts for the funds.

i. The plan must keep separate accounts for voluntary employee contributions. The employee's accrued benefit from his or her voluntary contributions is simply the employee's account balance, adjusted for experience. If there are no voluntary employee contributions, check N/A.
*411(b)(2), (c)(2) & (d)(5)*
*1.411(c)-1(a)*

ii., iii. and iv. The accrued benefit that resulted from employer contributions on any date is the amount that is more than the total accrued benefit of the employee, less the accrued benefit from the employee's mandatory contributions.

A mandatory contribution is an amount contributed to the plan by an employee, and is required as a condition of employment, participation under the plan, or to obtain benefits (or additional benefits) under the plan resulting from employer contributions. This includes amounts used to provide ancillary benefits (such as death benefits) and that otherwise satisfy the above definition of mandatory.

The accrued benefit resulting from mandatory employee contributions as of any date is the amount equal to the employee's accumulated contributions expressed as an annual benefit commencing at normal retirement age, using an interest rate that would be used under the plan under section 417(e)(3) (as of that determination date). The employee's accumulated contributions is the total of the mandatory contributions made by the employee plus interest thereon computed as follows.

For years prior to the first plan year that section 411 applied to the plan (i.e., pre-ERISA), add interest, if any, at the rate provided by the plan. For plan years to which section 411 applies but before the 1988 plan year, compound interest at the rate of 5% annually. From the beginning of the 1988 plan year up to the determination date, compound interest annually using the rate that is 120% of the Federal mid-term rate as in effect under section 1274 for the first month of the plan year. For the period beginning with the determination date and ending on the date the employee attains normal retirement age, compound interest annually using the interest rate that would be used under the plan under section 417(e)(3) (as of the determination date).
*411(c)(2)*
*1.411(c)-1*

## VIII. Amendments Affecting Accrued Benefits and Vesting

This section applies to plan amendments that affect, either directly or indirectly, the accrued benefit or the vesting schedule under the plan. Code sections 411(a)(10) and 411(d)(6) generally prohibit any plan amendment that would decrease the accrued benefit of any participant or the nonforfeitable percentage applicable to any participant.

**Line a.** If the plan's vesting schedule is not being changed, check N/A.

If the vesting schedule is being amended, for every employee who is a participant on the amendment adoption date or the amendment effective date, whichever is later, the nonforfeitable percentage (determined as of that date) of the participant's right to the employer derived accrued benefit may not be less than the participant's percentage figured under the plan without regard to the amendment. For example, if a plan is being amended to replace a 3 to 7 year vesting schedule with 5 year cliff vesting, a participant who has three years of service at the time of the amendment and elects to go under the new schedule must be 20% vested in the amount accrued in the fourth year (as well as in amounts accrued in the first three years).
*1.411(a)-8(a)*

**Line b.** If the plan's vesting schedule is not being changed, or if the schedule is being changed but the nonforfeitable percentage under the amended schedule cannot, at any time, be less than the percentage determined under the old schedule, check N/A.

Although each participant's nonforfeitable percentage, as of the amendment's adoption or effective date, may not be less under the new schedule than it would have been under the old schedule (see a., above), the new schedule may provide for lower nonforfeitable percentage in future years. For example, if a plan replaced a 5 year vesting schedule with a 3 to 7 year vesting schedule, a participant with four years of service on the date of the change could have 40 percent vesting after the change which was more than 0 percent vesting before the change. However, when the participant earned a fifth year of service, the participant's vesting would only be 60 percent under the new schedule whereas it would have been 100 percent under the old schedule.

If this reduction in future vesting can occur, the plan must provide that each participant who has completed 3 years of service with the employer and whose nonforfeitable percentage is determined under the new vesting schedule

may elect to have the nonforfeitable percentage determined under the old vesting schedule.

The plan may limit the period for this election, and the election may be irrevocable.

*1.411(a)-8T(b)*

---

**Lines c., d., e., f. and g.** If the IRS has approved the amendment as being retroactive, and it may decrease accrued benefits under Code section 412(c)(8), and ERISA section 302(c)(8), check N/A.

No other plan amendment may decrease, either directly or indirectly, the accrued benefit of any plan participant. Plan provisions that may indirectly decrease a participant's accrued benefit include, but are not limited to, those relating to years of service and breaks in service for benefit accruals, and to actuarial factors for determining optional or early retirement benefits.

Plan amendments that include the new applicable interest and mortality assumptions under RPA '94 for purposes of section 417(e)(3) will not be treated as cutting back any participant's accrued benefit in violation of section 411(d)(6) if the following conditions are satisfied: (1) the amendment replaces the PBGC interest rate (or an interest rate or rates based on the PBGC interest rate) and (2) after the amendment is effective, the present value of a participant's benefit under the plan cannot be less than the amount calculated using the new applicable interest and mortality assumptions.

For plan amendments that provide for the statutory interest rate determination date under section 417(e)(3) or for the prior determination date or up to two months earlier, the applicable interest rate, for purposes of the preceding sentence, is determined as follows. For plan amendments providing for the statutory interest rate determination date, the applicable interest rate is the interest rate for the first full calendar month preceding the calendar month that contains the annuity starting date. For plan amendments providing for the prior determination date or up to two months earlier, the applicable interest rate is the rate for the calendar month that contains the date as of which the PBGC interest rate was determined immediately before the amendment, or for one of the two calendar months immediately preceding that month.

Plan amendments for the new applicable interest and mortality assumptions that provide for interest rate determination dates other than those described above also will not be treated as violating section 411(d)(6) if the amendment replaces the PBGC rate; after the amendment is effective, the present value of a participant's benefit under the plan cannot be less than the amount calculated using the new applicable interest and mortality assumptions; and the plan amendment satisfies either the conditions described below for section 411(d)(6) relief for a change in the time for determining the interest rate or a special early transition interest rate rule (also described below).

Plan amendments that directly or indirectly result in a change in the time for determining the applicable interest rate will not be treated as reducing accrued benefits in violation of section 411(d)(6) if the plan language provides that any distribution for which the annuity starting date occurs in the one year period commencing at the time the amendment is adopted must use the interest rate as provided under the terms of the plan after the effective date of the amendment, determined at either the date for determining the interest rate before the amendment or the date for determining the interest rate after the amendment, whichever is the larger distribution. If the amendment is retroactively effective, the period in the preceding sentence begins with the effective date and ends one year after the adoption date.

A plan amendment satisfies the special early transition interest rate rule if any distribution for which the annuity starting date occurs in the one year period commencing at the time the plan amendment is effective is determined using whichever of the following two interest rates results in the larger distribution: (1) the rate under the terms of the plan after the effective date of the amendment, but determined at a date that is one or two months (as specified in the plan) before the date for determining the interest rate under the plan before the amendment; or (2) the rate under the terms of the plan after the effective date of the amendment, determined at the date for determining the interest rate after the amendment.

A plan amendment that replaces an interest rate other than the PBGC interest rate with the new applicable interest rate and mortality assumptions may violate section 411(d)(6). Thus, the accrued benefit determined using the non-PBGC interest rate and the associated mortality table is protected under section 411(d)(6). For the purposes of the preceding rules, a PBGC interest rate includes a rate based on the PBGC interest rate, a specific percentage of the PBGC interest rate, the PBGC interest rate minus a specified number of basis points, or an average of such interest rates over a specified period.

*1.417(e)-1(d)(10)*

Any changes in the method of determining early retirement or optional retirement benefits are subject to the protection of the anti-cutback provisions. Such changes may take the form of providing actuarial reduction where early retirement benefits were either previously not actuarially reduced or reduced by nonactuarial reduction factors, by changing the method of determining actuarial equivalence, or any other change which may reduce such benefits. Benefit changes are not precluded. The plan must provide, however, that the benefit available at any future date will not be less (with respect to an individual who either before or after the amendment satisfies the preamendment requirements for such benefit) than the benefit accrued as of the date of the amendment.

"Section 411(d)(6) protected benefits" are benefits described in section 411(d)(6)(a), early retirement benefits and retirement-type subsidies, and optional forms of benefit. A plan amendment that has the effect of eliminating or reducing such benefits (other than to the extent provided in regulations), with respect to benefits accrued prior to the amendment, is treated as an impermissible cutback of section 411(d)(6) protected benefits. The protection of section 411(d)(6) also applies in the case of plan mergers, transfers, and transactions amending or having the effect of amending a plan to transfer plan benefits.

*1.411(d)-4 Q&As 1(a) & 2(a)(3)*

An optional form of benefit is a distribution form with respect to an employee's benefit that is available under the plan and is identical with respect to all features relating to the distribution form, including the payment schedule, timing, commencement, medium of distribution, the portion of the benefit to which such distribution features apply and the election rights with respect to such optional forms. Thus, to the extent there are any differences in such features, the plan provides separate optional forms of benefit. For example, a joint and 50 percent survivor annuity and a joint and 75 percent survivor annuity are separate optional forms, regardless of whether they are actuarially equivalent. Likewise, a distribution that is available in cash or in employer securities consists of two separate optional forms of benefit. A benefit payable at different times (such as early or late retirement), or upon the occurrence of different events or the satisfaction of different conditions, consists of separate optional forms of benefit. A pattern of repeated plan amendments providing for substantially similar benefits in similar situations for substantially consecutive, limited periods of time will be treated as creating a protected optional form to the extent necessary to carry out the purposes of section 411(d)(6). For example, a pattern of repeated plan amendments providing that a particular optional form of benefit is available to certain named employees for a limited period of time may result in that optional form being treated as provided under the terms of the plan to all covered employees without regard to the limited period of time and the limited group of named employees. However, patterns of repeated plan amendments adopted and effective before July 11, 1988 are to be disregarded in determining whether such amendments have created an ongoing optional form of benefit under the plan.

1.411(d)-4 Q&A 1(b)

1.411(d)-4 Q&A 1(c)

The following benefits are among those not subject to the protection of section 411(d)(6): ancillary life insurance protection, social security supplements described in section 411(a)(9), the availability of loans (other than the distribution of an employee's accrued benefit upon default under a loan), the right to make employee contributions or elective deferrals, and the right to direct investments.

1.411(d)-4 Q&A 1(d)

The defined benefit feature of an employee's benefit under a defined benefit plan and the separate account feature of a defined contribution plan are section 411(d)(6) protected benefits. Eliminating the defined benefit feature or the separate account feature benefit of an employee's benefit by the transfer of benefits between defined benefit and defined contribution plans violates section 411(d)(6) unless the transfer satisfies the requirements described below.

For this purpose, a transfer includes any transaction amending or having the effect of amending a plan or plans to transfer benefits. For example, if a defined benefit plan provides that a participant who has attained normal retirement age may elect to have the single sum value of his or her benefit maintained in a segregated account which is invested separately from the rest of the trust and credited with its own income (or loss), the "transfer" of the participant's benefit to the segregated account will violate section 411(d)(6) unless the requirements described below are met.

If the following requirements are satisfied, a transfer of a participant's benefit between qualified plans that eliminates or reduces section 411(d)(6) protected benefits will not violate section 411(d)(6):

1. The transfer must meet the requirements of section 414(l), relating to the transfer of assets and liabilities.
2. The transferor plan must provide that the transfer is conditioned upon a voluntary, fully informed election by the participant to transfer his or her benefit to another plan maintained by the employer.
3. If the transferor plan is terminating, it must satisfy the requirements of section 401(a)(2) (regarding the prohibition against reversion prior to the satisfaction of all liabilities) and section 411(d)(6).
4. If the transferor plan is not terminating, the participant must be given the option of leaving his or her benefit in the transferor plan to the extent the transferor plan would otherwise be prohibited from immediately distributing the benefit without the required consent(s)).
5. If the transferor plan is subject to sections 401(a)(11) and 417 (relating to survivor benefit requirements), the applicable spousal consent requirements must be met with respect to the transfer.
6. The section 417 notice requirements that pertain to a waiver of the qualified joint and survivor annuity form must be met with respect to the participant and spousal transfer election.
7. The participant whose benefits are transferred must be eligible to receive an immediate distribution from the transferor plan under terms of the plan which satisfy section 401(a). This would generally prohibit the transfer of a participant's benefit from an employer's ongoing pension plan to its profit-sharing plan prior to normal retirement age while the participant is still employed by the employer.
8. The amount of the benefit transferred must equal the entire nonforfeitable accrued benefit under the plan of the participant whose benefit is being transferred. This amount must at least equal the greater of any single sum distribution provided under the transferor plan for which the participant is eligible or the present value of the participant's accrued benefit payable at normal retirement age. This amount must be calculated by using an interest rate that is subject to the restrictions of section 417(e) and may not exceed the limitations of section 415.
9. The participant must be fully vested in the transferred benefit in the transferee plan.
10. If the transfer is from a defined contribution plan to a defined benefit plan, the defined benefit plan must provide each participant whose benefits have been transferred a minimum benefit equal to the benefit derived solely on the basis of the amount transferred, expressed as an annuity payable at normal retirement age.

A transfer that is made pursuant to these elective transfer rules is treated as a distribution for purposes of section 401(a) (other than the minimum distribution requirements of

15

section 401(a)(9). Thus, a transfer option is a protected optional form of benefit and is also subject to the nondiscrimination requirements of section 401(a)(4). (See Worksheet No. 5, Coverage and Discrimination.) Also, the transfer is subject to the cash-out rules and the early termination requirements of section 411(d)(2).

The foregoing elective transfer rules are effective beginning August 10, 1988. Prior to this date, a transfer of benefits from a defined benefit to a defined contribution plan (or vice versa) that does not satisfy the foregoing elective transfer rules will not violate section 411(d)(6) because of the elimination of protected benefits if the following requirements are met:

1. The transferred benefits must have been distributable under the plan or could have been distributable under section 401(a).
2. The transferee plan provides, or is amended to provide, all section 411(d)(6) protected benefits provided under the transferor plan with respect to the benefit transferred.
3. The transferred benefits are treated as held under a transferee plan for purposes of the requirements of section 401(a)(11) and 417. (See Worksheet No. 3, Joint and Survivor Requirements.)
4. The transferred amounts meet the requirements of section 414(l).
5. The transferred benefits do not exceed the limitations of section 415.

Amendments that may be required to comply with this special rule for pre-August 10, 1988 transfers may be deferred until the time the plan is required to be amended for TRA '86, provided the amendments are retroactive and there is compliance in operation.

The regulations provide that under certain circumstances protected benefits may be eliminated or reduced. These circumstances include the situation where such an elimination or reduction is necessary to retain qualified status because of a change in law, provided the plan is timely amended to comply with the change in law and section 7805(b) relief is granted. Also, pursuant to transition rules in regulations sections 1.401(a)-4 and 1.411(d)-4, certain protected benefits may be eliminated under certain circumstances in order to comply with those regulations. If a plan has more than two joint and survivor annuity options which are actuarially equivalent and otherwise identical (e.g., joint and 50 percent, 75 percent, and 100 percent), it may generally eliminate the options that fall between the lowest and highest survivor benefit percentages (i.e., in this case, the joint and 75 percent survivor annuity). A plan may also eliminate the right to a future distribution in the form of property (other than cash) if on plan termination a participant may elect to receive the optional form of benefit in the specified property. A profit-sharing plan that does not provide for an annuity option and that is terminated may be amended to provide for the distribution of a participant's benefit upon termination in a single sum without the participant's consent provided the employer does not maintain another defined contribution plan (other than an ESOP). A plan may be amended to add an involuntary cash-out provision or to change the threshold amount for an involuntary cash-out. A plan may also be amended to eliminate or change a provision for loans, to eliminate provisions permitting transfers of benefits between plans of the employer, and to make certain de minimis changes in the timing of benefits. There are also special exceptions for ESOPs.

*1.401(a)-4 Q&A 5*
*1.411(d)-4 Q&As 2, 3 & 8*

In general, a plan may not be amended to add or modify conditions with respect to section 411(d)(6) protected benefits if the amendment would result in any further restriction. However, objective conditions may be added to benefits that have not yet accrued and may also be added to accrued protected benefits if permitted under the transition rules or the permissible benefit cutback provisions of the regulations.

*1.411(d)-4 Q&A 7*

Section 411(d)(6) provides no exception for plan termination.

*411(d)(6)*
*1.401-1(b)(1)(i)*
*1.401(a)(4), 1.411(d)-4*
*1.411(d)-3(b)*
*Rev. Rul. 81-12, 1981-1 C.B. 228*
*Rev. Rul. 85-6, 1985-1 C.B. 494*
*Notice 87-20, 1987-1 C.B. 456*

Pursuant to section 1.411(d)-4, Q&A 10 of the proposed income tax regulations, an amendment to eliminate an age 70½ distribution option may apply only to benefits with respect to employees who attain age 70½ in or after a calendar year, specified in the amendment, that begins after the later of December 31, 1998, or the adoption date of the amendment. An age 70½ distribution option is an optional form of benefit under which benefits payable in a particular distribution form commence at a time during the period that begins on or after January 1 of the calendar year in which an employee attains age 70½ and ends April 1 of the immediately following calendar year.

A plan using this relief generally may not preclude an employee who retires after the calendar year in which the employee attains age 70½ from receiving an optional form of benefit that would have been available if the employee had retired in the calendar year in which the employee attained age 70½. The amendment must be adopted no later than the last day of the remedial amendment period. **Note**: The guidance in the above proposed regulations is only effective after the date final regulations are adopted and will only apply to amendments adopted and effective after that date.

*Proposed Regulation 1.411(d)-4*

### IX. Miscellaneous

**Line a.** A defined benefit plan will not be treated as meeting the minimum vesting standards of section 411 (and, therefore, will not be considered a qualified plan under section 401(a)) if under the plan an employee's benefit accrual is ceased, or the rate of accrual is decreased, because of the attainment of any age. This rule is effective for plan years beginning on or after January 1, 1988 with respect to employees who have an hour of service in such years. A plan will violate this requirement if optional forms of

benefit, ancillary benefits, or other rights or features that are provided with respect to benefits attributable to credited service prior to a certain age are not provided with respect to benefits attributable to credited service after that age. This requirement will also be violated if, because of the participant's attainment of a certain age, his or her compensation after such age is not taken into account in determining accrual of benefits.

Discontinuance or reduction of accruals or rates of accrual and differences in rates of accrual between participants will not violate this requirement if the discontinuance, reduction or difference is not based directly, or indirectly, on the attainment of any age. For example, where the accrual of benefits under the fractional rule produces different rates of accrual among participants depending on the number of years of service each participant would have between commencement of participation and normal retirement age, this difference in rates of accrual does not violate this rule.

A plan will not be treated as failing the minimum vesting standards merely because the plan contains a limitation on the maximum number of years of service or participation that are taken into account in determining benefits under the plan, or merely because the plan contains a limitation on the amount of benefits a participant will receive under the plan, provided any limitation is not based directly or indirectly on the attainment of any age. However, if a plan contains a limit on the number of years of credited service that are taken into account, years of service that have been disregarded in determining accruals for pre-1988 plan years because of the attainment of any age may not be applied towards this limit. Furthermore, for 1988 and later plan year accruals, a defined benefit plan may not disregard, because of the participant's attainment of any age, years of service completed or compensation earned after such age, including years of service and compensation before the 1988 plan year. This does not, however, require the plan to take into account for accrual years of service before the employee becomes a participant or years of service completed before the 1988 plan year in which the participant was ineligible to make employee contributions.

Limitations that are not determinable except by reference to age are considered based directly on age. An example of such a limitation would be a provision which would disregard service for benefit accrual after the participant becomes eligible for social security benefits. Whether a limitation is based indirectly on age is a question of facts and circumstances.

For purposes of determining whether a plan satisfies the prohibition against discontinuing or reducing accruals on account of age, the following are not taken into account in determining the rate of accrual: the subsidized portion of an early retirement benefit, social security supplements, and qualified disability benefits.

The following example demonstrates this rule: Employer X maintains a calendar year defined benefit plan that provides a normal retirement benefit of 1% of a participant's average annual compensation for the three consecutive years of highest compensation, multiplied by the participant's years of credited service under the plan. Normal retirement age is age 65. The terms of the plan, prior to the 1988 plan year, provide that service and compensation earned after normal retirement age are not taken into account in determining a participant's normal retirement benefit. Participant A turns 65 in December 1985 and continues in employment until February 1988. As of December 31, 1985, A had 35 years of credited service under the plan and during 1986 and 1987, A completed an additional two years of service. Assuming the plan does not reduce the accrual otherwise required by section 411(b)(1)(H) in one of the permitted manners described below, upon retirement in February 1988, A must be entitled to a normal retirement benefit of 37% of the average annual compensation for his three consecutive years of highest compensation, including compensation earned after 1985.

Continued accruals are not required where they would violate section 415 or cause the plan to fail to meet the integration requirements or to be discriminatory.

---

**Line b.** A plan may provide that, in the case of a participant who has attained normal retirement age as of the end of a plan year, the benefit accrual that would otherwise be required under the foregoing rules for the plan year is reduced. First, the plan may provide that the otherwise required accrual is reduced by the actuarial equivalent of total plan benefit distributions made to the participant by the close of the plan year. The following rules apply in making this reduction.

1. "Total plan benefit distributions" are limited to distributions made during plan years for which the plan could provide for the suspension of the participant's benefit in accordance with section 203(a)(3)(B) of ERISA and DOL regulations.
2. Distributions are disregarded to the extent the total amount of distributions made to the participant by the close of the plan year exceeds the total amount of the distributions the participant would have received by the close of the plan year if the distributions had been made in the plan's normal form of benefit. For example, if the participant receives his or her benefit in a form which provides greater monthly payments than the normal form, only the amount the participant would have received in the normal form are taken into account, (e.g., if the normal form is a life and 10 year certain annuity, a participant will receive greater monthly benefits if he or she elects to receive the benefit in the optional form of a straight life annuity).
3. The reduction for any plan year cannot reduce the otherwise required accrual below zero. In other words, this reduction can never result in reducing the participant's normal retirement benefit to below what it was at the close of the prior plan year.

Thus, if the plan provides for this reduction, it must accrue a benefit for the plan year in accordance with the plan's benefit formula, taking into account all years of credited service, reduced (but not below the normal retirement benefit for the prior plan year) by the annual benefit which is the actuarial equivalent of total benefit distributions (determined in accordance with 1. and 2., above) made by the close of the plan year. If such actuarially equivalent benefit is greater than the total accruals otherwise required under section 411(b)(1)(H)(i) for the years in which distributions that are

taken into account were made, then no accrual is needed for that plan year to satisfy section 411(b)(1)(H)(i). Therefore, under this reduction provision, the plan must determine the accrual required for a given plan year by comparing actuarial equivalent of the total of distributions with the accruals required for a period consisting of the current and prior plan years.

Under the second type of permitted reduction the accrual that is otherwise required for a plan year is reduced (again, not below zero) by the amount of any actuarial adjustment under the plan (including the adjustment described in d. and e., below), in the benefit payable for the plan year because of a delay in payment of benefit after normal retirement age. The following rules apply in making this reduction:

1. An actuarial adjustment is taken into account only to the extent it is made to the greater of (a) the retirement benefit as of the close of the prior year, including any actuarial adjustment made for the prior plan year, and (b) the normal retirement benefit as of the close of the prior year, determined by including benefit accruals required under section 411(b)(1)(H)(i).
2. If the retirement benefit, as actuarially adjusted for the plan year, exceeds the normal retirement benefit determined by including the accruals required for the plan year under section 411(b)(1)(H)(i), the plan must provide the participant the greater benefit.

Thus, if a plan provides for this reduction, the benefit to which the participant is entitled at the close of a plan year is the greater of the normal retirement benefit plus the additional accruals required by section 411(b)(1)(H)(i) and the benefit the participant was entitled to receive at the end of the prior year under this rule, actuarially adjusted. As an example, assume a participant attains normal retirement age at the close of year 1. At the end of year 2, the participant must be entitled to receive the greater of the normal retirement at normal retirement age, actuarially increased, or the normal retirement benefit determined by taking into account the additional accrual under section 411(b)(1)(H)(i) for year 2. If the normal retirement benefit with the additional accrual is greater, then at the end of year 3, the participant must be entitled to received the greater of this amount, actuarially increased, or the normal retirement benefit determined by taking into account the additional accruals under section 411(b)(1)(H)(i) for years 2 and 3.

There is a special rule regarding this reduction that applies if the plan suspends the participant's benefit payments in accordance with section 203(a)(3)(B) of ERISA and DOL regulations and does not provide for an actuarial adjustment to the normal retirement benefit on account of delayed payment. Then, the participant must be entitled to receive a retirement benefit at the close of the plan year that is determined by including the accruals required by section 411(b)(1)(H)(i) without regard to any offset for actuarial adjustment.

A plan is not precluded from applying the first method of reduction in certain years and the second method in other years.

*Proposed regs. 1.411(b)-2*

---

**Line c.** A plan will violate section 401(a), including section 401(a)(25) and section 411(d)(6), if it may directly or indirectly deny a section 411(d)(6) protected benefit through the discretion of the employer or third parties, such as plan administrators. (See section VIII for the definition of "section 411(d)(6) protected benefits.") This does not preclude a plan from conditioning the availability of benefits on stated nondiscriminatory, objective standards (including, e.g., a covenant not to compete) or prevent the employer from exercising administrative discretion in determining whether such standards have been met. A plan condition (such as the plan's level of funding) that is within the employer's discretion is not considered an objective standard.

*1.411(d)-4 Q&A 4, 5 & 6*

The Small Business Job Protection Act of 1996 (SBJPA) amended section 401(a)(9) to provide that the "required beginning date" for distributions to commence to an employee from a qualified plan is the later of the April 1 of the calendar year after the calendar year in which the employee attained age 70½ or retired. This change is effective for years after 1996. Prior to the SBJPA, the "required beginning date" was the April 1 of the calendar year after the calendar year in which the employee attained age 70½. The SBJPA change is not applicable to 5 percent owners. (For further details, see Explanation #9).

In connection with this change, section 401(a)(9) was amended to provide an employee's accrued benefit in a defined benefit plan must be actuarially increased to take into account the period after age 70½ in which the employee was not receiving any benefits under the plan. This actuarial increase does not apply to governmental or church plans. Accordingly, in the case of an employee (other than a 5% owner) who retires in a calendar year after the calendar year in which the employee attains age 70½, the actuarial increase in the employee's accrued benefit under a defined benefit plan must begin on the April 1 following the calendar year in which the employee attains age 70½ (January 1, 1997 in the case of an employee who attained age 70½ prior to 1996). The actuarial increase ending date is the date on which benefits commence after retirement in an amount sufficient to satisfy section 401(a)(9) This actuarial increase does not apply if a plan is retaining a requirement that minimum distributions under a plan to an employee must commence no later than April 1 of the calendar year following the calendar year in which the employee attains age 70½, in an amount sufficient to satisfy section 401(a)(9) as in effect prior to the SBJPA.

The amount of actuarial increase payable as of the end of the period for actuarial increases must be no less than the actuarial equivalent of the employee's retirement benefits that would have been payable as of the date the actuarial increase must commence plus the actuarial equivalent of additional benefits accrued after that date, reduced by the actuarial equivalent of any distributions made after that date The actuarial increase is generally the same as and not in addition to the actuarial increase required for that same period under section 411 to reflect any delay in payments after normal retirement, except that the actuarial increase required under section 401(a)(9)(C) must be provided even during the period during which an employee is in ERISA section 203(a)(3)(B) service.

*401(a)(9)(C)(iii)*
*Notice 97-75, Q&A 41*