**EXHIBIT 2**

RICHARD HONAKER
Honaker Law Offices, LC
P.O. Box 366
Rock Springs, WY 82902-0366
Telephone: (307) 362-5800
Facsimile: (307) 362-5890
E-mail: honakerlaw@wyoming.com

STEPHEN R. BRUCE
Attorney at Law
805 15th St., NW, Suite 210
Washington, DC 20005-2271
Telephone: (202) 371-8013
Facsimile: (202) 371-0121
E-mail: stephen.bruce@prodigy.net

ATTORNEYS FOR PLAINTIFFS

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 1 5 2006

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WADE E. JENSEN, and<br>DONALD D. GOFF, individually and on<br>behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>SOLVAY CHEMICALS, INC.,<br>SOLVAY AMERICA, INC., and<br>SOLVAY AMERICA COMPANIES<br>PENSION PLAN,<br><br>                  Defendants. | **06 C V   273**<br><br>Civil Action No. 06CV_____<br><br><br><br>**CLASS ACTION COMPLAINT** |

This is a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and a representative action under the Age Discrimination in Employment Act of 1964, as amended (the "ADEA"), 29 U.S.C. § 621 *et seq.* Defendants have violated the ERISA and the ADEA by amending a defined benefit pension plan, effective January 1, 2005, in a manner that freezes the retirement benefits of older, longer-service employees and offers lower rates of benefit accrual at older ages. Defendants have also violated ERISA by failing to provide adequate notice of the changes.

## THE PARTIES

1.      Plaintiff Wade E. Jensen has worked for Solvay Chemicals, Inc. since September 1991 and is currently employed.  Mr. Jensen is a participant in the Solvay America Companies Pension Plan.  At all relevant times, Plaintiff Wade E. Jensen was, and is, a citizen of the State of Wyoming, residing in Green River, Wyoming.

2.      Plaintiff Donald D. Goff was an employee of Solvay Chemicals, Inc. for over 23 years until he was discharged on September 15, 2005. Mr. Goff is a participant in the Solvay America Companies Pension Plan. At all relevant times, Plaintiff Donald D. Goff was, and is, a citizen of the State of Wyoming, residing in Green River, Wyoming.

3.      Defendant Solvay Chemicals, Inc. is incorporated in the State of Delaware. Solvay Chemicals, Inc. is a wholly-owned subsidiary of Solvay America, Inc. Solvay Chemicals is

qualified to do business and conducts business in, among other states, Wyoming. Defendant

Solvay Chemicals, Inc. operates five production facilities in the United States, including a plant

and related mining operations near Green River, Wyoming. The Green River plant and mine

operation specializes in the production of soda ash from trona, a naturally-occurring mineral.

Soda ash is used primarily in glass manufacturing.

4.      On information and belief, Defendant Solvay America, Inc. is the holding

company for the North American operations of the Solvay Group, an international chemical and

pharmaceutical group headquartered in Belgium. Solvay America, Inc. is incorporated under the

laws of the State of Delaware. Solvay America is the holding company for a number of other

companies operating in the U.S., in addition to Solvay Chemicals, Inc., in the areas of chemicals,

plastics and pharmaceuticals (see http://www.solvayamerica.com).

5.      Defendant Solvay Chemicals, Inc. and the other subsidiaries of Solvay America

are "employers" within the meaning of the Age Discrimination in Employment Act of 1967, as

amended, and the Employee Retirement Income Security Act of 1974, as amended. Defendant

Solvay Chemicals, Inc. and the other subsidiaries of Solvay America that participate in the

Solvay America Companies Pension Plan are also "plan sponsors" within the meaning of ERISA

§ 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B).

6.      In addition to being a "plan sponsor" for the Solvay America Companies Pension

Plan, Defendant Solvay America functions as the "Plan administrator" for the Pension Plan

within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A), and is a "fiduciary" for the Pension Plan's participants and beneficiaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

7.    Defendant Solvay America Companies Pension Plan (hereafter the "Solvay America Pension Plan" or the "Pension Plan") is an employee benefit plan, as defined at § 3(3) of ERISA, 29 U.S.C. § 1002(3). More particularly, the Pension Plan is an "employee pension benefit plan", as defined at ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The administrative offices of the Defendant Pension Plan are located in Houston, Texas.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction over the subject matter of this action pursuant to the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. § 1132(e)(1), the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 626(c)(1), and 28 U.S.C. § 1331.

9.    Venue is proper in this Court under 29 U.S.C. § 1132(e) in that the Pension Plan may be found in the District of Wyoming because the Plaintiffs and co-employees worked and earned pension benefits within this District.

## CLASS ACTION ALLEGATIONS

10. Plaintiffs bring this action on behalf of all other similarly-situated employees who have participated in the Solvay America Companies Pension Plan. The proposed class is defined as any and all persons who:

      (a) Are current or former employees of subsidiaries of Solvay America, Inc.,

      (b) Participated in the Solvay America Companies Pension Plan on or after the January 1, 2005 date on which the Pension Plan was converted to a cash balance design, and

      (c) Are currently above age 40, or will be above age 40 by the date of the judgment.

11. On information and belief, the members of the proposed class reside throughout the United States and number at least 1,000 making joinder impracticable.

12. The common questions of fact and law set out below affect the rights of the members of the class.

13. The claims of the named class representatives are typical of the claims of the members of the class. The named class representatives will fairly and adequately protect the interests of the class. Plaintiffs' counsel are experienced in class action litigation involving pension plans, including cash balance plans.

14. This action is best maintained as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby

making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class.

In addition, the prosecution of separate actions by individual members of the class would create a

risk of inconsistent or varying adjudications that would establish incompatible standards of

conduct for Defendants. Judicial economy dictates resolving all issues in a single action in

accordance with Federal Rule of Civil Procedure 23.

15.    With respect to the class-wide claims under the Age Discrimination in

Employment Act, the ADEA requires that members of the proposed class affirmatively opt into

the suit after a notice is given. 29 U.S.C. § 626(b) (incorporating by reference 29 U.S.C. § 216(b)

of the Fair Labor Standards Act).

## FACTUAL ALLEGATIONS

16.    Wade Jensen was born on July 2, 1961 and is currently age 45.  He has worked for

Solvay Chemicals at the Green River plant for over 15 years since September 16, 1991 and is a

surface plant operator.

17.    Donald Goff was born on February 4, 1956 and is currently age 50. He worked for

Solvay Chemicals at the Green River plant for more than 23 years from February 1, 1982 until he

was discharged on September 15, 2005.

18.    In 1989, Solvay America established for itself and all of its related companies the

Solvay America Companies Pension Plan for employees of subsidiaries of Solvay America. The

Solvay America Pension Plan was the result of the merger of existing pension plans which were

established in or before 1981, e.g., the immediately preceding pension plan for the Green River employees was established in 1981.

19.     At the end of 2003, approximately 3,400 employees participated in the Solvay America Pension Plan.

20.     Solvay Chemical's Green River plant employs approximately 415 persons. All employees who are at least age 21 with one year of service are participants in the Solvay America Pension Plan. All but 18 of the 415 individuals at the Green River plant are over age 30, and most are in the age 36-50 bracket.

21.     Since its establishment, the Solvay America Pension Plan has offered participants fixed annuities at retirement determined by a formula that multiplies years of credited service in the plan by a percentage of compensation in a specified pay base averaging period (the "old" formula).

22.     Before January 1, 2005, the Pension Plan's benefit formula was 1.1% of "Highest Average Compensation" plus 0.6% of Highest Average Compensation above "Covered Compensation," multiplied by years of benefit service (to a maximum of 35 years). "Highest Average Compensation" was the highest average annual earnings received during any 60 consecutive months within the last 120 months before benefits stopped accruing. The term "Covered Compensation" was defined as the 35-year average of the Social Security Taxable Wage Bases ending in the year in which the participant reaches Social Security's retirement age.

23.     Early retirement benefits were also offered. If a participant terminated
employment after age 55 with 85 or more points of age and benefit service, the early retirement
benefits were equal to the normal retirement benefit, with no reduction for early commencement.
If a participant had less than 85 points, the normal retirement benefits were reduced by only 3%
for each year before age 65 that the participant retired. For participants who terminated
employment before age 55, early retirement benefits were offered starting at age 55 or more with
a 4% per year reduction in the normal retirement benefit.

24.     Solvay America admits that these early retirement provisions offered participants
"subsidies," that is, they offer significantly more than the actuarial equivalent of the normal
retirement benefits.

25.     On or about September 2004, Solvay America distributed a brochure entitled
"Future Choice: Plan Today. Enjoy Tomorrow" to the Plan's participants about a change from
the benefit formula described above to a new "cash balance" formula, effective January 1, 2005.
The new retirement plan was to be called the "Retirement Account Balance Plan."

26.     Employees who were age 50 and over, with at least 10 years of credited plan
service as of January 1, 2005, were given a one-time option to remain under the old pension
formula.

27.     Under Solvay America's new cash balance formula, initial "Retirement Balance
Accounts" were set up. The Retirement Balance Accounts are not actual accounts as in a 401(k)

plan or a savings or other investment account. Instead, they are "hypothetical" accounts to which notational credits are assigned. No accounts are actually created and no funds are actually placed in a participant's account. The cash balance amendments adopted on December 28, 2004, which were not distributed to employees, expressly provide that the account "is not an actual account to which Plan assets are allocated."

28. The Initial Account Balances for older, longer-service participants were set at levels below the value of the accumulated retirement benefits under the "old" benefit formula. The hypothetical opening balances did not include the value of the previous Plan's early retirement benefits. Solvay America subsequently described the initial account balances as based on an "IRS-mandated" mortality table or an "IRS-mandated life expectancy, but the hypothetical opening balances included a "pre-retirement mortality" discount to the value of the participant's retirement benefits which the IRS does not "mandate." A "pre-retirement mortality" discount, i.e., a discount for the chance of dying before reaching age 65, reduces the value of the opening balances by as much as 10%.

29. Because Solvay America established the Initial Account Balances below the full value of the accumulated retirement benefits, a period was created during which the accumulated retirement benefits to which participants were already entitled are greater than their Cash Balance Accounts.

30.     Solvay America subsequently provided an example where for a period of seven years a 54 year old employee's "monthly annuity will be no greater" than the frozen monthly retirement benefit earned as of December 31, 2004.

31.     Under the cash balance amendments, each participant's hypothetical Retirement Account Balance is credited with two notations on a quarterly basis. The first is a percentage of a participant's salary referred to as a "pay credit." The pay credits are based on certain age and service bands, ranging from 2.5% of salary for participants whose age and years of credited service is less than 40, 3.0% for age and service between 40 and 59 points, 4.0% for age and service between 60 and 79 points, and 5.0% of salary for participants whose age and years of credited service is 80 points or more. The pay credits do not increase thereafter.

32.     An additional pay credit is offered, ranging from 1.25% for the lowest age and service band up to 2.5% at the highest band, if a participant has pension-eligible earnings in excess of the Social Security Taxable Wage Base, which was $90,000 in 2005 and is $94,200 in 2006. A participant who earns less than this amount does not receive any additional pay credit.

33.     The second notation to the participant's hypothetical account is a hypothetical interest credit, which is credited quarterly. The hypothetical interest rate is set at the beginning of the year and is the average of the 30-year Treasury Bond rate in the last three months (October through December) of the preceding year. There is a minimum interest credit of 3% for any year.

34.     Upon termination of employment after January 1, 2005, Section 12.2 of the Retirement Account Balance Plan provides that a participant shall receive the benefit computed under the new cash balance formula, except that the participant's benefit "shall be no less than" the frozen retirement benefits to which the employees were already eligible as of December 31, 2004, without any additional benefit accrual.

35.     Solvay America's cash balance formula effects three changes that are not obvious on its face:

First, the initial account balance and transition provisions are designed in a manner that causes older, longer-service employees to earn no additional benefits for a number of years beyond the retirement benefits to which they were entitled under the old plan formula on December 31, 2004. This is because of the difference between the initial account balances and the value of their previously-earned benefits, including early retirement benefits.

Second, the future rate of benefit accruals is designed so that it is significantly reduced in comparison to the old plan, even after older, longer service employees resume the accrual of additional benefits. For example, under the prior plan, Mr. Jensen's rate of accrual was 1.1% of his 60 months of highest average pay from 2000-2004 of $73,900, whereas under the new plan his rate of accrual is 0.7% of each year's pay, with no improvement in the benefits for past years as his salary increases.

<u>Third</u>, the future rate of benefit accruals is designed so that it decreases with each year of advancing age. For example, the rate of future benefit accrual for an employee who is age 45 with less than 15 years service and a salary of $75,000 is 0.7% of each year's pay, much lower than the 1.53% accrual rate applicable to an age 25 employee with the same salary.

36.    On July 6, 2005, named Plaintiffs Jensen and Goff filed a timely age discrimination charge as required by 29 U.S.C. § 626(d) on behalf of themselves and all other workers in the protected age group with the Labor Standards division of the State of Wyoming's Department of Employment (which is also known by the acronym of WFEP). The Labor Standards division has not taken action on the charge. Plaintiffs are filing this action on a timely basis under 29 U.S.C. § 626(d) because the charge was filed more than 60 days before the commencement of this action.

37.    On March 7, 2006, Plaintiffs' counsel sent a letter by express courier to the Plan Administrator of the Solvay America Pension Plan outlining the Plaintiffs' claims of ERISA violations and requesting that Solvay America bring the Plan into compliance with ERISA. Solvay America treated the March 7, 2006 letter as a "claim for benefits" under the Solvay America Pension Plan and stated that it would "respond in accordance with the applicable claims procedures under the plan." On May 3, 2006, Solvay America granted an Administrative Committee for the Solvay America Pension Plan a 90-day extension to respond due to "[t]he complexity and number of issues raised" in the March 7, 2006 letter. On August 31, 2006,

through a letter from Solvay America's Vice President for Finance, the Administrative

Committee denied all of the Plaintiffs' claims of ERISA violations. In another October 13, 2006

letter, Solvay America's Vice President for Human Resources stated on behalf of the

Administrative Committee that "We do not believe that any additional material or information is

necessary to perfect Mr. Jensen's claim under 29 C.F.R. § 2560.503-1(g)." The minutes of the

August 24, 2006 meeting of the Administrative Committee show the Committee's "concurrence"

with a legal memorandum prepared by the law firm of Pillsbury Winthrop Shaw Pittman. That

legal memorandum concluded that the "arguments" in Plaintiffs' March 7, 2006 letter "do not

provide a sound legal basis for relief."

## FIRST CLAIM FOR RELIEF:
## AGE DISCRIMINATION IN PENSION BENEFIT FREEZE

38.     The preceding factual allegations are hereby included as if set forth at length.

39.     The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits

discrimination against any individual with respect to compensation, including compensation in

the form of pension benefits, because of age.

40.     The Plaintiffs and the members of the proposed class are in the class of persons

protected by the ADEA.

41.     In moving to a cash balance formula, Defendant Solvay America used a transition

method that froze the retirement benefits of the named Plaintiffs and other members of the class

for many years at their previous levels after December 31, 2004.

42.     It can take years after December 31, 2004 for the cash balance accounts of older,

longer-service employees to move ahead of the value of the benefits earned before the changes.

This is because Solvay America set the Initial Account Balances for older, longer-service

workers below the value of their early retirement benefits and applied the aforementioned pre-

retirement mortality discount.

43.     Solvay America admits that the benefits of older workers may be frozen as a result

for as many as seven years if they retire before age 65.

44.     Because the new cash balance pay credits are only contingently payable under the

Pension Plan's transition formula, older, longer-service employees will accrue no additional

benefits for their years of employment with Solvay America's subsidiaries in 2005, 2006, 2007

and subsequent years. Younger or recently hired employees will not experience a similar benefit

freeze.

45.     The ADEA offers a safe harbor from scrutiny for age discrimination for "bona

fide employee benefit plans." However, the "bona fide employee benefit plan" safe harbor only

applies where the actual amount of payment or the actual cost incurred on behalf of an older

worker is not less than that incurred on behalf of a younger person when the tests in 29 C.F.R. 1625.10 are applied.

46.     During the years in which payment of any cash balance benefits is contingent because of the "no less than" the old benefit formula, Defendant incurs no cost for older, longer-service employees' pensions. At the same time, Defendant incurs costs for younger employees' pensions.

47.     The actual costs incurred on behalf of older employees are less than those incurred on behalf of younger employees when the test in 29 C.F.R. 1625.10 is applied.

48.     Defendant's actions discriminate against Plaintiffs because of age in violation of the ADEA, 29 U.S.C. § 623(a) and 29 U.S.C. § 626(b).

### SECOND CLAIM FOR RELIEF: CONDITIONAL PAYMENT OF ANNUAL RATES OF BENEFIT ACCRUAL VIOLATES ERISA'S 133⅓% ACCRUAL REQUIREMENTS

49.     The preceding factual allegations are hereby included as if set forth at length.

50.     The Solvay America Pension Plan must comply with the "133⅓% benefit accrual" requirements in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B). This is the only one of ERISA's accrual methods with which a cash balance formula can comply because it is the only method that accommodates a career average pay formula. The other two accrual methods require that a participant's accrued benefits be computed by applying an average of highest salary to all years of participation.

51.     The 133⅓% benefit accrual rule mandates that defined benefit pension plans offer

"annual rates" of benefit accrual. The annual rates of benefit accruals in later years of

participation can be no more than 133⅓% of the annual rates in earlier years. See, e.g., Esden v.

Bank of Boston, 229 F.3d 154, 169 (2d Cir. 2000); Eaton v. Onan, 117 F.Supp.2d 812, 843-45

(S.D. Ind. 2000). When a plan has two or more benefit formulas, e.g., a frozen benefit formula

and an on-going benefit formula, "the accrued benefits under all such formulas must be

aggregated in order to determine whether or not the accrued benefits under the plan for

participants satisfy one of the alternative [accrual] methods." 26 C.F.R. 1.411(b)-1(a).

52.     The amended Solvay America Pension Plan violates the 133⅓% rule in ERISA §

204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), for three reasons: (1) the annual rates of cash balance

accruals for 2005, 2006, 2007 and succeeding years are bookkeeping notations that are not

unconditionally payable accrued benefits; (2) the annual rate of benefit accruals under the cash

balance plan in "later plan years" will exceed 133⅓% of the rate during the years in which

benefits are effectively frozen because of the Plan's transition provisions, and (3) the annual rates

of accrual for older, longer-service employees are subject to conditions on payment that do not

apply to new hires or to younger employees.

### THIRD CLAIM FOR RELIEF:
### CONDITIONING RECEIPT OF ADDITIONAL ANNUAL ACCRUALS
### VIOLATES ERISA'S NONFORFEITABILITY RULES

53.     To satisfy the nonforfeitability requirement of ERISA § 203(a), 29 U.S.C. §

1053(a), a participant's right to any accrued benefits must not be conditional once he or she has

the five years of service needed to be vested. Pursuant to Treasury regulations codified in 26

C.F.R. 1.411(a)-4: "[A] right which, at a particular time, is conditioned under the plan upon . . .

subsequent forbearance which will cause loss of such right is a forfeitable right at that time." IRS

Notice 96-8, 1996-1 C.B. 359, also explains:

> "If benefits . . . have accrued [but] those benefits are disregarded
> when benefits commence before normal retirement age, the plan
> has effectively conditioned entitlement to the benefits . . . on the
> employee not taking a distribution prior to normal retirement age."

54.     The amended Solvay America Pension Plan provides that a participant has the

choice of receiving the retirement benefits earned prior to the conversion, including any early

retirement benefits, or receiving the benefit under the cash balance formula determined with an

"Initial Account Balance" which excludes the value of early retirement benefits and is discounted

for pre-retirement mortality, i.e., the chance of dying before reaching age 65.

55.     The amended Pension Plan thereby conditions entitlement to the accrued benefits

offered under the participant's Retirement Balance Account on the participant foregoing the

valuable early retirement subsidies offered under the previous Plan and accepting a pre-

retirement mortality discount. ERISA § 203(a), 29 U.S.C. § 1053(a), mandates, however, that

rights to any accrued benefits be unconditional.

## FOURTH CLAIM FOR RELIEF:
## REDUCED RATES OF BENEFIT ACCRUAL BASED ON AGE

56.    The preceding factual allegations are hereby included as if set forth at length.

57.    The rate of benefit accrual in a defined benefit plan is determined by the increase

in the "accrued benefit." Section 12.2 of the amended Solvay America Pension Plan defines the

participant's "accrued benefit" as the "monthly pension" payable commencing on the

participant's retirement date that is the actuarial equivalent of the participant's hypothetical

account balance under the cash balance formula projected forward to normal retirement age using

the interest credit in effect on the determination date.

58.    Future interest credits under a cash balance pension plan are greater for younger

participants due to the effect of compounding hypothetical interest credits until retirement. As a

result, younger employees accrue more retirement benefits from a particular year's hypothetical

pay credit than older employees. Unless the hypothetical pay credits in a cash balance plan are

sufficiently age-weighted, the rate of benefit accrual, expressed as a retirement benefit, decreases

with age. See Richards v. FleetBoston, 427 F.Supp.2d 150, 163-66 (D. Conn. 2006); In re J.P.

Morgan Chase Cash Balance Litig., 2006 WL 3063424, *7-9 (S.D.N.Y. 2006).

59.    ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), prohibits reductions in the rate

of benefit accrual "because of the attainment of any age." The same prohibition is in ADEA §

4(i)(1)(A), 29 U.S.C. § 623(i)(1)(A).

60.    While the Pension Plan's weighting of the pay credits based on age and years of

benefit service below a total of 80 points lessens the resulting age discrimination in the rates of

benefit accrual, it does not eliminate it. The rates of benefit accrual still decrease, for example,

from approximately 1.5% to 0.7% for two employees with the same salary who are age 25 and

age 45, respectively.

61.    The rates of benefit accrual before participants achieve 80 points are also reduced

for older employees in comparison to the former plan's highest average pay formula more than

for younger employees.

62.    The reductions in the rate of benefit accrual because of age violate ERISA and the

ADEA.

### FIFTH CLAIM FOR RELIEF:
### INADEQUATE ERISA SECTION 204(h) NOTICE OF REDUCTIONS

63.    The preceding factual allegations are hereby included as if set forth at length.

64.    Solvay America's cash balance amendments reduced the rate of future benefit

accruals. After January 1, 2005, retirement benefits are based on each year's compensation rather

than the highest average compensation in 60 months of employment applied to all years of

benefit service. The change in the compensation used to compute benefits from a formula based on highest average pay to a "career average" pay formula reduces the rate of future benefit accruals.

65.    Solvay America's cash balance amendments also reduce the rate of future benefit accruals as a function of age. For example, the benefit accrual rate decreases from approximately 1.5% of each year's compensation at age 25 to 0.7% of pay at age 45 with less than 15 years of service, and 0.9% of pay at age 45 with more than 15 years of service.

66.    Benefits are further reduced because of the elimination of the subsidized early retirement benefits that were offered under the previous plan.

67.    The brochure introducing the Retirement Account Balance Plan entitled "Future Choice: Plan Today. Enjoy Tomorrow," which was distributed on or about September 2004, did not disclose the freeze in benefits for older, longer-service employees. It also did not disclose any of the other reductions.

68.    On or about September 1, 2004, Solvay America distributed a second document entitled "204(H) Notice for Participants of the Solvay America Companies' Pension Plan." The purported "204(H) Notice" disclosed a potential freeze in benefits for a 54 year old employee, but did not explain how the changes affected other participants. A table of hypothetical numerical comparisons was provided at the end of the notice. But the narrative does not explain the cash

balance changes produce these computations and the table makes it appear as though younger employees are subject to larger reductions in future accruals than older employees.

69.     The cash balance plan amendments were not actually adopted until December 28, 2004, at least three months after the date of the notice.

70.     By implementing the reductions without adequately disclosing the changes that cause a significant reduction in the future rate of accruals after the date of adoption and at least 45 days before the effective date of the amendments, Solvay America violated ERISA § 204(h), 29 U.S.C. § 1054(h), and 26 C.F.R. 54.4980F-1, which require that an understandable notice of the reductions precede the amendments' effective date by at least 45 days.

## SIXTH CLAIM FOR RELIEF:
## INADEQUATE SUMMARY OF MATERIAL MODIFICATIONS

71.     The preceding factual allegations are hereby included as if set forth at length.

72.     Solvay America describes its aforementioned "204(H) Notice" as also serving as Summary of Material Modifications ("SMM") on the Pension Plan, as amended by the "new" cash balance formula. The purported SMM does not, however, disclose that the "cash balance plan:

>    (a)    Establishes initial account balances below the full value of the participant's accrued benefits by taking a discount for pre-retirement mortality;

>    (b)    Significantly reduces the rate of future benefit accruals in relation to the prior plan formula; and

(c)    Significantly reduces the rate of future benefit accruals for older employees in relation to the rate of benefit accruals for younger employees.

73.    The SMM fails to offer participants tools for calculating their future retirement benefits under the new formula, thereby preventing employees from engaging in financial planning for their retirement.

74.    Solvay America's SMM is not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," in violation of § 102 of ERISA, 29 U.S.C. § 1022.

75.    Solvay America's failure to understandably disclose the disadvantages of the cash balance amendments also violates the fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to provide participants with the information needed to make well-informed employment, savings and retirement decisions.

## PRAYER FOR RELIEF

WHEREAS, the Plaintiffs pray that this Court:

A.    Declare that the terms of the Defendant Pension Plan, as amended by the cash balance features, violate the ADEA § 4(a), 29 U.S.C. § 623(a), because they create periods of years in which older, longer-service participants earn no additional benefits, while younger, shorter-service workers accrue additional, non-contingent benefits.

B.      Declare that the terms of the Defendant Pension Plan, as amended by the cash balance features, violate the accrual and vesting rules in ERISA §§ 203(a) and 204(b)(1)(B), 29 U.S.C. §§ 1053(a) and 1054(b)(1)(B), because they create periods of years in which older, longer-service participants have annual rates of accrual that are only conditionally payable.

C.      Declare that the terms of the Defendant Pension Plan, as amended by the cash balance amendments, violate the age discrimination in accrual standards in ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), and ADEA § 4(i)(1)(A), 29 U.S.C. § 623(i)(1)(A), by decreasing the rates at which accrued benefits are earned based on age.

D.      Declare that Solvay America's implementation of the cash balance amendments without adequate notice of the reductions violates the 45-day advance notice rule in ERISA § 204(h), 29 U.S.C. § 1054(h).

E.      Declare that Solvay America's Summary of Material Modifications violates the disclosure requirements in ERISA Sections 102 and 104(b)(1), 29 U.S.C. §§ 1022 and 1024(b)(1), and the fiduciary duty to keep beneficiaries informed in ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

F.      Order that Solvay America prepare a Section 204(h) notice and SMM that fully disclose the reductions and other disadvantages of the cash balance formula which are not required to be reformed by this Court's declaratory relief and order that Solvay America continue the previous rates of accruals until such notice is provided.

G.     Order Solvay America to take all necessary steps to make the cash balance

features compliant with the ADEA and ERISA, including eliminating the conditioning of receipt

of the cash balance formula's annual pay credits and interest based on age and eliminating the

age-based reductions in rates of benefit accruals.

H.     Order the Defendants to pay double damages for willful violations of the ADEA.

I.     Award such other equitable and remedial relief as the Court deems appropriate to

ensure receipt of all retirement benefits required to give effect to the Court's declarations.

J.     Order the Defendants to pay interest, attorneys' fees and expenses.

RESPECTFULLY SUBMITTED this _13__ day of November, 2006.

_Richard Honaker_

RICHARD HONAKER
Honaker Law Offices, LC
P.O. Box 366
Rock Springs, WY 82902


STEPHEN R. BRUCE
Attorney at Law
805 15th St., NW, Suite 210
Washington, D.C. 20005-2271

ATTORNEYS FOR PLAINTIFFS