UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
FRANK BILELLO, individually and on      :
behalf of all others similarly          :
situated,                               :     07 Civ. 7379 (DLC)
                          Plaintiff,    :
                                        :
              -v-                       :     OPINION AND ORDER
                                        :
JPMORGAN CHASE RETIREMENT PLAN,         :
JPMORGAN CHASE DIRECTOR OF HUMAN        :
RESOURCES, as administrator of the      :
JPMorgan Chase Retirement Plan,         :
                          Defendants.   :
---------------------------------------X


Appearances:

For Plaintiff:
Lynn L. Sarko
Derek W. Loeser
Amy Williams-Derry
Karin B. Swope
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Peter S. Linden
Andrew T. Watt
Kirby McInerney LLP
825 Third Avenue
New York, NY 10022

Richard S. Schiffrin
Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

Edgar Pauk
144 East 44th Street, Suite 600
New York, NY 10017

For Defendants:

Thomas C. Rice
Jonathan K. Youngwood
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

Meryl R. Kaynard
JPMorgan Chase Legal Department
One Chase Manhattan Plaza, 26th Floor
New York, NY 10081

DENISE COTE, DISTRICT JUDGE:

Defendants JPMorgan Chase Retirement Plan and JPMorgan
Chase Director of Human Resources have moved to dismiss a
complaint filed by Frank Bilello on behalf of himself and all
others similarly situated.  Bilello was an employee of JP Morgan
Chase & Co. ("JPMC") and predecessor banks, including Chemical
Banking Corporation ("Chemical"), from 1960 until his retirement
in the Spring of 2008.  Chemical's 1989 conversion to a cash
balance pension plan and the subsequent plan amendments are the
subject of this lawsuit.

Bilello filed his complaint on August 17, 2007.  He alleges
numerous violations of the Employee Retirement Income Security
Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Internal
Revenue Code.  Defendants have moved to dismiss all counts of
the complaint pursuant to Rules 8(a), 12(b)(1), and 12(b)(6),
Fed R. Civ. P, because, among other reasons, Bilello's recent
receipt of a lump-sum payout of his retirement benefits deprives

2

him of standing to pursue any ERISA claim.[1]  This Opinion finds

that Bilello still qualifies as a participant in an ERISA plan

who is entitled to bring claims for the payment of additional

retirement benefits.  Because the parties have not yet fully

addressed the question of Bilello's exhaustion of his

administrative remedies, it is premature to address the other

issues raised by the defendants' motion to dismiss this lawsuit.


BACKGROUND

Following a description of the types of retirement plans

governed by ERISA that are at issue here, this Opinion

summarizes the allegations from the complaint that are material

to the standing issue.


1. ERISA and Cash Balance Plans

ERISA recognizes two basic types of retirement plans:

"defined contribution plans" and "defined benefit plans."  Under

ERISA, a defined contribution plan (also known as an "individual

account plan") is "a pension plan which provides for an

individual account for each participant and for benefits based

---

[1] Defendants did not move to dismiss this action pursuant to Rule
12(b)(1), but Bilello's retirement and election of a lump-sum
payout, which occurred after the filing of the motion and was
documented by plaintiff in his opposition brief and exhibits,
created the circumstances giving rise to the defendants'
argument, presented in their reply brief, that Bilello lacks
statutory standing under ERISA to bring a claim.

solely upon the amount contributed to the participant's account,
and any income, expenses, gains and losses." 29 U.S.C. §
1002(34). A defined benefit plan is any pension plan that is
not a defined contribution plan. 29 U.S.C. § 1002(35). An
example of a conventional defined benefit plan is one that
credits an employee with a percentage of her salary for each
year of employment. The employee may then be given, for
example, a pension equal to the accumulated percentage of either
her final salary or the average of her salary in the last
several years of employment. See Hirt v. The Equitable
Retirement Plan for Employees, Managers, and Agents, 533 F.3d
102, 104-105 (2d Cir. 2008). Whereas the employee bears the
investment risks in a defined contribution plan, defined benefit
plans generally guarantee each participant a specific benefit,
and the employer bears the risk of the plan's investment
performance. Id. at 105.

Another type of defined benefit plan is a cash balance
plan. It combines the features of defined benefit and defined
contribution plans. Id. Under a cash balance plan, a
hypothetical account is established in each participant's name
to keep track of her accrued benefit. The accounts are
hypothetical because they do not reflect actual contributions to
accounts, but function as record-keeping tools. Typically, the
account contains the employer's hypothetical contributions as

well as earnings expressed as interest credits, which can either
increase at a fixed rate or be tied to an extrinsic index, such
as 30-year Treasury bonds.  <u>Id</u>.  The employer's contributions,
usually based on a percentage of an employee's compensation, are
known as "pay credits."  Pay credits may cease to accumulate
once an individual's employment ends, but interest credits
continue to be allocated until benefits are distributed.  <u>See</u>,
<u>e.g.</u>, <u>Esden v. Bank of Boston</u>, 229 F.3d 154, 160 (2d Cir. 2000).
Cash balance plans may offer employees the option of a lump-sum
payout upon termination of employment in lieu of an annuity.
<u>Id</u>. at 163.


2. The Chemical Retirement Plan Conversion

     Chemical converted its conventional defined benefit
retirement plan (the "Pre-1989 Plan") into a cash balance plan
on January 1, 1991, retroactive to January 1, 1989 (the "1989
Plan").  Participants received information regarding the 1989
Plan in July 1990.  Employees retiring prior to January 1, 1989
received benefits as provided by the Pre-1989 Plan.  Employees
retiring between January 1, 1989 and January 1, 1991 received
the greater of either 1) their benefits recalculated under the
1989 Plan, or 2) their accrued benefit under the terms of the
Pre-1989 Plan.

3. Retirement Plan Mergers

    Chemical merged with Manufacturer's Hanover Corporation in 1991.  Chemical next merged with the Chase Manhattan Corporation ("Chase") in 1996, and the two companies' plans were merged effective January 1, 1997 (the "1997 Plan").  Chase then merged with J.P. Morgan in 2000, creating JPMC.  J.P. Morgan's cash balance pension plan merged into Chase's cash balance plan effective January 1, 2002 (the "2002 Plan").  A July 1, 2004 merger with Bank One Corporation resulted in a merger of the JPMC and Bank One plans effective January 1, 2005 (the "JPMC Plan").  The JPMC Plan is administered by defendant JPMorgan Chase Director of Human Resources (the "Plan Administrator").


4. The Instant Lawsuit

    The allegations in Bilello's complaint largely stem from the conversion of Chemical's Pre-1989 Plan to the 1989 Plan, which was a cash balance plan, and from defendants' communications regarding various changes in the retirement plans.  Bilello began working at Chemical Bank in 1960 and was a participant in the Pre-1989 Plan.  He remained a bank employee through the mergers described above until his retirement from JPMC in the Spring of 2008.

    On August 17, 2007, Bilello filed a class action complaint against defendants JP Morgan Chase Retirement Plan and the Plan

Administrator, defining the class as all participants who accrued benefits pursuant to the 1989 Plan and all subsequent amendments, as well as their beneficiaries and estates.[2]  The case was assigned to the Honorable Richard J. Sullivan.

Defendants moved to dismiss the complaint on November 16, 2007.  Before that motion was fully submitted, Bilello amended his complaint on December 21.  Through nine claims for class-wide relief, he alleges the following violations of ERISA:

1) Benefits accrue at an impermissibly "backloaded" rate, in violation of ERISA Section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) (Counts 1 and 6);

2) The plans provide a benefit that is subject to the discretion of the Plan Administrator and is not "definitely determinable" as required by Internal Revenue Code Section 401(a)(25) (Counts 2 and 3);

3) By failing to project future interest credits to retirement age for participants who take their benefits before age 65, the plans cause an illegal forfeiture of participants' accrued benefits in

---

[2] As decided below, this lawsuit was filed after the Honorable Harold Baer certified a class in related litigation for claims related to 2002 and 2005 amendments to the JPMC Plan only.  In addition to rejecting class treatment of notice claims based on plan amendments occurring before 2002, Judge Baer also excluded from the class former employees of JPMC who had already received a lump-sum retirement benefit.  In re J.P. Morgan Cash Balance Litigation, 242 F.R.D. 265 (S.D.N.Y. 2007).

violation of ERISA Section 203(a), 29 U.S.C. § 1053(a) (Counts 4 and 5); and

4)      Defendants did not provide adequate notice of changes to the retirement plans, either in connection with the original conversion to a cash balance plan or with subsequent plans, in violation of ERISA Sections 102(a), 104(b)(1), and 204(h), 29 U.S.C. §§ 1022(a), 1024(b)(1), 1054(h), which require notice of significant reductions in the rate of benefit accrual, provision of sufficiently accurate and clear summary plan descriptions ("SPDs"), and notices of material modifications (Counts 7, 8, and 9) (the "Notice Claims").

With respect to the Notice Claims, Bilello alleges that the defendants did not provide proper notice of a significant reduction in benefit accrual when implementing the 1989 Plan and the amendment effective January 1, 1997 (Count 7).  He describes particular problems with 1994 and 1999 SPDs, in addition to stating that SPDs provided misleading descriptions of the cash balance formula (Count 8).[3]

---

[3] It is unclear from the complaint whether plaintiff believes that all SPDs issued after the implementation of the 1989 Plan are misleading in this regard, or whether these allegations are limited to the 1994 and 1999 SPDs.

As an example of alleged failures to summarize material modifications adequately, Bilello asserts that defendants did not provide information regarding the interest rate that the Plan Administrator had discretion to set pursuant to the 1989 Plan and subsequent plans through December 31, 2008 (Count 9).

Bilello also brings two individual claims for failure to make requested disclosures of plan documents.  Bilello describes two requests for plan documents and SPDs used to calculate his benefits, as well as for a statement of his benefits, that he submitted to the Plan Administrator pursuant to ERISA Section 105(a).  Bilello alleges that the Plan Administrator refused to provide plan documents in effect prior to 2002 and that the records of Bilello's accrued benefit were not "written in a manner calculated to be understood by the average plan participant," in violation of ERISA Section 105(a)(2)(A)(iii); 29 U.S.C. § 1024(a)(2)(A)(iii).  The second request, submitted to both the Plan Administrator and the Plan, yielded an identical response.  In response to the alleged refusals to provide governing plan documents and complete calculation worksheets, Bilello asserts two claims against the Plan Administrator: one for breach of disclosure obligations (Count 10), and another for breach of fiduciary duties under ERISA Section 404(a), 29 U.S.C. § 1104(a) (Count 11).

5.  Relief Sought

Bilello requests a combination of statutory damages, "equitable and remedial relief", and declaratory relief.  First, Bilello seeks a declaration that the Plan violates ERISA in the ways specified in Counts 1-9 and that the Plan Administrator violated ERISA's disclosure requirements (Count 10).  For the Notice Claim brought under Count 7, Bilello asks that the court declare that the plan amendments implementing the 1989 Plan and the 1997 Plan did not become effective.  For the Notice Claims brought in Counts 7-10, Bilello also seeks to enjoin the Plan Administrator from violating ERISA pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a).  For the breach of fiduciary duty claim brought by Bilello in an individual capacity under Count 11, he requests "equitable and remedial relief" against the Plan Administrator under ERISA Sections 409 and 502(a)(3), 29 U.S.C. §§ 1109 and 1132(a).

Bilello requests statutory damages pursuant to ERISA Section 502(c), 29 U.S.C. § 1132(c), and C.F.R. 2575.502c-1 for the failure to provide adequate SPDs (Count 8) and failure to provide adequate summaries of material modifications (Count 9). Specifically, he asks that the Plan Administrator be held personally liable to plaintiff and the class for up to $110 a day "from the date of violation until the date of compliance."

For alleged procedural violations related to Count 10, Bilello asks that the Plan Administrator be assessed statutory penalties of up to $110 a day from July 28, 2007 (three days after the Plan Administrator refused to provide pre-2002 governing plan documents, despite Bilello's request) until the date of compliance.

Bilello also prays for several forms of relief that his pleading does not tie to specific claims.  He asks for an injunction preventing defendants from "enforcing the Plan's unlawful amendments or amendments that never became effective," presumably because of notice and other alleged ERISA violations, and an order compelling defendants to 1) reform the JPMC Plan to cure all ERISA violations, 2) recalculate the accrued benefits of all class members using the greater of the "pre-amendment" formula or the current formula, after it has been reformed to cure any ERISA violations under ERISA Sections 204(g) and (h), and 3) pay all "pensioners, their beneficiaries and/or estates" the difference between the pension amount paid to them previously and the pension they would earn under the JPMC Plan with all ERISA violations corrected.[4]  Finally, Bilello seeks

---

[4] ERISA Section 204(g), 29 U.S.C. § 1054(g), prohibits certain types of amendments that decrease the accrued benefit of a participant.  ERISA Section 204(h) provides that notice is required before a plan may be amended to reduce benefit accrual significantly.  ERISA § 204(h)(1), 29 U.S.C. § 1054(h)(1). Subsection 2 of the provision sets out requirements for the

costs, attorney's fees, and any further equitable relief deemed appropriate.

Defendants moved to dismiss all eleven counts in the amended complaint on February 25, 2008.  On March 6, 2008, Bilello elected to take a lump-sum payout of his retirement benefit and subsequently retired at age 66.[5]  He filed his opposition to the motion on March 31, and the motion was fully submitted on April 14.  The case was reassigned to this Court on October 31 as related to J.P. Morgan, No. 06 Civ. 732 (DLC) (S.D.N.Y. filed Jan. 31, 2006).

DISCUSSION

Defendants move to dismiss this action on the ground that Bilello is no longer a "participant" in the JPMC Plan, and therefore lacks the standing required under ERISA to bring his

---

notice, and Subsection 3 requires that it be "provided within a reasonable time before the effective date of the plan amendment."  In the event of an "egregious failure" to meet the notice requirement,

> the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of (i) the benefits to which they would have been entitled without regard to such amendment, or (ii) the benefits under the plan with regard to such amendment.

ERISA § 204(h)(6)(A), 29 U.S.C. § 1054(h)(6)(A).  See Frommert v. Conkright, 433 F.3d 254, 268 (2d Cir. 2006).

[5] Plaintiff attached Bilello's benefit election form to his opposition to the motion to dismiss.

claims.[6]  On March 6, 2008, Bilello elected to receive a lump-sum payment of his retirement benefits on April 1.  Because Bilello has a colorable claim for ERISA benefits under his retirement plan, he has standing to pursue his ERISA claims.  Before addressing the standing issue, the statutory framework for private ERISA actions is described.

1.  Statutory Framework
  A.  ERISA Section 502(a)

    Bilello's authority to bring a civil action alleging an ERISA violation rests in ERISA Section 502, 29 U.S.C. § 1132, the statute's civil enforcement provision.  Section 502(a) identifies six types of civil actions that may be brought.  The three potentially relevant to this litigation state that

            A civil action may be brought--

        **(1)** by a participant or beneficiary--

                **(A)** for the relief provided for in subsection (c) of this section, or

                **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

---

[6] The result reached here is the same whether the issue is described as one of statutory standing, see Coan v. Kaufman, 457 F.3d 250, 254 (2d Cir. 2006), or simply one of statutory interpretation, see Harzewski v. Guidant Corp., 489 F.3d 799, 804 (7th Cir. 2007).

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;[7]

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

ERISA § 502(a), 29 U.S.C. § 1132(a).  Each of these sections will be examined in turn.

   B.  ERISA Section 502(a)(1)(B)

---

[7] ERISA Section 409, 28 U.S.C. § 1109, entitled "Liability for breach of fiduciary duty," provides that

> **(a)** Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
>
> **(b)** No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Section 502(a)(1)(B) has been described as "the workhorse of ERISA remedy law" and "the provision under which routine benefit denial and other ERISA claims proceed." Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 578 (2d Cir. 2006) (citation omitted). See, e.g., Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2d Cir. 2008) (denying relief under Section 502(a)(1)(B)). Wilkins provides an example of a successful claim under Section 502(a)(1)(B). Wilkins was covered by a plan stating that participants were to receive "one pension credit for every 150 hours or $750 worth of covered employment." Wilkins, 445 F.3d at 582. He sued his pension plan, alleging that he did not receive credits to his pension fund for all of the work he performed. Id. Wilkins also argued that his pension plan's SPD failed to put him on notice that he might be denied benefits if he did not preserve and produce records of his periods of covered employment. Id. at 582-83. The court found that Wilkins had a Section 502(a)(1)(B) claim for benefits due under Section 102(b), 29 U.S.C. § 1022(b), based on the SPD's deficiency. It reasoned that the SPD's failure to inform Wilkins of circumstances that could result in the loss of benefits, as required by statute, could be responsible for his failure to preserve records of employment and the subsequent denial of "benefits due under the terms of the plan." ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B).

C.  ERISA Section 502(a)(2)

Section 502(a)(2) allows participants to sue plan
fiduciaries.  Graden v. Conexant Systems Inc., 496 F.3d 291,
295-97 (3d Cir. 2007).  The Supreme Court recently summarized
Section 502(a)(2) as permitting

> actions on behalf of a plan to recover for
> violations of the obligations defined in §
> 409(a).  The principal statutory duties
> imposed on fiduciaries by that section "relate
> to the proper management, administration, and
> investment of fund assets," with an eye toward
> ensuring that "the benefits authorized by the
> plan" are ultimately paid to participants and
> beneficiaries.  [Massachusetts Mutual Life
> Insurance Co. v.] Russell, 473 U.S. [134,]
> 142, 105 S.Ct. 3085 [1985]; see also Varity
> [Corp. v. Howe], 516 U.S. [489,] 511-512, 116
> S.Ct. 1065 [1996] (noting that § 409's
> fiduciary obligations "relat[e] to the plan's
> financial integrity" and "reflec[t] a special
> congressional concern about plan asset
> management").

LaRue v. DeWolff, Boberg, & Associates, Inc., 128 S.Ct. 1020,
1024 (2008).

LaRue had sued his former employer and his ERISA-regulated
401(k) retirement plan for failing to change investments in his
individual account as he had requested.  Id. at 1022.  As a
result, he argued, the value of his account was depleted.  Id.
at 1023.  The Court of Appeals characterized the relief sought
as "personal," and not on behalf of the "entire plan."  Id.  The
Supreme Court reversed, allowing LaRue's claim for breach of
fiduciary duty under Section 502(a)(2), because "the provision

16

does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 1026.  The misconduct alleged "falls squarely within" Section 502(a)(2) and LaRue could bring a claim for "lost profits" under the section.  Id. at 1024 n.4.

   D. ERISA Section 502(a)(3)

   The Second Circuit has summarized ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) as follows:

> Section 502(a)(3) has been characterized as a "catch-all" provision which normally is invoked only when relief is not available under § 502(a)(1)(B).  Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). . . .  The provision authorizes solely equitable relief, and under the Supreme Court's decision in Great-West [Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002)], this means that money awards are available in suits brought under § 502(a)(3) only in very limited circumstances.

Wilkins, 445 F.3d at 578-79 (2d Cir. 2006) (citation omitted).

   Thus, Section 502(a)(3) permits a participant to bring suit for an equitable remedy.  Coan, 457 F.3d at 262.  For example, in Krauss, 517 F.3d at 621, the plaintiffs brought a claim for breach of fiduciary duty under Section 502(a)(3) in addition to their Section 502(a)(1)(B) claim for benefits due.  They alleged that Oxford breached its duty by misrepresenting the reasons for the denial of plaintiffs' reimbursement claims and by failing to act on plaintiffs' appeals in a timely fashion.  Id. at 630.

The court denied their claim under this section because, among other reasons, Section 502(a)(3) authorizes only equitable relief, and the Krausses sought money damages.  Id. at 630.

2. Standing

The defendants argue that Bilello has received all the benefits that he is due from his ERISA retirement plan and that he is seeking damages (and not benefits) due to faulty plan design and inadequate communications about plan amendments. They further assert that a ruling in the related J.P. Morgan litigation estops Bilello from relitigating the issue of his standing.  Finally, they assert that any claim for benefits is barred because Bilello accepted his lump-sum distribution without disputing the amount paid and thereby failed to exhaust the administrative remedies provided to him.  Their arguments will be addressed in turn.

As already noted, ERISA provides a private right of action for "a participant, beneficiary, or fiduciary."  ERISA § 502(a); 29 U.S.C. § 1132(a).  A party other than the Secretary of Labor who is not among those three enumerated categories in Section 502(a) lacks "statutory standing" to bring an ERISA action.  See Connecticut v. Physicians Health Services Of Connecticut, Inc., 287 F.3d 110, 121 (2d Cir. 2002); Coan, 457 F.3d at 255. Because Bilello is neither a beneficiary nor a fiduciary, he must qualify as a "participant" in order to bring a civil

enforcement action under ERISA.  ERISA § 502(a); 29 U.S.C. § 1132(a).[8]

ERISA defines a participant as

> any employee or former employee of an
> employer, or any member or former member of
> an employee organization, who is or may
> become eligible to receive a benefit of any
> type from an employee benefit plan which
> covers employees of such employer or members
> of such organization, or whose beneficiaries
> may be eligible to receive any such benefit.

§ 3(7), 29 U.S.C. § 1002(7) (emphasis supplied).  Thus, a former employee is a participant so long as she "is or may become eligible to receive a benefit" from an employee benefit plan. Id.  As the Supreme Court explained almost twenty years ago, a former employee with "a colorable claim to vested benefits 'may become eligible'" for benefits and may bring an action under ERISA.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118

---

[8] Under ERISA, a "beneficiary" is "a person designated by a participant to recover benefits in the event of the participant's death." Graden, 496 F.3d at 295 n.4; 29 U.S.C. § 1002(8).  An individual is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Bilello fits into neither category.

(1989) (citing Saladino v. I.L.G.W.U. National Retirement Fund,
754 F.2d 473, 476 (2d Cir. 1985)).

The word "benefits" is a term of art and refers to vested
ERISA plan benefits as opposed to, for example, compensatory
damages for a breach of a fiduciary duty owed to an ERISA plan.
See, e.g., Mertens v. Hewitt Assocs., 508 U.S. 248, 252 (1993).
If, therefore, a former employee's claim is categorized as a
claim for damages, and if she is no longer eligible to receive
benefits, then the claim must be dismissed because the employee
cannot be classified as a participant without a claim for
benefits.

The distinction between damages and benefits, while
important, is not always easy to draw.  The distinction has had
particular importance in cases which have addressed the contours
of relief available under ERISA.  The Supreme Court has
described the benefits that ERISA was designed to protect as
"vested benefits" in pension plans.  Nachman Corp. v. Pension
Ben. Guaranty Corp., 446 U.S. 359, 374 (1980).  See also id. at
375.  In rejecting a suit brought under ERISA Section 502(a)(2)
to obtain compensation for a 132-day delay in paying benefits,
the Court observed that Section 502(a)(1)(B) protects
"contractually defined benefits" and does not "authorize the
recovery of extracontractual damages."  Russell, 473 U.S. at
148.  The Court has also restricted actions brought under ERISA

Section 502(a)(2) for a fiduciary's violation of Section 409 to actions that would "protect the entire plan, rather than . . . the rights of an individual beneficiary."[9] <u>Id</u>. at 142.  Thus, awards of "extracontractual damages to a beneficiary" were barred under this provision as well.  <u>Id</u>. at 144.  The Court explained that prior to the passage of ERISA "the reference to legal relief was deleted" from the bill.  <u>Id</u>. at 146.

Eight years later, in <u>Mertens</u>, the Court addressed the relief available under a third ERISA section, specifically Section 502(a)(3), which allows a participant in an ERISA plan and other authorized plaintiffs "to obtain . . . appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  When their ERISA plan's assets proved inadequate to satisfy its benefit obligations, the <u>Mertens</u> plaintiffs sued a non-fiduciary actuary, contending that it had helped the ERISA plan to make faulty actuarial assumptions that were responsible for the shortfall.  The Court rejected this theory of recovery, characterizing the relief sought as "compensatory damages --

---

[9] The Supreme Court later refined this analysis and explained that <u>Russell</u>'s emphasis on protecting an entire plan reflected the fact that at the time <u>Russell</u> was issued most retirement plans were traditional defined benefit plans and not the defined contribution plans that had come to dominate the market at the time of <u>LaRue</u>.  <u>LaRue</u>, 128 S.Ct. at 1025.  <u>LaRue</u> modified <u>Russell</u> as follows:  "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  <u>Id</u>. at 1026.

monetary relief for all losses their plan sustained as a result
of the alleged breach of fiduciary duties," and "legal relief"
that was unavailable under ERISA.  Mertens, 508 U.S. at 255
(emphasis added).  The Court observed that equitable relief such
as an injunction or restitution was available under Section
502(a)(3) but that an award "for compensatory or punitive
damages" was not.  Id. (citation omitted).  This line of cases,
taken as a whole, emphasizes that private actions under ERISA
must, with limited exceptions that do not apply here, be claims
for benefits or the equitable relief available under Section
502(a)(3), and may not be claims for damages.[10]

     Courts have had to grapple with this jurisprudence, and
with the distinction drawn between benefits and damages, in
addressing the definition of an ERISA "participant."  As noted,
a former employee is an ERISA "participant" for purposes of
Section 502(a), and thus, entitled to bring an ERISA action only
if she "is or may become eligible to receive benefits."
ERISA § 3(7); 29 U.S.C. § 1002(7).  Once an employee has taken a

---

[10] The Court's grant of certiorari in LaRue encompassed whether a
claimant could use Section 502(a)(3) to sue a fiduciary on the
theory that its alleged misconduct had impaired the value of the
assets in the claimant's individual account; the Court of
Appeals had rejected the claimant's contention "that the make-
whole relief he sought was 'equitable' within the meaning of §
502(a)(3)."  LaRue, 128 S.Ct at 1023.  In issuing its decision,
however, the Court declined to reach the issue presented under
Section 502(a)(3), id. at 1026, and resolved the question by
reference to Section 502(a)(2), id. at 1023.

lump-sum payout of her ERISA benefits, therefore, she may no longer be eligible to receive further ERISA benefits.  If a petitioner is no longer eligible to receive ERISA benefits, then the petitioner cannot bring an ERISA claim for any relief, even equitable relief.  Determining whether a plaintiff's claim is a claim for benefits and whether a petitioner who has received a lump-sum payment is therefore eligible to receive further ERISA benefits requires careful attention to the nature of the ERISA injury that is alleged and the type of relief sought for that injury.

        To resolve whether former employees who had cashed out their plan benefits remained eligible to receive a benefit from an ERISA plan, the Court of Appeals for the Seventh Circuit framed the question this way:  "if the plaintiffs win their case by obtaining a money judgment [will] the receipt of that money . . . constitute the receipt of a plan benefit"? Harzewski, 489 F.3d at 804.  Other useful formulations include asking whether the claimant is alleging "that his benefit payment was deficient on the day it was paid under the terms of the plan and the statute," Graden, 496 F.3d at 303, and whether he is seeking "relief to which the plan documents themselves entitle the participant," Harzewski, 489 F.3d at 804.  If the answer is yes, then the former employee is seeking benefits and remains a plan "participant" eligible to bring suit.  See also

23

In re Mutual Funds Inv. Litig., 529 F.3d 207, 215-16 (4th Cir.
2008).

For example, the Court held in LaRue that an employee who
had withdrawn from an ERISA plan, in that case a defined
contribution plan, could pursue a claim under Section 502(a)(2)
since the employee retained a "colorable claim for benefits."
LaRue, 128 S.Ct. at 1026 n.6 (citing Harzewski, 489 F.3d at
799).  As already explained, the plaintiff in LaRue alleged that
his former employer, an ERISA fiduciary, had never carried out
his directions to make changes to the investments in his
individual 401(k) retirement account and that that failure had
caused a loss of about $150,000 in his account.  Id. at 1022.
ERISA entitles an individual to receive "accrued benefits" in
the individual's account that is maintained under a defined
contribution plan.  Coan, 457 F.3d at 256 (citation omitted).
Thus, if a former employee claims that the "lump-sum
distribution of her account balance would have been greater
absent the defendants' breach of fiduciary duty," then the
employee may "become eligible for benefits" and qualify as a
"participant" under ERISA.  Id. (citation omitted).  In other
words, a claim that ERISA fiduciaries imprudently managed a
defined contribution account may be brought by former employees
who have already cashed out their retirement benefits, since
they are seeking "an amount of money to which they are entitled

by the plan documents over what they received when they retired." Harzewski, 489 F.3d at 804.

In contrast, a former employee who has taken a lump-sum payment from a defined benefit plan, at least the traditional defined benefit plan, may not have a colorable claim for benefits. The amount of benefits in an employee's defined benefit plan is customarily determined by a formula in the ERISA plan documents. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 440 (1999); ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A). With a correctly calculated lump-sum payment at retirement, the employee arguably has taken all of her vested benefits. See Graden, 496 F.3d at 298 n.10.

But, there are circumstances under which a claim for additional benefits may survive the distribution of a lump-sum benefit from a defined benefit plan. For instance, a plaintiff may claim that the plan under which she received a lump-sum distribution did not comply with the statutory and regulatory requirements for defined benefit plans, see, e.g., Esden, 229 F.3d at 162, and that she received less in benefits than she was entitled to receive, id. at 161 (request for $61.54 more in benefits). Such a claim for benefits and an injunction barring future errors in the calculation of lump-sum benefits is properly brought under Sections 502(a)(1)(B) and (a)(3). Id. at 162. See also West v. AK Steel Corp., 484 F.3d 395, 405 (6th

Cir. 2007) (claim of statutory violation in using improper

formula to calculate amount due in lump-sum distribution from

cash balance plan may be brought under Section 502(a)(1)(B));

Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d

755, 759, 763 (7th Cir. 2003) (permitting class action to

recover benefits pursuant to Section 502(a)(1)(B) by former

employees who had received lump-sum distributions from a cash

balance plan and who claimed that the distributions had been

illegally calculated).  As the Eleventh Circuit held in Lyons v.

Georgia-Pacific Corp. Salaried Employees Retirement Plan, 221

F.3d 1235 (11th Cir. 2000), a former employee who receives a

lump-sum distribution from a cash balance plan has "standing to

sue for benefits" when he claims that his distribution was an

underpayment of the benefits to which he was entitled due to the

plan's violation of ERISA and controlling Treasury regulations.

Id. at 1240 n.8.

     Recently,[11] Bilello's counsel has argued that his claims are

claims for ERISA benefits, as opposed to damages, because he is

--------

[11] Counsel for the parties in Bilello are also representing the
plaintiffs and defendants in the J.P. Morgan action pending
before this Court and have recently provided more extensive
briefing of the issue of standing in connection with the
plaintiffs' motion to amend in J.P. Morgan.  By the time that
motion to amend was brought, the parties had had the benefit of
several additional decisions applying the LaRue decision.  This
Opinion considers the arguments regarding standing contained in
the J.P. Morgan briefing as well as the more limited arguments
on standing made within the Bilello action.

entitled to benefits calculated under the more favorable plan formula that was available to him under the Pre-1989 Plan.  The core of his claims rests on the assertion that he was entitled to better notice than he received with Chemical's conversion from a conventional defined benefit retirement plan to the 1989 Plan, which is a cash balance plan.

Bilello's claim may be characterized as a claim to recover plan benefits under Section 502(a)(1)(B).  See Wilkins, 445 F.3d at 582 (citing Layaou v. Xerox Corp., 238 F.3d 205, 212 (2d Cir. 2001); Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 114 (2d Cir. 2003)).  As a result, he remains a participant in an ERISA plan and is qualified under the statute to bring suit.  As in Wilkins, Bilello contends that the notice received under the plan was deficient because it did not provide notice of a reduction -- in Bilello's case, a reduction in the rate of benefit accrual.  Id. at 583.  Should Bilello prevail on his Notice Claims, the 1989 amendment of the plan may be deemed ineffective and he may be entitled to the allegedly more generous stream of benefits due under the Pre-1989 Plan.[12]

---

[12] In a letter brief submitted on October 17, 2008, Bilello, citing In re State Street Bank & Trust Co. ERISA Litigation, No. 07 Civ. 8488 (RJH), 2008 WL 4414662 (S.D.N.Y. Sept. 30, 2008), argued that standing should be assessed as of the time that the lawsuit is filed, that is, before he retired and received a lump-sum payout of his retirement benefits.  Defendants submitted a response on November 6.  Because Bilello has a

Frommert v. Conkright, 433 F.3d 254, 258 (2d Cir. 2008); 29 U.S.C. § 1054(h)(6)(A).

Defendants argue that Bilello is no longer a "participant" in any plan since his claims are for damages and not benefits. They argue that Bilello has received all benefits due under the plan that was in effect at his retirement, and that Bilello's claim for a recalculation of benefits under a "reformed" plan must be classified as a damages claim. This argument ignores the substance of Bilello's claim. Bilello is not seeking damages based on an assertion of extra-contractual rights, but rather the benefits to which he believes he is entitled under the plan that he contends ERISA requires the defendants to use to determine those benefits.

The defendants emphasize that Bilello belonged to a defined benefit plan, unlike the defined contribution plan addressed in LaRue. For the reasons already described, however, a lump-sum recipient from a defined benefit plan may still qualify as a participant in an ERISA plan if he claims a right to increased benefits calculable under an ERISA plan. None of the cases on which the defendants rely requires a reconsideration of the principles just outlined or a finding that Bilello lacks standing.

---

colorable claim for benefits even as a former employee, this issue need not be reached.

The defendants rely principally on Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947 (6th Cir. 1990).  In Teagardener, the employer partially terminated its pension plan and purchased annuities for former employees.  Those former employees later sued to obtain a share of the residual assets in the pension plan that were distributed at a later date to the employees who were participants in the plan when it was finally terminated.  Id. at 948-49.  The Sixth Circuit held that the former employees had no colorable claim to a proportionate share of the residual plan assets and thus had no standing to bring an ERISA claim.  Id. at 951.  It reasoned that at the time the entire plan was terminated "the plaintiffs were no longer participants, since they received all benefits that they were due under the Plan at the time their participation in the Plan terminated."  Id. at 953.  Unlike the plaintiffs' claim in Teagardener, Bilello asserts that he was entitled by statute to more benefits than he received on the day that his lump-sum payout was distributed to him.

Raymond v. Mobil Oil Corp., 983 F.3d 1528 (10th Cir. 1993), is similarly unhelpful to the defendants.  The plaintiffs in Raymond, each of whom had received lump-sum distributions, asserted that the defendants had fraudulently led them to believe that their right to that ERISA benefit payment was conditioned on the requirement that they retire early.  Id. at

1532.  Finding that the plaintiffs had already received the full extent of their benefits and were no longer eligible to receive future payments, the Tenth Circuit characterized the claim as an action for a damage award, id. at 1536, and held that the plaintiffs were no longer participants in an ERISA plan entitled to bring a claim for an ERISA violation.  Id.

Yancy v. American Petrofina, 768 F.2d 707 (5th Cir. 1985) (per curiam), is entirely inapposite.  The plaintiff in Yancy admitted that his lump-sum distribution was the full amount due to him under the terms of the ERISA plan in effect when he retired.  Id. at 708.  The court rejected his complaint that a "change in the plan effective after his retirement" deprived him of benefits.  It found that he lacked standing to bring an ERISA claim since he was no longer a participant in an ERISA plan, having already received "all benefits vested in him prior to his retirement."  Id. at 708-09.

Similarly, in Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986), the plaintiffs failed to allege that their vested benefits, received as lump-sum payments, were improperly computed.  Instead, they sought damages for the failure to disclose information about their benefits.  Id. at 1411.  Based on these facts, the Ninth Circuit's finding that they were no longer participants in an ERISA plan and were ineligible to bring an ERISA lawsuit is unsurprising.  Id.

There is only one other case cited by the defendants that warrants any discussion. In Graden, 496 F.3d at 298 n.10, the Third Circuit observed that it may be more difficult for former employees who have taken a lump-sum distribution from a defined benefit plan to qualify as plan participants where they have received all of their vested benefits. It recognized, however, that even those claimants may continue to qualify as participants where they assert that "the lump sum [was] improperly calculated or otherwise deficient." Id. In this case, Bilello does assert a colorable claim that he was entitled on the day he received his lump-sum distribution to further benefit payments because reform of the JPMC Plan to cure ERISA violations would cause a recalculation of benefits under a different formula.

Defendants also argue that plaintiffs should be collaterally estopped from asserting that Bilello has standing because of Judge Baer's class certification decision in J.P. Morgan, 242 F.R.D. 265 (S.D.N.Y. 2007). Judge Baer excluded former JPMC employees who had already received their lump-sum benefits from the class, holding that the relief such employees sought was "a damage award, not benefits, and thus, they fall without the statute and without standing." Id. at 271.[13] At the

---

[13] This Court respectfully disagrees with the analysis regarding the standing issue contained in the J.P. Morgan decision. The

time Judge Baer issued his decision, the plaintiffs in J.P. Morgan were pursuing claims that the retirement plan was age discriminatory and that JPMC did not give adequate notice of changes to the plan.  Defendants point out that Bilello was a member of the J.P. Morgan class at the time that he brought the instant lawsuit, as he had not yet retired.  They urge that collateral estoppel should bar him from relitigating the issue of whether employees who have received their lump-sum benefits have standing, because a judgment in a class action is binding on class members in subsequent litigation.

It is unnecessary to explore the extent to which a judgment in related class action litigation -- in particular a refusal to certify a class -- might bind a plaintiff who files her own separate action during the pendency of that litigation.  No judgment has yet been entered in J.P. Morgan and the doctrine of collateral estoppel requires entry of a final judgment before it can bar other litigation.  Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir 2001).  A denial of class certification is only an interlocutory order, not a final judgment.  Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

---

J.P. Morgan case having been reassigned to this Court, an Opinion is being issued today in that action which grants the plaintiffs' request to amend the certified class to include former employees who have received lump-sum payments of their retirement benefits.

903 F.2d 176, 178 (2d Cir. 1990).  Defendants' assertion of

collateral estoppel consequently fails.[14]

Finally, the defendants assert that Bilello has not

exhausted his administrative remedies, as required under his

ERISA plan.  See West, 484 F.3d at 405 (holding that exhaustion

would have been futile in claim brought by former employee who

received lump-sum distribution from cash balance plan); Esden,

229 F.3d at 161 (noting that plaintiff who had received lump-sum

payment had exhausted administrative remedies before filing

class action seeking benefits under Section 502(a)(1)(B));

Kennedy v. Empire, 989 F.2d 588, 594-96 (2d Cir. 1993)

(affirming dismissal of plaintiffs' complaint on grounds of

failure to exhaust and failure to demonstrate futility of

exhaustion).  This argument was presented in the defendants'

reply brief,[15] and Bilello somewhat surprisingly never requested

_____

[14] In addition, the J.P Morgan plaintiffs had withdrawn their
challenges to the terms of the plan; only notice and age
discrimination claims remained in that litigation by the time
that Judge Baer decided the class certification motion.  J.P.
Morgan, 242 F.R.D. at 269.  The age discrimination claim was
subsequently dismissed pursuant to an unopposed motion following
the Second Circuit's decision in Hirt, 533 F.3d at 102.  J.P.
Morgan, No. 06 Civ. 732 (DLC) (S.D.N.Y. Dec. 5, 2008).  Thus,
Judge Baer did not decide the standing of employees who had
collected their lump-sum benefits under the forfeiture,
backloading, or "definitely determinable" claims at issue here.
[15] As already explained, Bilello had not yet retired and taken
his lump-sum payout at the time the defendants moved to dismiss
his complaint.  As a result, most of the arguments discussed in
this Opinion appear in the defendants' reply brief in the
Bilello motion to dismiss and in the parties' briefs submitted

an opportunity to respond to it.  As a result, it is impossible

to assess whether Bilello's claims survive this additional

hurdle.  The parties will be given an opportunity to address

this argument pursuant to a schedule set forth in an Order that

accompanies this Opinion.

                            CONCLUSION

     The defendants' February 25, 2008 motion to dismiss is

denied to the extent it argues that Bilello lacks standing as an

ERISA participant to bring ERISA claims.  A scheduling order

shall give the parties an opportunity to address the defendants'

argument that this lawsuit must be dismissed for Bilello's

---

more recently in the related J.P. Morgan litigation in
connection with the plaintiffs' motion to amend class
certification.

failure to exhaust administrative remedies.

    SO ORDERED:

Dated:   New York, New York
        January 6, 2009

 

DENISE COTE
United States District Judge