UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FRANK BILELLO, individually and on      :
behalf of all others similarly          :
situated,                               :        07 Civ. 7379 (DLC)
                        Plaintiff,      :
                                        :
            -v-                         :        OPINION AND ORDER
                                        :
JPMORGAN CHASE RETIREMENT PLAN,         :
JPMORGAN CHASE DIRECTOR OF HUMAN        :
RESOURCES, as administrator of the      :
JPMorgan Chase Retirement Plan,         :
                        Defendants.     :
----------------------------------------X


Appearances:

For Plaintiff:
Lynn L. Sarko
Derek W. Loeser
Amy Williams-Derry
Karin B. Swope
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Peter S. Linden
Andrew T. Watt
Kirby McInerney LLP
825 Third Avenue
New York, NY 10022

Richard S. Schiffrin
Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

Edgar Pauk
144 East 44th Street, Suite 600
New York, NY 10017

For Defendants:

Thomas C. Rice
Jonathan K. Youngwood
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

Meryl R. Kaynard
JPMorgan Chase Legal Department
One Chase Manhattan Plaza, 26th Floor
New York, NY 10081

DENISE COTE, District Judge:

Defendants JPMorgan Chase Retirement Plan and JPMorgan Chase Director of Human Resources have moved to dismiss a complaint filed by Frank Bilello on behalf of himself and all others similarly situated.  Bilello was an employee of JPMorgan Chase & Co. ("JPMC") and predecessor banks, including Chemical Banking Corporation ("Chemical"), from 1960 until his retirement in the Spring of 2008.  Chemical's 1989 conversion to a cash balance pension plan and the subsequent plan amendments are the subject of this lawsuit.

Bilello filed his complaint on August 17, 2007.  This action was reassigned to this Court on October 21, 2008.  Bilello alleges numerous violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Internal Revenue Code.  Defendants have moved to dismiss all counts of the complaint pursuant to Rules 8(a), 12(b)(1), and 12(b)(6), Fed R. Civ. P.  An Opinion and Order of January 6,

2009 denied defendants' motion to the extent that it argued that
Bilello lacked statutory standing as an ERISA participant
because he received a lump-sum distribution of his pension
benefit upon retirement.  Bilello v. JPMorgan Chase Retirement
Plan, 592 F. Supp. 2d 654 (S.D.N.Y. 2009) (the "January 6
Opinion").  Familiarity with the January 6 Opinion is assumed.
The defendants' argument that many of Bilello's claims,
including all of his class-wide claims, are barred by the
statute of limitations will now be considered.


BACKGROUND

     At the center of this lawsuit is Chemical's conversion from
a traditional defined benefit plan to a cash balance plan, whose
contours are outlined in the January 6 Opinion.  Under a cash
balance plan, a hypothetical account is established in each
participant's name to keep track of his accrued benefit.
Typically, the account contains "pay credits," representing a
percentage of the participant's salary that is periodically
deposited into the account, as well as "interest credits," which
apply a common interest rate to the account balances.  See Hirt
v. The Equitable Retirement Plan for Employees, Managers, and
Agents, 533 F.3d 102, 104-105 (2d Cir. 2008).  Cash balance
plans became widespread in the 1990s and provoked strong
criticism for lowering benefits earned by older workers in order

3

to reduce companies' liabilities under pension plans.  See,
e.g., Mary Williams Walsh, Issues Left Unresolved on Pensions,
N.Y. Times, Jan. 17, 2007, at C1.  The Second Circuit having
recently ruled that cash balance plans do not violate ERISA's
prohibition on age discrimination in Hirt, 533 F.3d at 110,
litigants in this Circuit seeking to challenge the plans'
reduction of benefits as a participant ages must find more
indirect ways of doing so.  The claims in Bilello and its
related case, In re J.P. Morgan Cash Balance Plan Litigation,
No. 06 Civ. 732, whose age discrimination claim was dismissed
without opposition following the Hirt decision, include a
plethora of claims that attempt to chip away at the legality of
a conversion to, and the administration of, cash balance plans.
These claims, described below, include charges that participants
were improperly notified of the reduction in benefits that could
occur under a cash balance plan, or that the cash balance plans
at issue here gave the employer improper discretion to determine
interest rates.

Chemical converted its conventional defined benefit
retirement plan (the "Pre-1989 Plan") into a cash balance plan
on January 1, 1991, retroactive to January 1, 1989 (the "1989
Plan").  Chemical announced the conversion to its employees in
July 1990, and sent a letter later that month (the "July
Letter," attached to the complaint) explaining that it was

"changing its retirement plan to help you meet your retirement planning needs" by adopting a cash plan, which offered the "special advantage" of being "clear-cut and easy to understand." The letter promised that Chemical was "making sure the Plan continues to provide similar benefits at retirement" and would provide a brochure describing the cash balance plan in more detail later in the year as well as statements of individual account balances under the new plan.

As set out in the July Letter, participants received information regarding the 1989 Plan later that year, in September 1990 (the "September 1990 Notice," attached to the complaint).  In 1992, Chemical issued a Summary Plan Description ("SPD") describing the 1989 Plan.[1]  The next year, Chemical's retirement plan merged with that of Manufacturers Hanover Trust ("MHT"), following the 1991 merger of the two companies.  The result was the 1993 Chemical Plan (the "1993 Plan"), effective January 1, 1993.  Plaintiff attaches a 1994 SPD that describes the 1993 Plan.

Chemical next merged with the Chase Manhattan Corporation ("Chase") in 1996, and the two companies' plans were merged effective January 1, 1997 (the "1997 Plan").  Plaintiff attaches

---

[1] ERISA requires the periodic distribution of an SPD, as described in ERISA Section 104, 29 U.S.C. § 1024.  Requirements for the content of an SPD are described in ERISA Section 102(a), 29 U.S.C. § 1022(a).

a 1999 SPD describing the 1997 Plan to the complaint.  Chase
then merged with J.P. Morgan in 2000, creating JPMC.  J.P.
Morgan's cash balance pension plan merged into Chase's cash
balance plan effective January 1, 2002 (the "2002 Plan").  A
July 1, 2004 merger with Bank One Corporation resulted in a
merger of the JPMC and Bank One plans effective January 1, 2005
(the "2005 Plan").  The 2005 Plan is administered by defendant
JPMorgan Chase Director of Human Resources (the "Plan
Administrator").

Following the denial of class certification in In re J.P.
Morgan Class Balance Litigation for claims relating to
retirement plans in place before 2002, Bilello filed this
lawsuit challenging the 1989 conversion to a cash balance plan
and the subsequent plans arising from the retirement plan
mergers of Chemical and its successors Chase and JPMorgan Chase,
alleging nine class-wide and two individual counts of ERISA
violations.  Defendants moved to dismiss the complaint on
November 16, 2007 on statutory standing and statute of
limitations grounds, among others.  Before that motion was fully
submitted, Bilello amended his complaint on December 21.
Defendants renewed their motion to dismiss with new briefing
filed on February 25, 2008 that sought dismissal of all counts
of the complaint.

After the January 6 Opinion rejected defendants' statutory standing argument that Bilello was not an ERISA plan "participant," an Order requested supplemental briefing on the argument that Bilello's claims must be dismissed for failure to exhaust his administrative remedies, because he accepted a lump-sum payout without disputing the amount.  The plaintiff also made a submission on April 8, 2009 seeking to clarify the amended complaint's description of a frontloaded interest credit cash balance plan and presenting an additional statute of limitations argument with respect to the first count of the amended complaint.  A separate Order disposes of the exhaustion issue, finding that Bilello is not required to exhaust the claims at issue in this lawsuit.  While many of Bilello's class-wide claims are legally vulnerable for several different reasons,[2] the analysis in this Opinion principally addresses defendants' assertion that the six-year statute of limitations generally applicable to non-fiduciary ERISA actions bars each of the class-wide claims.

---

[2] For example, defendants argue that two of the counts in the amended complaint fail to meet the pleading requirements under Rule 8, Fed. R. Civ. P., and that nearly all of the counts fail to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.

DISCUSSION

Motions to dismiss a complaint on statute of limitations grounds are properly brought under Rule 12(b)(6), Fed. R. Civ. P.  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  Such motions may be granted only "if the defense appears on the face of the complaint" and where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Id. (citation omitted).

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Motions under Rule 12(b)(6) are evaluated according to a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Statutes of limitations reflect a "policy of repose," recognizing that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 127 S.Ct. 2162, 2170 (2007) (citation omitted).  Statutes of limitations also guard against adjudication of claims based on a decayed evidentiary record, as the "passage of time may seriously diminish the ability of the parties and the factfinder to reconstruct what actually happened." Id. at 2171.

ERISA does not provide a statute of limitations for civil enforcement actions, so the most similar state statute of limitations applies to most ERISA claims, and a court looks to federal common law to determine when the cause of action accrues.[3] Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007). The statute of limitations for ERISA actions brought under 29 U.S.C. § 1132(a)(1)(B) in New York is six years, inferred from the statute of limitations for contract actions set by Section 213 of the New York Civil Practice Law and Rules.  Slupinski v.

---

[3] An exception is claims for breach of fiduciary duty brought under ERISA Section 413, which are subject to either a three- or six-year limitations period under the statute.  ERISA § 413(2), 29 U.S.C. § 1113; LaScala v. Scrufari, 479 F.3d 213, 220 n.1 (2d Cir. 2007).

First Unum Life Ins. Co., 554 F.3d 38, 55 (2d Cir. 2009) (citing

Miles v. N.Y. State Teamsters Conf. Pension & Retirement Fund

Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir.

1983)).  While not all of Bilello's claims may be characterized

as claims under 29 U.S.C. § 1132(a)(1)(B), the parties do not

dispute the application of the six-year statute of limitations

period to the nine claims to which the defendants' statute of

limitations defense is addressed.  This case was filed on August

17, 2007.  Consequently, any claims must have accrued after

August 17, 2001 to be within the limitations period, unless an

equitable toll applies.[4]

     Under federal common law, courts generally apply the

"discovery rule" to determine when an ERISA cause of action

accrues, looking to when the plaintiff "discovers, or with due

diligence should have discovered, the injury that is the basis

of the litigation."  Guilbert, 480 F.3d at 149 (2d Cir. 2007)

(citation omitted); see also Carey v. Int'l Bhd. of Elec.

Workers Local 363 Pension Plan, 201 F.3d 44, 48  (2d Cir. 1999)

("a plaintiff's claim accrues when he discovers or with

reasonable diligence should discover, the injury that gives rise

---

[4] The related action, In re J.P. Morgan Cash Balance Litigation,
was filed on January 31, 2006.  The parties do not contend that
Bilello's claims relate back to that filing, that that filing
tolled the statute of limitations, or that shifting the accrual
date to 2000 (six years before the related case was filed) would
have any impact on this motion.

to his claim").[5]  The discovery rule, recognized by the Supreme

Court in cases involving fraud and concealment of the fraud,

latent disease, and medical malpractice, TRW Inc., 534 U.S. at

27, arose from the belief that a plaintiff should not forfeit

his claims based on "blameless ignorance."  Urie v. Thompson,

337 U.S. 163, 170 (1949).  See also Mix v. Delaware and Hudson

Ry. Co., 345 F.3d 82, 86 (2d Cir. 2003).

In the context of a claim for benefits under an ERISA plan,

courts have held that the claims accrue either "upon a clear

repudiation [of the claimed benefits] by the plan that is known,

or should be known, to the plaintiff -- regardless of whether

the plaintiff has filed a formal application for benefits" -- or

"after a claim for benefits has been made and has been formally

denied."  Guilbert, 480 F.3d at 149.[6]  Thus, where a clear

repudiation of the claimed benefits exists, the accrual date is

_____

[5] Guilbert relies on decisions issued before the Supreme Court
held that courts must look to the structure and text of a
statute to determine whether the application of the discovery
rule is appropriate, rather than applying the discovery rule
whenever a statute is silent on the topic of a limitations
period.  TRW Inc. v. Andrews, 534 U.S. 19, 27-28 (2001).  TRW
invalidated the use of the discovery rule for a claim brought
under the Fair Credit Reporting Act.  Id. at 28.  The Second
Circuit has not yet applied TRW to alter the discovery rule in
the context of ERISA claims, and Guilbert suggests that the
discovery rule is indeed still valid here.

[6] Bilello misrepresents the test in his opposition brief, arguing
that, in order for a "repudiation" to occur, a formal
application for benefits is required.  Carey, 201 F.3d at 47-49,
established that it is not.

triggered even in the absence of a formal application or claim for benefits by a participant or beneficiary.  Carey, 201 F.3d at 48-49.  As a result, the same limitations period applies to a declaratory judgment action regarding future benefits and a claim of entitlement to present benefits.  Id.  Carey acknowledged that requiring a plaintiff to file suit before a formal determination of benefits could "result in piecemeal litigation, or litigation of claims that the plan might otherwise have resolved internally."  Id. at 48.  Permitting accrual only upon a formal application for benefits, however, would delay claims for years and diminish courts' access to witnesses and other evidence.  Id.

Unlike the plaintiff in Carey, Bilello does not challenge a wrongful application of an otherwise valid ERISA plan, but the legality of the plans themselves and the timeliness and adequacy of the plan descriptions in the SPDs and other formal notices of plan amendments.  Here, where the plan documents themselves, rather than their application, are at issue, the statute of limitations for Bilello's ERISA claims accrues when he discovered or with reasonable due diligence could have discovered the deficiencies in the plan documents of which he complains.  Discovering the injury -- the illegal provisions that violate ERISA on their face -- requires clear notice of those provisions.

A claim addressed to the amendment of an ERISA plan accrues "at the earliest, on the date of the plan amendment."  Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005).  Without clear notice to participants, however, an amendment to the plan adopting an illegal term or feature is insufficient to trigger the running of the statute of limitations because

> [a] rule that unwaveringly ties the date of accrual to the date of amendment would have the undesirable effect of requiring plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses.  It would also tend to preclude claims by those who commenced employment after the limitations period applicable to the particular ERISA claim has elapsed.

Id. at 224 (citation omitted).  Where plan participants are given notice of an amendment that contains a clear repudiation of the benefit terms to which Bilello claims that he is entitled, however, their ERISA claims addressed to the amendment's repudiation of those claims accrue.  See id. at 224-25.

The SPD plays a "central role" in communicating a plan's terms to participants, and often serves as an employee's "primary source of information regarding employment benefits."  Frommert v. Conkright, 433 F.3d 254, 265 (2d Cir. 2006) (citation omitted) (assessing the adequacy of disclosure of a

"phantom account" plan feature by examining the content of
SPDs).  The SPD's important role in disclosure goes both ways:
just as employees may rely on the terms of the plan as described
in the SPD, so may a clear description in the SPD put them on
notice of that plan's terms, including its clear repudiation of
a claim for benefits.  See Hirt v. Equitable Retirement Plan for
Employees, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006), aff'd, 285
Fed. Appx. 802, 804 (2d Cir. 2008).

Other Circuits have held that ERISA claims challenging the
terms of ERISA plans accrued when participants were informed of
the challenged terms.  For instance, the Eighth Circuit has held
that a fact sheet distributed at the time of a merger put plan
participants on notice of its method for crediting employment at
the legacy companies.  Union Pacific R. Co. v. Beckham, 138 F.3d
325, 331 (8th Cir. 1998).  The fact sheet "clearly and
unequivocally" informed plaintiffs that their service at a
legacy company would not be credited under the new plan; at that
point, they could have brought a lawsuit challenging the plan
administrator's interpretation of the plan.  Id.  Similarly, the
Seventh Circuit has held that discovery of an employer's
"decision to interfere with benefits," in that case a change in
the method for determining an employee's full-time status, put
plaintiffs on notice of their ERISA claim, even though
plaintiffs had not yet lost their eligibility for benefits.

Berger v. AXA Network LLC, 459 F.3d 804, 815-16 (7th Cir. 2006).
The court rejected plaintiffs' contention that it "is the
application of the policy to a particular plaintiff, not the
existence of the policy in the abstract, that violates the law
and causes injury to each employee."   Id.

        Bilello's opposition to the defendants' statute of
limitations motion relies almost exclusively on the fact that he
had not yet formally applied for benefits at the time that he
filed this lawsuit.  As explained above, a formal application
for benefits is not required for the accrual of ERISA claims.
Bilello also argues that determining whether a repudiation is
"clear" and "made known" to beneficiaries is inappropriate for
resolution at the motion to dismiss stage because the inquiry
requires resolving factual issues involving the interpretation
of plan communications.  Bilello has attached several of the
relevant plan documents to his complaint, however, and refers to
others.  To the extent that these documents establish whether or
not Bilello can plausibly claim that there has been no clear
repudiation of the rights giving rise to his claims, this
question may be addressed at this stage in the litigation,
making all inferences in the plaintiff's favor.  See ATSI
Commc'ns, Inc., 493 F.3d at 98 (permitting a court to consider
"any written instrument attached to the complaint, statements or
documents incorporated into the complaint by reference . . . and

15

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss).  The statute of limitations defense may also be addressed because it appears "on the face of the complaint," the majority of whose allegations concern events occurring more than six years ago. See McKenna, 386 F.3d at 435.

Defendants proceed claim-by-claim through the class-wide claims, explaining how a "clear repudiation" of each occurred. Bilello responds with a general argument that "[w]hat information was provided either implied that Plan participants would receive a greater benefit under the new cash balance formula, or provided a complex, incomprehensible, and misleading description that neither warned about nor explained the amended benefit formula."  He generally does not, however, point to specific inadequacies in the notices regarding the plans' provisions to which the counts are addressed, nor does he respond to defendants' citations to portions of the notices that alerted Bilello to many of the provisions giving rise to this lawsuit.

For statute of limitations analysis purposes, Bilello's claims fall into roughly three categories.  First, several of his claims allege that omissions, either of certain features in the plans (such as a method for projecting future interest credits) or of required actions (such as delivery of notices),

violated ERISA.  Second, Bilello challenges the legality of certain plan terms and the delivery dates of notices.  Third, Bilello brings claims challenging the clarity of the notices.

While the defendants seek to dismiss the entirety of Counts 1 through 9 as barred by the statute of limitations, to the extent that these claims challenge provisions in plans enacted after August 17, 2001, those claims could not be time-barred through the application of a six-year limitations period.  Thus, those claims which the plaintiff may have intended to plead against the 2002 and 2005 Plans are not barred by the statute of limitations.  It should be noted, however, that the plaintiff has not opposed the statute of limitations argument with a request to proceed on his claims as they apply to the 2002 and 2005 Plans.[7]

---

[7] Of the class-wide claims, it appears that only one addresses plans within the statute of limitations period.  Count 3 may include allegations as to the 2002 and 2005 Plans.  While Count 1's general allegations are sweeping, plaintiff concedes it applies to the 1997 Plan alone.  The notices distributed regarding the 2002 and 2005 Plans are the subject of the remaining class-wide claims in In re J.P. Morgan Cash Balance Litigation.  On February 27, 2009, plaintiffs moved for voluntary dismissal of these claims with prejudice.  Their application is currently pending before the Court.

1. Omissions:  Counts 1, 3, 4, 5 and 9

a. Failure to Include Required Plan Features or Terms

Count 1 alleges that the cash balance formulas in effect from 1989 until the adoption of the 2005 Plan[8] created the risk of "backloading" because they did not specify a minimum interest rate.  As described by plaintiff, backloading is a violation of the ERISA 133 1/3 percent rule, which provides that no later annual rate of accrual can be more than one-third greater than any earlier rate for an individual plan participant.  ERISA § 204(b)(1)(B); 29 U.S.C. § 1054(b)(1)(B).  This rule protects younger employees by assuring that benefit accruals are not disproportionately accumulated in the later years of a career.  Where pay credits increase with years of service or age, there is a risk of backloading unless a plan includes a minimum interest rate.  See Esden v. Bank of Boston, 229 F.3d 154, 167 n.18 (2d Cir. 2000).  The sole example Count 1 gives of this omission is from the 1997 Plan and plaintiff's opposition to this motion concedes that this count concerns the 1997 Plan alone.[9]

---

[8] The count explains that the interest rate in the 2005 Plan --
4.5% -- was below the minimum interest rate of 5.25% that
Bilello contends was required to comply with ERISA.

[9] While Count 1 addresses the 1997 Plan, the complaint's prayer
for relief for Count 1 only refers to the 1989 Plan.

The statute of limitations bars Count 1.  The 1999 SPD contained a section entitled "Interest Credits," which states that the rate of interest "equals the average rate for one-year Treasury bills for September, October, and November of the previous year, plus 1%" (the "regular rate").  Appendix II, entitled "Heritage Chemical Employees," explains that Chemical employees who had participated in the Pre-1989 Plan or Chemical employees who were employed by Chemical on December 31, 2005 and participated in a Chemical retirement plan will earn interest at 125% of the regular rate.  No minimum interest rate (above the Treasury bill rate, on which no floor was placed) is mentioned, and nothing in the SPD even remotely suggests the existence of such a rate.  Plaintiff was therefore on notice that no such minimum rate existed, and his claim, wholly predicated on the absence of a minimum interest rate, began to accrue by 1999.

Counts 3 to 5 assail other interest-rate related omissions.  Count 3's allegation that the benefit available under the plans was not "definitely determinable" is based on the plans' failure to specify a method for projecting future interest credits in the calculation of an employee's benefit before retirement age.  Under a cash balance plan, an employee's benefit includes "the accrued right to receive future interest credits."  Esden, 229 F.3d at 165.  In certain circumstances, cash balance plans must prescribe a method for projecting future interest credits to

normal retirement age.  Id. at 165-66.  According to the amended complaint, the failure to specify such a method violates ERISA Sections 402(a)(1) and 402(b)(4), 29 U.S.C. § 1102(a)(1), and I.R.C. § 401(a)(25).  Count 4 claims that the failure of the 1989 Plan and its successors to require a projection of future interest credits to normal retirement age, and to use those projections in the calculation of an annuity, creates a forfeiture of benefits in violation of ERISA Section 203(a), 29 U.S.C. § 1053(a) and I.R.C. § 411(a).  According to the complaint, the plans' description of the credit balance as the basis for the calculation of the annuity, when that credit balance does not include projected future interest credits, is illegal.[10]  And Count 5, another forfeiture claim based on ERISA Section 203(a), 29 U.S.C. § 1053(a), focuses on the 1989 Plan's failure to include a purportedly required projection of future interest credits in the calculation of the prior service credit (a credit for service prior to the implementation of the 1989

---

[10] The forfeiture implicated by Count 4 can occur when a plan's interest credit rate exceeds the discount rate specified by the I.R.S.  See Esden, 229 F.3d at 165-71 (discussing I.R.S. Notice 96-8, 1996-1 C.B. 359).  Bilello does not allege that the plans ever used an interest rate that exceeded the I.R.S. discount rate.  In his opposition to this motion he requests discovery to determinate if the interest rate applied by the plans ever did exceed the I.R.S. rate.

Plan).  The September 1990 Notice and the 1992 SPD refer to this
as the "Prior Service Balance."[11]

Counts 3 and 4 are barred for those plans enacted between
1989 and 1997, since the plaintiff was on clear notice through
SPDs and other notices issued prior to 2001 of the omissions
identified by these counts.  For example, the September 1990
notice informs participants that "you will receive interest
credits quarterly on the salary-based credits Chemical makes to
your account."  There is no mention of a projection of future
interest credits or of any formula for calculating such credits.
There is only interest calculated from the participant's salary-
based credits.  Perhaps even more clear is the 1992 SPD's[12]
statement that "[y]our account is credited with interest <u>only</u> on
the salary-based credits that have been in your account for a
full calendar quarter" (emphasis in original).  The SPD is again
silent regarding the projection of future interest credits.

Bilello does not respond to the defendants' discussion of
these documents or make any argument at all to explain how these

---

[11] The defendants contend that the law does not require a
projection of the value of the prior service credit until
retirement age when an employee retires early.

[12] Bilello does not attach the 1992 SPD to his complaint.  It may
be considered, however, because it is integral to the complaint,
with its several allegations related to the 1989 Plan, whose
terms are described in the SPD, which include claims of
inadequate notice implicating the SPDs used to communicate the
1989 Plan's terms.  <u>See</u> <u>Broder v. Cablevision Sys. Corp.</u>, 418
F.3d 187, 196 (2d Cir. 2005).

two claims survive as to the plans enacted before 2001, aside from his general argument that plan notices were unclear.  The claims accuse the defendants of violating their statutory duty to "specify" a method of projecting future interest credits and complain that the plans' description of how they would, for instance, calculate an annuity omits a necessary component of the calculation, the projected future interest credit.  The basis for these two claims therefore arises from the face of the SPDs and the September 1990 Notice, and the statute of limitations for these claims accrues with the distribution of the SPDs and the September 1990 Notice.

Unlike the omissions relevant to Counts 3 and 4, the notices' description of the Prior Service Balance, the subject of Count 5, does not clearly exclude a projection of future interest credits.  The September 1990 Notice states that the Prior Service Balance "is based on the dollar value of your benefit under the [Pre-1989 Plan]" and promises that "[b]y starting your Cash Plan account with a prior service balance, Chemical preserves your benefit under the prior Plan formula." Similarly, the 1992 SPD notes that the Prior Service Balance is "generally based on the benefit you had earned under the [Pre-1989 Plan]."  While the SPD warns that the Prior Service Balance "does not represent in all cases the benefit accrued under the [Pre-1989 Plan]," it does not clearly explain why this is so.

Since, unlike the calculation of a benefit under the 1989 Plan and its successors, the elements of the Prior Service Balance are not expressly delineated (the 1992 SPD simply says that "this calculation is based upon a number of assumptions and rules"), a participant could not have known precisely how the Prior Service Balance was calculated -- and whether that calculation did or did not include future interest credits. Count 5 therefore survives.

b. Failure to Deliver Required Notices

In Count 9, plaintiff alleges that defendants did not issue a Summary of Material Modification following each exercise of the Plan Administrator's discretion in setting the yearly interest rate during the period from 1989 through 2001. Defendants' arguments, addressed to allegations that notices <u>actually</u> <u>delivered</u> were untimely or confusing, do not offer any arguments relevant to Count 9, where plaintiff's claim is that the required notices were never delivered at all.  Count 9 will therefore not be dismissed on statute of limitations grounds.


2.  Challenges to Affirmative Actions:  Counts 2, 6 and 7

a. Challenges to Plan Features

Bilello challenges certain features of the plans as illegal.  Count 2 involves the claim that the cash balance plans in effect from 1989 to 1997 improperly gave the Plan

Administrator discretion to set the interest rate.  Bilello
contends that plans that provide an employer with discretion to
set a variable interest rate violate ERISA Sections 402(a)(1)
and 402(b)(4), 29 U.S.C. § 1102(a)(1), and I.R.C. § 401(a)(25).

The statute of limitations bars Count 2.  The SPDs for each
of these plans disclosed with sufficient clarity, and Bilello
does not contend otherwise, that the Plan Administrator retained
discretion to determine what interest rate would be used.  For
example, the 1992 SPD stated that "Chemical can provide for a[n
interest] rate in excess of the minimum," and the 1994 SPD
explained that "Chemical will adjust the rate annually."

Count 6, which, like Count 1, complains of a risk that the
cash balance plans could become backloaded, is based on the
minimum benefit feature included in the 1989 Plan.  That minimum
benefit feature provided for a minimum benefit equal to the
greater of the participant's accrued benefit under the Pre-1989
Plan determined as of December 31, 1990 or the benefit accrued
under the cash balance plan starting in 1989.  The plaintiff
asserts that this minimum benefit formula created a risk of a
period of no accrual, a problem which it refers to as a "wear-
away" effect.

The statute of limitations for Count 6 accrued with the
distribution of the September 1990 Notice.  The nine-page

brochure contains a one-paragraph section entitled "A Minimum

Benefit," and informs participants that

> [i]f you are a participant in the Chemical
> Retirement Plan on January 1, 1991, your
> benefit under the Plan as of that date will
> be your <u>minimum</u> benefit under [the] Cash
> Plan.  When you leave Chemical, the value of
> that benefit will be compared with your Cash
> Plan account -- and you will receive
> whichever is <u>greater</u>.

(Emphasis in original).  The minimum benefit feature was

therefore clearly made known to Bilello in 1990, a fact that

Bilello does not contest.  Count 6's allegation that the minimum

benefit feature violated ERISA (by creating the risk of

backloading) is therefore untimely.

b. Untimely Delivery of Notices

     Count 7 includes allegations that defendants violated ERISA

by failing to provide notice of the 1989 Plan and the 1997 Plan

until after their effective dates, in violation of the

requirement in ERISA Section 204(h), 29 U.S.C. § 1054(h), that

plan participants receive notice of a significant reduction in

their future rate of benefit accrual before each plan's

effective date.  The complaint acknowledges that notice

informing participants of the 1989 and 1997 Plans was ultimately

issued, in 1990 and 1999, respectively.  When Bilello received

these notices and saw the effective dates of the retirement

plans they discussed, he had all of the information he needed to

allege that he should have received them earlier.  Any claims
that the notices were untimely are now time-barred.  A separate
issue, addressed below, is whether Bilello's claims that the
notices were misleading and confusing are time-barred as well.


3. Challenges to the Communication of Plan Terms:  Counts 7 and 8
     The remainder of Bilello's class-wide claims includes Count
8 and sections of Count 7 that challenge the sufficiency of
various notices provided based not on their timeliness, but on
their content.  Count 7 alleges that the notices associated with
the 1989 and 1997 Plans were deficient because they were not
written in a manner calculated to be understood by the average
plan participant and failed to warn adequately of the
significant reduction in the rate of
      future benefit accrual due to the conversion of the
pension plan from a final average pay plan to a cash balance
plan, as required by ERISA Section 204(h), 29 U.S.C. § 1054(h).
Bilello also characterizes the notices for the 1989 Plan as
"misleadingly optimistic and congratulatory."  The count does
not point to any specific language in these notices that was
misleading.
      Count 8, meanwhile, is limited to the 1994 and 1999 SPDs,
which respectively described the 1993 Plan and the 1997 Plan.
It alleges that these SPDs were not written in a manner

calculated to be understood by the average plan participant and
were misleading and insufficiently comprehensive because they
did not include multiple examples of the benefit accrual of
differently-aged participants.  Without these multiple examples,
including one with an older participant nearing retirement age,
the SPDs masked the reduction in the rate of future benefit
accrual and precluded "an age-based, apples-to-apples
comparison."

All of the notices on which Counts 7 and 8 are based were
issued more than six years prior to the filing of the instant
lawsuit.  The statute of limitations accrued for each notice
upon its distribution, and any general claim that a notice used
language that was confusing or otherwise not written in a manner
calculated to be understood by the average plan participant
accrued when the notices were distributed.  At that point,
Bilello knew or should have known whether any provisions in the
notices were confusing or unclear, and he had all of the
information he needed to bring a challenge to the language used
in the notices.

While claims that the language used in notices was
confusing are time-barred, the statute of limitations does not
necessarily preclude Bilello's challenges to the notices that
are the subject of Counts 7 and 8 on the grounds that they were
misleading.  To the extent that a count identifies additional

information that was necessary to make the SPD sufficiently accurate and comprehensive, that claim survives.  Thus, the allegation in Count 7 that the 1989 and 1997 Plans failed to provide sufficient notice of a significant reduction in the rate of future benefit accrual survives.  Similarly, the allegation in Count 8 that the 1994 and 1999 SPDs, by failing to provide enough age-based examples of benefit accruals, masked the reduction in rate of future benefit accrual will not be dismissed on statute of limitations grounds.[13]

Bilello is master of his pleading.  He has chosen to plead many claims that are vulnerable to a statute of limitations challenge.  It is worth noting, however, that many of these claims do not challenge the methods the defendants have actually employed to calculate participants' benefits when they retire. For instance, Bilello claims that it was illegal to give the Plan Administrator discretion over the interest rate that would be used and that the exercise of the discretion might result in the application of an interest rate that would run afoul of the 133 1/3 percent rule.  Bilello does not assert in this action, however, that the chosen interest rates were illegal and violated the rule.  If the chosen interest rates have not

---

[13] The parties will be given an opportunity to address whether this claim is foreclosed by Hirt and its holding that "cash balance defined benefit plans do not by definition violate ERISA's prohibition against age-based reductions in the rate of benefit accrual."  Hirt, 533 F.3d at 110.

resulted in a violation of the rule, then the risk of illegality highlighted by Bilello in this action will apparently have been averted.[14]  Alternatively, if a violation of the 133 1/3 percent rule has occurred, participants would apparently retain their right to challenge the use of a particular interest rate.

Similarly, Bilello does not assert that any interest credit rate ever employed by the defendants actually exceeded the discount rate specified by the I.R.S., such that the danger to which Count 4 adverts ever occurred.  If the plans did use a higher rate but avoided a forfeiture of benefits by projecting future interest credits when calculating an annuity, then the violation Bilello speculates about will have been avoided. Alternatively, if a participant receives an annuity that reflects a forfeiture of benefits, he retains the right to contest the plan's determination.

These two examples may help to highlight a flaw in the plaintiff's formulation of these time-barred claims.  Several of the claims are premised on a risk that may never eventuate. Because the claims are addressed to the design of the plans and the related communications to participants, they are ripe for review and dismissal.  This result, however, does not

---

[14] It is interesting to note that Bilello elected to take a lump-sum distribution of his pension benefits on March 6, 2008 and has not sought to amend his pleading to add a claim that a violation of the 133 1/3 percent rule actually occurred in his case.

necessarily foreclose actions by participants addressed to the practices the defendants in fact employ in calculating benefits where those practices result in illegal backloading or forfeiture.  Creating the risk of backloading or forfeiture is not the same as actually committing either kind of violation.

CONCLUSION

The defendants' February 25, 2008 motion to dismiss on the basis that the plaintiff's claims are time-barred is granted in part.  With the possible exception of the allegations as to the 2002 and 2005 Plans in Count 3, Counts 1-4 and 6 are dismissed. Count 7 is dismissed with respect to its allegations that notices were not timely distributed and were not written in a manner calculated to be understood by the average plan participant.  Count 7's allegation that the notices failed to warn participants of a reduced rate of benefit accrual is not time-barred.  Count 8 is also dismissed on statute of limitations grounds, except for that portion which identifies the failure to give multiple age-based calculations of benefit

accruals.  The motion to dismiss on statute of limitations

grounds is denied with respect to Counts 5 and 9.

SO ORDERED:

Dated:    New York, New York
          April 10, 2009

                                    _Denise Cote_____
                                       DENISE COTE
                                    United States District Judge